UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWAIN BAXTER, LAURA BAXTER
and VALESKA PARIS,

     Plaintiffs,

v.

Case No.: 8:22-cv-00986-TPB-JSS

DAVID MISCAVIGE; CHURCH OF
SCIENTOLOGY INTERNATIONAL, INC.;
RELIGIOUS TECHNOLOGY CENTER, INC.;
IAS ADMINISTRATIONS, INC.; CHURCH
OF SCIENTOLOGY FLAG SERVICE
ORGANIZATION, INC.; CHURCH OF
SCIENTOLOGY FLAG SHIP SERVICE
ORGANIZATION, INC.,

     Defendants.

_____/

## DECLARATION OF KENNETH WEBER

I, Kenneth Weber, depose and say as follows:

1. I am over the age of 21 and I make the following statements of my personal knowledge. If called on to testify thereto, I could and would do so competently and without reservation.

2. I am a Director of the Church of Scientology Flag Ship Service Organization, Inc. ("FSSO"), a Delaware non-profit religious corporation, registered as a foreign corporation doing business in Florida. I am a staff member of FSSO and am responsible for external affairs of the Church. I have held positions on FSSO's staff continuously since 1986.

3.     FSSO is a religious retreat located aboard a 440-foot ship, the Freewinds, that sails in the Caribbean region. It provides an ideal environment for religious studies and spiritual counseling.

4.     FSSO is a church within the Scientology religion that ministers specific religious services and specialized religious training. It is recognized as a church under 26 USC §170(c) and is exempt from taxation under 26 USC §501(c)(3).

5.     I am familiar with the documents executed by members of the Sea Organization ("Sea Org") related to their service in the Church of Scientology.

6.     The Freewinds is a floating church. Only Sea Org members may serve as crew on the Freewinds. Parishioners come from all over the world to receive Scientology services on the Freewinds. The Freewinds also carries out a charitable and humanitarian mission throughout the Caribbean.

7.     On February 13, 2003, Gawain Baxter executed a "Religious Services Enrollment Application, Agreement and General Release," with FSSO. A true and correct copy of this agreement is attached hereto as Exhibit A. On March 27, 2004, Laura Wagner Baxter executed a "Religious Services Enrollment Application, Agreement and General Release" with FSSO. A true and correct copy of this agreement is attached hereto as Exhibit B.

8.     The agreements contain the following provisions:

> 6.     This Contract memorializes my freely given consent to be bound exclusively by the discipline, faith, internal organization, and ecclesiastical rule, custom, and law of the Scientology religion in all matters relating to Scientology Religious Services, in all my dealings of any

2

nature with the Church, and in all my dealings of any nature with any other Scientology church or organization which espouses, presents, propagates or practices the Scientology religion. By signing this Contract, I recognize, acknowledge and agree that:

a. My freely given consent to be bound exclusively by the discipline, faith, internal organization, and ecclesiastical rule, custom, and law of the Scientology religion in all matters relating to Scientology Religious Services, in all my dealings of any nature with the Church, and in all my dealings of any nature with any other Scientology church or organization which espouses, presents, propagates or practices the Scientology religion means that I am forever abandoning, surrendering, waiving, and relinquishing my right to sue, or otherwise seek legal recourse with respect to any dispute, claim or controversy against the Church, all other Scientology churches, all other organizations which espouse, present, propagate or practice the Scientology religion, and all persons employed by any such entity both in their personal and any official or representational capacities, regardless of the nature of the dispute, claim or controversy.

b. The abandonment, surrender, waiver, and relinquishment to which I refer in the immediately preceding subparagraph is unconditional and irrevocable and applies equally to anyone acting or purporting to be acting on my behalf or for my benefit, whether I am alive or dead, whether I am disabled or incapacitated, and under any and all circumstances foreseen or unforeseen, in perpetuity, without exception or limitation.

c. Should I or anyone acting or purporting to be acting on my behalf ever sue, or otherwise seek legal recourse with respect to any dispute, claim or controversy against the Church, any other Scientology church, any other organization which espouses, presents, propagates or practices the Scientology religion, or any person employed by any

3

such entity, regardless of the nature of the dispute, claim or controversy, I intend for the submission of this Contract to the presiding judicial officer to be a complete and sufficient basis for the immediate dismissal of any and all such proceedings with prejudice to further proceedings of any kind.

d. In accordance with the discipline, faith, internal organization, and ecclesiastical rule, custom, and law of the Scientology religion, and in accordance with the constitutional prohibitions which forbid governmental interference with religious services or dispute resolution procedures, should any dispute, claim or controversy arise between me and the Church, any other Scientology church, any other organization which espouses, presents, propagates or practices the Scientology religion, or any person employed by any such entity, which cannot be resolved informally by direct communication, I will pursue resolution of that dispute, claim or controversy solely and exclusively through Scientology's Internal Ethics, Justice and binding religious arbitration procedures, which include application to senior ecclesiastical bodies, including, as necessary, final submission of the dispute to the International Justice Chief of the Mother Church of the Scientology religion, Church of Scientology International ("IJC") or his or her designee.

e. Any dispute, claim or controversy which still remains unresolved after review by the IJC shall be submitted to binding religious arbitration in accordance with the arbitration procedures of Church of Scientology International, which provide that:

    i.  I will submit a request for arbitration to the IJC and to the person or entity with whom I have the dispute, claim or controversy;

4

   ii. in my request for arbitration, I will designate one arbitrator to hear and resolve the matter;

   iii. within fifteen (15) days after receiving my request for arbitration, the person or entity with whom I have the dispute, claim or controversy will designate an arbitrator to hear and resolve the matter. If the person or entity with whom I have the dispute, claim or controversy does not designate an arbitrator within that fifteen (15) day period, then the IJC will designate the second arbitrator;

   iv. the two arbitrators so designated will select a third arbitrator within fifteen (15) days after the designation of the second arbitrator. If the arbitrators are unable to designate a third arbitrator within the fifteen (15) day period, then the IJC will choose the third arbitrator;

   v. consistent with my intention that the arbitration be conducted in accordance with Scientology principles, and consistent with the ecclesiastical nature of the procedures and the dispute, claim or controversy to which those procedures relate, it is my specific intention that all such arbitrators be Scientologists in good standing with the Mother Church.

(Exs. A and B at ¶ 6.) The Agreements establish compulsory provisions requiring that any disputes arising out of participation in the Scientology religion shall be subject to internal dispute resolution procedures of the religion, including compulsory arbitration.

9.      In 2001, Gawain Baxter executed a Declaration of Religious
Commitment and Membership in the Sea Organization. A true and correct copy
of this agreement is attached hereto as Exhibit C. In 2004, Laura Wagner Baxter
also executed a Declaration of Religious Commitment and Membership in the
Sea Organization. A true and correct copy of this agreement is attached hereto as
Exhibit D. (Collectively the G. Baxter and L. Baxter Declaration of Religious
Commitments are referred to as "the Covenants.")

10.     In the Covenants, the Baxters made a "pledge of eternal service to the
Scientology religion and its goals." (Exs. C and D at p. 1, ¶ 1.) They acknowledged a
covenant that "binds [them] to follow the ecclesiastical, moral and ethical policies,
rules, norms and practices of the Scientology religion as a member of a religious
order and to follow the administrative policies and procedures of the Church." (*Id.* at
p. 1, ¶ 2.) They understood their service to be a "religious commitment to spiritual
awareness, to the Scientology religion and to create a better world" and agreed to
"serve pursuant to their religious obligations and not in contemplation of receiving
any monetary gain or for other traditional commercial or financial motives or
incentives whatsoever." (*Id.* at p. 1, ¶¶ 3, 4.)

11.     On June 25, 2012, the Baxters signed multiple agreements before
they left the Sea Org and the Freewinds. Among the documents the Baxters
executed are a "Staff Departure Release Agreement" (the "Departure
Agreement") (true and correct copies are attached hereto as Exs. E and F), a
"Religious Covenant of Non-Disparagement" (true and correct copies are

6

attached hereto as Exs. G and H), and a "Religious Covenant of Confidentiality

and Silence" (true and correct copies are attached hereto as Exs. I and J).

12. The Departure Agreements expressly reaffirmed the Baxters' prior

assent to ecclesiastic dispute resolution. Specifically, the Departure Agreements

state that:

> [6.] C. I further agree that arbitration pursuant to the
> Scientology system of Ethics and Justice shall be my sole
> and exclusive remedy for resolving any problem or
> dispute I may have concerning my experiences as a
> member of the Sea Org or as [a] voluntary religious
> worker for the Church or any Scientology Entity, or
> concerning my participation in Scientology religious
> services, or concerning any matter of church governance,
> organization, or discipline, and that I will not seek to
> resolve any such problem or dispute in any other way,
> including the filing of a lawsuit in a secular court of law."

(Departure Agreements, Exs. E and F at p. 6, ¶ 6.C.) The procedures for

convening arbitration are in previous Agreements that the Baxters signed,

which they reaffirmed in the Departure Agreements. (*Id.* at p. 7, ¶ 7.E.)

13. Valeska Paris signed multiple agreements confirming her commitment

to arbitrate disputes that may arise with the Church. For example, in February 2003,

when Paris was in her mid-20s, she executed a Religious Services Enrollment

Application Agreement and General Release, which contained the identical

arbitration terms as those signed by the Baxters at Paragraph 6.e. A true and correct

copy of the Paris Enrollment Agreement is attached hereto as Ex. K.

14.     In December 2007, when Paris departed from her service on the
Freewinds, Paris executed an Agreement and General Release (the "2007
Release Agreement"). A true and correct copy of the 2007 Release Agreement
executed by Paris is attached hereto as Ex. L. In the 2007 Release Agreement,
Paris recommitted to resolve "any dispute . . . through binding Scientology
ecclesiastical arbitration under the authority of the International Justice Chief."
(Ex. L at ¶ 7.A.)

15.     In August 2009, Paris executed a multiple agreements memorializing
her departure from the Sea Org. Among the agreements was an Agreement and
General Release (the "2009 Release Agreement"), a true and correct copy of the
2009 Release Agreement executed by Paris is attached hereto as Ex. M. In the 2009
Release Agreement, Paris released, among other entities, all Scientology Churches,
Missions and Scientology affiliated organizations from any claims, damages, and
causes of actions of every kind up to the date of the Release. (Ex. M at ¶ 2.A.)
Further, in her 2009 Release Agreement, Paris recommitted to resolve "any
dispute . . . solely and exclusively through Scientology's internal Ethics and Justice
procedures," including the arbitration provisions she accepted in the Enrollment
Agreement. (*Id.* at ¶ 7.A.)

16.     The Enrollment Agreements executed by the Baxters and Paris contain
provisions concerning the giving and return of religious donations that are used, in
part, to help fund the Church's global ministry. (Exs. A, B and K ¶¶ 5.c.i-iv.)

8

17.    The Baxters' Departure Agreements and Paris' Release Agreements also concern Plaintiffs' time in the Sea Org in service of the worldwide Church, acknowledge Plaintiffs' obligation to keep confidential certain information, such as the location of Church facilities, Church security information, attorney-client communications, and personal information concerning Scientology staff members and parishioners, among other information. (Exs. E and F at ¶¶ 1.B; Exs. L and M at ¶¶ 5.D, 6.A-C.)

18.    The Baxters' Departure Agreements and Paris' Release Agreements release any claims against any Scientology Church worldwide (Exs. E and F ¶¶ 3.A-D; Exs. L and M at ¶ 2.A.), and contain pledges not to disparage, through any media, any Scientology-related entity worldwide or their officers, directors, or employees (Exs. E and F ¶ 4.B; Exs. L and M at 6.H).

19.    The Baxters' Departure Agreements and Paris' 2009 Release Agreement all contain liquidated damages provisions, requiring the Baxters and Paris to pay the Church various sums for each violation of the Agreement. (Exs. E and F at ¶ 5.C.; Ex. M at ¶ 7.D.)

20.    Paris' 2009 Release Agreement also provided her with a $10,000 payment. (Ex. M at ¶ 4.)

21.    In my role as a Director of FSSO, I am familiar with documents pertaining to the registration of the Freewinds. A true and correct copy of the Certificate of Ownership and Encumbrances for the Freewinds, issued by the Consul General of the Republic of Panama in New York, is attached hereto as

9

Exhibit N. The certificate confirms that the Freewinds is duly registered in the
Public Registry of the Republic of Panama, and that the vessel is free of any liens
and/or encumbrances.

22.   I am also familiar with FSSO's standard practices and procedures
and those of a passenger ship in general. For example, it is standard practice for
a passenger ship to hold the passports of its crew members and passengers. As
stated in the U.S. Customs and Border Protection Vessel Inspection Guide,
relevant portions of which are attached hereto as Exhibit O, "The master is
responsible for the safekeeping of travel documentation of all nonimmigrant
crew." (Ex. O, p. 16). Further, "It is the responsibility of the owner, agent, or
master to present all persons on board a vessel to a CBP officer for inspection, at
the first port of entry to the United States. Likewise it is the responsibility of the
owner, agent or master to ensure that all persons are properly documented for
entry to the United States. **The master is responsible for the safekeeping of all
nonimmigrant crew member travel documents**." (*Id.* at p. 18 (emphasis
original).)

23.   Additionally, Cruise Management International's published Safety
Management System manual, relevant portions of which are attached hereto as
Exhibit P, notes "When a crewmember joins a vessel they must be referred directly
to the Crew/HR/Admin Office etc. as relevant[,]" and "[t]heir passport should be
taken either at the gangway (by the Security Officer/Watchman) or upon their
immediate arrival at the crew office." (Ex. P, p. 9.)

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed this 12th day of July, 2022, in Willemstad, Curacao.

Kenneth Weber

**Exhibit A**



*Church of Scientology*
*Flag° Ship Service Organization*

*(hereinafter referred to as "the Church")*

*Religious Services*
*Enrollment Application,*
*Agreement and General Release*

1.  I, _Graham Porter_, recognize, acknowledge and agree that I am exclusively responsible for my present and future condition in life and for the choices and decisions I make affecting my life. With that in mind, and solely of my own volition and in the independent exercise of my own free will, I am voluntarily signing and submitting to **CHURCH OF SCIENTOLOGY** _FSSO_ (hereinafter **"the Church"**) this **RELIGIOUS SERVICES ENROLLMENT APPLICATION, AGREEMENT AND GENERAL RELEASE** (hereinafter **"this Contract"**) so that, upon its acceptance by the Church, I may participate in Religious Services of the Scientology religion under the terms, conditions, covenants, waivers and releases I agree to by signing this Contract.

2.  This Contract is my statement of my personal, self-determined desire to participate in the Religious Services of the Scientology religion. By signing this Contract, I recognize, acknowledge and agree that:

    **a.**  Scientology is a religion, the Church is a church of the Scientology religion, and all the services and activities of the Scientology religion are exclusively religious in nature.

    **b.**  The Scientology religion is devoted to the study and handling of the human spirit in relationship to itself, universes and other life. The word "Scientology" comes from the Latin "scio," meaning "knowing in the fullest sense of the word," and the Greek "logos," meaning "study of." Dianetics spiritual healing technology is part of the Scientology religion and is the study of what the soul is doing to the body. The word "Dianetics" is from the Greek "dia," meaning "through," and "nous," meaning "soul," and thus means "through soul."

    **c.**  The Founder of the Scientology religion is American author and philosopher L. Ron Hubbard (hereinafter **"LRH"**), whose writings and recorded spoken words on the subjects of Scientology and Dianetics are a record of his observations and research into the nature of the human spirit and condition. The writings and recorded spoken words of LRH on the subjects of Scientology and Dianetics present a guide intended to assist persons to become more aware of themselves as persons, restoring trust and respect for self and others. They are not a statement of claims by the Church, by any other Scientology church or organization, or by LRH.

    **d.**  The term "Religious Services," as used in this Contract, means and refers to the beliefs and practices set forth in the writings and spoken words of LRH on the subjects of Dianetics and Scientology published with the identifying S and double triangle symbol, or Dianetics triangle symbol, and all services or application of the principles of Mr. Hubbard provided to me by the ministers or staff of the Church and all other Scientology churches and organizations, including without limitation: "auditing," which is Scientology's unique form of religious counseling encompassing all services on the Scientology Classification, Gradation and Awareness Charts which includes, without limitation, all levels, rundowns, grades, assists, reviews, repairs, seminars, co-audits; all Scientology congregational services of any

description: "training," which is the study of the scripture of the Scientology religion on the road to achieving spiritual freedom and salvation and includes without limitation all services identified on the Scientology Classification, Gradation and Awareness Chart, all courses, internships and cramming; the application of Scientology Ethics and Justice technology, which are both exclusively religious components of the practice of the Scientology religion; the study and the application of the principles contained in the administrative writings of LRH used within the Church; and any and all other services or use of the technology of L. Ron Hubbard, without limitation, provided to me by the ministers or staff of the Church and all other Scientology churches and organizations.

    **e.**  Neither the Church nor any other Scientology church or organization which espouses, presents, propagates or practices the Scientology religion makes any claim:

        **i.**  that the nature or purpose of Scientology, or of Dianetics, or of the writings and recorded spoken words of LRH, is contrary to what is stated in this Contract;

        **ii.**  that the application of any Scientology or Dianetics technology or practice will have any particular effect on me or any other person; or

        **iii.**  that any particular result may be forthcoming from my participation in any Scientology Religious Service. I specifically acknowledge that I have read and that I understand Scientology Policy Directive 13 March 1996, Statements by Staff Members, which states clearly that if any individual staff member of any Scientology church or organization makes any claims about the results which may be forthcoming from my participation in any Scientology Religious Service, any such claims are the personal opinions and beliefs of that staff member only, and are not claims made by the Church or any other Scientology church or organization.

**3.**  I have seen the film "Orientation" and I am now informed and aware and fully understand that Scientology is a religion, that its teachings are religious and that its claims are religious in nature. I am further informed and aware and fully understand that when I participate in Scientology services, I am participating in religious services under the ecclesiastical principles of the Scientology religion. I am also informed and aware and fully understand that the Church and all other Scientology churches are separate, distinct legal corporations each independently operating and responsible for its own corporate and ecclesiastical affairs.

**4.**  This Contract is my commitment that I desire to participate in Scientology Religious Services exclusively for spiritual purposes in accordance with the beliefs and practices of the Scientology religion. Scientology Religious Services are designed to give spiritual aid, not medical treatment. However, the Scientology religion teaches that the spirit can be saved and that the spirit alone may save or heal the body, and Scientology Religious Services are intended to save the spirit. By signing this Contract, I recognize, acknowledge and agree that:

    **a.**  Scientology Religious Services are not intended and are not used for diagnosing ailments of the body or for engaging in the teaching or practice of any medical arts or sciences.

    **b.**  It is exclusively my responsibility to see to my physical and medical well-being, and under no circumstance does the Church or any other Scientology church or organization which espouses, presents, propagates or practices the Scientology religion have any responsibility whatsoever in that regard.

    **c.**  I have not come to the Church, nor do I seek to participate in Scientology Religious Services, solely to be cured of any physical illness, ailment or condition.

    **d.**  While the registrar can assist me in arranging for a competent medical examination and appropriate treatment by a qualified medical practitioner before I participate in any Scientology Religious Services, it is solely my responsibility to take whatever steps are necessary to demonstrate that I have no diagnosable or medically treatable illnesses, ailments, or conditions that are not under competent medical care before I begin participating in any Scientology Religious Service. Thereafter, any physical illness, ailment or condition I may have that has been treated medically may then be addressed spiritually by the application of the tenets of the Scientology religion, subject to the terms of this Contract.

    **e.**  I know that I should not participate in any Scientology Religious Service if I have a physical or mental condition which might be aggravated or which might make my participation in the service uncomfortable or distressful to me, and I agree to accept and assume any and all known or unknown risks of injury, loss, or damage, resulting from my choices and decisions in that regard.

    **f.**  Scientology Religious Service may entail the use of a religious artifact known as the "E-Meter" for the purpose of locating and resolving problems and difficulties which are spiritual in nature. I understand that, by itself, the E-Meter does nothing, but serves only as a guide to Scientology ministers to assist parishioners in locating areas of spiritual distress or travail, and that it is not intended or effective for the diagnosis, treatment or prevention of any disease, or for the improvement of health or any bodily function.

**g.** Scientology is unalterably opposed, as a matter of religious belief, to the practice of psychiatry, and espouses as a religious belief that the study of the mind and the healing of mentally caused ills should not be alienated from religion or condoned in nonreligious fields. I am in full agreement with this religious belief. I do not believe in or subscribe to psychiatric labels for individuals. It is my strongly held religious belief that all mental problems are spiritual in nature and that there is no such thing as a mentally incompetent person -- only those suffering from spiritual upset of one kind or another dramatized by an individual. I reject all psychiatric labels and intend for this Contract to clearly memorialize my desire to be helped exclusively through religious, spiritual means and not through any form of psychiatric treatment, specifically including involuntary commitment based on so-called lack of competence. Under no circumstances, at any time, do I wish to be denied my right to care from members of my religion to the exclusion of psychiatric care or psychiatric directed care, regardless of what any psychiatrist, medical person, designated member of the state or family member may assert supposedly on my behalf. If circumstances should ever arise in which government, medical, or psychiatric officials or personnel or family members or friends attempt to compel or coerce or commit me for psychiatric evaluation, treatment or hospitalization, I fully desire and fully expect that the Church or Scientologists will intercede on my behalf to oppose such efforts and/or extricate me from that predicament so my spiritual needs may be addressed in accordance with the tenets of the Scientology religion free from psychiatric intervention.

**5.** This Contract memorializes my intention to participate in Scientology Religious Services only for purposes of self-improvement and spiritual advancement. By signing this Contract, I recognize, acknowledge and agree that:

**a.** Achieving the benefits and goals of the Scientology religion requires my dedicated participation, because only through my own efforts can I achieve those benefits and goals.

**b.** Before I go on to any further service, it is essential that I am completely satisfied with my experience with my prior service. While Scientology holds out the possibility of a better life through adherence to its beliefs and practices, individual spiritual advancement is not always an easy or comfortable task, and my success in Scientology ultimately depends on my own ability, strength and determination to overcome the shortcomings and harmful patterns of my past. By agreeing to proceed with further services, I acknowledge complete satisfaction with all services I have participated in previously.

**c.** No Scientology church is under any duty or obligation whatsoever to return any portion of any religious donation I make. However, I have read Scientology Policy Directive 13 March 1996, Return of Donations, and understand that under certain circumstances identified in published ecclesiastical policies such as that Scientology Policy Directive, a return of donations may be obtained through my strict compliance with those published policies and procedures relating to the Claims Verification Board. I further understand, acknowledge and agree that:

**i.** such procedures require my direct participation to the exclusion of any third parties, including, but not limited to, attorneys;

**ii.** returns of donations are exclusively within the ecclesiastical authority and sole discretion of the Claims Verification Board;

**iii.** any violation of, or deviation from, such published policies by me voids any possibility of my receiving a return of a donation; and

**iv.** should I, at any time, ever request a refund or repayment of donations, such refund or repayment will be given if and only if I have followed the exact procedures of the Claims Verification Board and this Contract, and that in exchange for refund or repayment of such donations as determined by the Claims Verification Board, I execute a complete release, quitclaim and waiver of claims as provided by an authorized Church representative.

**d.** In connection with my participation in Scientology Religious Services, the Church may compile a folder containing its notations of my spiritual progress, known as a "Preclear Folder" or "PC Folder," as well as other ecclesiastical files containing notations regarding my spiritual progress. All of my PC Folders and other ecclesiastical files containing notations regarding my spiritual progress, as well as all contents thereof, are the sole and exclusive property of Church of Scientology International. As a matter of religious belief and of ecclesiastical doctrine and law, such folders and files, and the contents of such folders and files, are kept confidential from all persons who lack the ecclesiastical authority to gain access to such materials, including me, are subject to all applicable clergyman-penitent privileges, and are neither comprehensible nor meant to be understood by anyone whose training and expertise in their interpretation is not recognized and sanctioned by Church of Scientology International.

**i.** As a condition of being accepted for participation in Scientology Religious Services, I forever abandon, surrender, waive, and relinquish without limitation any and all rights of ownership, possession, custody, control, access, copying, and viewing of my PC Folder or Folders and all other ecclesiastical files containing any notations regarding my spiritual progress, both with respect to the folders and files themselves and the information contained in them.

**ii.** The abandonment, surrender, waiver, and relinquishment to which I refer in the immediately preceding subparagraph is unconditional and irrevocable and applies equally to anyone acting or purporting to be acting on my behalf or for my benefit, whether I am alive or dead, whether I am disabled or incapacitated, and under any and all circumstances foreseen or unforeseen, in perpetuity, without exception or limitation.

**iii.** Should I or anyone acting or purporting to be acting on my behalf or for my benefit ever seek access to any of my PC Folders or any other ecclesiastical file containing any notations regarding my spiritual progress, I intend for the submission of this Contract to the presiding judicial officer to be a complete and sufficient basis for the immediate denial of whatever access is being sought with prejudice to any other or further effort to breach the absolute confidentiality of those materials or the exclusive right of Church of Scientology International to preserve their absolute confidentiality.

**e.** It is both an unalterable religious belief and a matter of ecclesiastical custom of the Scientology religion that my personal spiritual progress will be directed by a minister known as a Case Supervisor who determines which Religious Services are appropriate for my personal spiritual progress and the sequence in which I will participate in such Religious Services. As a matter of religious belief, I acknowledge that my Case Supervisor will make the decisions regarding the appropriate course of my spiritual progress, and I will abide by the decisions and direction of my Case Supervisor in guiding my spiritual progress. All Religious Services in which I participate hereafter at the direction of my Case Supervisor are subject to the terms of this Contract.

**6.** This Contract memorializes my freely given consent to be bound exclusively by the discipline, faith, internal organization, and ecclesiastical rule, custom, and law of the Scientology religion in all matters relating to Scientology Religious Services, in all my dealings of any nature with the Church, and in all my dealings of any nature with any other Scientology church or organization which espouses, presents, propagates or practices the Scientology religion. By signing this Contract, I recognize, acknowledge and agree that:

**a.** My freely given consent to be bound exclusively by the discipline, faith, internal organization, and ecclesiastical rule, custom, and law of the Scientology religion in all matters relating to Scientology Religious Services, in all my dealings of any nature with the Church, and in all my dealings of any nature with any other Scientology church or organization which espouses, presents, propagates or practices the Scientology religion means that I am forever abandoning, surrendering, waiving, and relinquishing my right to sue, or otherwise seek legal recourse with respect to any dispute, claim or controversy against the Church, all other Scientology churches, all other organizations which espouse, present, propagate or practice the Scientology religion, and all persons employed by any such entity both in their personal and any official or representational capacities, regardless of the nature of the dispute, claim of controversy.

**b.** The abandonment, surrender, waiver, and relinquishment to which I refer in the immediately preceding subparagraph is unconditional and irrevocable and applies equally to anyone acting or purporting to be acting on my behalf or for my benefit, whether I am alive or dead, whether I am disabled or incapacitated, and under any and all circumstances foreseen or unforeseen, in perpetuity, without exception or limitation.

**c.** Should I or anyone acting or purporting to be acting on my behalf ever sue, or otherwise seek legal recourse with respect to any dispute, claim or controversy against the Church, any other Scientology church, any other organization which espouses, presents, propagates or practices the Scientology religion, or any person employed by any such entity, regardless of the nature of the dispute, claim or controversy, I intend for the submission of this Contract to the presiding judicial officer to be a complete and sufficient basis for the immediate dismissal of any and all such proceedings with prejudice to further proceedings of any kind.

**d.** In accordance with the discipline, faith, internal organization, and ecclesiastical rule, custom, and law of the Scientology religion, and in accordance with the constitutional prohibitions which forbid governmental interference with religious services or dispute resolution procedures, should any dispute, claim or controversy arise between me and the Church, any other Scientology church, any other organization which espouses, presents, propagates or practices the Scientology religion, or any person employed by any such entity, which cannot be resolved informally by direct communication, I will pursue resolution of that dispute, claim or controversy solely and exclusively through Scientology's internal Ethics, Justice and binding religious arbitration procedures, which include application to senior ecclesiastical bodies, including, as necessary, final submission of the dispute to the International Justice Chief of the Mother Church of the Scientology religion, Church of Scientology International ("IJC") or his or her designee.

