## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GAWAIN BAXTER, LAURA BAXTER
and VALESKA PARIS,

      Plaintiffs,

v.                           Case No.: 8:22-cv-00986-TPB-JSS

DAVID MISCAVIGE; CHURCH OF
SCIENTOLOGY INTERNATIONAL, INC.;
RELIGIOUS TECHNOLOGY CENTER, INC.;
IAS ADMINISTRATIONS, INC.; CHURCH
OF SCIENTOLOGY FLAG SERVICE
ORGANIZATION, INC.; CHURCH OF
SCIENTOLOGY FLAG SHIP SERVICE
ORGANIZATION, INC.,

      Defendants.

_____/

### DEFENDANT IAS ADMINISTRATIONS, INC.'S
### MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF
### PERSONAL JURISDICTION, TO COMPEL ARBITRATION, OR
### DISMISS FOR FAILURE TO STATE A CLAIM

IAS Administrations, Inc. ("IASA"), by and through undersigned counsel,

moves: (1) under Rule 12(b)(2) of the Fed. R. Civ. Pro. to dismiss for lack of

personal jurisdiction, (2) or in the alternative, to compel arbitration under 9 U.S.C.

§ 1 et seq., (3) or in the alternative, to dismiss for failure to state a claim under Rule

12(b)(6) of the Fed. R. Civ. Pro. IASA states as follows.

### INTRODUCTION

Plaintiffs Gawain Baxter, Laura Baxter and Valeska Paris (collectively,

"Plaintiffs") voluntarily served for over 20 years as members of the Sea

Organization ("Sea Org"), the religious order of the Church of Scientology. As Sea Org members, Plaintiffs were integral to Scientology's religious mission. Despite voluntarily choosing to practice Scientology and serve as members of its religious order, Plaintiffs now claim their participation violated the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1581-1597. Plaintiffs' claims against IASA are without merit and must be dismissed and/or sent to arbitration.

First and foremost, the Court lacks personal jurisdiction over IASA. As Plaintiffs concede, IASA is a Delaware corporation and has its principal place of business in California. (Compl. ¶ 15) (Declaration of Mislav Raos ("Raos Dec.") ¶¶ 4, 5). Thus, IASA is not "at home" in Florida and is not subject to general jurisdiction in Florida. IASA is also not subject to specific personal jurisdiction in Florida. Despite the length of the Complaint, Plaintiffs fail to allege a single plausible fact establishing IASA's contacts with Florida under the Florida long-arm statute or how any alleged harm arose out of any such contact with Florida. IASA's purported administration of annual dues in Florida, even if true, and it is not, is not alleged by Plaintiffs to have any connection to the claims in the Complaint. In short, Plaintiffs have failed to establish the requisite statutory and constitutional nexus required to permit the exercise of specific personal jurisdiction over IASA. Accordingly, the Court should dismiss the action against IASA for lack of personal jurisdiction or, in the alternative, compel arbitration, or dismiss all claims against IASA for failure to state a claim on which relief can be granted.

## ARGUMENT

### I.   THE COURT LACKS PERSONAL JURISDICTION OVER IASA

IASA is not subject to personal jurisdiction in Florida. A plaintiff bears the initial burden of establishing a *prima facie* basis upon which jurisdiction over a nonresident defendant can be exercised. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013); *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). A *prima facie* case is demonstrated only by factual allegations pled "with reasonable particularity" establishing that sufficient contacts between the party and the forum state exist. *Organic Mattresses, Inc. v. Envtl. Res. Outlet, Inc.*, No. 17-21905, 2017 WL 5665354, at *2 (S.D. Fla. Oct. 6, 2017); *see also Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). If a plaintiff satisfies its burden, the burden shifts to the defendant to refute the jurisdictional allegations by an affidavit or other sworn proof showing such allegations are erroneous, thereby shifting the burden back to the plaintiff to produce evidence supporting jurisdiction, if it is able to do so. *Id.* The court should dismiss an action where, as here, a plaintiff has not, and cannot, satisfy its threshold jurisdictional requirements.

A court must consider two questions in resolving a personal jurisdiction challenge: "(1) whether personal jurisdiction exists over the nonresident defendant under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th

Cir. 2013). "The reach of Florida's long-arm statute is a question of Florida law, and this Court is required to apply the statute as would the Florida Supreme Court" or lower state courts of appeal. *Id*. The statute is to be strictly construed. *Id*. Florida's long-arm statute recognizes two types of personal jurisdiction: general jurisdiction and specific jurisdiction. Fla. Stat. §§ 48.193(1)-(2). Plaintiffs do not identify anywhere in the Complaint whether IASA is subject to general jurisdiction or specific jurisdiction. For the reasons detailed below, exercising personal jurisdiction over IASA is inconsistent with the Florida long-arm statute and would violate the Federal Due Process Clause.

