## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GAWAIN BAXTER, LAURA BAXTER
and VALESKA PARIS,

      Plaintiffs,

v.                             Case No.: 8:22-cv-00986-TPB-JSS

DAVID MISCAVIGE; CHURCH OF
SCIENTOLOGY INTERNATIONAL, INC.;
RELIGIOUS TECHNOLOGY CENTER, INC.;
IAS ADMINISTRATIONS, INC.; CHURCH
OF SCIENTOLOGY FLAG SERVICE
ORGANIZATION, INC.; CHURCH OF
SCIENTOLOGY FLAG SHIP SERVICE
ORGANIZATION, INC.,

      Defendants.

_____/

### DEFENDANT CHURCH OF SCIENTOLOGY INTERNATIONAL, INC.'S MOTION TO DISMISS OR COMPEL ARBITRATION

COMES NOW Defendant Church of Scientology International, Inc. ("CSI"), by and through undersigned counsel, moves this Honorable Court (a) to dismiss all claims asserted against it in the Complaint Fed. R. Civ. P. 12(b)(2), (b) to compel arbitration under 9 U.S.C. § 1 *et seq.*, or (c) to dismiss all claims asserted against it in the Complaint under Fed. R. Civ. P. 12(b)(6). In support, CSI states:

## INTRODUCTION

For over a decade of their adulthood, Plaintiffs voluntarily served as ministers of a Scientology religious order on the Freewinds, a ship that never docked in the United States. They do not allege that defendant CSI ever employed them in any capacity, ever operated the ship, ever made any representations to them about life on the ship, or ever interacted with them in any way. The sum total of the factual allegations against CSI is that it is a church of Scientology, and that Plaintiffs, former ministers of the faith, now reject its tenets. But none of that amounts to a lawsuit against CSI either on the merits or within the Court's jurisdiction.

The motion to compel arbitration of Flag Ship Service Organization ("FSSO") makes clear that these former Scientology ministers must arbitrate their claims, as they agreed in the many unequivocal arbitration agreements they executed as an express condition of their service to their church. (*See* ECF No. 67.) The motion to dismiss of Flag Service Organization ("FSO") shows that, even if the Court does not enforce the arbitration agreements, Plaintiffs' claims fail for reasons common to all named defendants. (*See* ECF No. 68.)

CSI joins in those motions. It also seeks dismissal for two more reasons. First, the Court lacks personal jurisdiction over CSI because Plaintiffs allege

no nexus between CSI's supposed activities in Florida and their human trafficking claims. Second, Plaintiffs plead no *facts* supporting their claims against CSI. Plaintiffs rely on CSI's supposed licensing activities and "control" over a trust that owns the company that owns the Freewinds to impose liability, but these remote allegations are not enough to state a claim under any theory of liability. In short, Plaintiffs assert meritless claims against CSI in the wrong forum. The Court should either dismiss CSI for lack of personal jurisdiction, compel arbitration of Plaintiffs' claims against CSI or, dismiss the claims against CSI for failure to state a claim for relief.

## FACTUAL BACKGROUND

### A.    Plaintiffs' Contacts With Florida

All three Plaintiffs were born into Scientology families and raised and educated in the religion. (Compl. ¶¶ 7-9, 78-84, 93, 115.) Although Gawain Baxter spent his childhood in Florida, Plaintiff Valeska Paris did not live in Florida until her teens (starting in about 1992), while Plaintiff Laura Baxter never lived in the state. (*Id.* ¶¶ 82-90, 97, 125.) After becoming ministers in the Sea Organization ("Sea Org")—the highest religious order within the Church of Scientology—each Plaintiff traveled to Curacao to board the Freewinds, where they continued to serve in the Sea Org for several years. (*Id.* ¶¶ 85-92, ¶ 97-111, 133-146.) Plaintiffs allege no further contact with

Florida after boarding the Freewinds in or around 1998 (G. Baxter),[1] in or around 2002 (L. Baxter),[2] and in or around 1996 (Paris).[3] Instead, the Complaint alleges that during Plaintiffs' time aboard the vessel, it never entered the United States' territorial waters or docked at a domestic port and that Plaintiffs now live in Australia. (*Id.* ¶¶ 7-9, 30.)

