# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

GAWAIN BAXTER, LAURA BAXTER
and VALESKA PARIS,

      Plaintiffs,

v.                          Case No.: 8:22-cv-00986-TPB-JSS

DAVID MISCAVIGE; CHURCH OF
SCIENTOLOGY INTERNATIONAL, INC.;
RELIGIOUS TECHNOLOGY CENTER, INC.;
IAS ADMINISTRATIONS, INC.; CHURCH
OF SCIENTOLOGY FLAG SERVICE
ORGANIZATION, INC.; CHURCH OF
SCIENTOLOGY FLAG SHIP SERVICE
ORGANIZATION, INC.;

      Defendants.

_____/

## DEFENDANT RELIGIOUS TECHNOLOGY CENTER, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, TO COMPEL ARBITRATION OR, ALTERNATIVELY, DISMISS FOR FAILURE TO STATE A CLAIM

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6), Defendant Religious Technology Center, Inc. ("**RTC**"), by and through undersigned counsel, respectfully moves this Court to dismiss Plaintiffs' Complaint for lack of personal jurisdiction or, in the alternative, compel arbitration or, in the alternative, dismiss for failure to state a claim. In support thereof, RTC states as follows:

**INTRODUCTION**

Plaintiffs Gawain Baxter, Laura Baxter, and Valeska Paris (collectively, "Plaintiffs") voluntarily served for over twenty (20) years as members in the Sea Organization ("Sea Org"), an unincorporated religious order within Scientology. Sea Org members dedicate their lives to the volunteer service of their religion. As Sea Org members, Plaintiffs were integral to the Scientology religion and carrying out its religious mission. Despite voluntarily choosing to practice Scientology and serve as members of the Sea Org, Plaintiffs now claim that their participation in this religious order violated the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1581-1597. Plaintiffs' claims against RTC, a church within the Scientology religion, must be dismissed or arbitrated.

First, the Court lacks personal jurisdiction over RTC. RTC is a California corporation (ECF No. 1, ¶ 11), and has its principal place of business in California (*see* Declaration of Warren McShane ("McShane Declaration"), ¶ 4.) RTC is not "at home" in Florida and is not subject to general jurisdiction in Florida. RTC is also not subject to specific personal jurisdiction in Florida. Despite the length of the Complaint, Plaintiffs fail to plead a single plausible fact establishing RTC's contacts with Florida under its long-arm statute or how any alleged harm arose out of any such contact with Florida. Accordingly, the Court should dismiss the action against RTC for lack of personal jurisdiction.

Alternatively, as set forth in the Motion to Compel Arbitration ("Motion to Compel") filed by Defendant Church of Scientology Flag Ship Service Organization,

Inc. ("**FSSO**"), (ECF No. 67), which is fully incorporated by reference herein and in which RTC joins, Plaintiffs must arbitrate their claims against RTC (and all Defendants). Each Plaintiff entered into binding arbitration agreements found in the Enrollment Agreements, Departure Agreements (Baxters), and Release Agreement (Paris), and agreed to resolve any dispute with any Scientology-affiliated organization through ecclesiastical justice procedures.

Alternatively, as set forth in Defendant Church of Scientology Flag Service Organization, Inc.'s ("**FSO**") Motion to Dismiss under Rule 12(b)(6), (ECF No. 68), which is fully incorporated by reference herein and in which RTC joins, the Complaint fails to state any TVPRA claims against RTC. The majority of the claims are plainly predicated on conduct that occurred before the 2003 Amendments to the TVPRA which created a civil remedy. Yet, such amendments were not retroactive. All claims predicated on pre-2003 conduct are, thus, not actionable under the TVPRA. Also, the TVPRA does not have extraterritorial application to Plaintiffs' civil claims. All alleged violations occurred on the *Freewinds*, a Panamanian vessel with Curacao as its home port that Plaintiffs concede *never* entered U.S. waters. Finally, as set forth in FSO's Motion, (ECF No. 68), Plaintiff Paris' claims are barred by the TVPRA's ten (10) year statute of limitations.

Additionally, Plaintiffs failed to plead any plausible facts of conduct by *RTC* that violated the TVPRA. The Complaint constitutes an impermissible shotgun pleading. Plaintiffs group all Defendants together making it unclear what alleged conduct is attributable to which Defendant. Plaintiffs further allege no facts to

support their trafficking claims specifically against RTC under 18 U.S.C. §§ 1589 and 1590. The TVPRA trafficking provisions on which Plaintiffs' claims are based require plausible allegations of forced labor. Yet, RTC is a religious organization. Plaintiffs were never employed by RTC. They were voluntary members of the Sea Org who were free to leave the Sea Org at *any* time. All three Plaintiffs, in fact, *did* leave the Sea Org and Scientology. The TVPRA peonage claim, 18 U.S.C. § 1581, is also supported by no facts alleging Plaintiffs were forced to work to satisfy an existing debt in order to earn their freedom. None of the Plaintiffs ever worked for RTC or incurred any debt whatsoever to RTC. As detailed herein, the Court should dismiss the action against RTC.

