## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GAWAIN BAXTER, LAURA BAXTER
and VALESKA PARIS,

       Plaintiffs,

v.                              Case No.: 8:22-cv-00986-TPB-JSS

DAVID MISCAVIGE; CHURCH OF
SCIENTOLOGY INTERNATIONAL, INC.;
RELIGIOUS TECHNOLOGY CENTER, INC.;
IAS ADMINISTRATIONS, INC.; CHURCH
OF SCIENTOLOGY FLAG SERVICE
ORGANIZATION, INC.; CHURCH OF
SCIENTOLOGY FLAG SHIP SERVICE
ORGANIZATION, INC.,

       Defendants.

_____/

### DEFENDANT IAS ADMINISTRATIONS, INC.'S
### MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR
### LACK OF PERSONAL JURISDICTION, TO COMPEL ARBITRATION,
### OR DISMISS FOR FAILURE TO STATE A CLAIM

IAS Administrations, Inc. ("IASA") moves: (1) under Rule 12(b)(2) of the

Fed. R. Civ. Pro. to dismiss Plaintiffs' Amended Complaint for lack of personal

jurisdiction, (2) or in the alternative, to compel arbitration under 9 U.S.C. § 1 *et

seq.*, (3) or in the alternative, to dismiss for failure to state a claim under Rule

12(b)(6) of the Fed. R. Civ. Pro. IASA states as follows:

### INTRODUCTION

Plaintiffs Gawain Baxter, Laura Baxter and Valeska Paris (collectively,

"Plaintiffs") voluntarily served for over 20 years as members of the Sea

Organization ("Sea Org"), the religious order of the Church of Scientology. As Sea Org members, Plaintiffs were integral to Scientology's religious mission. Despite voluntarily choosing to practice Scientology and serve as members of its religious order, Plaintiffs now claim their participation violated the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1581-1597. Plaintiffs' claims against IASA are without merit and must be dismissed and/or sent to arbitration.

First and foremost, the Court lacks personal jurisdiction over IASA. As Plaintiffs concede, IASA is a Delaware corporation headquartered in Los Angeles, California. (Amended Compl. ¶ 22). Since 2008 all of IASA's corporate decisions have been made in and directed from Los Angeles, where all of its officers and directors are and have been posted. (Amended Declaration of Mislav Raos ¶ 5 ("Raos Amended Dec.").) Thus, IASA is not "at home" in Florida and is not subject to general jurisdiction in Florida. That IASA filed annual reports with the Florida Secretary of State in the past erroneously noting a Clearwater, Florida address as IASA's principal place of business—an error corrected a decade ago—(see Raos Amended Dec. ¶ 8), does not confer general jurisdiction. Since 2008, IASA headquarters or its "home" has been based in California. (Raos Amended Dec. ¶ 5.) IASA's principal place of business has never been in Florida. Prior to 2008, IASA's principal place of business was aboard the *Freewinds* (see Raos Amended Dec. ¶ 7).

IASA is also not subject to specific personal jurisdiction in Florida. Despite the length of the Complaint, Plaintiffs fail to allege a single plausible fact establishing IASA's contacts with Florida under the Florida long-arm statute or how any alleged harm arose out of any such contact with Florida. IASA's purported administration of annual dues in Florida, even if true, and it is not, does not have any alleged connection to the claims in the Amended Complaint. In short, Plaintiffs fail to establish the requisite statutory and constitutional nexus required to exercise specific personal jurisdiction over IASA.

## **ARGUMENT**

## I.    **THE COURT LACKS PERSONAL JURISDICTION OVER IASA**

IASA is not subject to personal jurisdiction in Florida. Florida courts may only exercise personal jurisdiction over a defendant if consistent with Florida's long-arm statute, Section 48.193, Florida Statutes, and if doing so does not violate federal due process requirements. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013); *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). A plaintiff bears the initial burden of establishing a *prima facie* basis upon which jurisdiction over a nonresident defendant can be exercised. *Id.* A *prima facie* case is demonstrated only by factual allegations pled "with reasonable particularity" establishing that sufficient contacts between the party and the forum state exist. *Organic Mattresses, Inc. v. Envtl. Res. Outlet, Inc.*, 2017 WL 5665354, at *2 (S.D. Fla. Oct. 6, 2017); *see also Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). An out-of-state defendant may refute

jurisdictional allegations by an affidavit or other sworn proof showing such allegations are erroneous, thereby shifting the burden back to the plaintiff to produce evidence supporting jurisdiction. *Id.*

### A. IASA Is Not Subject to General Jurisdiction Under Florida's Long-Arm Statute, Section 48.193(2), And Exercising Jurisdiction Would Offend Due Process Requirements.

Section 48.193(2), Fla. Stat., provides for general personal jurisdiction. However, the reach of the Florida long-arm statute is limited by the Due Process Clause of the Fourteenth Amendment. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). The only question, then, is whether this Court's exercise of general personal jurisdiction over IASA would violate the Federal Due Process Clause.

