# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

GAWAIN BAXTER, LAURA BAXTER
and VALESKA PARIS,

      Plaintiffs,

v.                         Case No.: 8:22-cv-00986-TPB-JSS

DAVID MISCAVIGE; CHURCH OF
SCIENTOLOGY INTERNATIONAL, INC.;
RELIGIOUS TECHNOLOGY CENTER, INC.;
IAS ADMINISTRATIONS, INC.; CHURCH
OF SCIENTOLOGY FLAG SERVICE
ORGANIZATION, INC.; CHURCH OF
SCIENTOLOGY FLAG SHIP SERVICE
ORGANIZATION, INC.,

      Defendants.

_____/

## DEFENDANT RELIGIOUS TECHNOLOGY CENTER, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, TO COMPEL ARBITRATION OR, ALTERNATIVELY, DISMISS FOR FAILURE TO STATE A CLAIM

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6), Defendant Religious Technology Center, Inc. ("**RTC**"), by and through undersigned counsel, respectfully moves this Court to dismiss Plaintiffs' First Amended Complaint ("**Amended Complaint**") for lack of personal jurisdiction or, in the alternative, compel arbitration or, in the alternative, dismiss for failure to state a claim. In support thereof, RTC states as follows:

## **INTRODUCTION**

Plaintiffs Gawain Baxter, Laura Baxter, and Valeska Paris (collectively, "**Plaintiffs**") falsely accused RTC of involvement in abuse that allegedly occurred years ago and which have no connection to the state of Florida. Plaintiffs' claims that RTC violated the Trafficking Victims Protection Reauthorization Act ("**TVPRA**"), 18 U.S.C. §§ 1581-1597 are verifiably false. Despite having the opportunity to amend their complaint after previewing RTC's and the other corporate Defendants' initial motions to dismiss and to compel arbitration, Plaintiffs' Amended Complaint does nothing to cure the pleading and jurisdictional defects of the original Complaint. Plaintiffs' Amended Complaint remains a sensationalized fabrication, containing only conclusory allegations to support contrived claims against RTC, other senior Church entities, and the ecclesiastical leader of the religion itself,[1] and should be dismissed.

For over twenty (20) years Plaintiffs voluntarily served as members in the Sea Organization ("Sea Org"), an unincorporated religious order within Scientology, and dedicate their lives to the volunteer service of their religion and

---

[1] Plaintiffs allege that Mr. Miscavige concealed his whereabouts to evade service, (*see* ECF No. 79, ¶¶ 7-12), and that RTC, through counsel, or some unnamed staff, have impeded Plaintiffs' efforts to serve Defendant Miscavige, (*see id.*, ¶¶ 7g, 8d, 8f, 8g, 9c, 9d, 10a, 10c). These false allegations are a baseless attempt to malign RTC and its Chairman based upon Plaintiffs' own failures to effect service of process properly and are Plaintiffs attempt to lay the groundwork for pursuing substitute service on Mr. Miscavige through the Florida Secretary of State. The Court should reject Plaintiffs' contrived efforts to circumvent proper service requirements, or to lay blame at RTC's door. Neither RTC nor its counsel, nor any other Corporate Defendant or third party for that matter, has any obligation to assist or facilitate Plaintiffs' efforts to perfect service on another defendant and declining to provide such assistance is not tantamount to impeding service. Plaintiffs alone bear the burden to perfect service of process. If unable to serve through good faith efforts during the allotted period, Plaintiffs have no one but themselves to blame.

are integral to the Scientology religion and carrying out its religious mission. (ECF No. 84-1, (Heller Decl.) ¶¶ 15-21.) Despite voluntarily choosing to practice Scientology and serve as members of the Sea Org, Plaintiffs now claim that their participation in this religious order violated the TVPRA. Plaintiffs' claims against RTC must be dismissed or arbitrated.

First, the Court lacks personal jurisdiction over RTC—a conclusion supported by RTC's jurisdictional evidence (*see generally* Declaration of Warren McShane ("McShane Declaration")), and should dismiss on this basis alone.

Alternatively, as set forth in the Motion to Compel Arbitration ("Motion to Compel") filed by Defendant Church of Scientology Flag Ship Service Organization, Inc. ("**FSSO**"), (ECF No. 84), which RTC joins and fully incorporates by reference herein, Plaintiffs must arbitrate their claims against RTC. Each Plaintiff entered into binding arbitration agreements and agreed to resolve any dispute with any Scientology-affiliated organization through ecclesiastical justice procedures.

Alternatively, as set forth in Defendant Church of Scientology Flag Service Organization, Inc.'s ("**FSO**") Motion to Dismiss under Rule 12(b)(6), (ECF No. 85), which RTC joins and fully incorporates by reference herein, the Amended Complaint fails to state any TVPRA claims against RTC. All claims are predicated, at least in part, on conduct occurring before the 2003 amendments to the TVPRA which created a civil remedy. Such amendments were not retroactive. All claims predicated on pre-2003 conduct are, thus, not actionable under the TVPRA. Also, the TVPRA does not have extraterritorial application to Plaintiffs' civil claims. All

alleged violations occurred on the *Freewinds*, a Panamanian vessel with Curaçao as its homeport that Plaintiffs concede *never* entered U.S. waters.

