## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GAWAIN BAXTER, LAURA BAXTER
and VALESKA PARIS,

      Plaintiffs,

v.                                                                  Case No.: 8:22-cv-00986-TPB-JSS

DAVID MISCAVIGE; CHURCH OF
SCIENTOLOGY INTERNATIONAL, INC.;
RELIGIOUS TECHNOLOGY CENTER, INC.;
IAS ADMINISTRATIONS, INC.; CHURCH
OF SCIENTOLOGY FLAG SERVICE
ORGANIZATION, INC.; CHURCH OF
SCIENTOLOGY FLAG SHIP SERVICE
ORGANIZATION, INC.,

      Defendants.

_____/

## DEFENDANT CHURCH OF SCIENTOLOGY INTERNATIONAL, INC.'S MOTION TO DISMISS OR COMPEL ARBITRATION

COMES NOW Defendant Church of Scientology International, Inc. ("CSI"), by and through undersigned counsel, moves this Honorable Court (a) to dismiss all claims asserted against it in the First Amended Complaint ("FAC") under Fed. R. Civ. P. 12(b)(2), (b) to compel arbitration under 9 U.S.C. § 1 *et seq.*, or (c) to dismiss all claims asserted against it in the FAC under Fed. R. Civ. P. 12(b)(6). In support, CSI states:

1

## **INTRODUCTION**

For over a decade of their adulthood, Plaintiffs voluntarily served as ministers of a Scientology religious order on the *Freewinds*, a ship that never docked in the United States. They do not allege that Defendant CSI ever employed them, ever operated the ship, ever made any representations to them about life on the ship, or ever interacted with them in any way. The FAC contains no allegations supporting maintaining a lawsuit against CSI on the merits or within the Court's jurisdiction.

The motion to compel arbitration of Defendant Flag Ship Service Organization ("FSSO") makes clear that these former Scientology ministers must arbitrate their claims, as they agreed in the many unequivocal arbitration agreements they executed as an express condition of their service to their church. (ECF No. 84.) The motion to dismiss of Flag Service Organization ("FSO") shows that, even if the Court does not enforce the arbitration agreements, Plaintiffs' claims fail for reasons common to all named defendants. (ECF No. 85.)

CSI joins in those motions. It also seeks dismissal for two more reasons. First, the Court lacks personal jurisdiction over CSI because Plaintiffs allege negligible contact between CSI and Florida and no nexus between CSI's supposed activities in Florida and their human trafficking claims. Second, Plaintiffs plead no *facts* supporting their claims against CSI. Plaintiffs rely on

CSI's supposed licensing activities and "control" over a trust that owns the company that owns the *Freewinds* to impose liability, but these remote allegations are not enough to state a claim under any theory of liability. In short, Plaintiffs assert meritless claims against CSI in the wrong forum. The Court should either dismiss CSI for lack of personal jurisdiction, compel arbitration of Plaintiffs' claims against CSI or, dismiss the claims against CSI for failure to state a claim for relief.[1]

## FACTUAL BACKGROUND

### A.   Plaintiffs' Contacts With Florida

All three Plaintiffs were born into Scientology families and raised and educated in the religion. (FAC ¶¶ 13-15, 88-91, 112, 144, 148.) Although Gawain Baxter spent his childhood in Florida, Plaintiff Valeska Paris did not live in Florida until her teens (starting in about 1992), while Plaintiff Laura Baxter never lived in the state. (*Id.* ¶¶ 13-15, 88-95, 112-115, 117-18, 134-36, 155.) After becoming ministers in the Sea Organization ("Sea Org")—the highest religious order within the Church of Scientology—each Plaintiff traveled to Curaçao to board the *Freewinds*, where they continued to serve in the Sea Org for several years. (*Id.* ¶¶ 92-95, 113-16, 155-56, 163.) The Baxters allege no further contact with Florida after boarding the *Freewinds* in or

---

[1] In the event the Court considers and denies the Motion to Compel Arbitration, CSI reserves its right to seek interlocutory appeal of such order before the Court considers the Motion to Dismiss under Rule 12(b)(6).

around 1998 (G. Baxter) (*see* FAC ¶¶ 13, 93, 95), and in or around 2002 (L. Baxter) (*see id.* ¶¶ 116-18, 120). Valeska Paris alleges no material contact with Florida after boarding the *Freewinds* in or around 1996 (*see id.* ¶¶ 15, 163), but does allege that after leaving the Sea Org, she traveled to Florida to visit her mother, (FAC ¶ 200). The FAC alleges that during Plaintiffs' time aboard the *Freewinds*, it never entered the United States' territorial waters or docked at a domestic port and that Plaintiffs now live in Australia. (*Id.* ¶¶ 13-15, 41.)

