# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

GAWAIN BAXTER et al.,

    Plaintiffs,

    v.                       Case No.: 8:22-cv-00986-TPB-JSS

DAVID MISCAVIGE et al.,

    Defendants.

_____/

## Plaintiffs' Opposition To Defendant IAS Administrations, Inc's Motion To Dismiss Plaintiffs' Amended Complaint For Lack Of Personal Jurisdiction, To Compel Arbitration, Or Dismiss For Failure To State A Claim, Dkt. 87

Plaintiffs Gawain Baxter ("Gawain"), Laura Baxter ("Laura"), and Valeska Paris ("Valeska") oppose the motion to dismiss filed by Defendant IAS Administrations, Inc. ("IASA") on the following grounds.

## FACTUAL BACKGROUND

Scientology is organized and operates through a global network of corporations, trusts, and unincorporated associations and organizations. First Amended Complaint ("FAC") ¶ 26. This structure creates the appearance of a group of affiliated but decentralized and independently managed establishments. *Id.* But while ostensibly decentralized, in fact Scientology's management is top-down, with all entities and organizations, including IASA, controlled and managed under the direction of one man, Defendant Miscavige, whose authority is absolute. *Id.* ¶ 27.

1

Every person in IASA (and Defendant Church of Scientology International, Inc. ("CSI") and Defendant Religious Technology Center, Inc. ("RTC")) is a member of the Sea Org, which wields authority independent of and superior to the corporate structure of Scientology. Declaration of Michael Rinder ("Rinder Dec.") ¶¶ 5–6. Sea Org members are superimposed over the Scientology corporate structure such that corporate officers and directors must report to and follow the directives of Sea Org members with higher status or rank. *Id.* ¶ 6. The senior-most Sea Org member, and thus the ultimate authority in Scientology, is Miscavige, who exercises absolute control over all persons and legal entities within Scientology, including IASA. *Id.* Miscavige holds all executive power and authority across all of Scientology; IASA and the other corporations under him exist to maintain the fiction of separately managed entities. *Id.* ¶ 20. The point of these corporations is simply to shield Miscavige from liability. *Id.* ¶ 17.

Miscavige lives in or near Clearwater, Florida, and maintains a principal office there. FAC ¶ 16. The entire upper echelon of Scientology's management, including within RTC and CSI, as well as the senior officers and managers of other entities such as Church of Scientology Flag Service Organization, Inc. ("FSO"), Church of Scientology Flag Ship Service Organization, Inc. ("FSSO"), and IASA, serve at Miscavige's pleasure, and he alone has sole discretion to fire and replace them. *Id.* ¶ 29. Miscavige receives daily reports on and directs the operations of each Scientology-affiliated entity and organization through "command channels," with

built-in redundancies to ensure that he receives complete and timely information about all aspects of Defendants' operations, and that his directives are fully carried out without any variance. *Id.* ¶ 27. Senior officers of RTC and CSI (via its Office of Special Affairs ("OSA") and Commodore's Messenger Organization ("CMO")) report in detail to Miscavige on Sea Org members who are in poor standing or have left Sea Org or spoken out against Scientology, and receive detailed instructions from Miscavige on how to quiet or punish these dissenters. *Id.* ¶ 62.

IASA has offices at Defendants' massive "Flag Base" in Clearwater, Scientology's "spiritual headquarters." FAC ¶¶ 19, 22. According to annual reports filed with the Florida Secretary of State, IASA's principal place of business was in Clearwater from 2005 to 2014. *Id.* Miscavige, who lives and works in Clearwater, exclusively directs all operations of IASA. *Id.*

IASA is the operating entity for the International Association of Scientologists ("IAS"), an association everyone who participates in Scientology must join. FAC ¶ 22. Scientologists pay annual dues to IASA, which administers the funds under Miscavige's exclusive direction for his own benefit and the benefit of CSI, RTC, and other Scientology entities. *Id.* IASA finances Miscavige's "war chest," a discretionary fund he and Scientology entities he controls use to support intelligence gathering and retaliation against defectors and critics. *Id.* While Plaintiffs were on the Freewinds IASA transmitted funds it collected on the ship to IASA's Clearwater office. *Id.* Senior officers on the Freewinds are also senior IASA officers. *Id.* ¶ 39.

