# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

GAWAIN BAXTER; et al.

      Plaintiffs,

v.                           Case No.: 8:22-cv-00986-TPB-JSS

DAVID MISCAVIGE; et al.

      Defendants.

_____/


## DAVID MISCAVIGE'S OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER DECLARING HIM SERVED WITH PROCESS AND IN DEFAULT AND INCORPORATED MEMORANDUM OF LAW

Putative Defendant David Miscavige, through undersigned counsel, makes this special appearance without submitting himself to the jurisdiction of this Court,[1] and respectfully submits this Opposition to Plaintiffs' Motion for Order Declaring him Served with Process and in Default.[2]

_____

[1] *See Montero v. DuVal Fed. Sav. & Loan Ass'n*, 581 So. 2d 938, 939 (Fla. 4th DCA 1991) (defendant did not submit himself to the jurisdiction of the court where she filed a challenge to service of process along with a motion to set aside a default); *see also Ginsberg v. Lamour*, 711 So. 2d 182, 183 (Fla. 4th DCA 1998); *Segalis v. Roof Depot USA, LLC*, 178 So. 3d 83, 85 (Fla. 4th DCA 2015) (per curiam).

[2] Mr. Miscavige appears solely to challenge Plaintiffs' request to declare Mr. Miscavige served and in default.  Mr. Miscavige reserves his right to challenge (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) failure to state a cause of action, (6) statute of limitations, and all other defenses available to him.

## INTRODUCTION

Mr. Miscavige is the ecclesiastical leader of the Scientology religion and in that capacity serves as the Chairman of the Board of Religious Technology Center ("RTC"), a non-profit religious organization formed to preserve, maintain and protect the Scientology religion.  ECF No. 88-1, ¶¶ 4, 9.  Though he is not alleged to have personally undertaken any wrongful action relating to Plaintiffs or their purported injuries, and is not even alleged to have met most of them, he has nevertheless been named as a defendant in this lawsuit in his individual capacity. Mr. Miscavige's inclusion as a Defendant is improper and part of a litigation strategy to target the leader of the religion for harassment.  This action is but one of a series of harassing lawsuits against the Scientology religion sponsored by Plaintiffs' consultant and principal declarant—Mike Rinder, a disgraced former Scientologist.[3]

Mr. Miscavige makes this special appearance, however, to address a more basic issue:  he has never been served with process.  Plaintiffs admit that they have never personally served him, and do not contend that he was ever present during any purported service attempt.  Nevertheless, they assert that he should not only be deemed served but declared in default based on purported service of

---

[3] Indeed, Plaintiffs' Declarants read like a who's who of self-proclaimed opponents of the Scientology religion, including Aaron Smith Levin, who ran for City Council in Clearwater, Florida on an avowedly anti-Scientology platform and who regularly traffics in bigoted attacks on the religion and vulgar personal attacks on Mr. Miscavige.  *See* Exs. 5 & 6.

process on the Florida Secretary of State and subsequent mailing of that service to a smattering of Scientology-related addresses.  Plaintiffs assert that such service is proper because Mr. Miscavige has "evaded" service of process.

Plaintiffs' claims that Mr. Miscavige has evaded service, like their representations regarding their service attempts, are inaccurate.  But the Court need not even reach that issue, as the Plaintiffs have failed even to address, let alone attempt to meet, the statutory requirements for effecting substituted service through the Secretary of State—namely Fla. Stat. § 48.181's requirement that Plaintiffs establish that Mr. Miscavige be (1) personally engaged in business in the State of Florida and (2) that Plaintiffs' claims arise from his conduct of business in Florida.  Fla. Stat. § 48.181(1).  Because Plaintiffs have not, and cannot, satisfy the requirements of § 48.181, and because they have failed to establish that Mr. Miscavige has evaded service, their motion (ECF No. 152) should be denied.

## BACKGROUND

Plaintiffs are former members of the Church of Scientology.  Am. Compl. ¶¶ 13-15. On April 28, 2022, Plaintiffs filed this lawsuit based on allegations related to their more than decades-long membership in the Church of Scientology and its religious order.  Many of the allegations arise from conduct that purportedly occurred decades ago.  Plaintiffs bring this instant action against five Scientology organizations and Mr. Miscavige.  Am. Compl. ¶¶ 16-22.

The allegations of the Complaint are false in many respects, most significantly for present purposes in that they allege that Mr. Miscavige is a Florida resident.  Am. Compl. ¶ 16; ECF No. 152, at 3.  He is not and has been a resident of California for the past several decades.  Ex. 1 (McShane Decl. ¶¶ 5, 8).

Plaintiffs' only support for the assertion that Mr. Miscavige is a resident of Florida living at 551 N. Saturn Avenue, Clearwater, Florida is (1) the Declaration of Michael Rinder (ECF No. 141-1), concerning activity there over two decades ago, and (2) the Declaration of Aaron Smith Levin (ECF No. 152-2) alleging knowledge of a residence in 1993 and a purportedly random (and inaccurate) sighting of Mr. Miscavige once in March 2020.  *See* Ex. 2 (Heller Decl. ¶ 18).  Neither prove that Mr. Miscavige is a Florida resident.

