UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWAIN BAXTER, LAURA
BAXTER and VALESKA PARIS,

      Plaintiffs,

v.                                                          Case No: 8:22-cv-986-TPB-JSS

DAVID MISCAVIGE, CHURCH OF
SCIENTOLOGY INTERNATIONAL,
INC., RELIGIOUS TECHNOLOGY
CENTER, INC., IAS
ADMINISTRATIONS, INC.,
CHURCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, INC.
and CHURCH OF SCIENTOLOGY
FLAG SHIP SERVICE
ORGANIZATION, INC.,

      Defendants.

_____/

## <u>ORDER</u>

Plaintiffs move the court for an order declaring Defendant David Miscavige served with process pursuant to Florida Statute section 48.161 and entering default against Miscavige pursuant to Federal Rule of Civil Procedure 55(a). (Motion, Dkt. 152.)  Miscavige made a limited appearance in this matter to challenge service and oppose Plaintiffs' Motion.  *See* (Dkts. 153, 163.)  The court held a hearing on the Motion on January 20, 2023.  (Dkt. 164.)  For the reasons set forth below, the Motion is granted in part and denied in part.

## BACKGROUND

### 1. Factual Background and Parties

Plaintiffs bring this action pursuant to the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. §§ 1581–1597, against Miscavige and five organizational Defendants linked to the Church of Scientology[1] (Organizational Defendants). (Dkt. 79 ¶¶ 1–2.) The Organizational Defendants include Religious Technology Center, Inc. (RTC), Church of Scientology International, Inc. (CSI), Church of Scientology Flag Service Organization, Inc. (FSO), Church of Scientology Flag Ship Service Organization, Inc. (FSSO) and the International Association of Scientologists Administrations, Inc. (IASA). (*Id.* ¶¶ 2, 18–22.)

In their Amended Complaint, Plaintiffs allege that "Defendants violated the TVPRA by committing, attempting, and conspiring to commit, and/or by participating in a trafficking venture that committed, attempted, and conspired to commit, forced labor and other human trafficking offenses against Plaintiffs[.]" (*Id.* ¶ 2.) Plaintiffs allege that as children, they were "coerced . . . to join the Defendants' 'Sea Org' and provide unpaid labor and services for a decade or longer on Defendants' ocean going cruise ship vessel, the 'Freewinds.'" (*Id.* ¶ 2.) Plaintiffs further allege that Defendants "knowingly obtained valuable benefits, including but not limited to financial enrichment, and free labor and services, like construction work, landscaping,

---

[1] Plaintiffs' Amended Complaint refers to "'Scientology' and 'Church of Scientology' [as] umbrella terms used to refer to the entire universe of entities and organizations affiliated with Defendants." (Dkt. 79 at 1 n.1.)

and food preparation at [Defendants'] 'Flag Base,' in Clearwater, Florida, and aboard the Freewinds."  (*Id.* ¶ 2.)

According to the Amended Complaint, the Church of Scientology "is organized and operates through a global network of corporations, trusts, and unincorporated associations and organizations."  (Dkt. 79 ¶ 26.)  Miscavige is alleged to be the leader of the Church of Scientology, the Chairman of the Board of Defendant RTC, and the head of Scientology's Sea Org, "an unincorporated 'association' of individuals," whose members staff and manage the Organizational Defendants and all Scientology-related entities.  (*Id.* ¶¶ 16–17, 25, 28.)  Plaintiffs allege that "[b]ecause all [Organizational Defendants] are staffed and run by Sea Org members, [] Miscavige is effectively the senior-most officer of all of them regardless of whether he is listed as an officer or director in their corporate filings."  (*Id.* ¶ 16.)  In his role, Miscavige "is kept informed about and directs the management of all [Organizational Defendants'] operations at a considerable level of detail[.]" (*Id.* ¶ 25.)

With respect to the Organizational Defendants, Plaintiffs allege that Defendant RTC is a California entity that is the "principal management, security, and enforcement operation for Scientology."  (*Id.* ¶ 18.)  Defendant CSI is a non-profit corporation, headquartered in California, which, among other things, licenses Scientology's intellectual property.  (*Id.* ¶ 19.)  Defendant FSO is incorporated and headquartered in Florida and is alleged to be a licensee of Scientology's intellectual property from CSI.  (*Id.* ¶ 20.)  Among other things, FSO owns, manages, and operates "Flag Base, Scientology's substantial real property holdings in Clearwater, Florida,"

which serves as "Scientology's global hub of operations and its largest source of revenues, providing (among other things) temporary quarters for visiting Scientologists, facilities for classes and auditing sessions, dining and meeting facilities, and the center where Defendants host large gatherings[.]" (*Id.*) Defendant FSSO is "a not-for-profit corporation with its principal place of business in Clearwater, Florida [that] operates the Freewinds." (*Id.* ¶ 21.)[2] FSSO "also recruits and employs Sea Org members to work on its crew, and it collects fees from members of the International Association of Scientologists (IAS) for courses, services, and programs they participate in on the ship." (*Id.* ¶ 21.) Finally, Defendant IASA is a Delaware corporation, headquartered in California, with offices and operations in Clearwater, Florida. (*Id.* ¶ 22.) Plaintiffs allege that "during the relevant time, IASA's principal place of business was in Clearwater, Florida from 2005 to 2014" and that Miscavige "exclusively directs all operations of IASA." (*Id.*) Among other things, IASA collects membership dues and "administers and transfers those funds (and other payments solicited by IAS) under the exclusive direction of Defendant Miscavige, for his personal enrichment and benefit and for the benefit of [the Organizational Defendants], as well as the Freewinds and other Scientology-affiliated entities, organizations, properties, and enterprises." (*Id.*)

---

[2] Plaintiffs also allege that "CSI and Miscavige control a number of trusts, including the Flag Ship Trust, which among other things owns the company that owns the . . . Freewinds." (Dkt. 79 ¶¶ 19, 39.)

