IN THE UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

GAWAIN BAXTER, LAURA BAXTER and )
VALESKA PARIS, )
                                )
        Plaintiffs,             )
                                ) Civil Docket
    vs.                         )
                                ) No. 8:22-cv-986-TPB-JSS
DAVID MISCAVIGE; CHURCH OF      )
SCIENTOLOGY INTERNATIONAL, INC.;)
RELIGIOUS TECHNOLOGY CENTER,    )
INC.; IAS ADMINISTRATIONS, INC.;)
CHURCH OF SCIENTOLOGY FLAG      )
SERVICE ORGANIZATION, INC.; and )
CHURCH OF SCIENTOLOGY FLAG SHIP )
SERVICE ORGANIZATION, INC.,     )
                                )
        Defendants.             )
_____ )

Transcript of Motion Hearing

Heard in Courtroom 11A
Sam M. Gibbons United States Courthouse
801 North Florida Avenue
Tampa, Florida 33602
Friday - January 20, 2023
2:01 p.m. - 3:19 p.m.

BEFORE THE HONORABLE JULIE S. SNEED

UNITED STATES MAGISTRATE JUDGE

REBECCA M. SABO, RMR, CRR
Federal Official Court Reporter
Sam M. Gibbons United States Courthouse
801 North Florida Avenue, Room 1221
Tampa, Florida 33602
Rebecca_Sabo@flmd.uscourts.gov
(406) 855-6410

Proceedings recorded by FTR recording
Transcript produced by computer-assisted transcription

APPEARANCES

PRESENT ON BEHALF OF THE PLAINTIFFS:

**Manuel J. Dominguez**
COHEN, MILSTEIN, SELLERS & TOLL, PLLC
11780 U.S Highway One, Suite N500
Palm Beach Gardens, Florida 33408
(561) 515-1400
jdominguez@cohenmilstein.com

**Brendan Rae Schneiderman**
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, Fifth Floor
Washington, D.C. 20005
(781) 572-0456
bschneiderman@cohenmilstein.com

**Elias A. Kohn**
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, Pennsylvania 19103
(610) 888-9735
ekohn@kohnswift.com

**Zahra R. Dean**
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, Pennsylvania 19103
(215) 238-1700
zdean@kohnswift.com

**Elizabeth F. Quinby**
PRETI FLAHERTY BELIVEAU & PACHIOS, CHARTERED, LLP
P.O. Box 9546
Portland, Maine 04112-9546
(207) 791-3000
equinby@preti.com

PRESENT ON BEHALF OF THE DEFENDANT,
DAVID MISCAVIGE:

**William J. Schifino, Jr.**
GUNSTER YOAKLEY
401 East Jackson Street, Suite 2500
Tampa, Florida 33602-5226
(813) 228-9080
bschifino@gunster.com

**Joseph Marshall Terry**
WILLIAMS & CONNOLLY LLP
680 Maine Avenue
Washington, D.C. 20024
(202) 434-5320
jterry@wc.com

**Krystal Commons Durham**
WILLIAMS & CONNOLLY
680 Maine Avenue SW
Washington, D.C. 20024
(202) 434-5493
kdurham@wc.com

PRESENT ON BEHALF OF THE DEFENDANT,
CHURCH OF SCIENTOLOGY, INTERNATIONAL, INC. AND CHURCH OF
SCIENTOLOGY FLAG SERVICE ORGANIZATION, INC.:

**Charles M. Harris, Jr.**
TRENAM, KEMKER, SCHARF, BARKIN, FRYE,
O'NEILL & MULLIS
101 East Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
(813) 223-7474
cmharris@trenam.com

PRESENT ON BEHALF OF THE DEFENDANT,
RELIGIOUS TECHNOLOGY CENTER, INC.:

**Christopher George Oprison**
DLA PIPER US, LLP
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
(305) 982-5551
Chris.Oprison@dlapiper.com

PROCEEDINGS

1

2      (Open court.)

3      (Court called to order.)

4          THE COURT:  Hello.  Good afternoon, everyone.  We're

5  here in the case of Baxter versus Miscavige, and it's Case

6  8:22-cv-986.

7          Can I ask the lawyers to state your appearances for

8  the record, starting with counsel for plaintiff.

9          MR. DOMINGUEZ:  Good afternoon, Your Honor.  Manuel

10  John Dominguez on behalf of the plaintiffs.  I'm also

11  accompanied by an associate from my firm, Brendan Schneiderman,

12  from my firm Cohen Milstein.  Also on behalf of the plaintiffs

13  is Zahra Dean and Elias Kohn from the firm of -- from the firm

14  of Kohn, Swift & Graf.  And, finally, Elizabeth Quinby of the

15  firm of Preti Flaherty is here as well.

16          THE COURT:  Good afternoon to all of you.

17          And on the side of the defense.

18          MR. SCHIFINO:  Good afternoon, Your Honor.  John

19  Schifino with Gunster Yoakley.  And with me is Ms. Krystal

20  Durham and Mr. Joseph Terry with the Williams Connolly firm,

21  and we're here on behalf of Mr. Mis -- Mr. Miscavige.  And

22  pursuant to our notice, we're putting in a limited appearance.

23  And Mr. Terry will be arguing for Mr. Miscavige.

24          THE COURT:  Very well.

25          MR. TERRY:  Good afternoon.

1      THE COURT:  Good afternoon to all of you all.

2      Do we have anyone here on behalf of any of the other

3 defendants?  I wouldn't think so, but if you'd like to make an

4 appearance.

5      MR. HARRIS:  Good afternoon, Your Honor.  I'm Charlie

6 Harris on behalf of Flag Ship Service Organization.

7      MR. OPRISON:  Good afternoon, Your Honor.  Chris

8 Oprison from DLA Piper on behalf of the Religious Technology

9 Center.

10      THE COURT:  Anyone else?  That's everyone?

11      Good afternoon to you all as well.

12      We're here on the motion for order declaring

13 defendant served with process and in default.  It was filed

14 with the Court as Document 152.  Let's hear from the movant as

15 to the motion.

16      MR. DOMINGUEZ:  Your Honor, do you want us to go to

17 the lectern?

18      THE COURT:  It would be better --

19      MR. DOMINGUEZ:  Okay.

20      THE COURT:  -- if you'd go to the lectern, that way I

21 can hear you.  And we record the proceedings, and that way we

22 are sure we have an accurate record.

23      MR. DOMINGUEZ:  Thank you, Your Honor.

24      If it may please the Court.

25      THE COURT:  Yes.

1          MR. DOMINGUEZ:  I'm here on behalf of plaintiffs'

2   mo- -- I'm here on behalf of plaintiffs to argue plaintiffs'

3   motion for order declaring Defendant David Miscavige served

4   with process and default.  As we stated in our motion,

5   plaintiffs have fully complied with the requirements of the

6   statutes for substitute service.  Plaintiffs have been diligent

7   in their attempts to serve Miscavige.

8          As we argued when we sought the motion to seek issue

9   of the summons and which the Court found persuasive, we made --

10  significant efforts have been made to locate Miscavige, which

11  included hiring a personal -- private investigation firm,

12  looking over various public record databases search, including

13  individuals affiliated with the defendant.  Plaintiffs have

14  also reviewed dockets and pleadings in other cases in which

15  Miscavige was named as a defendant, reviewed corporate filings,

16  searched news and media blogs, reviewed Scientology websites,

17  promotional literature, and interviewed former Sea Org members

18  as well.

19          And from these --

20          THE COURT:  And when you talk about the statute,

21  you're talking about 48.161; is that correct?

22          MR. DOMINGUEZ:  That's correct, Your Honor.

23          THE COURT:  And are we -- and just -- let's just dive

24  into the requirements of that statute.  And if you can talk

25  about exactly how you've complied with that statute.  And, you

know, of course you've read the response brief, and they cite
to a different statute, an additional statute, 48.181, and you
can anticipate their arguments and talk about that as well, if
you would.

MR. DOMINGUEZ:  Thank you, Your Honor.  Just give me
one second.

So -- so under the rules of one eight -- of 48.161,
the rules governing service of process are not designed to
create an obstacle course for plaintiffs to navigate or a
cat-and-mouse game for defendants who otherwise are subject to
the Court's jurisdiction.

As the Court in *Verizon* states, it's with those
parameters in mind that the Court determines whether use of
substitute -- substituted service is appropriate under 48.16 --
161, and that's found on page 4 of that -- of that case.  The
test for substituted service, as announced by that court, it is
whether in fact possible -- it is not whether it's in fact
possible to effect personal service, but whether plaintiffs
reasonably employed knowledgeable, available, diligent, and
their inquiry exerted honest and -- and were concerted in their
efforts to -- and made -- under the appropriate circumstances
to acquire information necessary to enable and effect personal
service.  And that's cited to *Delancy* in that case, Your Honor.

So, here, as I was trying to summarize at the
beginning, we -- we did a lot to serve him.  As a matter of

1    fact, everything I said before, from all of that, we were able

2    to find five different locations in Florida and five different

3    locations in California.

4          THE COURT:  And what period of time were you working

5    towards accomplishing that service?

