UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWAIN BAXTER et al.,

   Plaintiffs,

   v.                                                    Case No.: 8:22-cv-00986-TPB-JSS

DAVID MISCAVIGE et al.,

   Defendants.
_____/

**Plaintiffs' Memorandum of Law Regarding Whether the Court or an Arbitrator Must Decide the Duress Defense**

Pursuant to the Court's February 13, 2023 Order, Plaintiffs submit this memorandum to explain why their duress defense should be decided by the Court.

## INTRODUCTION

In their motions to compel arbitration, Defendants argued that Plaintiffs' duress arguments "attack the validity of the agreements as a whole," rather than the arbitration agreement specifically, and thus should be decided by the arbitrator under *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006). ECF No. 84 at 17 n.7. That argument misses the mark for at least two reasons.

**First**, the Supreme Court and the Eleventh Circuit have held that, before even applying the rule from *Buckeye*, courts must decide any threshold issues of contract formation. Because the Supreme Court has stated that duress is such a contract formation issue, *Buckeye* does not apply to duress, and it must be decided by the Court.

1

**Second**, even if the Court does reach the *Buckeye* analysis, it still must decide the duress issue because Plaintiffs directed their duress challenge to the arbitration provisions specifically, and it can be applied to those provisions without considering any other parts of the larger contract. Defendants are wrong that *Buckeye* requires Plaintiffs to challenge the arbitration provisions on grounds that apply <u>only</u> to those provisions. That reading of *Buckeye* is contrary to case law interpreting the FAA, which expressly permits duress challenges and prohibits arbitration-specific rules. And, as a practical matter, it would mean that a court could virtually never entertain a duress challenge to an arbitration provision contained in a larger contract, even if the duress is obvious.

## ARGUMENT

### I. Duress is a Question for the Court because It Concerns the Formation of the Arbitration Agreement

It is "well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 296 (2010). And the rule in *Buckeye* that a defense must be specific to the arbitration provision does not apply to formation disputes. *See Buckeye*, 546 U.S. at 444 n.1 (explaining that the court's opinion does not address "whether any agreement . . . was ever concluded"). Thus, the Eleventh Circuit applies "a two-step process in considering the arbitrability of any contract containing an arbitration clause." *Solymar Invests., Ltd. v. Banco Santander, S.A.*, 672 F.3d 981, 990 (11th Cir. 2012). The court first resolves "any formation challenge to the contract containing the arbitration clause, in keeping with *Granite Rock*." *Id.* Only after concluding that a contract was formed does

2

it apply *Buckeye* and decide "whether any subsequent challenges are to the entire agreement, or to the arbitration clause specifically." *Id.*

Here, because duress "involves 'unfair dealing at the contract formation stage,'" it is an issue of contract formation that the Court must decide. *Kindred Nursing Ctrs. Ltd. Partnership v. Clark*, 581 U.S. 246, 255 (2017) (quoting *Morgan Stanley Capital Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cty.*, 554 U.S. 527, 547 (2008)); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 353 (2011) (Thomas, J., concurring) (listing "fraud or duress" as examples of challenges to "formation of the arbitration agreement").[1] That ends the analysis, and the Court need not apply *Buckeye*, which does not apply to contract formation issues like duress. *See, e.g.*, *Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, 2019 WL 13119015, at *4 (N.D. Cal. 2019) (deciding duress defense to arbitration because "[c]laims of economic duress and undue influence are issues concerning contract formation."). In short, the Court must decide the duress issue to determine whether the parties ever formed an agreement to arbitrate.

II. **Even if *Buckeye* Applies, Duress is Still a Question for the Court**

    a. **This Case is Different than *Buckeye* because Plaintiffs Direct Their Challenge Specifically to the Arbitration Provisions**

In *Buckeye*, the plaintiffs brought a class action alleging that Buckeye charged usurious interest rates and that its loan agreements with consumers violated Florida

---

[1] Contrary to Defendants' assertion at oral argument, *Coleman v. Prudential Bache Secs., Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986), actually supports Plaintiffs' position because it confirms that "coercion . . . go[es] to the formation of the entire contract." Since *Coleman* was decided in 1986, both *Granite Rock* and *Solymar* have clarified that formation issues are for the court to decide, therefore abrogating the dicta in *Coleman* suggesting otherwise.

