**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

GAWAIN BAXTER, LAURA BAXTER
and VALESKA PARIS,

     Plaintiffs,

v.                                                                    Case No.: 8:22-cv-00986-TPB-JSS

DAVID MISCAVIGE; CHURCH OF
SCIENTOLOGY INTERNATIONAL, INC.;
RELIGIOUS TECHNOLOGY CENTER, INC.;
IAS ADMINISTRATIONS, INC.; CHURCH
OF SCIENTOLOGY FLAG SERVICE
ORGANIZATION, INC.; CHURCH OF
SCIENTOLOGY FLAG SHIP SERVICE
ORGANIZATION, INC.;

     Defendants.

_____/

**DAVID MISCAVIGE'S OBJECTION TO THE ORDER GRANTING IN**
**PART AND DENYING IN PART PLAINTIFFS'**
**MOTION FOR ORDER DECLARING MISCAVIGE**
**SERVED WITH PROCESS AND IN DEFAULT**

Pursuant to Fed. R. Civ. P. 72(a), putative Defendant David Miscavige[1]

respectfully objects to, and seeks partial reversal of, the Magistrate's Order (the

_____

[1] Mr. Miscavige has made only a special appearing in this action without submitting himself to the jurisdiction of this Court. *See* ECF No. 153 at 1; ECF No. 163 at 1; ECF No. 172 at 1. By this objection, Mr. Miscavige specially appears only to seek the requested relief herein. He does not consent to the jurisdiction of the Court, and he reserves his right to challenge (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) failure to state a cause of action, (6) statute of limitations, (7) arbitrability and all other defenses available to him.

"Order"), ECF No. 170, granting in part and denying in part Plaintiffs' Motion for Order Declaring Defendant Miscavige Served with Process and in Default ("Plaintiffs' Motion").  ECF No. 152.  The Magistrate's ruling that Plaintiffs carried their burden to establish that Mr. Miscavige could be deemed served through the Florida Secretary of State pursuant to Fla. Stat. § 48.181 should be reversed as clearly erroneous and contrary to law.

## I.    INTRODUCTION

Mr. Miscavige has never been personally served with process in this action. Instead, Plaintiffs sought a ruling that he could be deemed served through the Florida Secretary of State, though their Motion failed to identify any statutory authorization for doing so.  On February 14, 2023, Magistrate Judge Sneed denied the Motion in part, declining to find Mr. Miscavige in default, but finding that he had been "properly served with process pursuant to sections 48.181 and 48.161 of the Florida Statutes."  Order at 12, 16-17.  Because this finding was "clearly erroneous" and "contrary to law," Mr. Miscavige objects to the Order in accordance with Fed. R. Civ. P. 72(a).

The Magistrate correctly identified the governing legal framework:  in order to establish authorization to serve Mr. Miscavige through the Secretary of State, pursuant to Fla. Stat. § 48.181, Plaintiffs had the burden to plead facts showing (1) that Mr. Miscavige had engaged in business in Florida *in his individual capacity* and (2) that Plaintiffs' claims arose from that conduct.  *See*

Order at 18-19, 22.  The Magistrate committed clear error, however, in determining that Plaintiffs had carried that burden.

To begin with, Plaintiffs' Motion failed at the *prima facie* level.  Plaintiffs' Motion *did not even mention* the controlling statute, Fla. Stat. § 48.181, much less try to meet it.  Plaintiffs nowhere in their Motion argued that Mr. Miscavige had engaged in business in Florida—in an individual capacity or otherwise—or that their claims arose out of such business, as required by Fla. Stat. § 48.181.  Instead, Plaintiffs' Motion focused solely on a different provision, § 48.161, dealing with *how* to effect such service of process, not *whether* it is authorized.

In granting the Motion, the Magistrate erroneously reached beyond Plaintiffs' Motion to find support for such substitute service based on arguments raised for the first time at the hearing.  In doing so, the Magistrate relied upon allegations in the Amended Complaint, ECF No. 79 ("Am. Compl."), that were pure legal conclusions and boilerplate, misinterpreted or ignored the Amended Complaint's specific allegations concerning Mr. Miscavige's activities, which belied the boilerplate statements, and construed Plaintiffs' allegations in a manner contrary to sworn affidavits submitted by other Defendants and in a manner that risks a significant encroachment on the Defendants' First Amendment rights.

