## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GAWAIN BAXTER et al.,
     Plaintiffs,

              v.                          Case No.: 8:22-cv-00986-TPB-JSS

DAVID MISCAVIGE et al.,
     Defendants.
_____/

## PLAINTIFFS' RESPONSE TO DAVID MISCAVIGE'S OBJECTION TO THE ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ORDER DECLARING MISCAVIGE <u>SERVED WITH PROCESS AND IN DEFAULT</u>

On February 14, 2023, Magistrate Judge Sneed entered an order deeming Defendant David Miscavige served but denying Plaintiffs' motion to declare him in default, instead holding that he shall respond to Plaintiffs' Amended Complaint (Dkt. 79) within 21 days. Dkt. 170 (the "Order"). Because that Order is neither clearly erroneous nor contrary to law, this Court should overrule Miscavige's Objection.

## I.    INTRODUCTION

Plaintiffs have attempted to serve Miscavige 27 times at multiple locations. At a January 20, 2023, hearing on the motion to deem him served (the "Hearing"), Magistrate Judge Sneed asked Miscavige's counsel:

> THE COURT: All right. Are you authorized to inform the plaintiffs about whether or not service can be perfected at any particular location?

> MR. TERRY: I'm certainly happy to have those discussions with them[.]

Exhibit A, Tr. 48:22 – 49:1. But when it came time to have that discussion, Miscavige's

counsel flatly refused to provide an address to Plaintiffs' counsel. Dkts. 167, 167-5.

"[T]he fundamental purpose of service is 'to give proper notice to the defendant in the case that he is answerable to the claim of plaintiff[.]'" *Shurman v. Atl. Mortg. & Inv. Corp.*, 795 So. 2d 952, 953 (Fla. 2001) (citation omitted). The rules governing service exist neither "to create an obstacle course for Plaintiffs," nor "a cat-and-mouse game for defendants[.]" *Verizon Trademark Servs., LLC v. Producers, Inc.*, No. 8:10-CV-665-T-33EAJ, 2011 WL 3296812, at *4 (M.D. Fla. Aug. 2, 2011).

## II.    RELEVANT FACTS

Plaintiffs bring this action pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1581–1597, against Miscavige and five corporate Scientology Defendants. Dkt. 79 ¶¶ 1–2. Plaintiffs allege that Defendants violated the TVPRA through a trafficking venture resulting in forced labor and other TVPRA offenses against Plaintiffs. *Id.* ¶¶ 2, 95, 116, 118, 163. Plaintiffs further allege Defendants "knowingly obtained valuable benefits [such as] financial enrichment, and free labor and services, like construction work, landscaping, and food preparation at [Defendants'] 'Flag Base,' in Clearwater, Florida, and aboard the Freewinds." *Id.* ¶ 2.

Scientology "is organized and operates through a global network of corporations, trusts, and unincorporated associations and organizations." *Id.* ¶ 26. Miscavige is Scientology's leader, the Chairman of the Board of RTC, and the head of Scientology's Sea Org, "an unincorporated 'association' of individuals," whose members staff and manage all Scientology-related entities. *Id.* ¶¶ 16–17, 25, 28. Plaintiffs allege that this arrangement makes Miscavige "effectively the senior-most

officer of [all of Scientology] regardless of whether he is listed as an officer or director in their corporate filings." *Id.* ¶ 16. As such, Miscavige controls and directs the management of all Scientology's operations at a considerable level of detail. *Id.* ¶ 25.

With respect to the corporate Defendants, Plaintiffs allege that RTC is a California entity that is the main "management, security, and enforcement operation for Scientology." *Id.* ¶ 18. CSI is a non-profit California corporation. *Id.* ¶ 19. CSI and Miscavige control several trusts, including the Flag Ship Trust, which owned the company that owned the *Freewinds* during the relevant time period. *Id.* ¶¶ 19, 39. Through CSI, Miscavige conducts "substantial business" by licensing Scientology intellectual property and collecting licensing fees at multiple Florida locations. *Id.* ¶ 19. RTC and CSI also serve as Scientology's principal "command channels" — chains of command that run directly between Miscavige at the top and local operations of various affiliated entities below, like Defendants FSO and FSSO. *Id.* ¶¶ 18, 19, 28, 34. Within CSI, a group of personnel known as the Commodore's Messenger Organization, or "CMO," report directly to Miscavige. *Id.* ¶¶ 30, 33. RTC and CMO embed personnel within other entities' management and operational centers, who only report to officers in RTC and CMO. *Id.* ¶¶ 28, 33. These direct reporting lines give RTC and CMO personnel – and Miscavige – authority superior to the corporate managers, and they exercise that power to monitor operations, direct the management of the entities, and enforce Scientology's rigid disciplinary system. *Id.* ¶¶ 30, 34-36.

