**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

GAWAIN BAXTER, LAURA
BAXTER, and VALESKA PARIS,

      Plaintiffs,

v.                                 Case No: 8:22-cv-986-TPB-JSS

DAVID MISCAVIGE, CHURCH OF
SCIENTOLOGY INTERNATIONAL,
INC., RELIGIOUS TECHNOLOGY
CENTER, INC., IAS
ADMINISTRATIONS, INC.,
CHURCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, INC.,
and CHURCH OF SCIENTOLOGY
FLAG SHIP SERVICE
ORGANIZATION, INC.,

      Defendants.
_____/

## ORDER ON MOTIONS TO COMPEL ARBITRATION AND TO DISMISS

This matter is before the Court on several motions:

> "Defendant Church of Scientology Flag Ship Service
> Organization, Inc.'s Motion to Compel Arbitration, or in the
> Alternative, to Dismiss the Complaint" (Doc. 84);

> "Defendant Church of Scientology Flag Service
> Organization, Inc's Motion to Compel Arbitration; or in the
> Alterative, to Dismiss Pursuant to Rule 12(b)(6)" (Doc. 85);

> "Defendant IAS Administration, Inc.'s Motion to Dismiss
> Plaintiffs' Complaint for Lack of Personal Jurisdiction, to
> Compel Arbitration, or Dismiss for Failure to State a Claim"
> (Doc. 87);

> "Defendant Church of Scientology International, Inc.'s
> Motion to Dismiss or Compel Arbitration" (Doc. 88); and

> "Defendant Religious Technology Center, Inc.'s Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction or, Alternatively, to Compel Arbitration or, Alternatively, Dismiss for Failure to State a Claim" (Doc. 89).

On September 13, 2022, Plaintiffs Gawain Baxter, Laura Baxter, and Valeska Paris filed responses in opposition to the motions.  (Docs. 107; 108; 109; 110; 111; 113).  The Court held a hearing to address the motions on November 17, 2022.  (Docs. 148; 149).  At the direction of the Court (Doc. 168), the parties provided additional briefing on the issue of duress (Docs. 174; 175; 180; 181).  After reviewing the motions, responses, supplemental briefing, court file, and the record, the Court finds as follows:

## Background [1]

Plaintiffs are former members of the Church of Scientology.  They were introduced to Scientology as children by their parents, and they remained active in Scientology as adults.  As practicing Scientologists, they served for over a decade as members of the Sea Organization ("Sea Org"), which is described as a religious order within the larger Scientology religion.  Plaintiffs bring this action pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1581-1597, alleging that Defendants coerced persons, including Plaintiffs, to join Sea Org and provide unpaid labor and services on a 10,328-ton cruise ship vessel known as the *Freewinds*, where Defendants knowingly obtained valuable benefits including

---

[1] The Court accepts as true the facts alleged in the amended complaint (Doc. 79) for purposes of ruling on the pending motions.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").  By accepting the facts as true for purposes of this motion, as is required by law, the Court has not made factual findings in favor of, or against any party.

financial enrichment.  Plaintiffs allege that *Freewinds* frequently sailed to nations where anti-trafficking measures were weak to avoid legal repercussions, and it has never docked at any port in the United States or even entered the territorial waters of the United States.

Plaintiffs allege they were forced by their parents to join the Church of Scientology as children, where they were "indoctrinated, manipulated, and pressured into coercive circumstances from a young age."  (Doc. 79 at ¶ 3).  They now contend that Scientology was "a world filled with abuse, violence, intimidation, and fear."  (*Id.* at ¶ 1).  For a time, Plaintiffs were assigned to work on *Freewinds* under highly dangerous and abusive conditions, often working between 16-24 hours a day.  In the amended complaint, Plaintiffs detail numerous incidents of punishment, humiliation, interrogation, and imprisonment that occurred while they were members of Sea Org, including various acts of mental, physical, and emotional abuse.

