UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmd.uscourts.gov

GAWAIN BAXTER, LAURA BAXTER
and VALESKA PARIS,

      Plaintiffs,

v.                                                            Case No.: 8:22-cv-00986-TPB-JSS

DAVID MISCAVIGE; CHURCH OF
SCIENTOLOGY INTERNATIONAL, INC.;
RELIGIOUS TECHNOLOGY CENTER, INC.;
IAS ADMINISTRATIONS, INC.; CHURCH
OF SCIENTOLOGY FLAG SERVICE
ORGANIZATION, INC.; CHURCH OF
SCIENTOLOGY FLAG SHIP SERVICE
ORGANIZATION, INC.,

      Defendants.

_____/

**JOINT DEFENSE OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY
ORDER UNDER 28 U.S.C. § 1292(b) AND CLARIFICATION**

**INTRODUCTION**

The Federal Arbitration Act ("FAA") declares "a national policy favoring

arbitration," *Nitro–Life Techs., L.L.C. v. Howard*, 568 U.S. 17, 20-21 (2012), so parties

may achieve "streamlined proceedings and expeditious results," *Preston v. Ferrer*, 552

U.S. 346, 357-58 (2008). The parties here signed multiple agreements over decades to

arbitrate their disputes. There is no evidentiary dispute over the authenticity of those

agreements, or question that they apply to the disputes here. Yet more than a year after

the filing of the Complaint and thousands of pages of briefing and submissions,

Plaintiffs continue to avoid arbitration and undermine the purpose of the FAA, this

time with a motion to certify that seeks to protract the litigation with a meritless interlocutory appeal.

The arbitration agreements here have been blessed by *Garcia v. Church of Scientology*, 2021 WL 5074465 (11th Cir. 2021). *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) and *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) command that Plaintiffs' duress and fraud challenges to their agreements with Defendants ("Agreements") must be decided by the arbitrators—as was made clear in *two* rounds of supplemental briefing before this Court. No binding authority holds that the First Amendment prevents enforcement of a private agreement via religious arbitration. Plaintiffs yet again trot out *Bixler v. Church of Scientology*, which this Court already has recognized is ***not even authority in California*** and is factually distinguishable. The motion to certify is just a time-wasting gambit.

Plaintiffs' "motion to clarify" is even more fruitless. There is no such motion under the Federal Rules. To the extent the "motion to clarify" is construed as a motion for reconsideration, it fails the statutory requirements. In any event, there is nothing to "clarify." The parties executed multiple, consistent Agreements to submit disputes "exclusively" to Scientology arbitration. The Court granted Defendants' motion to enforce *all* those Agreements.

Had Plaintiffs honored their Agreements, ***arbitration could have begun a year ago***. Plaintiffs' delaying tactics must stop. The Court should continue to implement the policy of the FAA and enforce the parties' arbitration agreements ***expeditiously***.

## ARGUMENT

### I.   The Court Should Not Certify an Interlocutory Appeal Under § 1292(b).

Interlocutory appeal of an order compelling arbitration is governed by 28 U.S.C. § 1292(b) ("Section 1292(b)"). 9 U.S.C. § 16. To gain an interlocutory appeal under Section 1292(b), a litigant must show: (1) a controlling question of law; (2) over which there is a substantial ground for difference of opinion; and (3) that the immediate resolution of the issue would materially advance the ultimate termination of the litigation. *All* three elements *must* be shown. *Britt v. IEC Corp.*, No. 20-cv-60814, 2022 WL 3370216, at *16 (S.D. Fla. Aug. 16, 2022).

There is a "strong presumption against interlocutory appeals." *U.S. v. One Parcel of Real Prop. with Bldgs., Appurtenances & Improvements*, 767 F.2d 1495, 1498 (11th Cir. 1985). Section 1292(b) certification is only proper "in exceptional cases where decision of the appeal may avoid protracted and expensive litigation ... where a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1256 (11th Cir. 2004) (citation omitted). Given the FAA's purpose that arbitration agreements be expeditiously enforced, courts should be especially reluctant to certify orders granting arbitration. *Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 93 (2d Cir. 2002); *D.A.M. Prods., Inc. v. Acosta Restituyo*, No. 17-22962, 2018 WL 11372107 (S.D. Fla. Aug. 8, 2018). Indeed, permission to appeal an order compelling arbitration is a "rare exception" and one that should not be granted here. *Plante v. USF & G Specialty Ins. Co.*, No. 03-23157-CIV, 2004 WL 1429932, at *3 (S.D. Fla. June 2, 2004) ("Resort to

relief under § 1292(b) should be the *rare exception*, not the rule.") (emphasis added). Even if Plaintiffs were able to establish all three elements for certification, courts have "discretion to turn down a § 1292(b) appeal." *McFarlin*, 381 F.3d at 1259.

