UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWAIN BAXTER, LAURA
BAXTER, and VALESKA PARIS,

    Plaintiffs,

v.                                                Case No: 8:22-cv-986-TPB-JSS

DAVID MISCAVIGE, CHURCH OF
SCIENTOLOGY INTERNATIONAL,
INC., RELIGIOUS TECHNOLOGY
CENTER, INC., IAS
ADMINISTRATIONS, INC.,
CHURCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, INC.,
and CHURCH OF SCIENTOLOGY
FLAG SHIP SERVICE
ORGANIZATION, INC.,

    Defendants.
_____/

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' "MOTION TO CERTIFY THE COURT'S MARCH 31, 2023 ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B) AND CLARIFICATION"

This matter is before the Court on Plaintiffs' "Motion to Certify the Court's March 31, 2023 Order for Interlocutory Appeal Under 28 U.S.C. § 1292(b) and Clarification," filed on April 28, 2023. (Doc. 189). On May 12, 2023, Defendants filed a combined response in opposition. (Doc. 190). Upon review of the motion, response, court file, and record, the Court finds as follows:

## Background

Plaintiffs are former members of the Church of Scientology. They were introduced to Scientology as children by their parents, and they remained active in Scientology as adults. As practicing Scientologists, they served for over a decade as members of the Sea Organization ("Sea Org"), which is described as a religious order within the larger Scientology religion. Plaintiffs bring this action pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1581-1597, alleging that Defendants coerced persons, including Plaintiffs, to join Sea Org and provide unpaid labor and services on a 10,328-ton cruise ship vessel known as the *Freewinds*, where Defendants knowingly obtained valuable benefits including financial enrichment. Plaintiffs allege that *Freewinds* frequently sailed to nations where anti-trafficking measures were weak to avoid legal repercussions, and it has never docked at any port in the United States or even entered the territorial waters of the United States.

Plaintiffs allege they were forced by their parents to join the Church of Scientology as children, where they were "indoctrinated, manipulated, and pressured into coercive circumstances from a young age." (Doc. 79 at ¶ 3). They now contend that Scientology was "a world filled with abuse, violence, intimidation, and fear." (*Id*. at ¶ 1). For a time, Plaintiffs were assigned to work on *Freewinds* under highly dangerous and abusive conditions, often working between 16-24 hours a day. In the amended complaint, Plaintiffs detail numerous incidents of punishment, humiliation, interrogation, and imprisonment that occurred while they

were members of Sea Org, including various acts of mental, physical, and emotional abuse.

As members of Scientology, Plaintiffs signed pledges of "eternal service" to the religion and its goals.[1]  In enrollment agreements signed in 2003 and 2004, Plaintiffs agreed to resolve disputes with the Church through binding religious arbitration.  Plaintiffs were between the ages of roughly 19 and 25 – relatively young adults – when these arbitration agreements were signed.  Gawain Baxter was born April 9, 1982.  (Doc. 149 at 14).  Laura Baxter was born on October 25, 1984.  (*Id*.).  And Valeska Paris was born in 1978.  (*Id*.).  Plaintiffs later left *Freewinds*, and they executed agreements to arbitrate then as well – Paris in 2007, and the Baxters in 2012.  Paris, when she was roughly 31 years of age, signed another agreement and release in 2009 that included an arbitration provision.  Similarly, the Baxters signed additional agreements, which included arbitration provisions, in December 2015 when they were roughly 33 and 31 years of age respectively.

On March 31, 2023, the Court entered an order compelling arbitration and staying the case pending arbitration.  (Doc. 188).  Plaintiffs now request that the

---

[1] In an affidavit supporting the motions to compel arbitration, Sarah Heller, a staff member of Church of Scientology Flag Service Organization, explains that the Sea Org is the religious order of Scientology and is composed of the most dedicated Scientologists – individuals who have dedicated themselves to the Sea Org "for a billion years," reflecting "both their dedication to their religion and their awareness of themselves as immortal spiritual beings who have lived countless lives and who will live again and again." (Doc. 84-1 at ¶ 15).

Court certify its decision compelling arbitration for interlocutory appeal and seek clarification. (Doc. 189). Defendants oppose the motion. (Doc. 190).

