## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GAWAIN BAXTER, LAURA BAXTER,
and VALESKA PARIS,

      Plaintiffs,

v.

DAVID MISCAVIGE; CHURCH OF
SCIENTOLOGY INTERNATIONAL, INC.;
RELIGIOUS TECHNOLOGY CENTER, INC.;
IAS ADMINISTRATIONS, INC.; CHURCH
OF SCIENTOLOGY FLAG SERVICE
ORGANIZATION, INC.; and CHURCH OF
SCIENTOLOGY FLAG SHIP SERVICE
ORGANIZATION, INC.,

      Defendants.

_____/

Case No. 8:22-cv-00986-TPB-JSS

## DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR
## RECONSIDERATION UNDER FED. R. CIV. P. 54(B)

Defendants Church of Scientology International, Religious Technology Center, IAS Administrations, Church of Scientology Flag Service Organization, Inc., and Church of Scientology Flag Ship Service Organization, Inc. (collectively "Defendants") hereby submit their Joint Opposition to Plaintiffs' Motion for Reconsideration Under Fed. Civ. P. 54(B) ("Motion"). The Court should summarily deny the frivolous and misguided Motion. As Defense counsel has informed Plaintiffs' counsel, there is simply no merit to the position that *Suski v. Coinbase* constitutes a change in the law on which this Court based its decision to grant the Motion to Compel Arbitration.

## I.    INTRODUCTION.

For almost 60 years now, United States Supreme Court precedent has required that fraud, duress, and other challenges to the validity of an agreement that includes an arbitration provision must be heard by the arbitrator and not the court. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404 (1967). This well-established doctrine is based on the principle that the arbitration clause is viewed as separate from the underlying contract. *Buckeye Check Cashing, Inc, v. Cardegna*, 546 U.S. 440, 443–446 (2006). "Thus, allegations that the main contract is unlawful or unconscionable does not affect the enforceability of the arbitration clause." *Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* 22 Cal. App. 5th 1096, 1105 (2018), *as modified on denial of reh'g* (May 23, 2018), *citing Buckeye Check Cashing*. The parties addressed this very issue in the initial briefs on the motion to compel arbitration, at the November 6, 2022 hearing on the motion to compel arbitration, in the two subsequent rounds of briefing before this Court, and then in briefing on Plaintiffs' unavailing attempt to appeal to the Eleventh Circuit. Both this Court and the Eleventh Circuit rejected Plaintiffs' arguments that this Court should hear their duress and fraud challenges to the multiple agreements they signed over more than a decade.

Having spent two years litigating the applicability of this clear precedent, Plaintiffs continue to delay the arbitration that they agreed to over and over again. Plaintiffs assert that *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186 (2024) ("*Suski*"), in a passage of *dicta* silently overruled *Prima Paint*, *Buckeye*, and dozens of cases

within this Circuit holding that fraud and duress challenges to the overall validity of an agreement should be heard by the arbitrator. The Motion omits any discussion of the facts in *Suski*, and thus ignores the most critical question in reviewing any authority: What did *Suski* decide?

This is what *Suski* decided: When the parties agree to arbitrate a dispute in one contract, and then later agree not to arbitrate a dispute in a second contract, the court should decide which of those contracts controls when ruling on a motion to compel arbitration. 144 S. Ct. at 1194–95. That is it. To the extent the *Prima Paint/Buckeye* doctrine even applies to that situation (of which *Suski* itself expressed doubt), the question of whether a subsequent agreement to litigate disputes in court supersedes a previous agreement to arbitrate a dispute constitutes a challenge *directed specifically to the ongoing validity of the prior arbitration provision*. The *Suski* rule concerns conflicting forum-selection clauses and constitutes a challenge specific to the arbitration provision. It has no bearing on the facts of this case, and in no way overrules or amends the well-settled *Prima Paint* doctrine that fraud and duress challenges directed to the underlying contract as a whole are heard by the arbitrator.