**e.** Any dispute, claim or controversy which still remains unresolved after review by the IJC shall be submitted to binding religious arbitration in accordance with the arbitration procedures of Church of Scientology International, which provide that:

**i.** I will submit a request for arbitration to the IJC and to the person or entity with whom I have the dispute, claim or controversy;

**ii.**  in my request for arbitration, I will designate one arbitrator to hear and resolve the matter;

**iii.**  within fifteen (15) days after receiving my request for arbitration, the person or entity with whom I have the dispute, claim or controversy will designate an arbitrator to hear and resolve the matter. If the person or entity with whom I have the dispute, claim or controversy does not designate an arbitrator within that fifteen (15) day period, then the IJC will designate the second arbitrator;

**iv.**  the two arbitrators so designated will select a third arbitrator within fifteen (15) days after the designation of the second arbitrator. If the arbitrators are unable to designate a third arbitrator within the fifteen (15) day period, then the IJC will choose the third arbitrator;

**v.**  consistent with my intention that the arbitration be conducted in accordance with Scientology principles, and consistent with the ecclesiastical nature of the procedures and the dispute, claim or controversy to which those procedures relate, it is my specific intention that all such arbitrators be Scientologists in good standing with the Mother Church.

**f.**  The Church and all other Scientology churches and organizations which espouse, present, propagate or practice the Scientology religion are each separate, distinct legal corporations, and each such entity is independently responsible for its own management and is independently responsible for its own corporate and ecclesiastical affairs.

**7.**  This Contract is my good faith application to participate in Scientology Religious Services. By signing this Contract, I promise, covenant, and represent that:

**a.**  I am applying to participate in Scientology Religious Services to achieve spiritual betterment because I truly believe that persons can be helped to gain greater understanding and happiness in life.

**b.**  I am applying honestly and in good faith to derive all possible personal gain from Scientology Religious Services.

**c.**  I have no record of being committed in an institution for mental or emotional disorders.

**d.**  I have no criminal record that includes a felony offense.

**e.**  I am not connected with any person, such as by marital or familial ties, of known antagonism to spiritual treatment or to Scientology.

**f.**  Neither I nor any member of my immediate family has ever sued, embarrassed or attacked, or threatened to sue, embarrass or attack, Scientology.

**g.**  I am not attempting to investigate Scientology as a representative of any news media, government agency or entity, or any other organization, entity or person.

**8.**  This Contract will become a legally binding agreement between me and the Church upon its acceptance by the Church or upon my commencing my participation in a Scientology Religious Service, whichever occurs first. In determining whether to accept this Contract, I acknowledge that the Church will rely on the acknowledgements, agreements, representations and promises which I have made herein.

**9.**  As further consideration for the Church's permission for me to participate in Scientology Religious Services and for me to use its facilities and other facilities provided for such purposes:

**a.**  I, on behalf of myself and on behalf of my heirs, distributees, legal representatives and assigns, agree not to make claims against, sue, attach the property of, or prosecute the Church, the successors and assigns of L. Ron Hubbard, Church of Spiritual Technology, Religious Technology Center, the Church of Scientology International, any and all Scientology-affiliated churches, missions, corporations, associations, partnerships, trusts, religious orders or organizations, or, in any and all capacities and as individuals, their officers, directors, trustees, agents, servants, successors, heirs, executors or representatives, or the owners, managers, employees, agents or representatives or associates of, any facilities conducting Scientology Religious Services (hereinafter collectively **"the Releasees"**) for any physical, mental or emotional injury, property damage, or monetary loss resulting from negligence or other acts, howsoever caused, of any Releasee or of any employee, agent or contractor of the Church, its affiliates, or other Releasee, in any way relating to my participation in Scientology Religious Services.

**b.**  I further release and discharge the releasees in any and all capacities and as individuals from all actions, claims or demands I, my heirs, distributees, guardians, legal representatives or assigns now have or may hereafter have for any physical, mental or emotional injury, property damage, or monetary loss resulting in any way from my participation in Scientology Religious Services.

**c.** I further agree to indemnify and save and hold harmless the Releasees in any and all capacities and as individuals, and each of them, from any loss, liability, damage or cost they may incur due to my participation in Scientology Religious Services or due to my presence or action in or about the Church premises or the facilities providing such services.

**d.** I understand, acknowledge and agree that should any provision or provisions of this Contract be, for any reason, unenforceable, the balance shall nonetheless be of full force and effect.

**e.** I further understand, acknowledge and agree that this Contract contains everything that the Church or Church representatives and I have addressed and discussed with respect to Scientology Religious Services, and that it constitutes the sole and entire agreement which contains everything that I have relied upon in applying to participate in Scientology Religious Services and supersedes any and all verbal discussions I have had with anyone.

**I HAVE CAREFULLY READ THIS CONTRACT AND FULLY UNDERSTAND ITS CONTENTS AND CONSEQUENCES. I ALSO UNDERSTAND THAT I AM NOT ELIGIBLE FOR ANY SCIENTOLOGY RELIGIOUS SERVICES UNLESS I SIGN THIS CONTRACT. I REAFFIRM THAT I WISH TO PARTICIPATE IN SCIENTOLOGY RELIGIOUS SERVICES AND THAT THIS CHOICE IS AN INDEPENDENT EXERCISE OF MY OWN FREE WILL. I FULLY UNDERSTAND THAT BY SIGNING BELOW, I AM FOREVER GIVING UP MY RIGHT TO SUE THE CHURCH, ITS STAFF AND ANY OF THE HEREINABOVE REFERENCED RELEASEES FOR ANY INJURY OR DAMAGE SUFFERED IN ANY WAY CONNECTED WITH SCIENTOLOGY RELIGIOUS SERVICES .**

I sign this Religious Services Enrollment Application, Agreement and General Release on this _1_ day of _Febr.ury_, 20__, intending to be legally bound by it, and request that I be permitted to participate in Scientology Religious Services.

_[signature]_

(SIGNATURE OF APPLICANT)

_ANTON BAXTER_

(Printed Full Name)

(Home Address)

_____

(SIGNATURE OF PARENT OR GUARDIAN, IF APPLICANT IS A MINOR)

(Printed Full Name)

(Home Address)

_[signature]_

(SIGNATURE OF WITNESS)

(Printed Full Name)

Having reviewed the above Religious Services Enrollment Application, Agreement and General Release the Church, in reliance upon, and conditioned upon, the truthful promises, representations and agreements made therein, on this _____ day of _____, 20__ accepts _____ for participation in Scientology Religious Services.

CHURCH OF SCIENTOLOGY
FLAG SHIP SERVICE ORGANIZATION, INC.

By its: _Secretary_

(Title)

(SIGNATURE) _____

**Exhibit B**



*Church of Scientology*
*Flag Ship Service Organization*
*(hereinafter referred to as "the Church")*

*Religious Services*
*Enrollment Application,*
*Agreement and General Release*

1.  I, _Laura Licher_, recognize, acknowledge and agree that I am exclusively responsible for my present and future condition in life and for the choices and decisions I make affecting my life. With that in mind, and solely of my own volition and in the independent exercise of my own free will, I am voluntarily signing and submitting to **CHURCH OF SCIENTOLOGY** _FSSO_ (hereinafter "the Church") this **RELIGIOUS SERVICES ENROLLMENT APPLICATION, AGREEMENT AND GENERAL RELEASE** (hereinafter "this Contract") so that, upon its acceptance by the Church, I may participate in Religious Services of the Scientology religion under the terms, conditions, covenants, waivers and releases I agree to by signing this Contract.

2.  This Contract is my statement of my personal, self-determined desire to participate in the Religious Services of the Scientology religion. By signing this Contract, I recognize, acknowledge and agree that:

    a.  Scientology is a religion, the Church is a church of the Scientology religion, and all the services and activities of the Scientology religion are exclusively religious in nature.

    b.  The Scientology religion is devoted to the study and handling of the human spirit in relationship to itself, universes and other life. The word "Scientology" comes from the Latin "scio," meaning "knowing in the fullest sense of the word," and the Greek "logos," meaning "study of." Dianetics spiritual healing technology is part of the Scientology religion and is the study of what the soul is doing to the body. The word "Dianetics" is from the Greek "dia," meaning "through," and "nous," meaning "soul," and thus means "through soul."

    c.  The Founder of the Scientology religion is American author and philosopher L. Ron Hubbard (hereinafter "**LRH**"), whose writings and recorded spoken words on the subjects of Scientology and Dianetics are a record of his observations and research into the nature of the human spirit and condition. The writings and recorded spoken words of LRH on the subjects of Scientology and Dianetics present a guide intended to assist persons to become more aware of themselves as persons, restoring trust and respect for self and others. They are not a statement of claims by the Church, by any other Scientology church or organization, or by LRH.

    d.  The term "Religious Services," as used in this Contract, means and refers to the beliefs and practices set forth in the writings and spoken words of LRH on the subjects of Dianetics and Scientology published with the identifying S and double triangle or Dianetics triangle symbol, and all services or application of the principles of Mr. Hubbard provided to me by the ministers or staff of the Church and all other Scientology churches and organizations, including without limitation: "auditing," which is Scientology's unique form of religious counseling encompassing all services on the Scientology Classification, Gradation and Awareness Charts which includes, without limitation, all levels, rundowns, grades, assists, reviews, repairs, seminars, co-audits; all Scientology congregational services of any

description; "training," which is the study of the scripture of the Scientology religion on the road to achieving spiritual freedom and salvation and includes without limitation all services identified on the Scientology Classification, Gradation and Awareness Chart, all courses, internships and cramming; the application of Scientology Ethics and Justice technology, which are both exclusively religious components of the practice of the Scientology religion; the study and the application of the principles contained in the administrative writings of LRH used within the Church; and any and all other services or use of the technology of L. Ron Hubbard, without limitation, provided to me by the ministers or staff of the Church and all other Scientology churches and organizations.

    **e.**    Neither the Church nor any other Scientology church or organization which espouses, presents, propagates or practices the Scientology religion makes any claim:

        **i.**    that the nature or purpose of Scientology, or of Dianetics, or of the writings and recorded spoken words of LRH, is contrary to what is stated in this Contract;

        **ii.**    that the application of any Scientology or Dianetics technology or practice will have any particular effect on me or any other person; or

        **iii.**    that any particular result may be forthcoming from my participation in any Scientology Religious Service. I specifically acknowledge that I have read and that I understand Scientology Policy Directive 13 March 1996, Statements by Staff Members, which states clearly that if any individual staff member of any Scientology church or organization makes any claims about the results which may be forthcoming from my participation in any Scientology Religious Service, any such claims are the personal opinions and beliefs of that staff member only, and are not claims made by the Church or any other Scientology church or organization.

**3.**    I have seen the film "Orientation" and I am now informed and aware and fully understand that Scientology is a religion, that its teachings are religious and that its claims are religious in nature. I am further informed and aware and fully understand that when I participate in Scientology services, I am participating in religious services under the ecclesiastical principles of the Scientology religion. I am also informed and aware and fully understand that the Church and all other Scientology churches are separate, distinct legal corporations each independently operating and responsible for its own corporate and ecclesiastical affairs.

**4.**    This Contract is my commitment that I desire to participate in Scientology Religious Services exclusively for spiritual purposes in accordance with the beliefs and practices of the Scientology religion. Scientology Religious Services are designed to give spiritual aid, not medical treatment. However, the Scientology religion teaches that the spirit can be saved and that the spirit alone may save or heal the body, and Scientology Religious Services are intended to save the spirit. By signing this Contract, I recognize, acknowledge and agree that:

    **a.**    Scientology Religious Services are not intended and are not used for diagnosing ailments of the body or for engaging in the teaching or practice of any medical arts or sciences.

    **b.**    It is exclusively my responsibility to see to my physical and medical well-being, and under no circumstance does the Church or any other Scientology church or organization which espouses, presents, propagates or practices the Scientology religion have any responsibility whatsoever in that regard.

    **c.**    I have not come to the Church, nor do I seek to participate in Scientology Religious Services, solely to be cured of any physical illness, ailment or condition.

    **d.**    While the registrar can assist me in arranging for a competent medical examination and appropriate treatment by a qualified medical practitioner before I participate in any Scientology Religious Services, it is solely my responsibility to take whatever steps are necessary to demonstrate that I have no diagnosable or medically treatable illnesses, ailments, or conditions that are not under competent medical care before I begin participating in any Scientology Religious Service. Thereafter, any physical illness, ailment or condition I may have that has been treated medically may then be addressed spiritually by the application of the tenets of the Scientology religion, subject to the terms of this Contract.

    **e.**    I know that I should not participate in any Scientology Religious Service if I have a physical or mental condition which might be aggravated or which might make my participation in the service uncomfortable or distressful to me, and I agree to accept and assume any and all known or unknown risks of injury, loss, or damage resulting from my choices and decisions in that regard.

    **f.**    Scientology Religious Service may entail the use of a religious artifact known as the "E-Meter" for the purpose of locating and resolving problems and difficulties which are spiritual in nature. I understand that, by itself, the E-Meter does nothing, but serves only as a guide to Scientology ministers to assist parishioners in locating areas of spiritual distress or travail, and that it is not intended or effective for the diagnosis, treatment or prevention of any disease, or for the improvement of health or any bodily function.

**g.** Scientology is unalterably opposed, as a matter of religious belief, to the practice of psychiatry, and espouses as a religious belief that the study of the mind and the healing of mentally caused ills should not be alienated from religion or condoned in nonreligious fields. I am in full agreement with this religious belief. I do not believe in or subscribe to psychiatric labels for individuals. It is my strongly held religious belief that all mental problems are spiritual in nature and that there is no such thing as a mentally incompetent person -- only those suffering from spiritual upset of one kind or another dramatized by an individual. I reject all psychiatric labels and intend for this Contract to clearly memorialize my desire to be helped exclusively through religious, spiritual means and not through any form of psychiatric treatment, specifically including involuntary commitment based on so-called lack of competence. Under no circumstances, at any time, do I wish to be denied my right to care from members of my religion to the exclusion of psychiatric care or psychiatric directed care, regardless of what any psychiatrist, medical person, designated member of the state or family member may assert supposedly on my behalf. If circumstances should ever arise in which government, medical, or psychiatric officials or personnel or family members or friends attempt to compel or coerce or commit me for psychiatric evaluation, treatment or hospitalization, I fully desire and fully expect that the Church or Scientologists will intercede on my behalf to oppose such efforts and/or extricate me from that predicament so my spiritual needs may be addressed in accordance with the tenets of the Scientology religion free from psychiatric intervention.

**5.** This Contract memorializes my intention to participate in Scientology Religious Services only for purposes of self-improvement and spiritual advancement. By signing this Contract, I recognize, acknowledge and agree that:

**a.** Achieving the benefits and goals of the Scientology religion requires my dedicated participation, because only through my own efforts can I achieve those benefits and goals.

**b.** Before I go on to any further service, it is essential that I am completely satisfied with my experience with my prior service. While Scientology holds out the possibility of a better life through adherence to its beliefs and practices, individual spiritual advancement is not always an easy or comfortable task, and my success in Scientology ultimately depends on my own ability, strength and determination to overcome the shortcomings and harmful patterns of my past. By agreeing to proceed with further services, I acknowledge complete satisfaction with all services I have participated in previously.

**c.** No Scientology church is under any duty or obligation whatsoever to return any portion of any religious donation I make. However, I have read Scientology Policy Directive 13 March 1996, Return of Donations, and understand that under certain circumstances identified in published ecclesiastical policies such as that Scientology Policy Directive, a return of donations may be obtained through my strict compliance with those published policies and procedures relating to the Claims Verification Board. I further understand, acknowledge and agree that:

**i.** such procedures require my direct participation to the exclusion of any third parties, including, but not limited to, attorneys;

**ii.** returns of donations are exclusively within the ecclesiastical authority and sole discretion of the Claims Verification Board;

**iii.** any violation of, or deviation from, such published policies by me voids any possibility of my receiving a return of a donation; and

**iv.** should I, at any time, ever request a refund or repayment of donations, such refund or repayment will be given if and only if I have followed the exact procedures of the Claims Verification Board and this Contract, and that in exchange for refund or repayment of such donations as determined by the Claims Verification Board, I execute a complete release, quitclaim and waiver of claims as provided by an authorized Church representative.

**d.** In connection with my participation in Scientology Religious Services, the Church may compile a folder containing its notations of my spiritual progress, known as a "Preclear Folder" or "PC Folder," as well as other ecclesiastical files containing notations regarding my spiritual progress. All of my PC Folders and other ecclesiastical files containing notations regarding my spiritual progress, as well as all contents thereof, are the sole and exclusive property of Church of Scientology International. As a matter of religious belief and of ecclesiastical doctrine and law, such folders and files, and the contents of such folders and files, are kept confidential from all persons who lack the ecclesiastical authority to gain access to such materials, including me, are subject to all applicable clergyman-penitent privileges, and are neither comprehensible nor meant to be understood by anyone whose training and expertise in their interpretation is not recognized and sanctioned by Church of Scientology International.

**i.** As a condition of being accepted for participation in Scientology Religious Services, I forever abandon, surrender, waive, and relinquish without limitation any and all rights of ownership, possession, custody, control, access, copying, and viewing of my PC Folder or Folders and all other ecclesiastical files containing any notations regarding my spiritual progress, both with respect to the folders and files themselves and the information contained in them.

**ii.** The abandonment, surrender, waiver, and relinquishment to which I refer in the immediately preceding subparagraph is unconditional and irrevocable and applies equally to anyone acting or purporting to be acting on my behalf or for my benefit, whether I am alive or dead, whether I am disabled or incapacitated, and under any and all circumstances foreseen or unforeseen, in perpetuity, without exception or limitation.

**iii.** Should I or anyone acting or purporting to be acting on my behalf or for my benefit ever seek access to any of my PC Folders or any other ecclesiastical file containing any notations regarding my spiritual progress, I intend for the submission of this Contract to the presiding judicial officer to be a complete and sufficient basis for the immediate denial of whatever access is being sought with prejudice to any other or further effort to breach the absolute confidentiality of those materials or the exclusive right of Church of Scientology International to preserve their absolute confidentiality.

**e.** It is both an unalterable religious belief and a matter of ecclesiastical custom of the Scientology religion that my personal spiritual progress will be directed by a minister known as a Case Supervisor who determines which Religious Services are appropriate for my personal spiritual progress and the sequence in which I will participate in such Religious Services. As a matter of religious belief, I acknowledge that my Case Supervisor will make the decisions regarding the appropriate course of my spiritual progress, and I will abide by the decisions and direction of my Case Supervisor in guiding my spiritual progress. All Religious Services in which I participate hereafter at the direction of my Case Supervisor are subject to the terms of this Contract.

**6.** This Contract memorializes my freely given consent to be bound exclusively by the discipline, faith, internal organization, and ecclesiastical rule, custom, and law of the Scientology religion in all matters relating to Scientology Religious Services, in all my dealings of any nature with the Church, and in all my dealings of any nature with any other Scientology church or organization which espouses, presents, propagates or practices the Scientology religion. By signing this Contract, I recognize, acknowledge and agree that:

**a.** My freely given consent to be bound exclusively by the discipline, faith, internal organization, and ecclesiastical rule, custom, and law of the Scientology religion in all matters relating to Scientology Religious Services, in all my dealings of any nature with the Church, and in all my dealings of any nature with any other Scientology church or organization which espouses, presents, propagates or practices the Scientology religion means that I am forever abandoning, surrendering, waiving, and relinquishing my right to sue, or otherwise seek legal recourse with respect to any dispute, claim or controversy against the Church, all other Scientology churches, all other organizations which espouse, present, propagate or practice the Scientology religion, and all persons employed by any such entity, both in their personal and any official or representational capacities, regardless of the nature of the dispute, claim or controversy.

**b.** The abandonment, surrender, waiver, and relinquishment to which I refer in the immediately preceding subparagraph is unconditional and irrevocable and applies equally to anyone acting or purporting to be acting on my behalf or for my benefit, whether I am alive or dead, whether I am disabled or incapacitated, and under any and all circumstances foreseen or unforeseen, in perpetuity, without exception or limitation.

**c.** Should I or anyone acting or purporting to be acting on my behalf ever sue, or otherwise seek legal recourse with respect to any dispute, claim or controversy against the Church, any other Scientology church, any other organization which espouses, presents, propagates or practices the Scientology religion, or any person employed by any such entity, regardless of the nature of the dispute, claim or controversy, I intend for the submission of this Contract to the presiding judicial officer to be a complete and sufficient basis for the immediate dismissal of any and all such proceedings with prejudice to further proceedings of any kind.

**d.** In accordance with the discipline, faith, internal organization, and ecclesiastical rule, custom, and law of the Scientology religion, and in accordance with the constitutional prohibitions which forbid governmental interference with religious services or dispute resolution procedures, should any dispute, claim or controversy arise between me and the Church, any other Scientology church, any other organization which espouses, presents, propagates or practices the Scientology religion, or any person employed by any such entity, which cannot be resolved informally by direct communication, I will pursue resolution of that dispute, claim or controversy solely and exclusively through Scientology's internal Ethics, Justice and binding religious arbitration procedures, which include application to senior ecclesiastical bodies, including, as necessary, final submission of the dispute to the International Justice Chief of the Mother Church of the Scientology religion, Church of Scientology International ("IJC") or his or her designee.

**e.** Any dispute, claim or controversy which still remains unresolved after review by the IJC shall be submitted to binding religious arbitration in accordance with the arbitration procedures of Church of Scientology International, which provide that:

**i.** I will submit a request for arbitration to the IJC and to the person or entity with whom I have the dispute, claim or controversy:

**ii.**   in my request for arbitration, I will designate one arbitrator to hear and resolve the matter;

**iii.**   within fifteen (15) days after receiving my request for arbitration, the person or entity with whom I have the dispute, claim or controversy will designate an arbitrator to hear and resolve the matter. If the person or entity with whom I have the dispute, claim or controversy does not designate an arbitrator within that fifteen (15) day period, then the IJC will designate the second arbitrator;

**iv.**   the two arbitrators so designated will select a third arbitrator within fifteen (15) days after the designation of the second arbitrator. If the arbitrators are unable to designate to a third arbitrator within the fifteen (15) day period, then the IJC will choose the third arbitrator;

**v.**   consistent with my intention that the arbitration be conducted in accordance with Scientology principles, and consistent with the ecclesiastical nature of the procedures and the dispute, claim or controversy to which those procedures relate, it is my specific intention that all such arbitrators be Scientologists in good standing with the Mother Church.

**f.**   The Church and all other Scientology churches and organizations which espouse, present, propagate or practice the Scientology religion are each separate, distinct legal corporations, and each such entity is independently responsible for its own management and is independently responsible for its own corporate and ecclesiastical affairs.

**7.**   This Contract is my good faith application to participate in Scientology Religious Services. By signing this Contract, I promise, covenant, and represent that:

**a.**   I am applying to participate in Scientology Religious Services to achieve spiritual betterment because I truly believe that persons can be helped to gain greater understanding and happiness in life.

**b.**   I am applying honestly and in good faith to derive all possible personal gain from Scientology Religious Services.

**c.**   I have no record of being committed in an institution for mental or emotional disorders.

**d.**   I have no criminal record that includes a felony offense.

**e.**   I am not connected with any person, such as by marital or familial ties, of known antagonism to spiritual treatment or to Scientology.

**f.**   Neither I nor any member of my immediate family has ever sued, embarrassed or attacked, or threatened to sue, embarrass or attack, Scientology.

**g.**   I am not attempting to investigate Scientology as a representative of any news media, government agency or entity, or any other organization, entity or person.

**8.**   This Contract will become a legally binding agreement between me and the Church upon its acceptance by the Church or upon my commencing my participation in a Scientology Religious Service, whichever occurs first. In determining whether to accept this Contract, I acknowledge that the Church will rely on the acknowledgements, agreements, representations and promises which I have made herein.

**9.**   As further consideration for the Church's permission for me to participate in Scientology Religious Services and for me to use its facilities and other facilities provided for such purposes:

**a.**   I, on behalf of myself and on behalf of my heirs, distributees, legal representatives and assigns, agree not to make claims against, sue, attach the property of, or prosecute the Church, the successors and assigns of L. Ron Hubbard, Church of Spiritual Technology, Religious Technology Center, the Church of Scientology International, any and all Scientology-affiliated churches, missions, corporations, associations, partnerships, trusts, religious orders or organizations, or, in any and all capacities and as individuals, their officers, directors, trustees, agents, servants, successors, heirs, executors or representatives, or the owners, managers, employees, agents or representatives or associates of, any facilities conducting Scientology Religious Services (hereinafter collectively **"the Releasees"**) for any physical, mental or emotional injury, property damage, or monetary loss resulting from negligence or other acts, howsoever caused, of any Releasee or of any employee, agent or contractor of the Church, its affiliates, or other Releasee, in any way relating to my participation in Scientology Religious Services.

**b.**   I further release and discharge the releasees in any and all capacities and as individuals from all actions, claims or demands I, my heirs, distributees, guardians, legal representatives or assigns now have or may hereafter have for any physical, mental or emotional injury, property damage, or monetary loss resulting in any way from my participation in Scientology Religious Services.

c.   I further agree to indemnify and save and hold harmless the Releasees in any and all capacities and as individuals, and each of them, from any loss, liability, damage or cost they may incur due to my participation in Scientology Religious Services or due to my presence or action in or about the Church premises or the facilities providing such services.

d.   I understand, acknowledge and agree that should any provision or provisions of this Contract be, for any reason, unenforceable, the balance shall nonetheless be of full force and effect.

e.   I further understand, acknowledge and agree that this Contract contains everything that the Church or Church representatives and I have addressed or discussed with respect to Scientology Religious Services, and that it constitutes the sole and entire agreement which contains everything that I have relied upon in applying to participate in Scientology Religious Services and supersedes any and all verbal discussions I have had with anyone.

**I HAVE CAREFULLY READ THIS CONTRACT AND FULLY UNDERSTAND ITS CONTENTS AND CONSEQUENCES. I ALSO UNDERSTAND THAT I AM NOT ELIGIBLE FOR ANY SCIENTOLOGY RELIGIOUS SERVICES UNLESS I SIGN THIS CONTRACT. I REAFFIRM THAT I WISH TO PARTICIPATE IN SCIENTOLOGY RELIGIOUS SERVICES AND THAT THIS CHOICE IS AN INDEPENDENT EXERCISE OF MY OWN FREE WILL. I FULLY UNDERSTAND THAT BY SIGNING BELOW, I AM FOREVER GIVING UP MY RIGHT TO SUE THE CHURCH, ITS STAFF AND ANY OF THE HEREINABOVE REFERENCED RELEASEES FOR ANY INJURY OR DAMAGE SUFFERED IN ANY WAY CONNECTED WITH SCIENTOLOGY RELIGIOUS SERVICES .**

I sign this Religious Services Enrollment Application, Agreement and General Release on this _27_ day of
_March_____, 2004 intending to be legally bound by it, and request that I be permitted to participate in Scientology Religious Services.

_____

(SIGNATURE OF APPLICANT)

LAURA WAGNER

(Printed Full Name)

Freewinds

(Home Address)

N/A

(SIGNATURE OF PARENT OR GUARDIAN, IF APPLICANT IS A MINOR)

_____

(Printed Full Name)

_____

(Home Address)

_____

(SIGNATURE OF WITNESS)

Susan  J.  ALLCOCK

(Printed Full Name)

Having reviewed the above Religious Services Enrollment Application, Agreement and General Release the Church, in reliance upon, and conditioned upon, the truthful promises, representations and agreements made therein, on this _____ day of _____, 20___, accepts _____ for participation in Scientology Religious Services.

CHURCH OF SCIENTOLOGY
FLAG SHIP SERVICE ORGANIZATION, INC.

By its:_____

(Title)

(SIGNATURE)_____

**Exhibit C**

# CHURCH OF SCIENTOLOGY FLAG SHIP SERVICE ORGANIZATION, INC.

## DECLARATION OF RELIGIOUS COMMITMENT AND MEMBERSHIP IN THE SEA ORGANIZATION

I, _Gawain Anton Baxter_, (full name) of _210 South Fort Harrison Ave Clearwate, Fl_ (address) a member of the Scientology Religious Order known as the Sea Organization apply for active participation as a Sea Organization member within **Church of Scientology Flag Ship Service Organization, Inc.,** _118 N. Ft. Harrison Ave Clearwater Fl_ (address) hereinafter referred to as the "Church" for such period of time, up to and including the remainder of my life, as I may be assigned to this particular Church as a member of the Sea Organization pursuant to the terms of this Application, Declaration and General Release (hereafter referred to as the "Covenant").

## PLEDGE OF RELIGIOUS COMMITMENT

1. I understand that the Sea Organization is an unincorporated religious order within the Scientology religion. Sea Organization members serve at many churches and organizations around the world. Sea Organization members form the dedicated core of the religion. As a Sea Organization member I have signed a pledge of eternal service to the Scientology religion and its goals.

2. I acknowledge that this Covenant binds me to follow the ecclesiastical, moral and ethical policies, rules, norms and practices of the Scientology religion as a member of a religious order and to follow the administrative policies and procedures of the Church.