### A. IASA Is Not Subject to General Jurisdiction Under Florida's Long-Arm Statute, Section 48.193(2), And Exercising Jurisdiction Would Offend Due Process Requirements.

Section 48.193(2), Fla. Stat., provides for general personal jurisdiction. However, the reach of the Florida long-arm statute is co-extensive with the Due Process Clause of the Fourteenth Amendment. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). The only question, then, is whether this Court's exercise of general personal jurisdiction over IASA would violate the Federal Due Process Clause.

A general jurisdiction inquiry turns on whether a party has "substantial and not isolated activity" in Florida irrespective of where the cause of action arose. Fla. Stat. § 48.193(2). As *Daimler AG v. Bauman et al.*, and its progeny have made clear, the paradigm forum for the exercise of general jurisdiction is "one in which the corporation is fairly regarded as at home." 571 U.S. 117, 137 (2014); *see also*

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (corporation is subject to general jurisdiction where it is "at home," that is, "its place of incorporation and principal place of business.") *Daimler* provides that general jurisdiction may arise only where a foreign corporation's affiliations in the state are so "continuous and systematic" as to render it "at home," that is, where it was incorporated and has its principal place of business, except in an "exceptional case." *Id.* at 137-39; *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)

Plaintiffs bear a "heavy burden" to establish a defendant is subject to general jurisdiction. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018); Failure to meet this threshold requirement compels dismissal absent a separate basis for exercising specific jurisdiction, discussed below. *See Fincantieri-Cantieri Navali Italiani S.p.A. v. Yuzwa*, 241 So. 3d 938, 943-45 (Fla. 3d DCA 2018); *Imperial Cap., LLC v. Tradewinds, Ltd.*, 279 So. 3d 166, 168 (Fla. 4th DCA 2019); *Teva Pharm. Indus. V. Ruiz*, 181 So. 3d 513, 521 (Fla. 2d DCA 2015) (finding no general jurisdiction where defendant was neither incorporated nor had its principal place of business in Florida, despite having millions of dollars of sales in Florida). *Daimler* and cases that follow have erected "a high bar . . . to make a foreign corporation at home in Florida," *Bryant v. Hasbro, Inc.*, No. 8:18-cv-1336-T-36CPT, 2020 WL 224513 at *4 (M.D. Fla. Jan. 15, 2020) (finding no exceptional circumstances to confer general jurisdiction and reasoning that "having employees and registering to do business in Florida are not sufficient circumstances to render

a corporation at home in Florida for purposes of general jurisdiction."); *see also Lee v. Branch Banking & Tr. Co.*, No. 18-21876-Civ-Scola, 2018 WL 5633995, at \*3 (S.D. Fla. Oct. 31, 2018) (finding no general jurisdiction over company doing business in Florida by maintaining branches and ATM locations and maintaining an agent in Florida to accept service of process), and one which Plaintiffs fail to meet.

Here, Plaintiffs concede IASA is a Delaware corporation with its principal place of business in Los Angeles, California. (Compl. ¶ 15) Indeed, not only is IASA's principal place of business in Los Angeles, California, its officers and directors direct, control, and coordinate IASA's activities from Los Angeles, California. (Raos Dec.¶5). IASA is, thus, "at home" in California, not in Clearwater, Florida. While Plaintiffs allege IASA has offices and operations in Clearwater, Florida, which "administers annual dues paid by all persons who participate in Scientology," (Compl. ¶15) these allegations, even if accurate, and they are not (Raos Dec. ¶ 6), are insufficient to establish the necessary "substantial and not isolated activity" between IASA and Florida. *Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 535 F. Supp. 3d 1299, 1305 (S.D. Fla. 2021) (defendant not subject to general jurisdiction where it is not incorporated and does not have its principal place of business); *see also Scanz Techs., Inc. v. JewMon Enters., LLC*, 2021 WL 65466, at \*3 (S.D. Fla. Jan. 7, 2021) (finding that "[a]n individual is subject to general jurisdiction where the individual is domiciled").

For all of the foregoing reasons, Plaintiffs' failure to meet this threshold requirement compels the conclusion that IASA is not subject to general jurisdiction in Florida and the matter must be dismissed absent a separate and independent basis for exercising specific jurisdiction.