### B.   CSI's Contacts With Florida

CSI is a California nonprofit corporation based in Los Angeles. (Compl. ¶ 12; *see also* Declaration of Lynn R. Farny, attached hereto as Exhibit 1, ¶ 4.) CSI is not registered to do business in Florida and has no agent for service of process in the state. (*Id.* ¶¶ 9-10.) It operates no business and has no employees in Florida. (*Id.*)

CSI is responsible for the ecclesiastical dissemination, propagation, and defense of the Scientology religion. (*Id.* ¶¶ 5-7.) CSI does not own or operate any individual Church of Scientology. (*Id.*) Rather, each church—including

---

[1] Plaintiffs allege that G. Baxter was born in 1982 or late 1981 (Compl. ¶ 7), that he considered leaving the Sea Org at age 15 (*id.* ¶ 83), and that he traveled to the Freewinds about "eight months later." (*Id.* ¶ 85). Thus, G. Baxter boarded the Freewinds when he was 16, in about 1998.

[2] Plaintiffs allege that L. Baxter served aboard the Freewinds twice, that her first stint ended when she was seventeen, and that her second stint began two years later, when she was nineteen. (Compl. ¶¶ 98-99). Plaintiffs also allege that she was aboard the Freewinds during her second stint in 2004. (*Id.* ¶ 100). Thus, it can be inferred from the Complaint that L. Baxter first boarded the Freewinds no later than 2002, and, because she was 17 at the time, that she was born no later than 1985.

[3] Plaintiffs allege that Paris was born in 1978 (Compl. ¶ 9) and that she boarded the Freewinds when she was 18 (*i.e.* in approximately 1996). (*Id.* ¶ 133).

each entity defendant named in this suit—is separately incorporated, with its own officers and directors. (*Id.*) The Sea Org, in contrast, is an unincorporated religious order of persons who have committed their lives to advancing the Scientology religion. (*Id.* ¶ 8.) Although some Sea Org members work for CSI, most are not CSI staff; Plaintiffs were never CSI staff. (*Id.* ¶¶ 8, 13.) Plaintiffs admit they were not CSI members. (Compl. ¶ 16.)

Plaintiffs allege no CSI involvement in their alleged trafficking. Instead, they allege that CSI licenses "Scientology IP, including trademarks and other IP" to "numerous Scientology-affiliated entities," including FSO. (*Id.* ¶¶ 12-13.) They also allege that CSI "controls . . .  a number of trusts, including Flag Ship Trust, which among other things owns the company that owns the Scientology ship, Freewinds." (*Id.* ¶ 12.) The Complaint does not allege whether CSI is a trustee or beneficiary of these alleged trusts or provide any other facts supporting its allegation that CSI "controls" them.

## ARGUMENT AND MEMORANDUM OF LAW

## I.    This Court Lacks Personal Jurisdiction Over CSI

### A.    Legal Standard Under Rule 12(b)(2)

Personal jurisdiction turns on two questions: "whether personal jurisdiction exists over [CSI] under Florida's long-arm statute, and (2) if so,

5

whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). Plaintiffs bear "the burden of establishing a prima facie case of personal jurisdiction, meaning [they] must present enough evidence to withstand a motion for a directed verdict." *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021). "When a defendant submits non-conclusory affidavits to controvert the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence to support personal jurisdiction." *Id.* If Plaintiffs offer none, the motion must be granted. *Id.*

## B.   No Personal Jurisdiction Under Florida's Statute

Florida's long arm statute authorizes personal jurisdiction[4] "over causes of action arising from or related *to the defendant's actions within Florida* and concerns a nonresident defendant's contacts with Florida *only as those contacts related to the plaintiff's cause of action.*" *Louis Vuitton*, 736 F.3d at 1352 (emphases added). Although Plaintiffs do not expressly plead

---

[4] Personal jurisdiction can also be "general," *i.e.*, "based on a defendant's substantial activity in Florida without regard to where the cause of action arose." *Louis Vuitton*, 736 F.3d at 1350. General jurisdiction exists over a corporation like CSI in "its place of incorporation and principal place of business." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). Because Plaintiffs admit that CSI is incorporated and based in California, there is no general personal jurisdiction over it. (Compl. ¶ 12.)

any basis for specific jurisdiction under the long arm statute, CSI assumes that Plaintiffs will invoke § 48.193(1)(a)(2), which provides for jurisdiction over defendants "committing a tortious act within the state." A "nonresident defendant commits a tortious act within Florida when he commits an act outside the state that causes *injury within Florida*." *Louis Vuitton*, 736 F.3d at 1353 (quote and alteration omitted, emphasis in original).