<b><u>ARGUMENT AND MEMORANDUM OF LAW</u></b>

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER RTC.

RTC is not subject to personal jurisdiction in Florida. Florida courts may only exercise personal jurisdiction over a defendant if consistent with Florida's long-arm statute, Section 48.193, Florida Statutes, and if doing so does not violate federal due process requirements. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013); *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). A plaintiff bears the initial burden of establishing a *prima facie* basis upon which jurisdiction over a nonresident defendant can be exercised. *Id.* A *prima facie* case is demonstrated only by factual allegations pleaded "with reasonable particularity" establishing that sufficient contacts between the party and the forum state exist. *Organic Mattresses, Inc. v. Envtl. Res. Outlet, Inc.*, No.

17-21905, 2017 WL 5665354, at *2 (S.D. Fla. Oct. 6, 2017); *see also Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). If a plaintiff satisfies its burden, the burden shifts to the defendant to refute the jurisdictional allegations by an affidavit or other sworn proof showing such allegations are erroneous, thereby shifting the burden back to the plaintiff to produce evidence supporting jurisdiction, if it is able to do so. *Id.* Plaintiffs do not allege on what grounds RTC would be subject to general or specific jurisdiction. For the reasons below, exercising personal jurisdiction over RTC is inconsistent with Florida's long-arm statute and would violate the Federal Due Process Clause.

### A.      RTC Is Not Subject to General Jurisdiction.

Section 48.193(2) provides for general personal jurisdiction. Fla. Stat. § 48.193(2). However, the long-arm statute is co-extensive with the Due Process Clause of the Fourteenth Amendment. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). The only question then is whether the Court's exercise of general jurisdiction over RTC would violate the Federal Due Process Clause. A general jurisdiction inquiry turns on whether a party has "substantial and not isolated activity" in Florida irrespective of where the cause of action arose. Fla. Stat. § 48.193(2). As *Daimler AG v. Bauman et al.*, and its progeny have made clear, the paradigm forum for the exercise of general jurisdiction is "one in which the corporation is fairly regarded as at home." 571 U.S. 117, 137 (2014). Therefore, general jurisdiction may arise only where a foreign corporation's affiliations in the state are so "continuous and systematic" as to render it "at home," that is, where it

was incorporated and has its principal place of business, except in an "exceptional case." *Id.* at 137-39; *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

*Daimler* and cases that follow have erected "a high bar . . . to make a foreign corporation at home in Florida." *Bryant v. Hasbro, Inc.*, No. 8:18-cv-1336-T-36CPT, 2020 WL 224513 at *4 (M.D. Fla. Jan. 15, 2020) ("having employees and registering to do business in Florida are not sufficient circumstances to render a corporation at home in Florida for purposes of general jurisdiction."); *see also Lee v. Branch Banking & Tr. Co.*, No. 18-21876-Civ-Scola, 2018 WL 5633995, at *3 (S.D. Fla. Oct. 31, 2018) Plaintiffs fail to meet this "heavy burden." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018).

RTC is a religious non-profit, tax-exempt corporation organized under the laws of the State of California since 1982. (McShane Decl., ¶¶ 4-5; *see also* ECF No. 1, ¶ 11.) RTC has its headquarters in and conducts its business from California. (McShane Decl., ¶ 4.) RTC is "at home" in California and, therefore, not subject to general jurisdiction in Florida. *See Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 535 F. Supp. 4d 1299, 1305 (S.D. Fla. 2021); *see also Scanz Techs., Inc. v. JewMon Enters., LLC*, 2021 WL 65466, at *3 (S.D. Fla. Jan. 7, 2021). Plaintiffs' attempt to demonstrate RTC's contacts with Florida are otherwise "substantial" is unavailing. (ECF No. 1, ¶ 11.) The Complaint has no allegations regarding any RTC contacts with Florida, much less "substantial" contacts. Simply overseeing some business activities in Florida, if true, is insufficient to establish

personal jurisdiction. *See Waite*, 901 F.3d at 1317; *Carmouche*, 789 F.3d at 1204-06; *Evans v. Andy & Evan Indus., Inc.*, No. 15-CV-61013, 2016 WL 8787062, at *3 (S.D. Fla. July 15, 2016). For the foregoing reasons, Plaintiffs fail to meet this threshold requirement. RTC is not subject to general jurisdiction in Florida.

### B.    RTC Is Not Subject to Specific Jurisdiction.

Plaintiffs fail to establish RTC is subject to specific personal jurisdiction under the Florida long-arm statute, Fla. Stat. § 48.193(1)(a). To establish specific jurisdiction, a plaintiff must allege facts establishing (1) a defendant did one of the acts under the long-arm statute within Florida, and (2) that the cause of action "arose from" the defendant's activity in Florida. *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1135 (Fla. 3d DCA 2018). Absent such allegations, there can be no specific jurisdiction over a defendant. *Kingland Estates, Ltd. v. Davis*, 170 So. 3d 825, 831 (Fla. 3d DCA 2015). The Complaint alleges no basis for exercising personal jurisdiction. Construing the Complaint as a whole, however, allegations of some general business activity in Florida, (*see* ECF No. 1, ¶¶ 11, 19, 23-24, 26), and the assertion of claims under the TVPRA against RTC suggest Plaintiffs may seek to establish specific jurisdiction under either Section 48.193(1)(a)(1) or (2). RTC addresses both provisions below.