A general jurisdiction inquiry turns on whether a party has "substantial and not isolated activity" in Florida irrespective of where the cause of action arose. Fla. Stat. § 48.193(2). As *Daimler AG v. Bauman et al.*, and its progeny have made clear, the paradigm forum for the exercise of general jurisdiction is "one in which the corporation is fairly regarded as at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (corporation is subject to general jurisdiction where it is "at home," that is, "its place of incorporation and principal place of business.") *Daimler* provides that general jurisdiction may arise only where a foreign corporation's affiliations in the state are so "continuous and systematic" as to render it "at home," that is, where it was incorporated and has its principal place

4

of business, except in an "exceptional case." *Id.* 571 U.S. 117, at 137-39; *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

Plaintiffs bear a "heavy burden" to establish a defendant is subject to general jurisdiction. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018); *Bryant v. Hasbro, Inc.*, 2020 WL 224513 at *4 (M.D. Fla. Jan. 15, 2020); *see also Lee v. Branch Banking & Tr. Co.*, 2018 WL 5633995, at *3 (S.D. Fla. Oct. 31, 2018). Failure to meet this threshold requirement compels dismissal absent a separate basis for exercising specific jurisdiction, discussed below. *See Fincantieri-Cantieri Navali Italiani S.p.A. v. Yuzwa*, 241 So. 3d 938, 943-45 (Fla. 3d DCA 2018); *Teva Pharm. Indus. v. Ruiz*, 181 So. 3d 513, 521 (Fla. 2d DCA 2015). *Daimler* and cases that follow have erected "a high bar . . . to make a foreign corporation at home in Florida," *Bryant v. Hasbro, Inc.*, 2020 WL 224513 at *4 (M.D. Fla. Jan. 15, 2020) (having employees and registering to do business in Florida insufficient to establish "at home"); *see also Lee v. Branch Banking & Tr. Co.*, No. 18-21876-Civ-Scola, 2018 WL 5633995, at *3 (S.D. Fla. Oct. 31, 2018).

Here, Plaintiffs concede IASA is a Delaware corporation headquartered in Los Angeles, California. (Amended Compl. ¶ 22; *see also* Raos Amended Dec. ¶ 4.) Indeed, not only is IASA's principal place of business in Los Angeles, California, its officers and directors direct, control, and coordinate IASA's activities from Los Angeles, California. (Raos Amended Dec. ¶¶ 5, 6.) IASA is, thus, "at home" in California, not in Clearwater, Florida. Plaintiffs allege IASA has offices and operations in Clearwater, Florida, which "administers annual dues paid by all

persons who participate in Scientology," and "[a]ccording to annual reports filed with the Florida Secretary of State during the relevant time period, IASA's principal place of business was in Clearwater, Florida from 2005 to 2014." (Amended Compl. ¶ 22.) These allegations, even if accurate, and they are not (Raos Amended Dec. ¶¶ 6, 7), are insufficient to establish the necessary "substantial and not isolated activity" between IASA and Florida. *Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 535 F. Supp. 3d 1299, 1305 (S.D. Fla. 2021) (defendant not subject to general jurisdiction where it is not incorporated and does not have its principal place of business); *see also Scanz Techs., Inc. v. JewMon Enters., LLC*, 2021 WL 65466, at *3 (S.D. Fla. Jan. 7, 2021) (finding that "[a]n individual is subject to general jurisdiction where the individual is domiciled").

Generally, courts have declined to give much weight to "representations made in annual reports or other documents filed with a secretary of state that indicate the location of a corporate headquarters" for purposes of subject matter jurisdiction. *See Transp. & Storage Sols. Inc. v. KLT Indus., Inc.*, 2014 WL 5320174, at *3 (D. Mass. Oct. 17, 2014) (citing *Harris v. Black Clawson Co.*, 961 F.2d 547, 550 (5th Cir. 1992)) (representations in annual reports should not influence the determination of a corporation's principal place of business); *Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010) (mere filing of SEC Form 10-K listing a corporation's 'principal executive offices' insufficient proof to establish a corporation's nerve center); *Polanco v. Ford*, WL 71569 (S.D.Fla. Jan. 7, 2022), (mere filing of Florida annual reports insufficient to establish principal place of