Additionally, Plaintiffs fail to plead any plausible TVPRA violations by *RTC*. Despite the opportunity to amend and add new "facts," the Amended Complaint remains an impermissible shotgun pleading. Plaintiffs allege no facts to support their trafficking claims specifically against RTC under 18 U.S.C. §§ 1589 and 1590. The TVPRA trafficking provisions on which Plaintiffs' claims are based require plausible allegations of forced labor. Yet, RTC is a religious organization. Plaintiffs were never employed by RTC. They were voluntary members of the Sea Org who were free to leave the Sea Org at *any* time. All three Plaintiffs, in fact, *did* leave the Sea Org and Scientology. The TVPRA peonage claim, 18 U.S.C. § 1581, is supported by no facts alleging Plaintiffs were forced to work to satisfy an existing debt in order to earn their freedom. In fact, Plaintiffs' allegations that any debt obligation would not become ripe unless and until Plaintiffs attempted to leave the service of the Church—while factually false—make clear Plaintiffs do not state a claim for a TVPRA peonage violation. Moreover, there are no allegations, nor could there be, that any Plaintiff ever worked for RTC or incurred any debt whatsoever to RTC. As detailed herein, the Court should dismiss the action against RTC.

## ARGUMENT AND MEMORANDUM OF LAW

### I.   THE COURT LACKS PERSONAL JURISDICTION OVER RTC.

Plaintiffs' Amended Complaint fails to establish how RTC is subject to personal jurisdiction in Florida. Florida courts may only exercise personal

jurisdiction over a defendant if consistent with Florida's long-arm statute, Section 48.193, Florida Statutes, and if doing so does not violate federal due process requirements. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013); *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). A plaintiff bears the initial burden of establishing a *prima facie* basis upon which jurisdiction over a nonresident defendant can be exercised. *Id.* A *prima facie* case is demonstrated only by factual allegations pleaded "with reasonable particularity" establishing that sufficient contacts between the party and the forum state exist. *Organic Mattresses, Inc. v. Envtl. Res. Outlet, Inc.*, No. 17-21905, 2017 WL 5665354, at *2 (S.D. Fla. Oct. 6, 2017); *see also Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). An out-of-state defendant may refute jurisdictional allegations by an affidavit or other sworn proof showing such allegations are erroneous, thereby shifting the burden back to the plaintiff to produce evidence supporting jurisdiction. *Id.*

### A.   RTC Is Not Subject to General Jurisdiction.

Plaintiffs' jurisdictional allegations still fail to establish how RTC is "at home" in Florida. The Florida long-arm statute is co-extensive with the Due Process Clause of the Fourteenth Amendment. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). Thus, the only question is whether the Court's exercise of general jurisdiction over RTC would violate the Federal Due Process Clause. A general jurisdiction inquiry turns on whether a party has "substantial and not isolated activity" in Florida irrespective of where the cause of

action arose. Fla. Stat. § 48.193(2). As *Daimler AG v. Bauman et al.*, and its progeny have made clear, the paradigm forum for the exercise of general jurisdiction is "one in which the corporation is fairly regarded as at home." 571 U.S. 117, 137 (2014). Therefore, general jurisdiction may arise only where a foreign corporation's affiliations in the state are so "continuous and systematic" as to render it "at home," that is, where it was incorporated and has its principal place of business, except in an "exceptional case." *Id.* at 137-39; *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

    *Daimler* and its progeny erected "a high bar . . . to make a foreign corporation at home in Florida." *Bryant v. Hasbro, Inc.*, No. 8:18-cv-1336-T-36CPT, 2020 WL 224513 at *4 (M.D. Fla. Jan. 15, 2020); *see also Lee v. Branch Banking & Tr. Co.*, No. 18-21876-Civ-Scola, 2018 WL 5633995, at *3 (S.D. Fla. Oct. 31, 2018). Plaintiffs fail to meet this "heavy burden." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018). RTC is a religious non-profit, tax-exempt corporation organized under the laws of the State of California since 1982. (McShane Decl., ¶¶ 4, 7); (*see also* ECF No. 79, ¶ 18.) RTC's headquarters is in California, it conducts its business from California, and the vast majority of its staff are located in California. (McShane Decl., ¶ 7.) Allegations that RTC has offices in Clearwater, Florida (ECF No. 79, ¶ 24), which have a skeleton staff to oversee limited activities in Florida (here, *religious* activities), is not sufficient to confer general jurisdiction. *Waite*, 901 F.3d at 1317; *Carmouche*, 789 F.3d at 1204-06; *Evans v. Andy & Evan Indus., Inc.*, No. 15-CV-61013, 2016 WL 8787062, at *3 (S.D. Fla. July 15, 2016).