## B.   CSI's Alleged Conduct and Contacts With Florida

CSI is a California nonprofit corporation based in Los Angeles. (FAC ¶ 19; *see also* Declaration of Lynn R. Farny, attached hereto as Exhibit 1, ¶ 4.) CSI is not registered to do business in Florida and has no agent for service of process in the state. (*Id.* ¶¶ 9-12.) It operates no business and has no office and no employees in Florida. (*Id.*)

CSI is responsible for the ecclesiastical dissemination, propagation and defense of the Scientology religion. (*Id.* ¶ 7.) CSI does not own or operate any individual Church of Scientology. (*Id.*) Rather, each church—including each entity defendant named in this suit—is separately incorporated, with its own officers and directors. (*Id.*) The Sea Org, in contrast, is an unincorporated religious order of persons who have committed their lives to advancing the Scientology religion. (*Id.* ¶ 8; *see also* ECF No. 84-1 (Heller Decl.) ¶¶ 15-21.)

Although some Sea Org members work for CSI, most are not CSI staff; Plaintiffs were never CSI staff. (Farny Decl. ¶¶ 8, 15.)

Plaintiffs allege no CSI involvement in their alleged trafficking. Instead, they allege that CSI licenses "Scientology IP, including trademarks and other IP" to "Scientology-affiliated entities," including FSO. (FAC ¶¶ 19-20.) They also allege that CSI "controls . . . Flag Ship Trust, which among other things owns the company that owns the Scientology ship, *Freewinds*." (*Id.* ¶ 19.) The FAC does not allege whether CSI is a trustee or beneficiary of these alleged trusts or provide any facts supporting its allegation that CSI "controls" them. Plaintiffs allege that CSI hosts an annual gala at Flag Base, a facility "owned and/or managed by Defendant FSO," and stores documents there. (*Id.* ¶ 20.)

Plaintiffs generically allege that CSI "conducts substantial business" in Florida or maintains a "substantial operational presence" in Florida through the Office of Special Affairs ("OSA"). (*Id.* ¶ 19.) Yet, the FAC does not define "operational presence" nor elaborate upon what "substantial business" CSI allegedly conducts. Nor could it. CSI does not conduct business or "maintain an operational presence" in Florida, and has no office, officers, employees, representatives, or agents in Florida. (Farny Decl. ¶¶ 9-12.)

## ARGUMENT AND MEMORANDUM OF LAW

### I.   This Court Lacks Personal Jurisdiction Over CSI

The exercise of personal jurisdiction must be appropriate under ***both*** (1)

the Florida long-arm statute and (2) the Due Process Clause. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015). "There are two types of personal jurisdiction – general and specific." *Erwin v. Ford Motor Co.*, No. 8:16-cv-01322-T-24 AEP, 2016 WL 7655398, at *4 (M.D. Fla. Aug. 31, 2016). General jurisdiction is jurisdiction over "any claims against a defendant, whether or not they involve the defendant's activities in Florida." *Id.* Specific jurisdiction is "jurisdiction over suits that arise out of or relate to a defendant's contacts with [the forum state]." *Carmouche*, 780 F.3d at 1204.

A plaintiff bears the initial burden of establishing a *prima facie* basis for jurisdiction over a nonresident defendant, *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013), through factual allegations pleaded "with reasonable particularity" establishing that sufficient contacts between the party and the forum state exist, *Organic Mattresses, Inc. v. Envtl. Res. Outlet, Inc.*, No. 17-21905, 2017 WL 5665354, at *2 (S.D. Fla. Oct. 6, 2017); *see also Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). If a plaintiff satisfies its burden, the burden shifts to the defendant to refute the jurisdictional allegations by an affidavit or other sworn proof showing such allegations are erroneous, thereby shifting the burden back to the plaintiff to produce evidence supporting jurisdiction, if it can do so. *Id.*

### A. CSI Is Not Subject to General Jurisdiction In Florida

For general jurisdictional purposes, Florida's long-arm statute "extends

to the limits on personal jurisdiction imposed by the Due Process Clause," and therefore, the Court need only determine if the Due Process Clause permits the exercise of general jurisdiction. *Carmouche*, 789 F.3d at 1204. Under the due process clause, a foreign corporation may only be subjected to general jurisdiction "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018) (citing *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The 'paradigm all-purpose forums' in which a corporation is at home are the corporation's place of incorporation and its principal place of business." *Id.* at 1317 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Only in an "exceptional case" will a corporation's operations in a forum other than its place of incorporation or its principal place of business be so substantial as to render it at home in that forum. *Daimler*, 571 U.S. at 761, n.19. This requires the "activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business," *Carmouche*, 789 F.3d at 1205, such that the foreign corporation is "'comparable to a domestic enterprise in [Florida].'" *Erwin*, 2016 WL 7655398, at *11 (quoting *Daimler*, 134 S.Ct. at 758, n.11). "'[S]ubstantial, continuous, and systematic' business is insufficient to make a company 'at home'" and

subject to general jurisdiction. *Waite*, 901 F.3d at 1381.