3

When Gawain wrote to Javier Martinez, a senior RTC officer at Flag Base in Florida, requesting permission to leave Sea Org to escape constant abuse and intolerable living conditions, Gawain was verbally abused by Danny Light, a high-ranking IASA officer from the Freewinds, who at the time was at Flag Base in Florida; Light demanded that Gawain call Martinez and falsely confess to fabricating the allegations he made in the letter. FAC ¶ 93. Laura was transported from England to the Freewinds via Florida accompanied by her IASA guardian. *Id.* ¶ 116. And Gawain was abused on the Freewinds by officers of IASA. *Id.* ¶¶ 99, 101.

## ARGUMENT

"[A] plaintiff bears the burden of establishing a prima facie case of personal jurisdiction, meaning it must present enough evidence to withstand a motion for a directed verdict." *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021). "When a defendant submits non-conclusory affidavits to controvert the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence to support personal jurisdiction." *Id.* "[W]hen the complaint and plaintiff's affidavits conflict with the defendant's affidavits," the Court must "draw all reasonable inferences in favor of the plaintiff." *Id.* That means that "[a]ny conflicts in the evidence must be resolved in the plaintiff's favor." *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd*, 722 F. App'x 870, 874 n. 2 (11th Cir. 2018).

## I.    The Court has specific jurisdiction over IASA.

### a.  Plaintiffs have made out a conventional *prima facie* case for jurisdiction.

Plaintiffs have made out a *prima facie* case for specific jurisdiction over IASA.

### i.  Long-Arm Statute

Under the Florida long-arm statute:

[a] person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

2. Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(a). "A defendant can be subject to personal jurisdiction under Florida's long-arm statute" if the claims against it "arise out of or relate to [the] defendant's contacts with Florida, Fla. Stat. § 48.193(1)(a)[.]" *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015).

**IASA operates and has offices in Florida (§ 48.193(1)(a)(1)).** IASA has offices and operations in Clearwater, Florida, which was its principal place of business from 2005 to 2014. FAC ¶ 22.

**IASA committed a tortious act in Florida (§ 48.193(1)(a)(2)).** IASA is also alleged to have committed a tortious act in Florida. Violations of statute count as "tortious acts" under the long-arm statute. *See Tindal v. Def. Tax Grp., Inc.*, No. 8:19-

CV-2907-TPB-JSS, 2021 WL 5083751, at *2 (M.D. Fla. Nov. 2, 2021) ("Numerous decisions hold that sending communications into Florida in violation of statutes such as the [Fair Debt Collection Practices Act] constitutes the commission of a tortious act within the state."); *Abramson v. Fed. Ins. Co.*, No. 8:19-CV-2523-T-60AAS, 2021 WL 268350, at *3 (M.D. Fla. Jan. 27, 2021) ("[Telephone Consumer Protection Act] violations are tortious acts for the purposes of the long-arm statute.") (quotation marks omitted). Moreover, while the Complaint alleges statutory violations, not common-law torts, the conduct it describes is also tortious under the common law.

When Gawain wrote to RTC's Javier Martinez at Flag Base in Florida requesting permission to leave Sea Org to escape verbal abuse and intolerable conditions, Gawain was verbally abused by Danny Light, a high-ranking IASA officer from the Freewinds, who was at Flag Base; Light demanded that Gawain call Martinez and falsely confess to fabricating the allegations he made in the letter. FAC ¶ 93. That was a tortious act by IASA's Light, committed in Florida, in furtherance of the course of unlawful conduct alleged in the Complaint. And Plaintiffs have alleged that Laura was transported from England to the Freewinds via Florida accompanied by her IASA guardian. *Id*. ¶ 116. These tortious acts by IASA, committed in Florida, establish jurisdiction under the long-arm statute.

**Plaintiffs' claims arise from or relate to IASA's Florida contacts.** "A defendant can be subject to personal jurisdiction under Florida's long-arm statute" if

the claims against it "arise out of or relate to [the] defendant's contacts with

Florida . . . ." *Carmouche*, 789 F.3d at 1203–04. At a general level, Plaintiffs' claims

are based on their participation in Scientology; IASA's Florida contacts are in

furtherance of Scientology; and so Plaintiffs' claims are related to IASA's Florida

contacts.