The allegations of Rinder and Levin are false and of no evidentiary value.[4]  Rinder admits he left the Church fifteen years ago and therefore, has no present personal knowledge about Mr. Miscavige's residency or the current policies and procedures of the Scientology religion.  ECF Nos. 111-4; 141-1 (Rinder Decl.) ¶¶ 2, 7.  Rinder's declaration largely consists of speculation and unfounded, inaccurate

---

[4] Multiple courts have stricken Rinder's prior declarations. The *Bixler* Court held that the Rinder Declaration submitted in that case was "filled with unsupported assumptions, foundational deficiencies, irrelevant matters, improper opinions, and arguments." Ex. 3 (Minute Order (Dec. 30, 2020) at 5, *Bixler, et al. v. Church of Scientology, et al.,* No. 19STCV29458 (Cal. Sup. Ct., L.A. Cnty.)). A Florida court also struck the Rinder Declaration in that case finding that it "contain[ed] hearsay and legal conclusions." Ex. 4 (Order (Apr. 30, 2012) at 2, *Schippers, et al. v. Church of Scientology, et al.*, No. 11-11250-CI-21 (Fla. 6th Jud. Cir. Ct., Cnty.)). The Rinder Declaration filed here suffers the same fundamental flaws.

reliance on unnamed sources.  *See* ECF No. 125 (addressing Mr. Rinder's declaration).   Like Rinder, Levin left the Church years ago and has no present-day knowledge about Mr. Miscavige's residency.  ECF No. 152-2 (Levin Decl.) ¶¶ 2-3.  Levin states that he saw Mr. Miscavige once in March 2020, purportedly traveling to the Flag Building—a fact that even if true, and it is not, would not possibly establish that Mr. Miscavige was or is a Florida resident.  *See id.* ¶¶ 7-8; *see also* Ex. 1 (McShane Decl. ¶ 8); Ex. 2 (Heller Decl. ¶ 18).  Mr. Levin, like Mr. Rinder, is an avowed detractor of the Scientology religion, and has even run for political office based principally on his opposition to Mr. Miscavige.  *See* Ex. 5 (Levin tweets); Ex. 6 (Levin campaign mailers with the platform "stand[ing] up to Scientology" and indicating that a vote for Mr. Levin's opponent is "a vote for Scientology <u>and</u> David Miscavige."); *see also* Ex. 2 (Heller Decl.  ¶¶ 19, 20).

While the Amended Complaint and Rinder and Levin Declarations assert that Mr. Miscavige is a Florida resident, *see* Am. Compl. ¶¶ 16; ECF No. 141-1 (Rinder Decl.) ¶ 19; ECF No. 152-2 (Levin Decl.) ¶ 5; ECF No. 152, at 3, the Glazer Declaration of Compliance confusingly alleges both that Mr. Miscavige's last known address is 6331 Hollywood Boulevard, Los Angeles, California and that he resides at 551 N. Saturn Avenue in Clearwater.  ECF No. 141, ¶¶ 7-9, 11.  Further, as discussed below, Plaintiffs now claim that service was accomplished by a mailing to that California address though it was returned to sender.  ECF No. 152, at 16.

After failing to effect process on Mr. Miscavige for over three months, Plaintiffs amended their Complaint to include unsubstantiated allegations that Mr. Miscavige was concealing his whereabouts to evade service.  Am. Compl. ¶¶ 7-12.  In the Amended Complaint, Plaintiffs list seven addresses at which they purportedly tried to serve Mr. Miscavige.  *Id.*  But their inability to serve Mr. Miscavige at those addresses is not the result of "evasion."  He was not present at any of the addresses at any time Plaintiffs' agents attempted personal service. Exs. 2, 7 (Heller Decl. ¶ 13; Farny Decl. ¶ 4).[5]

All of the addresses at which Plaintiffs allegedly attempted service are simply Scientology-related entities located in Florida or California. Exs. 2, 7 (Heller Decl. ¶¶ 6-10; Farny Decl. ¶ 4).  Unsurprisingly, Plaintiffs have regularly received "RETURNED" mail and their agents have been accurately told that Mr. Miscavige is not located at the addresses.

On August 31, 2022, Plaintiffs filed a Return of Non-Service and an Affidavit of Posting by Rule regarding purported attempts to serve Mr. Miscavige. ECF No. 91, 92.  Both documents contain significant deficiencies including that the process server, Mr. Ramos, did not, in fact, approach the front entrance and there was not any discussion about whether he was allowed to enter the building on August 16, 2022.  Ex. 2 (Heller Decl. ¶ 15).  Mr. Ramos does correctly state

---

[5] In Plaintiffs' Declaration of Compliance (ECF No. 141), Plaintiffs' counsel identifies 10 addresses at which Plaintiffs attempted to personally serve Mr. Miscavige. Mr. Miscavige was not present at any of those locations at the time service was attempted.  *See* Exs. 2, 7 (Heller Decl. ¶ 13; Farny Decl. ¶ 4).

that he was repeatedly and accurately informed at each location of attempted service that Mr. Miscavige was not present, as none of them were his residence or principal place of business. ECF. No. 91. Plaintiffs admit that Mr. Ramos repeatedly left "documents" on the ground at various locations rather than personally serving those documents to Mr. Miscavige. ECF No. 141-4. Such attempts are not properly serving Mr. Miscavige.