Plaintiffs seek to hold Defendants jointly and severally liable for compensatory and punitive damages for forced labor and attempted forced labor in violation of the TVPRA, 18 U.S.C. §§ 1589, 1594(a) (Count I); conspiracy to obtain forced labor in violation of the TVPRA, 18 U.S.C. §§ 1589, 1594(b) (Count II); trafficking and attempted trafficking with respect to forced labor in violation of the TVPRA, 18 U.S.C. §§ 1590, 1594(a) (Count III); conspiracy to traffic with respect to forced labor in violation of the TVPRA, 18 U.S.C. §§ 1590, 1594(b) (Count IV); peonage and attempted peonage in violation of the TVPRA, 18 U.S.C. §§ 1581, 1594(a) (Count V); and conspiracy to commit peonage in violation of the TVPRA, 18 U.S.C. §§ 1581, 1594(b) (Count VI).  (Dkt. 79 ¶¶ 214–56.)

### 2.  Procedural Background

Plaintiffs filed their initial Complaint on April 28, 2022.  (Dkt. 1.)  On July 28, 2022, the court granted Plaintiffs' motion to extend the deadline to perfect service on Miscavige until September 12, 2022.  (Dkt. 77.)[3]  Plaintiffs thereafter filed their Amended Complaint (Dkt. 79), which included additional facts regarding their attempts to locate Miscavige and serve him with process.  *See* (*id.* ¶¶ 7–12.)  On August 31, 2022, Plaintiffs filed affidavits of non-service on Miscavige, discussing their attempts at personal service on Miscavige in Florida and California in July and August 2022.  (Dkts. 91, 92.)  On September 9, 2022, the court granted Plaintiffs' motion for issuance of a summons to Miscavige in the care of Florida's Secretary of State to

---

[3] The Organizational Defendants have been served and have responded to Plaintiffs' Complaint and the Amended Complaint.  *See* (Dkts. 40, 41, 42, 43, 67, 68, 70, 71, 72, 84, 85, 87, 88, 89.)

perfect service pursuant to Florida Statute section 48.161.  (Dkt. 97.)  The court then granted Plaintiffs a second extension of the deadline to perfect service on Miscavige until October 10, 2022.  (Dkt. 100.)  On October 10, 2022, Plaintiffs' counsel filed a declaration of compliance with Florida Statute section 48.161 (Dkt. 141), which Plaintiffs thereafter supplemented with additional information (Dkt. 151).

Plaintiffs now move the court for an order declaring Miscavige served with process through substitute service on Florida's Secretary of State pursuant to Florida Statute section 48.161.  (Dkt. 152.) Plaintiffs also seek an order entering default against Miscavige pursuant to Federal Rule of Civil Procedure 55(a).  (*Id.*)  In support of their Motion, Plaintiffs rely on the allegations in the Amended Complaint and several documents submitted in support, including affidavits and declarations detailing their attempts to locate and serve Miscavige.  *See, e.g.*, (Dkts. 141, 151, 152.)  Miscavige made a limited appearance in this matter, specifically to challenge service of process and oppose Plaintiffs' Motion.  (Dkts. 153, 163.)  In support of his opposition, Miscavige submits declarations refuting certain of Plaintiffs' allegations regarding Miscavige's residence, place of business, and Plaintiffs' attempts to serve Miscavige with process. *See, e.g.*, (Dkt. 163-1, 163-2, 163-7, 163-8, 163-9.) Following the hearing, Miscavige filed supplementary documentation with the court (Dkt. 166), and Plaintiffs filed a supplementary declaration of compliance with Florida Statute section 48.161 and supporting documentation, describing, among other things, their unsuccessful attempts to effectuate service on Miscavige following his counsel's appearance in this action (Dkt. 167).

**APPLICABLE STANDARDS**

Constitutional due process requires that litigants have notice of an action brought against them and an opportunity to be heard.  *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").  Thus, after a complaint is filed, a "plaintiff is responsible for having the summons and complaint served" on a defendant.  Fed. R. Civ. P. 4(c).  "[T]he fundamental purpose of service is 'to give proper notice to the defendant in the case that he is answerable to the claim of plaintiff and therefore, to vest jurisdiction in the court entertaining the controversy.'"  *Shurman v. Atl. Mortg. & Inv. Corp.*, 795 So. 2d 952, 953 (Fla. 2001) (citation omitted).  Where service of process is invalid, the court lacks jurisdiction over a defendant.  *See Colclough v. Gwinnett Pub. Schs.*, 734 F. App'x 660, 662 (11th Cir. 2018) ("Given the improper service, the Court lacked jurisdiction over the matter and could not render a default judgment or enter default."); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of such service (or waiver of service by the defendant), a court ordinally may not exercise power over a party the complaint names as defendant.").

Federal Rule of Civil Procedure 4 provides the methods by which a plaintiff may serve process on a defendant.  Pursuant to Federal Rule of Civil Procedure 4(e), an individual defendant may be served by "following state law for serving a summons

in an action brought in the courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1); *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998) (Rule 4(e) "limits the jurisdiction of federal courts to service over nonresident defendants in the manner authorized by the forum state's law"). Accordingly, Plaintiffs may serve Miscavige by following Florida law.