6          MR. DOMINGUEZ:  I believe, Your Honor, it was from

7    July -- I'm sorry, from June to August of 2022.

8          THE COURT:  Okay.  Several months?

9          MR. DOMINGUEZ:  Yeah, several months.

10          And then during that time frame, we -- we attempted

11    service 27 times at -- at these different locations, five in

12    Florida and five in California.

13          THE COURT:  Say that one more time.

14          MR. DOMINGUEZ:  I'm sorry.  Five in Florida and five

15    locations in California.

16          This goes also on top of -- as part of trying to

17    serve Miscavige, we did ask the defendants for information

18    about his whereabouts, and none of them provided us that

19    information.  They said they weren't allowed.  We also tried --

20          THE COURT:  And I know they're all here today.  And I

21    don't know if you've talked about that issue at all with the

22    defense, if you've had an opportunity to talk with them about

23    this service, the process issue, and whether or not they might

24    be amenable to accepting that service.

25          MR. DOMINGUEZ:  We did initially, Your Honor, and we

1  were told that they were not.

2         THE COURT:  All right.  All right.  And you said five
3  times that you've attempted to serve process in Florida and
4  five --

5         MR. DOMINGUEZ:  Well, 27 times.

6         THE COURT:  27.

7         MR. DOMINGUEZ:  Five different locations --

8         THE COURT:  Five different locations.

9         MR. DOMINGUEZ:  -- in Florida and five different
10  locations in California, Your Honor.

11         THE COURT:  All right.  And do you know -- do you
12  have a sense of whether or not Mr. Miscavige lives in Florida
13  or California?

14         MR. DOMINGUEZ:  We're -- we're uncertain at this
15  time, Your Honor.  As one of the things the defendants point
16  out is that we -- they feel like we're trying to do two things.
17  We allege in the complaint that he's in Florida, but that's
18  based on our -- how do you say -- our investigation into the
19  case, in which the former Sea Org members told us that he lived
20  in Florida.  But we also know that from --

21         THE COURT:  So at least at one time you think he may
22  have lived in Florida.

23         MR. DOMINGUEZ:  That -- that is correct, Your Honor.

24         THE COURT:  Because there's some comment in the
25  briefs about, you know, the information that you might have

1  provided is stale.  So -- so at least as of the time that those

2  individuals -- those affiants have provided that information,

3  you contend that he lived there at least at one time.

4  　　　　　MR. DOMINGUEZ:  Correct, Your Honor.

5  　　　　　THE COURT:  All right.

6  　　　　　MR. DOMINGUEZ:  And also in filings that we found

7  here in the state of Florida for traffic infractions that David

8  Miscavige had, we also found that he listed his address in

9  California as being his home address, and this is back in the

10  '90s.  So we're not quite sure exactly where he lives at this

11  time.

12  　　　　　THE COURT:  You've attempted to serve him at both

13  locations.

14  　　　　　MR. DOMINGUEZ:  That's correct, Your Honor.

15  　　　　　THE COURT:  All right.

16  　　　　　MR. DOMINGUEZ:  And so basically what we did is,

17  under 161, under the standards elucidated by that statute, it's

18  not important whether he's a resident or not resident --

19  　　　　　THE COURT:  Well, I wanted to narrow on in, if it's

20  possible, which provisions you are attempting to satisfy.  So

21  you're contending that you meet both standards of whether he's

22  a nonresident and whether he is a person who conceals his

23  whereabouts?

24  　　　　　MR. DOMINGUEZ:  Correct, Your Honor.

25  　　　　　THE COURT:  Okay.

1    MR. DOMINGUEZ:  That's correct, Your Honor.  As we --

2  as we set forth in our complaint, I think in paragraph 9 of our

3  amended complaint, we set forth the reasons I believe he has

4  been evading service.  We believe there is a -- he has a system

5  to this, and this is something that he's done in other cases.

6  This is not the first time he's ever done this.  He's done this

7  type of evading service in the past.  As a matter of fact, as

8  part of our Dean exhibit, which is attached to our motion,

9  which is Exhibit 2 to our motion, and which is specifically

10  docket entries 152-4 through 152-7, we attach different

11  declarations from process servers in California in which they

12  claim that security is being evasive in not telling them where

13  Miscavige's whereabouts are.

14    THE COURT:  So what would you say is the evidence

15  that you would point to that he's attempted to conceal his

16  whereabouts?  You know, is it that you just haven't been able

17  to find him, or what -- what are you relying upon?

18    MR. DOMINGUEZ:  I think it's -- I think there's two

19  things here, and I think that the *Verizon* court is instructive

20  on this issue.

21    One of the things that was interesting to note in

22  this case is, I believe it was 230 days after we filed this

23  case, and we then filed this motion, Miscavige made a --

24  entered -- had an attorney enter an appearance on his behalf,

25  which shows that obviously he -- he's on notice of these

1   pleadings.  Also, if you note in the *Verizon* case, specifically
2   footnote 3, in that case, defendants were attempting to say --
3   or the defendant was attempting to argue before the Court that
4   because there was a failure to have a return of service that
5   the plaintiff had not complied with 161 -- 48.161.

6           And the Court said -- in that motion, Your Honor, the
7   Court said that when the defendant makes it impossible for them
8   to serve and then there's a failure of a return receipt, that
9   does not prevent the Court from exercising jurisdiction.
10  Dispositive here in this, is that in footnote 3, they found
11  *Solares*, which was a defendant that they believed was evading
12  service, was on notice of the complaint.  And they said one of
13  the things that they noted in that complaint is that he was the
14  owner of three other co-defendants in that case, and those
15  three co-defendants had already entered -- had already entered
16  appearances and had actually filed responsive -- I don't know
17  if it's briefs or motions to the complaint.

18          So the other thing -- so here we have a similar
19  incidence.  We have David Miscavige, who is the -- is the
20  chairman of the board of the RTC and who -- and the RTC is one
21  of the companies that has been served with the complaint, and
22  we also allege that he actively manages many of the other
23  defendants in this case, have all been served and have all
24  responded.  The Court found that this put the defendant *Solares*
25  on notice, and we believe that this also puts David Miscavige

1   on notice about the complaint.

2            And so --

3            THE COURT:  That means that he could be on notice.

4   Does that mean that he's concealing his whereabouts?

5            MR. DOMINGUEZ:  Well, what the Court found

6   dispositive in the *Verizon* case, because *Solares* tried to make

7   the same argument, that you hadn't shown anything that showed

8   that we were evading service, the Court said, as the Court

9   found in *Verizon*, it found one of the arguments of *Verizon* very

10  dispositive.  It said, with knowledge of this action, *Solares*

11  cannot be allowed to avoid personal service and substitute

12  service of process by failing to retrieve his mail, by

13  voluntarily remaining outside the jurisdiction of this Court

14  and, most importantly, by failing to provide relevant

15  information of his whereabouts to plaintiffs in order to

16  prevent personal service.

17           And we believe the same goes here, Your Honor.  David

18  Miscavige, as we -- David Miscavige has not let us know where

19  he's -- where he's at, hasn't -- has not been able -- every

20  time we've tried to serve him, as we set forth in our motions,

21  nobody knows where he's at.  They say he doesn't live here,

22  they say they don't know where he lives, they don't know where

23  he works.

24           So this time -- he's on notice of these -- he's on

25  notice of this complaint.  It would be very simple for him to

1    just go ahead and accept service either through -- with
2    anybody -- you know, as the State of Florida says, anybody over
3    18 years old can accept service on your behalf.  And so we just
4    feel that this is a very simple process and he's aware of this
5    complaint.
6          THE COURT:  All right.  And then you also contend
7    that one of the other requirements that you left the process
8    with the Secretary of State as well?
9          MR. DOMINGUEZ:  That's correct, Your Honor.  And
10   that's -- under the *Verizon* -- under *Verizon*, as -- you know,
11   if the person is trying to evade service, that provides you the
12   opportunity to serve the Secretary of State, and we did all
13   that, and we have all the compliance there.  We lay it out in
14   the motion, Your Honor.
15         THE COURT:  Did you send that to the defendant's
16   attorney?
17         MR. DOMINGUEZ:  Yes.
18         THE COURT:  And there's some comment about whether or
19   not they received the copy of the summons.  Did the attorney
20   receive a copy of the summons as well?
21         MR. DOMINGUEZ:  Your Honor, I can't say at this time,
22   but I could supplement the Court later.
23         THE COURT:  Because that is one of the requirements.
24         MR. DOMINGUEZ:  Sorry, Your Honor.  According to the
25   people here, they said that, yes, they have received the

1  summons as well.

2          THE COURT:  All right.  I believe you said that you

3  did, in the Docket 141 --

4          MR. DOMINGUEZ:  Thank you, Your Honor.

5          THE COURT:  -- paragraph 22.

6          Now, there is another requirement that we need to

7  have the return receipt showing that service.  What's your

8  response to that requirement?

9          MR. DOMINGUEZ:  Well, I think that as you look in the

10 *Verizon* case, in the *Verizon* case it says when the defendant

11 makes it impossible to serve -- serve them, the requirement

12 that you failure -- that you fail to provide a return receipt

13 to the Court doesn't mean that it has jurisdiction.

14         THE COURT:  All right.  And in going back to what we

15 just talked about, about the proof of service sent to the

16 defendant's attorney with the -- with the complaint and the

17 summons.  So you did aver that you accomplished that

18 requirement.