3

law. *Id.* at 443. When Buckeye moved to compel arbitration, the plaintiffs' argument against arbitration was identical to their argument on the merits: the loan agreements were illegal. *Id.* at 443. And the plaintiffs' argument for illegality relied only on other provisions of the contract, including the interest rate provision, not the arbitration provision itself. Thus, the question presented to the Supreme Court was whether the plaintiffs could avoid arbitration by having a court decide the very issue presented by their complaint: whether the entire contract was illegal.[2]

To resolve that question, the Court began with the fact that "[t]he crux" of the plaintiffs' complaint was "that the contract as a whole (including its arbitration provision) is rendered invalid by the usurious finance charge." *Id.* at 444. Then, the Court looked to its decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), for guidance. *Buckeye*, 546 U.S. at 444. In *Prima Paint*, the plaintiff sought recission of a contract on grounds of fraudulent inducement. 388 U.S. at 398. The plaintiff argued that it should not be required to arbitrate because the arbitration provision was contained within the fraudulent contract, but it did not specifically contend that it had been fraudulently induced to agree to the arbitration provision. *Id.* at 399. The Court held that "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the

---

[2] Although there is some factual overlap between Plaintiffs' duress defense and their claims on the merits under the TVPRA, a finding of duress would not dispose of their case like a finding that the contract was illegal would have in *Buckeye*. The elements of duress and Plaintiffs' TVPRA claims are different and, unlike in *Buckeye*, Plaintiffs seek statutory damages, not contract-based remedies.

4

federal court may proceed to adjudicate it," but that a court could not consider the claim for fraud in the inducement of the larger contract. *Id.* at 403-04.

Applying *Prima Paint*, the *Buckeye* Court articulated two key principles: that "an arbitration provision is severable from the remainder of the contract," and that, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." 546 U.S. at 445-46. The Court then held that, because the plaintiffs' challenge was based only on deficiencies in other contractual provisions, the arbitration provisions were "enforceable apart from the remainder of the contract." *Id.* at 446. In short, *Buckeye* directs courts to ask a simple question: whether the arbitration provision is invalid when considered "apart from the remainder of the contract." *Id.*; *see Nat'l Fed. of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 81 n.15 (1st Cir. 2018) (explaining that the Supreme Court "create[d] a legal fiction in which the arbitration agreement is a separate or separable contract from the underlying contract that is being challenged"). In *Buckeye*, the answer was clearly no because the sole basis for the plaintiff's challenge to arbitration was the separate illegal interest provision. But here, the answer is yes. Unlike in *Buckeye*, Plaintiffs' duress defense does not depend on other provisions in the contract. Had they signed only the arbitration provisions, the circumstances of the signing would still constitute duress.

Moreover, this case is distinguishable from *Buckeye* and *Prima Paint* because Plaintiffs have made clear their duress argument is directed only to the arbitration provision. *See* ECF No. 111 at 4 (arguing that "[t]he **arbitration agreements** were

5

signed under severe duress") (emphasis added); *id.* at 8 n.15. In *Buckeye* and *Prima Paint*, the "crux" of the Plaintiffs' claims was that the entire contract was invalid. *Buckeye*, 546 U.S at 444; *Prima Paint*, 388 U.S. at 399; *see also Solymar Invests., Ltd.*, 672 F.3d at 998 (complaint alleged that the entire agreement had been fraudulently induced and sought invalidation of the agreement). Here, on the other hand, Plaintiffs' TVPRA claims do not seek to invalidate the agreements they signed. Plaintiffs' sole reason for raising duress is to defeat the motion to compel, so they seek only a ruling that the arbitration provisions were the product of duress; they do not ask the Court to opine on the validity of the rest of the contract. Plaintiffs' duress challenge is thus still specific to arbitration even though it requires examining the circumstances under which the entire contract was formed. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1271 (9th Cir. 2006) (plaintiff's challenge was specific to the arbitration clause because the only relief sought was invalidation of the arbitration provision, even though adjudicating the challenge may "require[] an examination of the making of the entire contract"); *Ostroff v. Alterra Healthcare Corp.*, 433 F.Supp.2d 538, 544 (E.D. Pa. 2006) (challenge was specific to arbitration provision even though it involved considering the making of the larger contract); *James v. Global Tel*Link Corp.*, 2016 WL 589676, at *8 (D.N.J. Feb. 11, 2016) (duress defense was specific to arbitration even though it required considering the circumstances under which the entire agreement was entered into).[3]