## II.    BACKGROUND

Plaintiffs are three former members of the Church of Scientology.  After voluntarily serving as members of the Church's religious order, the Sea

Organization ("Sea Org"), for over a decade, they departed the religious order but continued practicing Scientology as parishioners at their local churches. Plaintiffs later filed this lawsuit against five entities associated with Scientology,[2] as well as against Mr. Miscavige, the Chairman of the Board of Defendant RTC and the ecclesiastical leader of Scientology. The claims against Mr. Miscavige are baseless; his inclusion pure harassment. Plaintiffs' allegations are false in many respects, including, as relevant here, the false and conclusory assertions that Church-related charitable fundraising is performed for Mr. Miscavige's pecuniary benefit, and that the Defendant entities are somehow agents of Mr. Miscavige.

Although Plaintiffs filed their Complaint on April 24, 2022 and amended on August 2, 2022, they have never personally served Mr. Miscavige. Plaintiffs attempted service at a smattering of Scientology-related entities in Florida and California.[3] ECF No. 163 at 6. Mr. Miscavige was not present at any of these locations when service was attempted, ECF No. 163-2 ¶¶ 11, 13; ECF No. 163-7 ¶ 4.

Having failed to serve Mr. Miscavige in person, Plaintiffs requested issuance of a summons to a public officer under Fla. Stat. § 48.161. ECF No. 93.

---

[2] These entities include the Flag Ship Service Organization, Inc. ("FSSO"), Flag Service Organization, Inc. ("FSO"), IAS Administrations ("IASA"), Religious Technology Center ("RTC"), and Church of Scientology International ("CSI").

[3] Although the Magistrate references twenty-seven purported attempts at service, Order at 14, these attempts were often carried out on the same day at different Scientology-related entities in California and Florida, all within blocks of each other. *See, e.g.*, Am. Compl. ¶ 8; ECF No. 141 ¶ 16.

The Magistrate granted that request, but reminded Plaintiffs that the "statutes relating to substituted service of process (in lieu of personal service of process) must be strictly construed; and the *burden of proof to sustain the validity of substituted service of process rests upon the person seeking to invoke the provision of such statutes*."  ECF No. 97 at 3 n.1 (citations and internal quotations marks omitted) (emphasis added).

On December 13, 2022, Plaintiffs filed a motion seeking an order deeming Mr. Miscavige served through substitute service on Florida's Secretary of State. ECF No. 152.  In support of their Motion, Plaintiffs detailed their attempts to locate and serve Miscavige and asserted that he had concealed himself, *see, e.g.*, ECF Nos. 79, 141, 151, but failed to identify, or attempt to satisfy, any statutory authorization for serving Mr. Miscavige through the Secretary of State, such as Fla. Stat. § 48.181.  Most notably, Plaintiffs' Motion neither argued that Mr. Miscavige had done business in Florida in his individual capacity, nor that their claims arose from his business activity in Florida.  *See generally* ECF No. 152.

Mr. Miscavige made a limited appearance to challenge service of process and oppose Plaintiffs' Motion.  ECF Nos. 153, 163.  Mr. Miscavige submitted declarations refuting the allegations made by Plaintiffs in their Motion, including those regarding residence, place of business, and Plaintiffs' attempts to serve Mr. Miscavige with process.  *See, e.g.*, ECF Nos. 163-1, 163-2, 163-7, 163-8, 163-9. Following a hearing on the Motion, the Magistrate issued an Order granting, in

part, and denying, in part, Plaintiffs' Motion.  ECF No. 170.  For the reasons explained below, the Magistrate committed clear error.

## III.    STANDARD OF REVIEW

A district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Pigott v. Sanibel Dev., LLC*, No. 07-0083-WS-C, 2008 WL 2937804, at *5 (S.D. Ala. July 23, 2008).  A finding is "clearly erroneous" when a court is "left with the definite and firm conviction that it is wrong." *Branch v. Sec'y, Fla. Dep't of Corr.*, 638 F.3d 1353, 1356 (11th Cir. 2011).

## IV.    ARGUMENT

The Order should be set aside pursuant to Rule 72(a) as both clearly erroneous and contrary to law because the Magistrate misinterpreted the record and misapplied the relevant legal standards in granting Plaintiffs' Motion.  The Magistrate committed clear error in finding that Plaintiffs had satisfied their burden to allege that Mr. Miscavige had engaged in business in Florida in his "individual capacity," Order at 18-22, and that their causes of action arose from Mr. Miscavige engaging in such business in Florida.