Below RTC and CSI are FSO and FSSO.  FSO owns, manages, and operates numerous properties in Clearwater, including Flag Base, which serves as

"Scientology's global hub of operations and its largest source of revenues, providing (among other things) temporary quarters for visiting Scientologists, facilities for classes and auditing sessions, dining and meeting facilities, and the center where Defendants host large gatherings[.]" *Id* ¶ 20. Defendant FSSO is a not-for-profit corporation with its principal place of business in Clearwater, Florida that operates the *Freewinds*. *Id.* ¶ 21. RTC and CMO officers on the *Freewinds* direct its operations. *Id.* ¶ 39. FSSO also collects fees from members of the International Association of Scientologists (IAS) for courses, services, and programs provided on the *Freewinds*. *Id.* ¶ 21.

The final Defendant is IASA, a Delaware corporation, headquartered in California, with offices and operations in Clearwater, Florida. As with RTC and CSI, Miscavige directly controls IASA. *Id.* ¶ 22. During the relevant time, 2005 to 2014, IASA's principal place of business was in Clearwater. *Id.* Among other things, IASA collects membership dues – in part through its operations on the *Freewinds* (*id.* ¶ 22) — and administers and transfers those funds under the exclusive direction of Miscavige. Like the other affiliates, IASA is staffed solely with Sea Org members. *Id.*

Taken together, these "Organizational Defendants" have continuous and systematic business activities in Florida, either through the purchase and management of real estate (*id.* ¶¶ 17, 20), the collection and disbursement of membership dues (*id.* ¶¶ 22–23), or the hosting of events and fundraising (*id.* ¶¶ 19–21), and are directly controlled by Miscavige individually and serve as his agents. *Id.* ¶ 17.

## III.   PROCEDURAL BACKGROUND

On April 28, 2022, Plaintiffs filed their Complaint against Miscavige and the

Organizational Defendants, alleging that Miscavige controls Scientology corporate entities and the Sea Org, and that Miscavige directs these entities to extract forced labor. Dkt. 1. On August 2, Plaintiffs filed their First Amended Complaint, adding allegations concerning Miscavige's deliberate attempts to evade service. Dkt. 79.[1] On August 31, Plaintiffs moved for an issuance of a summons directed to Miscavige (Dkt. 93) which the Court granted (Dkt. 97). On October 10, Plaintiffs filed a Declaration of Compliance with Florida Statute § 48.161 for Substitute Service on Miscavige (Dkt. 141) and a Supplemental Declaration of Compliance with Florida Statute § 48.161 on December 5 (Dkt. 151). On December 13, Plaintiffs moved for an order declaring Miscavige served, pursuant to Florida Statute § 48.161, and in default. Dkt. 152 (the "Motion"). Within twenty-four hours, Miscavige's attorney entered a limited appearance to challenge the Motion. Dkt. 153. Miscavige's opposition focused on arguments that Plaintiffs had failed to personally serve him and had served him at the incorrect address. Dkt. 163.

On January 20, 2023, the Court held the Hearing on the Motion. Before, during, and after the Hearing, Plaintiffs continued their attempts to effectuate service on Miscavige through his counsel and other identified addresses, and have sought to have Miscavige's counsel provide an address at which to effectuate service. Dkt. 167. Miscavige's counsel has declined. Dkt. 167-5. Miscavige has never "provided a personal declaration regarding his residence, place of business or activities in Florida." Order at 16 n.7.

On February 14, Magistrate Judge Sneed granted the Motion in part, deeming

---

[1] These attempts are outlined in Plaintiffs' motions for extensions of the deadline to effect service upon Miscavige (Dkt. 76, 98), the First Amended Complaint (Dkt. 79 ¶¶ 7-15), Plaintiffs' Affidavit of Compliance with Fla. Stat. § 48.161 (Dkt. 141 and attached exhibits, particularly Dkt. 141-4), and Plaintiffs' Supplemental Declarations of Compliance with Fla. Stat. § 48.161 (Dkt. 151, 167, 169).

Miscavige properly served through substitute service pursuant to Rule 4 and Florida statutes § 48.181 and § 48.161, but denying Plaintiffs' motion to find Miscavige in default, instead giving him twenty-one days to respond to the Amended Complaint. Order at 12. Magistrate Judge Sneed found that Plaintiffs demonstrated the requisite due diligence in attempting to locate Miscavige such that they are entitled to use Florida's substitute service statutes (*id.* at 12-15); Plaintiffs have adequately demonstrated facts sufficient to bring Miscavige within the purview of § 48.181 (*id.* at 15); and Plaintiffs complied with the procedural requirements for substitute service listed in § 48.161 (*id.* at 24).[2] In analyzing § 48.181, Magistrate Judge Sneed found that: Miscavige is a nonresident for purposes of § 48.181 (*id.* at 17);[3] Plaintiffs sufficiently alleged that Miscavige operates, conducts, engages in, or carries on a business venture in Florida or has an office or agency in the state (*id.* at 17) and operated or conducted a business venture in Florida in his individual capacity and for his own pecuniary gain (*id.* at 18-19); and the allegations here arise out of an operation incidental to Miscavige's business or business venture in Florida (Order at 22). On February 28, Miscavige filed the Objection.