As members of Scientology, Plaintiffs signed pledges of "eternal service" to the religion and its goals.[2]  In enrollment agreements signed in 2003 and 2004, Plaintiffs agreed to resolve disputes with the Church through binding religious arbitration. Plaintiffs were between the ages of roughly 19 and 25 – relatively young adults – when these arbitration agreements were signed.  Gawain Baxter was born April 9, 1982. (Doc. 149 at 14).  Laura Baxter was born on October 25, 1984.  (*Id.*).  And Valeska

---

[2] In an affidavit supporting the motions to compel arbitration, Sarah Heller, a staff member of Church of Scientology Flag Service Organization, explains that the Sea Org is the religious order of Scientology and is composed of the most dedicated Scientologists – individuals who have dedicated themselves to the Sea Org "for a billion years," reflecting "both their dedication to their religion and their awareness of themselves as immortal spiritual beings who have lived countless lives and who will live again and again."  (Doc. 84-1 at ¶ 15).

Paris was born in 1978. (*Id.*). Plaintiffs later left *Freewinds*, and they executed agreements to arbitrate then as well – Paris in 2007, and the Baxters in 2012. Paris, when she was roughly 31 years of age, signed another agreement and release in 2009 that included an arbitration provision. Similarly, the Baxters signed additional agreements, which included arbitration provisions, in December 2015 when they were roughly 33 and 31 years of age respectively.

## Legal Standard

Defendants have asserted several arguments in support of dismissal, including lack of personal jurisdiction. All Defendants have moved to dismiss or to compel arbitration of Plaintiffs' claims, relying on the various agreements signed by Plaintiffs that include arbitration provisions. Ordinarily, the Court would consider the personal jurisdiction arguments first. However, when multiple arguments have been presented in support of dismissal, a district court may "bypass questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant […]." *Graddy v. Carnegie Acad., LLC*, No. 1:21-cv-00639-SDG, 2022 WL 903193, at *3 (N.D. Ga. Mar. 28, 2022) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). "Arbitration provisions are a species of forum selection clauses." *VI MedRx, LLC v. Hurley Consulting Assocs., Ltd.*, No. 3:11-cv-1034-J-37TEM, 2012 WL 10494, at *2 (M.D. Fla. Jan. 3, 2012) (internal quotation omitted). As such, the Court considers the motions to compel arbitration at the outset. *See id.* at *3 n.8.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, "embodies a liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*,

428 F.3d 1359, 1367 (11th Cir. 2005).  In fact, the Eleventh Circuit Court of Appeals has "recognized that the FAA creates a presumption of arbitrability such that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (internal quotations omitted).  "Under the FAA, a party seeking to compel arbitration must demonstrate that (a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of that agreement." *Garcia v. Church of Scientology Flag Serv. Org., Inc.*, No. 8:13-cv-220-T-27TBM, 2015 WL 10844160, at *3 (M.D. Fla. Mar. 13, 2015) (internal quotations omitted)).  When determining whether the contract is enforceable, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Id.* (quoting *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

## Analysis

In this case, Defendants have presented evidence of presumptively valid arbitration agreements signed by Plaintiffs.[3]  The agreements broadly cover "any

---

[3] The Court "may consider a document attached to a motion to dismiss . . . if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). Multiple arbitration agreements were signed by Plaintiffs over the course of several years, many of which were attached to the motions.  The agreements were also discussed extensively during the hearing that was held in this matter on November 17, 2002.  It should be noted that there is some variation in the wording of the various agreements.  However, these differences do not render the arbitration clauses unenforceable.  The agreements must include the essential terms such that Plaintiffs had some idea of what disputes would be subject to arbitration, along with the manner of effecting arbitration.  *See Garcia v. Church of Scientology Flag Serv. Org., Inc.*, No. 8:13-cv-220-T-27TBM, 2015 WL 10844160, at *8 (M.D. Fla. Mar. 13, 2015).  The agreements here do both things.

dispute, claim or controversy" between Plaintiffs and the Church of Scientology and related individuals and entities, and Plaintiffs agreed to resolve disputes "solely and exclusively through Scientology's Internal Ethics, Justice and binding religious arbitration procedures."  The agreements provide for "binding religious arbitration in accordance with the arbitration procedures of Church of Scientology International."