### A. The Question of Who Decides Duress and Fraud Defenses Should Not Be Certified.

#### 1. These Are Not "Controlling Questions of Law."

A "controlling question of law" is one that questions "the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Id.* at 1258. It should be an "abstract legal issue" of "'pure' law" that the circuit can answer "quickly and cleanly" without having to "delve beyond the surface of the record in order to determine the facts." *Id.* at 1258–59. "The antithesis of a proper § 1292(b) appeal is one that turns on . . . **whether the district court properly applied settled law to the facts or evidence of a particular case**." *Id.* at 1259 (emphasis added).

The duress and fraud questions do not present "pure" questions of law because they involve applications of law to the facts of the case. As to the duress affirmative defense, Plaintiffs have argued repeatedly that *Prima Paint* and *Buckeye*, while indisputably "settled law," do not apply to the facts of this case. While Plaintiffs have argued that they "directed their duress challenge to the arbitration provisions specifically" (ECF 175 at 2; *see also id.* at 5–6), this Court rejected Plaintiffs' argument and applied *Prima Paint* to the facts of this case. (Order 14.) Review of the duress argument—as framed by Plaintiffs—necessarily would require the Eleventh Circuit to review the record to determine if Plaintiffs' duress allegations are specific to the

arbitration clauses, as they assert, or are directed to the Agreements as a whole, as this Court concluded after a review of the record.

Plaintiffs' "fraud" affirmative defense also requires a review of the record. Plaintiffs characterize it as a "fraud in the execution" claim and then cite outdated authority that courts (and not arbitrators) decide fraud in the execution claims even when they are directed towards the contract as a whole. (Mot. 5.) Plaintiffs ascribe a "fraud in the execution" label instead of a "fraud in the inducement" label because *Prima Paint* itself involved a fraud in the inducement challenge to an agreement containing an arbitration clause. *Prima Paint*, 388 U.S. at 403–04. But Plaintiffs' characterization does not control and requires court review of the factual allegations. *Solymar Invs., Ltd.* v. *Banco Santander S.A.*, 672 F.3d 981, 994 (11th Cir. 2012) (rejecting party's assertion that it raised a fraud in the execution challenge when the facts supported a fraud in the inducement challenge).

Regardless of Plaintiffs' labels, *Buckeye* supplies the key test. *Buckeye* identified discrete instances of fraud or lack of capacity going to the issue of whether an agreement was concluded in the first place:

> The issue of the contract's ***validity*** is different from the issue whether any agreement between the alleged obligor and obligee was ever ***concluded***. Our opinion today addresses only the former, and does not speak to the issue decided in the cases cited by respondents (and by the Florida Supreme Court), which hold that it is for courts to decide whether the alleged obligor ever signed the contract, [citation], whether the signor lacked authority to commit the alleged principal, [citations], and whether the signor lacked the mental capacity to assent, [citation].

*Buckeye,* 546 U.S. at 444, n.1 (emphasis added) ("*Buckeye* Note 1 Exceptions"); *see also*

*Wiand v. Schneiderman*, 778 F.3d 917, 924 (11th Cir. 2015) ("A party may challenge the existence of a contract by alleging that at least one party never agreed to its terms, that a signatory lacked the authority to commit his principal, or that the signor lacked the mental capacity to assent.") (citing *Buckeye*, 546 U.S. at 444, n.1).

By labeling their defense as "fraud in the execution," Plaintiffs appear to be arguing that they fit under one of the narrow *Buckeye* Note 1 Exceptions. Review of the record would be necessary to determine if that is the case, and whether *Buckeye* was correctly applied.[1] In fact, Plaintiffs' allegations fail to show that the Agreements were not **concluded**, and thus fail to meet any of the narrow *Buckeye* Note 1 Exceptions.[2] But regardless, Plaintiffs present a mixed question of law and fact as to whether their allegations qualify as fraud in the inducement—the defense in *Prima Paint*—or whether the allegations meet the *Buckeye* Note 1 Exceptions. This is not a pure question of law to be certified for appeal under Section 1292(b). *McFarlin*, 381 F.3d at 1259.

---

[1] As the Court summarized the fraud allegations, "Plaintiffs also argue that the agreements are void due to fraud because they were not fully informed about the documents at the time of signing, including that the documents contained arbitration provisions. It is not clear whether the factual allegations, if true, would actually constitute fraud." (Order 14, n. 8.)