## Legal Standard

Interlocutory appeals under 28 U.S.C. § 1292(b) are designed specifically to resolve "abstract legal issues or issues of pure law." *PFM Air, Inc. v. Dr. Ing. hc. F. Porsche A.G.*, 751 F. Supp. 2d 1264, 1269 (M.D. Fla. 2010) (internal quotations omitted). "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves [1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." 28 U.S.C. § 1292(b). The party seeking the appeal bears the burden to establish that it has met all three elements. *Gurzi v. Penn Credit, Corp.*, 6:19-cv-823-Orl-31EJK, 2020 WL 3288016, at *1 (M.D. Fla. June 18, 2020).

## Analysis

Plaintiffs request that the Court certify two questions for interlocutory review under 28 U.S.C. § 1292(b) – (1) whether Plaintiffs' fraud in the execution and duress challenges to the arbitration agreements must be heard by a Scientology arbitrator, rather than the district court; and (2) whether forcing Plaintiffs to participate in a Scientology religious arbitration violates their First Amendment right to leave their religion.

Upon review, the Court finds that the issues presented by Plaintiffs satisfy the standard under § 1292(b). After considering the parties' positions, the Court finds that the two issues involve controlling questions of pure law, which the appellate court "can decide quickly and cleanly without having to study the record." *See McFarlin v. Conseco Servs. LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004). Although the questions are not "controlling" in the sense that reversal of the March 31, 2023, Order would terminate the action, considering the system-wide costs and benefits of allowing the appeal, the Court believes that clear guidance from the Eleventh Circuit will aid district courts in a large number of cases. *See Islam v. Lyft, Inc.*, 2021 WL 2651653, at *3 (S.D.N.Y. June 28, 2021).

The Court also finds that there is substantial ground for difference of opinion as to these issues. The Court emphasizes that it did not come to its decision to compel arbitration lightly or easily, and the controlling legal issues present difficult questions that have not been squarely addressed by the Eleventh Circuit or United States Supreme Court. There is certainly room for disagreement, even if the Court ultimately found Defendants to have the stronger position.

Finally, the Court finds that interlocutory appeal "may material advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If the Eleventh Circuit hears the appeal and affirms, this case will remain stayed pending resolution of the arbitration proceedings. If the Eleventh Circuit reverses, holding that Plaintiffs cannot be compelled to arbitrate, it will save the parties the expense and burden of arbitration – which may potentially take years – and allow the case to proceed to

resolution in the district court. In addition, considering the "system-wide costs and benefits of allowing the appeal," including "the impact that an appeal will have on other cases," an interlocutory appeal may not only resolve this case but also "conserve judicial resources in the longer term by resolving important and oft-arising legal questions." *See Islam*, 2021 WL 2651653, at *5 (internal quotations and citations omitted).

Based on the foregoing, the Court concludes that each of the § 1292(b) requirements for an interlocutory appeal are met. Therefore, in its discretion, the Court chooses to certify the March 31, 2023, Order to allow the interlocutory appeal of the discussed controlling questions of law – (1) whether Plaintiffs' fraud in the execution and duress challenges to the arbitration agreements must be heard by a Scientology arbitrator, rather than the district court; and (2) whether forcing Plaintiffs to participate in a Scientology religious arbitration violates their First Amendment right to leave their religion. If the Eleventh Circuit agrees to hear this appeal, however, it "may address any issue fairly included within the certified order." *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996).

The Court declines to clarify which arbitration provisions govern or "identify which terms control the parties' agreement" by resolving any alleged inconsistencies between the agreements. The March 31, 2023, Order speaks for itself on this and other issues.

According, it is hereby

**ORDERED, ADJUDGED,** and **DECREED**:

1. Plaintiffs' "Motion to Certify the Court's March 31, 2023 Order for Interlocutory Appeal Under 28 U.S.C. § 1292(b) and Clarification" (Doc. 189) is **GRANTED IN PART** and **DENIED IN PART**.

2. The motion is **GRANTED** to the extent that the Court's March 31, 2023, Order is certified for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

3. The motion is otherwise **DENIED**.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this 7th day of June, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**