Rather than address the facts of *Suski*, Plaintiffs use their Motion as another vehicle to propagate false claims against Defendants in a transparent attempt to bias the Court. None of what Plaintiffs say about their claims or the utterly irrelevant Court ordered *Haney* arbitration ongoing in Los Angeles is appropriate for a motion for reconsideration. Nor is it remotely truthful. As a condition for

3

joining the Sea Organization ("Sea Org"), Scientology's religious order, and serving at a Church of Scientology, Plaintiffs voluntarily committed themselves to be bound by all aspects of the Scientology faith, including religious arbitration of any disputes of or conflicts about the conditions of their Sea Org service. The notion that such covenants were induced by fraud is belied by their repeated assent, over decades, to such terms. The idea that Plaintiffs signed the covenants under duress, or served in the Sea Org against their will, is conclusively refuted by contemporaneous ship records showing that Plaintiffs disembarked and re-embarked *over 3,000* times while serving on the *Freewinds*[1] and by other extensive documentation of the voluntariness of their commitment.

Punctuating the frivolousness of Plaintiffs' verifiably false position is their reliance on a so-called "status report" filed by a lawyer who has been suspended from the California State Bar and declared a vexatious litigant for his actions against Scientology. Plaintiffs' reliance on the false rantings of an adjudicated vexatious litigant says everything about the lack of merits of their Motion and their allegations.

## II.   PROCEDURAL HISTORY.

Plaintiffs filed this lawsuit over two years ago, in April 2022. The precise question of whether challenges to the validity of a contract containing an arbitration provision must be heard by an arbitrator was extensively litigated before this Court. It was the subject of a three-hour hearing in November 2022.

---

[1] The *Freewinds* is a religious retreat based on a ship with a home port in Curacao, N.A.

(Doc. 148.) The Court then requested additional briefing specifically on this topic. (Doc. 168.) The parties submitted two rounds of supplemental briefing. (Docs. 174, 175, 180, 181.)

In its March 31, 2023 order (Doc. 188, "Order"), the Court determined that Plaintiffs challenged the validity of the contracts overall, and not specifically the arbitration provisions themselves:

> Plaintiffs challenge the enrollment and departure agreements as a whole as entered into under duress – there are no factual allegations specific to the arbitration provisions themselves. The *Prima Paint* doctrine has been extended to require arbitration panels to determine many issues involving the validity of a contract with arbitration language, including allegations that such contract is voidable because it involves fraud, duress, or unconscionability. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391, 398 (5th Cir. 1981). These claims must therefore be decided by an arbitrator, not the district court.

(Doc. 188 at 14.) The Court further held:

> Plaintiffs also argue that the agreements are void due to fraud because they were not fully informed about the documents at the time of signing, including that the documents contained arbitration provisions. It is not clear whether the factual allegations, if true, would actually constitute fraud. Regardless, there is no doubt this claim is governed by the same analysis as the duress claim. *See, e.g*., *Prima Paint Corp*., 388 U.S. at 404-05; *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St*., 35 Cal. 3d 312, 324 (Cal. 1983). The leading case on this issue, *Prima Paint*, involved a fraud claim.

(*Id*. at n.8.) Indeed, Plaintiffs conceded they were not even aware of the arbitration provisions when signing the agreements. (*Id*.)

Unsatisfied with this Court's ruling, Plaintiffs then sought interlocutory review in the Eleventh Circuit on this precise issue of who decides their duress and fraud challenges. The Eleventh Circuit declined to entertain the question. (11th Cir.

Case No. 23-90013, Order of Apr. 11, 2024.)

Now, rather than finally proceed to the arbitration they agreed to, Plaintiffs make yet another desperate attempt to forestall the arbitration. Plaintiffs contend *Suski* silently undid over 50 years of Supreme Court precedent. As a sign of their desperation Plaintiffs rely on a filing by attorney Graham Berry in an unrelated case*, Haney v. Church of Scientology Int'l,* pending in Los Angeles Superior Court. (Doc. 196 at 9.) Mr. Berry previously has been suspended from the California bar for his campaign against the Church and declared a vexatious litigant. (Declaration of William H. Forman (attached hereto as "**Exhibit 1,**" hereinafter, "Forman Dec."), Ex. A thereto (CSI 10/2023 *Haney* Status Report at 1-2, and n. 2.) More importantly, his allegations about the *Haney* arbitration are demonstrably false. *See* Forman Dec., Ex. A, at 2-3; Forman Dec., Ex. B (6/4/24 CSI *Haney* Status Report, at 4).[2] The Los Angeles Superior Court took such a skeptical view of Berry's pointless and self-serving status reports that it granted the Church's request that Berry not be permitted to file any further status reports. Forman Dec., Ex. C.