3. I understand and agree that by this covenant I am declaring a religious commitment to spiritual awareness, to the Scientology religion and to create a better world, in accordance with this covenant.

4. I further understand that all Sea Organization members including myself, are members of a religious order; that they serve pursuant to their religious obligations and not in contemplation of receiving any monetary gain or for other traditional commercial or financial motives or incentives whatsoever, and in doing so that they are forsaking all commercial and financial motivation.

5. I further understand that each Sea Organization member considers himself/herself a volunteer to create a better world, and understands that

2

he/she is not an employee, i.e. is not entitled to receive secular benefits such as a minimum wage or overtime compensation.

PLEASE INITIAL _____

6. I have seen the film "Orientation" and I am now informed and aware that Scientology is a religion, its teachings are religious and its claims are religious in nature. I further understand that if I desire to participate in Scientology services, I do so being fully aware that these are religious services and that I am participating in them under the ecclesiastical principles of the Scientology religion.

7. I attest that I have been given and read Scientology Policy Directive 13 March 1996, Issue I RETURN OF DONATIONS and Scientology Policy Directive 13 March 1996, Issue II STATEMENTS BY STAFF MEMBERS.

8. I agree to maintain the confidentiality of all communications (whether written or oral), all documents, all files, all mailing lists, and all other material not commonly offered to the public for sale or use (collectively "Materials") which may come into my knowledge or possession in the course of my service as a member of the Sea Organization. In other words, without limiting the generality of the foregoing, I agree not to remove Materials from the premises where I perform services as a staff member, and not to disclose contents or give out copies of Materials coming into my possession except in the ordinary course of performing my duties as a staff member pursuant to Church policy. Should my lifetime service as a Sea Organization member terminate for whatsoever reason I agree to return all Materials in my possession, custody or control and not to disclose the content or substance of any Materials which have become known to me to anyone without the prior written consent of the Church.

9. I agree that any claim, dispute or controversy arising out of this Covenant or relating to any Scientology or Dianetics services or activities that I engage in shall first be submitted in writing to the International Justice Chief ("IJC"), who shall decide the matter in accordance with the religious doctrines of the Church including Scientology justice procedures. I understand that in the event that I am unhappy with the decision of the IJC that I may have recourse to other ecclesiastical justice procedures described in the policy of the Church.

In no event shall such claim or controversy be submitted to a court for judicial determination as the parties understand that such matters are religious in nature.

3

## REPRESENTATION

I hereby represent that I am fully familiar with and that I fully meet and will continue to meet all requirements to serve as a Church staff member and a member of the Sea Organization.

## TERMS AND CONDITIONS

I understand and agree that my participation as a member of the Sea Organization shall be based upon the following:

1. SERVICE HOURS AND EXTRA SERVICE. Sea Organization members serve pursuant to their religious commitment and are on call as needed 24 hours a day seven days a week to carry out their duties.

2. HOLIDAYS. Three (3) weeks per continuous active year of service.

3. PENSION. The Church does not provide a formal pension or retirement program.

4. FURNISHING OF NECESSARIES. Sea Organization members serve pursuant to their personal religious commitment and conviction rather than for monetary gain or other traditional commercial or financial motives or incentives. Nevertheless, the Church will, pursuant to this covenant, furnish certain necessaries in accordance with established ecclesiastical policy including a small weekly allowance. The furnishing of these necessary items is solely intended to provide an opportunity for the Church to establish an appropriate environment within which religious and spiritual awareness may receive the greatest prospect for enhancement and in which such matters constitute the sole reward for services. The amount of material support may vary depending upon economic conditions generally prevailing within the Church.

5. POLICY. Policy is defined as the long-range truths or facts which are not subject to change expressed as operational rules or guides. Sea Organization members are subject to existing Church policy which is published in different types of directives authorized by Church management and which is subject to amendment, deletion and/or addition with or without prior notice. Sea Organization members study and receive examination on their knowledge of the different directives relating to their activities and upon other directives as from time to time are necessary. Sea Organization members may be dismissed in accordance with policy.

4

6. BREACH OF COVENANT. If a Sea Organization member participates in auditing and training without making the donations requested of other Scientologists and subsequently breaks this covenant either by leaving the Sea Organization or by being dismissed in accordance with policy, he has a moral obligation to make restitution in accordance with Church policy which must be paid if the person is to be again eligible to participate in religious services. This obligation is intended solely as a manifestation of applicable ecclesiastical ethics.

7. ETHICAL CONDUCT. As members of a religious order, Sea Organization members are expected to uphold a high degree of personal ethical conduct in accordance with Church policy and doctrine. Sea Organization members are governed by the ethics policies of the Church, which are designed to assist a person to become a more ethical, productive and happy being. As part of my obligation to uphold a standard of ethical conduct, I have read and agree to abide by "The Code of a Sea Org Member".

8. SERVICE WITH OTHER SCIENTOLOGY CHURCHES. It is acknowledged that as part of my duties as a Sea Organization member I will be posted and/or affiliated with individual Scientology Churches and/or related organizations wherein I will render service to forward the purposes of the Scientology religion. I further acknowledge that I may from time to time be transferred from one Church or related organization to another pursuant to ecclesiastical policy and need. I agree to abide by all the terms of this covenant with respect to my service to any Scientology Church or related organization.

9. ENTIRETY OF COVENANT. The Sea Organization or the Church shall not be obligated to honor any verbal promises or any other terms or conditions not specifically covered in this Covenant. This Covenant forms the entirety of the Church's agreement with the Sea Organization member and promises no specific counselling, training, posts or other benefits to any Sea Organization member beyond those set forth in this Covenant.

10. STATEMENTS TO MEDIA. To allow for the orderly administration and efficient management of the Church, it is the strict policy of the Church that only its designated representatives make statements to the media. Therefore, for the duration of my relationship with the Church, I agree to make no statements or comments to any representative of the press or any electronic or other media or any public statement of any nature concerning any Church of Scientology, its personnel, or L. Ron Hubbard, unless specifically authorized to do so in writing by the Church.

5

## GENERAL RELEASE
### (Read Carefully)

AS A MATTER OF RELIGIOUS PRINCIPLE, SCIENTOLOGISTS
AGREE THAT THEY WILL RESOLVE ALL DISPUTES THROUGH
THE ECCLESIASTICAL JUSTICE PROCEDURES OF THE CHURCH
WHICH PROCEDURES SEEK FAIR AND JUST SOLUTIONS TO ALL
VALID CLAIMS. AS A REAFFIRMATION OF MY COMMITMENT TO
THE SCIENTOLOGY RELIGION AND THE SEA ORGANIZATION
AND AS FURTHER CONSIDERATION AND INDUCEMENT FOR
BEING PERMITTED TO PARTICIPATE IN THE SEA ORGANIZATION,
I HEREBY AGREE TO THE FOLLOWING GENERAL RELEASE.

A. I HEREBY AGREE THAT I, MY HEIRS, DISTRIBUTEES,
GUARDIANS, LEGAL REPRESENTATIVES AND ASSIGNS WILL NOT
MAKE CLAIM AGAINST, SUE, ATTACH THE PROPERTY OF, OR
PROSECUTE the Church, the Sea Organization and its members, any
successor of L. Ron Hubbard, Religious Technology Center and its
principals, Church of Scientology International, and/or any of its affiliated
Churches, Missions, corporations, associations, partnerships or organization,
and/or their agents, servants, successors, heirs, executors and assigns,
(hereinafter collectively referred to as "the Releasees") for injury or damage
resulting from the negligence or other acts, howsoever caused, by any
Releasee or by any employee, agent or contractor of the Church, its
affiliates, or other Releasee, arising out of or in any way connected with my
membership in the Sea Organization, active participation in the Sea
Organization or association with the Releasees.

B. I HEREBY RELEASE AND DISCHARGE THE RELEASEES
from all actions, claims or demands I, my heirs, distributees, guardians, legal
representatives or assigns ever had, now have or may hereafter have for
injury or damage resulting from or any way connected with my membership
in the Sea Organization, active participation in the Sea Organization or
association with Releasees.

C. I FURTHER AGREE TO INDEMNIFY AND SAVE AND
HOLD HARMLESS THE RELEASEES and each of them from any loss,
inability, damage or cost, including but not limited to attorneys' fees they
may incur, whether caused by the negligence of the Releasees or otherwise,
as a result of (a) my breach of any terms and conditions contained herein;
(b) my breach of the fiduciary duties owed to the Church and/or the
Releasees; (c) my activity within the Church or my conduct in the
community at large with regard to the Church and/or the Releasees whether
or not such activity or conduct is pursuant to this Covenant; (d) any

6

statements made by me herein, which are now false or which hereafter become false; and/or (e) my membership or active participation in the Sea Organization or my association with Releasees.

I have carefully read the above terms of this general release and fully understand them.

I am aware that this is a release of liability, covenant not to sue and indemnity agreement between myself and the Sea Organization, the Church and/or its affiliated organizations and/or other individuals, and I understand and agree that by placing my signature at the end of this document I shall be bound by its terms.

### CONCLUSION

I acknowledge that I have read and fully understand this Covenant and, before voluntarily affixing my signature below, completely understood its contents and all of the consequences of my agreements and waivers. I am joining staff and have become a member of the religious order known as the Sea Organization, of my own free will, solely to help forward the religious goals and tenets of the Scientology religion and the Church and not for monetary gain or solely to participate in auditing or training. I have been given the opportunity to consult persons of my choice and to discuss questions regarding this Covenant. I understand that by executing this Covenant I am accepting this commitment and making a formal religious vow to serve the Church for my entire lifetime. In accordance with Church doctrine, I declare that I have not gone past any word in this Covenant I have not fully understood.

29/7/2001 _____

Date      Signature of Applicant

_____

Signature of parent or guardian if a minor

The Church, in reliance on the truthfulness and sincerity of the Applicant's above representations and the legally and ecclesiastically binding nature of the Applicant's above promises and covenants, agrees to have _____ serve in accordance with the terms of this Covenant, including the information supplied, and upon the conditions stated.

CHURCH OF SCIENTOLOGY FLAG SHIP SERVICE ORGANIZATION, INC.

Date: 5/9/01 By _____

**Exhibit D**

**CHURCH OF SCIENTOLOGY FLAG SHIP SERVICE ORGANIZATION, INC.**

**DECLARATION OF RELIGIOUS COMMITMENT AND MEMBERSHIP
IN THE SEA ORGANIZATION**

I, _Laura Alice Wagner_ , (full name) of
_____ (address) a member of
the Scientology Religious Order known as the Sea Organization apply for
active participation as a Sea Organization member within **Church of
Scientology Flag Ship Service Organization, Inc.,**_____
_____ (address) hereinafter referred to as the
"Church" for such period of time, up to and including the remainder of my
life, as I may be assigned to this particular Church as a member of the Sea
Organization pursuant to the terms of this Application, Declaration and
General Release (hereafter referred to as the "Covenant").

PLEDGE OF RELIGIOUS COMMITMENT

1. I understand that the Sea Organization is an unincorporated
religious order within the Scientology religion. Sea Organization members
serve at many churches and organizations around the world. Sea
Organization members form the dedicated core of the religion. As a Sea
Organization member I have signed a pledge of eternal service to the
Scientology religion and its goals.

2. I acknowledge that this Covenant binds me to follow the
ecclesiastical, moral and ethical policies, rules, norms and practices of the
Scientology religion as a member of a religious order and to follow the
administrative policies and procedures of the Church.

3. I understand and agree that by this covenant I am declaring a
religious commitment to spiritual awareness, to the Scientology religion and
to create a better world, in accordance with this covenant.

4. I further understand that all Sea Organization members including
myself, are members of a religious order; that they serve pursuant to their
religious obligations and not in contemplation of receiving any monetary
gain or for other traditional commercial or financial motives or incentives
whatsoever, and in doing so that they are forsaking all commercial and
financial motivation.

5. I further understand that each Sea Organization member considers
himself/herself a volunteer to create a better world, and understands that

2

he/she is not an employee, i.e. is not entitled to receive secular benefits such as a minimum wage or overtime compensation.

PLEASE INITIAL

6. I have seen the film "Orientation" and I am now informed and aware that Scientology is a religion, its teachings are religious and its claims are religious in nature. I further understand that if I desire to participate in Scientology services, I do so being fully aware that these are religious services and that I am participating in them under the ecclesiastical principles of the Scientology religion.

7. I attest that I have been given and read Scientology Policy Directive 13 March 1996, Issue I RETURN OF DONATIONS and Scientology Policy Directive 13 March 1996, Issue II STATEMENTS BY STAFF MEMBERS.

8. I agree to maintain the confidentiality of all communications (whether written or oral), all documents, all files, all mailing lists, and all other material not commonly offered to the public for sale or use (collectively "Materials") which may come into my knowledge or possession in the course of my service as a member of the Sea Organization. In other words, without limiting the generality of the foregoing, I agree not to remove Materials from the premises where I perform services as a staff member, and not to disclose contents or give out copies of Materials coming into my possession except in the ordinary course of performing my duties as a staff member pursuant to Church policy. Should my lifetime service as a Sea Organization member terminate for whatsoever reason I agree to return all Materials in my possession, custody or control and not to disclose the content or substance of any Materials which have become known to me to anyone without the prior written consent of the Church.

9. I agree that any claim, dispute or controversy arising out of this Covenant or relating to any Scientology or Dianetics services or activities that I engage in shall first be submitted in writing to the International Justice Chief ("IJC"), who shall decide the matter in accordance with the religious doctrines of the Church including Scientology justice procedures. I understand that in the event that I am unhappy with the decision of the IJC that I may have recourse to other ecclesiastical justice procedures described in the policy of the Church.

In no event shall such claim or controversy be submitted to a court for judicial determination as the parties understand that such matters are religious in nature.

3

## REPRESENTATION

I hereby represent that I am fully familiar with and that I fully meet and will continue to meet all requirements to serve as a Church staff member and a member of the Sea Organization.

## TERMS AND CONDITIONS

I understand and agree that my participation as a member of the Sea Organization shall be based upon the following:

1. SERVICE HOURS AND EXTRA SERVICE. Sea Organization members serve pursuant to their religious commitment and are on call as needed 24 hours a day seven days a week to carry out their duties.

2. HOLIDAYS. Three (3) weeks per continuous active year of service.

3. PENSION. The Church does not provide a formal pension or retirement program.

4. FURNISHING OF NECESSARIES. Sea Organization members serve pursuant to their personal religious commitment and conviction rather than for monetary gain or other traditional commercial or financial motives or incentives. Nevertheless, the Church will, pursuant to this covenant, furnish certain necessaries in accordance with established ecclesiastical policy including a small weekly allowance. The furnishing of these necessary items is solely intended to provide an opportunity for the Church to establish an appropriate environment within which religious and spiritual awareness may receive the greatest prospect for enhancement and in which such matters constitute the sole reward for services. The amount of material support may vary depending upon economic conditions generally prevailing within the Church.

5. POLICY. Policy is defined as the long-range truths or facts which are not subject to change expressed as operational rules or guides. Sea Organization members are subject to existing Church policy which is published in different types of directives authorized by Church management and which is subject to amendment, deletion and/or addition with or without prior notice. Sea Organization members study and receive examination on their knowledge of the different directives relating to their activities and upon other directives as from time to time are necessary. Sea Organization members may be dismissed in accordance with policy.

4

6. BREACH OF COVENANT. If a Sea Organization member participates in auditing and training without making the donations requested of other Scientologists and subsequently breaks this covenant either by leaving the Sea Organization or by being dismissed in accordance with policy, he has a moral obligation to make restitution in accordance with Church policy which must be paid if the person is to be again eligible to participate in religious services. This obligation is intended solely as a manifestation of applicable ecclesiastical ethics.

7. ETHICAL CONDUCT. As members of a religious order, Sea Organization members are expected to uphold a high degree of personal ethical conduct in accordance with Church policy and doctrine. Sea Organization members are governed by the ethics policies of the Church, which are designed to assist a person to become a more ethical, productive and happy being. As part of my obligation to uphold a standard of ethical conduct, I have read and agree to abide by "The Code of a Sea Org Member".

8. SERVICE WITH OTHER SCIENTOLOGY CHURCHES. It is acknowledged that as part of my duties as a Sea Organization member I will be posted and/or affiliated with individual Scientology Churches and/or related organizations wherein I will render service to forward the purposes of the Scientology religion. I further acknowledge that I may from time to time be transferred from one Church or related organization to another pursuant to ecclesiastical policy and need. I agree to abide by all the terms of this covenant with respect to my service to any Scientology Church or related organization.

9. ENTIRETY OF COVENANT. The Sea Organization or the Church shall not be obligated to honor any verbal promises or any other terms or conditions not specifically covered in this Covenant. This Covenant forms the entirety of the Church's agreement with the Sea Organization member and promises no specific counselling, training, posts or other benefits to any Sea Organization member beyond those set forth in this Covenant.

10. STATEMENTS TO MEDIA. To allow for the orderly administration and efficient management of the Church, it is the strict policy of the Church that only its designated representatives make statements to the media. Therefore, for the duration of my relationship with the Church, I agree to make no statements or comments to any representative of the press or any electronic or other media or any public statement of any nature concerning any Church of Scientology, its personnel, or L. Ron Hubbard, unless specifically authorized to do so in writing by the Church.

5

### GENERAL RELEASE
(Read Carefully)

AS A MATTER OF RELIGIOUS PRINCIPLE, SCIENTOLOGISTS
AGREE THAT THEY WILL RESOLVE ALL DISPUTES THROUGH
THE ECCLESIASTICAL JUSTICE PROCEDURES OF THE CHURCH
WHICH PROCEDURES SEEK FAIR AND JUST SOLUTIONS TO ALL
VALID CLAIMS.  AS A REAFFIRMATION OF MY COMMITMENT TO
THE SCIENTOLOGY RELIGION AND THE SEA ORGANIZATION
AND AS FURTHER CONSIDERATION AND INDUCEMENT FOR
BEING PERMITTED TO PARTICIPATE IN THE SEA ORGANIZATION,
I HEREBY AGREE TO THE FOLLOWING GENERAL RELEASE.

A. I HEREBY AGREE THAT I, MY HEIRS, DISTRIBUTEES,
GUARDIANS, LEGAL REPRESENTATIVES AND ASSIGNS WILL NOT
MAKE CLAIM AGAINST, SUE, ATTACH THE PROPERTY OF, OR
PROSECUTE the Church, the Sea Organization and its members, any
successor of L. Ron Hubbard, Religious Technology Center and its
principals, Church of Scientology International, and/or any of its affiliated
Churches, Missions, corporations, associations, partnerships or organization,
and/or their agents, servants, successors, heirs, executors and assigns,
(hereinafter collectively referred to as "the Releasees") for injury or damage
resulting from the negligence or other acts, howsoever caused, by any
Releasee or by any employee, agent or contractor of the Church, its
affiliates, or other Releasee, arising out of or in any way connected with my
membership in the Sea Organization, active participation in the Sea
Organization or association with the Releasees.

B. I HEREBY RELEASE AND DISCHARGE THE RELEASEES
from all actions, claims or demands I, my heirs, distributees, guardians, legal
representatives or assigns ever had, now have or may hereafter have for
injury or damage resulting from or any way connected with my membership
in the Sea Organization, active participation in the Sea Organization or
association with Releasees.

C. I FURTHER AGREE TO INDEMNIFY AND SAVE AND
HOLD HARMLESS THE RELEASEES and each of them from any loss,
inability, damage or cost, including but not limited to attorneys' fees they
may incur, whether caused by the negligence of the Releasees or otherwise,
as a result of (a) my breach of any terms and conditions contained herein;
(b) my breach of the fiduciary duties owed to the Church and/or the
Releasees; (c) my activity within the Church or my conduct in the
community at large with regard to the Church and/or the Releasees whether
or not such activity or conduct is pursuant to this Covenant; (d) any

6

statements made by me herein, which are now false or which hereafter become false; and/or (e) my membership or active participation in the Sea Organization or my association with Releasees.

I have carefully read the above terms of this general release and fully understand them.

I am aware that this is a release of liability, covenant not to sue and indemnity agreement between myself and the Sea Organization, the Church and/or its affiliated organizations and/or other individuals, and I understand and agree that by placing my signature at the end of this document I shall be bound by its terms.

## CONCLUSION

I acknowledge that I have read and fully understand this Covenant and, before voluntarily affixing my signature below, completely understood its contents and all of the consequences of my agreements and waivers. I am joining staff and have become a member of the religious order known as the Sea Organization, of my own free will, solely to help forward the religious goals and tenets of the Scientology religion and the Church and not for monetary gain or solely to participate in auditing or training. I have been given the opportunity to consult persons of my choice and to discuss questions regarding this Covenant. I understand that by executing this Covenant I am accepting this commitment and making a formal religious vow to serve the Church for my entire lifetime. In accordance with Church doctrine, I declare that I have not gone past any word in this Covenant I have not fully understood.

9/12-04
Date          Signature of Applicant

_____
Signature of parent or guardian if a minor

The Church, in reliance on the truthfulness and sincerity of the Applicant's above representations and the legally and ecclesiastically binding nature of the Applicant's above promises and covenants, agrees to have _Laura Wipin_ serve in accordance with the terms of this Covenant, including the information supplied, and upon the conditions stated.

CHURCH OF SCIENTOLOGY FLAG SHIP SERVICE ORGANIZATION, INC.

Date: 12/12/04 By: _____

**Exhibit E**

# CHURCH OF SCIENTOLOGY FLAG SHIP SERVICE ORGANIZATION, INC.

## Staff Departure Release Agreement

I, _____ hereby enter into this agreement and general release ("Agreement") with Church of Scientology Flag Ship Service Organization, Inc. (the "Church"), a Delaware non-profit religious corporation, effective as of the date written below.

WHEREAS, I have been a voluntary religious worker serving as a member of the Scientology religious order the Sea Organization and also as a volunteer religious worker on the Church's staff;

WHEREAS, effective today, I am terminating my membership as a voluntary religious worker in the Sea Organization and resigning as a volunteer member of the Church's staff;

WHEREAS, I believe that it is in the best interests of me and of the Church and the other churches and missions of Scientology and their related organizations and all of their officers, directors, trustees, staff members, employees and representatives (collectively "Scientology Entities"; individually "Scientology Entity") that I set forth my understanding of the terms of my departure from the Sea Organization and the Church's staff, my future relationship with the Scientology Entities, and my continuing obligations under certain agreements I have made while on the Church's staff;

NOW, THEREFORE, in consideration of the foregoing recitals, the mutual promises and undertakings set forth below, the Church and I hereby represent and agree as follows:

### 1. My obligations concerning Scientology confidential information

A. I acknowledge that I have executed a formal agreement called Religious Covenant of Confidentiality and Silence that is attached to this Agreement to maintain the confidentiality of certain sensitive, private and confidential information and materials pertaining to the practice and ecclesiastical

management of the Scientology religion and to Scientology Entities ("Confidential Information"), and that this agreement is binding on me both now and for all future years, forever.

B. I acknowledge that, as described in more detail in the attached Religious Covenant of Confidentiality and Silence, this Confidential Information includes but is not limited to: (1) confidential Scientology Scripture such as the Advanced Technology, (2) media properties related to Church activities and events that are not publicly sold or distributed, (3) internal ecclesiastical information such as policy issues and directives, reports, communications and the like that have not been released to the public, (4) information concerning Church security systems, (5) locations of Church facilities that have not been authorized to be publicly disclosed, (6) written and oral communications between Scientology Entities and their attorneys, (7) personal information regarding any staff member or former staff member of a Scientology Entity, and personal information regarding any Scientology parishioner or former parishioner, or (8) any information not generally known to the public, which would adversely affect the Church or any Scientology Entity.

C. I hereby reaffirm my continuing obligation for all future years, forever, to never disclose this Confidential Information to anybody for any purpose whatsoever except to the extent I may be compelled to do so by proper, non-collusive service of a subpoena or other lawful process. To enable the Church to assist me should I be served with such a subpoena or other process by a third party seeking testimony and/or the production of documents concerning any of the Scientology entities, I shall notify the Church through its Legal Office at the Office of Special Affairs International in Los Angeles within two (2) days of receipt of such service, and shall furnish him or her with a copy of any such subpoena or process so that it may, if it wishes, seek judicial relief. I acknowledge that the foregoing notice provision exists to help me to cooperate with the Church with respect to such subpoena and process. I acknowledge that the obligation set forth in this subparagraph will remain in force in perpetuity.

D. I further affirm that I have returned to the Church all written and recorded Confidential Information in any format that has been in my possession or under my control during my service on the Church's staff, including any copies of such Confidential Information that may have been made.

## 2. **Status of my PC Folders**

A. I acknowledge that as part of my participation in Scientology religious services the Church and other Scientology churches compiled folders containing notations of my spiritual progress known as "Preclear Folders" or "PC Folders" as well as other ecclesiastical files containing notations regarding my spiritual progress (for convenience I will refer to all of these files as my "PC Folders").

B. I affirm that my PC Folders and all contents are private and confidential, subject to the priest-penitent privilege, and consist solely of information that cannot be understood by anyone who has not received the appropriate Scientology religious training as sanctioned by the Church.

C. I further affirm that my PC Folders and all contents are the exclusive property of the Church of Scientology International and must be held by the Church or its authorized representative in strict accordance with Scientology ecclesiastical doctrine.

D. I hereby forever relinquish all rights that I may have with respect to my PC Folders and all contents, including any right of ownership or possession and even the right just to view or copy it.

E. My promise to relinquish all rights I may have to my PC Folders and all contents is unconditional and irrevocable and binding for all future years, forever, on my successors in interest, including anyone who may be acting or purporting to act on my behalf or for my benefit, regardless of whether I am alive, dead, disabled or incapacitated, and under any and all possible circumstances, whether foreseeable or not.

### 3. Acknowledgement of no claims against any Scientology Entity

A. I acknowledge that for the entire time that I served on the Church's staff that I intended to serve as a volunteer religious worker and never worked with any expectation of being paid or otherwise compensated for my work (including overtime, minimum wages, pension payments or similar benefits) and therefore do not expect or want any payment of any kind from the Church.

B. I further acknowledge that I have no claim of any kind against the Church or any Scientology Entity of which I am aware, but if I do have any such claim or claims against them or any one of them of whatever nature I hereby release the Church and the Scientology Entities from any and all such claims I

may have (hereafter the "Release") in return for the valuable consideration described in Section 1 above.

C. This Release covers every claim I may have or possibly could have against any church or mission of the Scientology religion, including but not limited to the Church, Church of Scientology International, Church of Spiritual Technology, the Religious Technology Center and their affiliated organizations and any entity they may own or manage as well as any past, present, and future officer, director, trustee, and staff member of any Scientology Entity, in any capacity, and any religious worker, staff member, employee and parishioner of any Scientology Entity and their respective families and successors in interest (the "Scientology Releasees"). The released claims include even those claims I may not know about right now but that may become apparent sometime in the future.

D. My promise to release any claim I may have against the Church or any Scientology Entity, whether known or unknown, is unconditional and irrevocable and binding for all future years, forever, on my successors in interest, including anyone who may be acting or purporting to act on my behalf or for my benefit, regardless of whether I am alive, dead, disabled or incapacitated, and under any and all possible circumstances, whether foreseeable or not.

## 4. Agreement never to Disparage a Scientology Entity or Principal

A. I acknowledge that I have executed a formal agreement called Religious Covenant of Non-Disparagement, attached to this Agreement, to not say, write or encourage or induce others to say or write anything negative or disparaging about the Church, Religious Technology Center or any other Church of Scientology or their staff, officers, directors or trustees, in whatever capacity, or about the religious practices, materials, technology or services of the Scientology religion. I understand that this agreement is binding on me both now and for all future years, forever.

B. I therefore will never directly or indirectly engage in any conduct or make any statement to any person or entity, whether in commercial or noncommercial speech, that disparages or criticizes in any way the Scientology Entities or Scientology Releasees or their religious materials, services or practices. Nor shall I ever engage in any conduct or make any statement that does or could impair the goodwill or reputation of the Scientology Entities or Scientology

Page 4

Releasees or their religious materials, services or practices except to the extent I may be compelled to do so by court order, and then only after consultation with the Church to the extent possible.

## 5. Agreement as to the Church's remedies if I break my promises

A. I understand that if I break or threaten to break any of the promises I have made in this Agreement that the Church will send me a written notice instructing me to stop whatever it is that I am doing or threatening to do that is in violation of this Agreement. If this occurs I agree to immediately stop what I am doing or threatening to do that is the subject of the Church's notice.