### B.   IASA Is Not Subject to Specific Jurisdiction Under Florida's Long-Arm Statute.

To establish specific jurisdiction, a plaintiff must allege facts establishing (1) a defendant did one of the acts under the Florida long-arm statute within Florida, and (2) that the cause of action "arose from" the defendant's activity in Florida. *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1135 (Fla. 3d DCA 2018). Absent such allegations, there can be no specific jurisdiction over a defendant. *Kingland Estates, Ltd. V. Davis*, 170 So. 3d 825, 831 (Fla. 3d DCA 2015).

The Complaint is silent as to any basis for exercising personal jurisdiction pursuant to the long-arm statute. In fact, Plaintiffs advance *no* jurisdictional allegations whatsoever regarding specific jurisdiction. Construing the Complaint as a whole, however, Plaintiffs' allegations of "offices and operations in Clearwater, Florida" (Compl. ¶ 15) and assertion of claims under the TVPRA against IASA suggest Plaintiffs may seek to establish specific jurisdiction under either Section 48.193(1)(a)(1), Fla. Stat. (operating or engaging in a business or business venture in Florida or having an office in Florida), or Section 48.193(1)(a)(2), Fla. Stat. (committing a tortious act in Florida). Accordingly, IASA addresses those issues below.

### 1. IASA Is Not Subject to Jurisdiction Pursuant to Fla. Stat. § 48.193(1)(a)(1) for Operating or Engaging in a Business or Business Venture in Florida or Having an Office in Florida.

Under Section 48.193(1)(a)(1), a foreign defendant may be subject to specific jurisdiction for a cause of action *arising out* of that party's activities *in Florida*. Fla. Stat. § 48.193(1)(a)(1). As an initial matter, Plaintiffs' conclusory and barebone allegations relating to IASA do not establish IASA carries on any business activities *in Florida*. Contrary to Plaintiffs' allegations, annual dues are not administered from Florida (Raos Dec. ¶6), but even if correct, this fact would be insufficient to establish jurisdiction. Moreover, while IASA maintains some staff in Clearwater, Florida, those staff members do not devote their time to the administration of annual dues. Annual dues are administered from Los Angeles. (Raos Dec. ¶ 6). None of the Clearwater staff are officers or directors of IASA and all of their activities are directed and supervised by officials in Los Angeles. (Raos Dec. ¶8). These facts, including Plaintiffs' conclusive concession, establish that IASA is not subject to specific jurisdiction in Florida.

According to the Plaintiffs' allegations, the vast majority of alleged bad acts by IASA staff occurred in locations *other than Florida*. (*See* Compl. ¶¶ 34-Freewinds, 83-Florida, 87-Freewinds, 88-Freewinds, 95-England, 96-Freewinds, 98-Copenhagen, 101-Freewinds, 103-Freewinds, 145-Freewinds). The Freewinds vessel is not owned by IASA (Compl. ¶ 28) and never enters U.S. waters. (Compl. ¶ 30). Further, as explained in the Motion to Dismiss of Defendant Flag Service

Organization, the Complaint does not assert that any of supposed violations of the TVPRA occurred in Florida after 2002, when Congress established a private right of action under the TVPRA. Without actionable conduct *in Florida*, there can be no jurisdiction in Florida for IASA.

Finally, Plaintiffs do not allege how any claim advanced against IASA arose from "the administration of annual dues by IASA." *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 861 (11th Cir. 2013). That failure is fatal, *see Schwartzburg v. Knobloch*, 98 So. 3d 173, 182 (Fla. 2d DCA 2012) (finding no basis for jurisdiction under § 48.193(1)(a) because the plaintiff's allegations established only that defendants had indirect ownership interest in the nursing home's operating and management operations, and the plaintiff's claims were not related to the defendant's financial interests in the nursing home).

### 2. IASA Is Not Subject to Jurisdiction Pursuant to Fla. Stat. § 48.193(1)(a)(2).

A foreign defendant may also be subject to specific jurisdiction in Florida where a claim arises out of a tortious act it is alleged to have committed in Florida. *See* § 48.193(1)(a)(2), Fla. Stat. (2019). The only allegation of any potential tortious act committed by IASA within Florida *is* that Danny Light, a high-ranking IASA officer from the Freewinds who was at the time located in Clearwater, verbally abused and screamed at Gawain. (Compl. ¶ 83) But the Complaint reveals that Mr. Light's supposed yelling at Gawain, even if true, happened in *1997*, years before a

private right of action existed under the TVPRA.[1] And, it is not at all clear from the Complaint that alleged "verbal abuse" rises to the level of a TVPRA violation. All other allegations are pled in a collective shotgun fashion against "the Defendants" without any discernible way to differentiate specific perpetrators of specific actions.