Yet Plaintiffs allege no conduct by CSI that caused any injury *in Florida*. Plaintiffs' purported Florida injuries are limited to Gawain Baxter and Valeska Paris's alleged experiences in the Sea Org at Flag Base.[5] (Compl. ¶¶ 78-84, 125-133) But as Plaintiffs allege, a different defendant—FSO—is responsible for "ownership, management and operation of Flag Base." (*Id.* ¶ 13.) CSI does not own or operate FSO, or any other individual Church of Scientology. (Farny Decl. ¶ 7.) Instead, FSO and each local Church of Scientology is separately incorporated, with its own officers and directors. (*Id.*) Plaintiffs admit as much, conceding that FSO is separately

---

[5] Laura Baxter's sole interaction with the state is an alleged layover in Miami during her travel from England to Curacao to board the Freewinds. (*Id.* ¶ 97.) The Complaint alleges no involvement by CSI in this travel. And even if such allegations existed, they still would be insufficient to support personal jurisdiction, because (a) any layover was the fortuitous result of decisions made by the airline, not purposeful conduct by CSI and (b) any injury she supposedly suffered during the layover would have occurred "wherever else [Baxter] may have traveled" to the Freewinds, and thus lacks meaningful connection to the state. *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

"incorporated and headquartered in Florida," while CSI is incorporated in California. (Compl. ¶¶ 12-13.)

The only connection alleged between CSI and FSO is that FSO "is a licensee of CSI." (*Id.*) But Plaintiffs do not allege that this supposed licensing arrangement had anything to do with the injuries they purportedly suffered while on Flag Base. This omission is hardly surprising, as the supposed forced labor and "trafficking" that Plaintiffs endured has nothing to do with the licensing of intellectual property. This is not, after all, a case involving an alleged infringement of trademarks, illegal copying of textbooks or other commercial activity to which licensing might be relevant. Instead, this is a human trafficking case involving alleged forced labor.

Plaintiffs may argue that personal jurisdiction over CSI arises out of Plaintiffs' involvement in the Sea Org, but this argument also fails. The Sea Org is an unincorporated religious order made up of persons who have committed their lives to the Scientology religion. (Farny Decl. ¶ 8.) Although some Sea Org members work for CSI, most Sea Org members are not CSI staff and have no direct involvement with CSI. (*Id.*) Thus, whatever affiliation Plaintiffs had with the Sea Org, *CSI* never employed them and they were never part of *its* staff. (*Id.* ¶ 13.) As a result, CSI has never ordered, demanded, requested, or otherwise required Plaintiffs to do

anything, and has never controlled or supervised their alleged work, or "trafficked" them or anyone else as alleged. (*Id.* ¶ 14.) Nothing in the Complaint suggests otherwise. Because the Complaint does not and cannot allege that any CSI actions injured them in Florida, Plaintiffs cannot satisfy Florida's long-arm statute, and the claims against CSI should be dismissed.

## C.   No Personal Jurisdiction Under The Constitution

The Fourteenth Amendment's Due Process Clause also constrains the Court's specific personal jurisdiction. The court applies a "three-part due process test, which examines: (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355 (quotes omitted).[6]

### 1.   *The Claims Do Not Relate to Forum Contacts*

The first requirement expresses the "fundamental element of the specific jurisdiction … that plaintiff's claim must arise out of or relate to at

---

[6] There is no need to address the third element because Plaintiffs cannot satisfy the first two. *Louis Vuitton*, 736 F.3d at 1355.

9

least one of the defendant's contacts with the forum." *Id.* (quote omitted). In other words, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quote omitted). But the Complaint alleges no such affiliation or relationship here. Plaintiffs allege no contacts between CSI and the forum outside the most tenuous "licensing" relationship between CSI and FSO. As explained above, that alleged licensing relationship has no connection to Plaintiffs' claims of trafficking and other abuse. *Ford,* 141 S. Ct. at 1025 (plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum); *Louis Vuitton*, 736 F.3d at 1352 (same).

### 2.    *CSI Did Not Purposefully Avail Itself of the Forum*

The second requirement turns on whether the defendant purposefully availed itself "of the privilege of conducting activities within the forum State." *Ford*, 141 S. Ct. at 1024. "Under the minimum contacts test for purposeful availment, we assess the nonresident defendant's contacts with the forum state and ask whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the

forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357.