#### 1. RTC Is Not Subject to Specific Jurisdiction Pursuant to Fla. Stat. § 48.193(1)(a)(1).

A foreign defendant may be subject to specific jurisdiction for a claim *arising out* of the defendant operating, conducting, engaging in, or carrying on a business or business venture *in Florida*. Fla. Stat. § 48.193(1)(a)(1). To do so, "the activities

of the defendant must be considered collectively and show a general course of business activity in [Florida] for pecuniary benefit." *Future Tech.*, 218 F.3d at 1249. Relevant, but not dispositive, factors as part of the collective consideration include having an office in Florida, having a license to do business in Florida, servicing substantial numbers of clients or customers in Florida, or generating significant revenue in Florida. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005).

Plaintiffs' purported jurisdictional allegations relating to RTC do not even mention Florida. (*See* ECF No. 1, ¶ 11.) Additionally, RTC is a religious organization and does not engage in a "business venture." (McShane Decl., ¶ 19.) In fact, Plaintiffs do not allege (nor can they) that RTC carries on any business venture in Florida, or that it services clients or customers in Florida, or that it maintains a bank account in Florida. (McShane Decl., ¶¶ 8-11, 19.) While RTC receives a licensing fee on the Advanced Technology licensed to seven specific Scientology churches around the world for use in its religious ministration (McShane Decl., ¶ 6), RTC does not maintain a place of business or business license in Florida, (McShane Decl., ¶ 11.) While RTC maintains a small office in Clearwater, Florida, it houses only a skeleton staff that serve as local representatives for RTC for the purposes of ensuring orthodox ministration of the advanced technology. (McShane Decl., ¶ 12.) Such *de minimis* contacts with Florida do not qualify as conducting a business venture in Florida. *See Horizon*, 421 F.3d at 1167-68. Plaintiffs' own allegations establish the vast majority of RTC employees and officers are present

8

in locations *other than Florida*. (*See, e.g.*, ECF No. 1, ¶¶ 19, 31.) Insofar as Plaintiffs attempt to establish jurisdiction over RTC by virtue of the false allegation that Defendant Miscavige, "who holds the title Chairman of the Board of RTC," (ECF No. 1, ¶ 19), is a resident of Florida, (*id.*, ¶ 10), such contact, even if true (which it is not), is insufficient to establish specific jurisdiction over *RTC*. Mr. Miscavige, as Chairman of the Board of RTC, does not control RTC's day-to-day operations.

Finally, Plaintiffs advance no allegations demonstrating a nexus or connection between any of RTC's alleged operations in Florida to Plaintiffs' claims, which is fatal. *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 861 (11th Cir. 2013). Plaintiffs' jurisdictional allegations establish only that RTC owns and licenses the Scientology marks. (*See* ECF No. 1, ¶ 11.) What Plaintiffs do not allege is how any claim advanced against RTC actually "arose from" RTC's ownership of the Scientology religious trademarks or the issuance of licenses for these trademarks or the Advanced Technology to any Scientology religious organization. That failure is fatal. *See Schwartzburg v. Knobloch*, 98 So. 3d 173, 182 (Fla. 2d DCA 2012). And, in fact, this licensing arrangement is not alleged to have any relevance to injuries Plaintiffs purportedly suffered in Florida. Nor could it. As is clear from the Complaint, this case is about alleged trafficking and forced labor, not the licensing, or infringement of a license, of Scientology's marks or other intellectual property owned by RTC.

### 2. RTC Is Not Subject to Specific Jurisdiction Pursuant to Fla. Stat. § 48.193(1)(a)(2).

A foreign defendant may also be subject to specific jurisdiction in Florida where a claim arises out of a tortious act it is alleged to have committed in Florida. *See* Fla. Stat. § 48.193(1)(a)(2). The only allegations of any potential tortious act are pleaded collectively such that *all Defendants* are alleged to have engaged in *all acts* without any differentiation among specific perpetrators of specific actions. Insofar as Plaintiffs identify specific RTC officers or employees as having committed or facilitated the commission of a tortious act toward one or more Plaintiffs, in addition to being verifiably untrue (McShane Decl., ¶¶ 20-22), the allegations nowhere connect any such acts to *Florida*. Plaintiffs' allegations about Lurie Belotti's misconduct, for instance, even if true (which they are not), occurred on the *Freewinds* vessel in international waters, *not in Florida*. (*See* ECF No. 1, ¶¶ 31, 109, 144, 147, 149.) The Complaint further references conduct by "Javier Martinez," allegedly "a senior RTC officer at Flag Base." (ECF No. 1, ¶ 83.) RTC has *never* employed anyone named Javier Martinez. (McShane Decl., ¶ 22.) Even if it did, Plaintiffs fail to mention what tortious act Mr. Martinez allegedly committed. Plaintiffs fail to carry their burden to establish a *prima facie* showing of specific jurisdiction over RTC under Florida's long-arm statute. *See Carlyle v. Palm Beach Polo Holdings, Inc.*, 842 So. 2d 1013, 1017 (Fla. 4th DCA 2003).