business because it would readily permit jurisdictional manipulation); *Overton v. Rainbo Baking Co. of Johnson City*, 239 F. Supp. 800, 801 (E.D. Tenn. 1964) (court not bound by the principal place of business listed in annual report in determining subject matter jurisdiction); *see also Breen v. Pruter*, 2014 WL 11485243, at *2 (D. Wyo. Dec. 16, 2014) (mere existence of a document listing business address is insufficient to establish principal place of business), *aff'd*, 679 F. App'x 713 (10th Cir. 2017); *Bonar, Inc. v. Schottland*, 631 F.Supp. 990, 994 (E.D. Pa. 1986) (existence of "corporate documents" listing a Delaware business mailing address did not establish principal place of business); *American Safety Table Co. v. Schreiber & Goldberg, Inc.*, 320 F.Supp. 603, 604 (S.D.N.Y. 1970) (principal place of business not in NY, even though a telephone listing and mailing address existed there); *Harris v. Black Clawson Co.,* 961 F.2d 547, 549 (5th Cir. 1992) (statements made to the SEC are likewise not binding) (citing *Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 87 (S.D.N.Y. 1974) (designation of New York City as site of principal executive offices filed with SEC was significant, but not dispositive); *Ratliff v. Cooper Labs., Inc.,* 444 F.2d 745, 748 (4th Cir. 1971) (registration to do business of no special weight; applying for privilege of doing business is one thing, but the actual exercise is quite another). Accordingly, IASA's erroneous Annual Reports, (Raos Amended Dec. ¶ 7) do not confer general jurisdiction over IASA in Florida and IASA is not subject to general jurisdiction in Florida.

## B.   IASA Is Not Subject to Specific Jurisdiction Under Florida's Long-Arm Statute.

To establish specific jurisdiction, a plaintiff must allege facts establishing (1) a defendant did one of the acts under the Florida long-arm statute within Florida, **and** (2) the cause of action "arose from" the defendant's activity in Florida. *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1135 (Fla. 3d DCA 2018). Absent such allegations, specific jurisdiction does not exist. *Kingland Estates, Ltd. v. Davis*, 170 So. 3d 825, 831 (Fla. 3d DCA 2015).

The Amended Complaint is silent as to any basis for exercising specific jurisdiction pursuant to the long-arm statute. In fact, Plaintiffs advance *no* jurisdictional allegations whatsoever regarding specific jurisdiction. Construing the Amended Complaint as a whole, however, Plaintiffs' allegations of "offices and operations in Clearwater, Florida" (Amended Compl. ¶ 22), the filing of annual reports in Florida, maintaining a bank account in Florida, and assertion of claims under the TVPRA against IASA suggest Plaintiffs may seek to establish specific jurisdiction under either Section 48.193(1)(a)(1), Fla. Stat. (operating or engaging in a business or business venture in Florida or having an office in Florida), or Section 48.193(1)(a)(2), Fla. Stat. (committing a tortious act in Florida). Accordingly, IASA addresses those issues below.

### 1. IASA Is Not Subject to Jurisdiction Pursuant to Fla. Stat. § 48.193(1)(a)(1) for Operating or Engaging in a Business or Business Venture in Florida or Having an Office in Florida.

Under Section 48.193(1)(a)(1), a foreign defendant may be subject to specific jurisdiction for a claim *arising out* of the defendant operating, conducting, engaging in, or carrying on a business or business venture *in Florida*. Fla. Stat. §

8

48.193(1)(a)(1). To do so, "the activities of the defendant must be considered collectively and show a general course of business activity in [Florida] for pecuniary benefit." *Future Tech.*, 218 F.3d at 1249. Relevant, but not dispositive, factors to be considered include having an office in, having a license to do business in, servicing substantial numbers of clients or customers in, or generating significant revenue in Florida. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005). Plaintiffs' allegations relating to IASA do not establish IASA carries on a general course of business activity for pecuniary benefit *in Florida*. While annual dues are not administered from Florida (Raos Amended Dec. ¶¶ 6, 7), even if they were, administrating annual dues would be insufficient to establish a general course of business activities for pecuniary benefit or that Plaintiffs' claims arose from that activity. While the Amended Complaint (see ¶ 22) alleges IASA's Florida office provides "travel services for Freewinds guests and crew," Plaintiffs do not and cannot allege IASA derives any pecuniary benefit from any such activities. IASA does not provide travel services and derives no pecuniary benefit from referrals to Freewinds' travel agent. (Raos Amended Dec. ¶ 10). Moreover, while IASA maintains some staff in Clearwater, Florida, those staff members do not devote their time to the administration of annual dues. Annual dues are administered from Los Angeles. *Id*. at ¶ 7. None of the Clearwater staff are officers or directors of IASA and all of their activities are directed and supervised by officials in Los Angeles. *Id*. at ¶ 9. IASA does not maintain a bank account in Florida, although its bank may have Florida branches.

*Id.* at ¶ 8. These facts, including Plaintiffs' conclusive concession of IASA's principal place of business as Los Angeles, establish that IASA is not subject to specific jurisdiction in Florida. Such *de minimis* contacts with Florida do not qualify as conducting a business venture in Florida for pecuniary benefit, *see Horizon*, 421 F.3d at 1167-68.

Plaintiffs apparently try to establish this Court's jurisdiction over IASA by alleging Defendant Miscavige directs or controls IASA from Florida (Amended Compl. ¶ 22). IASA, however, is managed and directed from California, where it is headquartered, has its principal place of business, and where the vast majority of its management and staff are located. (Raos Amended Dec. ¶¶ 5, 6).