Allegations that Mr. Miscavige, the Chairman of RTC's Board, directs, manages or controls RTC's day-to-day activities, in or from Florida, (ECF No. 79, ¶¶ 16-18, 24, 28), even if true (and they are not), are not sufficient to overcome the heavy presumption that RTC is "at home" in California and confer jurisdiction over RTC in Florida. *See Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 535 F. Supp. 3d 1299, 1305 (S.D. Fla. 2021); *see also Scanz Techs., Inc. v. JewMon Enters., LLC*, 2021 WL 65466, at *3 (S.D. Fla. Jan. 7, 2021). Indeed, Mr. Miscavige's alleged presence or residence in Florida is irrelevant to the question of general jurisdiction over RTC. *See Gilmer v. Bureau Veritas Comm. & Trade, Inc.*, No. 0:20-CV-61408, 2021 WL 3772137, at *3 (S.D. Fla. Apr. 20, 2021). Mr. Miscavige would be expected to visit churches in Florida just as he routinely travels to the many dozens of churches around the world in his official capacity as RTC's Chairman and Scientology's ecclesiastical leader. Doing so no more confers general jurisdiction over RTC in any one of those other jurisdictions than it does in Florida.

## B.    RTC Is Not Subject to Specific Jurisdiction.

Plaintiffs fail to establish RTC is subject to specific personal jurisdiction under Florida's long-arm statute, Fla. Stat. § 48.193(1)(a). Absent facts establishing (1) a defendant did one of the acts under the long-arm statute within Florida, and (2) that the cause of action "arose from" the defendant's activity in Florida, *see Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1135 (Fla. 3d DCA 2018), there can be no specific jurisdiction over a defendant, *Kingland Estates, Ltd. v. Davis*, 170 So. 3d 825, 831 (Fla. 3d DCA 2015).

### 1. RTC Is Not Subject to Specific Jurisdiction Pursuant to Fla. Stat. § 48.193(1)(a)(1).

A foreign defendant may be subject to specific jurisdiction for a claim *arising out* of the defendant operating, conducting, engaging in, or carrying on a business or business venture *in Florida*. Fla. Stat. § 48.193(1)(a)(1). To do so, "the activities of the defendant must be considered collectively and show a general course of business activity in [Florida] for pecuniary benefit." *Future Tech.*, 218 F.3d at 1249. Relevant, but not dispositive, factors to be considered include having an office in, having a license to do business in, servicing substantial numbers of clients or customers in, or generating significant revenue in Florida. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005).

Plaintiffs' conclusory allegation that their claims "arise out of transactions or operations connected with or incidental to business or business ventures operating in Florida" ignores that RTC is a religious organization and does not engage in a "business venture." (McShane Decl., ¶ 8.) Plaintiffs do not advance any facts identifying what specific business or venture *RTC* carries on in Florida. Plaintiffs do not, *and cannot*, allege RTC has clients or customers in Florida or anywhere else, or a bank account, a business license, agent for service of process, or real property in Florida. (McShane Decl., ¶¶ 10-14.) Although RTC licenses the Advanced Technology to seven "Advanced Churches" located around the world, including in Clearwater, Florida, and maintains an office and skeleton staff in each, (McShane Decl., ¶¶ 5, 15), such *de minimis* contacts with Florida do not qualify as conducting a business venture in Florida, *see Horizon*, 421 F.3d at 1167-68. In fact,

in each location, RTC carries out its religious (not business) activities to ensure the orthodox ministration of the Advanced Technology. Furthermore, Plaintiffs' own allegations establish the vast majority of RTC employees and officers are present in locations *other than Florida*. (*See, e.g.*, ECF No. 79, ¶¶ 28, 42.)

Insofar as Plaintiffs attempt to establish jurisdiction over RTC by alleging RTC "oversaw and directed the management of . . . Defendant entities," (ECF No. 79, ¶ 18), including FSO (the one Florida-based entity) or FSSO, which is not true, (McShane Decl., ¶¶ 19, 20), Plaintiffs do not and cannot allege that any claim arose out of any management action in Florida. Nor can Plaintiffs establish jurisdiction by alleging that Mr. Miscavige, "who holds the title Chairman of the Board of RTC," (ECF No.79, ¶ 28), is a resident of Florida who controls and directs the management and operations of RTC, a California entity, in and from Florida, (*id.*, ¶¶ 16, 17). As stated above, RTC is managed and directed from California. (McShane Decl., ¶ 7.) Allegations of Mr. Miscavige's residence in Florida while purportedly directing RTC's day-to-day operations (which are untrue statements), would not confer specific jurisdiction over RTC because Plaintiffs fail to allege facts regarding specific activities of RTC anywhere, much less in Florida, that caused Plaintiffs harm or injury actionable under the TVPRA.

Finally, Plaintiffs still fail to allege how any claim advanced against RTC actually "arose from" RTC's religious activities in Florida, its ownership of the Scientology religious trademarks, or the issuance of licenses for these trademarks or the Advanced Technology to any Scientology religious organization. Plaintiffs'

inability to establish this required nexus compels dismissal. *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 861 (11th Cir. 2013); *see also Schwartzburg v. Knobloch*, 98 So. 3d 173, 182 (Fla. 2d DCA 2012). In fact, RTC's office and its licensing arrangement are not alleged to have, and do not have, any relevance to the injuries Plaintiffs allege they suffered, or any injuries allegedly sustained in Florida. According to Plaintiffs, this case is about alleged trafficking and forced labor, not the licensing, or infringement of a license, of Scientology's marks or other intellectual property owned by RTC. Additionally, Plaintiffs' allegations are roundly refuted by RTC's jurisdictional evidence. (*See generally* McShane Decl.)