Here, the "paradigm all-purpose forums" do not apply. CSI is a nonprofit religious corporation that is incorporated in California and has its principal place of business in California. (FAC ¶ 19; Farny Decl. ¶ 4.) And, this is not the "exceptional case" that would permit this Court to find CSI "at home" in Florida. Plaintiffs generically allege that CSI "conducts substantial business" and maintains a "substantial operational presence" in Florida through OSA. (FAC ¶ 19.) Yet, the FAC does not define "operational presence" nor describe what "substantial business" CSI allegedly conducts. Nor could it because the allegations are not accurate. CSI is not registered to and does not conduct business in Florida, has no office in Florida, and has no officers, employees, representatives, or agents in Florida. (Farny Decl. ¶¶ 9-12.)

Where the FAC makes particular allegations concerning CSI's Florida contacts, it fares no better. The FAC alleges only that CSI licenses Scientology intellectual property to FSO and other "Scientology-affiliated entities"; controls a trust that "owns the company that owns" the *Freewinds*; and stores documents in a warehouse and hosts an annual gala in Florida in facilities owned or controlled by Defendant FSO. (FAC ¶¶ 19-20.) This limited conduct does not demonstrate that CSI is "at home" in the state and therefore subject to general jurisdiction. Courts have rejected the exercise of general jurisdiction

8

based on significantly greater contacts with Florida than are present here. *See, e.g., Erwin*, 2016 WL 7655398, at \*3, \*9-\*12 (Ford's sale of thousands of vehicles to dealerships to be sold in Florida, development testing of 75 global market prototypes in Florida, presence of 54 engineers and technicians in Florida, participation in litigation and extensive lobbying activities in Florida, agents and offices of Ford's wholly-owned subsidiary in Florida, and maintenance of a website assisting customers in locating inventory and dealerships in Florida insufficient to confer general jurisdiction); *see also Carmouche*, 789 F.3d at 1204-05.

Plaintiffs also allege that Defendant David Miscavige "controls" or "directs the management" of CSI from Florida. (FAC ¶¶ 16-17, 19, 31.) This allegation is false. CSI's principal place of business is Los Angeles, California. (Farny Decl. ¶ 4.) CSI's activities are managed and directed from California, where all of its directors and officers reside, and where over 99 percent of its staff members are located. CSI has no staff in Florida. (*Id.* ¶¶ 4, 9.) Furthermore, Mr. Miscavige is not an employee, officer, or director of CSI. (*Id.* ¶ 13.) Even if he were, his alleged presence in Florida is immaterial to general jurisdiction. *See Gilmer v. Bureau Veritas Comm. & Trade, Inc.*, No. 0:20-cv-61408, 2021 WL 3772137, at \*3 (S.D. Fla. Apr. 20, 2021) (that corporate leadership of foreign defendant was based in Florida was insufficient to confer

general jurisdiction over corporate defendant).

### B. CSI Is Not Subject to Specific Jurisdiction In This Case

The exercise of specific jurisdiction must satisfy the requirements of *both* Florida's long-arm statute and the Due Process Clause. Here, the exercise of specific jurisdiction over CSI would not comport with either.

### 1. CSI Is Not Subject to Specific Jurisdiction Under Florida's Long-Arm Statute

To establish specific jurisdiction under Florida's long-arm statute, a plaintiff must allege facts establishing that (1) a defendant did one of the nine enumerated acts in the statute within Florida and (2) the cause of action "arose from" that enumerated act. *Iglesias v. Pernod Ricard*, No. 20-cv-20157-KMW, 2020 WL 13367465, at *7 (S.D. Fla. Aug. 17, 2020); *Hinkle v. Cirrus Design Corp.*, 775 Fed.Appx. 545, 547-48 (11th Cir. May 23, 2019); Fla. Stat. Ann. § 48.193(1)(a)(1). Plaintiffs allege that Defendants are subject to "specific personal jurisdiction," (FAC ¶ 6), but they do not identify the ostensibly applicable provisions of the statute or any facts supporting jurisdiction. Nonetheless, CSI assumes Plaintiffs may seek to establish specific jurisdiction under either Section 48.193(1)(a)(1) or (2), and addresses each in turn.