In addition, the specific Florida contacts described above are related to

Plaintiffs' claims against IASA. Gawain's abuse by IASA's Light arose from and

related to IASA's Florida contacts, as Light committed the abuse at Flag Base in

Florida. So did the transportation of Laura from England to the Freewinds via

Florida accompanied by her IASA guardian. IASA's claims arise from or relate to

their Florida contacts. The requirements for jurisdiction under the long-arm statute

are met.

## ii.    Due process

"In specific personal jurisdiction cases, [courts] apply the three-part due

process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate

to' at least one of the defendant's contacts with the forum; (2) whether the

nonresident defendant 'purposefully availed' himself of the privilege of conducting

activities within the forum state, thus invoking the benefit of the forum state's laws;

and (3) whether the exercise of personal jurisdiction comports with 'traditional

notions of fair play and substantial justice.'" *Louis Vuitton Malletier, S.A. v. Mosseri*,

736 F.3d 1339, 1355 (11th Cir. 2013).

**Relatedness**. "[A] fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum." *Louis Vuitton*, 736 F.3d at 1355 (quotation marks omitted). For the same reason that Plaintiffs' claims arise out of or relate to IASA's contacts with Florida under the long-arm statute, the relatedness requirement of the Due Process Clause is also met. *See supra*.

**Purposeful availment.** "Under the minimum contacts test for purposeful availment," courts ask whether the defendant's contacts with the forum state "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357. We have just explained how IASA's contacts with Florida are related to Plaintiffs' claims against it. *See supra*. And IASA has purposefully availed itself of the privilege of doing business in Florida by establishing offices there. FAC ¶ 22. *See Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1207 (S.D. Fla. 2021), *amended on reconsideration in part*, 2022 WL 845468 (S.D. Fla. Mar. 22, 2022) (purposeful availment found based on defendant having an office in Miami). Moreover, in addition to its own contacts, IASA functions as an instrument or tool of Defendant Miscavige, who resides and has his principal office in Clearwater. *See supra*. Having established offices in Florida

8

and serving as an instrument of the Florida-based Miscavige, IASA should reasonably have anticipated being haled into court there.

The cases IASA cites do not advance its cause. The defendants in *Gazelles FL, Inc. v. Cupp*, 2018 WL 7364591, at *9 (M.D. Fla. Sept. 26, 2018), cited by IASA as a case where "plaintiffs did not establish how defendants benefitted from Florida's laws," did not even have an office in Florida, or any Florida clients; IASA has a Florida office and numerous Florida members are integrated into Miscavige's Florida-based Scientology operations. Likewise in *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1247 (11th Cir. 2000), the defendant, unlike IASA, had no business presence in Florida. *See also Carlyle v. Palm Beach Polo Holdings, Inc.*, 842 So. 2d 1013, 1015, 1017 (Fla. Dist. Ct. App. 2003) (cited by IASA) (defendant "did not maintain an office" in Florida, and plaintiffs' claims were unrelated to what Florida contacts defendant did have). Again in *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005), cited by IASA for the proposition that "*de minimis* contacts with Florida" are not enough, the defendants did not have a place of business in Florida, but instead merely "rendered in California professional services for the benefit of a Florida citizen . . . ." *See also Schwartzberg v. Knobloch*, 98 So. 3d 173, 182 (Fla. Dist. Ct. App. 2012) (cited by IASA) (no jurisdiction over out-of-state defendants whose only connection to the state was that they held "indirect ownership interests" in Florida nursing homes); *Fincantieri-Cantieri Navali Italiani S.p.A. v. Yuzwa*, 241 So. 3d 938, 946 (Fla. Dist. Ct.

App. 2018) (cited by IASA) (no jurisdiction where there was "no apparent connection between [plaintiff's] claims and [defendant's] business in Florida."). IASA's contacts with Florida are much more extensive and are related to Plaintiffs' claims.

**Fair play/substantial justice**. In conducting this prong of the due process analysis, courts consider four factors: "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Louis Vuitton*, 736 F.3d at 1358 (quotation marks omitted). As an inextricably intertwined element of an organization that has a massive Florida presence and that is controlled by the Florida-based Miscavige, and that also has its own offices in Florida, IASA cannot plausibly claim that it would be unreasonably burdened by having to defend this litigation in Florida (factor 1). Florida has a clear interest in adjudicating Plaintiffs' claims against entities with such substantial ties to the state (factor 2). Because Plaintiffs are properly suing Miscavige in Florida where he lives and works, and Miscavige controls IASA, Plaintiffs' interest in obtaining convenient and effective relief against all Defendants (factor 3) weighs in favor of the Court exercising jurisdiction over IASA, as does the judicial system's interest in resolving the dispute (factor 4).