Plaintiffs' Affidavit of Posting by Rule (ECF No. 92) is also incorrect in a number of ways. First, the process server, Mr. Rivera, did not, in fact, attempt service on August 19, 2022.[6] *Compare* ECF No. 92 at 1 *with* Ex. 8 (Soter Decl. ¶ 6.) Second, he simply taped the unaddressed Amended Complaint to the doors of a 12-story office building at 6331 Hollywood Blvd, Los Angeles, CA and 1710 Ivar Ave, Los Angeles, CA without attaching a summons. Ex. 8 (Soter Decl. ¶¶ 4-6). No notation indicated that the Amended Complaint was intended for Mr. Miscavige. *Id.*[7] Mr. Rivera's Affidavit of Non Service (ECF No. 92, at 3) is also untrue. Mr. Rivera was not required to wait for twenty minutes on July 14, as he states. Rather, he was, in fact immediately and accurately informed that Mr. Miscavige was not present. Ex. 7 (Farny Decl. ¶ 6b). Mr. Rivera also falsely

---

[6] Mr. Rivera attempted service two days earlier on August 17, 2022 and did not speak to anyone about his attempt to effect service. Ex. 8 (Soter. Decl. ¶¶ 4-6).

[7] 1710 Ivar Ave. is the side entrance to a 12-story office building with hundreds of occupants. It would be impossible to identify who the unaddressed Amended Complaint was intended for. Ex. 8 (Soter Decl. ¶¶ 4-6).

claims that he attempted service on July 21, 2022.  Mr. Rivera did *not* attempt service at any of the identified locations on that date.  Ex. 7 (Farny Decl. ¶ 6d).

After notifying the Court that the Florida and California summonses were returned unexecuted, Plaintiffs then requested a summons to serve a public officer under Fla. Stat. § 48.161.  ECF No. 93.  The Court granted Plaintiffs' Motion for Issuance of Summons but reminded Plaintiffs that "statutes relating to substituted service of process (in lieu of personal service of process) must be strictly construed; and the *burden of proof to sustain the validity of substituted service of process rests upon the person seeking to invoke the provision of such statutes*."  ECF No. 97, at 3 (citations and internal quotation marks omitted) (emphasis added).  Plaintiffs did not allege, and the Court did not address, whether Plaintiffs had established that Mr. Miscavige had in fact appointed the Secretary of State by engaging in business in the State and engaging in tortious conduct arising out of that business.  *Id.*

Plaintiffs then filed a second request for a four-week extension to "complete the procedural requirements mandated by Fla. St. § 48.161."  ECF No. 98, at 1.  The amended summons was issued on September 12, 2022 and was addressed to Mr. Miscavige "c/o Florida Secretary of State, Pursuant to Fla. Stat. § 48.161."  ECF No. 99.  The Court granted Plaintiffs' request for an extension to serve Mr. Miscavige by no later than October 10.  ECF No. 100.

Plaintiffs did not meet that deadline.  Instead, Plaintiffs filed a "Declaration of Compliance With Florida Statute Section 48.161 for Substitute Service on

David Miscavige" (ECF No. 141) notifying the Court of their failure to comply and outlining various purported attempts to serve Mr. Miscavige and/or provide notice of substituted service, including (a) calls to phone numbers that are not Mr. Miscavige's (ECF No. 141, ¶ 18); and (b) attempts to provide notice to an Instagram account operated by CSI, through an information request form on CSI-operated Scientology websites, and to a fraudulent LinkedIn account that did not actually belong to Mr. Miscavige and has since been removed by LinkedIn.  ECF No. 141, ¶ 25; Ex. 1 (McShane Decl. ¶ 10).  None of these purported "notice" efforts are effective methods of notice of substituted service under Florida law.

Plaintiffs also alleged that they received two signed, certified return receipts for 118 N. Ft. Harrison Avenue, Clearwater, Florida and 200 N. Osceola Avenue, Clearwater, Florida.  ECF No. 141, ¶ 22d-e.  But those signatures, contained on Plaintiffs' Exhibits 10 & 11, are not Mr. Adi's.  They are forged.  Mr. Adi did not fill out nor sign the certified return receipts attached to Plaintiffs' Declaration.  *See* Ex. 9 (Adi Decl. ¶¶ 4-8).  As with the service attempts set forth in the Amended Complaint, Mr. Miscavige was not present at any of the addresses identified in the Declaration of Compliance at the time of the purported service attempts.  *See* Ex. 2, 7 (Heller Decl. ¶ 13; Farny Decl. ¶ 4).

On December 5, 2022, counsel for Plaintiffs filed a Supplemental Declaration of Compliance notifying the Court that they received additional return receipts while two others remain outstanding (one "irretrievably lost" by U.S.P.S.).  ECF No. 151.  Despite being almost two months past the deadline

imposed by the Court, Plaintiffs did not then ask that the Court deem Mr. Miscavige served. *Id.*

On December 13, Plaintiffs filed the instant motion. ECF No. 152. They now contend that service should be deemed effective based on a mailing to 6331 Hollywood Blvd., Los Angeles, CA—an office building which no one contends is actually Mr. Miscavige's residence—even though that mailing was returned and marked as "RETURN TO SENDER; INSUFFICIENT ADDRESS; UNABLE TO FORWARD." ECF No. 151-1.