In Florida, the general rule is that a defendant must be personally served. *Societe Hellin, S.A. v. Valley Com. Cap., LLC.*, 254 So. 3d 1018, 1020 (Fla. 4th DCA, 2018) (citing *Alvarado-Fernandez v. Mazoff*, 151 So. 3d 8, 17 (Fla. 4th DCA 2014)). However, Florida Statute section 48.181 provides for an exception to this general rule by permitting substitute service of process on Florida's Secretary of State. Fla. Stat. § 48.181 (1995), *amended by* Fla. Stat. § 48.181 (effective January 2, 2023). [4] Section 48.181 provides a means by which a Florida court can acquire personal jurisdiction over nonresidents and individuals concealing their whereabouts who conduct sufficient business in the state. *Labbee v. Harrington*, 913 So. 2d 679, 682 (Fla. 3d DCA

---

[4] Sections 48.181 and 48.161 of the Florida Statutes were amended during the pendency of this Motion with effective dates of the amendments of January 2, 2023. Florida courts have consistently held that "[a]mendments or additions to the long-arm statute will not be applied retroactively unless the legislature specifically so provides." *Oldt v. Sides*, 573 So. 2d 440, 441 (Fla. 2d DCA 1991) (citing *AB CTC v. Morejon*, 324 So. 2d 625 (Fla. 1975)); *Conley v. Boyle Drug Co.*, 570 So. 2d 275, 288 (Fla. 1990) ("This Court has consistently held that [long-arm statutes] [cannot] be applied retroactively to allow service under [their] provisions as to an alleged wrongful act committed prior to the enactment of the statute.") (collecting cases); *Am. Motors Corp. v. Abrahantes*, 474 So. 2d 271, 274 (Fla. 3d DCA 1985) ("[W]e feel constrained to follow the long line of cases which hold that amendments or additions to Florida long-arm statutes are not to be applied to causes of action which accrue prior to the date the amendments or additions became effective.") (collecting cases). The court finds nothing in the text of the amended sections 48.181 and 48.161 to indicate that the amendments apply retroactively. Accordingly, the court analyzes Plaintiffs' Motion under the prior versions of the statutes that were in effect at the time Plaintiffs sought to effectuate substitute service on Miscavige and in effect during the relevant period of the allegations from Plaintiffs' Amended Complaint.

2005) (citing *A. B. L. Realty Corp. v. Cohl,* 384 So. 2d 1351, 1353 (Fla. 4th DCA 1980)).

In relevant part, section 48.181 states:

> The acceptance by any person or persons, individually or associated together as a copartnership or any other form or type of association, who are residents of any other state or country, and all foreign corporations, and any person who is a resident of the state and who subsequently becomes a nonresident of the state or conceals his or her whereabouts, of the privilege extended by law to nonresidents and others to operate, conduct, engage in, or carry on a business or business venture in the state, or to have an office or agency in the state, constitutes an appointment by the persons and foreign corporations of the Secretary of State of the state as their agent on whom all process in any action or proceeding against them, or any of them, arising out of any transaction or operation connected with or incidental to the business or business venture may be served.  The acceptance of the privilege is signification of the agreement of the persons and foreign corporations that the process against them which is so served is of the same validity as if served personally on the persons or foreign corporations.

Fla. Stat. § 48.181.  To properly effectuate substitute service based on section 48.181, "the complaint must either plead a basis for jurisdiction pursuant to the language of section 48.181 or allege sufficient jurisdictional facts to satisfy the statute."  *Labbee*, 913 So. 2d at 682 (citation omitted); *see also Mecca Multimedia, Inc. v. Kurzbard*, 954 So. 2d 1179, 1182 (Fla. 3d DCA 2007) ("The Florida courts have emphasized, that in order to support substituted service of process on a defendant through the Secretary of State, the complaint must allege the jurisdictional requirements prescribed by the applicable long-arm statute.").[5]

---

[5] "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court."  *Diamond Crystal Brands, Inc. v. Food Movers Int'l., Inc.*, 593 F.3d 1249, 1258 (11th Cir. 2010) (quoting *Lockard*, 163 F.3d at 1265); *see also Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) ("A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same

Where substitute service is authorized by Florida Statute section 48.181, section 48.161 provides the method for effectuating such service. Fla. Stat. § 48.161 (1995), *amended by* Fla. Stat. § 48.161 (effective January 2, 2023); *Pelycado Onroerend Goed B.V. v. Ruthenberg*, 635 So. 2d 1001, 1003 (Fla. 5th DCA 1994) ("Sections 48.161 and 48.181 must be read together for service to be effective.") (citing *Atlas Van Lines, Inc. v. Rossmoore,* 271 So. 2d 31, 32 (Fla. 2d DCA 1972)). As relevant here, section 48.161 provides:

> When authorized by law, substituted service of process on a nonresident or a person who conceals his or her whereabouts by serving a public officer designated by law shall be made by leaving a copy of the process with a fee of $8.75 with the public officer or in his or her office or by mailing the copies by certified mail to the public officer with the fee. The service is sufficient service on a defendant who has appointed a public officer as his or her agent for the service of process. Notice of service and a copy of the process shall be sent forthwith by registered or certified mail by the plaintiff or his or her attorney to the defendant, and the defendant's return receipt and the affidavit of the plaintiff or his or her attorney of compliance shall be filed on or before the return day of the process or within such time as the court allows[.]

Fla. Stat. § 48.161. Perfection of substitute service pursuant to section 48.161 "requires strict compliance with the statutory prerequisites because such service is an exception to personal service." *Dixon v. Blanc*, 796 F. App'x 684, 687 (11th Cir. 2020) (citing *Wyatt v. Haese*, 649 So. 2d 905, 907 (Fla. 4th DCA 1995)).

The party seeking to effectuate substitute service bears the burden of pleading facts sufficient to support the applicability of the substitute service statutes. *Green*

---

extent that a Florida court may, so long as the exercise is consistent with federal due process requirements.").