19         MR. DOMINGUEZ:  That's correct.

20         THE COURT:  So we may need further proof of that.

21         MR. DOMINGUEZ:  Okay.

22         THE COURT:  Because there may be a conflict in the

23 facts about that, you know -- we'll hear from the defense about

24 that, but, you know, there may be an issue of fact about that

25 point.

1       Now, I don't have any other questions about 161.  If
2  we can move on to 48.181.
3       MR. DOMINGUEZ:  Okay.  Your Honor, if I could, just
4  on that last point.
5       THE COURT:  Sure.  Yes.
6       MR. DOMINGUEZ.  And I apologize, if you want to move
7  on to 181, I will.
8       THE COURT:  No, that's fine.
9       MR. DOMINGUEZ:  Okay.  I wanted to say that I was
10  just handed an email where Elias Kohn emailed William
11  Schifino --
12       THE COURT:  Elias Kohn is?
13       MR. DOMINGUEZ:  Elias Kohn.
14       THE COURT:  That's Elias Kohn?  Okay.  All right.
15  Very well.
16       MR. DOMINGUEZ:  -- and that he said that attached are
17  documents providing notice of service for your client mailed
18  last week that include proof of service, the summons, and the
19  first amended complaint, and we have a letter via certified in
20  electronic mail from his firm.  And here is what was sent to
21  him.
22       THE COURT:  Was that all part of the record?  Was
23  that filed with the record here?
24       MR. DOMINGUEZ:  It wouldn't have been part of our
25  record because of the fact that we filed our motion previous --

1  prior to this letter going out to defense counsel.

2          THE COURT:  So you want to supplement the record with

3  that filing maybe following the hearing?

4          MR. DOMINGUEZ:  Yes, Your Honor.

5          THE COURT:  All right.  Now let's talk about 181.

6          MR. DOMINGUEZ:  Okay.  So under -- we -- defendants

7  argue that we failed to -- that we failed -- well, anyway.

8          Okay.  So defendants have argued that we have failed

9  to comply with 48.181.  And our argument is under either the

10  old statute or the current statute.  As you know, the statute

11  was currently amended in January of 2023, that we comply with

12  both.

13          Okay.  So the Middle District has summarized that to

14  meet 48.10 -- 48.181 -- and this is a case cited by defendants,

15  which is *Provident Bank versus Nascarella*, and it's 2018 WL

16  11344798.  The Middle District of Florida has summarized these

17  provisions as follows: the defendant must be either: a

18  nonresident, a resident of Florida who subsequently became a

19  nonresident, or (c) a resident of Florida concealing his

20  whereabouts; the defendant must operate, conduct, engage in, or

21  carry -- carry on a business or business venture in Florida;

22  and (3) that the cause of action must arise out of any

23  transaction or operation conducted -- connected with or

24  incidental to the business or business venture.

25          Well, Your Honor, as to the first, the issue of

whether Miscavige is a resident of Florida or is not a
resident, we say that we meet either one, because the statute
applies to both, whether he's a resident or nonresident.  We
also allege that he's evading process.

We allege in the complaint -- third, we also allege
in the complaint, and we can show through public records, that
Miscavige operates, conducts, engages in, or carries on
business or a business venture in Florida, or has an office or
agency in Florida.  We allege in the complaint that Miscavige
has negotiated and directed land sales here, especially up here
in Clearwater, Florida, Your Honor.  We also --

THE COURT:  Land sales, though, don't have anything
to do with the allegations in the complaint, though, do they?

MR. DOMINGUEZ:  If you could, Your Honor, I'll get
to --

THE COURT:  Sure.

MR. DOMINGUEZ:  -- that point, if you don't mind.

THE COURT:  Yes.  All right.  Sure.

MR. DOMINGUEZ:  And also he does fundraising, and he
also actively manages these companies from the state of
Florida.  We make those allegations in the complaint.

THE COURT:  Okay.

MR. DOMINGUEZ:  And as -- and also, just recently, we
know that Miscavige was here this prior New Year's in the Fort
Harrison building during a New Year's celebration, apparently,

to do fundraising.  And just last week, an article came out in the Tampa Bay Times that David Miscavige had contacted the interim city manager of Clearwater on January 6th to discuss Scientology's plans, where it's -- for his downtown real estate.

And also this article also shows that Miscavige's active involvement -- further pieces of this article also show Miscavige's active involvement in trying to manage and make sales, et cetera, with -- regarding the use of the property there in Clearwater.

But the other important aspect of 48.181, it also allows the service for anyone who has an office or agency in Florida, Your Honor.  And paragraph 17 of the amended complaint that the corporate defendants of the men- -- the corporate -- we allege that the corporate defendants are located in Florida and are the agents of Miscavige.

The Middle District has already found that for purposes of 48.181, the search of -- the Church of Scientology is the agent for its leader, and this was for L. Ron Hubbard. And this is a case that came out -- it's called *McLean*.  It's *McLean versus the Church of Scientology*, 538 F. Supp. 545 on page 549.

Specifically the Court at that page says the Court is of the opinion that plaintiffs have adequately supported their allegations that the Hubbards, through their agent, the church,

accepted the privilege to operate, conduct, engage, or carry on in a business or business venture in Florida, or to have an office or agency in the state.

Defendants, in arguing against our inability to meet 48.181, never mentioned the *McLean* decision.  They also never pushed back on the fact that Scientology and Miscavige -- Scientology and -- and its doing business in Florida, and that Miscavige is engaged in that business.  They make -- their main points of contention are two spurious arguments, Your Honor.

First, they -- they show that -- we must show that Miscavige was acting in an individual capacity.  This is one argument.  And their second argument is that plaintiffs' claims must arise from the conduct of business -- his personal conduct of business in Florida, and that's page 3 of their motion.

First of all, 48.181 as -- it says nothing about individual capacity.  If anything, the language -- the language in the statute is quite broad and talks about all the different things that the Court can find to show that you're engaging in business in Florida.

And the case law that defendants cite to support their contention that there must be specific allegations that defendants have engaged in an individual capacity, operating or doing business in a business venture in Florida are -- do not support their proposition.  In fact, one case cited by the defendants -- because they're trying to argue, Your Honor, in

1  that portion of the brief, that there's some sort of like

2  mechanical test that you need to apply.  You need to find this

3  individual capacity.  But actually what the case law in Florida

4  is, if you look at *A.B.L.* Realty, which is a case that they

5  cite, is that throughout 48.181 cases, there appears to be the

6  recurrent theme that each case must be judged on its own facts.

7  We cannot resort to a mechanical test but must judge the

8  quality and nature of the activity involved in the current

9  case.

10         And, Your Honor, that is cited in 1355 and page,

11  I think, 1356.  And this is also found in another court from

12  the Southern District, *International Graphics*, which is 71

13  F.R.D. 598.  On page 602, it says Florida courts have -- have

14  discarded any formal tests for long-arm service of process

15  because of the number of conflicting tests that develop.

16  Consequently, each case must turn on its own facts.

17         So is that a mechanical test?  It has to be the facts

18  of the case before it.  And none of the cases that defendants

19  cite for their proposition that you have to have an individual

20  finding, there must be a finding of individual business

21  dealings in Florida, don't support that.

22         For instance, in *Provident Bank versus Nascarella*,

23  the case that I talked about previously, plaintiffs only

24  specific allegation in that case was of a business connection

25  to Florida, that was, defendants had their mail forwarded to a

1  Clearwater address.  That's clearly not the case here,

2  Your Honor.  So that can't be controlling in this case.

3  Also, in *Newberry v. Rife*, which is 675 So. 2d 684,

4  (Fla. 2d DCA 1996), defendant has -- was a -- there, defendant

5  was a non-Florida resident whose only connection to Florida was

6  as being a passive shareholder in a Florida auto repair

7  company.

8  And the same can also be said about the same *A.B.L.*

9  Realty case, plaintiffs did not -- there, in that case,

10  plaintiffs did not allege that the individual defendants, a

11  president and secretary of the defendant corporation, had

12  conducted any activity in Florida, but, rather, merely that

13  they work for defendant's corporation, which is not -- which --

14  which is what they had.  And really the conduct there was the

15  defendant in that case had signed a warranty deed.

16  Now, all three of those cases can't stand -- cannot

17  stand for this proposition that there needs to be this standard

18  test.  All of the facts are significantly different than all

19  the facts that we have here.  We have a defendant who is very

20  much engaged in business here in Florida.

21  Defendants also argue that, along with individual

22  capacity, we must -- we must also show, citing a case -- a

23  Florida Supreme Court case, *Dinsmore*, we must show a general

24  course of business activity for the state -- in the state for

25  pecuniary benefit.

1        Again, these are not rigid tests.  The two cases I

2   cited to you are all set forth -- sorry.  The two cases that I

3   cited to you, the *A.B.L.* Realty case and *International*

4   *Graphics*, were decided after the Supreme Court decision, and it

5   cautions that these are individual tests.  So using the facts

6   in *Dinsmore*, they clearly don't apply to this case.