---

[3] Defendants also cited to *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999), a Ninth Circuit case decided before *Buckeye* that articulates a similar general rule based on *Prima Paint*. That case does not support Defendants' argument for the same reasons that *Buckeye* does not.

### b. *Buckeye* Does Not Require Plaintiffs to Challenge the Arbitration Provision on Different Grounds Than the Rest of the Contract

Defendants take *Buckeye* even a step further and suggest that the Court can adjudicate Plaintiffs' duress defense to arbitration only if no duress defense applies to the entire contract. That nonsensical argument is contradicted by Eleventh Circuit case law. *See Parm v. National Bank of California, N.A.*, 835 F.3d 1331, 1334-35 & n.1 (11th Cir. 2016). *Parm* involved the analogous context of a challenge to a "delegation provision"—contractual language delegating decisions about arbitrability to the arbitrator instead of a court—within an arbitration agreement. Like an arbitration provision in a larger contract, a delegation provision is severable and must be analyzed separately in the way described in *Buckeye* and *Prima Paint*. *See Rent-A-Center West v. Jackson*, 561 U.S. 63, 70-73 (2010).[4] The plaintiff in *Parm* challenged both the entire arbitration agreement and the delegation provision on the same ground: that the arbitral forum provided by the agreement—a Native American Tribe—was illusory because no such forum for arbitration existed. 835 F.3d at 1334. The court recognized that, under *Rent-A-Center*, the plaintiff must attack the delegation clause specifically, and it concluded she had done so by arguing the designated forum was unavailable, even though she had raised that same argument to invalidate the whole agreement. *Id.* at 1334-35; *see also Tuckman v. JPMorgan Chase Bank, N.A.*, 2021 WL 3357953, at *2

---

[4] Although Defendants cited *Rent-A-Center* in their motion to compel, they do not argue there is a delegation provision in any of the agreements Plaintiffs signed. Nor could they, as the contracts do not contain one. *See* ECF No. 84-2, Exs. A-I; ECF No. 84-1, Ex. A; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." (cleaned up)).

7

n.5 (11th Cir. Aug. 3, 2021) (addressing challenge to specific provision that "turn[ed] on the same principles of law as" challenge to larger contract); *Steines v. Westgate Palace LLC*, 2022 WL 18031492, at *5 & n.5 (M.D. Fla. Dec. 14, 2022) (considering statutory argument that applied to both specific clause and larger agreement).

Similarly, here, the Court can still consider Plaintiffs' duress argument directed specifically at the arbitration provisions, even though the same duress argument also applies to the broader contracts. *See also Spahr v. Secco*, 330 F.3d 1266, 1272-73 (10th Cir. 2003) (considering mental incapacity challenge to arbitration agreement that also applied to larger contract, and contrasting *Prima Paint* because, "[u]nlike a claim of fraud in the inducement, which can be directed at individual provisions in a contract, a mental capacity challenge can logically be directed only at the entire contract"); *Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*, 22 Cal.App.5th 1096, 1111 (Cal. Ct. App. 2018) ("[W]hether the challenge is the same as or different from the challenge to other provisions of the arbitration clause or underlying agreement is not dispositive of whether the challenge is specifically directed at the delegation clause.").