The general rule is that a defendant must be personally served.  *Societe Hellin, S.A. v. Valley Com. Cap., LLC*, 254 So. 3d 1018, 1020 (Fla. 4th DCA 2018) (*per curiam*).  The version of Fla. Stat. § 48.161 in effect at the relevant time

provided a narrow exception to this rule permitting, "when authorized by law,"
substituted service on a public officer for a non-resident or a Florida resident
concealing their whereabouts "who has appointed a public officer as his or her
agent for the service of process." Fla. Stat. § 48.161(1). The instances in which a
"public officer [is] designated by law," are highly limited and set forth expressly
in other statutory provisions, including, as relevant here, Fla. Stat. § 48.181. That
statute provides that a number of conditions be met before it may be invoked,
including that the defendant must operate, conduct, engage in, or carry on a
business or business venture in Florida, and that the cause of action must arise
out of any transaction or operation connected with or incidental to the business
or business venture. *Provident Bank v. Nascarella*, No. 8:16-cv-3052-T-17CPT,
2018 WL 11344798, at *2 (M.D. Fla. June 7, 2018).

      The Magistrate clearly erred in applying those requirements to the facts of
this case. As the Magistrate noted, "[p]erfection of substitute service pursuant to
section 48.161 'requires strict compliance with the statutory prerequisites because
such service is an exception to personal service,'" Order at 10 (quoting *Dixon v.
Blanc*, 796 F. App'x 684, 687 (11th Cir. 2020)), and "[t]he party seeking to
effectuate substitute service bears the burden of pleading facts sufficient to
support the applicability of the substitute service statutes." Order at 10-11 (citing
*Green v. Emerald Homes, LLC v. Fed. Nat'l Mortg. Ass'n*, 224 So. 3d 799, 802
(Fla. 2d DCA 2017)). Plaintiffs' Motion clearly failed to meet those requirements,

and the Magistrate's efforts to find support in the Amended Complaint were
clearly erroneous.

### A. The Magistrate Committed Error in Finding That Mr. Miscavige Engaged in Business in Florida in His Individual Capacity.

The Magistrate recognized that service under § 48.181 is authorized only
where a defendant has engaged in a business or business venture in Florida in his
*individual* capacity.  Order at 18-19. "[A]bsent allegations that the individual
defendants *acting in their individual capacities* had engaged in business in
Florida, service upon the secretary of state under the long-arm statute could not
constitute service upon them as individuals." *Farouki v. Attel et Cie*, 682 So. 2d
1185, 1186 (Fla. 4th DCA 1996) (emphasis added) (citing *A.B.L. Realty Corp. v.
Cohl*, 384 So. 2d 1351, 1356 (Fla. 4th DCA 1980)); *see also Newberry v. Rife*, 675
So. 2d 684, 685 (Fla. 2d DCA 1996).

The Magistrate erroneously found that Plaintiffs had carried their burden
to make such a showing, Order at 18-22, despite the fact that Plaintiffs made no
such argument in their Motion, ECF No. 152, and the Amended Complaint
contained no factual allegations that could possibly support such a conclusion.  In
reaching this conclusion, the Magistrate relied on arguments made by Plaintiffs'
counsel for the first time in the hearing, and looked principally to a single
paragraph of the Amended Complaint, containing: (1) a litany of boilerplate
assertions, such as "Miscavige has operated, conducted, engaged in, or carried on
a business or business venture in Florida;" (2) allegations clearly relating to

conduct undertaken on behalf of the entity Defendants, rather than in an individual capacity, such as purportedly "controlling and directing . . . Scientology's substantial real estate holdings in Clearwater, Florida . . . providing . . . temporary quarters for visiting Scientologists;" and (3) the bare legal conclusion that each of the Scientology entities, including the Church of Scientology International itself, is the "agent" of Mr. Miscavige. The Magistrate also appeared to rely on the blatantly false assertion in the Amended Complaint that the charitable fundraising conducted by Defendant IASA is actually for Mr. Miscavige's personal benefit. All of this constitutes clear error in several respects.

### 1. The Magistrate Erred in Relying on Arguments Not Made in Plaintiffs' Motion—Including Any Attempt to Satisfy Fla. Stat. § 48.181.