## IV.   STANDARD OF REVIEW

This Court may modify or vacate a magistrate judge's order if it "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "The 'clearly erroneous or

---

[2] Miscavige does not object to, and therefore waives any future argument regarding, Magistrate Judge Sneed's findings with respect to Plaintiffs' due diligence and compliance with § 48.161.

[3] As the Order limits its finding to the purposes of substitute service, Plaintiffs do not object to this finding, as "the distinction does not matter" for purposes of § 48.181 (Order at 16), but reserve their right to argue otherwise should Miscavige file a motion to dismiss for lack of personal jurisdiction.

contrary to law' standard of review is extremely deferential."[4] *HSBC Bank USA, Nat'l Ass'n as Tr. for SG Mortg. Sec. Tr. 2006-OPT2, Asset Backed Certificates, Series 2006-OPT2 v. Ross*, No. 11-CV-2019-T-35TGW, 2014 WL 12866713, at *2 (M.D. Fla. Jan. 6, 2014); *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005); *Shands Jacksonville Med. Ctr., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 3:14-CV-930-J-34JBT, 2015 WL 12861243, at *1 n.3 (M.D. Fla. Sept. 22, 2015) ("'contrary to law' is "more deferential than *de novo* review."). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Pigott v. Sanibel Dev.*, LLC, No. 07-0083-WS-C, 2008 WL 2937804, at *5 (S.D. Ala. July 23, 2008). A finding is "clearly erroneous" when a court is "left with the definite and firm conviction that it is wrong." *Branch v. Sec'y, Fla. Dep't of Corr.*, 638 F.3d 1353, 1356 (11th Cir. 2011).

## V.   ANALYSIS

### a.  Magistrate Judge Sneed's Decision Was Procedurally Proper.

Under the relevant Florida laws, Plaintiffs are under no obligation to file a motion to deem a defendant served. Neither § 48.161, § 48.181, nor any other relevant statute, requires one (Fla. Stat. §§ 48.161, 48.181 (1995)) and Florida courts have deemed defendants served without any such motion. *See, e.g.*, *Verizon Trademark Servs., LLC v. Producers, Inc.*, No. 10-CV-665-T-33EAJ, 2011 WL 3296812, at *1 (M.D. Fla.

---

[4] Factual conflicts between the parties should be resolved in favor of Plaintiffs. *See, e.g.*, *Codigo Music, LLC v. Televisa S.A. de C.V.*, No. 15-CV-21737, 2016 WL 11501586, at *4 (S.D. Fla. Jan. 15, 2016).

Aug. 2, 2011) (deeming defendant served based on amended complaint and motion to dismiss for insufficient service of process); *Shelley v. State, Dep't of Fin. Servs.*, 846 So. 2d 577, 577 (Fla. Dist. Ct. App. 2003) (affirming entry of default judgment without motion to deem defendant served under § 48.181); *Nova Cas. Co. v. Just Beach Inn, LLC*, No. 13-60911-CIV, 2013 WL 12086664, at *2 (S.D. Fla. June 27, 2013) ("[A]lthough [plaintiff's] Motion does not specifically identify § 48.181 … [plaintiff] set forth the facts that establish [its] applicability[.]"). If the question of whether a defendant has been served does arise, to answer that question this Court examines ***the operative complaint***. *See* Order at 9 (quoting *Labbee v. Harrington*, 913 So. 2d 679, 682 (Fla. 3d DCA 2005) ("[Under § 48.181,] '***the complaint*** must either plead a basis for jurisdiction pursuant to the language of [§ 48.181] or allege sufficient jurisdictional facts to satisfy [it].'") (emphasis added). Thus, to the extent the Court felt the need to ensure that Miscavige had been properly served under § 48.161 and § 48.181,[5] it properly looked to the allegations in Plaintiffs' Amended Complaint. *See, e.g.*, Order at 18 (citing Dkt. 79 ¶ 17 as applying language of § 48.181); *id.* at 12-15 (citing Dkt. 79 ¶¶ 7-12 to show Miscavige is concealing his whereabouts); *id.* at 18-22 (citing Dkt. 79 ¶¶ 16-17, 19, 22 as showing Miscavige controls corporate Defendants); *id.* at 20 (citing Dkt. 79 ¶ 2 as

---

[5] Caselaw suggests, under these circumstances, a defendant can be deemed served under § 48.161 alone. *See U.S. v. Faro*, No. 20-CV-769, 2022 WL 111229, at *2 (M.D. Fla. Jan. 12, 2022) ("When courts, including this one, have allowed litigants to use Florida Statute section 48.161—***standing alone, and not in conjunction with any other statute***—as authorization for substitute service on the Secretary of State, they have required a conscientious investigation to identify and locate the defendant and a diligent effort to effect personal service.") (emphasis added); Order at 12-15 (noting Plaintiffs' due diligence in trying to serve Miscavige, which Miscavige concedes here).

alleging Miscavige uses forced labor to maintain luxurious lifestyle and power).