Plaintiffs do not contest the authenticity of the arbitration documents.  Rather, they oppose submitting this dispute to arbitration on other grounds, including that (1) the arbitration agreements are unconscionable and not enforceable by third parties;[4] (2) the arbitration provisions amount to an unlawful prospective waiver of substantive rights; (3) forcing Plaintiffs to participate in an ecclesiastical dispute resolution process when they no longer believe in Scientology would violate their First Amendment rights; and (4) the agreements were never formed due to duress, fraud, and lack of mutual assent.

Defendants are not strangers to the court system.  In fact, the validity of the exact arbitration agreements at issue here was recently determined in Defendants' favor in an unrelated case by another judge on this Court.  *See Garcia*, 2015 WL 10844160, at *8.  On appeal, the Eleventh Circuit held that the arbitration agreements were enforceable.  *See Garcia v. Church of Scientology Flag Serv. Org., Inc.*, No. 18-13452, 2021 WL 5074465, at *6-7 (11th Cir. 2021).  Plaintiffs have raised additional arguments here that were not made in *Garcia* to support their challenge to the enforceability of the arbitration agreements.  Those arguments will be considered –

---

[4] Although Plaintiffs argue that the arbitration provisions are not enforceable by third parties, the agreements reflect an intent to arbitrate disputes and claims against the Church and its related entities and individuals.

but the Court is required to consider them with the Eleventh Circuit's very recent opinion in *Garcia* firmly in mind.

## *Unconscionability*

The Court initially notes that when these arbitration agreements were challenged by other plaintiffs in the *Garcia* cases, unconscionability was one of the arguments that was specifically rejected by the District Court, and that determination was affirmed by the Eleventh Circuit. Those decisions relied on Florida law. *See Garcia*, 2021 WL 5074465, at *16 n.4 (discussing Florida choice-of law). Here, the parties acknowledge that California law governs this dispute. But at least with the major issues involving arbitration, California law and Florida law appear to be in agreement.

"[T]o invalidate an arbitration clause, a party must establish both procedural and substantive unconscionability." *Garcia*, 2015 WL 10844160, at *5; *see also Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (Cal. 2000) (explaining both procedural and substantive unconscionability must be present for a court to exercise its discretion to refuse to enforce a contract or clause). "Procedural unconscionability 'relates to the manner in which the contract was entered,' and substantive unconscionability asks whether the terms of the agreement are themselves too unfair to enforce." *Garcia*, 2021 WL 5074465, at *6.

When evaluating whether an agreement is unconscionable, both California and Florida employ a balancing, or "sliding scale," approach. *See, e.g.*, *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal.4th 223, 247 (Cal. 2012); *Armendariz*, 24 Cal.4th at 114; *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1159 (Fla.

2014).  "[B]oth the procedural and substantive aspects of unconscionability must be present, although not necessarily to the same degree, and both should be evaluated interdependently rather than as independent elements."  *Id.* at 1161.  Ultimately, "[t]he overarching unconscionability question is whether an agreement is imposed in such an unfair fashion and so unfairly one-sided that it should not be enforced."  *OTO, L.L.C. v. Kho*, 8 Cal.5th 111, 124 (Cal. 2019).   "The burden of proving unconscionability rests upon the party asserting it."  *Id*. at 126.

Procedural Unconscionability

Plaintiffs contend that the agreements are procedurally unconscionable because they were contracts of adhesion and provided no procedures to govern an arbitration. "The central question with respect to the procedural component of unconscionability 'is whether the complaining party lacked a meaningful choice when entering into the contract.'"  *Garcia*, 2015 WL 10844160, at *5 (quoting *Basulto*, 141 So. 3d at 1157 n.3). A contract of adhesion strongly indicates that the contract is procedurally unconscionable, but "the presence of an adhesion contract alone does not require a finding of procedural unconscionability."  *Garcia*, 2021 WL 5074465, at *6 (quoting *VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc.*, 912 So. 2d 34, 40 (Fla. 4th DCA 2005)).  Rather, the important question is whether the circumstances created such oppression or surprise that closer scrutiny of the fairness of the agreement is required. *OTO, L.L.C.*, 8 Cal.5th at 126.