[2] Plaintiffs do not claim that their names were forged or that pages of the agreements were swapped out after signing. They understood that the Departure Agreements concerned their departure from the Sea Org and that executing them was a condition of leaving in good standing. (ECF 111-2 at ¶¶ 27 & 28; ECF 111-1 at ¶¶ 27–28, 30, 32–33; ECF No. 111-3 at ¶¶ 31, 40–42.) Plaintiffs have asserted that they were not told the Enrollment Agreements contained arbitration provisions and they were not given sufficient time to review them or feared "they would be punished" if they did review. (ECF 111 at 10.) These allegations do not meet the *Buckeye* exceptions and appear to be repackaged duress claims. Plaintiffs cited *Najarro v. Superior Court*, 70 Cal. App. 5th 871, 889–90 (2021) for the proposition that these allegations amounted to fraud in the execution. (ECF 111 at 9.) In fact, *Najarro* held that similar claims amounted to fraud in the inducement "at most" and not fraud in the execution.

**2.    There Is No Substantial Ground for Difference of Opinion on the Questions of Duress and Fraud.**

In determining whether to grant review, courts must consider whether there is "substantial dispute about the correctness of any of the pure law premises the district court actually applied in its reasoning leading to the order sought to be appealed." *McFarlin*, 381 F.3d at 1259. On this question, "it is the duty of the district judge . . . to analyze the strength of the arguments in opposition to the challenged ruling[.]" *Britt*, 2022 WL 3370216, at *15. Disagreement among courts outside the controlling circuit does not constitute "substantial ground for difference of opinion." *D.A.M. Prods.,* 2018 WL 11372107, at *4.

Here there is no difference of opinion—substantial or otherwise—that the validity of the Agreements is for the arbitrators to decide. "*Buckeye* largely, if not entirely, resolves the dispute before us. … [Plaintiff] sought invalidation of the contract as a whole. In the proceedings below, he made no discrete challenge to the validity of the arbitration clause*.*" *Preston*, 552 U.S. at 354. As this Court ruled here, Plaintiffs' duress and fraud challenges are not "discrete" to the arbitration clause of the Agreements but the same as the challenges to the Agreements as a whole. (Order 14 ("[T]here are no factual allegations specific to the arbitration provisions themselves.").) The Court then noted, "The *Prima Paint* doctrine has been extended to require arbitration panels to determine many issues involving the validity of a contract with arbitration language, including allegations that such contract is voidable because it involves fraud, duress, or unconscionability." (*Id.* (citation omitted).) Plaintiffs ***have***

*not cited a single authority* holding that duress or fraud challenges to the *validity* of an agreement containing an arbitration provision should be determined by a court and not the arbitrators.

Plaintiffs try to manufacture a "substantial difference of opinion" by claiming their challenges do not go to the validity of the Agreements but concern "formation issues," and thus are not subject to *Prima Paint* and *Buckeye*. (Mot. 4-5.) But Plaintiffs' expansive definition of a "formation issue" includes any "unfair dealing at the contract formation stage." (ECF 175 at 3.) No Supreme Court or Eleventh Circuit authority interpreting the FAA uses that definition in deciding whether a challenge goes to the validity of a contract, as opposed to formation. *See, e.g.*, *Solymar*, 672 F.3d at 993 ("courts should consider formation challenges only where there is a 'viable claim of lack of assent' in the form of signatures to the underlying contract"); *Larsen v. Citibank FSB*, 871 F.3d 1295, 1312 n. 12 (11th Cir. 2017) (attack on "execution" of contract as procedurally unconscionable is "for the determination of the arbitrator."). Plaintiffs' definition would nullify *Prima Paint*, as it concerned a claim of fraudulent inducement, perhaps the *sine qua non* of "unfair dealing at the formation stage."

This is not a complicated issue. The Court need look no further than *Buckeye*, which drew a bright line between challenges to the "validity" of a contract, and assertions that a contract had never even been "concluded." *Buckeye*, 546 U.S. at 444, n.1. The Eleventh Circuit has strictly construed *Buckeye*'s validity/concluded distinction and, since *Buckeye*, has not deemed any challenge to a contract outside of those stated in note 1 as a challenge reserved for the courts. *Wiand*, 778 F.3d at 924.

Plaintiffs' contention of a judicial "split" on whether duress is a "formation issue" to be decided by the Court (Mot. 5 & n.2), is unsupported. ***Not a single case cited by Plaintiff held that a duress challenge to a contract containing an arbitration provision should be heard by a court and not an arbitrator***.[3]

As to Plaintiffs' fraud cases, not one of them shows any "split" of authority. Plaintiffs erroneously assert that this Court's ruling conflicts with *Sightler v. Remington Coll.*, No. 6:15-273, 2015 WL 4459545 (M.D. Fla. July 21, 2015). (*See* Mot. 5, n. 4). It does not. Both this Court and *Sightler* scrupulously applied *Prima Paint* and *Buckeye*. In *Sightler*, the plaintiff's "fraud argument turn[ed] on his claim that he 'never properly executed'" the agreement containing the arbitration provision. *Sightler*, 2015 WL 4459545, at *2. *Sightler*'s fraud argument thus fell under one of the narrow *Buckeye* Note 1 Exceptions. Plaintiffs' reliance on *Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 999 (11th Cir. 1986), in which the plaintiffs alleged their signatures were furtively obtained or forged, does not support a "substantial difference of opinion" on the issue. Even though *Cancanon* pre-dated *Buckeye*, the fraud alleged there plainly falls into a narrow *Buckeye* Note 1 Exceptions.