None of what Plaintiffs say about *Haney* is relevant to their Motion. It does show, however, that Plaintiffs will say anything to this Court to defame the Church and inflame the Court's passions, all in an effort to distract the Court from applying the law. Along the same lines, Plaintiffs continue to argue their claims of duress and fraud somehow command departure from binding precedent. (Doc. 196 at 9.)

---

[2] Berry's pointless and self-serving status reports became such a burden to the Los Angeles Superior Court that the judge assigned to *Haney* granted the Church's request that Berry not be permitted to file any further status reports. Forman Dec., Ex. C.

The legal question at hand – who decides claims of duress and fraud – does not turn on the merits of those claims.

But as Plaintiffs' have raised the merits, Defendants cannot let Plaintiffs' false, malicious and cynical claims go unchecked. As members of the Sea Org, Plaintiffs made a religious commitment and voluntarily served for over a decade on the *Freewinds*. They were not "trafficked" or subject to duress, but came and went as they pleased. The ship's log shows that Plaintiffs disembarked and re-embarked the *Freewinds* more than 3,000 times over the course of their service in the Church's religious order. Forman Dec. ¶ 7. Contemporaneous photographs document Plaintiffs' travels throughout the Caribbean and abroad, including vacations and days off work, belying their claims. *Id*. As the Court found in its Order, "Plaintiffs signed multiple agreements containing arbitration provisions over the years, each initialing next to the arbitration provisions themselves." (Doc. 188 at 9.) Those agreements embraced and described the terms of their religious agreements – their service in the Sea Org. The contemporaneous documentary record eviscerates Plaintiffs' false claims that they had no idea what they were signing, or that they could not leave the *Freewinds* without signing the operative agreements.

Plaintiffs' recycled arguments and mischaracterization of *Suski* do not meet the high standard for reconsideration. The motion should be denied so that this case can finally proceed to resolution on the merits, as the parties agreed, in arbitration.

## III.   LEGAL STANDARD.

The decision whether to grant or deny a motion to reconsider is at the discretion of the Court. *American Home Assurance Co. v. Glenn Estess & Assoc.*, 763 F.2d 1237, 1238–39 (11th Cir. 1985). A motion to reconsider must demonstrate why the court should reconsider its decision and "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *See Cover v. Wal-Mart Stores, Inc.*, 148 F.R.D. 294, 295 (M.D. Fla. 1993) (citation omitted). In the interests of finality and conservation of scarce judicial resources, reconsideration is an "extraordinary remedy to be employed sparingly." *Lamar Advert. of Mobile, Inc. v. City of Lakeland, Fla.*, 189 F.R.D. 480, 489 (M.D. Fla. 1999) (citing *Pennsylvania Ins. Guar. Ass'n v. Trabosh*, 812 F.Supp. 522, 524 (E.D.Pa.1992)). The movant must demonstrate "new evidence, an intervening change in controlling law, or the need to correct clear error or manifest injustice." *United States v. Barriera-Vera*, 2022 WL 1131154, at *1 (M.D. Fla. Mar. 21, 2022).

"In order to reconsider a judgment there must be a reason why the court should reconsider its prior decision, and the moving party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1373 (S.D. Fla. 2002) (denying motion to reconsider where new case did "not abrogate ... but appears to support and clarify the holding" of a prior case the court had already considered); *see also In re Checking Acct. Overdraft Litig.*, 2015 WL 12642011, at *1 (S.D. Fla. Aug. 21, 2015) (holding a motion for reconsideration

8

"must be denied unless the movant clearly establishes [] a material intervening change in controlling law[.]").

## IV.   ARGUMENT.

As discussed below, the Court should deny Plaintiffs' Motion for Reconsideration because *Suski* did not overturn the *Prima Paint* rule that the arbitration panel, and not the Court, must decide fraud and duress challenges directed to the validity of a contract containing an arbitration provision, even when such challenge would by implication invalidate the arbitration provision.

### A.   The State of the Law: Challenges to the Validity of a Contract as a Whole Are Reserved for the Arbitrator.

It is well-settled that challenges directed to the validity of a contract as a whole, such as duress, fraud in the inducement, or unconscionability, are for the arbitrator to decide, not the court. *Prima Paint*, 388 U.S. at 404; *Buckeye, 546* U.S. at 449 ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause within it, must go to the arbitrator[.]"). Only challenges directed specifically to the arbitration provision itself may be heard by the court in the first instance. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010).