B. If I fail to comply with the Church's notice I agree that the Church can go to court and get a court order to stop me from doing or threatening to do whatever action would violate the promises I have made here. I agree that if legal action is necessary to enforce the promises I have made, that it may be brought in the Los Angeles Superior Court, and I agree in advance to be subject to the personal jurisdiction of that court. Because a public hearing to enforce any provision of this Agreement might cause disclosure of confidential information, I agree that if there is litigation of any provision of this Agreement, I shall cooperate with the Church to seek an appropriate order from the Los Angeles Superior Court, or any other Court to seal the file and issue a protective order prohibiting disclosure of confidential information.

C. I further acknowledge that if I break any of the promises I have made in this Agreement that it would be extremely difficult if not impossible to calculate actual damages to the Church. For this reason, I agree that if the Church is forced to go to court as a result of my violation of this Agreement that in addition to any other remedy the Church may have that I will pay the Church $10,000.00 (Ten Thousand Dollars) for every one of my violations of this Agreement. I understand that this sum, which is called "liquidated damages," is not meant to be a penalty, but rather represents a reasonable attempt to estimate a fair compensation for the foreseeable losses that might result from each such breach. I agree to this sum because I believe it fairly reflects the value of a violation of each one of the obligations I have made and that it also gives me a reasonable incentive not to break my promises.

## 6. Resolution of disputes

A. I recognize that any problem or other dispute that I now or ever may

have concerning my experiences as a member of the Sea Org  or as a voluntary religious worker for the Church or any Scientology Entity, or concerning my participation in Scientology religious services, or concerning any matter of church governance, organization, or discipline, necessarily raises a Scientology religious issue that can be resolved only through the application of Scientology doctrine by the appropriate Scientology ecclesiastical authorities.

B.  For this reason, I agree to attempt to resolve any such problem or dispute informally by direct communication with the proper Church or Scientology Entity representative.  If that is not successful, I agree to resolve the dispute solely through Scientology internal Ethics and Justice binding religious arbitration procedures, including, if necessary, submission of the dispute to the International Justice Chief of the Church ("IJC") or his or her designee.  If the dispute is not resolved after review by the IJC, I understand that I may request a Board of Review from the LRH Communicator International.

C.  I further agree that arbitration pursuant to the Scientology system of Ethics and Justice shall be my sole and exclusive remedy for resolving any problem or dispute I may have concerning my experiences as a member of the Sea Org  or as voluntary religious worker for the Church or any Scientology Entity, or concerning my participation in Scientology religious services, or concerning any matter of church governance, organization, or discipline, and that I will not seek to resolve any such problem or dispute in any other way, including the filing of a lawsuit in a secular court of law.

D. My intention in making the foregoing promises is to resolve any problem or dispute I may have concerning my experiences as a member of the Sea Org  or as a voluntary religious worker for the Church or any Scientology Entity, or concerning my participation in Scientology religious services, or concerning any matter of church governance, organization, or discipline, solely by Scientology ecclesiastical authorities applying the principles of the Scientology system of Ethics and Justice and not by a secular court of law. Consequently, if for any reason a court exerts jurisdiction over such a dispute and determines that it is not appropriate to resolve the dispute through this process, then I hereby consent in advance to having the lawsuit raising the dispute dismissed and the dispute resolved exclusively through mandatory confidential arbitration under the auspices of the Los Angeles, California offices of either the Judicial Arbitration and Mediation Services Alternative Dispute Resolution or of the American Arbitration Association.

## 7. **My other general understandings**

I further understand and agree that:

A.  Nothing in this Agreement should be construed as an admission
by the Church or any other Scientology Entity that it acted wrongfully with
respect to me (since they did not) or that I have any rights or claims of any kind
against any of them (since I do not);

B.  All the promises and other obligations I have made in this Agreement
are to be legally binding on me for all future years, forever.  If a court happens to
rule that one or more of the promises I have made are not enforceable, I agree
that the rest of the promises the Church and I have made shall remain in full
force and effect and be legally enforceable against me for all time;

C. This Agreement is to be governed by the laws of the State of California
and interpreted as broadly and inclusively as possible under those laws in order
to accomplish my intentions as expressed herein;

D. In deciding whether to enter into this Agreement the Church will be
relying on the truth of the representations and promises I have made herein, and
so I purposely reiterate the truthfulness of what I have said and my sincere
commitment to fulfill every promise I have made herein;

E.  I re-affirm covenants I signed when I became a member of the Church's
staff and the Sea Organization, or signed from time to time, which set forth the
religious nature of my endeavors and work within the faith.

## 8. **I am entering into this Agreement intentionally and voluntarily**

A. I have had the opportunity to ask and resolve all questions I may have
about this Agreement. I understand that this Agreement constitutes the entire
understanding between myself and the Church concerning the subject matter of
the Agreement. No supplement, modification, or termination of this Agreement
shall be valid unless in a writing signed by me and the Church after the date of
this Agreement. I understand that I have the right and I have had the
opportunity to consult persons not affiliated with the Church, including legal
counsel of my choice, concerning the terms of this Agreement.  I represent that I
now have no questions or reservations concerning this Agreement whatsoever,
and that I agree with each and every promise I have made.

B. I understand full well the gravity of the action I am taking in executing this Agreement and know that I am giving up some very important personal rights under the Florida and United States Constitutions, including my right to free speech with respect to the specific and limited matters with which this Agreement is concerned.

C. I further attest that I fully understand the importance to my religion of the obligations to which I am agreeing and that I have signed this Agreement willingly, voluntarily and without any pressure of any kind.

Executed this 25 day of June 2012 at Kingston, St. Vincent.

_____
Signature

_____
Witness

KRISTER NILSSON
Print Witness Name and Title

## EXECUTION OF AGREEMENT BY CSFSSO

IN RELIANCE upon the truthfulness of the representations and promises made herein, Church of Scientology Flag Ship Service Organization enters into this    STAFF    DEPARTURE    RELEASE    AGREEMENT    with _____ and agrees to provide all needed and appropriate transitional support as described herein.

CHURCH OF SCIENTOLOGY
**FLAG SHIP SERVICE ORGANIZATION, INC.**

Page 8

By: _____

Its:_____ _____
      (Title of Church Officer)    Date

**Exhibit F**

# CHURCH OF SCIENTOLOGY FLAG SHIP SERVICE ORGANIZATION, INC.

## Staff Departure Release Agreement

I, _Laura Baxtes-Ljaones_, hereby enter into this agreement and general release ("Agreement") with Church of Scientology Flag Ship Service Organization, Inc. (the "Church"), a Delaware non-profit religious corporation, effective as of the date written below.

WHEREAS, I have been a voluntary religious worker serving as a member of the Scientology religious order the Sea Organization and also as a volunteer religious worker on the Church's staff;

WHEREAS, effective today, I am terminating my membership as a voluntary religious worker in the Sea Organization and resigning as a volunteer member of the Church's staff;

WHEREAS, I believe that it is in the best interests of me and of the Church and the other churches and missions of Scientology and their related organizations and all of their officers, directors, trustees, staff members, employees and representatives (collectively "Scientology Entities"; individually "Scientology Entity") that I set forth my understanding of the terms of my departure from the Sea Organization and the Church's staff, my future relationship with the Scientology Entities, and my continuing obligations under certain agreements I have made while on the Church's staff;

NOW, THEREFORE, in consideration of the foregoing recitals, the mutual promises and undertakings set forth below, the Church and I hereby represent and agree as follows:

### 1. My obligations concerning Scientology confidential information

A. I acknowledge that I have executed a formal agreement called Religious Covenant of Confidentiality and Silence that is attached to this Agreement to maintain the confidentiality of certain sensitive, private and confidential information and materials pertaining to the practice and ecclesiastical

management of the Scientology religion and to Scientology Entities ("Confidential Information"), and that this agreement is binding on me both now and for all future years, forever.

B. I acknowledge that, as described in more detail in the attached Religious Covenant of Confidentiality and Silence, this Confidential Information includes but is not limited to: (1) confidential Scientology Scripture such as the Advanced Technology, (2) media properties related to Church activities and events that are not publicly sold or distributed, (3) internal ecclesiastical information such as policy issues and directives, reports, communications and the like that have not been released to the public, (4) information concerning Church security systems, (5) locations of Church facilities that have not been authorized to be publicly disclosed, (6) written and oral communications between Scientology Entities and their attorneys, (7) personal information regarding any staff member or former staff member of a Scientology Entity, and personal information regarding any Scientology parishioner or former parishioner, or (8) any information not generally known to the public, which would adversely affect the Church or any Scientology Entity.

C. I hereby reaffirm my continuing obligation for all future years, forever, to never disclose this Confidential Information to anybody for any purpose whatsoever except to the extent I may be compelled to do so by proper, non-collusive service of a subpoena or other lawful process. To enable the Church to assist me should I be served with such a subpoena or other process by a third party seeking testimony and/or the production of documents concerning any of the Scientology entities, I shall notify the Church through its Legal Office at the Office of Special Affairs International in Los Angeles within two (2) days of receipt of such service, and shall furnish him or her with a copy of any such subpoena or process so that it may, if it wishes, seek judicial relief. I acknowledge that the foregoing notice provision exists to help me to cooperate with the Church with respect to such subpoena and process. I acknowledge that the obligation set forth in this subparagraph will remain in force in perpetuity.

D. I further affirm that I have returned to the Church all written and recorded Confidential Information in any format that has been in my possession or under my control during my service on the Church's staff, including any copies of such Confidential Information that may have been made.

2. **Status of my PC Folders**

A. I acknowledge that as part of my participation in Scientology religious services the Church and other Scientology churches compiled folders containing notations of my spiritual progress known as "Preclear Folders" or "PC Folders" as well as other ecclesiastical files containing notations regarding my spiritual progress (for convenience I will refer to all of these files as my "PC Folders").

B. I affirm that my PC Folders and all contents are private and confidential, subject to the priest-penitent privilege, and consist solely of information that cannot be understood by anyone who has not received the appropriate Scientology religious training as sanctioned by the Church.

C. I further affirm that my PC Folders and all contents are the exclusive property of the Church of Scientology International and must be held by the Church or its authorized representative in strict accordance with Scientology ecclesiastical doctrine.

D. I hereby forever relinquish all rights that I may have with respect to my PC Folders and all contents, including any right of ownership or possession and even the right just to view or copy it.

E. My promise to relinquish all rights I may have to my PC Folders and all contents is unconditional and irrevocable and binding for all future years, forever, on my successors in interest, including anyone who may be acting or purporting to act on my behalf or for my benefit, regardless of whether I am alive, dead, disabled or incapacitated, and under any and all possible circumstances, whether foreseeable or not.

### 3. Acknowledgement of no claims against any Scientology Entity

A. I acknowledge that for the entire time that I served on the Church's staff that I intended to serve as a volunteer religious worker and never worked with any expectation of being paid or otherwise compensated for my work (including overtime, minimum wages, pension payments or similar benefits) and therefore do not expect or want any payment of any kind from the Church.

B. I further acknowledge that I have no claim of any kind against the Church or any Scientology Entity of which I am aware, but if I do have any such claim or claims against them or any one of them of whatever nature I hereby release the Church and the Scientology Entities from any and all such claims I

may have (hereafter the "Release") in return for the valuable consideration described in Section 1 above.

C. This Release covers every claim I may have or possibly could have against any church or mission of the Scientology religion, including but not limited to the Church, Church of Scientology International, Church of Spiritual Technology, the Religious Technology Center and their affiliated organizations and any entity they may own or manage as well as any past, present, and future officer, director, trustee, and staff member of any Scientology Entity, in any capacity, and any religious worker, staff member, employee and parishioner of any Scientology Entity and their respective families and successors in interest (the "Scientology Releasees"). The released claims include even those claims I may not know about right now but that may become apparent sometime in the future.

D. My promise to release any claim I may have against the Church or any Scientology Entity, whether known or unknown, is unconditional and irrevocable and binding for all future years, forever, on my successors in interest, including anyone who may be acting or purporting to act on my behalf or for my benefit, regardless of whether I am alive, dead, disabled or incapacitated, and under any and all possible circumstances, whether foreseeable or not.

## 4. <u>Agreement never to Disparage a Scientology Entity or Principal</u>

A. I acknowledge that I have executed a formal agreement called Religious Covenant of Non-Disparagement, attached to this Agreement, to not say, write or encourage or induce others to say or write anything negative or disparaging about the Church, Religious Technology Center or any other Church of Scientology or their staff, officers, directors or trustees, in whatever capacity, or about the religious practices, materials, technology or services of the Scientology religion. I understand that this agreement is binding on me both now and for all future years, forever.

B. I therefore will never directly or indirectly engage in any conduct or make any statement to any person or entity, whether in commercial or noncommercial speech, that disparages or criticizes in any way the Scientology Entities or Scientology Releasees or their religious materials, services or practices. Nor shall I ever engage in any conduct or make any statement that does or could impair the goodwill or reputation of the Scientology Entities or Scientology

Releasees or their religious materials, services or practices except to the extent I
may be compelled to do so by court order, and then only after consultation with
the Church to the extent possible.

### 5. Agreement as to the Church's remedies if I break my promises

A. I understand that if I break or threaten to break any of the promises I
have made in this Agreement that the Church will send me a written notice
instructing me to stop whatever it is that I am doing or threatening to do that is
in violation of this Agreement. If this occurs I agree to immediately stop what I
am doing or threatening to do that is the subject of the Church's notice.

B. If I fail to comply with the Church's notice I agree that the Church can
go to court and get a court order to stop me from doing or threatening to do
whatever action would violate the promises I have made here. I agree that if
legal action is necessary to enforce the promises I have made, that it may be
brought in the Los Angeles Superior Court, and I agree in advance to be subject
to the personal jurisdiction of that court. Because a public hearing to enforce
any provision of this Agreement might cause disclosure of confidential
information, I agree that if there is litigation of any provision of this Agreement, I
shall cooperate with the Church to seek an appropriate order from the Los
Angeles Superior Court, or any other Court to seal the file and issue a protective
order prohibiting disclosure of confidential information.

C. I further acknowledge that if I break any of the promises I have made in
this Agreement that it would be extremely difficult if not impossible to calculate
actual damages to the Church. For this reason, I agree that if the Church is
forced to go to court as a result of my violation of this Agreement that in addition
to any other remedy the Church may have that I will pay the Church $10,000.00
(Ten Thousand Dollars) for every one of my violations of this Agreement. I
understand that this sum, which is called "liquidated damages," is not meant to
be a penalty, but rather represents a reasonable attempt to estimate a fair
compensation for the foreseeable losses that might result from each such breach.
I agree to this sum because I believe it fairly reflects the value of a violation of
each one of the obligations I have made and that it also gives me a reasonable
incentive not to break my promises.

### 6. Resolution of disputes

A. I recognize that any problem or other dispute that I now or ever may

have concerning my experiences as a member of the Sea Org or as a voluntary religious worker for the Church or any Scientology Entity, or concerning my participation in Scientology religious services, or concerning any matter of church governance, organization, or discipline, necessarily raises a Scientology religious issue that can be resolved only through the application of Scientology doctrine by the appropriate Scientology ecclesiastical authorities.

B. For this reason, I agree to attempt to resolve any such problem or dispute informally by direct communication with the proper Church or Scientology Entity representative. If that is not successful, I agree to resolve the dispute solely through Scientology internal Ethics and Justice binding religious arbitration procedures, including, if necessary, submission of the dispute to the International Justice Chief of the Church ("IJC") or his or her designee. If the dispute is not resolved after review by the IJC, I understand that I may request a Board of Review from the LRH Communicator International.

C. I further agree that arbitration pursuant to the Scientology system of Ethics and Justice shall be my sole and exclusive remedy for resolving any problem or dispute I may have concerning my experiences as a member of the Sea Org or as voluntary religious worker for the Church or any Scientology Entity, or concerning my participation in Scientology religious services, or concerning any matter of church governance, organization, or discipline, and that I will not seek to resolve any such problem or dispute in any other way, including the filing of a lawsuit in a secular court of law.

D. My intention in making the foregoing promises is to resolve any problem or dispute I may have concerning my experiences as a member of the Sea Org or as a voluntary religious worker for the Church or any Scientology Entity, or concerning my participation in Scientology religious services, or concerning any matter of church governance, organization, or discipline, solely by Scientology ecclesiastical authorities applying the principles of the Scientology system of Ethics and Justice and not by a secular court of law. Consequently, if for any reason a court exerts jurisdiction over such a dispute and determines that it is not appropriate to resolve the dispute through this process, then I hereby consent in advance to having the lawsuit raising the dispute dismissed and the dispute resolved exclusively through mandatory confidential arbitration under the auspices of the Los Angeles, California offices of either the Judicial Arbitration and Mediation Services Alternative Dispute Resolution or of the American Arbitration Association.

### 7. **My other general understandings**

I further understand and agree that:

A.   Nothing in this Agreement should be construed as an admission by the Church or any other Scientology Entity that it acted wrongfully with respect to me (since they did not) or that I have any rights or claims of any kind against any of them (since I do not);

B. All the promises and other obligations I have made in this Agreement are to be legally binding on me for all future years, forever.  If a court happens to rule that one or more of the promises I have made are not enforceable, I agree that the rest of the promises the Church and I have made shall remain in full force and effect and be legally enforceable against me for all time;

C. This Agreement is to be governed by the laws of the State of California and interpreted as broadly and inclusively as possible under those laws in order to accomplish my intentions as expressed herein;

D. In deciding whether to enter into this Agreement the Church will be relying on the truth of the representations and promises I have made herein, and so I purposely reiterate the truthfulness of what I have said and my sincere commitment to fulfill every promise I have made herein;

E. I re-affirm covenants I signed when I became a member of the Church's staff and the Sea Organization, or signed from time to time, which set forth the religious nature of my endeavors and work within the faith.

### 8. **I am entering into this Agreement intentionally and voluntarily**

A. I have had the opportunity to ask and resolve all questions I may have about this Agreement. I understand that this Agreement constitutes the entire understanding between myself and the Church concerning the subject matter of the Agreement. No supplement, modification, or termination of this Agreement shall be valid unless in a writing signed by me and the Church after the date of this Agreement. I understand that I have the right and I have had the opportunity to consult persons not affiliated with the Church, including legal counsel of my choice, concerning the terms of this Agreement.  I represent that I now have no questions or reservations concerning this Agreement whatsoever, and that I agree with each and every promise I have made.

B. I understand full well the gravity of the action I am taking in executing this Agreement and know that I am giving up some very important personal rights under the Florida and United States Constitutions, including my right to free speech with respect to the specific and limited matters with which this Agreement is concerned.

C. I further attest that I fully understand the importance to my religion of the obligations to which I am agreeing and that I have signed this Agreement willingly, voluntarily and without any pressure of any kind.

Executed this 25 day of ___June 2012___ at Kingstown, St. Vincent

_____
Signature

_____
Witness

_____
Print Witness Name and Title

KRISTER NILSSON


## EXECUTION OF AGREEMENT BY  CSFSSO

IN RELIANCE upon the truthfulness of the representations and promises made herein, Church of Scientology Flag Ship Service Organization enters into this    STAFF    DEPARTURE    RELEASE    AGREEMENT    with _____ and agrees to provide all needed and appropriate transitional support as described herein.


CHURCH OF SCIENTOLOGY
**FLAG SHIP SERVICE ORGANIZATION, INC.**

By: _____

Its:_____  _____
          (Title of Church Officer)     Date

**Exhibit G**

## RELIGIOUS COVENANT OF
## NON-DISPARAGEMENT

1.   I,  _Gawein K. Baxter_ (print name), have
been offered a post on the staff of Church of Scientology Flag Ship Service
Organization, Inc. ("FSSO"). As a member of the Scientology religious order
known as the Sea Organization, I have dedicated my current life and all my lives
for the next billion years to the service of the Scientology religion. I made this
eternal religious commitment to help every being I can attain his or her full spiritual
potential, the path to which was discovered by L. Ron Hubbard as set forth in the
Scientology Scripture.

2.    To be a staff member of FSSO and to work at the senior-most
religious retreat of the Church is one of the most significant opportunities to serve
my religion and carries with it serious and sacred obligations. FSSO is responsible
for the technical standard of Scientology, which is essential to the accomplishment
of the Church's mission.

3.    I recognize that with this opportunity to serve Scientology at this level
comes an equally important responsibility to do all I can to ensure that FSSO
remains effective as the sole minister of highest spiritual level of the religion, both
while serving on FSSO's staff and for all subsequent time. I understand that this is
one of the most solemn of all the responsibilities that I will shoulder while on staff
and is one I must continue to observe even if I leave FSSO's service. Scientology
parishioners look to FSSO to ensure and further their quest for spiritual freedom.
The inviolate strength and integrity of FSSO and its staff therefore are critical to the
spiritual life of millions of Scientologists throughout the planet. If the credibility or
effectiveness of FSSO or its senior staff is diminished or harmed in any way,
Scientologists throughout the world will suffer incalculable spiritual harm.

4.    I swear to forever use the full extent of my ability to uphold my
obligations under this Religious Covenant of Non-Disparagement ("Non-
Disparagement Covenant"). I will never do less. Accordingly, I PROMISE AND
SWEAR NEVER TO SAY OR ENCOURAGE OR INDUCE OTHERS TO SAY
OR WRITE ANYTHING NEGATIVE OR DISPARAGING ABOUT FSSO,
CHURCH OF SCIENTOLOGY INTERNATIONAL ("CSI"), RELIGIOUS
TECHNOLOGY CENTER ("RTC") OR ANY OTHER CHURCH OF
SCIENTOLOGY OR THEIR STAFF, OFFICERS, DIRECTORS OR TRUSTEES,
IN WHATEVER CAPACITY, OR ABOUT THE RELIGIOUS PRACTICES,
MATERIALS, TECHNOLOGY, AND SERVICES OF THE SCIENTOLOGY
RELIGION.    I  UNDERSTAND  AND  AGREE  THAT  THIS  NON-

1

DISPARAGEMENT COVENANT APPLIES NOT JUST WHILE I AM
SERVING ON FSSO'S STAFF BUT ALSO IN PERPETUITY, SHOULD I EVER
LEAVE STAFF.

     5.    The term DISPARAGE means:

     A.    Comments and statements (oral or written) that could or do negatively
affect or cast FSSO, CSI, RTC, their staff, officers, directors, or trustees or the
religious practices, materials, technology and services of the Scientology religion
("Staff and Religious Practices") in a negative light;

     B.    Comments and statements (oral or written) that could or do harm the
reputation of any Church of Scientology, FSSO, CSI, RTC and Scientology Staff
and Religious Practices including, but not limited to, negative or derogatory
comments and statements about FSSO, CSI and/or RTC's financial status,
operations, and the character of a Church of Scientology or its senior
staff/ecclesiastical leadership;

     C.    Comments and statements (oral or written) that could or do harm
FSSO, CSI and/or RTC's relationship with any Scientology parishioner(s)
including, but not limited to, comments that could or do harm any Scientology
parishioner's confidence in or hinder their spiritual growth in the Scientology
religion or progress up the Bridge.

     6.    I understand the gravity of the action I am taking in signing this Non-
Disparagement Covenant. I know that I am accepting responsibility for some of the
most sacred and most important obligations that exist in my religion. I further
understand that the spiritual well-being of my fellow Scientologists depends on my
ability to keep the promises I make herein. I also know that I am giving up forever
some very important personal rights under the Florida (?) and United States
Constitutions. But I also understand that I would not be permitted to serve as
volunteer FSSO staff unless I agreed in advance to the terms of this Non-
Disparagement Covenant. I take this action because I believe my personal spiritual
commitment to Scientology and the betterment of humankind take precedence over
any rights of free speech I may have as to these specific matters. I understand and
affirm that this Non-Disparagement Covenant does not change or affect my status
as a religious volunteer of FSSO.

     7.    I understand and agree that the promises I have made in this Covenant
relate to special, unique and extraordinary matters and that a violation of any of my
promises will cause irreparable injury not just to FSSO but also to the Scientology

religion as a whole and to individual Scientologists around the world and that there are no legal remedies available that could correct this injury. I further understand and agree that such harm is likely to be very substantial and that it will vary with the nature of the disparaging comment or statement, making it extremely difficult and impractical, if not impossible, to measure the full extent of the actual damages caused by a violation of this Non-Disparagement Covenant. For these reasons I therefore agree that if I breach or threaten to breach any of my promises in this Non-Disparagement Covenant that, among other things:

A.    FSSO may seek a court order to stop me from breaching or threatening to breach my promises. Because a public hearing to enforce any provision of this Non-Disparagement Covenant might cause disclosure of information deemed confidential information, I agree that if there is litigation concerning this Covenant, I shall cooperate with FSSO to seek an appropriate order from the Pinellas County Court, or any other court of competent jurisdiction, to seal the file and issue a protective order prohibiting disclosure of confidential information and/or limiting the disclosure of any other information obtained through discovery.

B.    In addition to anything else a court may require me to do for violating this Non-Disparagement Covenant, that I shall pay FSSO $25,000 as liquidated damages (and not as a penalty) for each individual violation of this Non-Disparagement Covenant and/or for each individual instance of causing, participating in, cooperating with, or encouraging the publication or broadcast of information that results in a violation of this Non-Disparagement Covenant.

    8.    Notwithstanding anything to the contrary set forth herein, I understand and agree that the provisions of this Non-Disparagement Covenant shall not apply to the disclosure of information as compelled by law or pursuant to subpoena or order of any judicial, legislative, executive, regulatory or administrative body.

    9.    The promises and agreements I have made in this Non-Disparagement Covenant shall be interpreted and enforced in accordance with California state law without reference to the laws of any other state or country. I agree that if legal action is necessary to enforce the promises I have made, that it may be brought in the Pinellas County Court or any other court of competent jurisdiction, and I agree in advance to be subject to the personal jurisdiction of that court. This Non-Disparagement Covenant shall inure to the benefit of, and be binding upon the persons or organizations that receive or are assigned the rights and duties of this Covenant (i.e., successors and assigns).

3

10.   I understand that all the promises and other obligations I have made in this Non-Disparagement Covenant will be legally binding on me forever. However, if a court happens to rule that one or more of the promises I have made or obligation I have agreed to is not enforceable, then I agree that the rest of the promises and obligations I made shall remain in full force and effect and legally enforceable against me for all time.

11.   I HAVE HAD THE OPPORTUNITY TO ASK AND RESOLVE ALL QUESTIONS I HAVE HAD ABOUT THIS NON-DISPARAGEMENT COVENANT. I UNDERSTAND THAT THIS NON-DISPARAGEMENT COVENANT CONSTITUTES THE ENTIRE UNDERSTANDING BETWEEN FSSO AND ME CONCERNING THE SUBJECT MATTER OF THE NON-DISPARAGEMENT COVENANT. NO MODIFICATION OR TERMINATION OF THIS NON-DISPARAGEMENT COVENANT SHALL BE VALID UNLESS IN WRITING SIGNED BY BOTH FSSO AND ME. I REPRESENT THAT I NOW HAVE NO QUESTIONS OR RESERVATIONS CONCERNING THIS NON-DISPARAGEMENT COVENANT WHATSOEVER. BY SIGNING THIS NON-DISPARAGEMENT COVENANT I CAN UNEQUIVOCALLY STATE THAT I FULLY UNDERSTAND THE IMPORTANCE TO MY RELIGION OF THE OBLIGATIONS TO WHICH I AM AGREEING AND THAT I HAVE SIGNED THIS NON-DISPARAGEMENT COVENANT WILLINGLY AND WITHOUT ANY PRESSURE OF ANY KIND.

Executed this 25 day of _____June_____ 20 12.

_Gawain Baxter_
(SIGNATURE)

_Gawain Anton Baxter_
(Printed Full Name)

_____
(SIGNATURE OF WITNESS)
_KRISTER NILSSON_
(Printed Full Name)


CHURCH OF SCIENTOLOGY
FLAG SHIP SERVICE ORGANIZATION, INC.

4

By its: _____
                        (Title)

_____
                      (Signature)

**Exhibit H**

# RELIGIOUS COVENANT OF
# NON-DISPARAGEMENT

1.    I,    *Laura Baxter-Wagner*    (print name), have
been offered a post on the staff of Church of Scientology Flag Ship Service
Organization, Inc. ("FSSO").    As a member of the Scientology religious order
known as the Sea Organization, I have dedicated my current life and all my lives
for the next billion years to the service of the Scientology religion.    I made this
eternal religious commitment to help every being I can attain his or her full spiritual
potential, the path to which was discovered by L. Ron Hubbard as set forth in the
Scientology Scripture.

2.    To be a staff member of FSSO and to work at the senior-most
religious retreat of the Church is one of the most significant opportunities to serve
my religion and carries with it serious and sacred obligations. FSSO is responsible
for the technical standard of Scientology, which is essential to the accomplishment
of the Church's mission.