Insofar as Plaintiffs identify other specific IASA officers or employees as having committed, or facilitated the commission of a tortious act, the allegations nowhere tether any such acts or any resulting injury to *Florida*. Plaintiffs' allegations about Janet McLaughlin's misconduct, for instance, even if true (which they are not), occurred on the Freewinds vessel in international waters, *not in Florida. (*Compl. ¶ 101).

Plaintiffs, therefore, fail to carry their burden of a *prima facie* showing of specific jurisdiction over IASA under Florida's long-arm statute. *See Carlyle v. Palm Beach Polo Holdings, Inc.*, 842 So. 2d 1013, 1017 (Fla. 4th DCA 2003) (finding no jurisdiction where plaintiffs failed to demonstrate how its causes of action arose from the defendant's communications into Florida, or even how the alleged communications were tortious).

Even if Plaintiffs' allegations were sufficiently pled (which they are not), the mere *allegation* of a tort does not confer jurisdiction. For personal jurisdiction to attach under the "tortious activity" subsection of the long-arm statute, a plaintiff

---

[1] The Complaint alleges that the Danny Light incident happened when Gawain was 15 years old. (Compl.¶83). Gawain was born in 1982. (Compl. ¶ 7).

must plead facts sufficient to demonstrate the defendant committed a "substantial aspect of the alleged tort in Florida." *Musiker v. Projectavision, Inc.*, 960 F. Supp. 292, 296 (S.D. Fla. 1997) (internal citation omitted). Where no part of the alleged tortious activity is plausibly alleged to have occurred in Florida, a Florida court has no personal jurisdiction over an out-of-state defendant. *Freedom Sav. & Loan Ass'n v. Ormandy & Assocs.*, 479 So. 2d 316, 317 (Fla. 5th DCA 1985). Here, there are no allegations that any of the alleged tortious acts collectively attributable to IASA occurred in Florida.

Nor can Plaintiffs meet their burden by lumping IASA into an alleged conspiracy designed to make IASA responsible for the acts of every other alleged co-conspirator. Congress did not add conspiracy liability to the TVPRA until it amended § 1596 in December 2008. *Roe v. Howard*, 917 F.3d 229, 245 (4th Cir. 2019) and the amendment is not retroactive. *See, e.g., Saraswat v. Jayaraman*, 799 F. App'x 85, 87 (2d Cir. 2020) (no 2008 amendments to TVPRA are retroactive). Plaintiffs allege no specific acts occurring after December 2008. Courts will not extend jurisdiction over a foreign defendant based on a conspiracy theory utterly devoid of any factual support. *See Advantus, Corp. v. Sandpiper of California, Inc.*, 2019 WL 4751725, at *23 (M.D. Fla. Sept. 30, 2019) (failure to plead facts with specificity to support existence of a conspiracy compels court to decline to apply the co-conspirator theory to extend personal jurisdiction over foreign defendants); *Abdo v. Abdo*, 263 So. 3d 141, 146 (Fla. 2d DCA 2018) (vague allegations that "hint" at a conspiracy are not sufficient to establish personal

jurisdiction); *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-24363-CIV-WILLIAMS, 2016 WL 11501768, at *5 (S.D. Fla. Sept. 14, 2016) (complaint that pleads conclusory allegations without facts to support existence of civil conspiracy fails to establish personal jurisdiction).

For the foregoing reasons, IASA is not subject to specific jurisdiction under Section 48.193(1)(a)(1) or (a)(2) of the Florida long-arm statute.

## C. Exercising Specific Jurisdiction Over IASA Would Offend Due Process Requirements.

Beyond failing to satisfy the requirements of Florida's long-arm statute, discussed above, exercising specific personal jurisdiction over IASA would offend federal due process requirements. To properly exercise specific jurisdiction, this Court must determine: (1) whether a plaintiff's claims "arise out of or relate to" defendant's contact with the forum; (2) whether the defendant "purposefully availed" itself of the privilege of conducting activities within the state; ***and*** (3) whether the exercise of personal jurisdiction is fair and reasonable. *See Louis Vuitton*, 736 F.3d at 1355; *see also Estes v. Rodin*, 259 So. 3d 183, 192 (Fla. 3d DCA 2018). All three factors must be satisfied.