These questions must be answered in the negative. First, CSI's only purported contact with the forum state is its supposed licensing arrangement with FSO, but the injuries Plaintiffs suffered have nothing to do with licensing. Second, CSI has done no business in or with Florida (Farny Decl. ¶¶ 4, 9-12), and its purported licensing relationship with FSO is not enough to establish jurisdiction. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("receipt of licensing revenue from an entity in the forum state is not enough to establish minimum contacts with that state"). Because the analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," a "defendant's relationship with a … third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 285-86. Third, given its non-existent contact with the forum state, CSI could not reasonably anticipate being haled into a Florida court to answer for trafficking or other crimes by its alleged licensee.

## II.   <u>Plaintiffs Must Arbitrate Their Claims Against CSI</u>

As explained in FSSO's concurrently filed motion, Plaintiffs must arbitrate their claims against FSSO, as required by multiple arbitration

11

agreements Plaintiffs voluntarily executed. (*See* ECF No. 67.) Those agreements apply with equal force to Plaintiffs' claims against CSI, because they require arbitration of Plaintiffs' claims with ***any*** Scientology church or entity. (*See* ECF No. 67-2 (Weber Decl.) Exs. A, B and K (Enrollment Agreements) at ¶ 6.d; Exs. E and F (Departure Agreements) at 1 and ¶ 6.C; and Exs. L and M (Release Agreements) at ¶ 7.A.) Not only is CSI a Scientology church, and thus squarely within the agreements (*see* Farny Decl. ¶ 5), but each agreement also identifies CSI as a third-party beneficiary in other provisions. (Weber Decl. Exs. A, B and K (Enrollment Agreements) at ¶ 5.d and ¶ 9.a; Exs. E and F (Departure Agreements) at ¶¶ 2.C, 3.C and 4.A; Ex. M ¶¶ 2.A, 4, 5.C-5.E, 5.G, 5.J-K, 6.A and 6.G (Release Agreement).) Indeed, Paris's Release Agreement makes clear that because the agreement "inures to the benefit of" CSI, it "is hereby declared to be made for [CSI's] respective benefits and uses." (Weber Decl. Ex. M (Release Agreement) at ¶ 14.)

As an explicit third-party beneficiary of these arbitration agreements, CSI can enforce them. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020) ("arbitration agreements may be enforced by nonsignatories through…third-party beneficiary theories") (quote omitted); *Ronay Fam. Ltd. Partnership v. Tweed*,

216 Cal. App. 4th 830, 838 (2013) ("third party beneficiary of an arbitration agreement may enforce it"). *Zac Smith & Co. v. Moonspinner Condo. Ass'n, Inc.*, 472 So. 2d 1324, 1324 (Fla. Dist. Ct. App. 1985) (same). Because the agreements to arbitrate are valid and encompass Plaintiffs' claims against CSI, the Court should compel arbitration.

## III.   Plaintiffs Fail to State a Claim Against CSI

As noted above, the Court should either dismiss the claims against CSI for lack of personal jurisdiction or compel Plaintiffs to arbitrate them. But assuming Plaintiffs' claims clear those hurdles, they also fail to state a claim for the reasons stated in FSO's motion to dismiss, which CSI joins. (*See* ECF No. 68.) But even if Plaintiffs' claims survive the foregoing challenges, they must still be dismissed because they fail to state a claim as to CSI specifically.

### A.   Legal Standard Under Rule 12(b)(6) and Rule 8(a)(2)

On a motion to dismiss under Rule 12(b)(6), the Court accepts "all factual allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Doe #1 v. Red Roof Inns*, 21 F.4th 714, 723 (11th Cir. 2021) (quote omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

(quote omitted). "Instead, a plaintiff must allege sufficient facts that, accepted as true, state a claim to relief that is plausible on its face." *Id.*

In addition, "Rule 8(a)(2) requires the complaint to provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021). Complaints that violate these rules are called "shotgun pleadings." *Id.* Such pleadings come in many forms, including as relevant here: (a) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint" and (b) "a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Id.* (quotes omitted).

In Counts I, III and V, Plaintiffs seek to hold CSI liable on three theories of liability under the TVPRA: direct violation, attempted violation, and indirect beneficiary violation. Counts II, IV, and VI seek to hold CSI liable under a fourth theory: conspiracy. But Plaintiffs fail to allege any *facts* that state a claim to relief under any theory. Instead, Plaintiffs offer only a "shotgun pleading" that recites the bare elements of their claims and fails to distinguish among the defendants they seek to hold liable.