Even if Plaintiffs' allegations were sufficiently pleaded (which they are not), the mere *allegation* of a tort does not confer jurisdiction. For personal jurisdiction to attach under Section 48.193(1)(a)(2), a plaintiff must plead facts sufficient to

demonstrate the defendant committed a "substantial aspect of the alleged tort in Florida." *Musiker v. Projectavision, Inc.*, 960 F. Supp. 292, 296 (S.D. Fla. 1997). Where no part of the alleged tortious activity is plausibly alleged to have occurred in Florida, an out-of-state defendant cannot be subject to jurisdiction in Florida. *Freedom Sav. & Loan Ass'n v. Ormandy & Assocs.*, 479 So. 2d 316, 317 (Fla. 5th DCA 1985). Here, there are no allegations that any of the alleged tortious acts even collectively attributable to RTC occurred in Florida.

Nor can Plaintiffs meet their burden by lumping RTC into an alleged conspiracy designed to make RTC responsible for the acts of every other alleged co-conspirator. As discussed below, and incorporated by reference from FSO's Motion to Dismiss, Plaintiffs' conspiracy claims against RTC are defective as a matter of law. Beyond that, courts will not extend jurisdiction over a foreign defendant based on a conspiracy theory utterly devoid of any factual support. *See Advantus, Corp. v. Sandpiper of California, Inc.*, No. 3:18-cv-1368, 2019 WL 4751725, at *23 (M.D. Fla. Sept. 30, 2019); *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-24363-CIV, 2016 WL 11501768, at *5 (S.D. Fla. Sept. 14, 2016).

For the foregoing reasons, RTC is not subject to specific jurisdiction under Section 48.193(1)(a)(1) or (2) of the Florida long-arm statute.

## C. Exercising Specific Jurisdiction Over RTC Would Offend Due Process Requirements.

Beyond failing to satisfy the requirements of Florida's long-arm statute, exercising specific personal jurisdiction over RTC would offend federal due process requirements. To properly exercise specific jurisdiction, this Court must determine

whether: (1) a plaintiff's claims "arise out of or relate to" defendant's contact with the forum; (2) a defendant "purposefully availed" itself of the privilege of conducting activities within the state; and (3) the exercise of personal jurisdiction is fair and reasonable. *See Louis Vuitton*, 736 F.3d at 1355. All three factors must be satisfied, which Plaintiffs fail to do.

### 1. Plaintiffs' Fail to Establish that Any Claim Arose from RTC's Alleged Contacts with Florida.

First, Plaintiff must establish "constitutional connexity," that is, a direct causal relationship among the defendant, the forum, and the litigation that is consistent with due process requirements. Plaintiffs' claims must actually arise from or relate to RTC's conduct in and contacts with *Florida. See Fincantieri-Cantieri Navali Italiani S.p.A. v. Yuzwa*, 241 So. 3d 938, 946 (Fla. 3d DCA 2018). The analysis turns on "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Harms that would have occurred "wherever else the defendant may have resided" and are based on the happenstance of a plaintiff's current residence are insufficient to support specific jurisdiction. *Id*. at 290. Plaintiffs' allegations against RTC fail to establish even a remote nexus between RTC and Florida. In fact, Plaintiffs do not specifically allege the precise actions undertaken by RTC in Florida or RTC's contacts with Florida. *Duncanson v. Wine & Canvas Dev., LLC,* No. 6:14–cv–704, 2015 WL 12844947, at *5 (M.D. Fla. Sept. 25, 2015). Plaintiffs fail to advance any allegations about specific acts in which RTC, or any actual employee or officer, participated in Florida that have the constitutional connexity to the harm

Plaintiffs allegedly suffered. Plaintiffs further admit in the Complaint that any and all acts that allegedly occurred, irrespective of the wrongdoer, took place *outside of the United States and Florida*. (*See* ECF No. 1, ¶¶ 28-30.) Plaintiffs fail the first due process requirement.