Mr. Miscavige is neither an officer, director nor employee of IASA. (Raos Amended Dec. ¶ 6). Mr. Miscavige's alleged residence or presence in Florida while purportedly directing IASA's operations, even if true, and it is not, would not confer specific jurisdiction over IASA because Plaintiffs fail to allege specific *business* activities *of IASA* in Florida caused injury to Plaintiffs.

According to Plaintiffs' allegations, the very few alleged bad acts by IASA staff occurred in locations *other than Florida*. (*See* Amended Compl. ¶¶ 45-Freewinds, 93-Florida, 98-Freewinds, 99-Freewinds, 101-Freewinds, 114-England, 115-Freewinds, 117-Copenhagen, 120-Freewinds, 121-Freewinds, 135-Germany). The Freewinds vessel is not owned by IASA (*Id.* at. ¶ 39) and never enters U.S. waters. *Id.* at ¶ 41. Further, as explained in the Motion to Dismiss of Defendant Flag Service Organization (in which IASA joins), the Amended

Complaint does not assert any supposed violations of the TVPRA occurred in Florida after 2002, when Congress established a private right of action under the TVPRA. Without actionable conduct *in Florida*, this Court lacks jurisdiction.

Finally, Plaintiffs do not allege how any claim advanced against IASA arose from IASA's alleged Florida activities. *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 861 (11th Cir. 2013). That failure is fatal. S*ee Schwartzburg v. Knobloch*, 98 So. 3d 173, 182 (Fla. 2d DCA 2012) (finding no basis for jurisdiction under §48.193(1)(a) because the plaintiff's allegations established only that defendants had indirect ownership interest in the nursing home's operating and management operations, and the plaintiff's claims were not related to the defendant's financial interests in the nursing home).

### 2. IASA Is Not Subject to Jurisdiction Pursuant to Fla. Stat. § 48.193(1)(a)(2).

A foreign defendant may also be subject to specific jurisdiction in Florida where a claim arises out of a tortious act it is alleged to have committed in Florida. *See* § 48.193(1)(a)(2), Fla. Stat. (2019). The *only* allegation of any potential tortious act committed by IASA within Florida is that Danny Light, a high-ranking IASA officer from the Freewinds who was at the time located in Clearwater, verbally abused and screamed at Gawain. Amended Compl. ¶ 93. But the Amended Complaint reveals Mr. Light's supposed yelling at Gawain, even if true, happened in *1997*, years before a private right of action existed under the TVPRA.[1] *Ditullio v.*

---

[1] The Complaint alleges that the Danny Light incident happened when Gawain was 15 years old. (Amended Compl. ¶ 93). Gawain was born in 1982. (Amended Compl. ¶ 13).

*Boehm*, 662 F.3d 1091, 1099 (9th Cir. 2011) (TVPRA "cannot be applied retroactively to create liability for conduct that occurred before December 19, 2003" [date of amendment of TVPRA to include private right of action].) And, it is not at all clear from the Amended Complaint that the alleged "verbal abuse" caused "forced labor" in violation of the TVPRA. All other allegations are pled in a collective shotgun fashion against "the Defendants" without any discernible way to differentiate specific perpetrators of specific actions.

Insofar as Plaintiffs identify other specific IASA officers or employees as having committed, or facilitated the commission of a tortious act, the allegations nowhere tether any such acts or any resulting injury to *Florida*. Plaintiffs' allegations about Janet McLaughlin's misconduct, for instance, even if true (which they are not), occurred on the Freewinds vessel in international waters, *not in Florida*. Amended Compl. ¶ 120.

Plaintiffs, therefore, fail to carry their burden of a *prima facie* showing of specific jurisdiction over IASA under Florida's long-arm statute. *See Carlyle v. Palm Beach Polo Holdings, Inc.*, 842 So. 2d 1013, 1017 (Fla. 4th DCA 2003) (no jurisdiction where plaintiffs failed to demonstrate how cause of action arose from defendant's communications into Florida or that communications were tortious).

Even if Plaintiffs' allegations were sufficiently pled (which they are not), the mere *allegation* of a tort does not confer jurisdiction. For personal jurisdiction to attach under the "tortious activity" subsection of the long-arm statute, a plaintiff must plead facts sufficient to demonstrate the defendant committed a "substantial

aspect of the alleged tort in Florida." *Musiker v. Projectavision, Inc.*, 960 F. Supp. 292, 296 (S.D. Fla. 1997). Where no part of the alleged tortious activity is plausibly alleged to have occurred in Florida, a Florida court has no personal jurisdiction over an out-of-state defendant. *Freedom Sav. & Loan Ass'n v. Ormandy & Assocs.*, 479 So. 2d 316, 317 (Fla. 5th DCA 1985). Here, there are no allegations any substantial aspect of the tortious acts attributable to IASA occurred in Florida.

Nor can Plaintiffs meet their burden by lumping IASA into an alleged conspiracy designed to make IASA responsible for the acts of every other alleged co-conspirator. As discussed below, and incorporated by reference from FSO's Motion to Dismiss, Plaintiffs' conspiracy claims against IASA are defective as a matter of law. Beyond that, courts will not extend jurisdiction over a foreign defendant based on a conspiracy theory utterly devoid of any factual support. *See Advantus, Corp. v. Sandpiper of California, Inc.*, 2019 WL 4751725, at *23 (M.D. Fla. Sept. 30, 2019); *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, 2016 WL 11501768, at *5 (S.D. Fla. Sept. 14, 2016).