### 2. RTC Is Not Subject to Specific Jurisdiction Pursuant to Fla. Stat. § 48.193(1)(a)(2).

A foreign defendant may also be subject to specific jurisdiction in Florida where a claim arises out of a tortious act it is alleged to have committed in Florida. *See* Fla. Stat. § 48.193(1)(a)(2). Plaintiffs' allegations in relation to the tortious acts are still pleaded collectively as to *all Defendants*. Yet, allegations that RTC oversees and directs investigative, policing, and disciplinary measures, (ECF No. 79, ¶ 18), are not only so generalized as to be indeterminable, but lack any specific link to any action taken against any Plaintiff *anywhere,* much less in Florida. Plaintiffs' allegations identifying specific RTC officers or employees—Lurie Belotte and a Javier Martinez—as committing or facilitating the commission of a tortious act toward one or more Plaintiffs fare no better. Apart from these allegations being verifiably untrue, (McShane Decl., ¶¶ 21-23), they remain unconnected in any way to *Florida*. Allegations about Lurie Belotte's conduct, even if true (which they are

not), all occurred on the *Freewinds* vessel in international waters, *not in Florida*. (*See* ECF No.79, ¶¶ 108, 130, 174, 176-78, 184, 186, 191, 193.) Allegations about conduct by a "Javier Martinez," allegedly "a senior RTC officer at Flag Base," (*id.,* ¶ 93), fail because no such person has *ever* been employed by RTC. (McShane Decl., ¶ 23.) Plaintiffs also fail to allege what tortious act Mr. Martinez committed. Plaintiffs fail to carry their burden to establish a *prima facie* showing of specific jurisdiction over RTC. *See Carlyle v. Palm Beach Polo Holdings, Inc.*, 842 So. 2d 1013, 1017 (Fla. 4th DCA 2003).

Plaintiffs' allegations fail for another independent reason. For personal jurisdiction to attach under Section 48.193(1)(a)(2), a plaintiff must plead facts sufficient to demonstrate the defendant committed a "substantial aspect of the alleged tort in Florida." *Musiker v. Projectavision, Inc.*, 960 F. Supp. 292, 296 (S.D. Fla. 1997). The mere *allegation* of a tort does not confer jurisdiction. Where no part of the alleged tortious activity is plausibly alleged to have occurred in Florida, an out-of-state defendant cannot be subject to jurisdiction in Florida. *Freedom Sav. & Loan Ass'n v. Ormandy & Assocs.*, 479 So. 2d 316, 317 (Fla. 5th DCA 1985). Despite having the benefit of amending their complaint to rectify this, Plaintiffs still fail to plead how any of the alleged tortious acts attributable to RTC occurred in Florida. Plaintiffs' additional allegations in the Amended Complaint only establish that any alleged conduct by Lurie Belotte occurred on the *Freewinds*, which never docks at a U.S. port and never enters the territorial waters of the United States. (ECF No. 79, ¶ 41.) This omission is fatal.

Nor can Plaintiffs meet their burden by lumping RTC into an alleged conspiracy designed to make RTC responsible for the acts of every other alleged co-conspirator. As discussed below, and incorporated by reference from FSO's Motion to Dismiss, Plaintiffs' conspiracy claims against RTC are defective as a matter of law. Beyond that, courts will not extend jurisdiction over a foreign defendant based on a conspiracy theory utterly devoid of any factual support. *See Advantus, Corp. v. Sandpiper of California, Inc.*, No. 3:18-CV-1368, 2019 WL 4751725, at *23 (M.D. Fla. Sept. 30, 2019); *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-24363-CIV, 2016 WL 11501768, at *5 (S.D. Fla. Sept. 14, 2016).

For the foregoing reasons, RTC is not subject to specific jurisdiction under Section 48.193(1)(a)(1) or (2) of the Florida long-arm statute.

## C.   Exercising Specific Jurisdiction Over RTC Would Offend Due Process Requirements.

Exercising specific personal jurisdiction over RTC would also offend federal due process requirements. To properly exercise specific jurisdiction, this Court must determine whether: (1) a plaintiff's claims "arise out of or relate to" defendant's contact with the forum; (2) a defendant "purposefully availed" itself of the privilege of conducting activities within the state; and (3) the exercise of personal jurisdiction is fair and reasonable. *See Louis Vuitton*, 736 F.3d at 1355.

### 1. Plaintiffs Fail to Establish that Any Claim Arose from RTC's Alleged Contacts with Florida.

First, Plaintiffs fail to establish "constitutional connexity," that is, a direct causal relationship among the defendant, the forum, and the litigation that is