### a. CSI Is Not Subject to Jurisdiction Under Fla. Stat. Ann. § 48.193(1)(a)(1)

A foreign defendant may be subject to specific jurisdiction for any claim *arising from* the defendant "[o]perating, conducting, engaging in, or carrying

on a business or business venture in this state or having an office or agency in this state." Fla. Stat. Ann. § 48.193(1)(a)(1). Plaintiffs do not and cannot allege facts supporting specific jurisdiction under Section 48.193(1)(a)(1) because CSI conducts no business in Florida, is not registered to do business in Florida, and has no office, officers, employees, representatives, or agents in Florida. (Farny Decl. ¶¶ 9-12); *see Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (listing relevant factors). The FAC's conclusory allegations to the contrary, (*see* FAC ¶ 19), are inaccurate, (Farny Decl. ¶¶ 9-12), and legally insufficient, *see Igelsias*, 2020 WL 13367465, at *7-*8.

Plaintiffs' allegations independently fail to establish specific jurisdiction because Plaintiffs' causes of action do not arise from CSI's negligible activities in Florida. *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 861 (11th Cir. 2013). Plaintiffs allege no nexus between their claims for trafficking and any conduct by CSI in Florida, and therefore, CSI's negligible activity cannot serve as the basis for specific jurisdiction. *See Hinkle*, 775 Fed.Appx. at 549.

### b. CSI Is Not Subject to Jurisdiction Under Fla. Stat. Ann. § 48.193(1)(a)(2)

A foreign defendant may be subject to specific jurisdiction for any claim *arising from* the defendant "[c]omitting a tortious act within this state." Fla. Stat. Ann. § 48.193(1)(a)(2). For personal jurisdiction to attach under Section

48.193(1)(a)(2), a plaintiff must plead facts showing the defendant committed a "substantial aspect of the alleged tort in Florida." *Musiker v. Projectavision, Inc.*, 960 F. Supp. 292, 296 (S.D. Fla. 1997); *Freedom Sav. & Loan Ass'n v. Ormandy & Assocs.*, 479 So. 2d 316, 317 (Fla. 5th DCA 1985).

Plaintiffs have not alleged any conduct by CSI in Florida that could constitute "a tortious act within this state" from which their claims arise. *See* Fla. Stat. Ann. § 48.193(1)(a)(2). The FAC never alleges that any CSI officer, director, staff member, or employee engaged in any conduct against Plaintiffs – in Florida or otherwise.[2] Furthermore, none of the post-2002 conduct happened in Florida; all of it allegedly occurred on the *Freewinds*, which never entered United States waters (FAC ¶¶ 41, 95-111, 116, 118-132), or in Australia (FAC ¶¶ 136-143, 178-197). This matters because, as shown in FSO's Motion to Dismiss, there was no private cause of action under the TVPRA before 2002.[3] *Velez v. Sanchez*, 693 F.3d 308, 324 (2d Cir. 2012); *see also*

---

[2] The FAC attributes certain conduct to "OSA" and "CMO" staff members. (*See, e.g.*, FAC ¶¶ 39, 92, 130, 152, 162, 200.) "OSA" and "CMO" are not corporations; they are departments within separately incorporated Churches of Scientology. As such, a staff member assigned to the OSA or CMO department of an individual Church of Scientology is a staff member of the specific Church corporation in which that OSA or CMO department is contained. For example, an "OSA" staff member in FSO's OSA department is a staff member of FSO. (Farny Decl. ¶ 12.) The FAC identifies individuals as affiliated with "OSA" or "CMO" without specifying with which Church corporation the individual is affiliated. (*See, e.g.*, FAC ¶¶ 39, 92, 130, 152, 162, 200.) CSI's OSA and CMO staff had no interaction with the Baxters or Paris in Florida or anywhere. (Farny Decl. ¶ 12.) To the extent the FAC suggests or alleges otherwise (*see, e.g.*, *id.* ¶¶ 19, 29, 197), such allegations are not accurate.

[3] The location of where the allegedly tortious conduct occurred governs in analyzing liability under TVPRA claims, and not the location of the Defendants. *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 197–99 (5th Cir. 2017), (citing *RJR Nabisco, Inc. v. European Community*, 136 S.Ct. 2090, 2101 (2016) (if that conduct "occurred in a foreign country, then the case involves an impermissible

*Ditullio v. Boehm*, 662 F.3d 1091, 1099 (9th Cir. 2011) (TVPRA "cannot be applied retroactively to create liability for conduct that occurred before December 19, 2003"). In addition, Paris' allegation that she was surveilled during a trip to Florida after leaving the Sea Org, (*id.* ¶¶ 200-201), is not a basis of her trafficking claims. Plaintiffs fail to carry their jurisdictional burden. *See Organic Mattresses, Inc.*, 2017 WL 5665354, at *2.