> **b. Plaintiffs have made out a case for conspiracy-based jurisdiction.**

There is a second way that Plaintiffs can establish personal jurisdiction over IASA based on the same facts. The "co-conspirator theory" of personal jurisdiction

"permits a state to assert personal jurisdiction over a non-resident defendant if (1) jurisdiction can be properly exercised over a resident defendant, (2) the plaintiff can demonstrate the existence of a conspiracy and participation by both the resident and non-resident defendants, and (3) an overt act in furtherance of the conspiracy took place within the state." *Washington v. Fla. Dep't of Child. & Fams.*, 595 F. Supp. 2d 1291, 1295 (M.D. Fla. 2009). Under the co-conspirator theory, "Florida courts can exercise personal jurisdiction over a defendant with no other connection to the state where participation in a civil conspiracy touching the state has been successfully alleged." *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, 2016 WL 11501768, at *4 (S.D. Fla. Sept. 14, 2016).

Plaintiffs have successfully alleged that IASA participated in a civil conspiracy touching Florida. *See* infra § IV. The leader of that conspiracy, Defendant Miscavige, is subject to personal jurisdiction in Florida, as he lives and has his principal place of business here. FAC ¶¶ 16–17. Plaintiffs have alleged that Miscavige is the leader of a conspiracy against Plaintiffs that involves the participation of (*inter alia*) IASA. *Id.* ¶ 16 ("Miscavige personally directed and continues to direct the management and operations of Defendants [CSI], [RTC], [and] [IASA] . . . , including the practices and conduct alleged herein."). And Plaintiffs have alleged overt acts by co-conspirator Defendants in furtherance of the conspiracy that took place in Florida. After her mother left Sea Org, Valeska was surveilled by OSA—which is part of Defendant/co-conspirator CSI (FAC ¶ 32; Rinder Dec. ¶¶ 10–11)—in Florida. FAC

11

¶ 200. OSA also directed Plaintiffs' families to gather in Florida for retaliatory
operations against Plaintiffs. *Id.* ¶ 32. And RTC's Javier Martinez, then in Florida,
participated in the abuse of Gawain by IASA's Danny Light, as described *supra. Id.*
¶ 93.

In addition, Valeska was sexually assaulted by a Scientologist on Defendants'
Estates Project Force ("EPF") facility in Clearwater, Florida, where she was made to
work sixteen-hour days under abusive conditions. FAC ¶¶ 157-59. Laura's sister and
mother (still in Scientology) have been moved to Clearwater, where Defendants have
tried to pressure Laura into dismissing her lawsuit. *Id.* ¶ 144. Defendants confiscated
Valeska's passport and other identification documents in Clearwater, and made her
clean the EPF facility, a bootcamp at Flag Base in Clearwater for twelve to eighteen
hours per day. *Id.* ¶¶ 92, 157. Gawain and Laura received numerous calls from
Defendants' agents, including calls from Flag Base in Florida, as part of Defendants'
effort to control and intimidate them. *Id.* ¶ 137. And everything that was done to
Plaintiffs by any of the Defendant entities was done from Florida under the control
and at the direction of Defendant/co-conspirator Miscavige. FAC ¶¶ 16, 27. The
Court may therefore exercise personal jurisdiction over IASA on a co-conspirator
theory based on the Florida contacts of its co-conspirator Defendants.

### c. Plaintiffs have made out a case for jurisdiction on an alter-ego theory.

If the Court does not believe it can exercise jurisdiction over IASA based on
its own individual contacts with Florida or on a co-conspirator theory, there is a third

basis for jurisdiction: the Complaint alleges that IASA is a mere instrument or tool of Miscavige, who is based in and operates out of Florida, and used IASA to engage in improper conduct toward Plaintiffs. That means IASA's actions should be deemed to be the actions of Miscavige, a Florida resident, and jurisdiction may be exercised on that basis.