Prior to their December 13 motion, Plaintiffs never claimed that Mr. Miscavige should be deemed served or that service by mail to 6331 Hollywood Blvd was effective. And while Plaintiffs note that that address was the site of purported service attempts in other litigation, they neglect to inform the Court that in one of those matters the Court *granted* Mr. Miscavige's motion to quash, *Bixler, et al. v. Church of Scientology, Inc., et al.*, 19STCV29458 March 11, 2020 Order (Ex. 10), and in the other he was dismissed from the case for lack of personal jurisdiction without adjudication of service. *See Nat'l Ass'n of Forensic Counselors, Inc. v. Narconon Int'l*, No. 14-cv-187-RAW, Order, ECF 550 (E.D. Okla. Mar. 31, 2015).

Plaintiffs concede they did not personally serve Mr. Miscavige (ECF No. 141, ¶ 16) or obtain a properly signed return receipt of the Notice of Service upon the Secretary of State. ECF No. 141, ¶ 22; ECF No. 151. Plaintiffs repeatedly received unsigned return receipts with "Return to Sender" or "Refused" notations

indicating that they had the wrong addresses.  ECF No. 141, ¶ 22a-j; ECF No. 151,

¶¶ 2-3.  Furthermore, Plaintiffs did not request that Mr. Miscavige be deemed

served until 64 days after the Court-ordered service deadline.

**MEMORANDUM OF LAW**

Plaintiffs concede they failed to serve Mr. Miscavige personally but contend

that he should be deemed served through the Secretary of State because he is a

Florida resident who has evaded service, *see* Fla. Stat. § 48.161, and that the

Court should declare that he has defaulted on his obligation to answer or respond

to the complaint.  ECF No. 152.  Plaintiffs' request wholly ignores the statutory

requirements for service on the Secretary of State and misstates the relevant

facts.  Their request that he be found in default is baseless.  As such, Plaintiffs'

motion should be denied.

### A.    Florida's Strict Requirements for Substituted Service.

The general rule in Florida is that a defendant must be personally served.

*Societe Hellin, S.A. v. Valley Com. Cap., LLC*, 254 So. 3d 1018, 1020 (Fla. 4th

DCA 2018) (per curiam).  Fla. Stat. § 48.161 provides a narrow exception to this

rule permitting, "when authorized by law," substituted service on a public officer

for a non-resident or a Florida resident concealing their whereabouts *"who has*

*appointed a public officer as his or her agent for the service of process.*"[8]  Fla.

Stat. § 48.161(1) (emphasis added).

---

[8] Procedurally, in order to effectuate proper service of process pursuant to Fla.
Stat. § 48.161, a plaintiff must "(1) allege facts in the complaint that bring the
defendant within the purview of the substitute service statute; (2) serve the

Fla. Stat. § 48.161 does not, however, establish the grounds on which a defendant will be deemed to have appointed the Secretary of State, or any public officer, as "his or her agent for the service of process."  The instances in which a "public officer [is] designated by law," are highly limited and set forth expressly in other statutory provisions, including, as relevant here, Fla. Stat. § 48.181; *see, e.g.*, *United States v. Faro*, No. 2:20-cv-769-JLB-NPM, 2022 WL 111229, at *1 (M.D. Fla., Jan. 12, 2022).  As such, Fla. Stat. § 48.161 must be read *in pari materia* with Fla. Stat. § 48.181.  *Atlas Van Lines, Inc. v. Rossmoore*, 271 So. 2d 31, 32-33 (Fla. 2d DCA 1972).

Fla. Stat. § 48.181, which Plaintiffs do not even mention, "requires that a number of conditions be satisfied before it can be invoked. These conditions include the following: (1) the defendant must be either: (a) a nonresident, (b) a resident of Florida who subsequently became a nonresident, or (c) a resident of Florida concealing his or her whereabouts; (2) the defendant must operate, conduct, engage in, or carry on a business or business venture in Florida; and (3) the cause of action must arise out of any transaction or operation connected with

---

Secretary of State by providing him or her (or their delegate) with a copy of the summons and complaint; (3) pay the requisite fee to the Secretary of State; (4) provide Notice of service upon the Secretary of State to the defendant by sending him or her a copy of the summons and the complaint by registered or certified mail; (5) file the registered or certified mail return receipt; and (6) file an affidavit of compliance on or before the return date of the process." *Kirchik v. Cantrust Real Est. Enter., LLC*, No. 6:21-cv-1395-PGB-DCI, 2021 WL 7451917, at *3 (M.D. Fla. Dec. 6, 2021).

or incidental to the business or business venture." *Provident Bank v. Nascarella*, No. 8:16-cv-3052-T-17CPT, 2018 WL 11344798, at *2 (M.D. Fla. June 7, 2018).