*Emerald Homes, LLC v. Fed. Nat'l Mortg. Ass'n*, 224 So. 3d 799, 802 (Fla. 2d DCA 2017) (citing *Mecca Multimedia, Inc.*, 954 So. 2d at 1182); *see also Dixon*, 796 F. App'x at 687 ("To support substituted service under [section] 48.161, 'the plaintiff must allege in his complaint the ultimate facts bringing the defendant within the purview of the statute.'") (quoting *Wiggam v. Bamford*, 562 So. 2d 389, 390 (Fla. 4th DCA 1990)). Where a defendant challenges the applicability of the substitute service statutes by affidavit or other proof, the plaintiff must then demonstrate sufficient evidence to bring the defendant within the purview of the statutes.  *See, e.g., Gower v. Hemmerle*, 779 So. 2d 657, 658 (Fla. 5th DCA 2001) (reversing denial of motion to quash service where "by affidavit [defendant] made a showing that he was not amenable to service under sections 48.161 and 48.171" and plaintiff failed to carry burden in response) (citing *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499 (Fla. 1989) (applying shifting burden to determine whether court had personal jurisdiction over defendant through long-arm statute)); *McLean v. Church of Scientology of Cal.*, 538 F. Supp. 545, 547 (M.D. Fla. 1982) ("If the allegations of jurisdictional facts are challenged with affidavits or other evidence, the plaintiff must then establish by opposing affidavit, testimony or documents, those material facts supporting the allegations which would justify service of process under the long-arm statutes.") (citing *McNutt v. General Motors Corp.*, 298 U.S. 178 (1936)); *see also* 5B Wright & Miller, Fed. Prac. & Proc. Civ. § 1353 (3d ed.) ("[W]hen the defendant supports a motion to quash service with an affidavit denying the validity of service, the plaintiff may present counter-affidavits, depositions, or oral testimony[.]").   Where a defendant fails to submit affidavits in opposition to the

jurisdictional allegations in the complaint, those properly pleaded factual allegations are accepted as true for purposes of determining whether the complaint's allegations support substitute service of process.  *See Labbee*, 913 So. 2d at 681 (noting that a defendant's unsubstantiated challenge as to the sufficiency of allegations in a complaint relating to long-arm jurisdiction must be treated as an admission that all facts are properly pled) (citing *Electro Eng'g Products Co. v. Lewis*, 352 So. 2d 862, 864 (Fla. 1977)).  "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff."  *Diamond Crystal Brands, Inc.*, 593 F.3d at 1257 (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).

## ANALYSIS

Upon consideration of the Amended Complaint, the parties' submissions, and the arguments of counsel, the court finds that Miscavige has been properly served with process pursuant to sections 48.181 and 48.161 of the Florida Statutes.  Nevertheless, the court declines to find Miscavige in default, and instead, Miscavige shall answer or otherwise respond to Plaintiffs' Amended Complaint (Dkt. 79) within 21 days of this order as required by Federal Rule of Civil Procedure 12.

### 1.  Plaintiffs' Due Diligence in Locating and Serving Miscavige

Initially, the court finds that Plaintiffs have demonstrated the requisite due diligence in attempting to locate Miscavige such that they are entitled to use Florida's substitute service statutes.  Because it is an exception to personal service, a plaintiff seeking to use the substitute service statute must "demonstrate the exercise of due

diligence in attempting to locate the defendant." *Alvarado-Fernandez*, 151 So. 3d at 16 (quoting *Wiggam*, 562 So. 2d at 391).  To meet this standard, a plaintiff must "justify the use of substitute service by demonstrating '[it] reasonably employed knowledge at [its] command, made diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstances, to acquire information necessary to enable [it] to effect personal service on the defendant.'" *Kirchik v. Cantrust Real Est. Enter., LLC*, No. 6:21-cv-1395-PGB-DCI, 2021 WL 7451917, at *2 (M.D. Fla. Dec. 6, 2021) (quoting *Hughes v. Am. Tripoli, Inc.*, No. 2:04-cv-485-FtM-29DNF, 2007 WL 2071529, at *2 (M.D. Fla. July 17, 2007)).

Miscavige argues that Plaintiffs have not sufficiently shown that he is evading service and rather that Plaintiffs have continued to attempt service at erroneous locations or locations where Miscavige was not present.  (Dkt. 163 at 18–21.) However, upon review of the allegations in the Amended Complaint and the submissions of the parties, the court finds that Plaintiffs have "reasonably employed knowledge at [their] command, made diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstances, to acquire information necessary to enable [them] to effect personal service on [Miscavige]." *See Kirchik*, 2021 WL 7451917, at *2.  Plaintiffs have been diligently attempting to locate and effectuate personal service on Miscavige over the course of several months since filing their initial Complaint. *See, e.g.*, (Dkts. 76, 91, 92.)  Paragraphs 7–10 in the Amended Complaint detail the efforts employed by Plaintiffs' counsel to locate and serve Miscavige including, employing a private investigation firm to conduct proprietary and open-

source intelligence research and surveillance of potential locations for service, conducting searches of public records databases and court records, and contacting individuals and attorneys associated with Defendants.  (Dkt. 79 ¶ 7); *see also* (Dkts. 76, 141.)  Plaintiffs attempted to serve Miscavige a total of 27 times at five different locations in Florida and five different locations in California before filing their Motion. (Dkt. 141 at 7–9; Dkts. 141-3, 141-5.)  Plaintiffs' counsel has also attempted to call four separate telephone numbers that their investigation yielded as possible leads to locate Miscavige and were unable to gain additional information for service.  (Dkt. 141 at 10.)