7        *Dinsmore* was about an exchange of stock and a

8   commission that arose from there.  In *Dinsmore*, the only

9   allegation of the defendants being involved in Florida was one

10  meeting that they had here in Florida.  The actual stock

11  purchase was closed in Illinois, and I believe, if I remember

12  the facts, was executed and closed in Illinois, so had very

13  little contact with Florida.  And so that case, though it says

14  that proposition, it must be applied to the facts of this case.

15       None of these kinds of limited facts are present

16  here.  We have a clear pattern of conduct spanning -- spanning

17  years, potentially decades, involving Miscavige being directly

18  involved in land negotiations, management, and fundraising here

19  in Florida.  And all of this was from the pecuniary gain of

20  Scientology.  The fact that --

21       THE COURT:  Let me ask you, could it be considered a

22  business -- ongoing business or a business venture when the

23  Church of Scientology accepts money for the services that they

24  provide to their churchgoers?

25       MR. DOMINGUEZ:  Well, that's --

1          THE COURT:  -- on an ongoing basis?

2          MR. DOMINGUEZ:  That's what we allege, Your Honor,

3    that part of that is -- that defendants do not really cite to

4    any cases is because they're a nonprofit or a religion, somehow

5    you're exempt from the statute of 181, or pecuniary gain to --

6    to the religion or the nonprofit organization.

7          THE COURT:  So it's not just land that you're relying

8    on, land sales or land transactions.

9          MR. DOMINGUEZ:  Land sales, transactions, use of that

10   land, which obviously they derive a profit from, whether that's

11   renting to --

12         THE COURT:  As well as the services that the

13   church --

14         MR. DOMINGUEZ:  As well as the services that are

15   provided there.

16         THE COURT:  And what about the office space?  There

17   are some allegations, I think that you made, that Mr. Miscavige

18   has an office in the Middle District.

19         MR. DOMINGUEZ:  Your Honor, with regard to -- our

20   understanding was -- our understanding with our -- again, our

21   interviewing former Sea Org members was that he had office

22   space there.  As a matter of fact, in the declarations that

23   they provide, they actually say that, yes, there is office

24   space provided there to David Miscavige when he's visiting.

25   And actually I think they actually say there's actually places

for him to live, and one of those places that they cite is here
in Clearwater, Florida.

THE COURT:  All right.  I think we covered 181.

Is there anything additional you'd like to add?

MR. DOMINGUEZ:  I did.  I wanted to finally get to
answer the question you asked me at the beginning.

THE COURT:  Sure.  Yes.  Of course.

MR. DOMINGUEZ:  I apologize for taking this long.

THE COURT:  Absolutely.

MR. DOMINGUEZ:  It says, finally, defendants argue
that plaintiffs' allegations of human trafficking do not arise
from Mis --

(Individual sneezes.)

UNIDENTIFIED SPEAKER:  Sorry.

THE COURT:  That's all right.

MR. DOMINGUEZ:  -- do not arise from Miscavige's
business contact -- conduct or that of Scientology.  A reading
of 4 -- 48.181 shows the defendant's argument is misplaced,
Your Honor.  The language of 181 states as follows:  Whom all
process in any action or proceeding against them, arising out
of any transaction or operation connected with -- with or
incidental to the business or business venture.

Plaintiffs have alleged that the allegations did
directly arise from activities in Florida.  See paragraph 17
through 21.  These allegations state that Flag Service

1  Organization and Flag Ship Service Organization are defendants
2  that are both located here in Florida.

3          FSO manages the property operation and hosts a number
4  of events, fundraising services, provide services for their
5  members, and to maybe outside members, Your Honor, I'm not
6  quite sure.  And that the FSSO, which is the Flag Ship Service
7  Organization, operates the Freewinds.  And it's the running of
8  that ship by FSSO, which is -- which is, we believe, actively
9  managed -- we allege it is actively managed by Miscavige which
10 forms the basis for plaintiffs' claims on human trafficking
11 issues.

12          THE COURT:  All right.

13          MR. DOMINGUEZ:  And if the Court finds that
14 plaintiffs' allegations do not arise out of Miscavige's and
15 Scientology business activities in Florida, it's clearly
16 incidental to them, Your Honor, as the statute provides.

17          THE COURT:  All right.

18          MR. DOMINGUEZ:  If I could just say one more thing,
19 Your Honor.

20          THE COURT:  Yes, sir.

21          MR. DOMINGUEZ:  I apologize for taking so long.

22          THE COURT:  No.  Take your time.

23          MR. DOMINGUEZ:  48.181 was just clearly amended now
24 in January 2023.  Those new provisions --

25          THE COURT:  Now, do you contend that that would

apply, because he was -- you attempted to perfect service under

the -- the prior version?

MR. DOMINGUEZ:  Right.  Your Honor, we believe that

that it applies, because of --

THE COURT:  But does it apply?

MR. DOMINGUEZ:  We do -- we do agree that -- we

believe that it applies, Your Honor.

THE COURT:  You believe that it complies, but does it

apply?

MR. DOMINGUEZ:  I believe that it complies and

applies.

THE COURT:  Okay.  All right.  Go right ahead.

MR. DOMINGUEZ:  Okay.  So if I could --

THE COURT:  So you believe the new version of this

statute applies.

MR. DOMINGUEZ:  That's correct, Your Honor.

THE COURT:  And not the old version.

MR. DOMINGUEZ:  The old version.

One of the reasons we make this argument is because,

obviously, after the new statute came out and defendants had

filed their draft -- I mean, their motion, we kind of looked

at, well, is it the new statute or the old?  And so what we did

is we looked at the case law, and there's a couple of cases --

for instance, *Lussier* -- *Lussier v. Dugger*, 904 F.2nd 661 at

665, it says, "It is to be noted that 'statutory changes that

1 are procedural or remedial in nature apply retroactive.'"
2 So --
3       THE COURT:  You think this is procedural?
4       MR. DOMINGUEZ:  That's correct, Your Honor.
5       THE COURT:  Okay.
6       MR. DOMINGUEZ:  And so -- so, again, there's another
7 case, *Brown versus City of Clewiston*, which is 848 F.2 dot --
8 or F.2nd 1534, 1541, at footnote 57 -- at footnote 15, it says,
9 on its face, the amendment does not specify whether upon --
10 whether it applies prospectively or retrospectively.  None --
11 nonetheless, it is a well-established rule of construction that
12 in the absence of clear legislative expression to the contrary,
13 a law is presumed to operate prospectively.
14       The exception to this rule, Your Honor, arises only
15 when the nature of the new statute involved was inherently
16 procedural or affecting only the measure of damages.  And
17 that's what our argument here is, this is a procedural statute.
18 And under the guise of the new statute -- Your Honor, I was
19 going to show you the new statute, but I don't think I can,
20 because we don't -- this Elmo, I don't know how to actually use
21 it.
22       THE COURT:  Do you want to have it turned on?
23       MR. DOMINGUEZ:  Yeah, just for a moment.
24       THE COURT:  Sure.
25       Thank you.

1     MR. DOMINGUEZ:  So, Your Honor, as you see, there is
2  a new provision, it's number 4, so it's now 48.181, I guess,
3  number 4.  It says, any individual or foreign business entity
4  that conceals its whereabouts is deemed to have appointed the
5  Secretary of State as its agent on whom all process may be
6  served, in any action or proceeding against it, or any
7  combination thereof, arising out of any transaction or
8  operation connected with or incidental to the business or
9  business venture carried on in this state by such individual or
10 foreign business entity.

11    So, Your Honor, our argument is that this new -- this
12 new amendment has done away with one of the big requirements of
13 48.181, which is to show that -- in the old statute, you had to
14 show that the defendant had actually engaged in such a way that
15 it gave itself the privilege of operating here in Florida.
16 That has been done away with.

17    We would also argue, because this is a new provision,
18 it's almost something new -- or not almost new, we argue it's
19 something new, and saying that many of the cases that talk
20 about how you apply it and whether it should have individual
21 capacity, et cetera, don't apply now, because this was not in
22 existence at the time that that case law was -- was argued and
23 written.  And I guess the orders around him were vague.

24    So we believe as -- the same arguments as before,
25 because this is actually now a lower standard; we have met the

1    standard of this new statute.  In other words, that we have

2    said that he's been concealing his whereabouts, that

3    automatically makes the Secretary of State someone who is your

4    agent for purposes of service.  We've already argued about how

5    we believe that the allegations that we made in the complaint

6    both either arise from the business that we state is taking

7    place here in Florida, or we argue that it's incidental there,

8    so that's why we believe this is a lower standard and we

9    actually believe that this statute should apply.

10          Finally, Your Honor, I just wanted to say that -- if

11   the Court believes that they're going to deny our motion, we

12   ask that it be without prejudice so we can continue to replead.

13   We would also ask, Your Honor, that -- and if I said this

14   before, I apologize if I forgot, but we would believe, look,

15   this could end very quickly if Your Honor would just order them

16   to provide us with his home address.  If that happened, then we

17   would just go ahead and go through the proper service channels

18   as required -- as they want to say, there's a strict

19   compliance.  Well, part of that strict compliance, and I think

20   part of the nature of what you see in the *Verizon* case is that

21   the defendant has to provide some information about its

22   whereabouts.  They can't just go totally in the dark.

23          Your Honor, finally there's the argument about

24   default, but I don't know if you want to hear this part first,

25   and then we can hear the default later, or did you want to have

1  the default argument now?