### c. Defendants' Erroneous Reading of *Buckeye* Leads to Absurd Results and is Contrary to the FAA

If Defendants' reading of *Buckeye* is correct, no court can ever consider a duress defense to arbitration if the arbitration agreement is one part of a larger contract. By definition, duress does not apply to particular provisions of a contract but to the circumstances under which the entire contract was formed. *See Christian v. Pressed Juicery, Inc.*, 2021 WL 4771801, at *5 (C.D. Cal. Apr. 23, 2021) ("[I]t may not be

8

practicable for Plaintiff to separately challenge the delegation clause as being the result of undue influence or economic duress because the entire Agreement, including the delegation clause, was formed at the same time in the same transaction and under the same circumstances"). Indeed, Defendants admit that their reading of *Buckeye* would force a party into arbitration even if the existence of duress were beyond dispute. As Defendants acknowledged at oral argument, under their reading of *Buckeye*, someone who was videotaped being forced at gunpoint to sign a contract with an arbitration provision still must arbitrate whether there was duress. *See* Tr. at 9:19-24. Likewise, had the court in *Parm* accepted Defendants' reading of *Buckeye*, it would have resulted in forcing the parties to litigate the validity of the arbitration agreement in a non-existent forum. Rejecting Defendants' reading of *Buckeye* avoids those absurd results.

Defendants' expansion of *Buckeye* is also contrary to the FAA. To begin with, it creates an impermissible arbitration-specific rule. *See Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1713 (2022) ("a court may not devise novel rules to favor arbitration over litigation"); *Prima Paint*, 388 U.S. at 404 n.12 (purpose of the FAA was "to make arbitration agreements as enforceable as other contracts, but not more so"). Outside the arbitration context, there is no rule that a court can invalidate a contractual provision only on grounds that uniquely apply to that provision. But Defendants ask the Court to adopt that rule for arbitration provisions. As one court explained, "[i]f we were to accept defendants' argument that courts are precluded from ruling on a specific contract defense to a delegation clause merely because the same defense is also brought to invalidate other related contractual provisions, we would be treating delegation

9

clauses differently than other contractual clauses, a determination that would be inconsistent with the FAA." *Nielsen*, 22 Cal.App.5th at 1110. Further, the FAA's saving clause provides that arbitration agreements will be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, which include "fraud, duress, or unconscionability," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). But Defendants' argument would render this saving clause meaningless by requiring that arbitration agreements be enforced even when there is clear proof of duress in making the agreement. *Buckeye* was never meant to go so far. Instead, it merely held, consistent with § 2, that an arbitration agreement can be enforced when the plaintiff fails to come forward with any grounds for invalidating it.

## CONCLUSION

For the foregoing reasons, the Court should decide the duress issue and conclude that the arbitration agreements are void due to duress.[5]

Respectfully Submitted,

*/s/ Shelby Leighton*
Shelby Leighton
(Admitted *pro hac vice*)
**PUBLIC JUSTICE**
1620 L St. NW, Suite 630
Washington, DC 20036
Phone: (202) 797-8600
Fax: (202) 232-7203
SLeighton@publicjustice.net

---

[5] Even if the Court concludes it cannot consider Plaintiffs' duress challenge, it still must consider their other defenses, which are specific to the arbitration provisions.

Neil L. Glazer
Joseph C. Kohn
Zahra R. Dean
Aarthi Manohar
Elias Kohn
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700
nglazer@kohnswift.com
jkohn@kohnswift.com
zdean@kohnswift.com
amanohar@kohnswift.com
ekohn@kohnswift.com

Gregory P. Hansel
(Fla. Bar No. 607101)
Shana M. Solomon
Elizabeth F. Quinby
**PRETI FLAHERTY BELIVEAU &
PACHIOS, CHARTERED, LLP**
One City Center
P.O. Box 9546
Portland, ME 04112-9546
(207) 791-3000
ghansel@preti.com
ssolomon@preti.com
equinby@preti.com

Agnieszka M. Fryszman
Brendan Schneiderman
**COHEN MILSTEIN SELLERS & TOLL
PLLC**
1100 New York Ave., N.W.,
Fifth Floor
Washington, DC 20005
(202) 408-4600
afryszman@cohenmilstein.com
bschneiderman@cohenmilstein.com

Theodore Leopold
(Fla. Bar No. 705608)
Manuel J. Dominguez

(Fla. Bar No. 0054798)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
11780 U.S. Highway One,
Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400
tleopold@cohenmilstien.com
jdominguez@cohenmilstein.com

**WARREN A. ZIMMERMAN, P.A.**
4114 Sparrow Ct
Lutz, FL 33558-2727
(813) 230-1465
warren@wzimmermanlaw.com