Because Plaintiffs did not advance any arguments in their Motion as to how they satisfied the relevant statute, Fla. Stat. § 48.181, such arguments were waived and should not have formed the basis for the Magistrate's opinion. *See, e.g.*, *Burns v. United States*, 278 F. App'x 924, 927 (11th Cir. 2008); *United States v. Landazuri Arboleda*, 553 F. Supp. 3d 1107, 1126-27 (M.D. Fla. 2020) (rejecting arguments not briefed to the court and raised for the first time at a hearing); *see also Ocasio v. C.R. Bard, Inc.*, No. 8:13-cv-1962-T-36AEP, 2020 WL 3288026, at *2 n.1 (M.D. Fla. June 18, 2020); *Starbuck v. R.J. Reynolds Tobacco Co.*, 349 F. Supp. 3d 1223, 1229 (M.D. Fla. 2018). As the Magistrate noted in rejecting an argument advanced by Mr. Miscavige in his Opposition "in a

single sentence without citation to authority," "'[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.'"  Order at 20 n.9 (*quoting N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998)).  That same reasoning should have compelled the Magistrate to deny Plaintiffs' Motion in its entirety based on their failure to raise in any fashion—perfunctory or not—their authority to serve Mr. Miscavige under Fla. Stat. § 48.181.[4]

### 2.  The Magistrate Erred in Relying on Conclusory Allegations.

Plaintiffs' bald allegations, which state no more than the legal standard—*e.g.*, "Miscavige has operated, conducted, engaged in, or carried on a business or business venture in Florida," Order at 18 (citing Am. Compl. ¶ 17)—are insufficient to establish service under Fla. Stat. § 48.181.  *Cf. David v. BayCare Health Sys., Inc.*, No. 8:19-cv-02136-T-60JSS, 2019 WL 6842085, at *3 (M.D. Fla. Dec. 16, 2019) (Barber, J.) (holding that allegations which directly track the language of the statute are conclusory).  In evaluating the sufficiency of pleadings, matters of personal jurisdiction, of which service of process is a part, "courts in the Eleventh Circuit have repeatedly declined to exercise specific jurisdiction over a nonresident defendant on the basis of generalized and conclusory allegations"—like those advanced by Plaintiffs here.  *In re Takata*

---

[4] At a minimum, this Court should remand the matter to the Magistrate to permit Mr. Miscavige to introduce declarations to dispute the arguments made by Plaintiffs for the first time in the hearing.

*Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1142 (S.D. Fla. 2019).  Rather, a plaintiff must allege facts sufficient to plead a *prima facie* case, which is demonstrated only by factual allegations pled with "reasonable particularity" establishing that sufficient contacts between the party and the forum state exist. *Organic Mattresses, Inc. v. Envtl. Res. Outlet, Inc.*, No. 17-21905-Civ, 2017 WL 5665354, at *2 (S.D. Fla. Oct. 6, 2017); *see also Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006).  Notably, while the Magistrate identified the specific facts to be considered in determining whether the "defendant engaged in a 'general course of business activity' in Florida," Order at 17, n.8, the Magistrate never considered whether Plaintiffs had actually pleaded those facts with respect to Mr. Miscavige—they did not.

The Magistrate appeared to rely on a line of Florida state cases holding that application of Florida's long arm statute, whether for service of process or personal jurisdiction more generally, need only be pleaded by tracking the statutory language.  *See* Order at 18.  That was clear error.   Post-*Twombly* and *Iqbal*, federal courts should require that factual allegations supporting personal jurisdiction be pleaded "with reasonable particularity."  *Organic Mattresses,* 2017 WL 5665354, at *2.  Because federal pleading standards govern this matter, and the pleading standards for service of process has been treated identical to other matters of personal jurisdiction, that standard applies here as well.  *See Storms v. Haugland Energy Grp., LLC*, No. 18-cv-80334, 2018 WL 4347603, at *3 (S.D. Fla. Aug. 17, 2018) (holding that the "logic of *Iqbal* and *Twombly* readily

11

applies to a Rule 12(b)(2) motion" and collecting cases); *but see Knepfle v. J-Tech Corp.*, 419 F. Supp. 3d 1281, 1287 (M.D. Fla. 2019).

### 3. The Specific Factual Allegations Relied Upon by the Magistrate Demonstrate that None of the Alleged Business Activity Was Undertaken in Mr. Miscavige's Individual Capacity.