As such, Miscavige's objection that the Order is procedurally improper because it relies on arguments not made in Plaintiffs' Motion (Obj. at 9–10) is wrong and falls well short of his burden. A plaintiff may use a motion to deem a defendant served as an opportunity to illuminate key facts satisfying § 48.161 or § 48.181, but is not required to do so (or even file such a motion in the first instance). *See U.S. v. Shiffman*, No. 20-cv-1747, 2021 WL 4208697, at *4 (M.D. Fla. April 16, 2022) (declaring defendant served with substitute process due to evasive conduct even though movant did not mention § 48.181); *Dixon v. Blanc*, 796 F. App'x 684, 687 (11th Cir. 2020) ("To support substituted service under [§ 48.161], 'the plaintiff must allege *in his complaint* the ultimate facts bringing the defendant within the purview of the statute.'") (emphasis added). Miscavige cites a host of cases to portray Plaintiffs' Motion as procedurally deficient, but none involves a motion to deem a defendant served at all, let alone under § 48.181. *See* Obj. 9-10. Magistrate Judge Sneed did not commit clear error by relying on the allegations in the Amended Complaint.

Miscavige similarly argues—with no support in the caselaw—that Plaintiffs "waived" any argument as to the satisfaction of § 48.181 by not mentioning it in their brief. Obj. at 9-10. This is wrong for several reasons: first, as argued above, to determine whether § 48.181 is satisfied, the Court is to look at the sufficiency of the pleadings; any motion to deem a defendant served is optional in the first place. Thus, the applicability of service under § 48.181 cannot be waived by a motion filed by plaintiffs. For example, in *Shelley*, the agency moved for default judgment without ever

having moved to deem defendants served. 846 So. 2d at 577. Under Miscavige's theory, moving for default without first moving to deem defendants served under § 48.181 would constitute a waiver of service under § 48.181. Instead, the court affirmed the agency's entry of default, implicitly affirming service under § 48.181. *Id.*

Second, Defendants first raised § 48.181 in their response, to which no written reply is permitted, and the Court properly asked Plaintiffs to respond at the hearing. *See* Exhibit A, Tr. at 7:1-4 ("[Defendants] cite to … 48.181, and you can anticipate their arguments and talk about that as well, if you would.").

Third, Miscavige's argument is not timely: not once during the Hearing did any of the five defense attorneys present raise any objection to the Court's discussion of § 48.181. Miscavige also declined to argue any waiver in his Opposition to the Motion. Dkt. No. 163. "'[W]hat's good for the goose is good for the gander' applies."[6] *Idearc Media, LLC v. Kravitz L. Grp., P.A.*, No. 09-CV-2078-T-17, 2010 WL 2802535, at *2 (M.D. Fla. July 14, 2010). That is, Miscavige waived any such waiver argument.

> **b. Magistrate Judge Sneed's finding that § 48.181 is satisfied on multiple grounds was not contrary to law or clearly erroneous.**

At the heart of § 48.181 is an inquiry into whether the person being served has

---

[6] Similarly, the Court should reject Miscavige's request to remand the matter to permit him to "introduce declarations to dispute the arguments made by Plaintiffs for the first time in the hearing." Obj. at 10 n.4. First, Miscavige could have, and declined to, request leave from the Court – either at the Hearing or in any subsequent filings before the ruling – to supplement the record. Second, Miscavige's claim that the Court relied on materials presented for the first time at the hearing is overstated: nowhere does he identify any factual evidence first presented at the Hearing, and the Court is free to rely on caselaw, even if it is not cited by any party. *See, e.g.*, *Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV*, 906 F.3d 1329, 1338 (11th Cir. 2018) (noting court's ability to search for relevant caselaw); *Cooper v. R.J. Reynolds Tobacco Co.*, 586 F. Supp. 2d 1312, 1319 (M.D. Fla. 2008) (same).

"accept[ed] the privilege" to: (1) "operate, conduct, engage in, or carry on a business or business venture in the state";[7] (2) "have an office … in the state";[8] *or* (3) have an "agency in the state." Fla. Stat. § 48.181. The acceptance of such a privilege, under § 48.181, "constitute[s] an appointment by [that person] of the Secretary of State … as their agent on whom all process in any action or proceeding against them … arising out of any transaction or operation connected with or incidental to the business or business venture may be served." *Id.* Magistrate Judge Sneed found that Miscavige accepted that privilege, and thus appointed the Secretary of State to accept process for actions that arise out of, are connected with, or are incidental to his business in Florida. Order at 15-22. That finding was neither contrary to law nor clear error.