In support of their procedural unconscionability argument, Plaintiffs have presented evidence as to the adhesive nature of the arbitration agreements, "[b]ut adhesiveness alone is insufficient to prove 'any degree of procedural

unconscionability.'" *Garcia*, 2021 WL 5074465, at *9 (quoting *Kendall Imps., LLC v. Diaz*, 215 So. 3d 95, 110 (Fla. 3d DCA 2017)).  Rather, a plaintiff must demonstrate oppression or surprise.  Plaintiffs signed multiple agreements containing arbitration provisions over the years, each initialing next to the arbitration provisions themselves. A failure to explain arbitration does not justify a refusal to enforce an arbitration agreement.  *See, e.g.*, *Nguyen v. Applied Med. Res. Corp.*, 4 Cal. App. 5th 232, 249 (Cal. Ct. App. 2016).  In addition, considering the factors related to oppression, the Court finds that Plaintiffs have failed to put forth sufficient argument or evidence to demonstrate unfair oppression related to the arbitration provisions.[5]

As previously noted, these exact arbitration agreements have been reviewed by the Eleventh Circuit, which concluded that the agreements were not procedurally unconscionable.  *Garcia*, 2021 WL 5074465, at *6-7.  There are no material factual distinctions that would require a different result here, considering that California law and Florida law are substantially similar or identical on this and other issues related to arbitration.  Consequently, procedural unconscionability has not been established here.

Substantive Unconscionability

Even if the Court were to find the agreements were procedurally unconscionable to some degree, Plaintiffs have not demonstrated that the agreements are

---

[5] "The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney."  *OTO, L.L.C.*, 8 Cal.5th at 126-27 (quoting *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348 (Cal. Ct. App. 2015)).

substantively unconscionable.  Plaintiffs attempt to distinguish their case by arguing the *Garcia* Court did not expressly decide whether the agreements were substantively unconscionable because they lacked mutuality.  But this argument is not persuasive.  First and most importantly, it is not clear that these agreements include only unilateral, rather than bilateral obligations to arbitrate disputes.[6]  Rather, it appears that the terms of at least some of the agreements created a mutual agreement to arbitrate all Scientology-related disputes.  *See, e.g.*, *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1473 (Cal. Ct. App. 2009); *Nguyen*, 4 Cal. App. 5th at 251-53 (use of words "I agree" did not destroy bilateral nature of agreement to arbitrate disputes).  Second, even if there was not mutuality, California courts recognize that a contract can provide for one-sided arbitration when there is a legitimate need without rendering the agreement unconscionable.  *See, e.g.*, *Armendariz*, 24 Cal.4th at 117; *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 855 (Cal. Ct. App. 2001).  Plaintiffs have failed to adequately explain why any alleged lack of mutuality here should render the agreements invalid.

Plaintiffs also argue that the agreements are substantively unconscionable because they will not receive a fair hearing before arbitrators who view them as enemies of the church.  However, deciding whether Scientology doctrine about suppressive persons renders the agreements substantively unconscionable requires

---

[6] The enrollment agreements appear to be mutual agreements to arbitrate all disputes. Although the departure agreements contain some remedies for the Church to litigate in the court system rather than arbitration, those appear to be limited to promises contained exclusively within the departure agreements, including issues involving the disclosure of confidential information.

"an analysis and interpretation of Scientology doctrine, which the First Amendment forbids civil courts to undertake." *Garcia*, 2021 WL 5074465, at *2 (11th Cir. 2021). Based on controlling caselaw, the First Amendment prevents the Court from resolving this underlying controversy about internal church doctrines. *Id.* at *9.

For the reasons stated, Plaintiffs' unconscionability arguments do not provide a basis to invalidate the arbitration agreements at issue here.