---

[3] Plaintiffs rely on *Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. 246 (2017), which cites neither *Prima Paint* nor *Buckeye* and does not address the issue of validity versus formation. Plaintiffs rely on *Solymar*, 672 F.3d at 990, 993, which affirmed a decision *granting* a motion to compel arbitration and cited to *Chastain v. Robinson-Humphrey Co., Inc.,* 957 F.2d 851, 854 (11th Cir. 1992), which held that duress and other defenses "regarding the validity of a contract containing arbitration language" are reserved for the arbitrator. Plaintiffs rely on *Coleman v. Prudential Bache Secs., Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986), which held that "unconscionability, coercion, or confusion in signing the agreement generally should be determined by an arbitrator." Plaintiffs' additional authority neither holds that a duress challenge to general agreements that include arbitration provisions should be heard by a court, nor is from this Circuit.

Finally, Plaintiffs assert this Court erred in applying *Prima Paint* and *Buckeye* when it determined that the duress and fraud claims should go to the arbitrator because "Plaintiffs challenge the enrollment and departure agreements as a whole as entered into under duress—there are no factual allegations specific to the arbitration provisions themselves." (Order 14; Mot. 6.) The Court's ruling is a crystal-clear statement of the Supreme Court and Eleventh Circuit law. *Coleman*, 802 F.2d at 1352 (sending question of fraud to arbitrator because plaintiff submitted no evidence showing that "the arbitration clause itself, standing apart from the whole agreement, was induced by fraud."); *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1304 (11th Cir. 2022) (challenge must show why the arbitration "provision itself, apart from the agreement as a whole, was invalid or unenforceable"); (*see also* ECF 181 at 4–5; ECF 174 at 3–4). Plaintiffs' reliance on *Parm v. Nat'l Bank of Calif.*, 835 F.3d 1331 (11th Cir. 2016), (*see* Mot. 6), is unavailing because the challenge was directed to the arbitration provision and not to the entire contract. *Parm*, 835 F.3d at 1334–35; *see also Attix*, 35 F.4th at 1306 (in distinguishing *Parm*, the Court noted the "challenge to the enforceability of the delegation agreement was simple and direct: because the parties' chosen arbitral forum did not exist, there was no one to whom the parties could delegate their threshold arbitrability issues.").[4]

---

[4] Plaintiffs point to just one other case in the Eleventh Circuit in support of some "split" on this issue: *Steines v. Westgate Palace, L.L.C.*, No. 6:22-629, 2022 WL 18031492 (M.D. Fla. Dec. 14, 2022). (*See* Mot. 6). *Steines* held that the Military Lending Act ("MLA") preempted the FAA by expressly providing that "no agreement to arbitrate any dispute" shall be enforceable. The court thus characterized plaintiff's reliance on the MLA to invalidate an arbitration agreement as a challenge "specific" to an arbitration provision. *Id*. at *5. These are not our facts. Plaintiffs' other cited authority

There is no split in this Circuit or anywhere else on how to read *Prima Paint* and *Buckeye*. The *factual basis* for the challenge must be *specific* to the agreement *to arbitrate*.

### 3. Resolution of the Fraud and Duress Questions Would Not Materially Advance or Terminate the Litigation.

The final requirement under Section 1292(b)—that the controlling question of law must materially advance the ultimate termination of the litigation—is a straightforward one. This inquiry simply requires an examination of whether the "resolution of [the] controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259.

Resolution of the question of who decides fraud and duress does not "terminate the action" or even resolve whether Plaintiffs' claims proceed in arbitration. It could be that the arbitrators hear Plaintiffs' evidence, determine none of the Agreements are enforceable, and return the case to this Court. Conversely, if the Eleventh Circuit rules that this Court decides duress, the Court could hear the evidence showing no duress— such as that these Plaintiffs left and returned to the *Freewinds* over 3,000 times before they finally decided to separate from the Sea Org—reject Plaintiffs' defenses and enforce the arbitration provisions. Either way, resolution of the question neither terminates the litigation nor resolves whether an arbitration will go forward. This plainly does not satisfy the Section 1292(b) standard for certification. *Ryan, Beck & Co.,*

---

is out of the circuit, and in any event inapposite or supportive of *Defendants*' position. *Spahr v. Secco*, 330 F.3d 1266, 1272–73 (10th Cir. 2003) (challenge based on lack of mental capacity should be heard by court); *Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*, 22 Cal. App. 5th 1096, 1108 (Cal. Ct. App. 2018) ("[A]llegations that the main contract is unlawful or unconscionable do[] not affect the enforceability of the arbitration clause.").