This Court correctly applied these principles in its Order, finding that "Plaintiffs challenge the enrollment and departure agreements as a whole as entered into under duress – there are no factual allegations specific to the arbitration provisions themselves." (Doc. 188 at 14.) On this basis, the Court held that "controlling law on this point from the United States Supreme Court requires the issue of duress to be determined in the first instance by an arbitrator." (*Id.*) The

Court further noted that Plaintiffs' fraud allegations were governed by "the same analysis as the duress claim" under *Prima Paint*. (*Id.* at 14 n.8.)

The Eleventh Circuit has repeatedly reaffirmed that challenges to the validity of the entire contract, rather than the arbitration clause specifically, are for the arbitrator under *Prima Paint* and *Buckeye*. *See Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1294–95 (11th Cir. 2022); *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017). A validity challenge must be directed "specifically [to] the arbitration provision itself[.]" *Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202, 1208 (11th Cir. 2015) (citing *Rent-A-Center*, 561 U.S. at 71 ("[W]here the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract ... we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene.")); *see Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1148 (11th Cir. 2015) (citing *Rent-A-Center*). "And to 'directly' or 'specifically' challenge the validity or enforceability of a delegation agreement, it is not sufficient for a party to merely say the words, 'I am challenging the delegation provision. Challenging a delegation agreement is a matter of substance, not form." *Attix*, 35 F.4th at 1304 (adopting precedent of applying *Prima Paint* to challenges to delegation provisions within arbitration agreements).

### B.   *Suski* Did Not Overrule or Alter the *Prima Paint* Doctrine.

#### i.   The Facts and Holding of *Suski*.

Nothing in *Suski* undermines the settled law of *Prima Paint* or this Court's

application of *Prima Paint* to the facts at hand. *Suski* involved a customer who initiated an arbitration against defendant Coinbase over a sweepstakes. 144 S. Ct. at 1190-92. The parties' original User Agreement contained an arbitration clause, with a delegation provision giving the arbitrators the power to decide disputes over arbitrability. *Id.* However, when the customer opted into the sweepstakes, he agreed to the "Official Rules" of the sweepstakes. *Id.* at 1191. The Official Rules provided that California courts would have "exclusive jurisdiction" over any disputes regarding the sweepstakes. *Id.* at 1190–91. The ultimate question for the Supreme Court was therefore whether the California courts forum selection clause in the Official Rules superseded the delegation clauses of the arbitration provision in the User Agreement.

Petitioner Coinbase made several arguments for why the forum selection provision in the Official Rules did not supersede the arbitration provision in the User Agreement. One argument – which Coinbase did not even make in its opening brief in the Ninth Circuit – was that under *Prima Paint* only the arbitrators could decide which agreement controlled.[3] While disputing that *Prima Paint* even pertained to the facts, Respondents contended they had challenged the validity of the arbitration provision itself, arguing that "the Official Rules' forum selection clause superseded the User Agreement's delegation clause." *Id.* at 1193, 1194 n. 2 ("Respondents' District Court challenge was 'directed specifically to' the delegation

---

[3] "In fact, nowhere did Coinbase's opening brief [in the Ninth Circuit] cite *Prima Paint*, 388 U.S. 395, or *Rent-A-Center*, 561 U.S. 63." *Suski*, Brief for Respondents, 2024 WL 305381, at *16.

provision," citing *Rent-A-Center*).[4]

The Supreme Court joined with Respondents in doubting that the *Prima Paint* doctrine applied to the facts at hand, and expressed confusion as to what Coinbase was arguing. The Supreme Court noted, "Coinbase seems to concede [the] point" that the district court must determine in the first instance whether the parties "agreed to send the given dispute to arbitration," and quoted a statement from Coinbase's response brief: "'Coinbase agrees that the Court can and should assess whether the official rules displaced the parties' consent to have an arbitrator decide arbitrability.'" *Id.*

Turning to Coinbase's *Prima Paint* argument, the Supreme Court stated that it was "assuming without deciding" that the doctrine was even "implicated here." *Id.* at 1194.[5] The Court noted that under *Prima Paint* and *Buckeye*, "[A] party seeking to avoid the arbitration must directly challenge the arbitration or

---

[4] Respondents argued in the Supreme Court, "Respondents' delegation argument remains the same here as it was below; the Official Rules validly modified the User Agreements' delegation clauses [of the arbitration provision] for a limited purpose, under non-preempted State laws of interpretation. The Official Rules' clear and express terms suggest an intent for courts to resolve the parties' arbitrability dispute, their forum dispute, in this case." *Suski*, Respondent's Brief, 2024 WL 305381, at *18. In fact, the *Suski* Respondents embraced *Prima Paint* and the very argument Defendants have made throughout this case: "Unless the arbitration or delegation provisions *themselves* are subject to an affirmative defense, they remain enforceable." *Id.*, at 3 (emphasis added).