3.    I recognize that with this opportunity to serve Scientology at this level
comes an equally important responsibility to do all I can to ensure that FSSO
remains effective as the sole minister of highest spiritual level of the religion, both
while serving on FSSO's staff and for all subsequent time.    I understand that this is
one of the most solemn of all the responsibilities that I will shoulder while on staff
and is one I must continue to observe even if I leave FSSO's service.    Scientology
parishioners look to FSSO to ensure and further their quest for spiritual freedom.
The inviolate strength and integrity of FSSO and its staff therefore are critical to the
spiritual life of millions of Scientologists throughout the planet.    If the credibility or
effectiveness of FSSO or its senior staff is diminished or harmed in any way,
Scientologists throughout the world will suffer incalculable spiritual harm.

4.    I swear to forever use the full extent of my ability to uphold my
obligations    under    this    Religious    Covenant    of    Non-Disparagement    ("Non-
Disparagement Covenant").    I will never do less.    Accordingly, I PROMISE AND
SWEAR NEVER TO SAY OR ENCOURAGE OR INDUCE OTHERS TO SAY
OR WRITE ANYTHING NEGATIVE OR DISPARAGING ABOUT FSSO,
CHURCH   OF   SCIENTOLOGY   INTERNATIONAL   ("CSI"),   RELIGIOUS
TECHNOLOGY   CENTER   ("RTC")   OR   ANY   OTHER   CHURCH   OF
SCIENTOLOGY OR THEIR STAFF, OFFICERS, DIRECTORS OR TRUSTEES,
IN WHATEVER CAPACITY, OR ABOUT THE RELIGIOUS PRACTICES,
MATERIALS, TECHNOLOGY, AND SERVICES OF THE SCIENTOLOGY
RELIGION.      I    UNDERSTAND    AND    AGREE    THAT    THIS    NON-

1

DISPARAGEMENT COVENANT APPLIES NOT JUST WHILE I AM SERVING ON FSSO'S STAFF BUT ALSO IN PERPETUITY, SHOULD I EVER LEAVE STAFF.

5.      The term DISPARAGE means:

A.      Comments and statements (oral or written) that could or do negatively affect or cast FSSO, CSI, RTC, their staff, officers, directors, or trustees or the religious practices, materials, technology and services of the Scientology religion ("Staff and Religious Practices") in a negative light;

B.      Comments and statements (oral or written) that could or do harm the reputation of any Church of Scientology, FSSO, CSI, RTC and Scientology Staff and Religious Practices including, but not limited to, negative or derogatory comments and statements about FSSO, CSI and/or RTC's financial status, operations, and the character of a Church of Scientology or its senior staff/ecclesiastical leadership;

C.      Comments and statements (oral or written) that could or do harm FSSO, CSI and/or RTC's relationship with any Scientology parishioner(s) including, but not limited to, comments that could or do harm any Scientology parishioner's confidence in or hinder their spiritual growth in the Scientology religion or progress up the Bridge.

6.      I understand the gravity of the action I am taking in signing this Non-Disparagement Covenant. I know that I am accepting responsibility for some of the most sacred and most important obligations that exist in my religion. I further understand that the spiritual well-being of my fellow Scientologists depends on my ability to keep the promises I make herein. I also know that I am giving up forever some very important personal rights under the Florida (?) and United States Constitutions. But I also understand that I would not be permitted to serve as volunteer FSSO staff unless I agreed in advance to the terms of this Non-Disparagement Covenant. I take this action because I believe my personal spiritual commitment to Scientology and the betterment of humankind take precedence over any rights of free speech I may have as to these specific matters. I understand and affirm that this Non-Disparagement Covenant does not change or affect my status as a religious volunteer of FSSO.

7.      I understand and agree that the promises I have made in this Covenant relate to special, unique and extraordinary matters and that a violation of any of my promises will cause irreparable injury not just to FSSO but also to the Scientology

2

religion as a whole and to individual Scientologists around the world and that there
are no legal remedies available that could correct this injury. I further understand
and agree that such harm is likely to be very substantial and that it will vary with
the nature of the disparaging comment or statement, making it extremely difficult
and impractical, if not impossible, to measure the full extent of the actual damages
caused by a violation of this Non-Disparagement Covenant. For these reasons I
therefore agree that if I breach or threaten to breach any of my promises in this
Non-Disparagement Covenant that, among other things:

A.      FSSO may seek a court order to stop me from breaching or
threatening to breach my promises. Because a public hearing to enforce any
provision of this Non-Disparagement Covenant might cause disclosure of
information deemed confidential information, I agree that if there is litigation
concerning this Covenant, I shall cooperate with FSSO to seek an appropriate order
from the Pinellas County Court, or any other court of competent jurisdiction, to seal
the file and issue a protective order prohibiting disclosure of confidential
information and/or limiting the disclosure of any other information obtained
through discovery.

B.      In addition to anything else a court may require me to do for violating
this Non-Disparagement Covenant, that I shall pay FSSO $25,000 as liquidated
damages (and not as a penalty) for each individual violation of this Non-
Disparagement Covenant and/or for each individual instance of causing,
participating in, cooperating with, or encouraging the publication or broadcast of
information that results in a violation of this Non-Disparagement Covenant.

8.      Notwithstanding anything to the contrary set forth herein, I understand
and agree that the provisions of this Non-Disparagement Covenant shall not apply
to the disclosure of information as compelled by law or pursuant to subpoena or
order of any judicial, legislative, executive, regulatory or administrative body.

9.      The promises and agreements I have made in this Non-Disparagement
Covenant shall be interpreted and enforced in accordance with California state law
without reference to the laws of any other state or country. I agree that if legal
action is necessary to enforce the promises I have made, that it may be brought in
the Pinellas County Court or any other court of competent jurisdiction, and I agree
in advance to be subject to the personal jurisdiction of that court. This Non-
Disparagement Covenant shall inure to the benefit of, and be binding upon the
persons or organizations that receive or are assigned the rights and duties of this
Covenant (i.e., successors and assigns).

10.    I understand that all the promises and other obligations I have made in this Non-Disparagement Covenant will be legally binding on me forever. However, if a court happens to rule that one or more of the promises I have made or obligation I have agreed to is not enforceable, then I agree that the rest of the promises and obligations I made shall remain in full force and effect and legally enforceable against me for all time.

11.    I HAVE HAD THE OPPORTUNITY TO ASK AND RESOLVE ALL QUESTIONS I HAVE HAD ABOUT THIS NON-DISPARAGEMENT COVENANT. I UNDERSTAND THAT THIS NON-DISPARAGEMENT COVENANT CONSTITUTES THE ENTIRE UNDERSTANDING BETWEEN FSSO AND ME CONCERNING THE SUBJECT MATTER OF THE NON-DISPARAGEMENT COVENANT. NO MODIFICATION OR TERMINATION OF THIS NON-DISPARAGEMENT COVENANT SHALL BE VALID UNLESS IN WRITING SIGNED BY BOTH FSSO AND ME. I REPRESENT THAT I NOW HAVE NO QUESTIONS OR RESERVATIONS CONCERNING THIS NON-DISPARAGEMENT COVENANT WHATSOEVER. BY SIGNING THIS NON-DISPARAGEMENT COVENANT I CAN UNEQUIVOCALLY STATE THAT I FULLY UNDERSTAND THE IMPORTANCE TO MY RELIGION OF THE OBLIGATIONS TO WHICH I AM AGREEING AND THAT I HAVE SIGNED THIS NON-DISPARAGEMENT COVENANT WILLINGLY AND WITHOUT ANY PRESSURE OF ANY KIND.

Executed this 25 day of June 20 12.

_____
(SIGNATURE)

_____
(Printed Full Name)

_____
(SIGNATURE OF WITNESS)

_____
(Printed Full Name)

CHURCH OF SCIENTOLOGY
FLAG SHIP SERVICE ORGANIZATION, INC.

4

By its: _____

(Title)

_____

(Signature)

**Exhibit I**

## RELIGIOUS COVENANT OF
## CONFIDENTIALITY AND SILENCE

1.   I,   Jawain A. Baxter   (print name), have
been offered a post on the staff of Church of Scientology Flag Ship Service
Organization, Inc. ("FSSO"). As a member of the Scientology religious order
known as the Sea Organization, I have dedicated my current life and all my lives
for the next billion years to the service of the Scientology religion. I made this
eternal religious commitment to help every being I can attain his or her full
spiritual potential, the path to which was discovered by L. Ron Hubbard as set
forth in the Scientology Scripture.

2.   To be a staff member of FSSO and to work at the senior-most
religious retreat of the Church is one of the most significant opportunities to serve
my religion and carries with it serious and sacred obligations. FSSO is responsible
for ministering the most advanced spiritual level of the Scientology religion to
Scientologists from throughout the planet.

3.   I recognize that with this opportunity to serve Scientology at this
level comes an equally important responsibility to do all I can to ensure that FSSO
remains effective as the sole minister of highest spiritual level of the religion, both
while serving on FSSO's staff and for all subsequent time. I understand that this is
one of the most solemn of all the responsibilities that I will shoulder while on staff
and is one I must continue to observe even if I leave FSSO's service. Scientology
parishioners look to FSSO to ensure and further their quest for spiritual freedom.
The inviolate strength and integrity of FSSO and its staff therefore are critical to
the spiritual life of millions of Scientologists throughout the planet.   If the
credibility or effectiveness of FSSO or its senior staff is diminished or harmed in
any way, Scientologists throughout the world will suffer incalculable spiritual
harm.

4.   The purpose of this Confidentiality Covenant is to set forth my
obligations as an FSSO staff member for properly using and maintaining the
safety, security and confidentiality of certain Scientology religious materials,
information and property. Because it is my desire to do everything in my power to

1

protect my religion, I make the following promises, which I understand to be
legally binding under secular law:

5.     I fully understand the importance to the Scientology religion that
matters pertaining to the inner workings of FSSO and its AFFILIATED
CHURCHES and the PERSONAL INFORMATION of their staff, corporate
officials and parishioners never be publicly discussed, written about or otherwise
disclosed. I understand that this is a religiously based and mandated duty that the
church and I agree is essential to protect the free exercise of the Scientology
religion, that this duty, as embodied in this Covenant of Confidentiality, may
nonetheless be enforced by a secular authority by applying neutral principles of
secular law as a means to accommodate the religious belief and practice of the
Scientology religion.

6.     I therefore agree that in exchange for the opportunity to serve on
FSSO's staff and to receive the benefits available to all staff members, including
the right to receive Scientology religious auditing and training to forward my own
spiritual growth, I WILL KEEP CONFIDENTIAL AND NEVER REVEAL ANY
CONFIDENTIAL INFORMATION AS DEFINED IN PARAGRAPH 9
SUBPARAGRAPH D BELOW. At no time will I ever speak or write about or
otherwise publish or disclose to any unauthorized person any CONFIDENTIAL
INFORMATION unless I am required to do so as part of the responsibilities of my
post or under the circumstances set forth in Paragraph 19 below. I agree to
maintain strict silence on all CONFIDENTIAL INFORMATION not just while I
am serving on FSSO's staff but also in perpetuity, should I ever leave staff.

7.     I understand that FSSO and its staff have access to and maintain
information that is of a highly sensitive, private and confidential nature, including
information of the AFFILIATED CHURCHES, their staff and parishioners, and
their former staff and parishioners. FSSO is legally and ecclesiastically obligated
to ensure that its staff does not disclose this information without proper
authorization because such disclosure is likely to injure FSSO, its AFFILIATED
CHURCHES and their individual or collective activities, functions, plans, or
programs, or their individual staff members, corporate officials or parishioners. For
this reason FSSO requires everyone who desires to serve on its staff to legally
obligate him or herself in perpetuity not to make any such disclosure by signing

2

this Confidentiality Covenant in exchange for the opportunity to serve as an FSSO religious volunteer.

8.      I further understand that, by serving as a member of FSSO's staff, I have a fiduciary duty to FSSO that is imposed by law not to DISCLOSE any CONFIDENTIAL INFORMATION disclosed to or learned by me, and that I therefore hold a legally-mandated position of trust at FSSO with respect to all such CONFIDENTIAL INFORMATION. I ALSO UNDERSTAND THAT SAFEGUARDING THE CONFIDENTIAL INFORMATION IS FAR MORE THAN A LEGAL OBLIGATION. IT IS A SACRED TRUST ESSENTIAL TO THE PURITY OF THE SCIENTOLOGY RELIGION AND ITS MISSION.

9.      DEFINITIONS

A.      The term DISCLOSURE or DISCLOSE includes any kind of direct or indirect publication, broadcast, distribution, dissemination, revelation, circulation or transmission of any kind, whether spoken, written or electronic (such as by telephone, wireless phone including twitter and fliq), television, film or audiotape, or by text messaging, email, posting, blogging, video broadcasting, uploading or downloading on the Internet. A DISCLOSURE also can be visual, such as a drawing, diagram, illustration or even a gesture. In short, a DISCLOSURE means any kind of communication irrespective of whether the technology for such communication currently exists.

B.      The term AFFILIATED CHURCH or CHURCHES with respect to FSSO, means Religious Technology Center ("RTC"), Church of Scientology International ("CSI") and any other church or mission of the Scientology religion and their affiliated organizations and any entity they may own or manage.

C.      The term AFFILIATED PARTY or PARTIES with respect to FSSO, means FSSO, its AFFILIATED CHURCHES and any past, present and future officer, director, trustee and staff member of FSSO, in any capacity, and any religious worker, staff member, employee and parishioner of any AFFILIATED CHURCH and their respective families and successors in interest.

D.      The term CONFIDENTIAL INFORMATION includes:

3

(i)    Confidential Scientology Scripture. Scientology religious
scripture that is confidential includes the Scientology Advanced
Technology and L. Ron Hubbard's religious advices and briefings
related to the Advanced Technology. FSSO, CSI, RTC and
AFFILIATED CHURCHES maintain these materials confidential
because it is a matter of religious belief that they would cause spiritual
harm for those who have not yet achieved the required level of
spiritual maturity, enlightenment and ethics  before study and use of
this scripture.

(ii)    Confidential Media Properties. Videos, DVDs, CDs, films and
audio and video tapes related to Church activities or events, or
activities or events that occur on Church facilities that are not sold to
the public or otherwise publicly distributed in any way.   Such
materials include those that are unpublished or only available to
certain staff and/or parishioners, as well as Media that relate to private
events and whose misuse would be a violation of privacy rights of
staff and/or parishioners. The Confidential Media Properties also
include such things as unpublished lectures or films by L. Ron
Hubbard that have not yet been released to the general public.  Many
of these media properties are derived from Scripture essential to the
practice of the religion.

(iii)    Proprietary Religious Works or Devices. These include such
things as plans, diagrams and specifications for devices that are in use
or being developed for religious use or for technical use in producing
religious films, videos, DVDs, CDs and the like, as well as religious
materials that are not generally known to the public or to others than
their intended internal audience.  These works, devices and materials
are essential to proper worship and the spiritual development of
individual Scientologists.

(iv)    Confidential Ecclesiastical Information. Internal issues, reports,
memos, correspondence, financial papers, notes and other written or
recorded material that have not been released to the public that
concern Church internal functioning, finances, computer systems and

4

programs, expansion plans, programs, strategies, projects and similar activities, all of which affect the security and privacy of internal operations and schedules, as well as mailing lists and all other information stored in Centralized Files, which contain personal information of parishioners and require protection to safeguard parishioners' privacy rights.

(v)    Church Security Information. Information concerning Church systems for ensuring the security of individuals; property and documents, such as specialized security systems that protect the physical security of the Advanced Technology materials or of staff and parishioners, the disclosure of which could compromise those security measures; and the location of Church facilities and premises that have not been disclosed to the public in order to protect the privacy and security of the staff of those facilities and the private activities conducted there.  This information is critical to protect the physical security of Scientologists and to preserve the purity of essential technology and scripture.

(vi)    Attorney-Client Privileged Information. Written and oral communications to, from and in the presence of (including face-to-face and telephonic communications) attorneys for FSSO and its AFFILIATED CHURCHES and members and employees of their law firms, including notes or reports of oral communications and any documentation or other information that may have accompanied such communications related to litigation or other matters as to which FSSO or AFFILIATED CHURCHES are seeking or those attorneys are providing advice, and also including any documents or information provided by them that constitute attorney work product.

(vii)   Personal Information. Personal information regarding any AFFILIATED PARTY and their schedules, activities, religious training and counseling and any information not generally known to the public related to their private lives or activities, personal preferences, relationships and/or privately expressed opinions or thoughts, the DISCLOSURE of which would be offensive to a

5

reasonable person and which could subject the AFFILIATED PARTY
to injury, harm or harassment or which could jeopardize the
AFFILIATED PARTY'S security or spiritual well-being.

(viii) Other information. Any information, not generally known to the
public, which would adversely affect FSSO or the AFFILIATED
PARTIES if distributed or disclosed.

10.    NON-DISCLOSURE:

I UNDERSTAND THAT BY ACCEPTING MY POSTING AT FSSO I AM
SERVING IN A POSITION OF GREAT RESPONSIBILITY AND
OBLIGATION. I HAVE BEEN GIVEN A SACRED TRUST TO PRESERVE
THE MOST ESSENTIAL TEXTS AND TECHNOLOGY OF MY RELIGION.
FULLY UNDERSTANDING THE GREAT TRUST AND RESPONSIBILITY
THAT HAS BEEN PLACED IN ME, I COVENANT AND PROMISE THAT
EXCEPT TO THE EXTENT NECESSARY TO PERFORM MY DUTIES AS A
MEMBER OF FSSO'S STAFF OR UNDER THE CIRCUMSTANCES SET
FORTH IN PARAGRAPH 19 BELOW, I WILL NOT, EITHER DURING OR
ANY TIME AFTER MY SERVICE AT FSSO, MAKE ANY DISCLOSURE OF
CONFIDENTIAL INFORMATION TO ANY PERSON, INCLUDING EVEN
CLOSE RELATIVES AND FRIENDS, ORGANIZATION OR OTHER ENTITY
OF WHATEVER KIND.

11.    I understand that in addition to being CONFIDENTIAL
INFORMATION, all oral and written communications and notes made during
counseling, auditing, confessionals and ethics actions are confidential ecclesiastical
documents essential to the worship, spiritual development and well-being of my
fellow Scientologists. The improper release of such documents would cause great
harm to my fellow Scientologists and my religion. I will use the full extent of my
ability to guard their confidentiality. I further understand that the documents are
covered by the ministerial or clergy-penitent privilege and therefore also are
subject to very strict state and federal laws that prohibit their public
DISCLOSURE. I understand that if I publicly DISCLOSE this information, I may
be personally liable to the parties whose privilege I violated. I shall upon request of
FSSO immediately return without copying any writings, including notes or other

6

written communications made during or in connection with counseling, auditing, confessionals and ethics actions.

12.    If I am ever uncertain whether some information, data or Church property is CONFIDENTIAL INFORMATION or contains such, I promise to promptly ask the HCO Director of Inspections and Reports as to how it should be classified. Until I learn for certain the status of the particular item, I will treat it as CONFIDENTIAL INFORMATION.

13.    I agree to keep all Confidential Media Properties that are placed in my care or under my supervision secure and safe from unauthorized use at all times. I promise to use all Confidential Media Properties only in an authorized manner, to log them out when I take possession of them, to keep them safe and secure and under my control at all times, and to log them back in promptly once I have finished with them. Such Confidential Media Properties, which are defined in Paragraph 9 Subparagraph D (ii) above, include special briefings made exclusively for staff, or staff and certain limited parishioners to view, which are not made broadly available because of their special religious content and to protect them from sabotage and ridicule. I understand that safeguarding these materials is one of my most important duties at FSSO.

14.    I agree that if for any reason I stop serving FSSO as a religious volunteer, that I will return all CONFIDENTIAL INFORMATION and Confidential Properties in my possession or under my control to FSSO or the relevant Church, and that I will not make or keep copies of any of the information in any form.

15.    I understand that the private nature of CONFIDENTIAL INFORMATION to which I have been privy while on staff does not end when I leave staff, so I agree that my obligation to not DISCLOSE any CONFIDENTIAL INFORMATION will continue in perpetuity even after I stop serving FSSO as a religious volunteer for any reason, transfer to another Church of Scientology, or even leave the Church of Scientology.

16.    I understand the gravity of the action I am taking in signing this Covenant of Confidentiality. I know that I am taking on some of the most

7

important and sacred obligations possible to my religion. I further understand that the spiritual well-being of my fellow Scientologists depends on my ability to keep the promises I make herein. I also know that I am giving up forever some very important personal rights under the Florida and United States Constitutions. But I also understand that I would not be permitted to serve as volunteer FSSO staff unless I agreed in advance not to DISCLOSE CONFIDENTIAL INFORMATION as covered in this Covenant. I take this action because I believe my personal spiritual commitment to Scientology and the betterment of humankind takes precedence over any rights of free speech I may have as to these specific matters. I understand and affirm that this Confidentiality Covenant does not change my status as a religious volunteer of FSSO.

17.    I understand and agree that the promises I have made in this Covenant of Confidentiality relate to special, unique and extraordinary matters, that a violation of any of my promises will cause irreparable injury not just to FSSO, the AFFILIATED CHURCHES and the AFFILIATED PARTIES, but also to the Scientology religion as a whole and to individual Scientologists throughout the world and that there are no legal remedies available that could correct this injury. I further understand and agree that such harm is likely to be very substantial and to vary with the type and extent of DISCLOSURE and/or use of such information, making it extremely difficult and impractical, if not impossible, to measure the full extent of the resulting actual damages caused by a violation of this Confidentiality Covenant. For these reasons I therefore agree that if I break or threaten to break any of my promises in this Covenant that:

A.    FSSO can get a court order to stop me from breaking or threatening to break my promises and that if it does I agree to immediately stop whatever I was doing or threatening to do. Because a public hearing to enforce any provision of this Covenant might cause DISCLOSURE of CONFIDENTIAL INFORMATION, I agree that if there is litigation of any provision of this Covenant that I will cooperate with FSSO to seek an appropriate order from the Pinellas County Superior Court, or any other court of competent jurisdiction, to seal the file and issue a protective order prohibiting DISCLOSURE of CONFIDENTIAL INFORMATION and/or limit such DISCLOSURE.

8

B.     In addition to anything else a court may require me to do for violating this Covenant that I shall pay FSSO $25,000 as liquidated damages (and not as a penalty) for each individual violation of this Confidentiality Covenant and/or for each individual instance of causing, participating in, cooperating with, or encouraging the publication or broadcast of information that results in a violation of this Confidentiality Covenant.

• 18.    Notwithstanding anything to the contrary set forth herein, I understand and agree that the provisions of this Confidentiality Covenant shall not apply to the disclosure of information as compelled by law or pursuant to subpoena or order of any judicial, legislative, executive, regulatory or administrative body.

19.    I understand that all the promises and other obligations I have made in this Confidentiality Covenant will be legally binding on me forever. However, if a court happens to rule that one or more of the promises I have made is not enforceable, then I agree that the rest of my promises I made shall remain in full force and effect and legally enforceable against me for all time.

20.    The promises and agreements I have made in this Covenant shall be interpreted and enforced in accordance with Florida state law without reference to the laws of any other state or country. I agree that if legal action is necessary to enforce the promises I have made, that it may be brought in the Florida Superior Court for Pinellas County or any other court of competent jurisdiction, and I agree in advance to be subject to the personal jurisdiction of that court. This Confidentiality Covenant shall inure to the benefit of, and be binding upon the persons or organizations that receive or are assigned the rights and duties of this Covenant (i.e., successors and assigns).

21.    I HAVE HAD THE OPPORTUNITY TO ASK AND RESOLVE ALL QUESTIONS I HAVE HAD ABOUT THIS CONFIDENTIALITY COVENANT. I UNDERSTAND THAT THIS CONFIDENTIALITY COVENANT CONSTITUTES THE ENTIRE UNDERSTANDING BETWEEN FSSO AND ME CONCERNING THE SUBJECT MATTER OF THE CONFIDENTIALITY COVENANT. NO MODIFICATION OR TERMINATION OF THIS CONFIDENTIALITY COVENANT SHALL BE VALID UNLESS IN WRITING SIGNED BY BOTH FSSO AND ME. I REPRESENT THAT I NOW

9

HAVE NO QUESTIONS OR RESERVATIONS CONCERNING THIS
CONFIDENTIALITY COVENANT WHATSOEVER. BY SIGNING THIS
CONFIDENTIALITY COVENANT I CAN UNEQUIVOCALLY STATE THAT I
FULLY UNDERSTAND THE IMPORTANCE TO MY RELIGION OF THE
OBLIGATIONS TO WHICH I AM AGREEING AND THAT I HAVE SIGNED
THIS CONFIDENTIALITY COVENANT WILLINGLY AND WITHOUT ANY
PRESSURE OF ANY KIND.

Executed this 25 day of  June  20 12.

_____
(SIGNATURE)

Gawan Anton Baxter
_____
(Printed Full Name)

_____
(SIGNATURE OF WITNESS)

KRISTER NILSSON
_____
(Printed Full Name)


CHURCH OF SCIENTOLOGY
FLAG SHIP SERVICE ORGANIZATION, INC.

By its: _____
                    (Title)


_____
              (Signature)

**Exhibit J**

# RELIGIOUS COVENANT OF
# CONFIDENTIALITY AND SILENCE

1.     I, _Laura Baxter-Wagner_ (print name), have been offered a post on the staff of Church of Scientology Flag Ship Service Organization, Inc. ("FSSO").  As a member of the Scientology religious order known as the Sea Organization, I have dedicated my current life and all my lives for the next billion years to the service of the Scientology religion.  I made this eternal religious commitment to help every being I can attain his or her full spiritual potential, the path to which was discovered by L. Ron Hubbard as set forth in the Scientology Scripture.

2.     To be a staff member of FSSO and to work at the senior-most religious retreat of the Church is one of the most significant opportunities to serve my religion and carries with it serious and sacred obligations. FSSO is responsible for ministering the most advanced spiritual level of the Scientology religion to Scientologists from throughout the planet.

3.     I recognize that with this opportunity to serve Scientology at this level comes an equally important responsibility to do all I can to ensure that FSSO remains effective as the sole minister of highest spiritual level of the religion, both while serving on FSSO's staff and for all subsequent time.  I understand that this is one of the most solemn of all the responsibilities that I will shoulder while on staff and is one I must continue to observe even if I leave FSSO's service.  Scientology parishioners look to FSSO to  ensure and further their quest for spiritual freedom. The inviolate strength and integrity of FSSO and its staff therefore are critical to the spiritual life of millions of Scientologists throughout the planet.   If the credibility or effectiveness of FSSO or its senior staff is diminished or harmed in any way, Scientologists throughout the world will suffer incalculable spiritual harm.

4.     The purpose of this Confidentiality Covenant is to set forth my obligations as an FSSO staff member for properly using and maintaining the safety, security and confidentiality of certain Scientology religious materials, information and property.  Because it is my desire to do everything in my power to

1

protect my religion, I make the following promises, which I understand to be legally binding under secular law:

5.    I fully understand the importance to the Scientology religion that matters pertaining to the inner workings of FSSO and its AFFILIATED CHURCHES and the PERSONAL INFORMATION of their staff, corporate officials and parishioners never be publicly discussed, written about or otherwise disclosed. I understand that this is a religiously based and mandated duty that the church and I agree is essential to protect the free exercise of the Scientology religion, that this duty, as embodied in this Covenant of Confidentiality, may nonetheless be enforced by a secular authority by applying neutral principles of secular law as a means to accommodate the religious belief and practice of the Scientology religion.

6.    I therefore agree that in exchange for the opportunity to serve on FSSO's staff and to receive the benefits available to all staff members, including the right to receive Scientology religious auditing and training to forward my own spiritual growth, I WILL KEEP CONFIDENTIAL AND NEVER REVEAL ANY CONFIDENTIAL INFORMATION AS DEFINED IN PARAGRAPH 9 SUBPARAGRAPH D BELOW. At no time will I ever speak or write about or otherwise publish or disclose to any unauthorized person any CONFIDENTIAL INFORMATION unless I am required to do so as part of the responsibilities of my post or under the circumstances set forth in Paragraph 19 below. I agree to maintain strict silence on all CONFIDENTIAL INFORMATION not just while I am serving on FSSO's staff but also in perpetuity, should I ever leave staff.

7.    I understand that FSSO and its staff have access to and maintain information that is of a highly sensitive, private and confidential nature, including information of the AFFILIATED CHURCHES, their staff and parishioners, and their former staff and parishioners. FSSO is legally and ecclesiastically obligated to ensure that its staff does not disclose this information without proper authorization because such disclosure is likely to injure FSSO, its AFFILIATED CHURCHES and their individual or collective activities, functions, plans, or programs, or their individual staff members, corporate officials or parishioners. For this reason FSSO requires everyone who desires to serve on its staff to legally obligate him or herself in perpetuity not to make any such disclosure by signing

2

this Confidentiality Covenant in exchange for the opportunity to serve as an FSSO religious volunteer.