### 1. Plaintiffs Fail to Establish Any Claim Arose from IASA's Alleged Contacts with Florida.

The first prong of the constitutional analysis focuses on the direct causal relationship among the defendant, the forum, and the litigation Plaintiffs' claims must actually arise from or relate to IASA's conduct in and contacts with *Florida. See Fincantieri-Cantieri Navali Italiani S.p.A. v. Yuzwa*, 241 So. 3d 938, 946 (Fla.

3d DCA 2018). Plaintiffs' allegations against IASA fail to establish even a remote nexus between IASA and Florida. Plaintiffs do not allege any specific actions undertaken by IASA in Florida other than the 1997 Danny Light verbal abuse of Gawain Baxter (Compl. ¶ 83). That conduct is not clearly actionable under the TVPRA and in any event, cannot form the basis of jurisdiction. *Duncanson v. Wine & Canvas Dev., LLC,* No. 6:14–cv–704, 2015 WL 12844947, at * 5 (M.D. Fla. Sept. 25, 2015) (even though Florida resident alleged it had been harmed in Florida by defendant's conduct, court barred finding of specific jurisdiction on such grounds alone). On the contrary, Plaintiffs fail to advance any allegations about specific acts in which IASA participated in Florida that have the constitutional connectivity to the harm Plaintiffs allegedly suffered. Plaintiffs further admit in the Complaint that any and all acts that did occur, irrespective of wrongdoer, took place *outside of the United States and Florida.* (*See* Compl. ¶¶ 28-30.) Plaintiffs fail to satisfy the first constitutional requirement which, standing alone, compels dismissal.

### 2. *Plaintiffs Fail to Establish IASA "Purposefully Availed" Itself of Florida, the Forum State.*

The second prong of the constitutional analysis focuses on whether IASA "purposefully availed" itself of the privileges of conducting business in Florida. Plaintiffs' conclusory and generalized allegations that IASA has offices and operations in Clearwater, Florida (Compl. ¶ 15) and that Danny Light yelled at Gawain Baxter in 1997 (Compl. ¶ 83) are insufficient to establish IASA purposefully availed itself of the privileges of conducting business in Florida. *See, e.g.*, *Gazelles FL, Inc. v. Cupp*, No. 6:18-cv-544, 2018 WL 7364591, at *9–13 (M.D. Fla. Sept. 28,

2018) (plaintiff did not establish how defendants benefitted from Florida's laws, and therefore jurisdiction would arise based only on defendants' "connection to Plaintiff and Plaintiff's contacts with Florida."); *Estes*, 259 So. 3d 197-98 (finding plaintiffs had not established purposeful availment because defendants' limited contacts with Florida could not alone form the basis for defendants to "reasonably anticipate being haled into a Florida court."); *Fincantieri*, 241 So. 3d at 946 (finding no adequate connection between Florida and the alleged tortious acts to support a finding of specific jurisdiction). Accordingly, Plaintiffs fail the second prong of the due process analysis.

### 3. Plaintiffs Fail to Establish How Exercising Jurisdiction Comports with Notions of "Fair Play and Substantial Justice."

The third prong of the constitutional analysis examines whether the exercise of personal jurisdiction over IASA would be fair or reasonable. "'[T]he facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" *Venetian Salami, supra,* 554 So. 2d at 501 *(quoting Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 485 (1985)). Despite the length of the Complaint, Plaintiffs fail to identify when, where, how, or which of IASA's officers, religious workers, staff, agents, or representatives, if any, committed bad acts *in Florida*. Plaintiffs' conclusory allegations regarding "forced labor," "trafficking," "peonage," "abuse," "punishment," "imprisonment," or "being spied upon" fall far short of satisfying

their burden. Plaintiffs fail to allege a single ultimate fact supporting such allegations against IASA and fail the third prong of the due process analysis.

## II.    PLAINTIFFS MUST ARBITRATE THEIR CLAIMS AGAINST IASA.

In the event this Court finds it has jurisdiction over IASA, Plaintiffs must be compelled to arbitrate their claims against IASA. This issue is addressed at length in FSSO's Motion to Compel Arbitration (ECF 67). As explained by FSSO, all Plaintiffs signed multiple arbitration agreements with FSSO.[2] The same arbitration agreements are recognized as enforceable by the 11th Cir. *Garcia v. Church of Scientology Flag Srvc. Org., Inc.*, No. 18-13452, 2021 WL 5074465 at *6 (11th Cir. Nov. 2, 2021). IASA is an intended third-party beneficiary of those agreements because the agreements provide for arbitration of any claims Plaintiffs may assert against, "*any* other organization which espouses, presents, propagates or practices the Scientology religion." *See* Enrollment Agreements, ECF 67-2, pp. 16, 23, and 66 at ¶6a and ¶6d; Departure Agreements, ECF 67-2, pp. 45-46, and 55-56, at ¶6; and pp. 108, 119 at¶7. The IASA is indisputably "an organization which espouses, presents, propagates or practices the Scientology religion. (Raos Dec. ¶ 2).