### B.    Plaintiffs Allege No Direct Violation By CSI

Plaintiffs allege that CSI "directly" violated the TVPRA, yet they fail to allege any actions by CSI that violated the statute. (Compl. ¶ 2, 4, 161, 175, 190.) Instead, Plaintiffs allege that CSI licenses "Scientology's IP, including trademarks and other IP" to "numerous Scientology-affiliated entities and organizations, which pay CSI licensing fees." (*Id.* ¶¶ 12-13.) But the Complaint fails to allege any connection between CSI's alleged licensing arrangements and the alleged abuses suffered by Plaintiffs.

Plaintiffs also allege that CSI "control[s] a number of trusts, including Flag Ship Trust, which among other things owns the company that owns the Scientology ship, Freewinds." (*Id.* ¶¶ 12, 13, 28.) But the Complaint does not explain how CSI's alleged "control" of a trust that supposedly owns a company that owns the Freewinds might make CSI responsible for anything that occurred on that ship. Indeed, Plaintiffs do not even explain what "control" means in this context—they fail to allege whether CSI is or was a trustee, trustor, or beneficiary of the trust it supposedly "controls," or any other fact explaining how CSI exercised that control. These conclusory allegations cannot state a plausible claim for relief.

Instead, each count in the Complaint provides only shotgun allegations that "reallege and incorporate by reference" these minimal allegations, with

15

no further explanation. (Compl. ¶¶ 159, 166, 173, 180, 187, 195.) And rather than explain how CSI violated the statute or otherwise is liable to Plaintiffs, each count in the Complaint merely recites the TVPRA's statutory elements. (*Compare* Compl. ¶ 161 *with* 18 U.S.C. § 1589, Compl. ¶ 175 *with* 18 U.S.C. § 1590, Compl. ¶ 189 *with* 18 U.S.C. § 1581.) This shotgun pleading is "flatly forbidden by the spirit, if not the letter, of" the Federal Rules. *Barmapov*, 986 F.3d at 1324. Because Plaintiffs offer no facts plausibly alleging that CSI had any direct role in extracting forced labor from them, trafficking them, or holding them in peonage, Plaintiffs' direct claims should be dismissed.

## C.     Plaintiffs Allege No Attempted Violation By CSI

Counts I, III and V also assert claims against CSI for *attempted* TVPRA violations under 18 U.S.C. § 1594(a). (Compl. ¶¶ 163, 177, 192.) To prevail on a claim of attempt under the TVPRA, Plaintiff must plausibly allege that CSI "(1) knowingly intended to [violate the TVPRA] and (2) took a substantial step toward committing that crime." *See United States v. Cooper*, 926 F.3d 718, 735 (11th Cir. 2019). A substantial step must strongly corroborate the firmness of the defendant's criminal intent. *Monroe*, 866 F.2d at 1366. The "mere intent to violate a federal criminal statute is not punishable as an attempt unless it is also accompanied by significant conduct." *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007).

16

Yet the Complaint fails to plead any facts suggesting that CSI had a specific intent to violate the TVPRA or that it took a substantial step toward that violation. Plaintiffs point only to CSI's alleged licensing and its supposed "control" of a trust that is twice-removed from the Freewinds. But, even if this allegation was true, the Complaint fails to explain how the collection of licensing fees amounts to an attempted statutory violation. Instead, each count in the Complaint parrots the statutory language and claims that every Defendant "attempted" to violate every cited provision. (*Compare* 18 U.S.C. § 1594(a) *with* Compl. ¶¶ 163, 177, 192.) The Court should dismiss these unsupported shotgun pleadings as well. *Barmapov*, 986 F.3d at 1324.

### D.   Plaintiffs Allege No Beneficiary Liability By CSI

Counts I, III and V also assert a beneficiary claim under 18 U.S.C. § 1595(a). (Compl. ¶¶ 162, 176, 191.) "[T]o state a beneficiary claim under section 1595(a), a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Red Roof*, 21 F.4th at 726.

In *Red Roof*, the plaintiffs tried to prove a beneficiary claim against various hotel chain franchisors by alleging that the franchisors licensed their brands to the hotels where the trafficking occurred. *Id.* at 719, 720, 726. Under those licensing agreements, the hotels paid the franchisors royalties and other fees, calculated as a percentage of room revenue, including revenue from the rooms in which each plaintiff was trafficked. *Id.* at 726. The franchisors also allegedly "owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms." *Id.* (quote omitted). The Eleventh Circuit noted that "these allegations may suggest that the franchisors financially benefitted from" the alleged TVPRA violations. *Id.* at 727. But that suggestion could not establish a beneficiary claim under the statute, because it does "nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA." *Id.* This remains true even if the franchisors knew about the alleged trafficking, because as the Court explained, "observing something is not the same as participating in it." *Id.*

Like the franchisors in *Red Roof*, CSI allegedly collects revenues under licensing agreements it has with various Scientology entities. (Compl. ¶ 12.) But as the Eleventh Circuit explained, licensing arrangements are not enough to give rise to liability under the TVPRA. *Red Roof*, 21 F.4th at 726.