### 2. *Plaintiffs Fail to Establish RTC "Purposefully Availed" Itself of Florida, the Forum State.*

Second, Plaintiffs must establish that RTC "purposefully availed" itself of the privileges of conducting business in Florida. Plaintiffs' conclusory and generalized allegations that RTC, along with the other Defendants, engaged in some form of tortious activity that targeted Plaintiffs—who may or may not have resided in Florida at the time—is insufficient to establish that RTC purposefully availed itself of the privileges of conducting business in Florida. *See, e.g.*, *Gazelles FL, Inc. v. Cupp*, No. 6:18-cv-544, 2018 WL 7364591, at *9–13 (M.D. Fla. Sept. 28, 2018). Moreover, "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* As made clear from a plain reading of the Complaint and RTC's jurisdictional evidence, RTC has never "availed" itself of the privileges of conducting business in Florida. As discussed above, RTC is not registered to conduct business in Florida, does not maintain any bank accounts in Florida, and maintains only a small office with a skeleton staff to ensure orthodox ministration of the advanced technology on behalf of RTC. (McShane Decl., ¶¶ 8-12.) Plaintiffs fail the second due process requirement.

### 3. Plaintiffs Fail to Establish That Exercising Jurisdiction Comports with "Fair Play and Substantial Justice."

Third, Plaintiffs must establish that exercising personal jurisdiction over RTC would be fair or reasonable. "'The facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 501 (Fla. 1989) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485 (1985)). Despite the length of the Complaint, Plaintiffs fail to identify when, where, how, or which of RTC's officers, staff, agents, or representatives, if any, committed any alleged conduct *in Florida*. Plaintiffs' conclusory allegations regarding "forced labor," "trafficking," "peonage," "abuse," "punishment," "imprisonment," or "being spied upon" has no tether to Florida and falls far short of satisfying their burden. Plaintiffs fail to allege a single ultimate fact supporting such allegations against RTC and, thus, fail the third due process requirement.

### D.    RTC Is Not Subject to Personal Jurisdiction Under an Alter Ego Theory or Agency Theory.

Insofar as Plaintiffs seek to establish personal jurisdiction over RTC under an alter ego theory, (*see* ECF No. 1, ¶¶ 10-13, 17-21, 23-26), that effort fails. "The alter ego theory of long-arm jurisdiction exists as a limited exception to the general, two-step process of establishing long-arm jurisdiction." *Broward Marine, Inc. v. S/V Zeus*, No. 05-23105-CIV, 2010 WL 427496, at *6 (S.D. Fla. Feb. 1, 2010). Under the alter ego theory, a complaint must allege facts sufficient to pierce the corporate veil of the resident corporation, which only occurs in exceptional

circumstances. *See Bellairs v. Mohrmann*, 716 So. 2d 320, 322 (Fla. 2d DCA 1998). To pierce the corporate veil, a plaintiff must show the subsidiary (1) is a mere instrumentality of the parent and (2) engages in improper conduct. *See Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998). Improper conduct is present only where the corporation is a mere sham to accomplish some ulterior purpose, is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose. *See Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1117 (Fla. 1984).

Because RTC is a religious organization and does not have shareholders, (McShane Decl., ¶ 19), Plaintiffs fail the first prong. *See WH Smith, PLC v. Benages & Assocs., Inc.*, 51 So. 3d 577, 581 (Fla. 3d DCA 2010) ("plaintiff must plead and prove that 'the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and the shareholders were in fact alter egos of the corporation.") There are also no allegations suggesting RTC was not lawfully formed or maintained. *See Lipsig v. Ramlawi*, 760 So. 2d 170, 187 (Fla. 3d DCA 2000); *see also MeterLogic, Inc. v. Copier Sols., Inc.*, 126 F. Supp. 2d 1346, 1358 (S.D. Fla. 2000). The conclusory allegations about single director control, (*see, e.g.*, ECF No. 1, ¶¶ 20, 23), even if true, are not sufficient to establish personal jurisdiction under an alter ego theory. *See N.J.H. v. 2Infinity Fla. LLC*, No. 8:18-CV-2093-T-60CPT, 2020 WL 474660, at *2 (M.D. Fla. Jan. 29, 2020).

Insofar as Plaintiffs seek to establish personal jurisdiction under an agency theory, (*see* ECF No. 1, ¶¶ 10-13, 17-21, 23-26), that theory must also be rejected here just as it was by the Supreme Court in *Daimler*. *See Daimler*, 134 S. Ct. at 760 (rejecting the agency theory, finding that it "appears to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the sprawling view of general jurisdiction . . . rejected in *Goodyear*." (quoting *Goodyear*, 564 U.S. at 929)); *see also Wertheim Jewish Educ. Tr., LLC v. Deutsche Bank AG*, No. 17-cv-60120-KMM, 2017 WL 6313937 at *10-11 (S.D. Fla. Dec. 6, 2017). For the reasons stated above, the claims against RTC should be dismissed for lack of personal jurisdiction.