### C.   Exercising Specific Jurisdiction Over IASA Would Offend Due Process Requirements.

Exercising specific personal jurisdiction over IASA would offend federal due process requirements. To properly exercise specific jurisdiction, this Court must determine: (1) whether a plaintiff's claims "arise out of or relate to" defendant's contact with the forum; (2) whether the defendant "purposefully availed" itself of the privilege of conducting activities within the state; ***and*** (3) whether the exercise of personal jurisdiction is fair and reasonable. *See Louis Vuitton*, 736 F.3d at 1355.

### 1. Plaintiffs Fail to Establish Any Claim Arose from IASA's Alleged Contacts with Florida.

The first prong of the constitutional analysis focuses on the direct causal relationship among the defendant, the forum, and the litigation. Plaintiffs' claims must actually arise from or relate to IASA's conduct in and contacts with *Florida*. *See Fincantieri-Cantieri Navali Italiani S.p.A. v. Yuzwa*, 241 So. 3d 938, 946 (Fla. 3d DCA 2018). Plaintiffs' allegations against IASA fail to establish even a remote nexus between IASA and Florida. Plaintiffs do not allege any specific actions undertaken by IASA in Florida other than the 1997 Danny Light verbal abuse of Gawain Baxter. Amended Compl. ¶ 93. That conduct is not clearly actionable under the TVPRA and in any event, cannot form the basis of jurisdiction. *Duncanson v. Wine & Canvas Dev., LLC,* 2015 WL 12844947, at * 5 (M.D. Fla. Sept. 25, 2015) (even though Florida resident alleged it had been harmed in Florida by defendant's conduct, court barred finding of specific jurisdiction on such grounds alone). On the contrary, Plaintiffs fail to advance any allegations about specific acts by IASA in Florida with constitutional connectivity to the harm Plaintiffs allegedly suffered. The Amended Complaint further alleges substantially all acts, irrespective of wrongdoer, took place *outside of Florida*. *See* Amended Compl. ¶¶ 39-45.

### 2. Plaintiffs Fail to Establish IASA "Purposefully Availed" Itself of Florida, the Forum State.

The second prong of the constitutional analysis focuses on whether IASA "purposefully availed" itself of the privileges of conducting business in Florida. Plaintiffs' conclusory and generalized allegations that IASA has offices and

operations in Clearwater, Florida, that it maintains a bank account in Florida, provides travel services in Florida (Amended Compl. ¶ 22) and that Danny Light yelled at Gawain Baxter in 1997 (Amended Compl. ¶ 93) are minimal activities and insufficient to establish IASA purposefully availed itself of the privileges of conducting business in Florida. *See, e.g.*, *Gazelles FL, Inc. v. Cupp*, 2018 WL 7364591, at *9–13 (M.D. Fla. Sept. 28, 2018) (plaintiff did not establish how defendants benefitted from Florida's laws); *Estes*, 259 So. 3d 197-98 (defendants' limited contacts with Florida could not form the basis to "reasonably anticipate being haled into a Florida court."); *Fincantieri*, 241 So. 3d at 946 (inadequate connection between Florida and alleged acts to support specific jurisdiction).

### 3. Plaintiffs Fail to Establish How Exercising Jurisdiction Comports with Notions of "Fair Play and Substantial Justice."

Third, the exercise of personal jurisdiction over IASA must be fair or reasonable. "'[T]he facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" *Venetian Salami, supra,* 554 So. 2d at 501 *(quoting Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 485 (1985)). Plaintiffs fail to identify when, where, how, or which of IASA's officers, religious workers, staff, agents, or representatives, if any, committed bad acts *in Florida*. Plaintiffs' conclusory allegations regarding "forced labor," "trafficking," "peonage," "abuse," "punishment," "imprisonment," or "being spied upon" fall far short of satisfying their burden. Plaintiffs fail to allege

a single ultimate fact supporting such allegations against IASA and fail the third prong of the due process analysis.

### D. IASA Is Not Subject to Personal Jurisdiction Under an Alter Ego Theory or Agency Theory.

Insofar as Plaintiffs seek to establish personal jurisdiction over IASA under an alter ego theory (Amended Compl. ¶¶ 16, 17, 22, 25-27, 29, 31), that effort fails. A complaint must allege facts sufficient to pierce the corporate veil of the resident corporation, which only occurs in exceptional circumstances. *See Bellairs v. Mohrmann*, 716 So. 2d 320, 322 (Fla. 2d DCA 1998). Here, to pierce the corporate veil and reach the parent, Plaintiffs must show IASA (1) is a "mere instrumentality" of the parent and (2) engages in improper conduct. S*ee Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998), such as where the corporation is a mere sham, an instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose, *see Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1117 (Fla. 1984).