consistent with due process requirements. Plaintiffs' claims must actually arise from or relate to RTC's conduct in and contacts with *Florida*. *See Fincantieri-Cantieri Navali Italiani S.p.A. v. Yuzwa*, 241 So. 3d 938, 946 (Fla. 3d DCA 2018). The analysis turns on "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Plaintiffs' amended allegations against RTC fail to establish even a remote nexus between RTC and Florida. Plaintiffs still do not, and cannot, specifically allege the precise actions undertaken by RTC in Florida. *Duncanson v. Wine & Canvas Dev., LLC,* No. 6:14–CV–704, 2015 WL 12844947, at *5 (M.D. Fla. Sept. 25, 2015). Plaintiffs do not advance any allegations about acts undertaken by RTC, or its officers *in Florida* that have the constitutional connexity to the harm Plaintiffs allegedly suffered. Moreover, Plaintiffs continue to admit in the Amended Complaint that any and all acts by RTC took place *outside of the United States and Florida*. (*See* ECF No. 79, ¶¶ 39-41, 108, 130, 174, 176-78, 184, 186, 191, 193.) Finally, alleging only that RTC owns and issues licenses for Scientology trademarks in Florida and is responsible for ensuring that all Scientology organizations comply with Scientology policies and mandates does not establish the requisite nexus or causation to the specific acts alleged by Plaintiffs. *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222-23 (11th Cir. 2009).

### 2. Plaintiffs Fail to Establish RTC "Purposefully Availed" Itself of Florida, the Forum State.

Second, Plaintiffs fail to establish that RTC "purposefully availed" itself of the privileges of conducting business in Florida. Plaintiffs' conclusory and generalized

allegations that RTC has offices in Florida and engaged in some form of tortious activity that targeted Plaintiffs—who may or may not have resided in Florida at the time—is insufficient to establish that RTC purposefully availed itself of the privileges of conducting business in Florida. *See, e.g.*, *Gazelles FL, Inc. v. Cupp*, No. 6:18-CV-544, 2018 WL 7364591, at *9–13 (M.D. Fla. Sept. 28, 2018). As made clear from the Amended Complaint and RTC's jurisdictional evidence, all allegations pertaining to specific conduct engaged in by RTC occurred outside of Florida. (ECF No. 79, ¶¶ 108, 130, 174, 176-78, 184, 186, 191, 193). Additionally, as discussed above, RTC has never "availed" itself of the privileges of conducting business in Florida.

### 3. Plaintiffs Fail to Establish That Exercising Jurisdiction Comports with "Fair Play and Substantial Justice."

Third, Plaintiffs must establish that exercising personal jurisdiction over RTC would be fair or reasonable. "'The facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 501 (Fla. 1989) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485 (1985)). Plaintiffs fail to identify when, where, how, or which of RTC's officers, staff, agents, or representatives, if any, committed any act *in Florida*. Plaintiffs' conclusory allegations regarding "forced labor," "trafficking," "peonage," "abuse," "punishment," "imprisonment," or "being spied upon" have no link to Florida and fail to satisfy their burden. Plaintiffs fail to allege a single ultimate fact supporting such allegations against RTC and, thus, fail the third due process requirement.

### D.   RTC Is Not Subject to Personal Jurisdiction Under an Alter Ego Theory or Agency Theory.

Insofar as Plaintiffs seek to establish personal jurisdiction over RTC under an alter ego theory (*see* ECF No. 79, ¶¶ 16-20, 25-28, 31-32, 34), that effort fails. A complaint must allege facts sufficient to pierce the corporate veil of the resident corporation, which only occurs in exceptional circumstances. *See Bellairs v. Mohrmann*, 716 So. 2d 320, 322 (Fla. 2d DCA 1998). To pierce the corporate veil, a plaintiff must show the subsidiary (1) is a mere instrumentality of the parent and (2) engages in improper conduct, *see Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998), such as where the corporation is a mere sham, an instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose, *see Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1117 (Fla. 1984).

Plaintiffs seek to establish jurisdiction over RTC, a non-resident corporation, by alleging Mr. Miscavige, an alleged Florida resident (*i.e.*, the "resident corporation" in this scenario), exercises total control over RTC's management and operations in and from Florida. (ECF No. 79, ¶¶ 16-20.) By this logic, RTC would be a "mere instrumentality" of Mr. Miscavige. To establish jurisdiction under an alter ego theory, RTC, the alleged "mere instrumentality," would need to also be the resident subsidiary corporation whose veil is sought to be pierced. Plaintiffs' logic is nonsensical and would turn the alter ego doctrine on its head. Additionally, RTC is a religious organization and does not have

shareholders (McShane Decl., ¶ 8); *see WH Smith, PLC v. Benages & Assocs., Inc.*, 51 So. 3d 577, 581 (Fla. 3d DCA 2010), and there are no allegations that RTC was not lawfully formed or maintained, which are fatal omissions, *see Lipsig v. Ramlawi*, 760 So. 2d 170, 187 (Fla. 3d DCA 2000); *see also MeterLogic, Inc. v. Copier Sols., Inc.*, 126 F. Supp. 2d 1346, 1358 (S.D. Fla. 2000).

Insofar as Plaintiffs seek to establish personal jurisdiction under an agency theory (*see* ECF No. 79, ¶¶ 16-22, 25-29, 34-37), that theory must also be rejected here just as it was by the Supreme Court in *Daimler*. *See Daimler*, 134 S. Ct. at 760 (rejecting the agency theory) (quoting *Goodyear*, 564 U.S. at 929); *see also Wertheim Jewish Educ. Tr., LLC v. Deutsche Bank AG*, No. 17-CV-60120-KMM, 2017 WL 6313937 at *10-11 (S.D. Fla. Dec. 6, 2017). For all the foregoing reasons, the claims against RTC should be dismissed for lack of personal jurisdiction.