Nor can Plaintiffs meet their burden by lumping CSI into an alleged conspiracy designed to make CSI responsible for the acts of every other alleged co-conspirator. As discussed below, and incorporated by reference from FSO's Motion to Dismiss, Plaintiffs' conspiracy claims against CSI are defective as a matter of law. Courts will not extend jurisdiction over a foreign defendant based on a conspiracy theory devoid of any factual support. *See Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-24363-CIV, 2016 WL 11501768, at *5 (S.D. Fla. Sept. 14, 2016); *Washington v. Florida Dept. of Children & Families*, 595 F.Supp.2d 1291, 1294 (M.D. Fla. 2009).

CSI is not subject to specific jurisdiction under the long-arm statute.

## 2. The Due Process Clause Prohibits the Exercise of Specific Jurisdiction Over CSI In This Case

In addition to failing to satisfy the Florida's long-arm statute, specific

---

extraterritorial application regardless of any other conduct that occurred in U.S. territory.")).

jurisdiction over CSI independently fails because the Due Process Clause prohibits it. To exercise specific personal jurisdiction, due process requires the Court to determine whether: (1) the plaintiff's claims arise out of or relate to the defendant's contacts with the forum; (2) the nonresident defendant purposefully availed itself of the privilege of conducting activities within the forum state; *and* (3) the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Louis Vuitton*, 736 F.3d at 1355 (quotes omitted). All three requirements must be satisfied.[4]

As to the first element, "[a] claim arises out of or relates to the defendant's contact with the forum state if the contact is a 'but-for cause' of the claim, and the claim is a 'foreseeable consequence' of the contact." *Erwin*, 2016 WL 7655398, at *7; *Waite*, 901 F.3d at 1315. As explained above, CSI's alleged contacts have *no connection* to Plaintiffs' claims for forced labor and trafficking, which involve *nobody* from CSI in Florida and did not even happen in Florida. Accordingly, specific jurisdiction cannot be exercised. *See Waite*, 901 F.3d at 1315 (no specific jurisdiction where the defendant's alleged contacts "have nothing to with the torts allegedly committed"); *Erwin*, 2016 WL 7655398, at *7-*8.

The second requirement turns on whether the defendant purposefully

---

[4] The Court need not address the third element because Plaintiffs cannot satisfy the first two. *Louis Vuitton*, 736 F.3d at 1355.

14

availed itself "of the privilege of conducting activities within the forum State" by deliberately establishing contacts and directing its activities toward the forum. *Ascend Performance Materials Operations, LLC v. Concepts, NREC, LLC*, No. 3:18-cv-243-MCR-CJK, 2019 WL 13159877, at *4 (N.D. Fla. Feb. 21, 2019); *Louis Vuitton*, 736 F.3d at 1355. CSI does not conduct business in Florida (Farny Decl. ¶¶ 9-12), and its purported licensing relationship with FSO is not enough to establish jurisdiction. *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("receipt of licensing revenue from an entity in the forum state is not enough to establish minimum contacts with that state").

### C. Alter Ego or Agency Principles Do Not Create Jurisdiction

Insofar as Plaintiffs seek to establish jurisdiction under an alter ego theory, the effort fails. Under the alter ego theory, a nonresident defendant may be subjected to jurisdiction if the plaintiff can meet the alter ego test and pierce the corporate veil of the resident corporation.[5] *Bellairs v. Mohrmann*, 716 So.2d 320, 322 (Fla. 2d DCA 1998); *WH Smith, PLC v. Benages & Assoc., Inc.*, 51 So.3d 577, 581 (Fla. 3d DCA 2010). To pierce the corporate veil, the plaintiff must establish *both* (1) that the corporation is a "mere instrumentality" or alter ego of the other; and (2) that there was "improper

---

[5] The same burden shifting analysis applicable to personal jurisdiction generally, *see* Section I, *supra*, applies to the alter ego jurisdictional analysis, *see WH Smith*, 51 So.3d at 581-82.

conduct" in the formation or use of the corporation. *WH Smith*, 51 So.3d at 581. Evidence that the one entity "made all significant decisions" for the other is insufficient to show it is a "mere instrumentality." *Id.* Instead, it must be shown that the corporation was a "sham" or "shell." *Id.*; *see also MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F.Supp.2d 1346, 1358 (S.D. Fla. 2000). Improper conduct requires a showing that the corporation was organized or used for some illegal, fraudulent, or other unjust purpose. *See Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984).