This case does not present the usual situation where a plaintiff seeks to hold an out-of-state parent responsible for the actions of its in-state subsidiary. But there is no reason why an out-of-state subsidiary cannot also be held responsible for the actions of its in-state parent or controlling individual if "(1) . . . the subsidiary was a 'mere instrumentality' of the parent," and "(2) . . . the parent engaged in 'improper conduct' through its organization or use of the subsidiary." *Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998); *see Ranza v. Nike, Inc.*, 793 F.3d 1059, 1065 (9th Cir. 2015) (holding that "a court may attribute a parent company's contacts with the forum state to its foreign subsidiary" for jurisdictional purposes if "the subsidiary is an alter ego of its parent . . . .").

Every person in IASA (and CSI and RTC) is a member of the Sea Org, which is organized along a chain-of-command that is superior to the corporate structure of Scientology. Rinder Dec. ¶¶ 5–6. Sea Org's chain-of-command is superimposed over the Scientology corporate structure such that corporate officers and directors must report to and follow the directives of Sea Org members with higher status or rank. *Id.* ¶ 6. The senior-most Sea Org member, and thus the ultimate authority in

13

Scientology, is Miscavige, who exercises absolute control over all persons and legal entities within Scientology, including IASA. *Id.* Miscavige holds all executive power and authority across all of Scientology; IASA and the other corporations under him exist to maintain the fiction of separately managed entities. *Id.* ¶ 20. The point of these corporations is simply to shield Miscavige from liability. *Id.* ¶ 17. Miscavige exclusively directs all operations of IASA. FAC ¶ 22.

Because IASA is a mere instrument or tool of Miscavige, who is based in and operates out of Florida, its actions should be deemed to be the actions of Miscavige, a Florida resident, and should subject IASA to jurisdiction in the state.[1] *See Johnson Enterprises*, 162 F.3d at 1320; *Ranza*, 793 F.3d at 1065. IASA's reliance on *Johnson Enterprises* is misplaced, because here there is ample evidence that Miscavige "used [IASA] for the purpose of engaging in improper conduct," and the relationship between Miscavige and IASA cannot be said to have been "essentially that of a normal parent and subsidiary," as it was in *Johnson Enterprises*. *Id.* at 1320.

### d.  IASA's affidavit and Plaintiffs' response

In response to Plaintiffs' *prima facie* case for personal jurisdiction, Defendants may shift the burden to produce evidence supporting jurisdiction back to Plaintiffs by submitting "non-conclusory affidavits to controvert the allegations in the

---

[1]  IASA's argument that Plaintiffs "turn[] the alter ego doctrine on its head," Dkt. 87 at 16, rests on the incorrect premise that "IASA . . . has not done anything in Florida." *Id.* at 17. Plaintiffs allege that IASA has done many things in Florida, related to Plaintiffs' claims, and given the extraordinary level of control Miscavige exercises over IASA and everything else in Scientology, it is fair to also weigh his Florida contacts in the analysis.

14

complaint . . . ." *Don't Look Media*, 999 F.3d at 1292. "Any conflicts in the evidence must be resolved in the plaintiff's favor." *Aviation One*, 722 F. App'x at 874 n. 2.

IASA tries to downplay its Florida presence ("a few staff posted in Clearwater"), but does not deny having a Florida presence. Amended Declaration of Mislav Raos ("Raos Dec.") ¶ 5. IASA claims that the annual reports it filed with the Florida Secretary of State from 2005 to 2014 listing Clearwater as its principal place of business (FAC ¶ 22) were "erroneous[]." Raos Dec. ¶ 8. But this conclusory denial of what IASA said in its own legal filings is not enough to defeat Plaintiffs' prima facie case for jurisdiction. IASA also declares by affidavit that "*annual dues* paid by IAS members are received and administered in Los Angeles" (Raos Dec. ¶ 9), but while that may be what happens with annual dues, it is not responsive to Plaintiffs' allegation that IASA "transmitted *funds it collected on the [Freewinds] ship*"—not "annual dues"—to IASA's Clearwater, Florida office. FAC ¶ 22.

As for the argument that the abuse directed at Gawain from Florida by IASA's Light should be disregarded because it happened in 1997, before the private right of action under the TVPRA came into existence in 2002, Dkt. 87 at 11, even if events in 1997 cannot themselves support liability under the statute, IASA cites no authority to support its position that such events do not count as relevant jurisdictional contacts, particularly in a case where Plaintiffs were subjected to forced labor continuously until their escape many years later. And IASA simply ignores Plaintiffs' allegation that, pursuant to the course of unlawful conduct alleged in the

Complaint, Laura was transported from England to the Freewinds, via Florida, accompanied by her IASA guardian. FAC ¶ 116. In short, IASA's affidavit does not defeat Plaintiffs' prima facie case for jurisdiction or shift the burden back to Plaintiffs.