Because statutes allowing substituted service are exceptions to the general rule requiring a defendant to be personally served, "due process values require *strict compliance* with the statutory requirements." *Monaco v. Nealon*, 810 So. 2d 1084, 1085 (Fla. 4th DCA 2002); *see also Carlini v. State Dep't of Legal Affs.*, 521 So. 2d 254, 255-56 (Fla. 4th DCA 1988) (en banc); *Hughes v. Am. Tripoli, Inc.*, No. 2:04-cv-485-FtM-29DNF, 2007 WL 2071529, at *2 (M.D. Fla. July 17, 2007); *Kasby v. Upper Deck Bar & Grill, LLC*, No. 6:11-cv-152-ORL-36CJK, 2012 WL 13141504, at *3 (M.D. Fla. Sept. 26, 2012).  Moreover, the plaintiff bears the burden of sustaining the validity of the service when faced with a challenge to service. *Carlini,* 521 So. 2d at 256; *see also Youngblood v. Citrus Assocs. of N.Y. Cotton Exch., Inc.*, 276 So. 2d 505, 509 (Fla. 4th DCA 1973) ("[T]he burden of proof to sustain the validity of service of process is upon the person who seeks to invoke the jurisdiction of the court.").  These requirements are not discretionary.  Absent effective service, "the court lacks personal jurisdiction over the defendant." *Carlini*, 521 So. 2d at 255.

## B.   Plaintiffs Have Failed to Prove That Mr. Miscavige Appointed the Secretary of State as His Agent.

Plaintiffs purport to have effected service on Mr. Miscavige pursuant to Fla. Stat. § 48.161, but fail entirely to address the predicate question of whether Mr. Miscavige appointed the Secretary of State as his agent for service of process. That failure is fatal to Plaintiffs' motion.

First, Plaintiffs do not contend, pursuant to Fla. Stat. § 48.161(1), that Mr. Miscavige has designated a public officer as his agent for the service of process. The plain language of Fla. Stat. § 48.161 makes clear that "service is sufficient service on a defendant *who has appointed a public officer as his or her agent for the service of process*." *Id.* (emphasis added).  But Plaintiffs do not assert anywhere that Mr. Miscavige designated the Secretary of State as his agent for service of process.  He has not.

To the extent Plaintiffs intend to rely on Fla. Stat. § 48.181, they have not said so.  Plaintiffs likely do not mention Fla. Stat. § 48.181 in any pleading for substituted service—*see* ECF Nos. 76, 93, 141, 151, 152—because they are aware that they have not met its requirements.

To pursue substituted service pursuant to Fla. Stat. § 48.181, a plaintiff must specifically allege that a defendant, *acting in his individual capacity*, operated, conducted, engaged in, or carried on a business or business venture in Florida and that the business activity is linked to the causes of action.  *Provident Bank*, 2018 WL 11344798, at *2-3 (holding that plaintiff's attempts to tie the defendants to four Florida LLCs in an effort to satisfy § 48.181's requirements were insufficient); *see also Newberry v. Rife*, 675 So. 2d 684, 685 (Fla. 2d DCA 1996) (finding § 48.181 inapplicable to individual defendant, who was a shareholder and director in a Florida corporation, where the complaint did not allege that she was personally engaged in business in Florida or that the cause of action arose from the conduct of business in Florida); *Farouki v. Attel et Cie*, 682

14

So. 2d 1185, 1186 (Fla. 4th DCA 1996) (finding that, absent allegations that the individual defendants acting in their individual capacities had engaged in business in Florida, service upon the Secretary of State could not constitute service upon them as individuals); *A.B.L. Realty Corp. v. Cohl*, 384 So. 2d 1351, 1355-56 (Fla. 4th DCA 1980) (finding § 48.181 inapplicable to the president and secretary of a corporation where the complaint contained no allegations that they had acted in their individual capacities). "A nonresident who is not conducting business in the state which is connected with the plaintiff's cause of action and who is merely an officer or director of a corporation is not amenable to suit in the manner attempted here." *Newberry*, 675 So. 2d at 685. Thus, Plaintiffs must allege and ultimately prove that Mr. Miscavige engaged in business in Florida on his own behalf, not merely in connection with his official duties on behalf of the Church.

Florida courts have made clear that the legislative intent behind Fla. Stat. § 48.181 was to treat nonresidents who had availed themselves of the privilege of "dealing in goods, services or property, whether in a professional or nonprofessional capacity, within the State in anticipation of economic gain," as operating a business or business venture within the state. *DeVaney v. Rumsch*, 228 So. 2d 904, 907 (Fla. 1969). The Florida Supreme Court has explained that "[t]he activities of the person sought to be served pursuant to Fla. Stat. § 48.181(1) must be considered collectively and show a general course of *business activity* in the State *for pecuniary benefit*." *Dinsmore v. Martin Blumenthal*

*Assocs., Inc.*, 314 So. 2d 561, 564 (Fla. 1975) (emphasis added).  Plaintiffs have wholly failed to make such a showing.