While Miscavige repeatedly asserts that Plaintiffs have attempted to effectuate service at the wrong address or addresses at which he was not present, Miscavige has never provided Plaintiffs or the court with the correct address.  Indeed, following his counsel's appearance in this matter, Plaintiffs have continued their attempts to effectuate service on Miscavige through his counsel and other identified addresses, and have sought to have Miscavige's counsel provide an adequate address at which to effectuate service.  (Dkt. 167.)  Miscavige's counsel has declined.  (Dkt. 167-5.)[6]

"A defendant who beclouds his whereabouts should not be entitled to benefit from the process server's consequent confusion."  *Verizon Trademark Servs., LLC v.*

---

[6] At the hearing, Miscavige's counsel informed the court that he was not authorized to accept service on Miscavige's behalf and only that he was "happy to have discussions" with Plaintiffs' counsel as to the correct address to effectuate service.  However, following the hearing, Plaintiffs filed a supplemental declaration of compliance with section 48.161 stating that Miscavige's counsel has refused to both accept service on Miscavige's behalf or to provide Plaintiffs with an address at which Miscavige could be served, despite Plaintiffs' offering of safeguards to address Miscavige's security concerns.  (Dkts. 167, 167-5.)

*Producers, Inc.*, No. 8:10-cv-665-T-33EAJ, 2011 WL 3296812, at *4 (M.D. Fla. Aug. 2, 2011) (quoting *N.L.R.B. v. Clark,* 468 F.2d 459, 464 (5th Cir. 1972)).  Plaintiffs have sufficiently demonstrated the requisite diligence in their attempts to locate Miscavige and to effectuate personal or other service on him.  *See, e.g.*, *id.* at *1 (holding that plaintiff was warranted in its use of substituted service after multiple attempts to serve defendant at his home and after surveillance of defendant's home); *Alvarado-Fernandez*, 151 So. at 18 ("Under the facts of this case, it is clear that Plaintiff made conscientious efforts appropriate to the circumstances to obtain service on a defendant who could be deemed to be actively avoiding personal service."); *Thompson v. Mosby Legal Grp., LLC*, No. 3:12-cv-692-J-99-TJC-TEM, 2012 WL 13145517, at *4 (M.D. Fla. Nov. 28, 2012) ("Plaintiff has also shown due diligence in attempting to effectuate personal service on Defendant Mosby and has been unsuccessful, despite Defendant Mosby's apparent knowledge of the lawsuit.").  Accordingly, the court finds that substitute service is appropriate in this matter.

### 2.  Jurisdictional Prerequisites pursuant to Florida Statute section 48.181

The court further finds that Plaintiffs have adequately demonstrated facts sufficient to bring Miscavige within the purview of section 48.181 of the Florida Statutes.  To effectuate substitute service of process on the Florida Secretary of State pursuant to sections 48.181 and 48.161, a plaintiff must make a sufficient showing that a defendant is either (1) a nonresident of Florida, or a resident of Florida who subsequently becomes a nonresident or conceals his or her whereabouts; (2) that the defendant operates, conducts, engages in, or carries on a business or business venture

in Florida, or has an office or agency in the state; and (3) that the cause of action for which substitute service is to be made arises out of any transaction or operation connected with or incidental to the business or business venture.  Fla. Stat. § 48.181; *see also Mecca Multimedia, Inc.*, 954 So. 2d at 1182; *Provident Bank v. Nascarella*, No. 8:16-cv-3052-T-17CPT, 2018 WL 11344798, at *2 (M.D. Fla. June 7, 2018) (summarizing requirements) (citing *Alvarado v. Cisneros*, 919 So. 2d 585, 589 (Fla. 3d DCA 2006)).

Plaintiffs allege that Miscavige is a resident of Clearwater, Florida, who is concealing his whereabouts.  (Dkt. 79 ¶ 7–12, 16; Dkt. 141-1 at 9.)  In response, Miscavige provided the affidavits of Warren McShane and Sarah Heller, who averred that Miscavige's residence and primary place of business are in California, not Florida.[7]  (Dkts. 163-1, 163-2.)  At the hearing, Plaintiffs' counsel conceded that Miscavige may be a resident of California and that the allegation that Miscavige is a resident of Florida was based on information Plaintiffs were able to surmise from their own investigation into the facts surrounding his whereabouts.  *See also* (Dkt. 141 at 5 ("While public records searches and other sources reflect that Miscavige previously resided and worked primarily in California, our investigation leads to the conclusion that Miscavige now resides in a gated and guarded residential complex [] at 551 N. Saturn Avenue, Clearwater, Florida.").)  Nevertheless, the court agrees with Plaintiffs' counsel that the distinction does not matter for purposes of effectuating substitute service on Miscavige pursuant to section 48.181, as the statute applies to both residents

---

[7] Miscavige has not provided a personal declaration regarding his residence, place of business or activities in Florida.

who conceal their whereabouts and nonresidents of Florida.   Fla. Stat. § 48.181.
Accordingly, the court finds that Miscavige is a nonresident for purposes of substitute
service under section 48.181.

The court further finds sufficient allegations in the Amended Complaint that
Miscavige "operate[s], conduct[s], engage[s] in, or carr[ies] on a business or business
venture in [Florida], or [has] an office or agency in the state[.]"  Fla. Stat. 48.181.  To
establish that a defendant is "carrying on business" for the purposes of Florida's long-
arm statute, "the activities of the defendant must be considered collectively and show
a general course of business activity in the state for pecuniary benefit."  *RMS Titanic,*
*Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 783 (11th Cir. 2014) (addressing
language in Florida Statute section 48.193 that is "identical in all material respects" to
section 48.181) (quoting *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d
1162, 1167 (11th Cir. 2005)).  This requirement can be satisfied either by "(1) doing a
series of similar acts for the purpose of thereby realizing pecuniary benefit or (2) doing
a single act for such purpose with the intention of thereby initiating a series of such
acts."  *Id.* (quoting *Wm. Strasser Constr. Corp. v. Linn*, 97 So. 2d 458, 460 (Fla. 1957))
(internal quotation marks omitted).[8]

---

[8] The Eleventh Circuit has also provided several, non-dispositive factors for courts to consider in
determining whether a defendant engaged in a "general course of business activity" in Florida,
including (1) "the presence and operation of an office in Florida"; (2) "the possession and maintenance
of a license to do business in Florida"; (3) "the number of Florida clients served"; (4) "the percentage
of overall revenue gleaned from Florida clients."   *RMS Titanic, Inc.*, 579 F. App'x at 784 (quoting
*Horizon Aggressive Growth, L.P.*, 421 F.3d at 1167).