2        THE COURT:  I think I have enough information that

3  you provided.  And so let's hear from the defense, and then

4  I'll give you a brief opportunity to reply.

5        MR. DOMINGUEZ:  Thank you.

6        You can leave that up.  Thanks.

7        MR. TERRY:  Thank you, Your Honor.  Thanks for having

8  us here and holding this argument in person.

9        The central question before the Court is a simple

10  one:  Have plaintiffs carried their burden to establish that

11  they had statutory authority to serve Mr. Miscavige through the

12  Secretary of State?  And the answer to that question, which is

13  entirely dispositive, is clearly no, they have not.

14        Before today, this hearing, plaintiffs did not even

15  attempt to identify a source of statutory authority to serve

16  Mr. Miscavige through the Secretary of State.  They didn't

17  identify it in their motion or in any of their half dozen

18  antecedent filings, including their declarations or other

19  application.  So this motion for relief should fail at its most

20  basic prima facie level, in that they did not identify a

21  statutory basis for serving Mr. Miscavige through the Secretary

22  of State, nor could they possibly meet the requirements of 8 --

23  of 18.481, regardless of whether it's the new one, or the old

24  one.  Sorry, 48.181.

25        So I think plaintiffs' request can be denied based

upon the application of two basic principles of Florida law as interpreted by Florida courts, both federal courts and state courts, as it pertains to substitute service.

The first principle is one that you reminded plaintiffs of when they applied for substitute service, and that is that statutes related to substitute service of process must be strictly construed.  And the burden of proof to sustain validity of substitute service of process rests upon the person seeking the invocation of the provisions of such statutes.

The second principle is that Section 48.161, which is the only provision they mentioned in their application or motion or any other filings, does not provide the authority to effect substitute service through the Secretary of State. 48.161 just provides the method of doing so once you have that authority.  It does not itself provide a source of authorization.  Authorization has to be found in provisions like 48.181 and other neighboring provisions.  And this is a critical point, and it was made clear in a decision by Magistrate Judge Mizell in the Fort Myers District in *United States versus Faro* in 2022.  And if it's okay with Your Honor, I'd like to hand up a copy of that with relevant language highlighted so everyone can focus on it.

THE COURT:  Does -- do you all have a copy on the plaintiffs' side?

UNIDENTIFIED SPEAKER:  Yeah.

1    UNIDENTIFIED SPEAKER:  Yeah.

2    THE COURT:  Okay.

3    UNIDENTIFIED SPEAKER:  Thank you.

4    THE COURT:  Sure.

5    MR. TERRY:  May I approach?

6    THE COURT:  Yes, absolutely.

7    Thank you.

8    MR. TERRY:  So what Judge Mizell said, and as you

9    see -- there's another case there too, but I want to focus on

10   this *Faro* case first -- is in the highlighted section, as

11   stated in its title, 48.161, sets forth the method of

12   substitute service, rather than any authorization to serve by

13   substitute service.

14        There are several substitute service-of-process

15   statutes that authorize substitute service and designate the

16   public officer, and he goes on to identify them, including,

17   finally -- and Florida Section 48.181 does the same for actions

18   arising from the operations of a business in the state.

19        So the principle there is their compliance with

20   48.161 is required as a procedural matter, but the substantive

21   question of whether they have authority to serve Mr. Miscavige

22   through the Secretary of State, which is a question of due

23   process, has to be answered by reference to Section 48.181 or

24   other provisions, none of which are applicable.

25        So I think there are three principal reasons why they

1   can't meet Section 48.181.  The first is that in order to

2   establish the applicability, they do have to show that

3   Mr. Miscavige, quote, individually, as opposed to acting in his

4   corporate capacity, engaged in a business or business venture

5   in Florida, and that's from the second case that I handed you,

6   which is the *A.B.L.* Realty case.  And I'm glad the plaintiffs

7   mentioned this, because I do think that this is the case, as

8   they suggest, I think that is perhaps the most on point.

9          In that case, which is the second case I've provided

10  you with, and the plaintiffs -- the allegations were that the

11  president and CEO of a company had caused it to commit fraud.

12  So they were the tortfeasors, they were sued as defendants,

13  along with the company, in connection with the purchase of

14  property in Florida.  So all of the activity was dealing with

15  the transaction in Florida.

16         And the Court found that it did have a basis to apply

17  48.181 to the company but not to the individual executives,

18  including its president and its secretary, because -- and

19  here's the critical language, which I've highlighted -- because

20  there was no allegation that either party individually, as

21  opposed to in their corporate capacities, engaged in a business

22  venture in Florida.

23         So the question has to be, have the plaintiffs

24  alleged that Mr. Miscavige individually, as opposed to in his

25  corporate capacity, engaged in a business venture in Florida?

1   And the answer to that is, quite clearly, no.

2          You heard them bring up a bunch of recent

3   transactions that Mr. Miscavige allegedly played a role in,

4   real estate discussions, fundraising, all of those, as

5   plaintiffs' counsel's discussion made clear, were on behalf of

6   the Church of Scientology.  They haven't identified a single

7   transaction that Mr. Miscavige allegedly engaged in in his

8   individual capacity in the state of Florida, not one, and

9   that's what 48.181 requires.

10          It's one thing to say that his activities on behalf

11   of the Religious Technology Center or other Scientology

12   organizations exposed those organizations to the potential of

13   service through the Secretary of State.  But in order to serve

14   an individual in that individual's name through the Secretary

15   of State, you have to show that that individual, in their

16   individual capacity, was engaged in business in Florida.  And

17   there are no allegations of that, not one in the complaint and

18   not one that you heard here today.

19          Judge Tuite noted in the *Provident Bank* case, which

20   is another case that plaintiffs cited, the plaintiff is

21   required to specifically allege that the defendants, acting in

22   their individual capacities, operated, conducted, or carried on

23   a business or business venture in Florida.

24          There are no allegations about Mr. Miscavige acting

25   in an individual capacity.  To the extent he is mentioned at

all in the lawsuit, it is all in the context of his official

duties for the Church of Scientology, Religious Technology

Center, or other Scientology-related entities.  In that -- in

that respect, it is very much like the two executives in *A.B.L.*

who were accused of wrongdoing, of directing the corporation to

engage in wrongdoing, but they could not be served as

individuals through 48.181 because there was no allegation that

they had individually engaged in business in their own

capacity.

THE COURT:  That's -- I'll take a look at the statute

itself.  I understand, you know, the language that you're

pointing to and the cases that you're citing to.

Is there anything in the statute itself that points

to the additional requirement that the cases seem to be reading

into the language of the statute that requires, as you said,

individual capacity?

MR. TERRY:  Yeah.  We can look at either the old one

or the new one, because the changes are immaterial.  The only

change was the addition of some preparatory language in the old

one really.

But the new one says, any individual or foreign

business entity that concealed... may be served in any action

or proceeding against it, arising out of any transaction or

operation connected with or incidental to any business or

business venture carried out in this state by such individual

1   or foreign business entity.

2          So even thereto that language, of such individual,

3   focuses on the individual nature.  And, remember, the question

4   here is not whether they could sue Mr. Miscavige, it's whether

5   they can circumvent personal service requirements and go

6   through the Secretary of State.  Authorization for that is a

7   creature of statute.  And the Florida legislature has made

8   clear that it has to be such individual or the business

9   engaging in activity in the state.  But it's that dichotomy

10  right there, if you want to serve someone as an individual, you

11  have to show that such individual engaged in a business

12  venture.  And that is exactly the language that I believe the

13  Court picked up on, the Fourth DCA in the *A.B.L. Realty* case,

14  and Judge Tuite, in the other case that I mentioned, *Provident*

15  *Bank*.

16         THE COURT:  And this is the -- the addition of

17  paragraph 4 is the amended statute.  Is the language similar in

18  the prior version, and, also, do you contend that the new

19  statute applies retroactively as well?

20         MR. TERRY:  Yeah.  So -- so two things.  First of

21  all, I don't think it matters, because there's no substantive

22  difference between the two.  The only difference that

23  plaintiffs' counsel really pointed to is this preparatory

24  language about the -- it's worded a little differently -- the

25  acceptance of the privilege; if you do X, Y, and Z subjects you

1   to potential service to the Secretary of State.

2          The actual language as to what you must do to be

3   subject to service through the Secretary of State is identical

4   in both.  So I don't think it matters, but I do believe the old

5   language would govern, because the question is, did they have

6   substantive authority to bring Mr. Miscavige into this case

7   without serving him personally as a -- as a matter of Florida

8   statute?  I think you would have to look at the Florida

9   statutory authority at the time.

10         Certainly if it's a question of, is he in default for

11  failing to answer, which would be a substantive result, you

12  would have to ask, is his failure to answer the complaint the

13  result of them not having the authority to serve him this way,

14  or them actually having authority at the time and him failing

15  to answer?  So I think it doesn't matter, but I think it

16  doesn't apply retroactively.

17         THE COURT:  All right.

18         MR. TERRY:  Your Honor, with respect to the language,

19  it says -- it's phrased a little bit differently, nonresidents

20  or others arising out of any transaction or operation connected

21  with or incidental to the business venture.  And beforehand, it

22  says, acceptance of any person individually or through a

23  partnership or association, and any person who is a

24  resident privilege extends by law to nonresidents and others to

25  operate, conduct, and engage or carry on a business or business

1    venture in the state.