Regardless of the pleading standard to be applied, the allegations of the Amended Complaint repeatedly make plain that the alleged business conduct was not undertaken by Mr. Miscavige in his personal capacity but rather on behalf of RTC—the entity for which Mr. Miscavige serves as the Chairman—or on behalf of the religion more generally. Indeed, the allegations specifically seized on by the Magistrate leave no doubt that the alleged activity was *not* performed in an individual capacity. For example, the Magistrate relied on allegations that:

- Mr. Miscavige's so-called "business contacts within Florida" included "promoting, fundraising and directing the management and operations of" Scientology organizations, Order at 18 (citing Am. Compl. ¶ 17);

- "Miscavige has 'continuous and systematic' business ties to Florida through 'negotiating and directing the purchase of real property in Florida,' and 'control[ling] and direct[ing]' the management of FSO, including the 'ownership, management and operation of Flag Base, Scientology's substantial real property holdings in Clearwater, Florida . . . providing (among other things) temporary quarters for

visiting Scientologists, facilities for classes and auditing sessions,

dining and meeting facilities,'" Order at 19 (citing Am. Compl. ¶¶ 17,

20);

- "Miscavige controls and directs Defendant CSI, which conducts

  'substantial business' through the licensing of Scientology

  intellectual property . . ." Order at 19 (citing Am. Compl.  ¶ 19).

Even if true, and they are not, none of those allegations involve Mr. Miscavige

engaging in business in Florida in his "individual capacity," as Fla. Stat. § 48.181

requires, *see Farouki*, 682 So. 2d at 1186, and Plaintiffs have never argued

otherwise.  The allegations relied on by the Magistrate mirror those rejected in

*A.B.L. Realty Corp.*, 384 So. 2d at 1355-56.  In that case a plaintiff sued a

corporation, as well as the president and secretary of the corporation, alleging

that the two officers fraudulently misrepresented certain information to induce a

sale of property.  *Id.* at 1355.  The court found that § 48.181 was inapplicable to

the officers, as the complaint contained no allegations that they had acted in their

individual capacities, as opposed to on behalf of the corporation.  *Id.* at 1355-56.

The Magistrate seemed to conclude that because Plaintiffs made the bald

(and untrue) allegation that Mr. Miscavige received pecuniary benefits from the

conduct of certain Defendants, Plaintiffs had somehow satisfied their burden to

show that he engaged in conduct in his individual capacity. But such a ruling

would be clearly contrary to the line of Florida cases holding that the actions of

officers and directors, who naturally receive pecuniary benefits from their work,

are not subject to service under Fla. Stat. § 48.181 when they engage in business in Florida on behalf of their employers.  *See Farouki*, 682 So. 2d at 1186; *A.B.L. Realty Corp.*, 384 So. 2d at 1355-56; *Newberry*, 675 So. 2d at 685.  Indeed, in *A.B.L. Realty Corp.*, the court found that the president and secretary of a company could not be served through Fla. Stat. § 48.181 even though they personally directed fraudulent conduct in Florida, and obviously benefitted from it.[5]

Furthermore, the allegation that the Defendant entities operate for the pecuniary benefit of Mr. Miscavige is patently false, *see* Mislav Raos February 28, 2023 Declaration ¶¶ 4-7; Kenneth Weber February 28, 2023 Declaration ("Weber Decl.") ¶ 6; Sarah Heller February 28, 2023 Declaration ("Heller Decl.") ¶ 6, and belied by the recognized tax-exempt status of each Defendant, Am. Compl. ¶¶ 19 (CSI); 21 (FSSO); ECF No. 87-1, ¶ 2 (IASA); ECF No. 88-1 ¶ 7 (RTC); Heller Decl. ¶ 3.

### 4.   The Magistrate Committed Clear Error in Holding that Plaintiffs Had Sufficiently Alleged that Each Entity Defendant was the "Agent" of Mr. Miscavige.

Although the Amended Complaint contained no allegations of Mr. Miscavige actually conducting business activities in his individual capacity, such as purchasing land for himself or entering into contracts for himself, the

---

[5] None of the authority relied upon by the Magistrate holds to the contrary—that when an individual acts on behalf of a corporation, as an officer, director, or otherwise, they may be treated as having acted in an "individual capacity" if they are alleged to have received pecuniary benefits from that corporation.