### i. Magistrate Judge Sneed's finding that Miscavige has an agency in Florida was not contrary to law or clear error.

§ 48.181 allows substitute service for anyone who "has an … agency in Florida." Fla. Stat. § 48.181. Given allegations of his absolute control over Scientology, its affiliates, and its members, the Magistrate Judge properly concluded that Miscavige has an agency in Florida. *See, e.g.*, Dkt. No. 79 ¶ 2 (Miscavige has "power over every aspect of [Scientology's] global operations"); *id.* ¶ 16 (Miscavige "control[s] and direct[s] the activities of all Defendant [and is] the highest-ranking Sea

---

[7] A "business venture" connotes "a lesser involvement than" a "business." *Kapila v. RJPT, Ltd.*, No. 2D22-837, 2023 WL 2051156, at *3 (Fla. Dist. Ct. App. Feb. 17, 2023).

[8] Having an office in Florida forms an independent basis for satisfying § 48.181, a fact Miscavige arguably conceded at the Hearing. *See* Exhibit A, Tr. at 47:4-8 ("THE COURT: Has he ever had … or does he have an office in Florida? MR. TERRY: So the -- the organizations maintain offices in Florida. That's, I think, what the statute means. Is he able to use offices at the organizations? Of course.").

Org member, and thus all Sea Org members are subordinate to him and must obey his directives without question"); *id.* (corporate Defendants serve as Miscavige's agents); *id.* ¶ 25 (Miscavige's authority is "unlimited and absolute"). Indeed, **this Court has already determined that, for purposes of § 48.181, Scientology is an agent of its leader**. *See McLean v. Church of Scientology of Cal.*, 538 F. Supp. 545, 549 (M.D. Fla. 1982) ("[T]he Hubbards, *through their agent the Church*, accepted" the privilege under § 48.181) (emphasis added). On this finding alone, Magistrate Judge Sneed did not commit clear error in concluding that Miscavige is subject to § 48.181. *See* Order at 17 (finding § 48.181 satisfied because Miscavige has a Florida agency).

Miscavige raises several unconvincing objections to the above analysis. First, he argues that Plaintiffs have offered, and the Court accepted, only a "naked legal conclusion." Obj. at 15. To the contrary, the facts as pled make clear that Miscavige and his corporate and individual subordinates all understand, agree to, and abide by his absolute control over their operations. *See Identity Stronghold, LLC v. Zeidner*, No. 16-CV-0868, 2017 WL 11616431, at *20 (M.D. Fla. Mar. 27, 2017) (noting that complete control supports the finding of an agency relationship).

Second, Miscavige misreads § 48.181, as much of his remaining argument on the agency issue melds together the "business or business venture" prong of § 48.181 with the agency prong. *See, e.g.*, Obj. 16-17 ("[T]he allegations that … Defendants do business in Florida … as Mr. Miscavige's agents[] are refuted by the record in this case."). But, as explained above, and as is clear from a plain reading of § 48.181, these

prongs are distinct, independent bases for justifying substitute service in Florida.

Third, Miscavige offers a handful of irrelevant distinctions between this case and *McLean*. Miscavige argues first that the Organizational Defendants did not exist when *McLean* was decided. But that is of no moment when the underlying structure of Scientology – *i.e.*, the organization's singular leader totally controls its members – remains the same. Likewise, Miscavige's observation that Scientology was not tax-exempt at the time of *McLean* is wholly immaterial to the questions of control *within* Scientology. Finally, perplexingly, Miscavige notes that, unlike Miscavige today, L. Ron Hubbard had no position within Scientology at the time of *McLean*. Miscavige's argument that his position as *Chairman of the Board* of RTC somehow suggests he has *less* control of Scientology than Hubbard had makes no sense.

Finally, Miscavige argues that a determination of the agency relationship between Miscavige and Scientology implicates First Amendment concerns because, under Supreme Court precedent, "a religion's determinations of church governance must be viewed as final." Obj. at 18-19. But, tellingly, nowhere in Miscavige's objection does he state that Plaintiffs' central charge – that Miscavige controls Scientology and its affiliates – is wrong. By baldly stating that Scientology's affiliates are not Miscavige's agents, without explaining any actual limitations to Miscavige's power, it is Miscavige, not Plaintiffs, offering the Court a "naked legal conclusion."

Therefore, Miscavige has not – and indeed cannot – carry his burden of showing that the Order's finding that Miscavige has an agency in Florida is clear error.