### Prospective Waiver

A prospective waiver of substantive federal rights is void. *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 637 n.19 (1985); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273-74 (2009). However, the United States Supreme Court has determined that an agreement to arbitrate statutory claims does not necessarily constitute a prospective waiver of substantive rights. *See, e.g.*, *id.* at 265-66. And even if federal anti-trafficking rights may not be prospectively waived, Plaintiffs appear to be confusing "an agreement to arbitrate those statutory claims with a prospective waiver of the substantive right." *Id.* at 265. Plaintiffs have pointed to no case law requiring nullification of the entire agreement, including the agreement to arbitrate, due to a commitment to arbitrate under religious law.

Plaintiffs argue they are unable to vindicate their rights because the arbitration agreements do not allow for the selection of an impartial decision-maker. While that argument is certainly consistent with a practical, common-sense view of the situation, it is not supported by sufficient evidence. Plaintiffs have failed to put forth any evidence showing that Scientology doctrine would compel an arbitrator to be hostile to their claims or would make it impossible for them to receive a fair and neutral

arbitration.  Moreover, even if they put forth such evidence it is likely that the First Amendment would preclude the court from resolving an underlying controversy about church doctrine.  *See Garcia*, 2021 WL 5074465, at *4.

Finally, Plaintiffs argue they cannot vindicate their rights because they are not allowed counsel of their choice.  While that argument also is consistent with a practical, common-sense view of the situation, and an elementary understanding of simple fairness and justice, there does not appear to be any constitutional or statutory requirement that parties be permitted counsel at arbitration proceedings.[7]  The cases cited by Plaintiffs in support of their argument are distinguishable on their facts.

For the reasons stated, Plaintiffs' prospective waiver of rights argument does not provide a basis to invalidate the arbitration agreements at issue here.

### First Amendment

"Arbitration in a religious forum has long been recognized as a valid approach to dispute resolution."  *Garcia*, 2015 WL 10844160, at *4.  Although Plaintiffs argue that their First Amendment rights would be violated if they are required to arbitrate their disputes, as former Church members there is no question they agreed to abide by the rules and procedures of the chosen arbitration forum.

Plaintiffs' main authority supporting their First Amendment argument is an unpublished California opinion, *Bixler v. Superior Ct. for the State of California, Cnty.*

---

[7] The Court notes that in the *Garcia* case, the Garcias' lawyer did not attend the arbitration after being informed that Scientology procedures did not allow secular lawyers to play a substantive role in the proceedings.  *Garcia,* 2021 WL 5074465, at *3.  However, as noted in *Garcia*, should the arbitrators exhibit evident partiality, Plaintiffs may later move to vacate any arbitration award.  *See id.* at *9; *11-12. But the Court notes that Plaintiffs "agreed to a method of arbitration with inherent partiality and cannot . . . seek to vacate that award based on that very partiality."  *Id*. at *12.

*of Los Angeles*, No. B310559, 2022 WL 167792, at *1 (Cal. Ct. App. Jan. 19,

2022), *review denied* (Apr. 20, 2022), *cert. denied sub nom. Church of Scientology Int'l*

*v. Bixler*, 214 L. Ed. 2d 124, 143 S. Ct. 280 (2022).  It should be noted that this opinion

could not be cited in California because the opinion itself states that "California Rules

of Court, rule 8.1115, restricts citation of unpublished opinions in California courts."

In any event, *Bixler* is distinguishable because those claims involved "alleged tortious

conduct occurring after [the petitioners'] separation from the Church and do not

implicate resolution of ecclesiastical issues."  *Id*. at *1.  The conduct alleged here

occurred while Plaintiffs were members of the Church – their claims do not implicate

conduct after separation.

For the reasons stated, Plaintiffs' First Amendment argument does not provide

a basis to invalidate the arbitration agreements at issue here.

### Duress and Fraud

Plaintiffs argue that the agreements are void because they were signed under

"severe duress," which included "imprisonment and threats of economic, reputation,

and physical harm."  If supported factually, this appears to be a strong argument –

especially in light of California statutory and caselaw on this point, which seems to be

considerably more liberal than other jurisdictions with respect to claims of duress,

including claims of economic duress. *See* Cal. Civ. Code §§ 1569 and 1570; *Tarpy v.*

*Cnty. of San Diego*, 1 Cal. Rptr. 3d 607, 614 (Cal. Ct. App. 2003); *Leader Global Sols.,*

*LLC v. Tradeco Infraestructura, S.A. de C.V.*, 155 F. Supp. 3d 1310, 1317-18 (S.D. Fla.