*LLC v. Fakih*, 275 F.Supp.2d 393, 396 (E.D.N.Y. 2003) (denying motion to certify question of who determines arbitrability because immediate appeal would not "'materially advance the ultimate termination' of the case"); *McFarlin*, 381 F.3d at 1259 ("§ 1292(b) appeal inappropriate where the same parties and issues would remain in district court regardless of resolution of issues on appeal"); *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, No. 16-13655, 2017 WL 2222552, at *4 (E. D. Mich. May 22, 2017) (denying certification because, even if Sixth Circuit reversed, arbitration would not necessarily be stayed).

## B.   The First Amendment Question Should Not Be Certified.

### 1.   The First Amendment Question Is Not a Controlling Question of Law.

Plaintiffs seek to certify "whether forcing Plaintiffs into Scientology arbitration violates their First Amendment right to leave their religion." (Mot. 2-3.) This is also not a question of "pure law" appropriate for certification under Section 1292(b).

Plaintiffs' "main authority" in support of their First Amendment argument is an unpublished and uncitable state-court opinion from the California Court of Appeal, *Bixler v. Superior Ct.*, No. B310559, 2022 WL 167792, at *1 (Cal.Ct.App. Jan. 19, 2022). (Mot. 7-8; Order 12-13.) The Order held that "*Bixler* is distinguishable" **based on the facts of this case** and rejected Plaintiffs' First Amendment argument. (Order 13.) The Court held that *Bixler* does not apply because "[t]he conduct alleged here occurred while Plaintiffs were members of the Church—their claims do not implicate conduct after separation." (*Id.*) *Bixler* itself disclaims any application to the present case: "We

do not express an opinion on . . . whether arbitration could properly be compelled if petitioners were to bring claims for acts occurring while they were church members." *Bixler*, 2022 WL 167792, at *15, n.22. The Court's conclusion that *Bixler* does not apply is premised on application of law to the facts of the case, and therefore, is not a pure question of law. *McFarlin*, 381 F.3d at 1259 (application of legal authority to the facts is the "antithesis of a proper § 1292(b) appeal."); *see also Britt*, 2022 WL 3370216, at *14–*15 (denying request for Section 1292(b) review due to supposed "conflict" with legal authority based on holding that authority was "distinguishable from our *facts*").

Even divorced from the Order and the *Bixler* opinion, any First Amendment analysis raises factual issues. Plaintiffs were voluntary members of the Church's religious order. Plaintiffs' claims concern their alleged working conditions and discipline as members of that religious order. Plaintiffs' agreement to the Church's ecclesiastical arbitration is a condition for service in the religious order.

Under these ***facts***, any analysis regarding the enforceability of the Agreements under the First Amendment requires an application of the "ministerial exception." (ECF 67 at 19–23.) The ministerial exception holds that civil laws cannot govern the relationship between a church and its ministers, *i.e.*, those who serve a church by "conveying the Church's message and carrying out its mission." *Hosanna Tabor v. Equal Emp. Opportunity Comm'n*, 565 U.S. 171, 192 (2012). The ministerial exception requires a fact-specific inquiry regarding the responsibilities of the religious worker in serving the religion. *Hope Int'l Univ. v. Superior Court*, 119 Cal.App.4th 719, 734 (2004). It applies to a broad range of religious workers. *Ross v. Metro. Church of God*, 471

F.Supp.2d 1306, 1310 (N.D. Ga. 2007) (collecting cases applying ministerial exception to musical director, organist, choir director, resident in hospital program, religion teacher, nun, kosher food supervisor, and director of religious education); *Headley v. Church of Scientology Int'l*, No. 09-3986, 2010 WL 3157064, at *6 (C.D. Cal. Aug. 5, 2010), aff'd 687 F.3d 1173 (9th Cir. 2012) (granting summary judgment on claims based on working conditions of Sea Org members at video production facility; adjudicating claims "would also require the Court to analyze the criteria Defendant uses to choose ministers and the reasonableness of the methods used to enforce church policy"). The First Amendment question would require the Eleventh Circuit to delve into the record to analyze the ministerial exception. It is not a "pure legal question."

## 2.   There Is No "Substantial Ground for a Difference of Opinion."

### 1.   The Bixler opinion does not create a "split" of authority.

Bixler does not create a "split" among the courts of the Eleventh Circuit requiring review. *D.A.M. Prods.,* 2018 WL 11372107, at *4 (under Section 1292(b), split must be among district courts in this circuit or the circuit courts); *Smiley v. Costco Wholesale Corp.*, No. 8:18-cv-2410-T-33JSS, 2019 WL 4345783, at *2 (M.D. Fla. Sept. 12, 2019) (cited by Mot. 3). *Bixler* is an unpublished decision from the *California* Court of Appeals. As an unpublished decision, it does not constitute precedential authority even in California, *see* Cal. R. Ct. 8.1115(a), (b) and *Humane Soc. of U.S. v. Super. Ct.*, 214 Cal.App.4th 1233, 1266 n.30 (2013), much less Florida.