[5] The Supreme Court's "assuming without deciding" language flags the passage relied on by Plaintiffs as *dicta*, and thus not even new law. *Rudolph v. United States*, 92 F.4th 1038 (11th Cir. 2024) ("As a rule, a statement that neither constitutes the holding of a case, nor arises from a part of the opinion that is necessary to the holding of the case is *dicta*. And *dicta* is not binding on anyone for any purpose. Both of these points are crucial—not only to letting courts decide the cases before them, *but also to avoiding the risk that stray language will take on importance in a new context that its drafters could not have anticipated.*") (internal quotations and citations omitted) (emphasis added).

delegation clause, not just the contract as a whole." *Id.* Then, in the sole passage relied on by Plaintiffs in their Motion, the Supreme Court noted that such a direct challenge to an arbitration provision does not fail if it also could apply "equally" to the underlying contract including the arbitration provision. *Id.* (citing *Rent-A-Center*, 561 U.S. at 71). The Supreme Court cited to page 71 of *Rent-A-Center* for this formulation, which states, "Thus, in an employment contract many elements of alleged unconscionability applicable to the entire contract (outrageously low wages, for example) would not affect the agreement to arbitrate alone. But even where that is not the case—as in *Prima Paint* itself, where the alleged fraud that induced the whole contract *equally* induced the agreement to arbitrate which was part of that contract—we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene." *Rent-A-Center*, 561 U.S. at 71 (emphasis added).

Thus, *Suski* dealt with a challenge that was factually-specific to the arbitration provision: whether the forum selection clause in the second agreement (the Official Rules) invalidated the delegation clauses of the arbitration provision in the first agreement (the User Agreement). In addressing this specific challenge, the Supreme Court rejected Coinbase's strained and confusing argument that this direct challenge relying on the second agreement failed because it might also serve "equally" to invalidate the entirety of the first agreement. *Suski*, 144 S. Ct. at 1194. The Supreme Court's reliance on the specific passage in *Rent-A-Center* to reject Coinbase's argument shows that it was re-emphasizing – not abandoning – its

precedent that even "where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract" the law still requires "the *basis* of challenge to be directed specifically to the agreement to arbitrate..." *Rent-A-Center*, 561 U.S. at 71 (emphasis added); *see Suski*, 144 S. Ct. at 1194. In short, Plaintiffs have entirely misread *Suski*.

*Suski*, if anything, presents a scenario opposite from what this Court found. In *Suski*, the "basis of challenge" was directed to the arbitration provision – *i.e.*, the provision in the first agreement had been displaced in particular by a subsequent forum selection clause. It was of no moment that the challenge directed to the arbitration clause in the first agreement might also serve "equally" to displace the entire first agreement. Here, the basis of Plaintiffs' duress and fraud challenge is not directed towards the arbitration provision in particular. As the Court found, "Plaintiffs challenge the enrollment and departure agreements as a whole as entered into under duress – there are no factual allegations specific to the arbitration provisions themselves." (Doc. 188 at 14.)

> **ii.   Plaintiffs' Unsupported Interpretation of *Suski* Would Overturn *Prima Paint* and Reverse Engineer an Outcome Unintended by the Supreme Court.**

Critically, the Supreme Court did not even suggest that it was overruling *Prima Paint* and *Buckeye* on the question of who decides challenges to the validity of a contract as a whole. Indeed, the opinion does not discuss fraud, duress, unconscionability, or other defenses going to the validity of the parties' agreement. As noted, the Court expressed doubt that the issue before it – whether a subsequent

forum selection clause in a contract between the same parties superseded their prior arbitration provision – even implicated the *Prima Paint* line of cases. *Suski*, 144 S. Ct. at 1194.

It is simply not possible to conclude from *Suski* that the Supreme Court expressly intended to limit, much less overrule, the rule of *Prima Paint* and its progeny that fraud, duress, and unconscionability challenges to a contract as a whole should be heard by an arbitrator, even though such challenges could also invalidate an arbitration provision included in the underlying contract. As noted, the Supreme Court quoted from a passage from *Rent-A-Center* affirming this principle. *See id.*; *Rent-A-Center*, 561 U.S. at 71 ("[A]s in *Prima Paint* itself, *where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract*—we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene.") (emphasis added). Citing *with approval* blackletter law is not how the Supreme Court overrules such law. *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*.").