8.      I further understand that, by serving as a member of FSSO's staff, I have a fiduciary duty to FSSO that is imposed by law not to DISCLOSE any CONFIDENTIAL INFORMATION disclosed to or learned by me, and that I therefore hold a legally-mandated position of trust at FSSO with respect to all such CONFIDENTIAL INFORMATION.   I ALSO UNDERSTAND THAT SAFEGUARDING THE CONFIDENTIAL INFORMATION IS FAR MORE THAN A LEGAL OBLIGATION. IT IS A SACRED TRUST ESSENTIAL TO THE PURITY OF THE SCIENTOLOGY RELIGION AND ITS MISSION.

9.      DEFINITIONS

A.      The term DISCLOSURE or DISCLOSE includes any kind of direct or indirect publication, broadcast, distribution, dissemination, revelation, circulation or transmission of any kind, whether spoken, written or electronic (such as by telephone, wireless phone including twitter and fliq), television, film or audiotape, or by text messaging, email, posting, blogging, video broadcasting, uploading or downloading on the Internet. A DISCLOSURE also can be visual, such as a drawing, diagram, illustration or even a gesture. In short, a DISCLOSURE means any kind of communication irrespective of whether the technology for such communication currently exists.

B.      The term AFFILIATED CHURCH or CHURCHES with respect to FSSO, means Religious Technology Center ("RTC"), Church of Scientology International ("CSI") and any other church or mission of the Scientology religion and their affiliated organizations and any entity they may own or manage.

C.      The term AFFILIATED PARTY or PARTIES with respect to FSSO, means FSSO, its AFFILIATED CHURCHES and any past, present and future officer, director, trustee and staff member of FSSO, in any capacity, and any religious worker, staff member, employee and parishioner of any AFFILIATED CHURCH and their respective families and successors in interest.

D.      The term CONFIDENTIAL INFORMATION includes:

3

(i)    Confidential Scientology Scripture. Scientology religious
scripture that is confidential includes the Scientology Advanced
Technology and L. Ron Hubbard's religious advices and briefings
related to the Advanced Technology. FSSO, CSI, RTC and
AFFILIATED CHURCHES maintain these materials confidential
because it is a matter of religious belief that they would cause spiritual
harm for those who have not yet achieved the required level of
spiritual maturity, enlightenment and ethics  before study and use of
this scripture.

(ii)    Confidential Media Properties. Videos, DVDs, CDs, films and
audio and video tapes related to Church activities or events, or
activities or events that occur on Church facilities that are not sold to
the public or otherwise publicly distributed in any way.   Such
materials include those that are unpublished or only available to
certain staff and/or parishioners, as well as Media that relate to private
events and whose misuse would be a violation of privacy rights of
staff and/or parishioners. The Confidential Media Properties also
include such things as unpublished lectures or films by L. Ron
Hubbard that have not yet been released to the general public.  Many
of these media properties are derived from Scripture essential to the
practice of the religion.

(iii)    Proprietary Religious Works or Devices. These include such
things as plans, diagrams and specifications for devices that are in use
or being developed for religious use or for technical use in producing
religious films, videos, DVDs, CDs and the like, as well as religious
materials that are not generally known to the public or to others than
their intended internal audience.  These works, devices and materials
are essential to proper worship and the spiritual development of
individual Scientologists.

(iv)    Confidential Ecclesiastical Information. Internal issues, reports,
memos, correspondence, financial papers, notes and other written or
recorded material that have not been released to the public that
concern Church internal functioning, finances, computer systems and

4

programs, expansion plans, programs, strategies, projects and similar activities, all of which affect the security and privacy of internal operations and schedules, as well as mailing lists and all other information stored in Centralized Files, which contain personal information of parishioners and require protection to safeguard parishioners' privacy rights.

(v)    Church Security Information. Information concerning Church systems for ensuring the security of individuals; property and documents, such as specialized security systems that protect the physical security of the Advanced Technology materials or of staff and parishioners, the disclosure of which could compromise those security measures; and the location of Church facilities and premises that have not been disclosed to the public in order to protect the privacy and security of the staff of those facilities and the private activities conducted there. This information is critical to protect the physical security of Scientologists and to preserve the purity of essential technology and scripture.

(vi)    Attorney-Client Privileged Information. Written and oral communications to, from and in the presence of (including face-to-face and telephonic communications) attorneys for FSSO and its AFFILIATED CHURCHES and members and employees of their law firms, including notes or reports of oral communications and any documentation or other information that may have accompanied such communications related to litigation or other matters as to which FSSO or AFFILIATED CHURCHES are seeking or those attorneys are providing advice, and also including any documents or information provided by them that constitute attorney work product.

(vii)    Personal Information. Personal information regarding any AFFILIATED PARTY and their schedules, activities, religious training and counseling and any information not generally known to the public related to their private lives or activities, personal preferences, relationships and/or privately expressed opinions or thoughts, the DISCLOSURE of which would be offensive to a

5

reasonable person and which could subject the AFFILIATED PARTY
to injury, harm or harassment or which could jeopardize the
AFFILIATED PARTY'S security or spiritual well-being.

(viii)  Other information. Any information, not generally known to the
public, which would adversely affect FSSO or the AFFILIATED
PARTIES if distributed or disclosed.

10.    NON-DISCLOSURE:

I UNDERSTAND THAT BY ACCEPTING MY POSTING AT FSSO I AM
SERVING  IN  A  POSITION  OF  GREAT  RESPONSIBILITY  AND
OBLIGATION.  I HAVE BEEN GIVEN A SACRED TRUST TO PRESERVE
THE MOST ESSENTIAL TEXTS AND TECHNOLOGY OF MY RELIGION.
FULLY UNDERSTANDING THE GREAT TRUST AND RESPONSIBILITY
THAT HAS BEEN PLACED IN ME, I COVENANT AND PROMISE THAT
EXCEPT TO THE EXTENT NECESSARY TO PERFORM MY DUTIES AS A
MEMBER OF FSSO'S STAFF OR UNDER THE CIRCUMSTANCES SET
FORTH IN PARAGRAPH 19 BELOW, I WILL NOT, EITHER DURING OR
ANY TIME AFTER MY SERVICE AT FSSO, MAKE ANY DISCLOSURE OF
CONFIDENTIAL INFORMATION TO ANY PERSON, INCLUDING EVEN
CLOSE RELATIVES AND FRIENDS, ORGANIZATION OR OTHER ENTITY
OF WHATEVER KIND.

11.    I   understand   that   in   addition   to   being   CONFIDENTIAL
INFORMATION, all oral and written communications and notes made during
counseling, auditing, confessionals and ethics actions are confidential ecclesiastical
documents essential to the worship, spiritual development and well-being of my
fellow Scientologists.  The improper release of such documents would cause great
harm to my fellow Scientologists and my religion.  I will use the full extent of my
ability to guard their confidentiality.  I further understand that the documents are
covered by the ministerial or clergy-penitent privilege and therefore also are
subject  to  very  strict  state  and  federal  laws  that  prohibit  their  public
DISCLOSURE. I understand that if I publicly DISCLOSE this information, I may
be personally liable to the parties whose privilege I violated. I shall upon request of
FSSO immediately return without copying any writings, including notes or other

6

written communications made during or in connection with counseling, auditing, confessionals and ethics actions.

12.   If I am ever uncertain whether some information, data or Church property is CONFIDENTIAL INFORMATION or contains such, I promise to promptly ask the HCO Director of Inspections and Reports as to how it should be classified. Until I learn for certain the status of the particular item, I will treat it as CONFIDENTIAL INFORMATION.

13.   I agree to keep all Confidential Media Properties that are placed in my care or under my supervision secure and safe from unauthorized use at all times. I promise to use all Confidential Media Properties only in an authorized manner, to log them out when I take possession of them, to keep them safe and secure and under my control at all times, and to log them back in promptly once I have finished with them. Such Confidential Media Properties, which are defined in Paragraph 9 Subparagraph D (ii) above, include special briefings made exclusively for staff, or staff and certain limited parishioners to view, which are not made broadly available because of their special religious content and to protect them from sabotage and ridicule. I understand that safeguarding these materials is one of my most important duties at FSSO.

14.   I agree that if for any reason I stop serving FSSO as a religious volunteer, that I will return all CONFIDENTIAL INFORMATION and Confidential Properties in my possession or under my control to FSSO or the relevant Church, and that I will not make or keep copies of any of the information in any form.

15.   I understand that the private nature of CONFIDENTIAL INFORMATION to which I have been privy while on staff does not end when I leave staff, so I agree that my obligation to not DISCLOSE any CONFIDENTIAL INFORMATION will continue in perpetuity even after I stop serving FSSO as a religious volunteer for any reason, transfer to another Church of Scientology, or even leave the Church of Scientology.

16.   I understand the gravity of the action I am taking in signing this Covenant of Confidentiality. I know that I am taking on some of the most

7

important and sacred obligations possible to my religion. I further understand that the spiritual well-being of my fellow Scientologists depends on my ability to keep the promises I make herein. I also know that I am giving up forever some very important personal rights under the Florida and United States Constitutions. But I also understand that I would not be permitted to serve as volunteer FSSO staff unless I agreed in advance not to DISCLOSE CONFIDENTIAL INFORMATION as covered in this Covenant. I take this action because I believe my personal spiritual commitment to Scientology and the betterment of humankind takes precedence over any rights of free speech I may have as to these specific matters. I understand and affirm that this Confidentiality Covenant does not change my status as a religious volunteer of FSSO.

17.    I understand and agree that the promises I have made in this Covenant of Confidentiality relate to special, unique and extraordinary matters, that a violation of any of my promises will cause irreparable injury not just to FSSO, the AFFILIATED CHURCHES and the AFFILIATED PARTIES, but also to the Scientology religion as a whole and to individual Scientologists throughout the world and that there are no legal remedies available that could correct this injury. I further understand and agree that such harm is likely to be very substantial and to vary with the type and extent of DISCLOSURE and/or use of such information, making it extremely difficult and impractical, if not impossible, to measure the full extent of the resulting actual damages caused by a violation of this Confidentiality Covenant. For these reasons I therefore agree that if I break or threaten to break any of my promises in this Covenant that:

A.    FSSO can get a court order to stop me from breaking or threatening to break my promises and that if it does I agree to immediately stop whatever I was doing or threatening to do. Because a public hearing to enforce any provision of this Covenant might cause DISCLOSURE of CONFIDENTIAL INFORMATION, I agree that if there is litigation of any provision of this Covenant that I will cooperate with FSSO to seek an appropriate order from the Pinellas County Superior Court, or any other court of competent jurisdiction, to seal the file and issue a protective order prohibiting DISCLOSURE of CONFIDENTIAL INFORMATION and/or limit such DISCLOSURE.

8

B.    In addition to anything else a court may require me to do for violating this Covenant that I shall pay FSSO $25,000 as liquidated damages (and not as a penalty) for each individual violation of this Confidentiality Covenant and/or for each individual instance of causing, participating in, cooperating with, or encouraging the publication or broadcast of information that results in a violation of this Confidentiality Covenant.

18.    Notwithstanding anything to the contrary set forth herein, I understand and agree that the provisions of this Confidentiality Covenant shall not apply to the disclosure of information as compelled by law or pursuant to subpoena or order of any judicial, legislative, executive, regulatory or administrative body.

19.    I understand that all the promises and other obligations I have made in this Confidentiality Covenant will be legally binding on me forever. However, if a court happens to rule that one or more of the promises I have made is not enforceable, then I agree that the rest of my promises I made shall remain in full force and effect and legally enforceable against me for all time.

20.    The promises and agreements I have made in this Covenant shall be interpreted and enforced in accordance with Florida state law without reference to the laws of any other state or country. I agree that if legal action is necessary to enforce the promises I have made, that it may be brought in the Florida Superior Court for Pinellas County or any other court of competent jurisdiction, and I agree in advance to be subject to the personal jurisdiction of that court. This Confidentiality Covenant shall inure to the benefit of, and be binding upon the persons or organizations that receive or are assigned the rights and duties of this Covenant (i.e., successors and assigns).

21.    I HAVE HAD THE OPPORTUNITY TO ASK AND RESOLVE ALL QUESTIONS I HAVE HAD ABOUT THIS CONFIDENTIALITY COVENANT. I UNDERSTAND THAT THIS CONFIDENTIALITY COVENANT CONSTITUTES THE ENTIRE UNDERSTANDING BETWEEN FSSO AND ME CONCERNING THE SUBJECT MATTER OF THE CONFIDENTIALITY COVENANT. NO MODIFICATION OR TERMINATION OF THIS CONFIDENTIALITY COVENANT SHALL BE VALID UNLESS IN WRITING SIGNED BY BOTH FSSO AND ME. I REPRESENT THAT I NOW

9

HAVE NO QUESTIONS OR RESERVATIONS CONCERNING THIS CONFIDENTIALITY COVENANT WHATSOEVER. BY SIGNING THIS CONFIDENTIALITY COVENANT I CAN UNEQUIVOCALLY STATE THAT I FULLY UNDERSTAND THE IMPORTANCE TO MY RELIGION OF THE OBLIGATIONS TO WHICH I AM AGREEING AND THAT I HAVE SIGNED THIS CONFIDENTIALITY COVENANT WILLINGLY AND WITHOUT ANY PRESSURE OF ANY KIND.

Executed this 25 day of June 20 12.

_____
(SIGNATURE)

_____
(Printed Full Name)
Laura Baxter-Wagner

_____
(SIGNATURE OF WITNESS)

_____
(Printed Full Name)
KRISTER NILSSON

CHURCH OF SCIENTOLOGY
FLAG SHIP SERVICE ORGANIZATION, INC.

By its: _____
                        (Title)

_____
                        (Signature)

10

**Exhibit K**



*Church of Scientology*
*Flag*® *Ship Service Organization*

*(hereinafter referred to as "the Church")*

*Religious Services*
*Enrollment Application,*
*Agreement and General Release*

1.  I, Valesia Toppo, recognize, acknowledge and agree that I am exclusively
responsible for my present and future condition in life and for the choices and decisions I make affecting my life. With
that in mind, and solely of my own volition and in the independent exercise of my own free will, I am voluntarily
signing and submitting to **CHURCH OF SCIENTOLOGY** FSSO _____ (hereinafter **"the
Church"**) this **RELIGIOUS SERVICES ENROLLMENT APPLICATION, AGREEMENT AND GENERAL RELEASE** (hereinafter
**"this Contract"**) so that, upon its acceptance by the Church, I may participate in Religious Services of the Scientology
religion under the terms, conditions, covenants, waivers and releases I agree to by signing this Contract.

2.  This Contract is my statement of my personal, self-determined desire to participate in the Religious Services of
the Scientology religion. By signing this Contract, I recognize, acknowledge and agree that:

a.  Scientology is a religion, the Church is a church of the Scientology religion, and all the services and activities
of the Scientology religion are exclusively religious in nature.

b.  The Scientology religion is devoted to the study and handling of the human spirit in relationship to itself,
universes and other life. The word "Scientology" comes from the Latin "scio," meaning "knowing in the fullest sense
of the word," and the Greek "logos," meaning "study of." Dianetics spiritual healing technology is part of the
Scientology religion and is the study of what the soul is doing to the body. The word "Dianetics" is from the Greek
"dia," meaning "through," and "nous," meaning "soul," and thus means "through soul."

c.  The Founder of the Scientology religion is American author and philosopher L. Ron Hubbard (hereinafter
**"LRH"**), whose writings and recorded spoken words on the subjects of Scientology and Dianetics are a record of his
observations and research into the nature of the human spirit and condition. The writings and recorded spoken words
of LRH on the subjects of Scientology and Dianetics present a guide intended to assist persons to become more aware
of themselves as persons, restoring trust and respect for self and others. They are not a statement of claims by the
Church, by any other Scientology church or organization, or by LRH.

d.  The term "Religious Services," as used in this Contract, means and refers to the beliefs and practices set
forth in the writings and spoken words of LRH on the subjects of Dianetics and Scientology published with the
identifying S and double triangle or Dianetics triangle symbol, and all services or application of the principles of Mr.
Hubbard provided to me by the ministers or staff of the Church and all other Scientology churches and organizations,
including without limitation: "auditing," which is Scientology's unique form of religious counseling encompassing all
services on the Scientology Classification, Gradation and Awareness Charts which includes, without limitation, all
levels, rundowns, grades, assists, reviews, repairs, seminars, co-audits; all Scientology congregational services of any

description: "training," which is the study of the scripture of the Scientology religion on the road to achieving spiritual freedom and salvation and includes without limitation all services identified on the Scientology Classification, Gradation and Awareness Chart, all courses, internships and cramming; the application of Scientology Ethics and Justice technology, which are both exclusively religious components of the practice of the Scientology religion; the study and the application of the principles contained in the administrative writings of LRH used within the Church; and any and all other services or use of the technology of L. Ron Hubbard, without limitation, provided to me by the ministers or staff of the Church and all other Scientology churches and organizations.

**e.** Neither the Church nor any other Scientology church or organization which espouses, presents, propagates or practices the Scientology religion makes any claim:

**i.** that the nature or purpose of Scientology, or of Dianetics, or of the writings and recorded spoken words of LRH, is contrary to what is stated in this Contract;

**ii.** that the application of any Scientology or Dianetics technology or practice will have any particular effect on me or any other person; or

**iii.** that any particular result may be forthcoming from my participation in any Scientology Religious Service. I specifically acknowledge that I have read and that I understand Scientology Policy Directive 13 March 1996, Statements by Staff Members, which states clearly that if any individual staff member of any Scientology church or organization makes any claims about the results which may be forthcoming from my participation in any Scientology Religious Service, any such claims are the personal opinions and beliefs of that staff member only, and are not claims made by the Church or any other Scientology church or organization.

**3.** I have seen the film "Orientation" and I am now informed and aware and fully understand that Scientology is a religion, that its teachings are religious and that its claims are religious in nature. I am further informed and aware and fully understand that when I participate in Scientology services, I am participating in religious services under the ecclesiastical principles of the Scientology religion. I am also informed and aware and fully understand that the Church and all other Scientology churches are separate, distinct legal corporations each independently operating and responsible for its own corporate and ecclesiastical affairs.

**4.** This Contract is my commitment that I desire to participate in Scientology Religious Services exclusively for spiritual purposes in accordance with the beliefs and practices of the Scientology religion. Scientology Religious Services are designed to give spiritual aid, not medical treatment. However, the Scientology religion teaches that the spirit can be saved and that the spirit alone may save or heal the body, and Scientology Religious Services are intended to save the spirit. By signing this Contract, I recognize, acknowledge and agree that:

**a.** Scientology Religious Services are not intended and are not used for diagnosing ailments of the body or for engaging in the teaching or practice of any medical arts or sciences.

**b.** It is exclusively my responsibility to see to my physical and medical well-being, and under no circumstance does the Church or any other Scientology church or organization which espouses, presents, propagates or practices the Scientology religion have any responsibility whatsoever in that regard.

**c.** I have not come to the Church, nor do I seek to participate in Scientology Religious Services, solely to be cured of any physical illness, ailment or condition.

**d.** While the registrar can assist me in arranging for a competent medical examination and appropriate treatment by a qualified medical practitioner before I participate in any Scientology Religious Services, it is solely my responsibility to take whatever steps are necessary to demonstrate that I have no diagnosable or medically treatable illnesses, ailments, or conditions that are not under competent medical care before I begin participating in any Scientology Religious Service. Thereafter, any physical illness, ailment or condition I may have that has been treated medically may then be addressed spiritually by the application of the tenets of the Scientology religion, subject to the terms of this Contract.

**e.** I know that I should not participate in any Scientology Religious Service if I have a physical or mental condition which might be aggravated or which might make my participation in the service uncomfortable or distressful to me, and I agree to accept and assume any and all known or unknown risks of injury, loss, or damage resulting from my choices and decisions in that regard.

**f.** Scientology Religious Service may entail the use of a religious artifact known as the "E-Meter" for the purpose of locating and resolving problems and difficulties which are spiritual in nature. I understand that, by itself, the E-Meter does nothing, but serves only as a guide to Scientology ministers to assist parishioners in locating areas of spiritual distress or travail, and that it is not intended or effective for the diagnosis, treatment or prevention of any disease, or for the improvement of health or any bodily function.

**g.** Scientology is unalterably opposed, as a matter of religious belief, to the practice of psychiatry, and espouses as a religious belief that the study of the mind and the healing of mentally caused ills should not be alienated from religion or condoned in nonreligious fields. I am in full agreement with this religious belief. I do not believe in or subscribe to psychiatric labels for individuals. It is my strongly held religious belief that all mental problems are spiritual in nature and that there is no such thing as a mentally incompetent person – only those suffering from spiritual upset of one kind or another dramatized by an individual. I reject all psychiatric labels and intend for this Contract to clearly memorialize my desire to be helped exclusively through religious, spiritual means and not through any form of psychiatric treatment, specifically including involuntary commitment based on so-called lack of competence. Under no circumstances, at any time, do I wish to be denied my right to care from members of my religion to the exclusion of psychiatric care or psychiatric directed care, regardless of what any psychiatrist, medical person, designated member of the state or family member may assert supposedly on my behalf. If circumstances should ever arise in which government, medical, or psychiatric officials or personnel or family members or friends attempt to compel or coerce or commit me for psychiatric evaluation, treatment or hospitalization, I fully desire and fully expect that the Church or Scientologists will intercede on my behalf to oppose such efforts and/or extricate me from that predicament so my spiritual needs may be addressed in accordance with the tenets of the Scientology religion free from psychiatric intervention.

**5.** This Contract memorializes my intention to participate in Scientology Religious Services only for purposes of self-improvement and spiritual advancement. By signing this Contract, I recognize, acknowledge and agree that:

**a.** Achieving the benefits and goals of the Scientology religion requires my dedicated participation, because only through my own efforts can I achieve those benefits and goals.

**b.** Before I go on to any further service, it is essential that I am completely satisfied with my experience with my prior service. While Scientology holds out the possibility of a better life through adherence to its beliefs and practices, individual spiritual advancement is not always an easy or comfortable task, and my success in Scientology ultimately depends on my own ability, strength and determination to overcome the shortcomings and harmful patterns of my past. By agreeing to proceed with further services, I acknowledge complete satisfaction with all services I have participated in previously.

**c.** No Scientology church is under any duty or obligation whatsoever to return any portion of any religious donation I make. However, I have read Scientology Policy Directive 13 March 1996, Return of Donations, and understand that under certain circumstances identified in published ecclesiastical policies such as that Scientology Policy Directive, a return of donations may be obtained through my strict compliance with those published policies and procedures relating to the Claims Verification Board. I further understand, acknowledge and agree that:

**I.** such procedures require my direct participation to the exclusion of any third parties, including, but not limited to, attorneys;

**II.** returns of donations are exclusively within the ecclesiastical authority and sole discretion of the Claims Verification Board;

**III.** any violation of, or deviation from, such published policies by me voids any possibility of my receiving a return of a donation; and

**IV.** should I, at any time, ever request a refund or repayment of donations, such refund or repayment will be given if and only if I have followed the exact procedures of the Claims Verification Board and this Contract, and that in exchange for refund or repayment of such donations as determined by the Claims Verification Board, I execute a complete release, quitclaim and waiver of claims as provided by an authorized Church representative.

**d.** In connection with my participation in Scientology Religious Services, the Church may compile a folder containing its notations of my spiritual progress, known as a "Preclear Folder" or "PC Folder," as well as other ecclesiastical files containing notations regarding my spiritual progress. All of my PC Folders and other ecclesiastical files containing notations regarding my spiritual progress, as well as all contents thereof, are the sole and exclusive property of Church of Scientology International. As a matter of religious belief and of ecclesiastical doctrine and law, such folders and files, and the contents of such folders and files, are kept confidential from all persons who lack the ecclesiastical authority to gain access to such materials, including me, are subject to all applicable clergyman-penitent privileges, and are neither comprehensible nor meant to be understood by anyone whose training and expertise in their interpretation is not recognized and sanctioned by Church of Scientology International.

**I.** As a condition of being accepted for participation in Scientology Religious Services, I forever abandon, surrender, waive, and relinquish without limitation any and all rights of ownership, possession, custody, control, access, copying, and viewing of my PC Folder or Folders and all other ecclesiastical files containing any notations regarding my spiritual progress, both with respect to the folders and files themselves and the information contained in them.

**ii.** The abandonment, surrender, waiver, and relinquishment to which I refer in the immediately preceding subparagraph is unconditional and irrevocable and applies equally to anyone acting or purporting to be acting on my behalf or for my benefit, whether I am alive or dead, whether I am disabled or incapacitated, and under any and all circumstances foreseen or unforeseen, in perpetuity, without exception or limitation.

**iii.** Should I or anyone acting or purporting to be acting on my behalf or for my benefit ever seek access to any of my PC Folders or any other ecclesiastical file containing any notations regarding my spiritual progress, I intend for the submission of this Contract to the presiding judicial officer to be a complete and sufficient basis for the immediate denial of whatever access is being sought with prejudice to any other or further effort to breach the absolute confidentiality of those materials or the exclusive right of Church of Scientology International to preserve their absolute confidentiality.

**e.** It is both an unalterable religious belief and a matter of ecclesiastical custom of the Scientology religion that my personal spiritual progress will be directed by a minister known as a Case Supervisor who determines which Religious Services are appropriate for my personal spiritual progress and the sequence in which I will participate in such Religious Services. As a matter of religious belief, I acknowledge that my Case Supervisor will make the decisions regarding the appropriate course of my spiritual progress, and I will abide by the decisions and direction of my Case Supervisor in guiding my spiritual progress. All Religious Services in which I participate hereafter at the direction of my Case Supervisor are subject to the terms of this Contract.

**6.** This Contract memorializes my freely given consent to be bound exclusively by the discipline, faith, internal organization, and ecclesiastical rule, custom, and law of the Scientology religion in all matters relating to Scientology Religious Services, in all my dealings of any nature with the Church, and in all my dealings of any nature with any other Scientology church or organization which espouses, presents, propagates or practices the Scientology religion. By signing this Contract, I recognize, acknowledge and agree that:

**a.** My freely given consent to be bound exclusively by the discipline, faith, internal organization, and ecclesiastical rule, custom, and law of the Scientology religion in all matters relating to Scientology Religious Services, in all my dealings of any nature with the Church, and in all my dealings of any nature with any other Scientology church or organization which espouses, presents, propagates or practices the Scientology religion means that I am forever abandoning, surrendering, waiving, and relinquishing my right to sue, or otherwise seek legal recourse with respect to any dispute, claim or controversy against the Church, all other Scientology churches, all other organizations which espouse, present, propagate or practice the Scientology religion, and all persons employed by any such entity, both in their personal and any official or representational capacities, regardless of the nature of the dispute, claim or controversy.

**b.** The abandonment, surrender, waiver, and relinquishment to which I refer in the immediately preceding subparagraph is unconditional and irrevocable and applies equally to anyone acting or purporting to be acting on my behalf or for my benefit, whether I am alive or dead, whether I am disabled or incapacitated, and under any and all circumstances foreseen or unforeseen, in perpetuity, without exception or limitation.

**c.** Should I or anyone acting or purporting to be acting on my behalf ever sue, or otherwise seek legal recourse with respect to any dispute, claim or controversy against the Church, any other Scientology church, any other organization which espouses, presents, propagates or practices the Scientology religion, or any person employed by any such entity, regardless of the nature of the dispute, claim or controversy, I intend for the submission of this Contract to the presiding judicial officer to be a complete and sufficient basis for the immediate dismissal of any and all such proceedings with prejudice to further proceedings of any kind.

**d.** In accordance with the discipline, faith, internal organization, and ecclesiastical rule, custom, and law of the Scientology religion, and in accordance with the constitutional prohibitions which forbid governmental interference with religious services or dispute resolution procedures, should any dispute, claim or controversy arise between me and the Church, any other Scientology church, any other organization which espouses, presents, propagates or practices the Scientology religion, or any person employed by any such entity, which cannot be resolved informally by direct communication, I will pursue resolution of that dispute, claim or controversy solely and exclusively through Scientology's internal Ethics, Justice and binding religious arbitration procedures, which include application to senior ecclesiastical bodies, including, as necessary, final submission of the dispute to the International Justice Chief of the Mother Church of the Scientology religion, Church of Scientology International ("IJC") or his or her designee.