As a third-party beneficiary of the arbitration agreements, IASA can enforce them. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless*

---

[2] See arbitration agreements attached to Exhibit 2 to FSSO's Motion to Compel Arbitration ECF at [67].

*USA, LLC*, 140 S. Ct. 1637, 1644 (2020) ("arbitration agreements may be enforced by non-signatories through...third-party beneficiary theories"); *Ronay Fam. Ltd. Partnership v. Tweed*, 216 Cal. App. 4th 830, 838 (2013) ("[A] third party beneficiary of an arbitration agreement may enforce it"). *Zac Smith & Co. v. Moonspinner Condo. Ass'n, Inc.*, 472 So. 2d 1324, 1324 (Fla. 1st DCA 1985) ("an arbitration clause in a contract is binding on a third-party beneficiary"). *Robinson v. NBC Universal Cable,* No. 17-CV-81324, 2018 WL 8620154, at *4 (S.D. Fla. Apr. 23, 2018) (compelling arbitration under "third-party beneficiary theories" where defendants were not signatories to the agreement but were clearly intended to benefit from the arbitration provision therein). Therefore, IASA joins in FSSO's arguments and requests Plaintiffs be compelled to arbitrate their claims against IASA.

## III. ALTERNATIVELY, PLAINTIFFS' CLAIMS MUST BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard applies only to factual allegations, not asserted legal theories. *Johnson v. City of Shelby*, 574 U.S. 10 (2014). Thus, the court may reject conclusory allegations not rooted in specific

facts, as "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

### A. Plaintiffs' Claims Fail Because the TVPRA Does Not Have Retroactive or Extraterritorial Application.

Subject to and without waiving IASA's jurisdictional and arbitration arguments, IASA further joins in and incorporates by reference in its entirety herein Defendant FSO's Motion to Dismiss under Rule 12(b)(6) as to all challenges to the retroactive and extraterritorial application of the TVPRA as well as to Plaintiff Paris's untimely claims. (*See* ECF No. [68].) Plaintiffs also fail to allege any facts sufficient to state any claims against IASA for violating the TVPRA, whether as a direct, attempted, or beneficiary violation (*see* Counts I, III and V), or as part of a conspiracy (*see* Counts II, IV and VI). Plaintiffs advance conclusory allegations collectively against all Defendants in support of a rote recitation of the elements of each alleged TVPRA provision violated. In addition to being an impermissible shotgun pleading, the Complaint must be dismissed because it identifies no acts or omissions by IASA that are actionable under the TVPRA.

### B. Plaintiffs Fail to Plead Facts Establishing IASA's Role in Any Alleged TVPRA Violation.

Plaintiffs identify no acts by IASA that are actionable under the TVPRA. To be liable under the TVPRA, the complaint must plead plausible allegations that: "(1) the person or entity must knowingly benefit, financially or by receiving anything of value, (2) from participating in a venture, (3) that the person knew or should have known was engaged in an act in violation of this chapter." *S.J. v.*

*Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 152-53 (E.D.N.Y. 2020) (quoting 18 U.S.C. § 1595(a) and *A.C. v. Red Roof Inns, Inc.*, No. 2:19-cv-4965, 2020 WL 3256261, at *4 (S.D. Ohio June 16, 2020)). Counts I, III and V fail.

### 1. *Plaintiffs Fail to Plead Facts that IASA Directly Violated the TVPRA as Alleged in Counts I, III and V.*

Count I alleging "forced labor," a violation of Section 1589, requires proof that a party has forced or compelled another party to perform labor or provide services by means of force, physical restraint, serious harm, abuse, or threats thereof. 18 U.S.C. § 1589(a). Count III alleging "trafficking with respect to forced labor," a violation of Section 1590 "generally requires some conduct that occurs abroad." *Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 454 (E.D. Va. 2015). Count V alleging peonage, a violation of Section 1581 requires proof that a party has subjected another party to "involuntary servitude," that is, providing services in order to pay off an existing debt. *See Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 737 (11th Cir. 2018) (quoting *Taylor v. Georgia*, 315 U.S. 25, 29 (1942)). Plaintiffs have alleged "Defendants," collectively, directly violated the foregoing provisions, attempted to do so, and are also liable under a "beneficiary" theory. Yet, Plaintiffs fail to plead any facts attributing liability to IASA under any theory.