18

Indeed, the licensing alleged here is even more remote than in *Red Roof*. There, the hotel franchisors' royalties, based on room revenue, bore at least *some* relation to the alleged trafficking in the hotel rooms. But Plaintiffs allege no such connection between CSI's licensing of intellectual property and the trafficking alleged here.

Plaintiffs' fact-free conclusion that CSI "controls" a trust that in turn owns a company that owns the Freewinds also fails to support beneficiary liability. (Compl. ¶ 12.) In *Red Roof*, the plaintiffs claimed that the franchisors "owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms" at the hotels. *Red Roof*, 21 F.4th at 727. But the Eleventh Circuit held that those allegations could not show a "common undertaking involving risk or profit that violated the TVPRA." Plaintiffs' allegations here are even more remote than those rejected in *Red Roof*. Plaintiffs allege only the most tenuous relationship between the Freewinds and CSI—and they do not even suggest that CSI exercised any operation, supervision, or control of the vessel or anyone aboard it. But even if CSI *had* exercised management or control like a hotel franchisor, that still would be insufficient to give rise to beneficiary liability under section 1595(a).

19

Rather than allege *facts* that plausibly suggest that CSI took part in a common undertaking or enterprise involving risk and potential profit that violated the TVPRA, Plaintiffs offer only a rote recitation of the statutory elements found in section 1595(a). (*Compare* Compl. ¶¶ 162, 176, 191 *with* 15 U.S.C. § 1595(a).) Plaintiffs' failure to allege any plausible violation by CSI requires the Court to dismiss Counts I, III and V.

### E.   Plaintiffs Allege No Conspiracy Involving CSI

Counts II, IV, and VI assert conspiracy liability under 18 U.S.C. § 1594(b). (Compl. ¶¶ 169, 183, 198.) Conspiracy requires "an agreement to violate the prohibition on forced labor." *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430, 440 (E.D.N.Y. 2017) (*citing United States v. Svoboda*, 347 F.3d 471, 476–477 (2d. Cir. 2003)). Although Plaintiffs need not "plead the existence of an explicit agreement," they must still "allege facts that plausibly show that [CSI] entered into a joint enterprise with consciousness of its general nature and extent." *Id.* (quote omitted).

But the Complaint contains no such facts. Instead, Plaintiffs allege only that CSI licensed Scientology's intellectual property and that CSI "controls"— but is apparently neither a trustee nor beneficiary of—a trust that owns a company that owns the Freewinds. These tenuous connections are not sufficient to plausibly show that CSI intentionally agreed with anyone to

violate the TVPRA. Because Plaintiffs offer no factual allegations plausibly supporting their claim that CSI conspired to violate the TVPRA, the Court should also dismiss Counts II, IV, and VI.

## **CONCLUSION**

For all these reasons, CSI requests that the Court either dismiss CSI for lack of personal jurisdiction, compel arbitration of Plaintiffs' claims against CSI, or dismiss Plaintiffs' claims against CSI for failure to state a claim upon which relief can be granted.

## **Local Rule 3.01(g) Certification**

The undersigned counsel hereby certify that the undersigned conferred with Plaintiffs' counsel, **Neil Glazer and Zahra Dean of Kohn Swift & Graf, PC, Gregory Hansel of Preti Flaherty Beliveau & Pachios, Chartered LLP, and Manuel J. (John) Dominguez of Cohen Milstein Sellers & Toll PLLC** who do not agree to the relief sought in the instant Motion. Counsel further certifies that this Motion is brought in good faith and not for any improper purpose.

[signatures on the following page]

21

Dated: July 12, 2022                    Respectfully submitted,


**WINSTON & STRAWN LLP**

*s/ William H. Forman*
William H. Forman, *pro hac vice*
WHForman@winston.com
Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 615-1992
Facsimile: (213) 615-1750

*s/ Gustavo J. Membiela*
Gustavo J. Membiela (Fla. Bar No. 513555)
GMembiela@winston.com
Winston & Strawn LLP
200 S. Biscayne Boulevard, Suite 2400
Miami, FL 33131
Telephone: (305) 910-0717
Facsimile: (305) 910-0505

*Counsel for Defendant*
*Church of Scientology International*