## II. ALTERNATIVELY, PLAINTIFFS' CLAIMS MUST BE STAYED UNDER RULE 12(B)(1) PENDING ARBITRATION.

Subject to and without waiving RTC's jurisdictional challenge discussed above, RTC joins in and incorporates by reference in its entirety Defendant FSSO's Motion to Compel. (ECF No. 67.) As explained in FSSO's concurrently filed motion, Plaintiffs must arbitrate their claims against FSSO, as required by multiple arbitration agreements Plaintiffs voluntarily executed, which are attached to FSSO's Motion. Those broad agreements apply to any claims against RTC, which is a third-party beneficiary of the arbitration agreements. (ECF No. 67-2 (Weber Decl.), at 16, 23 (Ex. A, B), ¶¶ 6a, 6d (Baxters' Enrollment Agreements applying to FSSO and "*any* other Scientology church . . . ."); *see also id.*, at 45-46, 55-56 (Ex. E, F), ¶ 6 (Baxters' Departure Agreements applying to "any problem or dispute" with "*any* Scientology Entity" and specifically identifying "Religious Technology

Center" as a "church or mission of the Scientology religion" covered by the Agreement); *see also id.*, at 108, 119 (Ex. L, M), ¶ 7 (Paris' General Release Agreements applying to disputes with FSSO or "*any* other Scientology church" and specifically identifying RTC as an entity Paris released).) RTC can, thus, enforce the arbitration agreements, *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020); *Zac Smith & Co. v. Moonspinner Condo. Ass'n, Inc.*, 472 So. 2d 1324, 1324 (Fla. 1st DCA 1985), and hereby does. Accordingly, the Court should stay these claims and order the entire dispute to arbitration.

### III.  ALTERNATIVELY, PLAINTIFFS' CLAIMS MUST BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard applies only to factual allegations, not asserted legal theories. *Johnson v. City of Shelby*, 574 U.S. 10 (2014). Thus, the court may reject conclusory allegations not rooted in specific facts, as "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

### A. Plaintiffs' Claims Fail Because the TVPRA Does Not Have Retroactive or Extraterritorial Application.

Subject to and without waiving RTC's jurisdictional challenge discussed above, or RTC's arbitration rights through the incorporated Motion to Compel Arbitration, RTC further joins in and incorporates by reference in its entirety herein Defendant FSO's Motion to Dismiss under Rule 12(b)(6) as to all challenges to the retroactive and extraterritorial application of the TVPRA as well as to Plaintiff Paris' time-barred claims. (*See* ECF No. 68.) Plaintiffs further fail to allege any facts sufficient to state any claims *against RTC* specifically for violating the TVPRA, whether as a direct, attempted, or beneficiary violation (*see* Counts I, III, and V), or as part of a conspiracy (*see* Counts II, IV and VI). Plaintiffs advance only conclusory allegations collectively against all Defendants in support of a rote recitation of the elements of each alleged TVPRA provision violated. In addition to being an impermissible shotgun pleading, the Complaint must be dismissed because it identifies no acts or omissions by RTC actionable under the TVPRA.

### B. Plaintiffs Fail to Plead Facts Establishing RTC's Role in Any Alleged TVPRA Violation.

Plaintiffs purport to state claims under 18 U.S.C. §§ 1581, 1589, 1590, and 1594(b), and 1595(a). To be liable under the TVPRA, the complaint must plead plausible allegations that: "(1) the person or entity must knowingly benefit, financially or by receiving anything of value, (2) from participating in a venture, (3) that the person knew or should have known was engaged in an act in violation of this chapter." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 152-53

(E.D.N.Y. 2020) (quoting 18 U.S.C. § 1595(a) and *A.C. v. Red Roof Inns, Inc.*, No. 2:19-cv-4965, 2020 WL 3256261, at *4 (S.D. Ohio June 16, 2020)). Counts I, III, and V must fail.

As to Count I alleging "forced labor," a violation of Section 1589, requires proof that a party has forced or compelled another party to perform labor or provide services by means of force, physical restraint, serious harm, abuse, or threats thereof. 18 U.S.C. § 1589(a). As to Count III alleging "trafficking with respect to forced labor," a violation of Section 1590 "generally requires some conduct that occurs abroad." *Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 454 (E.D. Va. 2015). As to Count V alleging peonage, a violation of Section 1581 requires proof that a party has subjected another party to "involuntary servitude," that is, providing services in order to pay off an existing debt. *See Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 737 (11th Cir. 2018) (quoting *Taylor v. Georgia*, 315 U.S. 25, 29 (1942)). Plaintiffs allege "Defendants" collectively directly violated the TVPRA, attempted to do so, and are also liable under a "beneficiary" theory. Yet, Plaintiffs fail to plead any facts attributing liability to RTC under any theory.

Plaintiffs largely advance generalized statements about RTC's ownership of the Scientology marks and licenses without explaining how this fact contributes to a TVPRA violation. (*See* ECF No. 1, ¶ 11.) Moreover, Plaintiffs conveniently ignore what they know to be true: that there can be no "labor" much less "forced labor" because RTC is, first and foremost, a religious organization within Scientology whose staff consists of dedicated members of the church. (*See* McShane Decl., ¶ 4.)