Plaintiffs seek to establish jurisdiction over IASA, a non-resident corporation, by alleging Mr. Miscavige, an alleged Florida resident, exercises control over IASA's management and operations in and from Florida. Amended Compl. ¶¶ 16, 17, 22. By this logic, Plaintiffs seek to establish Florida jurisdiction over out-of-state IASA (the "mere instrumentality") by arguing the allegedly in-state parent (Mr. Miscavige) is a Florida resident. Plaintiffs' logic is nonsensical and turns the alter ego doctrine on its head: the alter ego doctrine is used to

establish jurisdiction over the out-of-state parent that is using an in-state "mere instrumentality" to skirt jurisdiction. *See Bellairs v. Mohrmann*, 716 So. 2d 320, 322 (Fla. 2d DCA 1998). IASA, the out-of-state mere instrumentality, has not done anything in Florida and, by Plaintiffs' own allegations, is not controlling Mr. Miscavige in Florida. Furthermore, there are no allegations IASA was unlawfully formed, maintained, or used for improper purpose, which are fatal omissions, *see Lipsig v. Ramlawi*, 760 So. 2d 170, 187 (Fla. 3d DCA 2000); *see also MeterLogic, Inc. v. Copier Sols., Inc.*, 126 F. Supp. 2d 1346, 1358 (S.D. Fla. 2000).

Insofar as Plaintiffs seek to establish Florida jurisdiction of IASA under an agency theory, it must be rejected here just as it was by the Supreme Court in *Daimler*. *See Daimler*, 134 S. Ct. at 760 (rejecting the agency theory) (quoting *Goodyear*, 564 U.S. at 929)); *see also Wertheim Jewish Educ. Tr., LLC v. Deutsche Bank AG*, No. 2017 WL 6313937 at *10-11 (S.D. Fla. Dec. 6, 2017). The claims against IASA should be dismissed for lack of personal jurisdiction.

## II.    PLAINTIFFS MUST ARBITRATE THEIR CLAIMS AGAINST IASA.

In the event this Court finds it has jurisdiction over IASA, Plaintiffs must be compelled to arbitrate their claims against IASA. This issue is addressed at length in FSSO's Motion to Compel Arbitration (ECF 84). All Plaintiffs signed multiple arbitration agreements with FSSO.[2] Those same arbitration agreements are enforceable. *Garcia v. Church of Scientology Flag Srvc. Org., Inc.*, 2021 WL

---

[2] See arbitration agreements attached to Exhibit 2 to FSSO's Motion to Compel Arbitration ECF  84-2.

5074465 at *6 (11th Cir. Nov. 2, 2021). The agreements provide for arbitration of any claims Plaintiffs may assert against, "*any* other organization which espouses, presents, propagates or practices the Scientology religion." *See* Enrollment Agreements, ECF 84-2, pp. 15, 22, and 63 at ¶ 6a and ¶ 6d; Departure Agreements, ECF 84-2, pp. 44-45, and 54-55, at ¶ 6; and p. 84 at ¶ 7. IASA is indisputably "an organization which espouses, presents, propagates or practices the Scientology religion." (Amended Raos Dec. ¶ 2). *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020) (arbitration agreements may be enforced by non-signatories through 3rd party beneficiary theories); *Ronay Fam. Ltd. Partnership v. Tweed*, 216 Cal. App. 4th 830, 838 (2013) (3rd party beneficiary of arbitration agreement may enforce it); *Zac Smith & Co. v. Moonspinner Condo. Ass'n, Inc.*, 472 So. 2d 1324, 1324 (Fla. 1st DCA 1985) (arbitration clause binds a 3rd party beneficiary); *Robinson v. NBC Universal Cable,* 2018 WL 8620154, at *4 (S.D. Fla. Apr. 23, 2018) (compelling arbitration under 3rd party beneficiary theories).

## III.   ALTERNATIVELY, PLAINTIFFS' CLAIMS MUST BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard applies only to factual

allegations, not asserted legal theories. *Johnson v. City of Shelby*, 574 U.S. 10 (2014). Thus, the court may reject conclusory allegations not rooted in specific facts, as "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

### A.   Plaintiffs' Claims Fail Because the TVPRA Does Not Have Retroactive or Extraterritorial Application.

IASA further joins in Defendant FSO's Motion to Dismiss under Rule 12(b)(6) regarding challenges to the retroactive and extraterritorial application of the TVPRA as well as to Plaintiff Paris's untimely claims. (*See* ECF No. [    ].) Plaintiffs also fail to allege any facts sufficient to state any claims against IASA for violating the TVPRA, whether as a direct, attempted, or beneficiary violation (*see* Counts I, III and V), or as part of a conspiracy (*see* Counts II, IV and VI). Once again, Plaintiffs only advance conclusory allegations collectively against all Defendants. The Amended Complaint is a shotgun pleading and fails because it identifies no actionable TVPRA acts or omissions by IASA.