## II.   ALTERNATIVELY, PLAINTIFFS' CLAIMS MUST BE STAYED UNDER RULE 12(B)(1) PENDING ARBITRATION.

Subject to and without waiving RTC's jurisdictional challenge discussed above, RTC joins in and incorporates by reference in its entirety Defendant FSSO's Motion to Compel. (ECF No. 84.) As explained in FSSO's concurrently filed motion, Plaintiffs must arbitrate their claims against FSSO, as required by multiple arbitration agreements Plaintiffs voluntarily executed, which are attached to FSSO's Motion. Those broad agreements apply to any claims against RTC, which is a third-party beneficiary of the arbitration agreements. (ECF No. 84-2 (Weber Decl.) (Exs. A, B, and G), ¶¶ 6.a, 6.d and 9.a (Enrollment Agreements applying to FSSO and "*any* other Scientology church . . ."); *see also id.*, (Exs. E, F), ¶¶ 3.C, 4.A,

and 6.B (Baxters' Departure Agreements applying to "any problem or dispute" with "*any* Scientology Entity" and specifically identifying "Religious Technology Center" as a "church or mission of the Scientology religion" covered by the Agreement); *see also id.*, (Ex. H, I), ¶¶ 2.A, 5.C, 5.E, 5.K, 6.A (Paris' General Release Agreements applying to disputes with FSSO or "*any* other Scientology church" and specifically identifying RTC as an entity Paris released).) RTC can, and hereby does, enforce the arbitration agreements. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020); *Zac Smith & Co. v. Moonspinner Condo. Ass'n, Inc.*, 472 So. 2d 1324, 1324 (Fla. 1st DCA 1985). The Court should stay this case and order the dispute to arbitration.

### III.   ALTERNATIVELY, PLAINTIFFS' CLAIMS MUST BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM.

Plaintiffs have failed to cure the pervasive deficiencies that RTC addressed in its original Motion to Dismiss the TVPRA claims. A complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard applies only to factual allegations, not asserted legal theories. *Johnson v. City of Shelby*, 574 U.S. 10 (2014). Thus, the court may reject conclusory allegations not rooted in specific facts, as "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

**A.      Plaintiffs' Claims Fail Because the TVPRA Does Not Have Retroactive or Extraterritorial Application.**

Subject to and without waiving RTC's jurisdictional challenge discussed above, or RTC's arbitration rights through the incorporated Motion to Compel Arbitration, RTC further joins in and incorporates by reference in its entirety herein Defendant FSO's Motion to Dismiss under Rule 12(b)(6) as to all challenges to the retroactive and extraterritorial application of the TVPRA as well as to Plaintiff Paris' time-barred claims. (*See* ECF No. 85.) As with the original Complaint, Plaintiffs further fail to allege any facts sufficient to state any claims *against RTC* specifically for violating the TVPRA, whether as a direct, attempted, or beneficiary violation (*see* Counts I, III, and V), or as part of a conspiracy (*see* Counts II, IV and VI). Notably, despite Plaintiffs' opportunity to amend their pleading after previewing RTC's initial Motion to Dismiss, Plaintiffs, again advance only conclusory allegations collectively against all Defendants in support of a rote recitation of the elements of each alleged TVPRA provision violated. In addition to being an impermissible shotgun pleading, the Amended Complaint must be dismissed with prejudice because Plaintiffs have failed to, nor can they, identify any acts or omissions by RTC actionable under the TVPRA.

**B.      Plaintiffs Fail to Plead Facts Establishing RTC's Role in Any Alleged TVPRA Violation.**

Plaintiffs purport to state claims under 18 U.S.C. §§ 1581, 1589, 1590, and 1594(b), and 1595(a). To state a claim under the TVPRA, a complaint must plead plausible allegations that: "(1) the person or entity must knowingly benefit,

financially or by receiving anything of value, (2) from participating in a venture, (3) that the person knew or should have known was engaged in an act in violation of this chapter." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 152-53 (E.D.N.Y. 2020) (internal quotations/citations omitted). Counts I, III, and V fail.[2]

As to Count I alleging "forced labor," a violation of Section 1589 requires proof that a party has forced or compelled another party to perform labor or provide services by means of force, physical restraint, serious harm, abuse, or threats thereof. 18 U.S.C. § 1589(a). As to Count III alleging "trafficking with respect to forced labor," a violation of Section 1590 "generally requires some conduct that occurs abroad." *Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 454 (E.D. Va. 2015). As to Count V alleging peonage, a violation of Section 1581 requires proof that a party has subjected another party to "involuntary servitude," that is, providing services in order to pay off an existing debt. *See Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 737 (11th Cir. 2018) (quoting *Taylor v. Georgia*, 315 U.S. 25, 29 (1942)). Plaintiffs allege "Defendants" collectively directly violated the TVPRA, attempted to do so, and are also liable under a "beneficiary" theory. Yet, Plaintiffs fail to plead any facts attributing liability to RTC under any theory.