The FAC does not allege any facts demonstrating that any defendant is a "mere instrumentality" of CSI or that CSI is a "mere instrumentality" of any other defendant. Quite the opposite. The FAC alleges separate corporate statuses, property ownership, and independent operations for each defendant. (*See, e.g.*, FAC ¶¶ 18-22.) Nor do the FAC's allegations of alleged control by Mr. Miscavige create alter ego jurisdiction over CSI. Allegations of control by another are insufficient to establish alter ego jurisdiction where the corporation is not a "sham" or "shell," and separate legal status is maintained. *MeterLogic*, 126 F.Supp.2d at 1358; *WH Smith*, 51 So.3d at 583. The FAC also does not – and could not – allege that any defendant was not lawfully formed or maintained or organized for an illegal purpose. Therefore, CSI is not subject to jurisdiction under an alter ego theory.

Insofar as Plaintiffs seek to establish personal jurisdiction under an agency theory, that theory must also be rejected here just as it was by the Supreme Court in *Daimler*. *See Daimler*, 134 S. Ct. at 760 (rejecting the agency theory, finding that it "appears to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the sprawling view of general jurisdiction . . . rejected in Goodyear.") (quoting *Goodyear*, 564 U.S. at 929); *see also Wertheim Jewish Educ. Tr., LLC v. Deutsche Bank AG*, No. 17-cv-60120-KMM, 2017 WL 6313937 at *10-11 (S.D. Fla. Dec. 6, 2017).

For all the reasons stated above, the claims against CSI should be dismissed for lack of personal jurisdiction.

## II.  <u>Plaintiffs Must Arbitrate Their Claims Against CSI</u>

As explained in FSSO's concurrently filed motion, Plaintiffs must arbitrate their claims against FSSO, as required by multiple arbitration agreements Plaintiffs voluntarily executed. (ECF No. 84.) Those agreements apply with equal force to Plaintiffs' claims against CSI, because they require arbitration of Plaintiffs' claims with ***any*** Scientology church or entity. (ECF No. 84-2 (Weber Decl.) Exs. A, B and G (Enrollment Agreements) at ¶ 6.d; Exs. E and F (Departure Agreements) at 1 and ¶ 6.C; and Exs. H and I (Release Agreements) at ¶ 7.A.) Not only is CSI a Scientology church, and thus squarely within the agreements (*see* Farny Decl. ¶ 5), but each agreement also identifies

CSI as a third-party beneficiary in other provisions. (ECF No. 84-2 (Weber Decl.) Exs. A, B and G (Enrollment Agreements) at ¶ 5.d and ¶ 9.a; Exs. E and F (Departure Agreements) at ¶¶ 2.C, 3.C and 4.A; Ex. I ¶¶ 2.A, 4, 5.C-5.E, 5.G, 5.J-K, 6.A and 6.G (Release Agreement).) Indeed, Paris' Release Agreement makes clear that because the agreement "inures to the benefit of" CSI, it "is hereby declared to be made for [CSI's] respective benefits and uses." (ECF No. 84-2 (Weber Decl.) Ex. I (Release Agreement) at ¶ 14.) As an explicit third-party beneficiary of these arbitration agreements, CSI can enforce them. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020) ("arbitration agreements may be enforced by nonsignatories through … third-party beneficiary theories") (quote omitted); *Zac Smith & Co. v. Moonspinner Condo. Ass'n, Inc.*, 472 So. 2d 1324, 1324 (Fla. Dist. Ct. App. 1985) (same). Because the agreements to arbitrate are valid and encompass Plaintiffs' claims against CSI, the Court should compel arbitration.

### III. <u>Plaintiffs Fail to State a Claim Against CSI</u>

As noted above, the Court should either dismiss the claims against CSI for lack of personal jurisdiction or compel Plaintiffs to arbitrate them. But assuming Plaintiffs' claims clear those hurdles, they also fail to state a claim for the reasons stated in FSO's motion to dismiss, which CSI joins. (ECF No. 85.) And, even if Plaintiffs' claims survive the foregoing challenges, they must still be dismissed because they fail to state a claim as to CSI specifically.

In Counts I, III, and V, Plaintiffs assert three theories of liability under the TVPRA: direct violation, attempted violation, and indirect beneficiary violation. Counts II, IV, and VI assert a fourth theory: conspiracy. But Plaintiffs fail to allege any *facts* that state a claim under any theory. Instead, Plaintiffs offer only a "shotgun pleading" that recites the bare elements of their claims and fails to distinguish among the defendants they seek to hold liable.

### A.    Legal Standard Under Rule 12(b)(6) and Rule 8(a)(2)

On a motion to dismiss under Rule 12(b)(6), the Court accepts "all factual allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Doe #1 v. Red Roof Inns*, 21 F.4th 714, 723 (11th Cir. 2021). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Instead, a plaintiff must allege sufficient facts that, accepted as true, state a claim to relief that is plausible on its face." *Id.* In addition, a complaint is a "shotgun pleading" that fails to satisfy Rule 8(a)(2), where, as relevant here, it: (a) contains multiple counts where each count adopts the allegations of all preceding counts and (b) asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions. *Barmapov v. Amual*, 986 F.3d 1321, 1324 (11th Cir. 2021).