## II.    The Court has general jurisdiction over IASA.

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations, without offending due process when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018) (quotation marks omitted). Although "[t]he paradigm all-purpose forums in which a corporation is at home are the corporation's place of incorporation and its principal place of business," and "[o]utside of these two exemplars, a defendant's operations will be so substantial and of such a nature as to render the corporation at home in that State only in an exceptional case" (*id.* (quotation marks omitted)), this is an exceptional case.

IASA is subject to general jurisdiction in Florida based simply on its 2005-2014 filings with the Secretary of State listing Clearwater as its principal place of business. That means IASA is "at home"—and thus subject to general jurisdiction—in Clearwater. *See id.*

Beyond that, IASA is subject to general jurisdiction in Florida because it is a mere instrument or tool of Miscavige, who is based in and operates out of Florida.

16

*See supra* § I(c). That extraordinary circumstance—one man exerts total domination over a nominally separate corporate entity—is what makes this an exceptional case. Because IASA is a mere instrument or tool of Miscavige, who is based in and operates out of Florida, and is therefore at home in Florida, its actions should be deemed to be the actions of Miscavige, and subject IASA to general jurisdiction in the state.

### III.    At a minimum, the Court should permit jurisdictional discovery.

"Jurisdictional discovery is appropriate when there is a dispute about the 'facts that would support [the plaintiff's] allegations of jurisdiction.'" *Aviation One*, 722 F. App'x at 878 (quoting *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984)). "Federal courts clearly have the power to order jurisdictional discovery," and "the exercise of that power is not entirely discretionary." *RMS Titanic, Inc. v. Kingsmen Creatives*, Ltd., 579 F. App'x 779, 790 (11th Cir. 2014) (quotation marks omitted). The Eleventh Circuit has said that "federal courts should order limited jurisdictional discovery where the information the plaintiff seeks, if it exists, would give rise to jurisdiction." *Id*. That is because "[r]esolution of a pretrial motion that turns on findings of fact—for example, a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2)—may require some limited discovery before a meaningful ruling can be made." *Id*. (quotation marks omitted).

If the Court does not find that jurisdiction has been established on the facts before it, it should order that Plaintiffs be permitted to conduct jurisdictional

discovery. Plaintiffs, by Defendants' design, had very limited visibility into the
workings and machinations of the different Defendant entities that participated in the
wrongs Scientology committed against them. Jurisdictional discovery would permit
Plaintiffs to ascertain more precisely the role IASA and its agents played in the
events described in the Complaint and to uncover additional Florida contacts that
Defendants have so far obscured.

### IV.    Plaintiffs have stated a claim against IASA.

IASA's motion to dismiss the complaint for failure to state a claim under Fed.
R. Civ. P. 12(b)(6) is meritless. As is set forth in Plaintiffs' Memorandum of Law
Responding to Defendant RTC's Motion, and Plaintiffs' Memorandum of Law
Responding to Defendant FSO's Motion, both of which Plaintiffs fully incorporate
by reference herein, the FAC is not an impermissible shotgun pleading, and it alleges
considerable detail supporting Plaintiffs' claims for section 1595(a) venture liability
and conspiracy against all Defendants, including IASA. Contrary to its suggestion,
IASA was more than a distant observer. Dkt. 87 at 23. IASA played a significant role
in the venture, and it used Sea Org labor.

IASA is an important source of revenue for Scientology, and it raises funds
through various means, including requiring its Freewinds staff to solicit donations
from guests on the ship. FAC ¶ 45. IASA administers and transfers the funds it raises
for the personal enrichment and benefit of Miscavige, and for the benefit of
Defendants CSI, RTC, FSO and FSSO (including for the Freewinds). FAC ¶ 22.

18

IASA funds are used to support intelligence gathering and retaliation campaigns against Sea Org defectors. *Id.* IASA uses its funds to provide Miscavige and his celebrity guests with lavish treatment and luxuries not provided to other guests. FAC ¶ 45. IASA officers are among the most senior on the ship, including its President, who reports directly to Miscavige. FAC ¶ 39. Laura was recruited to the ship by IASA, and she worked for it as a files administrator until IASA officers falsely accused her of misconduct, had her sent to FSSO's engine room, and then "demoted" her by transferring her to FSSO staff. FAC ¶¶ 118–22. Gawain worked for both FSSO and IASA. FAC ¶ 98. Later, when Gawain and Laura were finally able to leave the Freewinds and Sea Org, they borrowed money to pay off their "freeloader debt," after which IASA informed Gawain that he purportedly owed dues for an expensive lifetime membership. FAC ¶ 135.