Although Plaintiffs claim that Mr. Miscavige's contacts with Florida include the purchase of real property and promoting, fundraising on behalf of, directing and managing Church of Scientology-related entities, Am. Compl. ¶ 17, the Complaint is devoid of any allegation that he did so in his individual capacity for pecuniary gain.  *See Provident Bank*, 2018 WL 11344798, at *2-3; *Dinsmore*, 314 So. 2d at 564.  Indeed, the claims of the Amended Complaint itself belie any such allegations, as they make clear that any activities by Mr. Miscavige were carried out as part of his duties for RTC, not undertaken in his individual capacity, and that such activity was for the pursuit of the Church's mission, including its ecclesiastic mission, rather than for his own pecuniary gain.  Am. Compl. ¶¶ 16, 17.[9]

 Even if Plaintiffs' unsubstantiated allegations about Mr. Miscavige's purported business ties to Florida were enough, Plaintiffs have failed to allege that those business ties are *connected to their causes of action*. Plaintiffs Gawain

---

[9] To overcome this fatal flaw, Plaintiffs attempt to suggest somehow that the collection of dues by IASA, a California-based religious organization that collects dues from members in Florida, creates a pecuniary interest for Mr. Miscavige that is relevant to this litigation.  *See* Am. Compl. ¶ 22.  A religious organization collecting membership fees does not amount to "business activity."  Moreover, Plaintiffs' allegation is wholly unrelated to Plaintiffs' claims for "human trafficking" and provides no connection between Mr. Miscavige's ecclesiastical activity in Florida and this case.

and Laura Baxter do not even allege they ever met Mr. Miscavige, let alone that he was personally involved in any purported harm they allegedly experienced.

Plaintiffs allege in the Complaint that Mr. Miscavige negotiates and directs the purchase of real property in Florida, Am. Compl. ¶ 17, but that allegation has absolutely nothing to do with their causes of action. Plaintiffs' allegations about "promoting, fundraising for and directing the management and operations of Defendants worldwide" fare no better. *Id.* Such conclusory allegations are facially deficient and are of no moment as they do not give rise to the purported wrongs claimed in the Complaint. *See Easy Fly S.A.L. v. Aventura Aviation, Inc.*, No. 10-CV-60247, 2010 WL 4670606, at *5 (S.D. Fla. Nov. 9, 2010). General allegations of business activity, such as these, do not suffice. *Id.*

Here, Plaintiffs' own allegations also make plain that the conduct complained of occurred outside of Florida. For example, many of Plaintiffs' specific claims relate to alleged treatment they received on the ship Freewinds, which they allege to be a Panama-flagged ship with a home port in Curacao, operating exclusively outside U.S. waters. Am. Compl. ¶¶ 39-40. And none of the allegations pertain to any business conducted by Mr. Miscavige in his personal capacity. Because the Complaint fails to identify any tortious activity undertaken by Mr. Miscavige in connection with his own purported business activities in Florida, Plaintiffs have failed to establish a basis to serve the Secretary of State.

### C.   Plaintiffs Have Failed to Establish That Mr. Miscavige Is Concealing His Whereabouts.

Even if Plaintiffs could establish that their claims arise from Mr. Miscavige's conduct of personal business in Florida—which they cannot—they have nevertheless failed to demonstrate that he evaded service.  To the contrary, Plaintiffs' allegations do not show that Mr. Miscavige has done anything to conceal himself but rather prove only that they have not been able to properly serve Mr. Miscavige.

It is well-settled that "[r]epeated attempts at service on the wrong location do not amount to due diligence." *Societe Hellin, S.A.*, 254 So. 3d at 1021; *see also Robinson v. Cornelius*, 377 So. 2d 776, 778 (Fla. 4th DCA 1979) (due diligence was not shown where plaintiff knew defendant did not reside at a particular address but attempted service there on multiple occasions); *Linn v. Kidd*, 714 So. 2d 1185 (Fla. 1st DCA 1998) (directing that service of process be quashed because the certified mail was returned as undeliverable with no indication that the defendants intentionally refused the letters); *Wyatt v. Haese*, 649 So. 2d 905, 907 (Fla. 4th DCA 1995) (reversing a judgment because plaintiff failed to comply with the statutory notice requirements where no return receipt was executed by the defendant and mail was returned marked as "UNCLAIMED" and "NOT AT THIS ADDRESS").  Plaintiffs have repeatedly tried to effectuate service of process at locations that Mr. Miscavige neither resided nor was located.  Exs. 2, 7 (Heller Decl. ¶¶ 6-13; Farny Decl. ¶¶ 4-6).  Indeed, Mr. Miscavige was not located at any

18

of the locations where service was attempted on the dates of the purported personal service attempts. *See* Exs. 2, 7 (Heller Decl. ¶ 13; Farny Decl. ¶ 4).

Plaintiffs admit that they were repeatedly told that they had the wrong addresses and nevertheless, continued to attempt service at erroneous locations. *See* Am. Compl. ¶ 8(a)-(g); ECF No. 141, ¶ 16; ECF No. 151, ¶¶ 2-3; ECF No. 152, at 2-5. Plaintiffs' persistence in error does not amount to evasion by Mr. Miscavige. *See Hernandez v. State Farm Mut. Auto. Ins. Co.*, 32 So. 3d 695, 699 (Fla. 4th DCA 2010) ("[W]here the failure of delivery of process was not caused by the defendant's rejection of the mail and where such failure might have resulted from a cause not chargeable to the defendant, then the statutory requirements have not been met and service of process is insufficient. . . .The mere fact that [the defendant] was not located at the address where [the plaintiff] sent the certified mail does not give rise to an inference that [the defendant] intentionally failed or refused to claim the substitute process.")