Miscavige argues that the Amended Complaint fails to contain sufficient allegations that he individually engaged in business in Florida for his personal pecuniary benefit. (Dkt. 163 at 14–16.) The court disagrees. Paragraph 17 of the Amended Complaint states:

> Defendant Miscavige has operated, conducted, engaged in, or carried on a business or business venture in Florida through the activities and close association with the Defendant entities alleged herein, and the entities, through their association with Miscavige, have served as his agents. Miscavige's business contacts within Florida were continuous and systematic, including but not limited to negotiating and directing the purchase of real property in Florida, while in Florida promoting, fundraising for and directing the management and operations of Defendants worldwide, and while outside of Florida directing the management and operations of Defendants within Florida. Miscavige and the Defendant entities have therefore accepted the privilege to operate, conduct, engage in or carry on a business or business venture in Florida and/or to have an office or agency in the state. Additionally, the actions alleged in this First Amended Complaint arise out of transactions or operations connected with or incidental to businesses or business ventures operating in Florida.

(Dkt. 79 ¶ 17.) This language tracks the requirements to bring Miscavige within the purview of section 48.181. *See, e.g.*, *Woodruff-Sawyer & Co. v. Ghilotti*, 255 So. 3d 423, 427 (Fla. 3d DCA 2018) ("To bring the cause within the ambit of the long-arm statute, the complaint may either allege facts sufficient to show that the defendant's actions fit within one or more of the subsections of the statute, or track the language of the statute.").

Moreover, the Amended Complaint contains sufficient factual allegations that Miscavige operated or conducted a business venture in Florida in his individual capacity, *i.e.*, outside of his role as a corporate director, officer, or shareholder of the

Organizational Defendants, and for his own personal pecuniary gain.  The Amended Complaint provides more than "scant details about the nature of the business activities and the type of business [Miscavige] allegedly conducted."  *See Provident Bank* 2018 WL 11344798, at *3.  Miscavige is alleged to "fully control[] and direct[] the activities of all [Organizational Defendants] [and] personally . . . direct [their] management and operations . . . at a considerable level of detail" (Dkt. 79 ¶ 16–17), and the operations and business of Defendants is discussed in detail in the Amended Complaint.  *E.g.*, (*id.* ¶¶ 16–38.)   For example, Plaintiffs allege that Miscavige has "continuous and systematic" business ties to Florida through "negotiating and directing the purchase of real property in Florida" and "control[ling] and direct[ing]" the management of FSO, including the "ownership, management and operation of Flag Base, Scientology's substantial real property holdings in Clearwater, Florida [and its] global hub of operations and its largest source of revenues, providing (among other things) temporary quarters for visiting Scientologists, facilities for classes and auditing sessions, dining and meeting facilities, and the center where Defendants host large gatherings[.]" (*Id.* ¶¶ 17, 20.)  Plaintiffs also allege that Miscavige controls and directs Defendant CSI, which conducts "substantial business" through the licensing of Scientology intellectual property and the collection of licensing fees at multiple Florida locations. (*Id.* ¶ 19.)  Miscavige is also alleged to "exclusively direct[] all operations of IASA," which has "offices and operations in Clearwater, Florida, at Defendants' Flag Base" and is alleged to "administer[] and transfer[]" funds from membership dues "under the exclusive direction of Defendant Miscavige, for his personal enrichment

and benefit" and for the benefit of the remaining Organizational Defendants.  (*Id.* ¶ 22.)[9]  Plaintiffs further allege that the "receipt of money and unpaid labor also enabled David Miscavige to maintain a façade of legitimacy, a luxurious lifestyle, power over every aspect of the organization's global operations, and influence over members, including celebrities who joined and promoted Scientology publicly."  (*Id.* ¶ 2.)

Further, far from containing "no allegation that [Miscavige], individually, as opposed to acting in [his] corporate capacit[y], engaged in a business or business venture in Florida," *see A. B. L. Realty Corp.*, 384 So. 2d at 1355, Miscavige is not alleged to be an officer, director, or shareholder of any of the Organizational Defendants apart from California-based RTC.    Rather, the Organizational Defendants, including FSO, FSSO, and IASA, all of which have continuous and systematic business activities in Florida either through the purchase and management of real estate (Dkt. 79 ¶¶ 17, 20), the collection and disbursement of membership dues (*id.* ¶¶ 22–23), or the hosting of events and fundraising (*id.* ¶¶ 19–21), are alleged to be directly controlled by Miscavige individually and serve as his agents.  (*Id.* ¶ 17); *see, e.g.*, *McLean*, 538 F. Supp. at 548 (finding substitute service appropriate pursuant to

---

[9] Miscavige argues in a single sentence without citation to authority that "[a] religious organization collecting membership fees does not amount to 'business activity.'"  (Dkt. 163 at 16 n.9.)  "Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."  *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998).  Nevertheless, Plaintiffs allege that the dues are collected "under the exclusive direction of Defendant Miscavige, for his personal enrichment," including financing his "'war chest,' a discretionary fund [Miscavige] and other Defendants' most senior officers utilize to support intelligence gathering and retaliation campaigns against defectors and critics of Defendants."  (Dkt. 79 ¶ 22.)  Thus, the unrefuted allegations in the Amended Complaint do not support Miscavige's characterization that this "activity was for the pursuit of the Church's mission, including its ecclesiastic mission, rather than for his own pecuniary gain."  (Dkt. 163 at 16.)