2          So I think the same language about doing a business

3    venture in the state applies.  The new language perhaps makes

4    the argument even stronger frankly.  But the cases interpreting

5    the old language were quite clear.  You must be acting in an

6    individual capacity, and, frankly --

7          THE COURT:  The language is not the same, but the

8    cases interpreting the old language appear to support your

9    argument.

10          MR. TERRY:  That's correct.  And I think the same --

11    the same result holds with the new language too.  The new

12    language --

13          THE COURT:  The new language is more specific.

14          MR. TERRY:  It's perhaps even stronger, I would say.

15          THE COURT:  Now, do you -- what are your thoughts

16    about the other requirements of 181?

17          MR. TERRY:  Right.  And they all -- they all work

18    together.  The essence of those requirements are the same in

19    the new statute and the old statute, which is -- let me jump --

20    the next one is pecuniary benefit, that is, activity has to be

21    for a pecuniary benefit.  So what you're judging is, was

22    Mr. Miscavige engaged in his business in Florida for his

23    pecuniary benefit?

24          So questions about whether he was raising money for

25    the church and whether that was for the care and benefit of the

1   church don't quite get to the nub of the issue, because the
2   question is whether he was doing that for his own pecuniary
3   benefit.  If he's raising money in Florida for a Scientology
4   entity, that's not him doing business in Florida for his
5   pecuniary benefit.  Because after all, it's Mr. Miscavige that
6   they're asking to serve through the Secretary of State, not
7   these Flor- -- not these other entities.  So all the entities
8   are already in the case.  They've already accepted service,
9   been served, it's just their attempt to hold Mr. Miscavige to
10  service through the Secretary of State that's at issue today.

11          I think the *DeVaney versus Rumsch* case, which we
12  cite, is quite clear.  It says the determ- -- that's Florida
13  Supreme Court 1969 -- the determinative question is whether
14  goods, property, or services are dealt with within the state
15  for the pecuniary benefit of the person providing or otherwise
16  dealing in those goods, property, or services, which, again,
17  shows that it has to be for the pecuniary benefit of
18  Mr. Miscavige if you want to use that activity to show that
19  he's subject to service through the Secretary of State.

20          THE COURT:  Now, that's been part of the plaintiffs'
21  allegations, however.  They've alleged that in the complaint
22  that Mr. Miscavige has benefitted financially from the
23  operation of the church in Florida.

24          MR. TERRY:  Well, of course that's no different than
25  the president and CEO of a company like in *A.B.L.* who would

benefit from the operation of their company, and in the *A.B.L.*
case were alleged to have directed the fraud.  So the mere fact
that there's some downstream salary, or whatever he gets as a
result of this, that's not it.  That's not what the test is
asking for.  It has to be, according to the *Dinsmore* case, a
general course of business activity for a pecuniary benefit.
And given the fact that the requirement is there has to be
specific compliance with the statute, one thing that plaintiff
shouldn't be allowed to do is mix and match allegations.

For example, to say, well, we have allegations that
Mr. Miscavige benefits from operations of Scientology entities
in general, so that should be good enough to show that he's
conducted business in Florida.  No.  What they have to do is
show that the business that he conducted in Florida was for
pecuniary benefit, not other Scientology entities or not
businesses generally.

And the third thing they have to show is that their
claims arise out of his own business dealings in Florida, and
they don't meet that at all.  All of their claims arise from
conduct undertaken by Scientology-related entities, not
Mr. Miscavige personally.  Where he is mentioned in the
complaint, it's always in the context of his role in the church
organization, not any conduct in his personal capacity.
There's simply no claim at all in this case that that arises
from his conduct in the individual capacity of business.

1   There's not.  That's not what this case is about.  If this case

2   were about Mr. Miscavige personally defrauding somebody in a

3   land deal he was involved in for his own benefit, then they --

4           THE COURT:  Well, there are allegations related to

5   Mr. Miscavige personally in the complaint.

6           MR. TERRY:  Always in the context of his role of

7   chairman of the board or directing the activities of these

8   organizations, and that's -- that's the critical difference.

9   They're not saying Mr. Miscavige's conduct --

10          THE COURT:  What about that is not personal?  I'm --

11  I'm -- I'm not sure that I understand the distinction.

12          MR. TERRY:  Sure.  It's exactly the distinction drawn

13  in the *A.B.L.* case, which is, in your individual capacity as

14  opposed to in your corporate capacity.  What it says -- what

15  the Court says is, turning now to the defendants Nuzzo and

16  Goldapple, we note the plaintiffs' complaint contains no

17  allegation that either party, individually as opposed to acting

18  in corporate capacities, engaged in a business or business

19  venture in Florida.  And that is the critical distinction.

20  Like in *A.B.L.*, all of the conduct that Mr. Miscavige is

21  engaged -- is alleged to have engaged in comes from his

22  official capacity for these church organizations, not doing

23  anything separately on the side for his own benefit.

24          THE COURT:  Well, it would have to be separately or

25  on the side, in your view.

1          MR. TERRY:  It would have to be in his individual

2    capacity.  Is he wearing a hat as an executive of Scientology

3    organizations and the ecclesiastic leader and his role with

4    these organizations, or is he doing something for Mr. Miscavige

5    himself as an individual?  Because the question is whether or

6    not there is a basis to say that he has engaged in business

7    that will allow him to appoint the Secretary of State as his

8    service -- process agent.

9          So the question is, is he doing it for himself or is

10   he doing it for an entity?  Because if he's doing it for an

11   entity, that might create a basis to serve the Secretary of

12   State for that entity but not for him as an individual.  And

13   that's the language from the *Provident Bank* case, individually

14   as opposed to in a corporate capacity, and in the *A.B.L.* case.

15   And with that distinction in mind, there's no way that you can

16   find that the allegations relate to his business conduct.

17          And focusing on the third question, do the claims

18   arise out of his business dealings in Florida?  They simply

19   don't.  I mean, you heard plaintiffs talk about things

20   recently, raising money in Florida, doing land deals in

21   Florida; none of their claims are even incidental to that type

22   of activity.  None at all.  They deal with what happened on a

23   ship 15, 20 years ago, or somewhere else, not the business

24   activity that they've identified.  So 48.181 simply does not

25   apply.

1        There are a couple of other things I want to address
2   from plaintiffs' argument.
3        First of all, I think maybe the suggestion that
4   somehow he must have been on notice of the complaint and that
5   should be enough.
6            THE COURT:  Let me ask you about --
7            MR. TERRY:  Yeah.
8            THE COURT:  -- the arguments that plaintiff raised.
9   So is Mr. Miscavige a resident of California?
10           MR. TERRY:  He is.
11           THE COURT:  Was he formerly a resident of Florida?
12           MR. TERRY:  He's always been a resident of
13   California --
14           THE COURT:  Did he --
15           MR. TERRY:  -- to my knowledge.  For decades, he has
16   been.
17           THE COURT:  All right.  Is there some argument that
18   he was formerly a resident of Florida?
19           MR. TERRY:  Yeah, that -- that's --
20           THE COURT:  Some evidentiary support for that?
21           MR. TERRY:  That's incorrect.  And let me address
22   that.  The principal --
23           THE COURT:  In your -- in your response, if you would
24   also point to any evidentiary support for your contention that
25   he's never been a resident of Florida.

1          MR. TERRY:  Yes.  So the declaration of Warren

2    McShane, which is attached to our opposition, identifies that

3    Mr. Miscavige is a resident of California.  I believe it says

4    he's been a resident of California for many decades and has

5    never been a resident of Florida.

6          THE COURT:  Where does it say he's never been a

7    resident of Florida?

8          MR. TERRY:  I'll take a look.

9          THE COURT:  I see the allegations about California.

10   And I want to be sure whether or not there's an issue of fact

11   about this.  It says for as long as he's known him, he's been a

12   resident of California and not Florida, and he's been a

13   resident of California for more than 40 years.  That doesn't

14   really mean that he's never been a resident of Florida, but

15   that is a long time.

16         MR. TERRY:  Yes.  My understanding is that he has

17   never been a resident of Florida, but he has certainly not been

18   a resident of Florida, according to the factual record, for

19   40 years.

20         I do want to address a couple other things.

21         THE COURT:  Go right ahead.

22         MR. TERRY:  Yeah.  Plaintiffs made the suggestion

23   that somehow, because there is a case from the 1980s dealing

24   with L. Ron Hubbard, that has something to do with the question

25   today as to whether or not these various entities are agents of

1    Mr. Miscavige.  Clearly does not.

2            The factual situation in the 1980s, the structure of

3    church organizations, even what the entities were, is

4    completely different.  So the fact that L. Ron Hubbard was

5    found to have some Scientology entity be his agent in 1980 is

6    not at all evidentiary as to the question of whether or not

7    Mr. Miscavige today has appointed RTC or FSSO or CSI or any of

8    the other entities as his agent.  It doesn't provide any

9    information whatsoever on this form.

10           THE COURT:  Your contention is that he hasn't

11   appointed them as his agent.