Magistrate held that all of the "business" conduct of the entity Defendants could be attributed to him and treated as his own. The Magistrate reached this conclusion based upon the conclusory allegation that the entities through their association with Miscavige "serve as his agents." Order at 20 (citing Am. Compl. ¶ 17). This was clear error in several respects.

First, that naked legal conclusion is insufficient to plead agency. The Magistrate acknowledged that "[t]he party seeking to effectuate substitute service bears the burden of pleading facts sufficient to support the applicability of the substitute service statutes." Order at 10. The Magistrate's Order, however, fails to identify any allegations of *fact* that would support such a conclusion.

"In order to establish an agency relationship in Florida, a party must show: (1) acknowledgment by the principal that the agent will act for it; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent." *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1324 (S.D. Fla. 2009). Plaintiffs pleaded only control—not the other elements required to establish agency. Nevertheless, the Magistrate found that Plaintiffs had sufficiently alleged not only that *each* Defendant was Mr. Miscavige's agent but also that it was Mr. Miscavige's agent *for all purposes*, as the Magistrate held that whatever conduct the entity Defendants engaged in in Florida was tantamount to conduct by Mr. Miscavige in his individual capacity and thus sufficient to subject him to service under Fla. Stat. § 48.181. That conclusion constituted clear error.

In finding allegations of agency, the Magistrate also appeared to rely on a wholly unreasonable inference: that because Mr. Miscavige "is not alleged to be an officer, director, or shareholder of any of the Organizational Defendants apart from California-based RTC," Order at 20, his actions must have been in his "individual capacity." That inference simply fails as a matter of logic and is inconsistent with the allegations of the Amended Complaint. Plaintiffs recognize that Mr. Miscavige is the ecclesiastical leader of the Scientology religion as well as Chairman of the Board of RTC. That his actions might benefit other Scientology entities reflects his responsibilities in those positions. Plaintiffs do not even allege that Mr. Miscavige's lack of a role with other Defendants suggest that he was acting in his individual capacity or that they are his "agent." To the contrary, Plaintiffs' allegation is that Mr. Miscavige "through RTC" somehow directs the other entities. That is untrue, but even Plaintiffs' allegations are contrary to the Magistrate's conclusion. To suggest that Mr. Miscavige is acting in an "individual capacity" when he takes actions benefitting Scientology broadly is to ignore his role in the religion as well as Plaintiffs' own allegations, and is an extraordinary judicial dismissal of the manner in which a religion organizes its internal ecclesiastic affairs. *See* pp. 18-19*, infra*. It is also clear error.

Second, the allegations that the entity Defendants do business in Florida, and do so as Mr. Miscavige's agents, are refuted by the record in this case. The out-of-state entity Defendants, including CSI, RTC, and IASA, denied the jurisdictional allegations regarding their purported business activity in Florida in

their motions to dismiss, including via unrefuted declarations.  *See* ECF No. 88 at 5-12, ECF No. 88-1 ¶¶ 6-15 (RTC), ECF No. 89 at 4-5, ECF No. 89-1 ¶¶ 9-12 (CSI), ECF No. 87 at 2-16, ECF No. 87-1 ¶¶ 5-11. (IASA).  In addition, the allegation that the entity Defendants—all recognized tax-exempt religious organizations— engaged in "business" activities, is fundamentally at odds with the way Florida law defines that term.   The Florida Local Business Tax Act contains the definitions of religious and charitable organizations specifically removing them from the definition of "business" entities. Fla. Stat. § 205.022.  The term "business" does not include "the customary religious, charitable, or educational activities of nonprofit religious, nonprofit charitable, and nonprofit educational institutions in this state." In contrast the term "Religious institutions" is used to define churches and ecclesiastical or denominational organizations.  *Id.*

The Magistrate's Order cites to *McLean v. Church of Scientology of Cal.*, 538 F. Supp. 545, 548 (M.D. Fla. 1982), for the proposition that substitute service is appropriate where plaintiffs allege that entities served as the agent of the defendant.  *See* Order at 20.  The facts of that forty-year-old case are entirely different than those here.  None of the tax-exempt religious institution Defendants present in this case were involved in the *McLean* matter—they did not even exist.  Among the myriad differences, the *McLean* case issued more than a decade before the U.S. Government recognized all United States Churches of Scientology as tax-exempt, including individually recognizing each of the entity defendants as a separate tax-exempt religious organization, and before Mr.