**ii. Magistrate Judge Sneed's finding that Miscavige engaged in a business venture in Florida was not contrary to law or clear error.**

Under § 48.181, substitute service is also appropriate if the Court finds an individual operates, conducts, engages in, or carries on a business or business venture in Florida. The Order's findings that this prong is satisfied are extensive, including that: (i) the Amended Complaint contains sufficient allegations that Miscavige individually engaged in business in Florida for his personal pecuniary benefit (Order at 18-22); (ii) Miscavige is not merely an officer or director of a corporation (Order at 21); and (iii) the allegations in the Amended Complaint arise out of an operation connected with or incidental to Miscavige's business or business venture in Florida (Order at 22). The Court properly grounded each finding in the Amended Complaint.

Nevertheless, Miscavige challenges these factual findings. *See, e.g.*, Obj. 10 ("Plaintiffs' bald allegations … are insufficient to establish service under [§ 48.181].").[9] First, Miscavige objects that the Order relies on conclusory allegations, misleadingly suggesting that the Order is based solely on Paragraph 17 of the Amended Complaint. *See* Obj. at 10. While the Order does invoke that paragraph – which itself includes allegations that Miscavige negotiates and directs the purchase of real property in Florida and promotes, fundraises for and directs the management and operations of

---

[9] All reasonable inferences should be construed in Plaintiffs' favor. *See, e.g.*, Order at 12 ("Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.") (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l., Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010)). Also, Judge Sneed's factual findings are entitled to a high degree of deference. *Fid. Nat'l Title Ins. Co. v. J.P. Morgan Chase Bank, N.A.*, No. 10-CV-1153-J-34JRK, 2012 WL 12965923, at *1 (M.D. Fla. Mar. 26, 2012).

Scientology affiliates – it invokes additional factual allegations as well. *See, e.g.*, Order at 12-14; 18-22. This differs starkly from *David v. BayCare Health Sys., Inc.*, where the plaintiff merely reiterated the language of the statute at issue. No. 19-cv-02136-T-60JSS, 2019 WL 6842085, at *3 (M.D. Fla. Dec. 16, 2019).

Second, Miscavige spills much ink arguing that the Order was improper because the business conduct in question "was not undertaken by Mr. Miscavige in his personal capacity[.]" Obj. at 12. This charge fails to demonstrate clear error on at least two grounds:[10] no such showing of a "personal" connection to a business venture is required in this District; and, even if it were, the facts support such a finding here.

To begin, Miscavige mischaracterizes the caselaw governing § 48.181 by suggesting there is a rigid "personal capacity" test that must be overcome in applying the statute. No such test exists. Rather, Florida authorities have found § 48.181 applies on a case-by-case basis. *See, e.g.*, *Int'l Graphics, Inc. v. MTA-Travel Ways, Inc.*, 71 F.R.D. 598, 602 (S.D. Fla. 1976) (noting Florida courts "have discarded any formal test" for service of process "because of the number of conflicting tests that developed" and, instead, "each case must turn on its own facts"); *Herff v. Weston Props., LLC*, 335 So. 3d 133, 134–35 (Fla. Dist. Ct. App. 2022) (noting an "apparent conflict" in Florida

---

[10] Miscavige's representations in this portion of the Objection appear to be contradicted by recently obtained documents. Miscavige claims that it is "not" "true" that he "negotiat[es] and direct[s] the purchase of real property in Florida" or that his "'business contacts within Florida' included 'promoting, fundraising and directing the management and operations of' Scientology organizations." Obj. at 12-13. But recent news articles state unequivocally that Miscavige has been ***personally*** lobbying Scientology's Clearwater real estate development. *See* Dkt. 167-6 (city council member stating that Miscavige called her personal phone). Plaintiffs have also learned through Scientology social media postings that Miscavige promoted a New Year's Eve fundraising event at the Flag Base in Clearwater – in the midst of Plaintiffs' efforts to serve him there. *See* Exhibit C.

15

court applications of § 48.181). Even *A.B.L. Realty Corp. v. Cohl*, on which Miscavige relies, notes that "each [§ 48.181] case must be judged on its own facts" rather than "a mechanical test[.]" 384 So. 2d 1351, 1355-56 (Fla. 4th DCA 1980) (citing *Horace v. Am. Nat'l Bank and Trust Co.*, 251 So.2d 33, 34 (Fla. 4th DCA 1971)).

Moreover, to the extent any "personal capacity" requirement does exist, the Order was correct to conclude that Plaintiffs have easily surmounted that low bar here. The three cases Miscavige cites to support his position are easily distinguished from the facts here. In *Farouki v. Attel et Cie*, the complaint alleged **only** that the defendant had been "chief executive officer, president, and director of … a Florida corporation." 682 So. 2d 1185 (Fla. 4th DCA 1996). In *Newberry v. Rife*, defendant was a non-Florida resident who merely passively held shares in a Florida auto repair company. 675 So. 2d 684, 685 (Fla. 2d DCA 1996). Finally, in *A.B.L. Realty*, plaintiffs did not allege that the individual defendants had conducted **any activity** in Florida, but rather merely that they worked for the defendant corporation, which had. 384 So. 2d at 1352. In short, the only proposition these cases stand for is that substitute service on an individual defendant is improper when he has only had vicarious business activity in Florida.