2016).  The Court directed supplemental briefing on the issue of duress, specifically

whether the issue of duress should be resolved by the federal courts or must be submitted to arbitration and decided by the arbitrator.

The parties' supplemental briefing has demonstrated that the law on this issue is not a model of clarity. Having carefully considered the arguments and case law, the Court finds that controlling law on this point from the United States Supreme Court requires the issue of duress to be determined in the first instance by an arbitrator. *See, e.g., Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).

Plaintiffs challenge the enrollment and departure agreements as a whole as entered into under duress – there are no factual allegations specific to the arbitration provisions themselves. The *Prima Paint* doctrine has been extended to require arbitration panels to determine many issues involving the validity of a contract with arbitration language, including allegations that such contract is voidable because it involves fraud, duress, or unconscionability. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391, 398 (5th Cir. 1981). These claims must therefore be decided by an arbitrator, not the district court.[8]

## Conclusion

Plaintiffs allege they suffered considerable mental, physical, and emotional abuse as a result of their participation in Scientology, which began during their

---

[8] Plaintiffs also argue that the agreements are void due to fraud because they were not fully informed about the documents at the time of signing, including that the documents contained arbitration provisions. It is not clear whether the factual allegations, if true, would actually constitute fraud. Regardless, there is no doubt this claim is governed by the same analysis as the duress claim. *See, e.g.*, *Prima Paint Corp.*, 388 U.S. at 404-05; *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.*, 35 Cal. 3d 312, 324 (Cal. 1983). The leading case on this issue, *Prima Paint*, involved a fraud claim.

childhood and included long stays aboard a large private cruise ship operating in the Caribbean. An uninterested observer reading the amended complaint would likely be surprised and shocked by the conduct alleged. But under existing law, Plaintiffs are limited to seeking relief through arbitration within the Scientology organization itself, not through the courts. This is what the law appears to require even where, as here, Plaintiffs allege they were forced to sign the agreements – enforceable for a billion years – under duress. An uninterested observer might also find such a limitation on access to the courts to be surprising and shocking, but such a limitation appears to be required under governing law. On the other hand, it should not be forgotten that Plaintiffs each signed numerous agreements to arbitrate disputes with Scientology over an extended period of years. The most recent agreements were signed in 2009, when Ms. Paris was roughly 31 years of age, and in 2015, when the Baxters were roughly 33 and 31 years of age respectively.

For the reasons discussed above, the arbitration agreements in this case are enforceable. Under existing law, this Court's hands are tied – the Court is not permitted to determine whether the agreements were executed under duress and therefore void. Instead, those issues must be decided through arbitration.

However, Defendants are not entitled to dismissal of the action. In accordance with Eleventh Circuit precedent, this case must be stayed rather than dismissed. *See, e.g., Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-T-02JSS, 2019 WL 5887179, at *3 (M.D. Fla. Nov. 12, 2019) (citing *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992); 9 U.S.C. § 3; *Giraud v. Woof Gang Bakery*, No. 8:17-cv-2442-T-26AEP, 2018 WL 2057814 (M.D. Fla. May 3, 2018)).

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) The motions to compel arbitration (Docs. 84; 85; 87; 88; 89) are **GRANTED** to the extent the Court finds that Defendants may enforce the arbitration agreements in this case.

(2) The motions are **DENIED** to the extent that Plaintiffs' claims are not subject to dismissal at this time.

(3) This case is **STAYED** pending the completion of arbitration, and the parties are directed to notify the Court within (14) days of the resolution of the arbitration proceedings.

(4) The Clerk is directed to terminate all pending motions and deadlines, and thereafter close this case.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this <u>31st</u> day of March, 2023.

_____ _____

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**