### 2.   The First Amendment question raises no important or difficult issues.

Enforcement of Plaintiffs' arbitration Agreements does not violate Plaintiffs'

14

First Amendment rights and implicates no important or difficult issues of first impression. The "threshold requirement for any constitutional claim is the presence of state action." *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 837 (9th Cir. 2017). "It is well established that judicially enforcing arbitration agreements does not constitute state action." *Id.* at 838 n.1; *Davis v. Prudential Secs., Inc.*, 59 F.3d 1186, 1191 (11th Cir. 1995) (agreeing with numerous courts holding state action element is absent in private arbitration cases); *Desiderio v. Nat'l Ass'n of Secs. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999) (same); *Elmore v. Chicago & Illinois Midland Ry. Co.*, 782 F.2d 94, 96 (7th Cir. 1986) (same). This "well established" law demonstrates that enforcement of Plaintiffs' contractual Agreements to arbitrate cannot violate Plaintiffs' constitutional rights.

### 3. Deciding the First Amendment Question Will Not Advance the Termination of the Litigation.

Interlocutory review of the First Amendment question does not "substantially reduce the amount of litigation left in the case." *See McFarlin*, 381 F.3d at 1259. Even if Plaintiffs prevailed on an interlocutory appeal, the Parties would remain at the beginning of the case. Plaintiffs would still have to litigate their entire case in the Court. Resolving the First Amendment question will not advance the ultimate termination of the litigation; it will merely *possibly* change the forum in which the case is litigated.

The Motion argues that interlocutory review would "avoid potentially litigating the case twice." (Mot. 8.) The Motion cites **no authority in support**. This argument would apply to **every** order compelling arbitration. The specter of a second trial is always present when one party contends that a case was wrongly ordered to

arbitration. This is insufficient to meet Section 1292(b)'s "high threshold" for interlocutory review. *See, e.g., Githieya v. Global Tel\*Link Corp.*, No. 1:15-0986, 2016 WL 11770353, at \*2–3 (N.D. Ga. Mar. 29, 2016) (plaintiff's "speculation" that "the whole case will need to be relitigated" if he successfully challenged the award on appeal by arguing the court "never should have compelled arbitration" not ground for Section 1292(b) review); *Matthew v. Woodmen of World Life Ins. Soc.*, No. 208-132, 2009 WL 10702559, at \*2 (S.D. Ga. Feb. 13, 2009) (plaintiffs failed to show an immediate appeal of the arbitration order would advance the termination of the litigation); *Portobanco v. Paradise Cruise Line Op. Ltd. Inc.*, No. 20-61044, 2022 WL 2182885, at \*2 (S.D. Fla. Feb. 2, 2022) (same); *Houston v. NPC Int'l, Inc.*, No. 13-01160, 2014 WL 12535302, at \*3 (W.D. Mo. May 23, 2014) ("[i]f possibility of error is all that is required to satisfy the third prong of § 1292(b)," it would be "a nullity"; denying Section 1292(b) certification of arbitration order). And, due to the streamlined nature of arbitration, resolving an interlocutory appeal could take longer than resolving Plaintiffs' claims in arbitration. *See Adler v. Dell, Inc.*, No. 08-13170, 2009 WL 646885, at \*1 (E.D. Mich. Mar. 10, 2009) (denying 1292(b) certification of arbitration order).

## II. The "Motion to Clarify" Should be Denied.

### A. Plaintiffs Do Not Satisfy the Legal Standard for a "Motion to Clarify."

The Federal Rules of Civil Procedure do not provide for a motion for clarification. Motions for "clarification" are treated as motions for reconsideration. *Silva v. Potter*, No. 804-2542, 2006 WL 3219232, at \*6 (M.D. Fla. Nov. 6, 2006); *Perkie v. Grp. Techs., Inc.*, No. 92-922, 1995 WL 91379, at \*2 (M.D. Fla. Feb. 27, 1995). There

are three grounds for reconsideration under Rule 54(b): "(1) an intervening change in controlling law; (2) newly discovered evidence; or (3) the need to correct clear error or prevent manifest injustice." *U.S. ex rel. Green v. Inst. of Cardiovascular Excellence, PLLC*, 2016 WL 2866567, at *1 (M.D. Fla. May 17, 2016) (cited by Mot. 9, n.5). Reconsideration cannot be used to "relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005) (applying Rule 59(e)).