Yet Plaintiffs' argument would effectively eviscerate *Prima Paint* and lead to an outcome never intended by the Supreme Court. Plaintiffs' transparent attempt to apply a tortured reading of *Suski* to produce an unintended result is clear from their misleading summary of its holding: "In other words, under *Suski*, Plaintiffs did not have to raise 'factual allegations specific to the arbitration provisions

themselves,' as this Court required. Order, at 14. It was sufficient that, like the plaintiffs in *Suski*, they argued that no enforceable arbitration agreement existed *because* no enforceable agreement existed at all." (Doc. 196 at 8 (emphasis added).) The use of "in other words," is the tell: no words from *Suski* support Plaintiffs' supposed paraphrasing of this decision. The Respondents in *Suski* unquestionably raised a direct, factual challenge to the enforcement of the arbitration provision: the later forum selection clause of the Official Rules superseded the arbitration provision of the User Agreement. That is *not* an argument the arbitration provision was invalid just "because" it was included in an unenforceable contract. Plaintiffs here then take this misstatement of the facts, and attempt to fashion it into the proposition – nowhere stated in *Suski* – that a court may determine that "no enforceable arbitration agreement existed *because* no enforceable agreement existed at all." (Doc. 196 at 8 (emphasis added).)

Plaintiffs' incorrect reformulation of *Suski*—that a court may determine that "no enforceable arbitration agreement existed *because* no enforceable agreement existed at all"—would obliterate *Prima Paint*. As this Court noted, *Prima Paint* involved a challenge to a contract on fraud-in-the-inducement grounds. The plaintiff in *Prima Paint* made the exact same argument that Plaintiffs make here: the arbitration provision within the agreements was unenforceable *because* it was included within a contract that allegedly was invalid due to fraud or duress. (*Compare Prima Paint*, 388 U.S. at 406 to Opposition to Motion to Compel Arbitration, Doc. 111, at 5-6 ("At the time they signed the Departure Agreements,

each Plaintiff was desperate to free themselves from confinement,… As a result, they had no choice but to sign the documents, *irrespective of their contents*[.]") (emphasis added).) And every case applying *Prima Paint* over the past six decades necessarily *rejects* the same type of challenge Plaintiffs raise here – that the arbitration clause cannot be enforced "because" (Doc. 196 at 8) it is included within an underlying agreement that allegedly was obtained through fraud or duress. *See, e.g.*, *Buckeye*, 546 U.S. at 445–446, *Rent-A-Center*, 561 U.S. at 72; *Parnell*, 804 F.3d at 1148; *Solymar Invs., Ltd. v. Banco Santander S.A.,* 672 F.3d 981, 998 (11th Cir. 2012).

Plaintiffs' reading of *Prima Paint* would cause chaos in a manner directly opposite to what the Court's narrow holding intended:

> Finally, Coinbase contends that our approach will invite chaos by facilitating challenges to delegation clauses. We do not believe that such chaos will follow. In cases where parties have agreed to only one contract, and that contract contains an arbitration clause with a delegation provision, then, absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration. But, where, as here, parties have agreed to two contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs.

*Suski*, 144 S. Ct. at 1194.

After several rounds of briefing, and careful consideration of the record, this Court determined that Plaintiffs duress and fraud challenges were not directed specifically to the arbitration provisions within the contracts at issue, but to the overall contracts. (Doc. 188 at 14.) Plaintiffs point to no new facts warranting that

the Court reconsider this factual finding based on the record.[6] The unambiguous law – before, during, and after *Suski* – is that such challenges are reserved for the arbitrators. As was the case in every previous brief they have filed both here and in the Eleventh Circuit, Plaintiffs **have not cited a single authority** holding that duress or fraud challenges to the *validity* of the entire contract containing an arbitration provision should be determined by a court and not the arbitrators. The Motion must be denied.