**e.** Any dispute, claim or controversy which still remains unresolved after review by the IJC shall be submitted to binding religious arbitration in accordance with the arbitration procedures of Church of Scientology International, which provide that:

**i.** I will submit a request for arbitration to the IJC and to the person or entity with whom I have the dispute, claim or controversy;

**II.** in my request for arbitration, I will designate one arbitrator to hear and resolve the matter;

**III.** within fifteen (15) days after receiving my request for arbitration, the person or entity with whom I have the dispute, claim or controversy will designate an arbitrator to hear and resolve the matter. If the person or entity with whom I have the dispute, claim or controversy does not designate an arbitrator within that fifteen (15) day period, then the IJC will designate the second arbitrator;

**Iv.** the two arbitrators so designated will select a third arbitrator within fifteen (15) days after the designation of the second arbitrator. If the arbitrators are unable to designate a third arbitrator within the fifteen (15) day period, then the IJC will choose the third arbitrator;

**v.** consistent with my intention that the arbitration be conducted in accordance with Scientology principles, and consistent with the ecclesiastical nature of the procedures and the dispute, claim or controversy to which those procedures relate, it is my specific intention that all such arbitrators be Scientologists in good standing with the Mother Church.

**f.** The Church and all other Scientology churches and organizations which espouse, present, propagate or practice the Scientology religion are each separate, distinct legal corporations, and each such entity is independently responsible for its own management and is independently responsible for its own corporate and ecclesiastical affairs.

**7.** This Contract is my good faith application to participate in Scientology Religious Services. By signing this Contract, I promise, covenant, and represent that:

**a.** I am applying to participate in Scientology Religious Services to achieve spiritual betterment because I truly believe that persons can be helped to gain greater understanding and happiness in life.

**b.** I am applying honestly and in good faith to derive all possible personal gain from Scientology Religious Services.

**c.** I have no record of being committed in an institution for mental or emotional disorders.

**d.** I have no criminal record that includes a felony offense.

**e.** I am not connected with any person, such as by marital or familial ties, of known antagonism to spiritual treatment or to Scientology.

**f.** Neither I nor any member of my immediate family has ever sued, embarrassed or attacked, or threatened to sue, embarrass or attack, Scientology.

**g.** I am not attempting to investigate Scientology as a representative of any news media, government agency or entity, or any other organization, entity or person.

**8.** This Contract will become a legally binding agreement between me and the Church upon its acceptance by the Church or upon my commencing my participation in a Scientology Religious Service, whichever occurs first. In determining whether to accept this Contract, I acknowledge that the Church will rely on the acknowledgements, agreements, representations and promises which I have made herein.

**9.** As further consideration for the Church's permission for me to participate in Scientology Religious Services and for me to use its facilities and other facilities provided for such purposes:

**a.** I, on behalf of myself and on behalf of my heirs, distributees, legal representatives and assigns, agree not to make claims against, sue, attach the property of, or prosecute the Church, the successors and assigns of L. Ron Hubbard, Church of Spiritual Technology, Religious Technology Center, the Church of Scientology International, any and all Scientology-affiliated churches, missions, corporations, associations, partnerships, trusts, religious orders or organizations, or, in any and all capacities and as individuals, their officers, directors, trustees, agents, servants, successors, heirs, executors or representatives, or the owners, managers, employees, agents or representatives or associates of, any facilities conducting Scientology Religious Services (hereinafter collectively **"the Releasees"**) for any physical, mental or emotional injury, property damage, or monetary loss resulting from negligence or other acts, howsoever caused, of any Releasee or of any employee, agent or contractor of the Church, its affiliates, or other Releasee, in any way relating to my participation in Scientology Religious Services.

**b.** I further release and discharge the releasees in any and all capacities and as individuals from all actions, claims or demands I, my heirs, distributees, guardians, legal representatives or assigns now have or may hereafter have for any physical, mental or emotional injury, property damage, or monetary loss resulting in any way from my participation in Scientology Religious Services.

**c.** I further agree to indemnify and save and hold harmless the Releasees in any and all capacities and as individuals, and each of them, from any loss, liability, damage or cost they may incur due to my participation in Scientology Religious Services or due to my presence or action in or about the Church premises or the facilities providing such services.

**d.** I understand, acknowledge and agree that should any provision or provisions of this Contract be, for any reason, unenforceable, the balance shall nonetheless be of full force and effect.

**e.** I further understand, acknowledge and agree that this Contract contains everything that the Church or Church representatives and I have addressed or discussed with respect to Scientology Religious Services, and that it constitutes the sole and entire agreement which contains everything that I have relied upon in applying to participate in Scientology Religious Services and supersedes any and all verbal discussions I have had with anyone.

**I HAVE CAREFULLY READ THIS CONTRACT AND FULLY UNDERSTAND ITS CONTENTS AND CONSEQUENCES. I ALSO UNDERSTAND THAT I AM NOT ELIGIBLE FOR ANY SCIENTOLOGY RELIGIOUS SERVICES UNLESS I SIGN THIS CONTRACT. I REAFFIRM THAT I WISH TO PARTICIPATE IN SCIENTOLOGY RELIGIOUS SERVICES AND THAT THIS CHOICE IS AN INDEPENDENT EXERCISE OF MY OWN FREE WILL. I FULLY UNDERSTAND THAT BY SIGNING BELOW, I AM FOREVER GIVING UP MY RIGHT TO SUE THE CHURCH, ITS STAFF AND ANY OF THE HEREINABOVE REFERENCED RELEASEES FOR ANY INJURY OR DAMAGE SUFFERED IN ANY WAY CONNECTED WITH SCIENTOLOGY RELIGIOUS SERVICES .**

I sign this Religious Services Enrollment Application, Agreement and General Release on this $\underline{13}$ day of $\underline{Feb}$ , 20___ intending to be legally bound by it, and request that I be permitted to participate in Scientology Religious Services.

_____
(SIGNATURE OF APPLICANT)
Valeska Isabelle Toppi
(Printed Full Name)
118 N. Forthamson CL, FL 33755
(Home Address)

_____
(SIGNATURE OF PARENT OR GUARDIAN, IF APPLICANT IS A MINOR)

_____
(Printed Full Name)

_____
(Home Address)

_____
(SIGNATURE OF WITNESS)
CLAUPIA  AVINA .
(Printed Full Name)

Having reviewed the above Religious Services Enrollment Application, Agreement and General Release the Church, in reliance upon, and conditioned upon, the truthful promises, representations and agreements made therein, on this $\underline{13}$ day of $\underline{Feb}$ , 20$\underline{13}$, accepts _____ for participation in Scientology Religious Services.

CHURCH OF SCIENTOLOGY
FLAG SHIP SERVICE ORGANIZATION, INC.

By its:_____
                                        (Title)

(SIGNATURE)_____

**Exhibit L**

This Agreement and General Release is being signed in the event that I later on decide to terminate my employment with the Church, at which time I will be remunerated in accordance with this Agreement and General Release and it will be in effect from that point forward.

## AGREEMENT AND GENERAL RELEASE

This Agreement and General Release ("Agreement") is entered into on 22 December 2007 by and between Valeska Isabelle Paris ("Paris") on the one hand, and Church of Scientology Flag Ship Service Organization ("CSFSSO"), a Delaware non-profit religious corporation, on the other hand.

## RECITALS

WHEREAS, Paris is a religious worker, employed by Church of Scientology Flag Ship Service Organization ("CSFSSO"), a church of the Scientology religion;

WHEREAS, Paris has decided to terminate her employment by CSFSSO as she is no longer qualified for employment by CSFSSO;

WHEREAS, Paris and CSFSSO wish to have a clear statement of their respective rights, obligations, and duties upon Paris's dismissal from her employment by CSFSSO; and a basis upon which CSFSSO and Paris may cooperate with one another in the future; and

WHEREAS, to avoid potential conflict or misunderstanding in the future between Paris and CSFSSO,

NOW, THEREFORE: in consideration of the premises, promises, covenants, and warranties set forth in this Agreement, and for good and valuable consideration, the receipt of which the parties to this Agreement hereby acknowledge, Paris and CSFSSO agree as follows:

1. **Termination of Employment.**

A. Paris's employment in any and all capacities by CSFSSO is hereby terminated as of the date first stated above.

B. Paris acknowledges and agrees that at all times throughout her employment by CSFSSO, she has been compensated in a timely manner in full accordance with all applicable laws and Scientology policy, and that she is entitled to no further compensation as a result of such employment.

1

2. **General Release.**

A. As a material inducement to CSFSSO to enter into this Agreement, Paris on behalf of herself, her heirs, her successors, representatives, agents, employees, attorneys and assigns, hereby irrevocably and unconditionally releases, acquits, and forever discharges CSFSSO, Religious Technology Center ("RTC"), Church of Scientology International ("CSI"), all other Scientology Churches, Missions and Scientology affiliated organizations, their respective trustees, directors, officers, employees, and agents, the successors and assigns of L. Ron Hubbard, and each of them, and their respective successors, representatives, agents, attorneys, assigns, subsidiaries, officers, directors, divisions, trustees, and employees (collectively "Releasees"), individually and in any and all capacities, from any and all claims, damages, causes of action of every kind, whether known or unknown, which Paris, or any of those named above claiming under her now have or may hereafter have against Releasees, and each of them, from the beginning of time, to and including the effective date of this Agreement.

B. The term "any and all claims" as used above, means and includes, but is not limited to, all claims of any kind, whether known or unknown, anticipated or unanticipated, suspected or unsuspected, past or present, contingent or fixed, including, without limitation, claims under: (1) Title VII of the Civil Rights Act of 1964 (race, color, religion, sex, and national origin discrimination); (2) 42 U.S.C. Section 1981 (discrimination); (3) 29 U.S.C. Section 621-634 (age discrimination); (4) 29 U.S.C. Section 206(d)(1) (equal pay); (5) the California Fair Employment and Housing Act (discrimination, including race, color, national origin, ancestry, physical handicap, medical condition, marital status, sex, or age); and (6) Executive Order 11246 (race, color, religion, sex, and national origin discrimination).

C. The term "any and all claims" shall be interpreted liberally and as sufficiently comprehensive so that this Agreement precludes any and all disputes, litigation or controversy of any and all descriptions brought by Paris against any and all Releasees.

3. **Waiver of California Civil Code Section 1542.**

Paris acknowledges that she has read Section 1542 of the California Civil Code, which provides that:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THIS RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

Paris agrees and understands that by signing this Agreement, she is releasing all claims, whether known, unknown, foreseen, or unforeseen, obvious or hidden which she may have against any of the Releasees. Paris understands the above-referenced code



2

section and its significance and consequence, and she expressly waives and relinquishes all rights and benefits she may have thereunder, as well as under any other statute or common law principles of similar effect.

4. **Consideration.**

A. In exchange for her General Release as set forth in paragraph 2 above, Paris acknowledges the receipt from CSFSSO of good, valuable, and adequate consideration, including, but not limited to, severance pay equal to ten (10) weeks of Paris's weekly compensation from CSFSSO at the date of her termination, assistance from CSFSSO in securing new employment for Paris if she desires it, and CSFSSO's agreement to forbear from seeking to recover for any property or other damage caused by Paris during the course of her employment by CSFSSO.

B. In exchange for her other promises, covenants, warranties and obligations set forth in this Agreement, Paris acknowledges the receipt from CSFSSO of good, valuable, and adequate consideration including, but not limited to, CSFSSO's commitment to assist Paris in the future should others attempt to persuade, assist, or induce her to breach this Agreement, which commitment CSFSSO hereby acknowledges.

5. **Representations and Warranties.**

Paris represents, warrants, and states that:

A. Paris has read this Agreement in its entirety and understands its contents.

B. Paris has executed this Agreement willingly, voluntarily, and without coercion or duress of any kind.

C. Paris' intent and purpose in executing this Agreement is to completely and forever disengage from any and all controversies, disputes, and proceedings of any nature with CSFSSO, CSI, RTC, and all other entities affiliated with the Scientology religion, and all individuals associated in any capacity with all such entities. Paris further represents, warrants, and states that this Agreement and each of its terms is to be construed liberally to effect that intention and purpose.

D. Paris has returned to CSFSSO any and all confidential materials relating to the Scientology religion in her possession, custody or control. Paris further represents, warrants, and states that she recognizes that she has a continuing and perpetual duty to surrender to CSFSSO any and all such confidential materials which in the future come into her possession, custody, or control.

E. Paris acknowledges and reaffirms any and all agreements that she previously made with CSFSSO and any and all confidentiality agreements that she made with any other entity affiliated with the Scientology religion and specifically acknowledges and reaffirms her continuing obligations thereunder. Attached hereto as Exhibit A (on the last



3

page of this document) is a list of such obligations, which Paris acknowledges and agrees are by way of example, but not limitation.

F. In executing this Agreement, Paris is waiving what otherwise might be construed as rights under the California, Florida and United States Constitutions, specifically her First Amendment right to free speech and its California and Florida equivalents. Paris specifically acknowledges that she does so knowingly and voluntarily with respect to all covenants, duties, and obligations she makes and acknowledges in this Agreement.

G. That in connection with her participation in Scientology Religious Services, Paris understands that the Churches she has been affiliated with compiled folders containing its notations of her spiritual progress, known as a "Preclear Folder" or "PC Folder," as well as other ecclesiastical files containing notations regarding her spiritual progress. All of her PC Folders and other ecclesiastical files containing notations regarding her spiritual progress, as well as all contents thereof, are the sole and exclusive property of Church of Scientology International. As a matter of religious belief and of ecclesiastical doctrine and law, such folders and files, and the contents of such folders and files, are kept confidential from all persons who lack the ecclesiastical authority to gain access to such materials, including Paris, and are subject to all applicable clergyman-penitent privileges, and are neither comprehensible nor meant to be understood by anyone whose training and expertise in their interpretation is not recognized and sanctioned by Church of Scientology International.

H. As a condition for having been accepted for participation in Scientology Religious Services, in the past and in the future, Paris forever abandons, surrenders, waives, and relinquishes without limitation any and all rights of ownership, possession, custody, control, access, copying, and viewing of her PC Folders and all other ecclesiastical files containing any notations regarding her spiritual progress, both with respect to the folders and files themselves and the information contained in them.

I. The abandonment, surrender, waiver, and relinquishment to which Paris refers in the immediately preceding subparagraph is unconditional and irrevocable and applies equally to anyone acting or purporting to be acting on Paris's behalf or for her benefit, whether she is alive or dead, whether she is disabled or incapacitated, and under any and all circumstances foreseen, in perpetuity, without exception or limitation.

J. SHOULD PARIS OR ANYONE ACTING OR PURPORTING TO BE ACTING ON HER BEHALF OR FOR HER BENEFIT EVER SEEK ACCESS TO ANY OF HER PC FOLDERS OR ANY OTHER ECCLESIASTICAL FILE CONTAINING ANY NOTATIONS REGARDING HER SPIRITUAL PROGRESS, PARIS INTENDS FOR THE SUBMISSION OF THIS AGREEMENT AND GENERAL RELEASE TO THE PRESIDING JUDICIAL OFFICER TO BE A COMPLETE AND SUFFICIENT BASIS FOR THE IMMEDIATE DENIAL OF WHATEVER ACCESS IS BEING SOUGHT WITH PREJUDICE TO ANY OTHER OR FURTHER EFFORT TO BREACH THE ABSOLUTE CONFIDENTIALITY OF THOSE MATERIALS OR THE



4

EXCLUSIVE RIGHT OF CHURCH OF SCIENTOLOGY INTERNATIONAL TO
PRESERVE THEIR ABSOLUTE CONFIDENTIALITY.

     K. PARIS FURTHER ACKNOWLEDGES AND CONFIRMS THAT SHOULD
SHE OR ANYONE ACTING OR PURPORTING TO BE ACTING ON HER BEHALF
EVER SUE, OR OTHERWISE SEEK LEGAL RECOURSE WITH RESPECT TO ANY
DISPUTE, CLAIM OR CONTROVERSY AGAINST CSFSSO, CSI, RTC, ANY
OTHER SCIENTOLOGY CHURCH, ANY OTHER ORGANIZATION WHICH
ESPOUSES, PRESENTS, PROPAGATES OR PRACTICES THE SCIENTOLOGY
RELIGION, OR ANY PERSON EMPLOYED BY ANY SUCH ENTITY,
REGARDLESS OF THE NATURE OF THE DISPUTE, CLAIM OR CONTROVERSY,
SHE INTENDS FOR THE SUBMISSION OF THIS AGREEMENT TO THE
PRESIDING JUDICIAL OFFICER TO BE A COMPLETE AND SUFFICIENT BASIS
FOR THE IMMEDIATE DISMISSAL OF ANY AND ALL SUCH PROCEEDINGS
WITH PREJUDICE TO FURTHER PROCEEDINGS OF ANY KIND.

     6. **Covenants.**

     Paris covenants, agrees, and promises that:

     A. Paris will never disclose any non-public information, data, or knowledge she
has learned or will learn at any time in the future about the organization of CSFSSO, CSI,
RTC, or any other entity affiliated with the Scientology religion, or any persons
associated with any such entity, including, but not limited to, information or data related
to their internal structures, security systems, finances, functions, confidential locations or
activities, memos, correspondence, electronic information and information related to their
schedules, duties and activities. Paris acknowledges that disclosure of such information
could cause irreparable injury to the Releasees and that the obligations set forth in this
subparagraph will remain in force in perpetuity.

     B. Paris will never disclose any information, data, or knowledge she has learned
or will learn about or relating to any of the Releasees, their staff or former staff, officers
or former officers, directors or former directors, trustees or former trustees, parishioners
or former parishioners, or L. Ron Hubbard that has not been authorized for release to the
general public. Such matters include, by way of example and not limitation, information,
data, or knowledge relating to security matters, financial information, private information
concerning any of the Releasees or their staff, including their schedules and activities,
priest-penitent privileged communications, attorney-client privileged information, plans,
programs, any other information about any of the other Releasees or the Scientology
religion, which are not specifically authorized to be disclosed by Paris. Paris
acknowledges that disclosure of such information could cause irreparable injury to the
Releasees and that the obligations set forth in this subparagraph will remain in force in
perpetuity.

     C. Paris will never sell, copy, quote from, publish, electronically post, distribute,
disseminate, duplicate, paraphrase, or reveal the contents of any of those Scientology



materials known as the "Advanced Technology" or "Upper Level Materials." She acknowledges that the Upper Level Materials are confidential and that meticulous efforts are made to maintain that confidentiality. Paris further represents that she does not have in her possession, custody, or control any such materials or copies thereof. Paris acknowledges that disclosure of such information could cause irreparable spiritual injury to the Releasees and that the obligations set forth in this subparagraph will remain in force in perpetuity.

D.  Paris will never voluntarily assist any person, group or organization in any effort to harass or injure any of the Releasees, their staff, public or parishioners, and will not voluntarily assist in any manner any person or entity involved in or contemplating investigation, litigation, or arbitration against any of the Releasees, whether as a plaintiff or as a defendant, unless compelled to do so by proper, non-collusive service of a subpoena or other lawful process upon Paris. Paris acknowledges that the obligations set forth in this subparagraph will remain in force in perpetuity.

E.  Paris agrees never to create or electronically post or publish or attempt to publish, and/or assist another to create for publication or posting by means of newspaper story, magazine, article, book or other similar form, any writing, or to broadcast, or to assist another to create, write, film or video tape or audio tape, electronic posting, any news program, show, program or movie, concerning her experiences with, knowledge of, or information concerning, the Scientology religion, or any of the Releasees, or any of their respective staff, former staff, parishioners, or former parishioners. Paris acknowledges that the obligations set forth in this subparagraph will remain in force in perpetuity.

F.  Paris will never aid or assist in any manner any person or organization hostile to or engaged in attacks against the Scientology religion, any of its parishioners, or any of the Releasees. Paris acknowledges that the obligations set forth in this subparagraph will remain in force in perpetuity.

G.  Paris will never testify or otherwise participate in any other judicial, administrative or legislative proceeding adverse to the Scientology religion, any of its parishioners, or any of the Releasees, unless compelled to do so by proper, non-collusive service of a subpoena or other lawful process. To enable CSFSSO to assist Paris should Paris be served with such a subpoena or other process by a third party seeking testimony and/or the production of documents concerning any of the Releasees, Paris shall notify CSFSSO through its corporate secretary or any of its officers within two (2) days of receipt of such service, and shall furnish him or her with a copy of any such subpoena or process. Paris acknowledges that the foregoing notice provision exists to help her to cooperate with CSFSSO with respect to such subpoena and process. Paris acknowledges that the obligations set forth in this subparagraph will remain in force in perpetuity.

H. Paris agrees never to utter, write, print, post, disseminate, circulate quote or publish any kind of statements in any form, which are defamatory or disparaging against



6

any of the Releasees, either directly or indirectly. Paris acknowledges that the obligations set forth in this subparagraph will remain in force in perpetuity.

### 7. **Remedies for Breach.**

A. Paris agrees to resolve any dispute with any of the Releasees through binding Scientology ecclesiastical arbitration under the authority of the International Justice Chief. Paris agrees that prior to her filing of any request for arbitration, she will endeavor to meet in person with a representative of CSFSSO and exhaust all reasonable potential compromises and resolutions of such dispute.

B. Should Paris breach or threaten to breach this Agreement, she agrees that CSFSSO or any other of the Releasees shall have the right to seek an ex parte issuance of a temporary restraining order, and to obtain a preliminary and permanent injunction against her, without bond, in any court of competent jurisdiction, to prohibit her from breaching this Agreement and to compel her to comply with the terms of this Agreement. If CSFSSO or any of the other Releasees have to take such legal action because Paris threatens or attempts to or does violate the terms of this Agreement, then she will be responsible for all costs, attorneys' fees and damages arising from such action.

C. No delay or omission of CSFSSO or any other Releasee, in exercising any right or remedy accruing upon any default or breach of this Agreement shall be construed as a waiver of any such default or breach or any acquiescence therein. Every right and remedy conferred hereunder upon CSFSSO, or any other Releasee may be enforced and exercised as often as permitted by law.

### 8. **Severability.**

If any provision of this Agreement shall be declared to be void, invalid or otherwise unenforceable in whole or in part by a court of competent jurisdiction, all remaining provisions shall be unaffected and shall remain in full force and effect.

### 9. **Amendment.**

This Agreement may only be amended by written agreement signed by Paris and CSFSSO.

### 10. **Applicable Law.**

This Agreement shall be construed, interpreted, governed, and enforced in accordance with the laws of the State of California and without reference to conflicts of law.

### 11. **Inconsistent Acts.**



Paris further agrees to forbear and refrain from doing any act or exercising any right, whether existing now or in the future, which act or exercise is inconsistent with this Agreement.

## 12. **Headings.**

The paragraph headings contained in this Agreement are for convenience of reference only and shall not affect the construction of any provision of this Agreement.

## 13. **Counterparts.**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together shall constitute one and the same instrument.

## 15. **Non-Parties to this Agreement.**

To the extent that this agreement inures to the benefit of persons or entities not signatories hereto, this Agreement is hereby declared to be made for their respective benefits and uses.

## 16. **Additional Acts.**

Paris and CSFSSO will perform all further acts that may be reasonably necessary and useful to effectuate the purposes and provisions of this Agreement.

## 17. **No Assignment of Claims.**

Both Paris and CSFSSO acknowledge and warrant that she or it has not assigned or otherwise transferred to any third party any interest in any claim it may have against any signatory to this Agreement or Release, and Paris acknowledges and agrees to indemnify and hold CSFSSO and the Releasees harmless from any liability resulting from having assigned or transferred such interest to a third party.

## 18. **No Admissions.**

This Agreement is the document by which all rights, duties, and obligations of Paris and CSFSSO are memorialized at the conclusion of Paris' employment by CSFSSO. This Agreement shall not in any way be construed as an admission by CSFSSO that it acted wrongfully with respect to Paris or any other person, or that Paris has any rights whatsoever against CSFSSO. CSFSSO specifically disclaims and Paris specifically acknowledges that CSFSSO has no liability for wrongful acts against Paris or any other person, on the part of itself, its agents, or anyone else acting on its behalf.

## 19. **No Other Claims.**



Paris covenants and represents that she has not filed any complaints or charges or lawsuits against CSFSSO or any Releasee with any governmental agency or any court, and that Paris will not do so at any time hereafter.

20. **No Obligation.**

Paris agrees and acknowledges that the consideration identified in paragraph 4 of this Agreement is not required to be given to Paris by any policy or procedure of CSFSSO.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first written above.

Valeska Paris:

**Valeska Paris**

CHURCH OF SCIENTOLOGY
FLAG SHIP SERVICE ORGANIZATION

By: _____  Secretary
    (name)
    On behalf of the Church of Scientology
    Flag Ship Service Organization

## EXHIBIT A TO AGREEMENT AND GENERAL REALEASE

CONFIDENTIAL INFORMATION is defined as information which has not been authorized to be published or revealed either to general Church of Scientology public or staff or in general. This includes but is not limited to the following:

A. Church of Scientology issues with limited distributions, or information concerning them;

B. Information relating to security of information or confidential Church premises and locations;

C. Personal information regarding CSFSSO, CSI, RTC, or any other Church, their staff or executives and their schedules and activities and private counseling, including auditing or use of the Scientology ethics technology, that has not been authorized by the individual herself or herself to be published;

D. Expansion plans or programs of CSI that have not yet been released to general Church of Scientology staff or public;

E. Any information which is considered by CSI or RTC to be trade secret, including but not limited to any and all Advanced Courses materials;

F. Any information which relates to subjects concerning proprietary rights of RTC or Churches of Scientology, such as any copyrights, trademarks and trade secrets;

G. Any information which relates to computer programming, design and user support for RTC, CSI or other Churches of Scientology;

H. Any other information obtained through activities on behalf of CSFSSO, CSI or RTC or any Church of Scientology, which relate to the operations or activities of the CSFSSO, CSI, RTC or any Church of Scientology, whether or not formally designated as "Confidential" which may not be generally known by or available to, the public or which, if disclosed, would tend to injure or otherwise adversely affect CSFSSO, CSI, RTC, the Church of Scientology or any of their respective activities, functions, plans, programs or personnel. To the extent there is any question about the confidential status of any such matter, it is incumbent upon the party to this Agreement to verify this with a qualified CSI or RTC staff member before making any use or disclosure of it in any fashion.



**Exhibit M**

## AGREEMENT AND GENERAL RELEASE

This Agreement and General Release ("Agreement") is entered into on August 19th, 2009 by and between Valeska Paris (hereinafter "Valeska") on the one hand, and Church of Scientology Flag Ship Service Organization, Inc. ("CSFSSO"), a Delaware, non-profit religious corporation, on the other hand.

## RECITALS

WHEREAS, Valeska is a member of the Sea Organization, a Scientology religious order, and is a volunteer religious staff member of a church of the Scientology religion;

WHEREAS, Valeska is terminating her membership in that religious order and her status as a staff member; and

WHEREAS, Valeska and CSFSSO wish to have a clear statement of their respective rights, obligations, and duties upon Valeska's terminating of her Sea Org membership and a basis upon which Valeska and CSFSSO may cooperate with one another in the future; and

NOW, THEREFORE, in consideration of the premises, promises, covenants, and warranties set forth in this Agreement, and for good and valuable consideration, the receipt of which the parties to this Agreement hereby acknowledge, Valeska and CSFSSO agree as follows:

### 1. **Staff Membership**.

Valeska acknowledges and agrees that at all times throughout her staff tenure with any Church of Scientology organization or entity upon whose staff she has served, she: (1) understood and acknowledged that she served on such staffs as a volunteer performing service for her religion, (2) never had any expectation or anticipation of receipt of overtime compensation, minimum wage or other secular benefit associated with employment and (3) she is not entitled to any compensation, remuneration, or other benefit of any description as a result of any staff position.

### 2. **General Release.**

A. As a material inducement to CSFSSO to enter into this Agreement, Valeska on behalf of herself, her heirs, successors, representatives, agents, employees, attorneys and assigns, hereby irrevocably and unconditionally releases, acquits, and forever discharges CSFSSO, Church of Scientology International ("CSI"), Religious Technology Center ("RTC"), Church of Spiritual Technology ("CST"), all other Scientology Churches, Missions and Scientology affiliated organizations, their respective trustees, directors, officers, staff members, employees, and agents, individually and in any and all capacities, the successors and assigns of L. Ron

1



Hubbard, and each of them, and their respective successors, representatives, agents, attorneys, assigns, subsidiaries, officers, directors, trustees, staff members, and employees (collectively "Releasees"), individually and in any and all capacities, from any and all claims, damages, causes of action of every kind, whether known or unknown, which Valeska, or any of those named above claiming under her now have or may hereafter have against Releasees, and each of them, from the beginning of time, to and including the effective date of this Agreement.