There are no allegations advanced against IASA or any of its employees or officers, to support a claim for "forced labor," "trafficking," or "peonage." The allegations concerning IASA are scant and involve, at most, isolated instances of yelling or unpleasant work that are common among crew on any ship:

- ¶ 15. IASA is the operating entity for the International Association of Scientologists ("IAS"), an unincorporated membership association. All Scientologists are members of IAS and are required to pay annual dues to IASA, which administers and transfers those funds.

- ¶ 34. IASA's operation on the ship is limited and largely public-facing. IASA staff are tasked with promoting Freewinds programs and signing up IAS members for those programs.

- ¶ 83. Danny Light, a high-ranking IASA officer from the Freewinds who was at the time located at Flag Base, verbally abused and screamed at Gawain [Baxter] *in 1997.*

- ¶ 87. On the ship, Gawain [Baxter] did administrative work for Defendant IASA.

- ¶ 88. Janet McLaughlin, the senior most IASA officer on the ship, ordered him [Gawain Baxter] to squeeze into fuel tanks and clean them.

- ¶ 101. In 2004, aboard the Freewinds, Janet McLaughlin, Ken Pirak, and two other IASA officers, Lise Cohee and Karleen De Simone screamed abusively at her [Laura Baxter].

- ¶ 103. Following this period of punishment, Laura [Baxter] was deemed unfit to work in IASA, and she was demoted to a position as crew steward.

Instead, Plaintiffs merely impermissibly recite—virtually verbatim—the TVPRA's statutory elements in Counts I, III and V (*compare* Compl. ¶¶ 162, 176, 191, *with* 18 U.S.C. ¶ 1595(a)), which should be rejected, *see Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).[3] Plaintiffs fail to provide

---

[3] In addition to engaging in impermissible group pleading, the Complaint is shotgun in nature because it incorporates all general allegations of fact into each claim for relief. (*See Compl.* ¶¶ 159, 166, 173, 180, 187, 195.) This pleading style is improper, especially given that the Complaint is 90 pages long, asserts 158 factual allegations and 6 claims for relief, and involves multiple Plaintiffs and Defendants. *See Rosado-Cabrera v. Pfizer, Inc.,* No. 8:20-CV-2008-TPB-JSS, 2021 WL 662220, at *2 (M.D. Fla. Feb. 19, 2021); *see also Worldspan Marine Inc. v. Comerica Bank*, No. 20-11646, 2021 WL 5882006, at *2 (11th Cir. Dec. 13, 2021).

fair notice of the alleged wrongs it accuses IASA of committing. Accordingly, Counts I, III and V must be dismissed.

### 2. Plaintiffs Fail to Plead Facts That IASA "Attempted" To Violate the TVPRA as Alleged in Counts I, III and V.

Plaintiffs' claims against IASA for *attempted* violations of the TVPRA also fail. 18 U.S.C. § 1594(a). (Compl. ¶¶ 163, 177, 192.) To prevail on a claim of "attempt" under the TVPRA, Plaintiff must plausibly allege that IASA "(1) knowingly intended to [violate the TVPRA] and (2) took a substantial step toward committing that crime." *See United States v. Cooper*, 926 F.3d 718, 735 (11th Cir. 2019) (*citing United States v. Monroe*, 866 F.2d 1357, 1366 (11th Cir. 1989)). A substantial step must be strongly corroborative of the firmness of the defendant's criminal intent. *Monroe*, 866 F.2d at 1366. The "mere intent to violate a federal criminal statute is not punishable as an attempt unless it is also accompanied by significant conduct." *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007). Plaintiffs fail to plead any facts suggesting IASA knowingly intended to violate the TVPRA, or that it even took a substantial step towards accomplishing the violation. Rather, Counts I, III and V merely parrot the statutory language and claim every Defendant "attempted" to violate every cited provision. (Compl. ¶¶ 163, 175, 177, 192.) Accordingly, Counts I, III and V must be dismissed. *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021).