Plaintiffs were also never employed by RTC. Rather, Plaintiffs were members of the Sea Org. Members of the Sea Org are not employees, but volunteers who dedicate their lives to ministering the Scientology religion through various activities. Faced with this inconvenient reality, Plaintiffs are able to muster only speculative allegations about misconduct by RTC employees or officers none of which, even if true, whether standing alone or collectively, amounts to violations of the TVPRA. For instance, Plaintiffs only allege that Lurie Belotti aboard *Freewinds* purportedly received a report of Laura Baxter's pregnancy, confined Laura Baxter to the engine room of the *Freewinds* following her misconduct, and transferred Paris from the *Freewinds* to a post in Australia, from which Paris ultimately left the Sea Org. (*Id.*, ¶¶ 31, 109, 144, 147, 151-52.) Plaintiffs further allege only that an individual named "Javier Martinez," at Flag Base, who has never been employed by RTC, received a letter from Gawain Baxter seeking permission to leave the Sea Org. (*Id.*, ¶ 83.) Plaintiffs advance no allegations against RTC or any of its employees or officers, that support a claim for "forced labor," "trafficking," or "peonage."

### 1. Plaintiffs Fail to Plead Facts that RTC Directly Violated the TVPRA as Alleged in Counts I, III and V.

Plaintiffs allege RTC "directly" violated the TVPRA, (*see* ECF No. 1, ¶¶ 2, 4, 161, 175, 190-91), but, by conflating all Defendants together, fail to identify any specific conduct by RTC that forms the basis of these claims. Plaintiffs allege only that RTC operates as "the principal management, security, and enforcement operation of Scientology" and that it "monitored members' behavior, and handled

matters concerning discipline and punishment of members throughout all Scientology." (ECF No. 1, ¶ 11.) Even if true, allegations concerning RTC's *specific* benefit and knowledge are conspicuously missing. Instead, Plaintiffs merely recite—virtually verbatim—the TVPRA's statutory elements in Counts I, III, and V. (*Compare id.*, ¶¶ 162, 176, 191 *with* 18 U.S.C. § 1595(a)). This rote recital must be rejected. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).[1] Plaintiffs fail to provide fair notice of the alleged wrongs it accuses RTC of committing. Accordingly, Counts I, III, and V must be dismissed.

### 2. Plaintiffs Fail to Plead Facts That RTC "Attempted" To Violate the TVPRA as Alleged in Counts I, III and V.

Plaintiffs' allege RTC "attempted" to violate the TVPRA also fail. 18 U.S.C. § 1594(a). (ECF No. 1, ¶¶ 163, 177, 192.) To prevail on a claim of "attempt" under the TVPRA, Plaintiff must plausibly allege that RTC "(1) knowingly intended to [violate the TVPRA] and (2) took a substantial step toward committing that crime." *See United States v. Cooper*, 926 F.3d 718, 735 (11th Cir. 2019) (*citing United States v. Monroe*, 866 F.2d 1357, 1366 (11th Cir. 1989)). A substantial step must be strongly corroborative of the firmness of the defendant's criminal intent. *Monroe*, 866 F.2d at 1366. The "mere intent to violate a federal criminal statute is not punishable as an attempt unless it is also accompanied by significant conduct." *United States v.*

---

[1] The Complaint also incorporates all general allegations of fact into each claim for relief, (*see* ECF No. 1, ¶¶ 159, 166, 173, 180, 187, 195), which is improper, especially given the Complaint is 90 pages long, asserts 158 factual allegations and 6 claims for relief, and involves multiple Plaintiffs and Defendants. *See Rosado-Cabrera v. Pfizer, Inc.,* No. 8:20-CV-2008-TPB-JSS, 2021 WL 662220, at *2 (M.D. Fla. Feb. 19, 2021); *see also Worldspan Marine Inc. v. Comerica Bank*, No. 20-11646, 2021 WL 5882006, at *2 (11th Cir. Dec. 13, 2021).

*Resendiz-Ponce*, 549 U.S. 102, 107 (2007). It is unclear which "facts" in the Complaint form the basis of Plaintiffs' claim for "attempted forced labor," "attempted trafficking," and "attempted peonage." Plaintiffs fail to plead any facts suggesting that RTC knowingly intended to violate the TVPRA, or that it even took a substantial step towards accomplishing the violation. Rather, Counts I, III and V merely parrot the statutory language and claims that every Defendant "attempted" to violate every cited provision. (ECF No. 1, ¶¶ 163, 175, 177, 192.) Accordingly, Counts I, III, and V must be dismissed. *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021).