### B.   Plaintiffs Fail to Plead Facts Establishing IASA's Role in Any Alleged TVPRA Violation.

To be liable under the TVPRA, the amended complaint must plead plausible allegations that: "(1) the person or entity must knowingly benefit, financially or by receiving anything of value, (2) from participating in a venture, (3) that the person knew or should have known has engaged in an act in violation of this chapter." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 152-53 (E.D.N.Y. 2020) (quoting

18 U.S.C. § 1595(a) and *A.C. v. Red Roof Inns, Inc.*, No. 2:19-cv-4965, 2020 WL 3256261, at *4 (S.D. Ohio June 16, 2020)). Counts I, III and V fail.

### 1. *Plaintiffs Fail to Plead Facts that IASA Directly Violated the TVPRA as Alleged in Counts I, III and V.*

Count I alleging "forced labor," a violation of Section 1589, requires proof that a party has forced or compelled another party to perform labor or provide services by means of force, physical restraint, serious harm, abuse or threats thereof. 18 U.S.C. § 1589(a). Count III alleging "trafficking with respect to forced labor," a violation of Section 1590 "generally requires some conduct that occurs abroad." *Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 454 (E.D. Va. 2015). Count V alleging peonage, a violation of Section 1581 requires proof that a party has subjected another party to "involuntary servitude," that is, providing services in order to pay off an existing debt. *See Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 737 (11th Cir. 2018) (quoting *Taylor v. Georgia*, 315 U.S. 25, 29 (1942)). Plaintiffs have alleged "Defendants," collectively, directly violated the foregoing provisions, attempted to do so, and are also liable under a "beneficiary" theory. Yet, Plaintiffs fail to plead any facts attributing liability to IASA under any theory.

There are no allegations advanced against IASA or any of its employees or officers to support a claim for "forced labor," "trafficking" or "peonage." The allegations concerning IASA are scant and are isolated instances of yelling or unpleasant work. IASA's operation on the ship is "limited and largely public-facing." Amended Compl. at ¶ 45. Danny Light, a high-ranking IASA officer from

the Freewinds, at the time located at [Clearwater] Flag Base, verbally abused Gawain Baxter *in 1997*. *Id*. at ¶ 93. Janet McLaughlin, the senior most IASA officer on the ship, ordered Gawain Baxter to clean fuel tanks during his first year on the ship - or approximately 1998. *Id*. at ¶ 99.[3] IASA officers, screamed at Laura Baxter on the *Freewinds*, allegedly for insubordination (and not even allegedly in connection with any demand for labor). *Id*. at ¶ 120. As noted above, pre-December 2003 events are not actionable because they occurred before there was a private right of action under the TVPRA. The 2004 incident involving Laura Baxter is not alleged forced labor and occurred before TVPRA amendments gave extraterritorial reach. *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 201 (5th Cir. 2017).

Lacking any facts, Plaintiffs merely impermissibly recite—virtually verbatim—the TVPRA's statutory elements in Counts I, III and V (*compare* Amended Compl. ¶¶ 217, 231, 246, *with* 18 U.S.C. ¶ 1595(a)), which should be rejected, *see Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).[4] Plaintiffs fail to provide fair notice of the alleged wrongs it accuses IASA of committing. Accordingly, Counts I, III and V must be dismissed.

---

[3] Gawain Baxter was born in 1982 (Amend. Complaint, ¶ 13), and he embarked on the *Freewinds* when he was approximately 16 years old. (*Id*., ¶¶ 93-95.)

[4] In addition to engaging in impermissible group pleading, the Complaint is shotgun in nature because it incorporates all general allegations of fact into each claim for relief. (*See Amended Compl.* ¶¶ 214, 221, 228, 235, 242, 250.) This pleading style is improper, especially given that the Amended Complaint is 118 pages long, asserts 213 factual allegations and 6 claims for relief, and involves multiple Plaintiffs and Defendants. *See Rosado-Cabrera v. Pfizer, Inc.,* No. 8:20-CV-2008-TPB-JSS, 2021 WL 662220, at *2 (M.D. Fla. Feb. 19, 2021); *see also Worldspan Marine Inc. v. Comerica Bank*, No. 20-11646, 2021 WL 5882006, at *2 (11th Cir. Dec. 13, 2021).

### 2. *Plaintiffs Fail to Plead Facts That IASA "Attempted" To Violate the TVPRA as Alleged in Counts I, III and V.*

Plaintiffs' claims against IASA for *attempted* violations of the TVPRA also fail. 18 U.S.C. § 1594(a). Amended Compl. ¶¶ 218, 232, 247. To prevail on a claim of "attempt" under the TVPRA, Plaintiff must plausibly allege that IASA "(1) knowingly intended to [violate the TVPRA] and (2) took a substantial step toward committing that crime." *See United States v. Cooper*, 926 F.3d 718, 735 (11th Cir. 2019) (*citing United States v. Monroe*, 866 F.2d 1357, 1366 (11th Cir. 1989)). A substantial step must be strongly corroborative of the firmness of the defendant's criminal intent. *Monroe*, 866 F.2d at 1366. The "mere intent to violate a federal criminal statute is not punishable as an attempt unless it is also accompanied by significant conduct." *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007). Plaintiffs fail to plead any facts suggesting IASA knowingly intended to violate the TVPRA, or that it even took a substantial step towards accomplishing the violation. Rather, Counts I, III and V merely parrot the statutory language and claim every Defendant "attempted" to violate every cited provision. (Amended Compl. ¶¶ 218, 230, 232, 247.) Accordingly, Counts I, III and V must be dismissed. *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021).