---

[2] The Amended Complaint contains a significant number of colorful allegations about harassment and intimidation by unidentified and unidentifiable actors that have no relevance to any TVPRA violation and have been included for the sole purpose of denigrating and casting unfairly prejudicial aspersions on RTC and the other defendants. Notably, such alleged harassment and intimidation post-dates each Plaintiff's departure from Scientology. (*See, e.g.,* ECF 79, ¶¶ 140-144, 200-201, 204-212.) These allegations should be stricken from the Amended Complaint.

Plaintiffs advance generalized allegations about RTC's ownership of the Scientology marks and licenses but do not (and cannot) allege how they contribute to a TVPRA violation. (*See* ECF No.79, ¶ 18.) Moreover, Plaintiffs conveniently ignore that there can be no "labor," much less "forced labor," because RTC is a religious organization within Scientology whose staff consists of dedicated members of the Church. (*See* McShane Decl., ¶¶ 4, 5.) RTC also never employed Plaintiffs; they were members of the Sea Org, (McShane Decl., ¶ 22), volunteers who dedicate their lives to ministering the Scientology religion through various activities. Plaintiffs' speculative allegations about misconduct by RTC employees are not only false but fail to state claims for TVPRA violations.

Specifically, Plaintiffs allege that Lurie Belotte aboard *Freewinds* purportedly received a report of Laura Baxter's pregnancy, instructed Gawain Baxter to make calls to promote Scientology teachings, confined Paris to the engine room following her misconduct, denied Paris' requests to challenge her disciplinary actions before a review board, and disapproved of Paris' romantic relationship. (ECF No. 79, ¶¶ 42, 108, 129, 174, 176-78, 184, 186, 191, 193.) Plaintiffs also allege that an individual named "Javier Martinez," at Flag Base, who has never been employed by RTC, (*see* McShane Decl., ¶ 23), received a letter from Gawain Baxter seeking permission to leave the Sea Org, (*id.*, ¶ 93). Such threadbare allegations do not support a claim for "forced labor," "trafficking," or "peonage."

### 1. Plaintiffs Fail to Plead Facts that RTC Directly Violated the TVPRA as Alleged in Counts I, III and V.

Plaintiffs allege RTC "directly" violated the TVPRA, (*see* ECF No. 79, ¶¶ 216, 230, 245), but by conflating all Defendants together, fail to identify any specific conduct by RTC that forms the basis of these claims. Plaintiffs allege only that RTC operates as "the principal management, security, and enforcement operation of Scientology" and that it "monitored members' behavior, and handled matters concerning discipline and punishment of members throughout all Scientology." (*Id.,* ¶ 18.) Plaintiffs advance no allegations about RTC's *specific* benefit and knowledge. Instead, Plaintiffs merely recite—virtually verbatim—the TVPRA's statutory elements in Counts I, III, and V (*compare id.*, ¶¶ 217, 231, 246 *with* 18 U.S.C. § 1595(a)), which must be rejected. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).[3] Counts I, III, and V fail.

### 2. Plaintiffs Fail to Plead Facts That RTC "Attempted" To Violate the TVPRA as Alleged in Counts I, III and V.

To prevail on a claim of "attempt" under the TVPRA, Plaintiff must plausibly allege that RTC "(1) knowingly intended to [violate the TVPRA] and (2) took a substantial step toward committing that crime." *See United States v. Cooper*, 926 F.3d 718, 735 (11th Cir. 2019) (*citing United States v. Monroe*, 866 F.2d 1357, 1366 (11th Cir. 1989)). A substantial step must be strongly corroborative of the firmness

---

[3] The Amended Complaint also incorporates all general allegations into each claim (*see* ECF No. 79, ¶¶ 214, 221, 228, 235, 242, 250), which is improper. *See Rosado-Cabrera v. Pfizer, Inc.,* No. 8:20-CV-2008-TPB-JSS, 2021 WL 662220, at *2 (M.D. Fla. Feb. 19, 2021); *see also Worldspan Marine Inc. v. Comerica Bank*, No. 20-11646, 2021 WL 5882006, at *2 (11th Cir. Dec. 13, 2021).

of the defendant's criminal intent. *Monroe*, 866 F.2d at 1366. The "mere intent to violate a federal criminal statute is not punishable as an attempt unless it is also accompanied by significant conduct." *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007). It is unclear which "facts" in the Amended Complaint form the basis of Plaintiffs' claim for "attempted forced labor," "attempted trafficking," and "attempted peonage." Plaintiffs fail to plead any facts suggesting that RTC knowingly intended to violate the TVPRA, or that it even took a substantial step towards accomplishing the violation. Rather, Counts I, III and V merely parrot the statutory language and claims that every Defendant "attempted" to violate every cited provision. (ECF No. 79, ¶¶ 218, 232, 274.) Thus, Counts I, III, and V must be dismissed.[4] *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021).

### 3. *Plaintiffs Fail to Plead Facts That RTC Violated the TVPRA Under a Beneficiary Liability Theory.*

Plaintiffs' *beneficiary* claims under 18 U.S.C. § 1595(a), (ECF No.79 ¶¶ 217, 231, 246), fail. "[T]o state a beneficiary claim under section 1595(a), a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714,

---

[4] Plaintiffs improperly incorporate two separate claims for "forced labor" and "attempted forced labor" in Count I, "trafficking" and "attempted trafficking" in Count III, and "peonage" and "attempted peonage" in Count V. On this ground alone, Counts I, III, and V should be dismissed as an improper shotgun pleading. *See Weiland*, 792 F.3d at 1323.