### B.    Plaintiffs Allege No Direct Violation By CSI

Plaintiffs allege that CSI "directly" violated the TVPRA, yet they fail to allege any actions by CSI that violated the statute. (FAC ¶¶ 2, 4, 216, 230, 245.) The FAC never alleges that any CSI officer, director, staff member or employee engaged in any conduct against Plaintiffs. Instead, Plaintiffs allege that CSI licenses Scientology's intellectual property to Scientology-affiliated entities, which pay CSI licensing fees. (*Id.* ¶¶ 19-20.) But the FAC fails to allege any connection between CSI's alleged licensing arrangements and the alleged trafficking. Plaintiffs also allege that CSI "control[s]" "Flag Ship Trust, which among other things owns the company that owns the Scientology ship, *Freewinds.*" (*Id.* ¶¶ 19-20, 39.) But the FAC does not explain how CSI's alleged "control" of a trust that supposedly owns a company that owns the *Freewinds* might make CSI responsible for anything that occurred on that ship. Indeed, Plaintiffs do not even explain what "control" means in this context—they do not allege whether CSI is or was a trustee, trustor, or beneficiary of the trust or any other fact explaining how CSI exercised that control. These conclusory allegations cannot state a plausible claim for relief.[6]

Instead, each count in the Complaint provides only shotgun allegations that "reallege and incorporate by reference" these minimal allegations, with no

---

[6] The FAC also alleges that CSI hosts a gala and stores some documents at Flag Base. (*Id.* ¶ 20.) CSI assumes Plaintiffs do not intend to premise liability upon these allegations.

further explanation. (FAC ¶¶ 214, 221, 228, 231, 235, 242, 250.) And rather than explain how CSI violated the statute or otherwise is liable to Plaintiffs, each count in the Complaint merely recites the TVPRA's statutory elements, (*compare* FAC ¶ 216 *with* 18 U.S.C. § 1589, FAC ¶ 235 *with* 18 U.S.C. § 1590, FAC ¶ 244 *with* 18 U.S.C. § 1581), and states that all "Defendants" committed the relevant acts without alleging any specific conduct by CSI against Plaintiffs *anywhere in the FAC*. This is insufficient. *See Barmapov*, 986 F.3d at 1324. Because Plaintiffs offer no facts plausibly alleging that CSI had any direct role in extracting forced labor from them, trafficking them, or holding them in peonage, Plaintiffs' direct claims should be dismissed.

### C.    Plaintiffs Allege No Attempted Violation By CSI

Counts I, III, and V also assert claims against CSI for *attempted* TVPRA violations under 18 U.S.C. § 1594(a). (FAC ¶¶ 218, 232, 247.) To prevail on a claim of attempt under the TVPRA, Plaintiffs must plausibly allege that CSI "(1) knowingly intended to [violate the TVPRA] and (2) took a substantial step toward committing that crime." *See United States v. Cooper*, 926 F.3d 718, 735 (11th Cir. 2019). A substantial step must strongly corroborate the firmness of the defendant's criminal intent. *Monroe*, 866 F.2d at 1366. Intent must be accompanied by "significant conduct" to constitute an actionable attempt. *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007).

Yet the FAC fails to plead any facts suggesting that CSI had a specific intent to violate the TVPRA or that it took a substantial step toward that violation. The FAC does not allege how CSI's alleged licensing and its supposed "control" of a trust that is twice-removed from the *Freewinds* – even if true – amounts to an attempted statutory violation. Instead, each count in the FAC merely parrots the statutory language and claims that every Defendant "attempted" to violate every cited provision. (*Compare* 18 U.S.C. § 1594(a) *with* FAC ¶¶ 218, 232, 247.) The Court should dismiss these unsupported shotgun pleadings as well. *See Barmapov*, 986 F.3d at 1324.

### D.    Plaintiffs Allege No Beneficiary Liability By CSI

Counts I, III, and V also assert a beneficiary claim under 18 U.S.C. § 1595(a). (FAC ¶¶ 217, 231, 246.) A beneficiary claim requires the plaintiff plausibly allege "that the defendant (1) knowingly benefitted, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Red Roof*, 21 F.4th at 726.