    IASA is liable as a participant in the venture because it knowingly received benefits (labor) from the venture, and it knew or should have known that the venture was engaged in the commission of TVPRA offenses, including forced labor, peonage, and trafficking.[2] *Doe #1 v. Red Roof Inns*, Inc., 21 F.4th 714, 723-724 (11th Cir. 2021). IASA is liable for attempt because it intended to commit acts of forced labor, peonage and trafficking, and its conduct reflects that it took substantial steps toward

---

[2] IASA's argument that the trafficking claims fail because there is no alleged conduct that occurred abroad, Dkt. 87 at 20, is factually incorrect and misstates the law. *See Adia v. Grandeur Mgt., Inc.*, 933 F.3d 89, 94 (2d Cir. 2019) ("There is no requirement in either sections 1589 or 1590 that victims be brought into, or recruited from outside, the United States. Indeed, the statutes do not even require that the victims be foreign-born.")

those ends. *U.S. v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004). Indeed, it was still chasing Gawain for a purported debt after he left the Sea Org, and after he and Laura repaid their freeloader bills. IASA's acts plausibly give rise to an inference that it entered into a joint enterprise with the other Defendants "with consciousness of its general nature and extent." *Stein v. World–Wide Plumbing Supply Inc.*, 71 F.Supp.3d 320, 330 (E.D.N.Y. 2014) (quotation marks and citation omitted).

IASA's motion to dismiss the FAC for failure to state a claim under Rule 12(b)(6) is meritless and should be denied.

### V.    IASA cannot compel Plaintiffs to arbitrate their claims.

The arguments in Plaintiffs' oppositions to the motions to compel arbitration filed by Defendants FSSO and CSI are incorporated here, and for those reasons there is no valid or enforceable agreement to arbitrate. To the extent that any of the arbitration agreements are determined to be valid, IASA cannot enforce them as a third-party beneficiary for the reasons described in those oppositions.

### CONCLUSION

For the above reasons, Defendant's motion should be denied.

Dated:  September 13, 2022          Respectfully submitted,

                                   */s/ Neil L. Glazer*
                                   Neil L. Glazer
                                   Joseph C. Kohn
                                   Zahra R. Dean

Aarthi Manohar
Elias Kohn
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700
nglazer@kohnswift.com
jkohn@kohnswift.com
zdean@kohnswift.com
amanohar@kohnswift.com
ekohn@kohnswift.com

Gregory P. Hansel
(Fla. Bar No. 607101)
Shana M. Solomon
Elizabeth F. Quinby
**PRETI FLAHERTY BELIVEAU
  & PACHIOS, CHARTERED, LLP**
One City Center
P.O. Box 9546
Portland, ME 04112-9546
(207) 791-3000
ghansel@preti.com
ssolomon@preti.com
equinby@preti.com

Agnieszka M. Fryszman
Brendan Schneiderman
**COHEN MILSTEIN SELLERS
  & TOLL PLLC**
1100 New York Ave., N.W., Fifth
Floor
Washington, DC 20005
(202) 408-4600
afryszman@cohenmilstein.com
bschneiderman@cohenmilstein.com

Theodore Leopold
(Fla. Bar No. 705608)
Manuel J. Dominguez
(Fla. Bar No. 0054798)
**COHEN MILSTEIN SELLERS**

21

**& TOLL PLLC**
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400
tleopold@cohenmilstien.com
jdominguez@cohenmilstein.com

Shelby Leighton
Anita Yandle
(pro hac application pending)
**PUBLIC JUSTICE**
1620 L St. NW, Suite 630
Washington, DC 20036
Phone: (202) 797-8600
Fax: (202) 232-7203
SLeighton@publicjustice.net
AYandle@publicjustice.net
Warren A. Zimmerman
(Fla. Bar No. 652040)

**WARREN A. ZIMMERMAN, P.A.**
4114 Sparrow Ct
Lutz, FL  33558-2727
(813) 230-1465
warren@wzimmermanlaw.com