Plaintiffs' inability to locate Mr. Miscavige is not evidence of his "evasion." As he is not a resident of Florida and travels extensively throughout the world as part of his duties for the Church (Ex. 1, McShane Decl. ¶¶ 6-7), it should come as little surprise that Mr. Miscavige was not present for the service attempts. But Plaintiffs have nothing else to offer in support of their assertion. Plaintiffs present no evidence, or even allegations, that Mr. Miscavige has altered his

routine or engaged in any type of subterfuge whatsoever.  He has not.[10]  Although Plaintiffs allege that they have surveilled various locations of attempted service, they notably do not allege that any of their private investigators or process servers actually observed Mr. Miscavige at the surveilled locations (including during service of process attempts), much less that he resides there.  Certainly, Plaintiffs have not submitted any sworn declarations from a process server or a private investigator that includes such an observation.  Nor do they assert that he was present at that location at the time of service.

Plaintiffs make much of the fact that the Scientology buildings where they attempted service employ security guards who refused to divulge information about Mr. Miscavige's whereabouts, Am. Compl. ¶ 8; ECF No. 152, at 10, but that is hardly evidence of evasion by Mr. Miscavige.  Security guards do not generally provide information about who is or is not present, particularly so if that person is the ecclesiastical leader of their religion, ECF No. 88-1, ¶ 9, and, like Mr. Miscavige, a regular target of death threats, some of which have led to criminal convictions.  *See* Ex. 7 (Farny Decl. ¶¶ 7-9).  Furthermore, Plaintiffs' allegations that security guards are trained to refuse service attempts specific to Mr. Miscavige is incorrect.  Those security guards are simply not authorized to accept

---

[10] In fact, Mr. Miscavige has continued his normal routine which includes travel around the world as part of his role as the ecclesiastical leader of the Church of Scientology. Ex. 1 (McShane Decl. ¶ 6).

service on *anyone's* behalf—they are security guards, not designated agents. *See*
Ex. 2 (Heller Decl. ¶ 12).

Where, as here, Plaintiffs cannot prove that the failure of delivery of
process is chargeable to the defendant, substituted service should not be allowed.
*See Smith v. Leaman*, 826 So. 2d 1077, 1079 (Fla. 2d DCA 2002) (quashing
substituted service on a defendant where the plaintiffs established that they had
conducted a diligent search and that the defendant was concealing his
whereabouts but they did not establish that the defendant was actively refusing
service); *see also Crews v. Rohlfing*, 285 So. 2d 433, 434 (Fla. 3rd DCA 1973)
("[I]f the failure of delivery of process was not caused by the defendant-
addressee's rejection of the mail and might have resulted from a cause not
chargeable to the defendant, then the statute would not have been complied with
and service of process would be insufficient.")

### D.   Plaintiffs Have Failed to Strictly Comply With the Applicable Statutory Requirements.

As this Court noted (ECF No. 97, at 3), "'statutes relating to substituted
service of process (in lieu of personal service of process) must be strictly
construed; and the burden of proof to sustain the validity of substituted service of
process rests upon the person seeking to invoke the provisions of such statutes.'"
(quoting *Hughes,* 2007 WL 2071529, at \*2 and citing *Kasby,* 2012 WL 13141504,
at \*3.) "Because the statute allowing substituted service is an exception to the
general rule requiring a defendant to be personally served, there must be strict

compliance with the statutory requirements so as to protect due process guarantees." *Hernandez*, 32 So. 3d at 698.

Plaintiffs have not strictly complied with the applicable statutory requirements and they concede as much. Plaintiffs admit that they did not file a signed return receipt as required by statutory law. ECF No. 141, ¶¶ 22-23; ECF No. 151, ¶ 2a-c; ECF No. 152, at 12.[11] As the court determined in the *Hernandez* case, "[t]he mere fact that [the defendant] was not located at the address where [the plaintiff] sent the certified mail does not give rise to an inference that [the defendant] intentionally failed or refused to claim the substitute process. All that is known is that the letter carrier was unable to deliver it either because there was no mail receptacle or because a forwarding address had expired." 32 So. 3d at 699. Plaintiffs' failure to file a signed return receipt is not attributable to Mr. Miscavige and Plaintiffs have not alleged any facts to the contrary. Therefore, there is no basis to waive this requirement as Plaintiffs request. Because Plaintiffs have failed to strictly comply with the substituted service statute, their Motion should be denied.

### E.    Mr. Miscavige Should Not Be Found to Be In Default.

After failing to properly serve Mr. Miscavige either personally or by substituted service, Plaintiffs ask for the extreme remedy that the Court direct the

---

[11] As noted *supra*, the two return receipts that Plaintiffs attached to the Declaration of Compliance, ECF No. 141, Exs. 10 and 11, are forgeries. *See* Ex. 9 (Adi Decl. ¶¶ 4-8).