section 48.181 where "[s]ignificantly, plaintiffs allege that the Church was the agent of the [defendants], rather than that the [defendants] were merely non-resident officers of the resident corporate Church."). The record in this case does not reflect that RTC is a parent corporation or owner of either of the Florida-based entities. *See, e.g.*, (Dkt. 63 ("No parent corporation or publicly held corporation owning 10% or more of [FSSO]'s stock exists."); (Dkt. 64 (same with respect to FSO).) Mr. McShane's declaration further avers that while Scientology Churches in Clearwater, Florida "provide work and living accommodations for [Miscavige's] use while he is there[,] RTC does not own, lease or rent any of" those locations. (Dkt. 163-1 ¶ 7.) Defendant IASA similarly states that it "does not have a parent corporation, and no publicly held corporation owns ten percent or more of [IASA's] stock." (Dkt. 65.) The third-party declarations that Miscavige has provided also do not refute the extent to which he controls and directs the Organizational Defendants' business in Florida for his personal pecuniary benefit. Rather, the declarations only refute that he has a permanent office in Florida or that any of the Florida addresses are his "primary place of business." *See* (Dkts. 163-1, 163-2.)

The Amended Complaint and record evidence therefore do not establish that Miscavige was "merely an officer or director of a corporation," *Newberry v. Rife*, 675 So. 2d 684, 685 (Fla. 2d DCA 1996), but rather that he was significantly involved in conducting business in the state both individually and through his agents the Organizational Defendants. Thus, when viewed collectively and through his agents FSO, FSSO, CSI, and IASA, Miscavige operates, conducts, engages in, or carries on

a business or business venture in Florida for his own pecuniary benefit or has an office or agency in the state.  Fla. Stat. § 48.181; *see, e.g.*, *McLean*, 538 F. Supp. at 548–50 ("Upon consideration of the file as a whole . . . the Court is convinced that plaintiffs have met the burden of alleging and sufficiently establishing those material facts which support constructive service of process in Florida pursuant to Fla. Stat. 48.181."); *Williams v. 3RD Home Ltd.*, No. 8:20-cv-1647-CEH-JSS, 2021 WL 825047, at *5 (M.D. Fla. Mar. 4, 2021) (agreeing with plaintiff's "broader" argument that defendants' "collective business activities show a general course of business activity in the state for pecuniary benefit"); *Labbee*, 913 So. 2d at 683 (finding sufficient allegations that defendant engaged in a business venture under section 48.181 where defendant owned property for over 20 years while using it for profit before engaging in transaction to sell property).

Finally, the court finds that the allegations of the Amended Complaint arise out of an operation connected with or incidental to Miscavige's business or business venture in Florida.  Fla. Stat. § 48.181.  Miscavige argues that "Plaintiffs have failed to allege that [his] business ties are connected to their causes of action" and that their own allegations "make plain that the conduct complained of occurred outside of Florida." (Dkt. 163 at 16–17.)  This reads the Amended Complaint too narrowly. Plaintiffs specifically allege that Defendants, including Miscavige, "knowingly obtained valuable benefits, including but not limited to financial enrichment, and free labor and services, like construction work, landscaping, and food preparation *at 'Flag Base,'* in Clearwater, Florida*, and aboard the Freewinds." (Dkt. 79 ¶ 2 (emphasis

added).)  For example, Plaintiff Gawain Baxter alleges that as a child, "he was forced to provide five to ten hours a day of unpaid work at Flag Base [in Clearwater, Florida], including food preparation, trash removal, landscaping, and clerical work." (*Id.* ¶ 91.) Plaintiff Valeska Paris further alleges that at age 15, she "worked sixteen-hour days preparing food, doing laundry, cleaning offices, and serving as a personal assistant to Scientology executives, including Defendant David Miscavige" at the Commodore's Messenger Org at Defendants' "Flag Base" in Clearwater, Florida. (*Id.* ¶159.)[10] Rather than being confined to conduct outside of Florida, Plaintiffs allege that Defendants' operations, both inside and outside of Florida, were sustained by and Defendants profited from the labor Plaintiffs allegedly performed both inside and outside of the state.  Miscavige is alleged to direct and control these operations "[a]t a considerable level of detail." (*Id.* ¶ 25.)

With respect to Plaintiffs' treatment onboard the Freewinds, Plaintiffs further allege that "[t]here is a U.S. office for the Freewinds in FSSO's primary business location in Clearwater, Florida" (*Id.* ¶ 24), and that CSI and Miscavige "control a number of trusts, including Flag Ship Trust, which among other things owns the company that owns [] the Freewinds." (*Id.* ¶ 19.)  Thus, the court finds that Plaintiffs allege a sufficient "nexus or connection between the business that is conducted in

---

[10] Indeed, while Miscavige argues that Plaintiffs Gawain and Laura Baxter "do not even allege they ever met [] Miscavige, let alone that he was personally involved in any purported harm they allegedly experienced" (Dkt. 163 at 16–17), Miscavige overlooks the allegations related to Plaintiff Valeska Paris, who alleges she was ordered to be sent to the Freewinds by Miscavige personally (Dkt. 79 ¶ 163), and that Miscavige later acknowledged his personal involvement in having Plaintiff Valeska Paris sent to the Freewinds (*Id.* ¶ 168).

Florida and the cause of action alleged," *Nicolet, Inc. v. Benton*, 467 So. 2d 1046, 1049

(Fla. 1st DCA 1985) (citation omitted), and that Plaintiffs' cause of action therefore

arises out of an operation connected with or incidental to Miscavige's business or

business ventures in Florida. *See* Fla. Stat. § 48.181.