12           MR. TERRY:  Correct.  And, frankly, what plaintiffs,

13   I think, are trying to do is disregard the actual corporate

14   form of all these entities and say all of their conduct is

15   effectively attributable to Mr. Miscavige.  It would be pretty

16   remarkable to hold at this stage that Mr. Miscavige has

17   appointed all of those entities as his agent and effectively

18   they're serving as his alter-ego.  In the absence of any of the

19   types of allegations that you would normally need to have to

20   disregard a corporate form, like defrauding creditors and that

21   kind of thing, there are none of those allegations, and there's

22   no basis to disregard the corporate form.

23           But I do think -- going back just a little bit to the

24   question about time -- their allegations to his business

25   conduct in Florida, that's essential.  If they don't have

1   specific allegations about his business conduct in Florida that
2   are tied to the wrongdoing they complained of, they don't have
3   a basis to invoke 48.181.

4          THE COURT:  Has he ever had an office, or does he
5   have an office in Florida?

6          MR. TERRY:  So the -- the organizations maintain
7   offices in Florida.  That's, I think, what the statute means.
8   Is he able to use offices at the organizations?  Of course.
9   But when it says "maintain an office in Florida," it is saying
10  do you, as an organization, have an office in that state?
11  Certainly the organizations do, but that's not him maintaining
12  an office.

13          THE COURT:  Let's see.  According to that statute --
14  and this is 181 -- have an office or agency in the state.  So
15  the plaintiff has -- plaintiffs have contended that there is an
16  office in the state.  And you say that there is a place where
17  he can have an office.

18          MR. TERRY:  Yes.  I'm -- I'm saying the entities
19  literally have offices in the state, some of them at least,
20  those are offices that he can certainly use.  That's not what
21  the statute's talking about.  I can come use offices here when
22  I come to local counsel, it doesn't mean that it's my office.
23  If my law firm had an office in Florida, that would mean
24  perhaps that my law firm has an office in Florida, but that
25  doesn't mean that I have an office in Florida.  It's a

1  separate -- it's a separate question entirely.

2       THE COURT:  So what do you think the question is?

3  Not whether or not he can use an office in Florida?

4       MR. TERRY:  Correct.  Are there office facilities in

5  Florida that he is able to use?  That's not the question.  It's

6  whether or not he essentially owns or leases an office in

7  Florida.

8       THE COURT:  Well, not -- well, it doesn't require the

9  owning or leasing but whether or not he maintains an office in

10 Florida?  Would you agree with that?

11      MR. TERRY:  Now, I think it says to have an office or

12 agency in the state.  And I think that -- that means you have

13 to have some possessory interest in that office.

14      THE COURT:  All right.

15      MR. TERRY:  I want to speak a little bit to the

16 question of concealment and diligence.  I think this is clear

17 in the affidavit, but Mr. Miscavige has not evaded service.

18 He's a resident of California, he's gone about his business --

19      THE COURT:  Are you willing to accept service?

20      MR. TERRY:  I'm not authorized to accept service

21 today.

22      THE COURT:  All right.  Are you authorized to inform

23 the plaintiffs about whether or not service can be perfected at

24 any particular location?

25      MR. TERRY:  I'm certainly happy to have those

1    discussions with them, absolutely.  And he wasn't acting

2    present -- he wasn't present in any of the locations when they

3    did attempt service.  The plaintiffs have talked to you about

4    27 attempts they supposedly did.  If you look at a lot of what

5    they count as attempts, they were attempting to serve him at

6    locations where they were told.  He wasn't there, he doesn't

7    live there.  And Florida courts -- the *Hernandez* court that we

8    cite -- have said that repeated attempts of service at the

9    wrong location do not amount to diligence, and that's what we

10   have here.

11        The *Verizon* case, which they rely on, I think is

12   instructive.  Because in the *Verizon* case, they actually went

13   to the right house repeatedly, and the person just never came

14   out, never came to the door.  They repeatedly came to the right

15   house, and he never came to the door.  And the Court said we

16   wouldn't find that there was diligence, if, for example, they

17   repeatedly went to the wrong house.  And that's what much of

18   what plaintiffs are talking about here is; attempts to serve

19   him at the wrong place.  And it's notable --

20        THE COURT:  Well, how do you know it's the wrong

21   place if we don't know what the right place is?

22        MR. TERRY:  Sure.  Well, one thing I can tell you is

23   that their principal declarant who provides information about

24   where they think he lives is a man named Aaron Smith-Levin.

25   And based on the declaration of Aaron Smith-Levin, the

1  plaintiffs say, we believe he lives at this location in

2  Clearwater, Florida called Hacienda Gardens.  They allege in

3  their motion, I believe, that he has his residence there, and

4  his principal office is in Florida as well, based on the Aaron

5  Smith-Levin declaration.

6          Aaron Smith decla -- Aaron Smith-Levin put in his

7  declaration, December -- on December 17th stating that

8  Mr. Miscavige now works and lives in the Hacienda Garden

9  building in Clearwater, and his primary offices are located at

10  the top of the Flag Building in Clearwater.

11         Two weeks later, on December 31st, 2022, Mr. Levin

12  Smith [sic] published a YouTube video, where he says -- I can

13  hand it up, a copy of it, if it's helpful.  If I may approach.

14         THE COURT:  Sure.  And this is -- is this part of

15  your record as well?

16         MR. TERRY:  This is -- this is post-brief.

17         THE COURT:  All right.

18         MR. TERRY:  So this is plaintiffs' declarant -- their

19  principal declarant establishing that Mr. Miscavige lives in

20  Florida.  He swore under oath on December 17th that that was

21  true.

22         On December 31st, he says -- by the way, this is the

23  international headquarters out in the desert in Riverside

24  County, California.  We're not talking about Clearwater, we're

25  not talking about Los Angeles, we're not talking about L. Ron

1  Hubbard Way or the Celebrity Centre; we're talking about Int.

2  This is where David Miscavige actually lives and works

3  primarily.  And it's the location of Golden Era production

4  studios, completely contrary to his declaration and a location

5  that plaintiffs never once attempted to serve; never once.

6  They didn't go there in person, they didn't mail anything

7  there.  So their allegations that they were diligent are belied

8  by the testimony of their own -- a statement of their own

9  declarant who says that the place where Mr. Miscavige, in his

10 words, actually lives and works, they haven't even attempted to

11 serve.

12         So we have a situation where plaintiffs never

13 attempted service at the location where their declarant claims

14 he lives, and plaintiffs now assert that Mr. Miscavige lives in

15 Clearwater based on that.  But here they're claiming compliance

16 with 48.161 based on a mailing not to Clearwater or this

17 location where the declarant says he lives, but to an address

18 on Hollywood Boulevard, Los Angeles, an address that's notable,

19 because every declarant, on our side and their side, agrees

20 that's not Mr. Miscavige's address.  That's not strict

21 compliance with the statute.  It's certainly -- it's not the

22 type of compliance that should permit them to come in here and

23 ask Mr. Miscavige to be held in default.

24         The one other time I'm aware of that plaintiffs came

25 in and tried to argue they had effected service -- different

1    plaintiffs in a different case -- at that location, the

2    Hollywood Boulevard location, this is a matter that the

3    plaintiffs actually cite in their briefing, the Court quashed

4    service and found that the process server was not credible in

5    claiming that he had effected service there.

6          And finally I want to address the question of -- of

7    default.  I don't think we really need to address a question of

8    default, because there's no question that Mr. Miscavige has not

9    been --

10         THE COURT:  No, I don't think we need to talk about

11   the default issue at this point.

12         MR. TERRY:  Okay.

13         THE COURT:  Now, let me ask you, there have been, you

14   know, a number of -- there's facts on the side of the

15   plaintiffs' side, you all have facts that you have asserted in

16   your affidavit.  Do you contend that there might be a need for

17   an evidentiary hearing where there's conflicting facts?

18         MR. TERRY:  I don't -- I don't think they're actually

19   conflicting facts.  And the reason why I say that is because

20   the plaintiffs to declarants don't actually put forth

21   percipient facts that are relevant to this question.

22         For example, there's nobody coming forth saying, oh,

23   I saw Mr. Miscavige.  He was actually at this building on the

24   day we attempted service.  And the two declarants the

25   plaintiffs rely on, Mr. Aaron Smith-Levin and an individual

named Mr. Render -- Rinder, when they do speak about what they

know and what they perceived at Scientology organizations, it's

from 20 years ago.  It's not from today.  It's from long in the

past.  And when they do speak about what's happening today,

they do so in a way that's devoid of any evidentiary value,

because they're not speaking from personal experience, because

they're not saying I was here at this location and I know this.

They appear to be speculating or reporting rumors; none of it

has evidentiary foundation.  And as we note in our opposition,

Mr. Rinder's declarations of similar caliber have been rejected

repeatedly by other courts because they rely on hearsay,

innuendo, conclusory legal arguments.

So when it comes to the actual facts, I don't think

there's a dispute.  We have declarants who are actual

percipient fact witnesses who explain the bases for their

knowledge and what they know.  And they have witnesses who

speculate, and in one case, two weeks later, says something

completely contrary to what he said under oath.