17

Miscavige came to be the Chairman of the Board of Defendant RTC and the
ecclesiastical head of Scientology.[6]

Moreover, contrary to the circumstances surrounding Mr. Hubbard in
*McLean*, who argued that he had *no* position within the Church of Scientology of
California, Mr. Miscavige *does* have a position with RTC and from that position
acts on its behalf and on behalf of Scientology broadly.

Third, the Magistrate's sweeping decision to treat a series of tax-exempt
religious entities as the mere "agents" of Mr. Miscavige not only denigrates the
legitimacy of Scientology as a religion, but also the Church's First Amendment
freedoms, as reflected in the ministerial exception and ecclesiastic abstention
doctrine.   The Supreme Court has held that the First and Fourteenth
Amendments afford religions a special place under the law, and a religion's
determinations of church governance must be viewed as final.  *See, e.g.*,
*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171,
185-86 (2012) ("Whenever the questions of discipline, or of faith, or ecclesiastical
rule, custom, or law have been decided by the highest of [the] church judicatories
. . . the legal tribunals must accept such decisions as final, and as binding on
them." (citation omitted)); *Kedroff v. St. Nicholas Cathedral of Russian*

---

[6] The precedential value of *McLean* is also diminished by the court's recognition
that substantial grounds for disagreement with the opinion existed.  *McLean*, 538
F. Supp. at 550 (granting § 1292(b) motion on the grounds that the "order
involves a controlling question of law as to which there is substantial ground for
difference of opinion, of which an immediate appeal would materially advance
the case").

*Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952) (emphasizing that churches have the "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine"). The Magistrate's broad conclusion that, for the purposes of service of process, all Scientology organizations may be treated as "agents" of Mr. Miscavige, engaging in "business" for his personal benefit rather than religious charitable activities, intrudes into the religious affairs of the Church no less than a determination that every Roman Catholic church or charity is but an agent of the Pope for his pecuniary benefit.

**B.    The Magistrate Committed Clear Error in Finding That Plaintiff Sufficiently Alleged That Their Claims Arose from Mr. Miscavige's Business Conduct.**

Even if Plaintiffs' conclusory allegations about Mr. Miscavige were enough to establish that he engaged in business in Florida in his personal capacity—and they are not—Fla. Stat. § 48.181 applies only where a plaintiff's cause of action "aris[es] out of any transaction or operation connected with or incidental to the business or business venture" of the defendant that allows for service. *Id.* As such, Plaintiffs were obligated to tie Mr. Miscavige's alleged "business" conduct in Florida to their claims. In other words, any alleged real estate dealings or fundraising for the Scientology entities by Mr. Miscavige only matters if the Plaintiffs' claims arise from that activity. *See Easy Fly S.A.L. v. Aventura Aviation, Inc.*, No. 10-cv-60247, 2010 WL 4670606, at *5 (S.D. Fla. Nov. 9, 2010). The allegations relied on by the Magistrate do not do so, and the Magistrate committed clear error in finding otherwise.

In finding this provision satisfied, the Magistrate first relied on a conclusory paragraph of Plaintiffs' Complaint which alleged that Mr. Miscavige "knowingly obtained valuable benefits, including but not limited to financial enrichment, and free labor and services, like construction work, landscaping, and food preparation at '*Flag Base' in Clearwater Florida*, and aboard the Freewinds."  Order at 22 (citing Am. Compl. ¶ 2) (emphasis in original).  These allegations are not only false but legally deficient, as Mr. Miscavige's alleged receipt of benefits in Florida is unconnected to Plaintiffs' claims.

First, the above allegations relied on by the Magistrate do not remotely tie any "business conduct" by Mr. Miscavige to Plaintiffs' claims.  At best they would demonstrate that various Scientology entities and Mr. Miscavige received benefits in Florida.  But that is not the test.

Second, none of the Plaintiffs assert a cause of action based on their time in Florida.  Because the TVPRA—the sole statute under which Plaintiffs bring their claims—provides for a ten-year statute of limitations, or expires at the time a plaintiff turns 28, if they were a minor at the time of the alleged offense, 18 U.S.C. § 1595(c), and no civil remedy existed under the TVPRA until it was amended in 2003, *Velez v. Sanchez*, 693 F.3d 308, 324 (2d Cir. 2012).  Plaintiffs themselves have disclaimed any cause of action based on the time when they alleged to have been at the Flag Base in Clearwater, Florida.  Order at 12 n.7.