This is not such a case. The Magistrate Judge carefully evaluated the record to determine that Miscavige personally engaged in business in Florida. *See* Order at 18; *id.* at 19 (Miscavige alleged to control corporate Defendants); *id.* at 20 n.9 (Miscavige failed to refute that he is personally enriched by collection of Scientology dues); *id.* at 20 (Scientology provides Miscavige a "façade of legitimacy, a luxurious lifestyle,

16

power … and influence over members"); *id.* (noting that, because Miscavige is not an officer, director, or shareholder of any corporate Defendants except for the RTC, these organizations are alleged to be "directly controlled by Miscavige individually"); *id.* at 21 (Scientology provides Miscavige work and living accommodations when he is in Florida). Thus, Miscavige was not merely a corporate officer, but rather was personally "involved in conducting business" in Florida. Order at 21.

In short, there is no clear error in Magistrate Judge Sneed's finding that Miscavige is sufficiently engaged in business in Florida to be subject to § 48.181.

### iii. Magistrate Judge Sneed's Finding That the Claims Here Arise Out of an Operation Incidental to Miscavige's Business Are Neither Contrary to Law Nor Clear Error.

Under § 48.181, substitute service is limited to any action "arising out of any transaction or operation connected with or incidental to the business or business venture." Fla. Stat. § 48.181. Magistrate Judge Sneed found this requirement satisfied because Plaintiffs "specifically allege" that Miscavige "knowingly obtained valuable benefits, including but not limited to financial enrichment, and free labor and services, like construction work, landscaping, and food preparation *at "Flag Base," in Clearwater, Florida*, and aboard the Freewinds." Order at 22 (emphasis in order).[11] As the heart of

---

[11] The Order noted a host of connections between the forced labor Plaintiffs endured and Scientology's operations in Florida. Plaintiff Gawain Baxter alleges that as a child, he was forced to provide hours per day of unpaid work at Flag Base in Clearwater. Order at 23. Plaintiff Valeska Paris alleges that, at age 15, she worked sixteen-hour days doing chores and serving as a personal assistant to Scientology executives, including Miscavige, at Flag Base. *Id.* While Miscavige argues these claims are time-barred under the TVPRA, he offers no authority stating that they cannot support a finding that Miscavige's conduct in Florida is "incidental to" Plaintiffs' live claims.

Plaintiffs' claims pertain to their mistreatment aboard the *Freewinds*, Magistrate Judge Sneed properly connected the ship and Miscavige's business in Florida: for one, "[t]here is a U.S. office for the *Freewinds* in FSSO's primary business location in Clearwater, Florida" *Id.* at 23. Indeed, the *Freewinds*'s own website, freewinds.org, directs users to the Clearwater office. *See* Exhibit B. For another, CSI and Miscavige "control a number of trusts, including Flag Ship Trust, which among other things owns the company that owns [] the *Freewinds*." *Id.* Because this finding was neither contrary to law nor clear error, Miscavige's Objection must be overruled.

None of Miscavige's counterpoints demonstrates clear error or a finding contrary to law. For one, each of Miscavige's arguments mistakes the "connected with or incidental to" prong as a demanding hurdle. It is not. *See, e.g.*, *McLean*, 538 F.Supp. at 550 (finding malicious prosecution suit was incidental to Scientology's business under § 48.181 simply because malicious prosecution concerned statements about Scientology's Florida activity); *Nova Cas. Co.*, 2013 WL 12086664, at *2 (finding prong satisfied simply because complaint alleged "that the claim arises from Defendant's business operations"); *Shoei Safety Helmet Corp. v. Conlee*, 409 So. 2d 39, 41 (Fla. Dist. Ct. App. 1981) (finding prong satisfied because defendants were "in the business of promoting and soliciting sales of motorcycle helmets in Florida" when plaintiff bought a helmet from an unaffiliated retailer). § 48.181 itself makes this clear, too: both "business venture" and "arising from" are broad terms. *See supra* note 7; *Damoth v. Reinitz*, 485 So.2d 881, 883 (Fla. 2d DCA 1986) ("the term 'arising from' is broad").

First, Miscavige tries to dispel the relevance of Miscavige's real estate dealings

18

and fundraising for Scientology in Florida. Obj. at 19 (citing *Easy Fly S.A.L. v. Aventura Aviation, Inc.*, No. 10-cv-60247, 2010 WL 4670606, at *5 (S.D. Fla. Nov. 9, 2010)). But Magistrate Judge Sneed appears not to have relied at all on Miscavige's real estate dealings and fundraising in Florida to find he satisfies § 48.181.