Despite citing Rule 54(b), the Motion does not advance any ground for reconsideration, (Mot. 9-11 & n.5). Because Plaintiff does not show any basis for the requested relief, the request should be denied. *See Githieya*, 2016 WL 11770353, at *3.

### B. Clarification Is Neither Necessary nor Appropriate.

Nor could Plaintiffs satisfy the reconsideration standard. Plaintiffs do not identify new law or evidence, or advance facts establishing "the need to correct clear error or prevent manifest injustice." Plaintiffs do not argue the Order is erroneous or causes injustice. Plaintiffs state only "the Court did not explain how [the Agreements] could be reconciled" or which Agreement governs. (Mot. 9.) Plaintiffs request the Court identify which Agreement controls because, according to Plaintiffs, the arbitration provisions are "inconsistent," and "directly conflict with each other." (*Id.* at 9, 10.) The argument is without merit.

First, the request for clarification should be denied because the Court **has already rejected Plaintiffs' argument**. In opposing the motions to compel arbitration,

Plaintiffs argued "Defendants have not identified the controlling agreement to arbitrate," and the Agreements "contain directly conflicting terms." (ECF 111 at 4.) The Court found "some variation in the wording" of the Agreements does not render them unenforceable: "Plaintiffs had some idea of what disputes would be subject to arbitration, along with the manner of effecting arbitration." (Order 5, n.3.)

Second, the Agreements do not "directly conflict with each other." There is merely "some variation in the wording." (*See id.*) All of the Agreements—the Enrollment Agreements, Covenants, Departure Agreements, and Release Agreements—are consistent regarding the applicable governing procedures: each provides that Scientology Ethics and Justice procedures govern the arbitration.[5]

Plaintiffs argue the Enrollment Agreements provide for a panel of three arbitrators while the Departure Agreements and Covenants state that the IJC will serve as the sole arbitrator. (Mot. 10 (citing no specific provisions).) As the Court can discern from the Agreements on their face, **no Agreement designates the IJC as an arbitrator**. The Departure Agreements and Covenants involve the IJC in **pre**-arbitration resolution procedures and identify the IJC as the presiding authority, not an arbitrator.[6] Plaintiffs then argue the Enrollment Agreements do not provide for an

---

[5] ECF 67-2 Exs. A, B, & K at ¶¶ 6.d, e (Enrollment); ECF 67-2 Exs. C & D (Baxter Covenants) at p. 2, ¶ 9; ECF 67-1 Ex. A (Paris Covenant) at p. 12; ECF 67-2 Exs. E & F (Baxter Departure) at p. 6, ¶ 6.C; ECF 67-2 Ex. L (Paris 2007 Release) at ¶ 7.A; ECF 67-2 Ex. M (Paris 2009 Release) at ¶ 7.A.

[6] ECF 67-2 Exs. E & F (Baxter Departure) at ¶ 6.B. (listing submission to IJC among "informal" pre-arbitration resolution procedures) & ¶ 6.C (listing Scientology arbitration as the "sole and exclusive remedy" for resolving disputes); ECF 67-2 Exs. C & D (Baxter Covenants) at p. 2 ¶ 9 (agreeing to Scientology justice procedures if unhappy with initial decision by IJC); ECF 67-1 Ex. A (Paris Covenant) at p. 12 (agreeing to "ecclesiastical justice procedures" if unhappy with initial decision by

appeal process while the Departure Agreements provide for "a Board Review from the LRH Communicator International." (Mot. 10–11.) The reference to a Board Review in the Departure Agreements again concerns **pre**-arbitration resolution procedures.[7] All Agreements provide the arbitrator's decision is "binding." There is no conflict.[8]

Third, even when faced with procedural differences between multiple arbitration agreements, courts compel arbitration because the "fundamental question" is whether the parties wished to arbitrate. *Matter of Willis*, 944 F.3d 577, 582 (5th Cir. 2019). The Court will not "shut [its] eyes to an agreement that demonstrates a baseline intent to arbitrate just because it contains inconsistent terms about procedural minutiae." *Id.* Plaintiffs' cited authority does not require a different result. (*See* Mot. 9.) In both *Henry v. Pizza Hut of Amer., Inc.*, No. 607-01128, 2007 WL 2827722, at * 3 (M.D. Fla. Sept. 27, 2007) and *Chuc v. City Fibers, Inc.*, Nos. B299854 & B301008, 2021 WL 1959212, at *6–*7 (Cal.Ct.App. May 17, 2021), the courts rejected claims that the arbitration provisions were inconsistent, construed the contracts together, and

---

IJC); ECF 67-2 Ex. L (Paris 2007 Release) at ¶ 7.A (providing for "ecclesiastical arbitration under the authority of the IJC [not with IJC as an arbitrator]"); ECF 67-2 Ex. M (Paris 2009 Release) at ¶ 7.A (listing submission to IJC among informal dispute resolution procedures and providing for subsequent recourse under Scientology "religious authorities and procedures").