**C.  Plaintiffs' Request for a Trial Is Inappropriate and Untimely.**

As the Court previously determined, there can be neither discovery nor a trial on whether Plaintiffs entered into the numerous agreements due to fraud or duress as the arbitrators must resolve those issues under *Prima Paint*. Furthermore, Plaintiffs' request for a "trial" on such issues pursuant to 9 U.S.C. Section 4 (Doc. 196 at 10) is untimely to the extent Plaintiffs are requesting a jury trial. Pursuant to 9 U.S.C. Section 10, a party opposing enforcement of an agreement to arbitrate must demand a jury trial on any disputed factual issues at the time they file their opposition. Plaintiffs' Opposition to the Motion to Compel arbitration fails to request a jury trial (Doc. 111 at 20), nor have they identified any

---

[6] The Motion reiterates Plaintiffs' argument that they are specifically challenging the arbitration provisions because they recite such a challenge. But that is true for every party who challenges enforcement of an arbitration provision by asserting the overall agreement is invalid; the *Prima Paint* plaintiff after all was challenging enforcement of an arbitration provision. The challenge as "a matter of substance, not form," must be directed to the arbitration provision. *Attix*, 35 F.4th at 1304. Plaintiffs effectively admit that their challenge is not directed to the arbitration provision when they argue that the arbitration provisions are unenforceable "because" they are included in allegedly invalid contracts.

disputed factual issue that would properly be before the Court or a jury.

## V.   CONCLUSION.

Plaintiffs have failed to establish any intervening change in controlling law, or the need to correct clear error or manifest injustice, warranting reconsideration of the Court's order compelling arbitration. *Suski* addressed the narrow issue of whether a forum selection clause in a subsequent contract between the contracting parties designating exclusive jurisdiction of California courts supersedes their arbitration provision in a prior contract. It did not silently overrule decades of precedent holding that challenges directed to the validity of the entire contract, and not also specifically to the arbitration provision itself, are for the arbitrator. Plaintiffs have failed to meet their burden of showing a change in law of "a strongly convincing nature to induce the court to reverse its prior decision." *Ashland Equities*, 181 F. Supp. 2d at 1373 (citation omitted).

The Court should summarily deny the motion for reconsideration and allow this matter to finally proceed to resolution on the merits in arbitration, as the parties agreed and the Federal Arbitration Act requires. Plaintiffs' frivolous delay contravenes the "liberal federal policy favoring arbitration agreements[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The Court thus should immediately reject Plaintiffs' dilatory tactics and once more enforce the arbitration provisions to which they assented.

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for reconsideration.

Dated: July 9, 2024

Respectfully submitted,

/s/ Gustavo J. Membiela
GUSTAVO J. MEMBIELA
(FBN: 513555)

**Winston & Strawn, LLP**
200 South Biscayne Boulevard
Suite 2400
Miami, FL 33131-5341
Tel: 305.910.0717
Fax: 305.910.0505
gmembiela@winston.com

and

William H. Forman (*pro hac vice*)
**Winston & Strawn, LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
whforman@winston.com
Tel: 213.615.1992
Fax: 213.615.1750
*Attorneys for Defendant Church of
Scientology International*

/s/Christopher G. Oprison
Christopher G. Oprison (FBN: 0122080)

**DLA Piper, LLP (US)**
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131-5341
Tel: 305.423.8500
Fax: 305.437.8131
chris.oprison@dlapiper.com
*Attorneys for Defendant Religious
Technology Center*

/s/ Charles M. Harris, Jr.
Charles M. Harris (FBN: 967459)

**Trenan Law**
200 Central Avenue, Suite 1600
St. Petersburg, FL 33701
Tel: 727.896.7171
Fax: 727.822.8048
charris@trenam.com
gkesinger@trenam.com
*Attorneys for Defendants Church of
Scientology Flag Service
Organization, Inc., and Church of
Scientology Flag Ship Service
Organization, Inc.*

/s/ David B. Weinstein
David B. Weinstein (FBN: 604410)

**Greenberg Traurig, P.A.**
Bank of America Plaza
101 E. Kennedy Blvd., Suite 1900
Tampa, FL 33602
Tel: 813.318.5700
Fax: 813.318.5900
weinsteind@gtlaw.com
*Attorneys for Defendant Church of
Scientology Flag Ship Service
Organization, Inc.*

/s/Robert V. Potter, Jr.
ROBERT V. POTTER, Jr. (FBN:
363006)

**Johnson Pope Bokor Ruppel &
Burns, LLP**
911 Chestnut Street
Clearwater, FL 33756
Tel: 727.461.1818
BobP@jpfirm.com
*Attorneys for Defendant IAS
Administrations*