B.  The term "any and all claims" as used in the preceding subparagraph, means and includes, but is not limited to, all claims of any kind, whether known or unknown, anticipated or unanticipated, suspected or unsuspected, past or present, contingent or fixed, including, without limitation, claims under: (1) Title VII of the Civil Rights Act of 1964 (race, color, religion, sex, and national origin discrimination); (2) 42 U.S.C. §1981 (discrimination); (3) 29 U.S.C. §§621-634 (age discrimination); (4) 29 U.S.C. §206(d)(1) (equal pay); (5) All United States' prescriptions against discrimination, including whether by race, color, national origin, ancestry, ethnicity, physical handicap, medical condition, marital status, sex, sexual preference, or age; (6) Executive Order 11246 (race, color, religion, sex, and national origin discrimination); (7) Executive Order 11141 (age discrimination); and (8) §§503 and 504 of the Rehabilitation Act of 1973 (handicap discrimination).

C. The term "any and all claims" shall be interpreted liberally and as sufficiently comprehensive so that this Agreement precludes any and all disputes, litigation or controversy of any and all descriptions brought by Valeska against any and all Releasees.

### 3.  **Waiver of Civil Code Section 1542.**

Valeska acknowledges that she has read Section 1542 of the California Civil Code, which provides that:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THIS RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Valeska agrees and understands that by signing this Agreement, she is releasing all claims, whether known, unknown, foreseen, or unforeseen, obvious or hidden which she may have against any of the Releasees.  Valeska understands the above-referenced code section and its significance and consequence, and she expressly waives and relinquishes all rights and benefits she may have thereunder, as well as under any other statute or common law principles of similar effect.



4. **Consideration.**

In exchange for her promises, covenants, warranties and obligations set forth in this Agreement, Valeska acknowledges the receipt from CSI of good, valuable, and adequate consideration including, but not limited to, $10,000.00 from CSI on CSFSSO's behalf, at the date of her signature below, CSI's providing Valeska with assistance in securing employment and CSI's commitment to assist Valeska in the future should others attempt to persuade, assist, or induce her to breach this agreement, which commitment CSI hereby acknowledges.

5. **Representations and Warranties.**

Valeska represents, warrants, and states that:

A. Valeska has read this Agreement in its entirety and understands its contents.

B. Valeska has executed this Agreement willingly, voluntarily, and without coercion or duress of any kind, and with her intent that all obligations she has undertaken and all representations she had made herein will remain in full force and effect and binding upon her irrespective of her status as a Scientologist in good standing.

C. Valeska's intent and purpose in executing this Agreement is to completely and forever disengage from any and all controversies, disputes, and proceedings of any nature with CSFSSO, CSI, CST, RTC and all other entities affiliated with the Scientology religion, and all individuals associated in any capacity with all such entities. Valeska further represents, warrants, and states that this Agreement and each of its terms is to be construed liberally to effect that intention and purpose.

D. Valeska has returned to CSI (as the mother church in the Scientology religion), any and all confidential materials relating to the Scientology religion in her possession, custody or control. Valeska has further returned any and all letters, photographs, papers, correspondence, videos, DVDs and audio recordings which were obtained in the course of her staff position which she has not been authorized to keep. Valeska further represents, warrants, and states that she recognizes that she has a continuing and perpetual duty to surrender to CSI any and all such confidential materials which in the future come into her possession, custody, or control.

E. Valeska acknowledges and reaffirms any and all agreements that she previously made with CSFSSO, and any and all confidentiality agreements that she made with any other entity affiliated with the Scientology religion and specifically acknowledges and reaffirms her continuing obligations thereunder. Attached on the last page of this document as Exhibit A is a list of such obligations, which Valeska acknowledges and agrees are by way of example, but not limitation.

3



F. In executing this Agreement, Valeska is waiving what otherwise might be construed as rights under the United States, the California and Florida Constitutions, specifically her First Amendment right to free speech and its California and Florida equivalents. Valeska specifically acknowledges that she does so knowingly and voluntarily with respect to all covenants, duties, and obligations she makes and acknowledges in this Agreement.

G. Valeska acknowledges that as part of her participation in Scientology religious services, Scientology churches that she has been affiliated with compiled folders containing its notations of her spiritual progress, known as a "Preclear Folder" or "PC Folder," as well as other ecclesiastical files containing notations regarding her spiritual progress. Valeska further acknowledges and confirms that her PC Folders and other ecclesiastical files containing notations regarding her spiritual progress, as well as all contents thereof, are the sole and exclusive property of CSI and will be held by CSI or other Scientology churches in accordance with ecclesiastical doctrine and policy and that it is a matter of religious belief and of ecclesiastical doctrine and law, that such folders and files, and the contents of such folders and files, are kept confidential from all persons who lack the ecclesiastical authority to gain access to such materials, including Valeska, and are subject to all applicable clergy-penitent privileges, and are neither comprehensible nor meant to be understood by anyone whose training and expertise in their interpretation is not recognized and sanctioned by CSI. Valeska acknowledges CSI's ownership of such files.

H. Valeska hereby forever abandons, surrenders, waives, and relinquishes without limitation any and all rights of ownership, possession, custody, control, access, copying, and viewing of her PC Folders and all other ecclesiastical files containing any notations regarding her spiritual progress, both with respect to the folders and files themselves and the information contained in them.

I. Valeska confirms that the abandonment, surrender, waiver, and relinquishment referred to in the immediately preceding paragraph is unconditional and irrevocable and applies equally to anyone acting or purporting to be acting on Valeska's behalf or for her benefit, whether she is alive or dead, whether she is disabled or incapacitated, and under any and all circumstances foreseen or unforeseen, in perpetuity, without exception or limitation.

J. VALESKA ACKNOWLEDGES THAT IF SHE OR ANYONE ACTING OR PURPORTING TO BE ACTING ON HER BEHALF OR FOR HER BENEFIT EVER SEEK ACCESS TO ANY OF HER PC FOLDERS OR ANY OTHER ECCLESIASTICAL FILE CONTAINING ANY NOTATIONS REGARDING HER SPIRITUAL PROGRESS, SHE INTENDS FOR THE SUBMISSION OF THIS AGREEMENT TO THE PRESIDING JUDICIAL OFFICER TO BE A COMPLETE AND SUFFICIENT BASIS FOR THE IMMEDIATE DENIAL OF WHATEVER ACCESS IS BEING SOUGHT WITH PREJUDICE TO ANY OTHER OR FURTHER EFFORT TO BREACH THE ABSOLUTE CONFIDENTIALITY OF THOSE MATERIALS OR THE EXCLUSIVE RIGHT OF CSI OR



OTHER SCIENTOLOGY CHURCHES IN ACCORDANCE WITH ECCLESIASTICAL
DOCTRINE AND POLICY TO PRESERVE THEIR ABSOLUTE CONFIDENTIALITY.

K. VALESKA FURTHER ACKNOWLEDGES AND CONFIRMS THAT SHOULD
SHE OR ANYONE ACTING OR PURPORTING TO BE ACTING ON HER BEHALF
EVER SUE, OR OTHERWISE SEEK LEGAL RECOURSE WITH RESPECT TO ANY
DISPUTE, CLAIM OR CONTROVERSY AGAINST CSFSSO, CSI, CST, RTC, OR ANY
OTHER SCIENTOLOGY CHURCH, ANY OTHER ORGANIZATION WHICH
ESPOUSES, PRESENTS, PROPAGATES OR PRACTICES THE SCIENTOLOGY
RELIGION, OR ANY PERSON ASSOCIATED WITH ANY SUCH ENTITY, OR
VOLUNTEERING FOR SUCH ENTITY, REGARDLESS OF THE NATURE OF THE
DISPUTE, CLAIM OR CONTROVERSY, SHE INTENDS FOR THE SUBMISSION OF
THIS AGREEMENT TO THE PRESIDING JUDICIAL OFFICER TO BE A COMPLETE
AND SUFFICIENT BASIS FOR THE IMMEDIATE DISMISSAL OF ANY AND ALL
SUCH PROCEEDINGS WITH PREJUDICE TO FURTHER PROCEEDINGS OF ANY
KIND.

6. **Covenants.**

Valeska covenants, agrees, and promises that:

A.  Valeska will never disclose any non-public information, data, or knowledge
she has learned about the organization of CSFSSO, CSI, CST, RTC or any other entity
affiliated with the Scientology religion, or any persons associated with any such entity,
including, but not limited to, information or data related to their internal structures,
security systems, finances, functions, confidential locations or activities, memos,
correspondence, projects, expansion plans, electronic information and information
related to their schedules, duties and activities.  Valeska acknowledges that disclosure
of such information could cause irreparable injury to the Releasees and that the
obligations set forth in this subparagraph will remain in force in perpetuity.

B.  Valeska will never disclose any information, data, or knowledge she has
learned about or relating to any of the Releasees, their staff or former staff, officers or
former officers, directors or former directors, trustees or former trustees, parishioners or
former parishioners, or L. Ron Hubbard that has not been authorized for release to the
general public.  Such matters include, by way of example and not limitation, information,
data, or knowledge relating to security matters, financial information, private information
concerning any of the Releasees or their staff, including their schedules and activities,
priest-penitent privileged communications, attorney-client privileged information, plans,
programs, strategies, projects, or any other information about any of the Releasees or
the Scientology religion, which are not specifically authorized to be disclosed by
Valeska.  Valeska acknowledges that disclosure of such information could cause
irreparable injury to the Releasees and that the obligations set forth in this
subparagraph will remain in force in perpetuity.

5



C. Valeska will never sell, copy, quote from, publish, electronically post, distribute, disseminate, duplicate, paraphrase, or reveal the contents of any of those Scientology materials known as the "Advanced Technology" or "Upper Level Materials." She acknowledges that the Upper Level Materials are confidential and that meticulous efforts are made to maintain that confidentiality. Valeska further represents that she does not have in her possession, custody, or control any such materials or copies thereof. Valeska acknowledges that disclosure of such information could cause irreparable injury to the Releasees and that the obligations set forth in this subparagraph will remain in force in perpetuity.

D. Valeska will never voluntarily assist any person, group or organization in any effort to harass or injure any of the Releasees, their staff, public or parishioners, and will not voluntarily assist in any manner any person or entity involved in or contemplating investigation, litigation, or arbitration against any of the Releasees, whether as a plaintiff or as a defendant, unless compelled to do so by proper, non-collusive service of a subpoena or other lawful process upon Valeska. Valeska acknowledges that the obligations set forth in this subparagraph will remain in force in perpetuity.

E. Valeska agrees never to create or electronically post or publish or attempt to publish, and/or assist another to create for publication or posting by means of newspaper story, magazine, article, book or other similar form, any writing, or to broadcast, or to assist another to create, write, film or video tape or audio tape, electronic posting, any news program, show, program or movie, concerning her experiences with, knowledge of, or information concerning, the Scientology religion, or any of the Releasees, or any of their respective staff, former staff, parishioners, or former parishioners. Valeska acknowledges that the obligations set forth in this subparagraph will remain in force in perpetuity.

F. Valeska will never aid or assist in any manner any person or organization hostile to or engaged in attacks against the Scientology religion, any of its parishioners, or any of the Releasees. Valeska acknowledges that the obligations set forth in this subparagraph will remain in force in perpetuity.

G. Valeska will never testify or otherwise participate in any other judicial, administrative or legislative proceeding adverse to the Scientology religion, any of its parishioners, or any of the Releasees, unless compelled to do so by proper, non-collusive service of a subpoena or other lawful process. To enable CSFSSO or CSI to assist Valeska should she be served with such a subpoena or other process by a third party seeking testimony and/or the production of documents concerning any of the Releasees, Valeska shall notify CSFSSO as applicable through their corporate secretary or any of their officers within two (2) days of receipt of such service, and shall furnish him or her with a copy of any such subpoena or process. Valeska acknowledges that the foregoing notice provision exists to help her to cooperate with CSFSSO with respect to such subpoena and process. Valeska acknowledges that the obligations set forth in this subparagraph will remain in force in perpetuity.



H.  Valeska agrees never to utter, write, print, post, disseminate, circulate, quote or publish any kind of statement in any form, which is defamatory or disparaging against any of the Releasees, either directly or indirectly. Valeska acknowledges that the obligations set forth in this subparagraph will remain in force in perpetuity.

7.  **Remedies for Breach.**

A.  In the unlikely event that there should arise any dispute between Valeska and the Church, any other Scientology church, mission or related organization or any person serving as an officer, director, trustee or staff member of any such entity, concerning Valeska's involvement in Scientology in any fashion, including but not limited to her involvement as a Church staff member or her participation in any Scientology Religious Service, or with respect to the discipline, faith, internal organization, and/or religious rules of Scientology, Valeska agrees to first resolve the dispute informally by direct communication.  If that is not successful, Valeska agrees to pursue resolution of that dispute solely and exclusively through Scientology's internal Ethics and Justice procedures, including, as necessary, final submission of the dispute to the International Justice Chief of the Church ("IJC") or his or her designee.  If Valeska still has an unresolved dispute after review by the IJC, Valeska understands that she may request recourse in accordance with the applicable LRH policy.  Valeska recognizes and understands that any such dispute necessarily is a matter of religious doctrine, and can only be resolved by the religious authorities and procedures of Scientology.

B.     To the extent, and only to the extent, that any dispute may arise between Valeska and any Scientology church, mission or related organization, or any officer, director, trustee or staff member of any such entity, and a judicial determination is made that the dispute is not subject exclusively to submission to Scientology internal dispute resolution procedures, as set forth in sub-paragraph 7(A) above, and that a judicial determination for whatever reason finds that the dispute is not subject to the waiver as set forth in this Agreement, then Valeska intends and agrees that any such dispute shall be resolved exclusively through mandatory arbitration before a neutral arbitrator or arbitrators under the auspices and pursuant to the rules of Judicial Arbitration and Mediation Services ("JAMS") Alternative Dispute Resolution or of the American Arbitration Association ("AAA"), and not through judicial process and proceedings. Valeska hereby states that she intends and agrees that any lawsuit raising such a dispute be dismissed, and the dispute be referred to the appropriate arbitral body.

C.  Should Valeska breach or threaten to breach this Agreement, she agrees that CSFSSO or any other of the Releasees shall have the right to seek an ex parte issuance of a temporary restraining order, and to obtain a preliminary and permanent injunction against her, without bond, in any court of competent jurisdiction, to prohibit her from breaching this Agreement and to compel her to comply with the terms of this Agreement.  If CSFSSO or any of the other Releasees have to take such legal action because Valeska threatens or attempts to or Valeska violates the terms of this Agreement, then she will be responsible for all costs, attorneys' fees and damages arising from such action.

D.  Should Valeska breach this Agreement, she agrees that the amount of harm is likely to be very substantial and to vary with the type and extent of disclosure and/or use of such information and that it would be extremely difficult and impractical if not impossible to measure the full extent of actual damages caused by the violation of this Agreement and General Release.  Accordingly, Valeska agrees upon the following schedule of liquidated damages, which Valeska acknowledges and agrees is reasonable in light of the circumstances existing at the time this agreement is made, for Valeska's breaches of confidentiality obligations hereunder with respect to confidential information.

(1) Private disclosure, transmission or repetition of Confidential Information: $25,000 for each person to whom each such disclosure, transmission or repetition is made.

(2) Causing, participating in, cooperating in, aiding or abetting the publication, broadcast or other public disclosure, transmission or repetition of Confidential Information, including through private disclosure, transmission or repetition in subparagraph C (1) above: $100,000 for each disclosure, transmission or repetition.

(3) In a newspaper or magazine: $20.00 for each copy printed, with a minimum of $100,000 per publication.

(4) In a book: $250.00 for each copy printed, with a minimum of $100,000 per publication.

(5) In a television broadcast: $100,000 per broadcast.

(6) In video cassettes, discs, or other video devices: $30.00 for each unit reproduced, with a minimum of $100,000.

(7) On audio records (tape, disc or otherwise): $10.00 for each unit reproduced, with a minimum of $100,000.

(8) On the Internet or otherwise by means of wireless or similar devices: $100,000 per posting (including posting on a webpage, message board, photo board, chat room, etc.)

(9) By other public disclosure, transmission or repetition: $100,000 for each such disclosure or repetition. [initials]

E.  No delay or omission of CSFSSO or any other Releasee, in exercising any right or remedy accruing upon any default or breach of this Agreement shall be construed as a waiver of any such default or breach or any acquiescence therein. Every right and remedy conferred hereunder upon CSFSSO, or any other Releasee may be enforced and exercised as often as permitted by law.

8. **Severability.**

If any provision of this Agreement shall be declared to be void, invalid or otherwise unenforceable in whole or in part by a court of competent jurisdiction, all remaining provisions shall be unaffected and shall remain in full force and effect.

9. **Amendment.**

This Agreement may only be amended by written agreement signed by VALESKA and CSFSSO.

10. **Applicable Law.**

This Agreement shall be construed, interpreted, governed, and enforced in accordance with the laws of the State of California without reference to conflicts of law.

11. **Inconsistent Acts.**

Valeska further agrees to forbear and refrain from doing any act or exercising any right, whether existing now or in the future, which act or exercise is inconsistent with this Agreement.

12. **Headings.**

The paragraph headings contained in this Agreement are for convenience of reference only and shall not affect the construction of any provision of this Agreement.

13. **Counterparts.**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together shall constitute one and the same instrument.

14. **Non-Parties to this Agreement.**

To the extent that this agreement inures to the benefit of persons or entities not signatories hereto, this Agreement is hereby declared to be made for their respective benefits and uses.

15. **Additional Acts.**

Valeska and CSFSSO will perform all further acts that may be reasonably necessary and useful to effectuate the purposes and provisions of this Agreement.

16. **No Assignment of Claims.**

Both Valeska and CSFSSO acknowledge and warrant that she or it has not assigned or otherwise transferred to any third party an interest in any claim it may have against any signatory to this Agreement or Releasee, and Valeska acknowledges and agrees to indemnify and hold CSFSSO and the Releasees harmless from any liability resulting from having assigned or transferred such interest to a third party.

9



17. **No Admissions.**

This Agreement is the document by which all rights, duties, and obligations of Valeska and CSFSSO are memorialized at the conclusion of Valeska's tenure as a staff member. It shall not in any way be construed as an admission by CSFSSO that it acted wrongfully with respect to Valeska or any other person, or that Valeska has any rights whatsoever against CSFSSO. CSFSSO specifically disclaims and Valeska specifically acknowledges that CSFSSO has no liability to or for any wrongful acts against Valeska or any other person, on the part of itself, its agents, or anyone else acting on its behalf.

18. **No Other Claims.**

Valeska covenants and represents that she has not filed any complaints or charges or lawsuits against CSFSSO or any Releasee with any governmental agency or any court, and that Valeska will not do so at any time hereafter.

19. **No Obligation.**

Valeska agrees and acknowledges that the consideration identified in paragraph 4 of this Agreement is not required to be given to Valeska by any policy or procedure of CSFSSO.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first written above.

Valeska Paris

CHURCH OF SCIENTOLOGY FLAG
SHIP SERVICE ORGANIZATION, INC.

By:

10

EXHIBIT A TO
AGREEMENT AND GENERAL RELEASE

CONFIDENTIAL INFORMATION is defined as information which has not been authorized to be published or revealed either to general Church of Scientology public or staff or in general. This includes but is not limited to the following:

A. Church issues with limited distribution, or information concerning them;

B. Information relating to security of information or confidential Church premises and locations;

C. Personal information regarding CSFSSO, CSI, CST, RTC, or their staff or executives or any staff member of any Church of Scientology and their schedules and activities and private counseling, including auditing or use of the Scientology ethics technology, that has not been authorized by the individual himself or herself to be published;

D. Expansion plans or programs of CSFSSO, CSI, CST, RTC, or any Church of Scientology that have not yet been released to general Church of Scientology staff or public;

E. Any information that is considered by CSFSSO, CSI, CST or RTC to be trade secret, including but not limited to any and all Advanced Courses materials;

F. Any information which relates to subjects concerning proprietary rights of CSI, CSFSSO, CST, RTC, or any Church of Scientology, such as any copyrights, trademarks and trade secrets;

G. Any information which relates to computer programming, design and user support for CSI, CSFSSO, CST or RTC or other Churches of Scientology;

H. Any other information obtained through activities on behalf of CSI, CST, CSFSSO, or RTC or any Church of Scientology, which relates to the operations or activities of RTC, CST, CSI, CSFSSO or any Church of Scientology, whether or not formally designated as "Confidential" which may not be generally known by or available to, the public or which, if disclosed, would tend to injure or otherwise adversely affect CSI, CST, RTC, CSFSSO, or any other Churches of Scientology or any of their respective activities, functions, plans, programs or personnel. To the extent there is any question about the confidential status of any such matter, it is incumbent upon the party to this Agreement to verify this with a qualified CSI staff member before making any use or disclosure of it in any fashion.



11

**Exhibit N**



*Consulado General de la República de Panamá*
*Nueva York*

The Undersigned, Consul General
of the Republic of Panama in
New York, United States of America

Certifies:

That the vessel **"FREEWINDS"**, in favor of **SAN DONATO PROPERTIES
CORPORATION** is duly registered in the Public Registry of the Republic of Panama, under
File Card (Ficha) **7262**, Roll (Rollo) **7278** and Image (Imagen) **2** since November 6, 1981.

That the vessel **"FREEWINDS"** is free of any liens or encumbrances.

The above Certification is issued in accordance with information received from the Public
Registry of the Republic of Panama on May 25, 2022.

**Elías M. Levy C.**
**Consul General**

Issued in New York, May 31, 2022

**Exhibit O**



Pages 16, 18 & 24

# Vessel Inspection Guide

Procedures, Regulations, and Documentation for the
Processing of Crew and Passengers Arriving in the United States

July 2012



U.S. Customs and
Border Protection

## Visa Requirements for Crew Members

All nonimmigrant crew members (with certain exceptions as noted) must be in possession of a passport or seaman's book and crew visa, known as a D visa, when arriving in the United States on board any vessel. There are specific classes of visas issued to facilitate crew members' transit to and/or arrival on a vessel. These classes of visas are:

**D Visa** - Issued to an individual crew member. It permits the crew member to request conditional landing privileges upon arrival in the United States on board the vessel. It also permits the master or agent to request a discharge and repatriation of the crew member. Crew members granted conditional landing privileges are authorized to remain in the United States only as long as the vessel remains in the United States, not to exceed 29 days.

**C1 Visa** - Permits the bearer to arrive in the United States and request direct and immediate transit through the United States. In the case of nonimmigrant crew members, it permits them to arrive in the United States (typically as an airline passenger) to request direct and immediate transit to their vessel. C1 visas do not permit the crew member to apply for conditional landing privileges.

**C1/D Visa** - Dual-purpose visa permits the bearer to arrive in the United States in either the C1 or D classification.

**Crew with no Visa** - Nonimmigrant crew who arrive without a D visa are ineligible for conditional landing status. In the case of crew members without valid D visas, the inspecting CBP officer shall order them detained or removed at carrier expense on CBP Form I-259.

**DHS Form I-193** (Application for Waiver of Passport and/or Visa) - In extenuating circumstances, crew members without valid D visas and/or passports may have the opportunity to present application for waiver of visa requirements upon payment of the associated fee. The CBP officer will adjudicate the application in a manner consistent with the circumstances.

The master is responsible for the safekeeping of travel documentation of all nonimmigrant crew. Crew members in possession of a D, C1, or C1/D visa are ineligible to adjust or change their status to another visa classification such as tourist, student, temporary worker, etc., or to extend their stay beyond the initial period of admission.

# Crew Inspection

## Arriving Crew

It is the responsibility of the owner, agent, or master to present all persons on board a vessel to a CBP officer for inspection, at the first port of entry to the United States. Likewise it is the responsibility of the owner, agent or master to ensure that all persons are properly documented for entry to the United States. **The master is responsible for the safekeeping of all nonimmigrant crew member travel documents**. All persons employed in any capacity on board any vessel arriving to the United States shall be detained on board the vessel by the master or agent until admitted or permitted to land by a CBP officer.

All crew members on board an arriving vessel should be presented for inspection as follows:

1. When and where directed by CBP officers;

2. In person;

3. With proper travel documents (passport and visa or other documentation as required);

4. With CBP Forms I-95 or I-184; and

5. With all names and biographical data properly listed on CBP Form I-418 (crew list).

Upon completion of inspection, the CBP officer will return each nonimmigrant crew members travel documents to the master for safekeeping.

## Discharge of Nonimmigrant Crew Members

Application to pay off or discharge a crew member, except a U.S. citizen or a legal Permanent Resident, must be made at a port where the vessel is located. A crew member is considered to have been discharged when he/she:

   a. Resigns;
   b. Is terminated;
   c. Goes on leave; or
   d. Is transferred to another vessel.

The following forms should be presented for each departing crew member:

1. CBP Form I-408 (listing the initial port of entry in the United States, arrival date, and notating the date and reason for discharge);

2. New CBP Form I-95;

3. Previous CBP Form I-95 from previous arrivals;

4. Proper travel documents for onward country (passport and visa or other documentation as required); and

5. Evidence of definite arrangements (airline tickets or reservations, ship's employment, or transfer letter).

In addition, the following conditions must be met:

1. Crew member must adhere to departure instructions as annotated on the approved CBP Form I-408;

## 90-Day Crew Inspections

Cruise ships with itineraries originating in the United States and terminating in the United States are eligible to be processed under the 90 day Crew Exception. Under this policy, cruise vessel crew need only be presented for an in-person inspection upon initial arrival. Subsequent arrivals within the next 90 days may not be required as long as the crew member has not been in the United States for more than an aggregate of 29 days. This does not exempt crew members who have engaged on the vessel after the initial inspection, nor does it relieve the owner, master, or agent from complying with regulations relating to the discharge or parole of crew members. CBP retains the authority to conduct a full or partial inspection at any time without notice.

## Detention of Crew

All persons employed in any capacity on board any vessel in the United States shall be detained on board the vessel at the port of arrival by the master or agent of such vessel until admitted or otherwise permitted to land by a CBP officer.

When a nonimmigrant crew member is refused a conditional landing permit for any reason, CBP Form I-95 presented by him/her at time of application for conditional landing status shall be endorsed "Permission to land temporarily at all U.S. ports is refused." **The CBP Form I-95 with travel documents will be surrendered to the master or agent of the vessel**. CBP Form I-259 (Notice to Detain, Remove, or Present Alien) bearing the names of each detained crew member shall be served upon the agent or master.

## Deserters/Absconded Crew Members

A deserter is a crew member who has been granted D-1 or D-2 status and a conditional landing permit but does not depart when required. An absconder is a crew member that has been refused a landing permit and is ordered detained on board but departs the vessel without permission.

The owner, agent or master is required to report **immediately**, by telephone, the desertion or absconding of a nonimmigrant crew member to the CBP office at the location of the incident. In addition, the following forms and documents are required:

1. Completed CBP Form I-409 (Report for Deserting Crewman);

2. A letter from the owner, agent, or master providing details of the incident;

3. The passport or travel document of the deserting/absconded crew member; and

4. Abscondee/deserter will be listed on the CBP Form I-418 traveling manifest to indicate they are no longer on the vessel.

## Mustering

CBP officers may re-board a vessel to insure that detained crew members have remained on board or that all crew members are present for a ship's departure. A CBP officer may revoke a crew member's conditional landing permit at any time subsequent to the initial inspection.

**Exhibit P**

# Safety

# Management

# System

Uncontrolled when printed

## 9.3.6 - Crew Signing-on

1) When a crewmember joins a vessel they must be referred directly to the Crew/HR/Admin Office etc. as relevant.

2) Their passport should be taken either at the gangway (by the Security Officer/Watchman) or upon their immediate arrival at the crew office.

3) The assigned Officer(s) onboard conducts the sign on procedure using Form **C40 Seafarer's Embarkation Checklist** which is then kept in Seafarer's file.

4) Inform crew about their right to free phone calls and computer access in case of emergency or urgent family matters.  (See 4.8 below)

## 9.3.7 - Crew Signing-off

1) When a crewmember is due to sign off the following procedure is followed:

| Break |
| :---: |

## Crew Signing-Off Procedure

1) The ship receives the repatriation details from the Office and the Head of department or the assigned Crew Officer advise the crewmember.

2) *Crewmember completes form **C45 Travel Requisition / End of Contract Form** and arranges for submittal (personally or via ships purser, etc.) to the crew coordinator / manager no later than 30 days prior to requested travel date.*

3) The Agent is notified of crew sign-off details/dates.

4) A seaman's book (or if not available Form **C28 Record of Sea Service**) is filled out by the assigned Crew Officer, and signed by Captain.

> **Note**:  In exceptional cases (e.g. dismissals) the Master completes the Seaman's Book and signs it accordingly.

5) At clearance, the assigned Crew Officer processes the sign-off passports with the Agent and ensures the Agent arranges transportation in accordance with Office instructions.

6) The crewmember completes a Form **C18 Sign-off Form** or equivalent prior to receiving their sign-off wages/pay and crew documentation (passport, seaman's book and any other documentation kept in the Crew Office).

| Break |
| :---: |