### 3. Plaintiffs Fail to Plead Facts That IASA Violated the TVPRA Under a Beneficiary Liability Theory.

Plaintiffs' *beneficiary* claims under 18 U.S.C. § 1595(a), (Compl. ¶¶ 162, 176,

191), fails. "[T]o state a beneficiary claim under section 1595(a), a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). In *Red Roof*, the Eleventh Circuit rejected Plaintiffs' allegations that hotel chain franchisors were liable under TVPRA. In particular, while evidence suggested the hotel franchisors may have financially benefited for licensing their brands to hotels where trafficking allegedly occurred and receiving revenues from those licensing agreements, *id.* at 719, 720, 726, there was no evidence presented that the franchisors actually "participated in a common undertaking involving risk or profit that violated the TVPRA." *Id.* As the Court explained, "observing something is not the same as participating in it," and thus the "section 1595(a) beneficiary claims against the franchisors fail." *Id.*

Plaintiffs herein allege IASA collects and administers annual dues, not from Plaintiffs, but rather from IAS members (Compl. ¶ 15 and ¶ 34) and that it has limited outward-facing operations on the Freewinds (*id.* ¶ 34). Plaintiffs have not alleged any connection between collecting and administrating annual dues and its outward-facing operations on the Freewinds with the allegations of coerced labor. Therefore, their complaint fails to support beneficiary liability. Plaintiffs' allegations do not show a "common undertaking involving risk or profit violating

the TVPRA." *Red Roof*, 21 F.4th at 727. Accordingly, Counts I, III and V must be dismissed.

### 4. Plaintiffs Fail to Plead Facts showing IASA Engaged in a Conspiracy to Obtain Forced Labor, Traffic with Respect to Forced Labor, or Commit Peonage.

Counts II, IV and VI allege "Defendants" engaged in a conspiracy to obtain forced labor, to traffic with respect to forced labor, and to commit peonage in violation of the TVPRA. Because Plaintiffs' liability theory is predicated on an alter ego or agency theory that all Defendants are an extension of the other, the conspiracy claims are barred by the intracorporate conspiracy doctrine. This doctrine recognizes the acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. *See McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves. *Id.* Under basic agency principles, the acts of a corporation's agents are those of a single legal actor. *Id.* Therefore, just as it is not legally possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself. *Id.*

Here, the Complaint expressly alleges IASA is an extension of Defendant Miscavige and is under his exclusive control. (Compl. ¶ 15.) If the Court accepts these allegations as true (which they are not), then IASA could not conspire with

others as all decisions would be made by Miscavige. *See Williams v. Michelin N. Am., Inc.*, No. 6:04-CV-815ORL31DAB, 2005 WL 2708308, at *2 (M.D. Fla. Oct. 21, 2005). While treating all entity Defendants as a single entity, and advancing sweeping alter ego and agency theories, Plaintiff purports to state a claim for civil conspiracy, a claim which requires an agreement between two or more parties. *See Kurnow v. Abbott*, 114 So. 3d 1099, 1102 (Fla. 1st DCA 2013). Not only do Plaintiffs fail to plead any facts sufficient to establish the existence of an agreement of any kind—the *sine qua non* of a conspiracy—but a single entity cannot conspire with itself, nor can an agent conspire with its principal. *See McAndrew*, 206 F.3d at 1036. Accordingly, Counts II, IV and VI fail.

## II.  CONCLUSION

For all of the foregoing reasons, IASA respectfully requests the Court dismiss Plaintiffs' Complaint for lack of personal jurisdiction under Rule 12(b)(2), stay the case and compel arbitration under Rule 12(b)(1), or dismiss Plaintiffs' claims against IASA for failure to state a claim under Rule 12(b)(6).

## Local Rule 3.01(g) Certification

I certify that I have conferred with counsel for the Plaintiffs in an effort to resolve the issues raised by this motion and no resolution was achieved. I conferred with **Neil Glazer and Zahra Dean of Kohn Swift & Graf, PC, Gregory Hansel of Preti Flaherty Beliveau & Pachios, Chartered LLP, and Manuel J. (John) Dominguez of Cohen Milstein Sellers & Toll PLLC** by telephone on July 11, 2022, beginning at 11:30 am and ending at 12:31 pm.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 12, 2022, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system, which will send a true and correct

copy to all counsel of record.

<u>/s/ *ROBERT V. POTTER*</u>
Robert V Potter, FBN: 0363006
Johnson, Pope, Bokor, Ruppel & Burns, LLP,
911 Chestnut Street
Clearwater, FL 33756
Telephone: 727-461-1818
Primary email: bobp@jpfirm.com
Secondary email: janm@jpfirm.com,
*Counsel for Defendant IASA*