### 3. *Plaintiffs Fail to Plead Facts That RTC Violated the TVPRA Under a Beneficiary Liability Theory.*

Plaintiffs' *beneficiary* claims under 18 U.S.C. § 1595(a), (ECF No. 1 ¶¶ 162, 176, 191), fail. "[T]o state a beneficiary claim under section 1595(a), a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). In *Red Roof*, the Eleventh Circuit rejected Plaintiffs' allegations that hotel chain franchisors were liable under TVPRA. In particular, while evidence suggested the hotel franchisors may have financially benefited for licensing their brands to hotels where trafficking allegedly occurred and received revenues from those licensing agreements, *id.* at 719, 720, 726, there was no

evidence presented that the franchisors actually "participated in a common undertaking involving risk or profit that violated the TVPRA." *Id.* As the Court explained, "observing something is not the same as participating in it," and thus the "section 1595(a) beneficiary claims against the franchisors fail." *Id.*

Likewise, Plaintiffs allege that RTC collects licensing fees in relation to its ownership, administration, and enforcement of its intellectual property rights, including the Scientology trademarks and rights in "advanced tech." (ECF No. 1, ¶ 11.) Even if fully true, as explained by the Eleventh Circuit, licensing agreements alone are not sufficient to give rise to TVPRA liability. *Red Roof*, 21 F.4th at 726. The licensing agreement alleged in the present matter is even more remote than the licensing agreements involved in *Red Roof* where the franchisors' royalties (*i.e.*, room revenues) bore some relation to the alleged trafficking. Plaintiffs have not alleged any such connection between the alleged licensing fees RTC receives from the intellectual property and the allegations of coerced labor. Moreover, Plaintiffs' conclusory allegation that RTC "oversaw and directed the management of Scientology-affiliated entities and organizations, including Defendant entities" fails to support beneficiary liability. (ECF No. 1, ¶ 11.) At bottom, Plaintiffs' allegations do not show a "common undertaking involving risk or profit that violated the TVPRA." *Red Roof*, 21 F.4th at 727. Accordingly, Counts I, III, and V must be dismissed.

### 4. Plaintiffs Fail to Plead Facts That RTC Engaged in a Conspiracy to Obtain Forced Labor, Traffic with Respect to Forced Labor, or Commit Peonage.

Counts II, IV, and VI allege "Defendants" engaged in a conspiracy to obtain forced labor, to traffic with respect to forced labor, and to commit peonage in violation of the TVPRA. Because Plaintiffs' liability theory is predicated on an alter ego or agency theory and undifferentiated group pleading, the conspiracy claims are barred by the intra-corporate conspiracy doctrine. This doctrine recognizes that the acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. *See McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). A corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves. *Id.* Under basic agency principles, the acts of a corporation's agents are considered to be those of a single legal actor. *Id.* Therefore, just as it is not legally possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself. *Id.*

Here, the Complaint expressly alleges that Defendants are all related entities in a conspiracy to engage in trafficking or forced labor. As a threshold matter, as discussed throughout, allegations of "forced labor" and trafficking are nonsensical given that RTC is a religious organization and Plaintiffs were volunteers, not employees, in the Sea Org. But, even if Plaintiffs' predicate allegations were true, which they are not, Defendants, including RTC, would, by Plaintiffs' own logic, not

be capable of conspiring with each other. *See Williams v. Michelin N. Am., Inc.*, No. 6:04-CV-815ORL31DAB, 2005 WL 2708308, at *2 (M.D. Fla. Oct. 21, 2005). Plaintiffs' conspiracy claim requires an agreement between two or more parties. *See Kurnow v. Abbott*, 114 So. 3d 1099, 1102 (Fla. 1st DCA 2013). Not only do Plaintiffs fail to plead any facts sufficient to establish the existence of an agreement of any kind—the *sine qua non* of a conspiracy—but they further seek to treat all entity Defendants as a single entity. Yet, a single entity cannot conspire with itself, nor can an agent conspire with its principal. *See McAndrew*, 206 F.3d at 1036. Accordingly, Counts II, IV, and VI fail.

## CONCLUSION

For all of the foregoing reasons, RTC respectfully requests that the Court dismiss Plaintiffs' Complaint for lack of personal jurisdiction under Rule 12(b)(2), stay the case and compel arbitration under Rule 12(b)(1), or dismiss Plaintiffs' claims against RTC for failure to state a claim under Rule 12(b)(6).

## LOCAL RULE 3.01(G) CERTIFICATION

The undersigned counsel hereby certify that the undersigned conferred with Plaintiffs' counsel, **Neil Glazer and Zahra Dean of Kohn Swift & Graf, PC, Gregory Hansel of Preti Flaherty Beliveau & Pachios, Chartered LLP, and Manuel J. (John) Dominguez of Cohen Milstein Sellers & Toll PLLC** who do not agree to the relief sought in the instant Motion. Counsel further certifies that this Motion is brought in good faith and not for any improper purpose.

Dated: July 12, 2022                    **DLA PIPER LLP (US)**

/s/***Christopher Oprison***
Christopher G. Oprison, Esq.
Florida Bar No. 122080
chris.oprison@dlapiper.com
Janelly Crespo, Esq.
Florida Bar No. 124073
janelly.crespo@dlapiper.com
200 S. Biscayne Blvd., Suite 2500
Miami, Florida 33131
Tel: 305.423.8522
Fax: 305.657.6366

*Attorneys for Defendant*
*Religious Technology Center, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 12, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/***Christopher Oprison***
Christopher G. Oprison