### 3. *Plaintiffs Fail to Plead Facts That IASA Violated the TVPRA Under a Beneficiary Liability Theory.*

Plaintiffs' *beneficiary* claims under 18 U.S.C. § 1595(a) (Amended Compl. ¶¶ 217, 231, 246), fail. "[T]o state a beneficiary claim under section 1595(a), a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking

part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). In *Red Roof*, the Eleventh Circuit rejected Plaintiffs' allegations that hotel chain franchisors were liable under TVPRA. In particular, while evidence suggested the hotel franchisors may have financially benefited for licensing their brands to hotels where trafficking allegedly occurred and receiving revenues from those licensing agreements, *id.* at 719, 720, 726, there was no evidence presented that the franchisors actually "participated in a common undertaking involving risk or profit that violated the TVPRA." *Id.* As the Court explained, "observing something is not the same as participating in it," and thus the "section 1595(a) beneficiary claims against the franchisors fail." *Id.*

Plaintiffs herein allege IASA collects and administers annual dues, not from Plaintiffs, but rather from IAS members (Amended Compl. ¶ 22 and ¶ 45) and that it has public-facing operations on the Freewinds (*id.* ¶ 45). Plaintiffs have not alleged any connection between collecting and administrating annual dues or filing annual reports and its outward-facing operations on the Freewinds with the allegations of coerced labor. Therefore, their complaint fails to support beneficiary liability. Plaintiffs' allegations do not show a "common undertaking involving risk or profit violating the TVPRA." *Red Roof*, 21 F.4th at 727. Accordingly, Counts I, III and V must be dismissed.

### 4. Plaintiffs Fail to Plead Facts Showing IASA Engaged in a Conspiracy to Obtain Forced Labor, Traffic with Respect to Forced Labor or Commit Peonage.

Counts II, IV and VI allege "Defendants" engaged in a conspiracy to obtain forced labor, to traffic with respect to forced labor, and to commit peonage in violation of the TVPRA. Because Plaintiffs' liability theory is predicated on an alter ego or agency theory that all Defendants are an extension of the other, the conspiracy claims are barred by the intra-corporate conspiracy doctrine. This doctrine recognizes the acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. *See McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). A corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves. *Id.* The acts of a corporation's agents are those of a single legal actor. *Id.* It is not possible for a single legal entity to conspire with itself. *Id.*

Here, the Amended Complaint expressly alleges IASA is under the exclusive control of defendant Miscavige. (Amended Compl. ¶ 22.) If true (which it is not), IASA cannot conspire with others as all decisions would be made by Miscavige. *See Williams v. Michelin N. Am., Inc.*, 2005 WL 2708308, at *2 (M.D. Fla. Oct. 21, 2005). While treating all entity Defendants as a single entity, and advancing sweeping alter ego and agency theories, Plaintiffs purport to state a claim for civil conspiracy, a claim which requires an agreement between two or more parties. *See Kurnow v. Abbott*, 114 So. 3d 1099, 1102 (Fla. 1st DCA 2013). Not only do

24

Plaintiffs fail to plead any facts sufficient to establish the existence of an agreement of any kind—the *sine qua non* of a conspiracy—but a single entity cannot conspire with itself, nor can an agent conspire with its principal. *See McAndrew*, 206 F.3d at 1036. Accordingly, Counts II, IV and VI fail.

## IV.    CONCLUSION

IASA respectfully requests dismissal of Plaintiffs' Amended Complaint for lack of personal jurisdiction under Rule 12(b)(2), or alternatively stay the case and compel arbitration under Rule 12(b)(1), or alternatively dismiss Plaintiffs' claims against IASA for failure to state a claim under Rule 12(b)(6).

## Local Rule 3.01(g) Certification

I conferred with Neil Glazer, Gregory Hansel, and Zahra Dean counsel for the Plaintiffs by telephone on 8.22.22 to resolve the issues raised by this motion, but achieved no resolution.

## CERTIFICATE OF SERVICE

I certify that on August 23, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a true and correct copy to all counsel of record.

/s/ *ROBERT V. POTTER*

Robert V. Potter, FBN: 0363006
Johnson, Pope, Bokor, Ruppel & Burns, LLP,
911 Chestnut Street, Clearwater, FL 33756
Telephone: 727-461-1818
Primary email: bobp@jpfirm.com
Secondary email: janm@jpfirm.com,
*Counsel for Defendant IASA*