726 (11th Cir. 2021). In *Red Roof*, the Eleventh Circuit rejected Plaintiffs' allegations that hotel chain franchisors were liable under TVPRA. In particular, while evidence suggested the hotel franchisors may have financially benefited for licensing their brands to hotels where trafficking allegedly occurred and received revenues from those licensing agreements, *id.* at 719, 720, 726, there was no evidence presented that the franchisors actually "participated in a common undertaking involving risk or profit that violated the TVPRA." *Id.* As the Court explained, "observing something is not the same as participating in it," and thus the "section 1595(a) beneficiary claims against the franchisors fail." *Id.*

The Amended Complaint advances no allegation identifying any benefit obtained by RTC. Nevertheless, Plaintiffs' allegations that RTC collects licensing fees in relation to its ownership, administration, and enforcement of its intellectual property rights, including the Scientology trademarks and rights in "advanced tech," are insufficient to rise to TVPRA liability. (ECF No. 79, ¶ 18.) Even if fully true, licensing agreements alone are not sufficient to give rise to TVPRA liability. *Red Roof*, 21 F.4th at 726. The licensing agreement alleged in the present matter is even more remote than the licensing agreements involved in *Red Roof* where the franchisors' royalties (*i.e.*, room revenues) bore some relation to the alleged trafficking. Plaintiffs have not alleged any such connection between the alleged licensing fees RTC receives from the intellectual property and the allegations of coerced labor. Moreover, Plaintiffs' conclusory allegation that RTC "oversaw and directed the management of Scientology-affiliated entities and organizations,

including Defendant entities" fails to support beneficiary liability. (ECF No. 79, ¶ 18.) At bottom, Plaintiffs' allegations do not show a "common undertaking involving risk or profit that violated the TVPRA." *Red Roof*, 21 F.4th at 727. Accordingly, Counts I, III, and V must be dismissed.

### 4. Plaintiffs Fail to Plead Facts That RTC Engaged in a Conspiracy to Obtain Forced Labor, Traffic with Respect to Forced Labor, or Commit Peonage.

Counts II, IV, and VI allege "Defendants" engaged in a conspiracy to obtain forced labor, to traffic with respect to forced labor, and to commit peonage in violation of the TVPRA. Because Plaintiffs' liability theory is predicated on an alter ego or agency theory and undifferentiated group pleading, the conspiracy claims are barred by the intra-corporate conspiracy doctrine. This doctrine recognizes that the acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. *See McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). A corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves. *Id.* Under basic agency principles, the acts of a corporation's agents are considered to be those of a single legal actor. *Id.* Therefore, just as it is not legally possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself. *Id.*

The Amended Complaint expressly alleges that Defendants are all related entities in a conspiracy to engage in trafficking or forced labor. Even if true,

Defendants, including RTC, would, by Plaintiffs' own logic, be incapable of conspiring with each other. *See Williams v. Michelin N. Am., Inc.*, No. 6:04-CV-815ORL31DAB, 2005 WL 2708308, at *2 (M.D. Fla. Oct. 21, 2005). Plaintiffs' conspiracy claim requires an agreement between two or more parties. *See Kurnow v. Abbott*, 114 So. 3d 1099, 1102 (Fla. 1st DCA 2013). Not only do Plaintiffs fail to plead any facts sufficient to establish the existence of an agreement of any kind—the *sine qua non* of a conspiracy—but they further seek to treat all entity Defendants as a single entity. (*See, e.g.*, ECF No. 79, ¶¶ 16-22, 25, 27-29.) Yet, a single entity cannot conspire with itself, nor can an agent conspire with its principal. *See McAndrew*, 206 F.3d at 1036. Counts II, IV, and VI fail.

## <u>CONCLUSION</u>

For the foregoing reasons, RTC respectfully requests that the Court dismiss with prejudice, under the doctrine of futility, Plaintiffs' Complaint for lack of personal jurisdiction under Rule 12(b)(2), or alternatively stay the case and compel arbitration under Rule 12(b)(1), or alternatively dismiss Plaintiffs' claims against RTC under Rule 12(b)(6).

## <u>LOCAL RULE 3.01(G) CERTIFICATION</u>

The undersigned counsel hereby certify that the undersigned conferred with Plaintiffs' counsel who do not agree to the relief sought in the instant Motion. Counsel further certifies that this Motion is brought in good faith and not for any improper purpose.

Dated: August 23, 2022          **DLA PIPER LLP (US)**

/s/*Christopher Oprison*

Christopher G. Oprison, Esq.
Florida Bar No. 122080
chris.oprison@dlapiper.com
Janelly Crespo, Esq.
Florida Bar No. 124073
janelly.crespo@dlapiper.com
200 S. Biscayne Blvd., Suite 2500
Miami, Florida 33131
Tel: 305.423.8522
Fax: 305.657.6366

*Attorneys for Defendant*
*Religious Technology Center, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 23, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/*Christopher Oprison*

Christopher G. Oprison