In *Red Roof*, the plaintiffs tried to prove a beneficiary claim against hotel chain franchisors by alleging that the franchisors licensed their brands to the hotels where the trafficking occurred. *Id.* at 719, 720, 726. Under those licensing agreements, the hotels paid the franchisors' royalties and other fees,

22

calculated as a percentage of room revenue, including revenue from the rooms in which each plaintiff was trafficked. *Id.* at 726. The franchisors also allegedly "owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms." *Id.* (quote omitted). The Eleventh Circuit noted that "these allegations may suggest that the franchisors financially benefitted from" the alleged TVPRA violations. *Id.* at 727. But that did not establish a beneficiary claim under the statute, because it does "nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA." *Id.* This remains true even if the franchisors knew about the alleged trafficking, because "observing something is not the same as participating in it." *Id.*

Like the franchisors in *Red Roof*, CSI allegedly collects revenues under licensing agreements it has with various Scientology entities. (FAC ¶ 19.) But as the Eleventh Circuit explained, licensing arrangements are not enough to give rise to liability under the TVPRA. *Red Roof*, 21 F.4th at 726. Indeed, the licensing alleged here is even more remote than in *Red Roof*. There, the hotel franchisors' royalties, based on room revenue, bore at least *some* relation to the alleged trafficking in the rooms. But Plaintiffs allege no connection between CSI's licensing of intellectual property and the trafficking alleged here.

23

Plaintiffs' allegation that CSI "controls" a trust that owns a company that owns the *Freewinds* also fails to support beneficiary liability. (*See* FAC ¶ 19.) In *Red Roof*, the plaintiffs claimed that the franchisors "owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms" at the hotels. *Red Roof*, 21 F.4th at 727. Those allegations did not show a "common undertaking involving risk or profit that violated the TVPRA." Plaintiffs' allegations here are even more remote than those rejected in *Red Roof*. Plaintiffs allege only the most tenuous relationship between the *Freewinds* and CSI—and they do not even suggest that CSI exercised any operation, supervision, or control of the vessel or anyone aboard it. But even if CSI *had* exercised management or control, that still would be insufficient to give rise to beneficiary liability under section 1595(a).

Rather than allege *facts*, Plaintiffs offer only a rote recitation of the statutory elements found in section 1595(a). (*Compare* FAC ¶¶ 162, 176, 191 *with* 15 U.S.C. § 1595(a).) Plaintiffs' failure to allege any plausible violation by CSI requires the Court to dismiss Counts I, III, and V.

### E.    Plaintiffs Allege No Conspiracy Involving CSI

Counts II, IV, and VI assert conspiracy liability under 18 U.S.C. § 1594(b). (FAC ¶¶ 224, 238, 253.) Conspiracy requires "an agreement to violate the prohibition on forced labor." *Paguirigan v. Prompt Nursing Emp.*

24

*Agency LLC*, 286 F. Supp. 3d 430, 440 (E.D.N.Y. 2017) (*citing United States v. Svoboda*, 347 F.3d 471, 476–477 (2d. Cir. 2003)). Although Plaintiffs need not "plead the existence of an explicit agreement," they must still "allege facts that plausibly show that [CSI] entered into a joint enterprise with consciousness of its general nature and extent." *Id.* (quote omitted). But the FAC contains no such facts. CSI's licensing of intellectual property and "control" of a trust that owns a company that owns the *Freewinds* do not plausibly show that CSI intentionally agreed with anyone to violate the TVPRA. Because Plaintiffs offer no factual allegations plausibly supporting their conspiracy claims, the Court should also dismiss Counts II, IV, and VI.

## CONCLUSION

For all these reasons, CSI requests that the Court either dismiss CSI for lack of personal jurisdiction, compel arbitration of Plaintiffs' claims against CSI, or dismiss Plaintiffs' claims against CSI for failure to state a claim.

## Local Rule 3.01(g) Certification

The undersigned counsel hereby certify that the undersigned conferred with Plaintiffs' counsel, **Neil Glazer and Zahra Dean of Kohn Swift & Graf, PC and Gregory Hansel of Preti Flaherty Beliveau & Pachios, Chartered LLP** who do not agree to the relief sought in the instant Motion. Counsel further certifies that this Motion is brought in good faith and not for any improper purpose.

Dated: August 23, 2022                    Respectfully submitted,


**WINSTON & STRAWN LLP**

_s/ William H. Forman_
William H. Forman, _pro hac vice_
WHForman@winston.com
Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 615-1992
Facsimile: (213) 615-1750

_s/ Gustavo J. Membiela_
Gustavo J. Membiela (Fla. Bar No. 513555)
GMembiela@winston.com
Winston & Strawn LLP
200 S. Biscayne Boulevard, Suite 2400
Miami, FL 33131
Telephone: (305) 910-0717
Facsimile: (305) 910-0505

_Counsel for Defendant_
_Church of Scientology International_