Clerk to enter a default against Mr. Miscavige.  ECF No. 152, at 15-16.  Plaintiffs'
request is baseless.

Prior to filing the instant motion, Plaintiffs did not once claim that Mr.
Miscavige had in fact been served in accordance with law or should be deemed
served.  Instead, they waited for the presumptive twenty-one-day deadline to
answer the Complaint to expire and only then claimed that a mailing sent to a
California office building—6331 Hollywood Blvd.—should be deemed service on
Mr. Miscavige, although they do not allege that he received that mailing,[12] or that
even he resides at that address, and to the contrary allege that he is a resident of
Florida.

Using such tactics to claim a default is starkly at odds with the fundamental
principal that defaults are disfavored in the law, and should "be used sparingly."
*Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316-17 (11th Cir.
2002); *see also Fla. Physician's Ins. Co. v. Ehlers,* 8 F.3d 780, 783 (11th Cir.
1993) (per curiam) ("We note that defaults are seen with disfavor because of the
strong policy of determining cases on their merits.").  While Plaintiffs apparently
only seek a ruling that Mr. Miscavige has defaulted on the deadline to answer,
there is little doubt that they do so in order to ultimately seek a default judgment.
But "[e]ntry of judgment by default is a drastic remedy which should be used only
in extreme situations."  *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985) (per

---

[12] Plaintiffs concede that their mailing was returned to sender on November 12,
2022.  ECF No. 152, at 16.

curiam); *see also Mitchell*, 294 F.3d at 1317 (noting there must be "exceptional circumstances" for entry of a default judgment (citation omitted)).  "There is a strong preference that cases be heard on the merits instead of imposing sanctions that deprive a litigant of his day in court." *Owens v. Benton*, 190 F. App'x 762, 763 (11th Cir. 2006) (per curiam).  A default judgment "is not [a] procedure intended to furnish an advantage to the plaintiff so that a defense may be defeated or a judgment reached without the difficulty that arises from a contest by the defendant." *Coggin v. Barfield*, 150 Fla. 551, 554 (1942).  Further, a court must determine that it has personal jurisdiction over a defendant before entering a default judgment.  *Fameflynet, Inc. v. Oxamedia Corp.*, 2018 WL 8244525 at *1 (S.D. Fla. May 1, 2018).[13]

Plaintiffs appear to base their default not on any exceptional circumstances but solely on the fact that Mr. Miscavige has not yet answered a complaint with which he was never served, and their assertion, based on declarations from nearly fifteen years ago that Mr. Miscavige is involved in legal matters pertaining to the Church of Scientology and therefore should have known that he was required to answer the Complaint.[14]  Such assertions do not remotely approach "exceptional

[13] As noted *supra*, if required to respond to Plaintiffs' Complaint, Mr. Miscavige will contest Plaintiffs' Complaint on multiple grounds, including lack of personal jurisdiction.

[14] Plaintiffs rely on a Spurlock Declaration signed July 28, 2009, that states that in *1986*, Mr. Miscavige "set a course for ending all [then-existing] lawsuits so that we could devote our time and energies to expanding the religion."  ECF No. 152-8, ¶ 15.  That says nothing about Mr. Miscavige's going-forward involvement in litigation, let alone his role more than thirty years later and thirteen years after

circumstances" that would permit such a "drastic remedy" as default. *Wahl*, 773 F.2d at 1174. In the event that the Court determines that Plaintiffs have satisfied the requirements of Fla. Stat. §§ 48.181 and 48.161, and that Mr. Miscavige has been effectively served by substituted service, he should be permitted to answer or otherwise respond to the Complaint within twenty-one days of such Order.

## CONCLUSION

For the foregoing reasons, Mr. Miscavige respectfully requests that this Court deny Plaintiffs' motion.

Respectfully submitted,

Dated: December 27, 2022

*/s/William J. Schifino, Jr.*
William J. Schifino, Jr., Esq.
Florida Bar No. 564338
Justin P. Bennett, Esq.
Florida Bar No. 112833
GUNSTER, YOAKLEY & STEWART, P.A.
401 E. Jackson Street, Suite 1500
Tampa, Florida 33602
Telephone: (813) 228-9080
Facsimile: (813) 228-6739
Email- wschifino@gunster.com
Email- jbennett@gunster.com

Joseph M. Terry (admitted *pro hac vice*)
Krystal C. Durham (admitted *pro hac vice*)
Williams & Connolly LLP

---

the declaration was signed in 2009. Similarly, the Joasem Declaration does nothing to advance Plaintiffs' assertion as it states that "between 1999 and 2003 Marty [Rathbun] came to Clearwater frequently to work on legal matters," and by the end of 2003, Mr. Rathbun "was *alone* in Clearwater handling legal matters once more." ECF No. 152-9, ¶¶ 18-19 (emphasis added). It has no bearing on Mr. Miscavige's current role in legal matters.

680 Maine Street, S.W.
Washington, D.C. 20024
(202) 434-5000

*Attorneys for David Miscavige*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Opposition was electronically filed on December 27, 2022, with the Clerk of Court via the Court's CM/ECF system which will send a notice of electronic filing and copy to all counsel of record.

*/s/ Joseph M. Terry*

Joseph M. Terry