Accordingly, the court finds that Plaintiffs have satisfied the jurisdictional

prerequisites under section 48.181 necessary to effectuate substitute service on

Miscavige through the Florida Secretary of State.

### 3. Compliance with Procedure for Substitute Service pursuant to Florida Statute section 48.161

The court finds that Plaintiffs have complied with the requirements to effectuate

substitute service pursuant to section 48.161 of the Florida Statutes.  Courts have

summarized the technical requirements to effectuate substitute service pursuant to

section 48.161 as follows:

> (1) allege facts in the complaint that bring the defendant within the
> purview of the substitute service statute (*e.g.*, that the defendant is a
> nonresident subject to the court's jurisdiction who cannot be located
> despite due diligence or that the defendant is actively concealing his or
> her whereabouts); (2) serve the Secretary of State by providing him or her
> (or his or her delegate) with a copy of the summons and complaint; (3)
> pay the requisite fee to the Secretary of State; (4) provide Notice of service
> upon the Secretary of State to the defendant by sending him or her a copy
> of the summons and the complaint by registered or certified mail; (5) file
> the registered or certified mail return receipt; and (6) file an affidavit of
> compliance on or before the return date of the process [or within such
> time as the court allows].

*Thompson*, 2012 WL 13145517, at *3 (citing Fla. Stat. § 48.161(1)); *Hernandez v. State*

*Farm Mutual Auto. Ins. Co.*, 32 So. 3d 695, 699 (Fla. 4th DCA 2010)); *see also Kirchik*,

2021 WL 7451917, at *3.  As discussed above, Plaintiffs have sufficiently alleged facts

in the Amended Complaint to bring Miscavige within the purview of the substitute service statutes. *See, e.g.*, (Dkt. 79 ¶¶ 7–12, 16–38.)  Plaintiffs sent the Florida Secretary of State a copy of the summons and Amended Complaint and paid the requisite filing fee. (Dkts. 141-6, 141-17.)  Plaintiffs then provided notice of service upon the Florida Secretary of State to Miscavige by sending him a copy of the summons and Amended Complaint by certified mail to the addresses that Plaintiffs identified as Miscavige's addresses, and filed with the court what they received as certified mail return receipts. (Dkts. 141-7, 141-8, 141-9, 141-10, 141-11, 141-12, 141-13, 141-14, 141-15, 141-16, 151-1, 151-2, 151-3, 151-4, 151-5.)  Plaintiffs then filed an affidavit of compliance with section 48.161 within the time allotted by the court to effectuate service on Miscavige. (Dkt. 141.)

Miscavige challenges Plaintiffs' compliance with section 48.161 and argues that Plaintiffs have failed to file a properly signed return receipt.  (Dkt. 163 at 21–22.)  However, "the courts have created an exception to the requirement that the plaintiff file the defendant's return receipt for those situations in which the defendant is actively refusing or rejecting the substituted service of process."  *Smith v. Leaman*, 826 So. 2d 1077, 1078 (Fla. 2d DCA 2002).  As numerous courts have found, "[w]hen a defendant makes it impossible for the plaintiff to serve him by mail or otherwise, the failure to file defendant's return receipt does not prevent this court from acquiring jurisdiction."  *Verizon Trademark Servs., LLC*, 2011 WL 3296812, at *5 (quoting *Fernandez v. Chamberlain*, 201 So. 2d 781, 786 (Fla. 2d DCA 1967)); *Clements v. Jace*, No. 8:17-cv-0316-T-36MAP, 2017 WL 1435966, at *3 (M.D. Fla. Apr. 10, 2017) ("In other words,

for the exception to apply, 'the failure of delivery of service must be attributable to the defendant.'") (citation omitted), *report and recommendation adopted*, No. 8:17-cv-316-T-36MAP, 2017 WL 1426715 (M.D. Fla. Apr. 21, 2017); *Hernandez*, 32 So. 3d at 699 ("[W]here the defendant takes affirmative action to avoid acceptance of such mailing, the requirement will be deemed to be satisfied.") (citation omitted).  As explained above, Plaintiffs have sufficiently demonstrated due diligence in attempting to locate Miscavige and that Miscavige is actively concealing his whereabouts or evading service.  The court therefore finds that Plaintiffs' failure to file a properly signed certified mail receipt is excusable, and Plaintiffs have sufficiently complied with the requirements for substitute service on Miscavige through the Florida Secretary of State pursuant to Florida Statute section 48.161.

### 4.  Default

Having found that Miscavige has been served with process pursuant to section 48.161, the court declines to enter default against Miscavige pursuant to Federal Rule of Civil Procedure 55.  Rather, Miscavige is deemed to have been properly served as of the date of this order, and therefore has 21 days to answer or otherwise respond to the Amended Complaint (Dkt. 79) pursuant to Federal Rule of Civil Procedure 12.

### CONCLUSION

Accordingly, and for the reasons stated above:

1.    Plaintiffs' Motion for Order Declaring Defendant Miscavige Served with Process and in Default (Dkt. 152) is **GRANTED in part** and **DENIED in part**.

2.    Miscavige is deemed to have been properly served with the Amended Complaint (Dkt. 79) through substitute service on the Florida Secretary of State pursuant to Federal Rule of Civil Procedure 4 and sections 48.181 and 48.161 of the Florida Statutes.

3.    Plaintiffs' request to declare Miscavige in default is denied.

4.    Miscavige shall answer or otherwise respond to the Amended Complaint within 21 days of this order pursuant to Federal Rule of Civil Procedure 12.

**ORDERED** in Tampa, Florida, on February 14, 2023.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record