So I don't think we need to have an evidentiary

proceeding.  More importantly, we don't need to have one

because of this, Your Honor.  As you apprised them, it was

their burden to strictly comply with the statutory

requirements.  And as part of that burden, they were obligated

to demonstrate that they had statutory authority to serve

Mr. Miscavige through the Secretary of State.  They never made

1  that showing.  That is the very first question that should be
2  asked, and that question is dispositive, because they didn't
3  even attempt to address 48.181.

4        And finally, I want to address the suggestion that
5  Mr. Miscavige could be haled into this courtroom without
6  personal service because he has actual knowledge.  The Eleventh
7  Circuit has made crystal clear that action -- that actual
8  knowledge cannot suffice where there is not actual compliance
9  with the specific requirements of jurisdiction.  And I think
10  that's the *Altera* case that we've cited.

11        So going back to the original question, have
12  plaintiffs carried their burden in establishing statutory
13  authority?  They have not.  And I would submit they can --
14  you -- you cannot find that they did have that authority based
15  on the clear language of the statutes and the clear reading of
16  the cases interpreting it from the Florida District Court of
17  Appeals and from other cases in the Middle District of Florida,
18  and it would be an extraordinary extension of the alternative
19  substitute service-of-process powers to find service here.

20        The Florida legislature could have decided to make
21  things looser, could have decided that you didn't actually need
22  to be doing business in Florida, that the claims don't have to
23  arise out of you doing business in Florida, but that's not the
24  decision they made.  In the absence of statutory authority, he
25  was not served.

1    THE COURT:  All right.  And the plaintiff would have

2    the burden, and they do have the burden, they come forward with

3    information and evidence to support their compliance with the

4    statute, then don't you all have a burden of coming forward

5    with evidence to rebut that?

6    MR. TERRY:  I think if there are disputed issues of

7    fact, that's -- that's the way it would work.  They would

8    present their evidence, and we would have to come forward with

9    counter-evidence, yes.

10    THE COURT:  And your contention is they have not met

11    their burden.

12    MR. TERRY:  On a number of fronts.  We've come

13    forward with our evidence on other matters.  We have a number

14    of declarants who address the question of evasion and the

15    propriety of service, so I believe we've come forward with

16    evidence on issues for which we needed to come forward with

17    evidence.  But where they didn't even advance an articulation

18    as to why they met 48.181, then we don't yet have an obligation

19    to come forward and rebut that.  There's nothing to rebut,

20    because they didn't identify any statutory authority to serve

21    Mr. Miscavige through the Secretary of State.

22    THE COURT:  All right.  And let's -- anything

23    additional?

24    MR. TERRY:  One last -- one last thing.  Ms. Durham

25    notes that the *Carlini* case, which I believe is from the

Florida Fourth Circuit DCA, said the burden of proof to sustain

the validity of service of process is upon the person who seeks

to invoke the jurisdiction of the court, and to achieve proper

service of process, there must be strict compliance with the

applicable service.

So it's clear that the burden of proof to sustain the

validity of service of process is upon the person who seeks to

invoke the jurisdiction of the court.  So it stays their

burden, it is their burden, and they haven't carried that.

THE COURT:  All right.  Let's hear from the

plaintiff.

MR. DOMINGUEZ:  Your Honor, counsel for Miscavige

continues to make the same argument that this requirement --

this requirement, the individuality that's required by the

statute, but yet he states these cases.  But, again, he fails

to rebut or even challenge the issue of the fact that previous

case law has shown that it's a -- it's a case-by-case basis.

He wants to use a case, this *A.B.L.* Realty case, about a

president who signed one warranty deed and say that's the law

in Florida.  That's not what the cases say.  The cases say it's

not a rigid, mechanical test.  You have to adjudge these facts

on the basis of every case.  We make very specific allegations

about all the -- the great -- I don't know that it's a great

number -- numerous amounts of conduct that Miscavige in this

state and the reason why he has -- he has provided or made

1    these -- this -- the Secretary of State his agent or for
2    purposes of process.  He can't stand on these cases and say
3    that's the law in Florida, because it's not the law in Florida;
4    it's on a case-by-case basis.
5            The other thing I would also like to point out is --
6    if I could, to address some of his arguments and some of your
7    questions.  For instance, in -- in their declaration, which is
8    Exhibit 1 to their complaint, he told you that offices were
9    just being provided to him.
10           But actually if you look at paragraph 7 of his
11   declaration, it says of Mr. McShane -- it says at some of
12   his -- at some of the locations, Mr. Miscavige visits in
13   carrying out his religious obligations.  Scientology churches
14   in those areas provide work and living accommodations for his
15   use while he's -- while he is there.  And these include --
16   these locations include Clearwater.
17           THE COURT:  You contend that satisfies the
18   requirement that he has an office in Florida?
19           MR. DOMINGUEZ:  I think it requires both that he has
20   an office in Florida and that he -- that the church itself is
21   his agent.
22           Your Honor, the defendant also points to the -- in
23   trying for the first time today, he --
24           THE COURT:  And now -- let me go back and ask you --
25           MR. DOMINGUEZ:  All right.  Sorry.

1          THE COURT:  -- you talked about the agency.  The
2    defense seemed to argue that you were making the assertion
3    related to agency, because you were perhaps attempting to
4    pierce the corporate veil or violate the form of the
5    corporation itself.  Is that your intent and argument here?

6          MR. DOMINGUEZ:  Well, in paragraph 17 of this -- and
7    I don't think that was in the -- in the Hubbard allegations
8    either.  I don't think there was these sort of allegations that
9    he says that we had to be defrauding creditors or something of
10   that nature.  That was not argued there, I believe, Your Honor.
11   But what we do ar- -- but what we do say in paragraph 17 of the
12   complaint is that he and Scientology are the same, and they are
13   basically agents of each other.  So that's the argument that we
14   make.

15         THE COURT:  I see.  And, now, that relates to L. Ron
16   Hubbard.  Do you have anything more recent related to
17   Mr. Miscavige -- Miscavige?

18         MR. DOMINGUEZ:  Well, if I misspoke, Your Honor, I
19   meant that in paragraph 17, this was with regard to how
20   Miscavige was seen by Scientology.  In other words, he was
21   acting as their agent, because it's our allegations in the
22   complaint that he and Scientology are the same entity.  That's
23   the way this religion is run.

24         THE COURT:  I see.

25         MR. DOMINGUEZ:  Your Honor, if I could -- sorry.

1    It's a lot of paperwork here.

2          Miscavige's counsel points to the *Faro* case to say

3    that -- to talk about that 161 is not something that we can use

4    to serve Miscavige.  But actually in a couple pages later, if

5    you note, the Court says, when courts, including this one, have

6    allowed litigants to use Section 48.161 -- standing alone, and

7    not in conjunction with any other statute -- as authorization

8    for substitute service on the Secretary of State, they are --

9    they have required a consish- -- I'm sorry, I can hardly

10   pronounce it -- a -- a conscientious investigation to identify

11   and locate the defendant and a diligent effort to effect

12   personal service.

13         That's exactly what we did under *Verizon*, and it's

14   the first time that they've tried to distinguish the facts of

15   *Verizon*.  They didn't do it in their pleadings, and they tried

16   to do it here, but even their own case law doesn't do that.

17         THE COURT:  There was some argument about whether or

18   not the headquarters is in Riverside County, California.  And

19   have you all attempted to make any service in Riverside County,

20   California?

21         MR. DOMINGUEZ:  Apparently not, Your Honor.  But --

22   can I just point to the fact that this should not be a

23   cat-and-mouse game?  This shouldn't be like try to find me,

24   jump through this hoop.  Really, the Court needs to analyze the

25   efforts that we took with regard to our diligence and what we

1  tried to do as best as we could, is whether we did the

2  appropriate effort to ask for substitution of service under

3  161.  We have done a lot of things -- and the one thing, if

4  they really want to end this now, then go ahead and provide us

5  exactly where he lives and then we can end this entire thing.

6  This is -- this is just a game, and I don't think it should be,

7  and that's not what these courts are requiring.

8          THE COURT:  Thank you so much.  This has all been

9  very helpful to me.  I will take this all under advisement and

10  then issue a decision related to this issue.

11          Thank you so much.

12          (Whereupon, the Court adjourned at 3:19 p.m.)

13                      --oo0oo--

14

15

16

17

18

19

20

21

22

23

24

25

1 <u>REPORTER'S CERTIFICATE</u>

2 I, REBECCA M. SABO, a Registered Professional

3 Reporter and Certified Realtime Reporter, certify that the

4 foregoing transcript is a true and correct record of the

5 proceedings given at the time and place hereinbefore mentioned;

6 that the proceedings were reported by me in machine shorthand

7 and thereafter reduced to typewriting using computer-assisted

8 transcription; that after being reduced to typewriting, a

9 certified copy of the transcript will be filed electronically

10 with the Court.

11 I further certify that I am not attorney for, nor

12 employed by, nor related to any of the parties or attorneys to

13 this action, nor financially interested in this action.

14 IN WITNESS WHEREOF, I have set my hand at Tampa,

15 Florida, this 21st day of February, 2023.

16

17 <u>/s/ Rebecca M. Sabo</u>

18 Rebecca M. Sabo, RMR, CRR
United States Court Reporter

19

20

21

22

23

24

25