The non-conclusory examples that the Magistrate relied on to find a connection between Mr. Miscavige's purported "business" and the claims makes

clear that the alleged activity in Florida is not connected to the claims being pursued by the Plaintiffs. Paragraph 91 of the Amended Complaint alleges work done by Gawain Baxter "as a child," Order at 23, in Clearwater, which was indisputably in the 1990s or before. Paragraphs 159 and 163 of the Amended Complaint allege that Ms. Paris worked for Mr. Miscavige at the age of 15 and was sent to the *Freewinds* at the age of 18, also in the 1990s. These allegations cannot serve as a connection between the claims and Mr. Miscavige's alleged "business" because they predate the 2003 inclusion of a civil remedy, *Velez*, 693 F.3d at 324, and in addition would be time barred.

The only Plaintiff who even contends she met Mr. Miscavige is Ms. Paris, who specifically alleges that she briefly spoke with him aboard the *Freewinds* in or before 2007. Am. Compl. ¶ 168. That interaction is not alleged to be tortious in any way and it is thus unconnected to Plaintiffs' claims. Moreover, Plaintiffs allege the *Freewinds* has never been in territorial waters, Am. Compl. ¶ 41, and as such the interaction can neither demonstrate a nexus with Florida nor have any relevance to a cause of action, as the TVPRA had no extraterritorial effect before December 2008, *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 201-02 (5th Cir. 2017). This alleged interaction is innocuous, unconnected to Florida or the claims asserted, and thus entirely irrelevant.[7]

---

[7] The same goes for her, also untrue, allegation that Mr. Miscavige ordered that she be posted to the *Freewinds*. Am. Compl. ¶ 163. That conduct would be time-barred and is clearly not tortious.

The Magistrate further erred by finding that conduct on the vessel *Freewinds*, outside of Florida, could bring Mr. Miscavige within the scope of § 48.181. That determination was based on the allegation that Mr. Miscavige "control[s] a number of trusts, including the Flag Ship Trust, which among other things owns the company that owns [] the *Freewinds*." Order at 23 (citing Am. Compl. ¶ 19). But that allegation is false. The Flag Ship Trust has been dissolved for over a decade, Weber Decl. ¶ 4, and San Donato Properties Corporation (a Panama Corporation), not the Flag Ship Trust, owns the *Freewinds*. Weber Decl. ¶ 4, ECF No. 84-2 at 90.

The allegation is also insufficient to establish the connection required by Fla. Stat. § 48.181. The Magistrate seems to have reasoned that because that entity has an office in Florida, any torts alleged to have occurred outside of the United States also occurred in Florida. That logical leap cannot be the basis for finding Mr. Miscavige served, and the sole case that the Magistrate cited for this proposition, *Nicolet, Inc. v. Benton*, 467 So. 2d 1046 (Fla. 1st DCA 1985), provides no support for such a leap. It found only that certain defendants were properly served only based on an affidavit demonstrating that they were exposed to asbestos in Florida. *Id.* at 1049. *Benton* does not support the proposition that acts that occur elsewhere are tied to Florida as long as a party has an office there (or, as here, a party is a leader of a worldwide religion that has an organization which has an office in Florida). It is certainly not enough to tie any of Plaintiffs' claims to conduct by Mr. Miscavige.

## V.    CONCLUSION

In light of the foregoing, putative Defendant David Miscavige respectfully requests that this Court sustain this Objection, reverse the Magistrate's Order, and deny Plaintiffs' Motion.

Respectfully submitted,

Dated: February 28, 2023              */s/William J. Schifino, Jr.*
William J. Schifino, Jr., Esq.
Florida Bar No. 564338
Justin P. Bennett, Esq.
Florida Bar No. 112833
GUNSTER, YOAKLEY & STEWART, P.A.
401 E. Jackson Street, Suite 1500
Tampa, Florida 33602
Telephone: (813) 228-9080
Facsimile: (813) 228-6739
Email- wschifino@gunster.com
Email- jbennett@gunster.com

Joseph M. Terry
Krystal C. Durham
Williams & Connolly LLP
680 Maine Street, S.W.
Washington, D.C. 20024
(202) 434-5000

*Attorneys for David Miscavige*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed on February 28, 2023, with the Clerk of Court via the Court's CM/ECF system which will send a notice of electronic filing and copy to all counsel of record.

/s/ *William J. Schifino, Jr.*

William J. Schifino, Jr., Esq.