Second, remarkably, Miscavige argues that his "alleged receipt of benefits in Florida is unconnected to Plaintiffs' claims." Obj. at 20. This is wrong on multiple fronts. For one, as explained above, control of the *Freewinds* – which is central to Plaintiffs' claims – runs through Miscavige and Florida. Miscavige controls the FSSO, which has offices and staff in Florida and operates the *Freewinds*. Dkt. 79 ¶ 24. Miscavige also controls RTC, CSI, and IASA representatives who work aboard the *Freewinds. Id.* ¶¶ 39, 42, 45. Finally, Miscavige controls the trust that owned the company that owned the *Freewinds*.[12] Dkt. 79 ¶ 19. These facts tie Plaintiffs' claims directly to Florida. For another, Miscavige again "reads the Amended Complaint too narrowly." Order at 22. As alleged by Plaintiffs, the benefits Miscavige receives from his real estate dealings, fundraising, and other work in Florida, allow him to maintain a "façade of legitimacy," "power over … the organization's global operations," and "influence over members." *Id.* at 20. It is exactly this façade and power that enabled Miscavige to exert the abuse against Plaintiffs of which he is accused.

Third, Miscavige's argument that none of the Plaintiffs' claims pertain to abuse

---

[12] The Weber Declaration, which states that ownership of the *Freewinds* changed hands "a decade" ago, carries little water, as this still suggests the Flag Ship Trust owned the *Freewinds* during and in the years after the facts occurred that give rise to Plaintiffs' claims. *See* Obj. at 22.

they suffered in Florida is of no moment, as their claims need only be ***incidental to*** Miscavige's Florida activities.[13] *See Poston v. Am. President Lines, Ltd.*, 452 F. Supp. 568, 572 (S.D. Fla. 1978) (finding that, "though the injury … did not occur in Florida the injury was incidental to defendant's activities in Florida" for purposes of § 48.181).

Fourth, Miscavige claims Magistrate Judge Sneed committed clear error because she reasoned that "any torts alleged to have occurred outside of the United States also occurred in Florida." Obj. at 22. This characterization illustrates a fundamental misunderstanding by Miscavige: Magistrate Judge Sneed's finding regarding the Florida *Freewinds* office did not go to proving that a tort "occurred in Florida," and nor should it, as that is not the relevant legal standard. Rather, as Magistrate Judge Sneed correctly noted, the office establishes a "nexus or connection" between Miscavige's business – owning, directing, and controlling the *Freewinds* – and Plaintiffs' claims. Order at 23 (quoting *Nicolet, Inc. v. Benton*, 467 So. 2d 1046, 1049 (Fla. 1st DCA 1985)). *See Fashion Two Twenty, Inc. v. Ralph & Reba, Inc.*, 254 So. 2d 49 (Fla. Dist. Ct. App. 1971) (holding that corporate franchisor never physically present in Florida was "doing business" under § 48.181 because it had control over franchisee).

## VI.   CONCLUSION

For the foregoing reasons, the Court should overrule Miscavige's Objection.

Respectfully Submitted,

---

[13] The same goes for Miscavige's observations that only one Plaintiff contends she met Miscavige, that that interaction was not tortious, and that the *Freewinds* has never been in Florida territorial waters. § 48.181 says nothing about requiring face-to-face tortious conduct or that a ship owned, managed, and directed from Florida (Dkt. 79 ¶¶ 19, 24) must have also entered Florida territorial waters.

*/s/Manuel J. Dominguez*
Manuel J. Dominguez
(Fla. Bar No. 0054798)
Theodore Leopold
(Fla. Bar No. 705608)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
11780 U.S. Highway One,
Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400
jdominguez@cohenmilstein.com
tleopold@cohenmilstien.com

Agnieszka M. Fryszman
Brendan Schneiderman
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave., N.W.,
Fifth Floor
Washington, DC 20005
(202) 408-4600
afryszman@cohenmilstein.com
bschneiderman@cohenmilstein.com

Neil L. Glazer
Joseph C. Kohn
Zahra R. Dean
Aarthi Manohar
Elias Kohn
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700
nglazer@kohnswift.com
jkohn@kohnswift.com
zdean@kohnswift.com
amanohar@kohnswift.com
ekohn@kohnswift.com
Gregory P. Hansel
(Fla. Bar No. 607101)
Shana M. Solomon

21

Elizabeth F. Quinby
**PRETI FLAHERTY BELIVEAU &
PACHIOS, CHARTERED, LLP**
One City Center
P.O. Box 9546
Portland, ME 04112-9546
(207) 791-3000
ghansel@preti.com
ssolomon@preti.com
equinby@preti.com

**WARREN A. ZIMMERMAN, P.A.**
4114 Sparrow Ct
Lutz, FL 33558-2727
(813) 230-1465
warren@wzimmermanlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed on March 14, 2023, with the Clerk of Court via the Court's CM/ECF system which will send a notice of electronic filing and copy to all counsel of record.

*/s/ Manuel J. Dominguez*
Manuel J. Dominguez, Esq.