[7] ECF 67-2 Exs. E & F (Baxter Departure) at ¶ 6.B. (listing "Board of Review from the LRH Communicator International" among "informal" pre-arbitration resolution procedures) & ¶ 6.C (listing Scientology arbitration as the "sole and exclusive remedy" for resolving disputes).

[8] Plaintiffs incorrectly claim that the Departure Agreements supersede the other Agreements because they are the later contracts. (Mot. 11.) A later contract only supersedes a prior contract "as to inconsistent provisions." *N.L.R.B. v. Int'l Union of Op. Eng. Local No. 12, AFL-CIO*, 323 F.2d 545, 548 (9th Cir. 1963). Here, the Agreements are not in conflict, and therefore, they all remain enforceable. Furthermore, the Departure Agreements expressly incorporate and reaffirm the prior Agreements. (ECF 67-2 Exs. E & F at p. 7, ¶ 7.E.); *see Manlin v. Ocwen Loan Serv.*, No. 16-06625, 2018 WL 5905939, at *4 (C.D. Cal. Aug. 15, 2018). Finally, even if the Court found some inconsistent procedures, the consistent provisions requiring Scientology arbitration would remain enforceable as to all Agreements.

considered both clauses when compelling arbitration. *See also Sammons v. Sonic-North Cadillac, Inc.*, 6:07-277, 2007 WL 2298032, at *1 n.1 & *6 (M.D. Fla. Aug. 7, 2007) (compelling arbitration under two provisions in two separate contracts).

Finally, Plaintiffs claim that it is "impossible" to arbitrate their claims without further guidance from the Court, and that "Plaintiffs currently have no guidance as to how to initiate the arbitration or how to select an arbitrator." (Mot. 10, 11.) Plaintiffs' argument is wholly pretextual. The Agreements provide such information, which was explicitly stated in FSSO's Motion to Compel Arbitration. (ECF 67-2 Exs. A, B, & K (Enrollment) at ¶¶ 6.e.i-iv; ECF 67 at 5–6.) Yet if confusion remains, "clarification" from the Court is not appropriate. The arbitrators determine which procedures control. *BG Grp. PLC v. Republic of Arg.*, 572 U.S. 25, 34 (2014) ("the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration."); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("[P]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide.").

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

Respectfully submitted,

/s/ Gustavo J. Membiela
Gustavo J. Membiela (FBN: 513555)
Winston & Strawn, LLP
200 S. Biscayne Boulevard, Suite 2400
Miami, FL 33131-5341
Tel: 305.910.0717
gmembiela@winston.com

Attorneys for Defendant Church of
    Scientology International

/s/ Christopher G. Oprison
Christopher G. Oprison (FBN: 0122080)
DLA Piper, LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131-5341
Tel: 305.423.8500
chris.oprison@dlapiper.com
Attorneys for Defendant Religious
    Technology Center

/s/ David B. Weinstein
David B. Weinstein (FBN: 604410)
Brian C. Porter (FBN: 0120282)
Greenberg Traurig, P.A.
101 E. Kennedy Blvd., Suite 1900
Tampa, FL 33602
Tel.: (813) 318-5700
weinsteind@gtlaw.com
brian.porter@gtlaw.com

BRIGID CECH SAMOLE (FBN: 730440)
brigid.cechsamole@gtlaw.com
Greenberg Traurig, P.A.
333 SE 2nd Ave., Suite 4400
Miami, FL 33131
Tel.: (305) 579-0500
Attorneys for Defendant FSSO

/s/ William H. Forman
William H. Forman*
Winston & Strawn, LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Tel: 213.615.1992
whforman@winston.com
*Admitted Pro Hac Vice

/s/ Charles M. Harris
Charles M. Harris (FBN: 967459)
Bridget A. Merenda (FBN: 320500)
Trenam Law
200 Central Avenue, Suite 1600
St. Petersburg, FL 33701
Tel: 727.896.7171
charris@trenam.com
bamerenda@trenam.com
gkesinger@trenam.com
ranctil@trenam.com
Attorneys for Defendant FSO

/s/ Robert V. Potter, Jr.
Robert V. Potter, Jr. (FBN: 363006)
Johnson Pope Bokor Ruppel & Burns
311 Park Place Blvd., #300
Clearwater, FL 33759
Tel: 727.461.1818
BobP@jpfirm.com
Attorneys for Defendant IAS Administrations

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing opposition was electronically filed on May 12, 2023, with the Clerk of Court via the Court's CM/ECF system which will serve a notice of said electronic filing and copy to all interested parties registered to receive electronic notifications on this matter.

*/s/ Gustavo J. Membiela*
GUSTAVO J. MEMBIELA, ESQ
