UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAWAIN BAXTER, LAURA
BAXTER, and VALESKA PARIS,

    Plaintiffs,

v.                                        Case No: 8:22-cv-986-TPB-JSS

DAVID MISCAVIGE, CHURCH OF
SCIENTOLOGY INTERNATIONAL,
INC., RELIGIOUS TECHNOLOGY
CENTER, INC., IAS
ADMINISTRATIONS, INC.,
CHURCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, INC.,
and CHURCH OF SCIENTOLOGY
FLAG SHIP SERVICE
ORGANIZATION, INC.,

    Defendants.
_____/

## ORDER DENYING MOTION FOR RECONSIDERATION

This matter is before the Court on Plaintiffs' "Motion for Reconsideration Under Fed. R. Civ. P. 54(b) Due to Intervening Change in Controlling Law," filed by counsel on June 25, 2024. (Doc. 196). On July 9, 2024, Defendants Church of Scientology International, Inc., Religious Technology Center, Inc., IAS Administrations, Inc., Church of Scientology Flag Service Organization, Inc., and Church of Scientology Flag Ship Service Organization, Inc., filed a response in opposition to the motion, and Defendant David Miscavige joined in that opposition (Docs. 197; 198). After reviewing the motion, response, court file, and the record, the Court finds as follows:

## Background

Plaintiffs are former members of the Church of Scientology. They were introduced to Scientology as children by their parents, and they remained active in Scientology as adults. As practicing Scientologists, they served for over a decade as members of the Sea Organization ("Sea Org"), which is described as a religious order within the larger Scientology religion. Plaintiffs bring this action pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1581-1597, alleging that Defendants coerced persons, including Plaintiffs, to join Sea Org and provide unpaid labor and services on a 10,328-ton cruise ship vessel known as the *Freewinds*, where Defendants knowingly obtained valuable benefits including financial enrichment. Plaintiffs allege that *Freewinds* frequently sailed to nations where anti-trafficking measures were weak to avoid legal repercussions, and it has never docked at any port in the United States or even entered the territorial waters of the United States.

Plaintiffs allege they were forced by their parents to join the Church of Scientology as children, where they were "indoctrinated, manipulated, and pressured into coercive circumstances from a young age." (Doc. 79 at ¶ 3). They now contend that Scientology was "a world filled with abuse, violence, intimidation, and fear." (*Id.* at ¶ 1). For a time, Plaintiffs were assigned to work on *Freewinds* under highly dangerous and abusive conditions, often working between 16-24 hours a day. In the amended complaint, Plaintiffs detail numerous incidents of punishment, humiliation, interrogation, and imprisonment that occurred while they were members of Sea Org, including various acts of mental, physical, and emotional abuse.

As members of Scientology, Plaintiffs signed pledges of "eternal service" to the religion and its goals.[1] In enrollment agreements signed in 2003 and 2004, Plaintiffs agreed to resolve disputes with the Church through binding religious arbitration. Plaintiffs were between the ages of roughly 19 and 25 – relatively young adults – when these arbitration agreements were signed. Gawain Baxter was born April 9, 1982. (Doc. 149 at 14). Laura Baxter was born on October 25, 1984. (*Id.*). And Valeska Paris was born in 1978. (*Id.*). Plaintiffs later left *Freewinds*, and they executed agreements to arbitrate then as well – Paris in 2007, and the Baxters in 2012. Paris, when she was roughly 31 years of age, signed another agreement and release in 2009 that included an arbitration provision. Similarly, the Baxters signed additional agreements, which included arbitration provisions, in December 2015 when they were roughly 33 and 31 years of age respectively.

On March 31, 2023, the Court granted Defendants' motions to compel arbitration to the extent that the Court found that Defendants may enforce the arbitration agreements in this case. (Doc. 188). Most significantly as to the pending motion, the Court ruled that only an arbitrator could resolve Plaintiffs' arguments as to fraud, duress, and lack of mutual assent. Plaintiffs sought interlocutory review of the Court's decision, but the Eleventh Circuit Court of Appeals declined to grant review.

---

[1] In an affidavit supporting the motions to compel arbitration, Sarah Heller, a staff member of Church of Scientology Flag Service Organization, explains that the Sea Org is the religious order of Scientology and is composed of the most dedicated Scientologists – individuals who have dedicated themselves to the Sea Org "for a billion years," reflecting "both their dedication to their religion and their awareness of themselves as immortal spiritual beings who have lived countless lives and who will live again and again." (Doc. 84-1 at ¶ 15).

Plaintiffs now move for reconsideration of the Court's March 31, 2023, Order, due to an alleged intervening change in the law. Specifically, Plaintiffs argue that a recent decision from United States Supreme Court – *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186 (2024) – clarifies that the district court is responsible for resolving challenges of fraud, duress, and mutual assent in the first instance.

## Legal Standard

"District courts are afforded considerable discretion to reconsider prior decisions." *Daleiden v. Red Lambda, Inc.*, No. 6:20-cv-410-Orl-78GJK, 2020 WL 13119128, at *1 (M.D. Fla. June 22, 2020) (citations omitted). A court may modify or rescind an interlocutory or non-final order at any time before entry of final judgment. *See Greene v. JC Penney Life Ins. Co.*, 23 F. Supp. 2d 1351, 1352 (M.D. Fla. 1997) (citing *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir. 1970)). Courts within this district recognize "three grounds justifying reconsideration of an order: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *Daleiden*, 2020 WL 13119128, at *1 (citing *McGuire v. Ryland Grp., Inc.*, 497 F. Supp. 2d 1356, 1358 (M.D. Fla. 2007); *Montgomery v. Fla. First Fin. Grp., Inc.*, No. 6:06-cv-1639-Orl-31KRS, 2007 WL 2096975, at *1 (M.D. Fla. July 20, 2007)). That being said, reconsideration of a previous order presents an extraordinary remedy "and should be applied sparingly." *Id.* (quoting *Scelta v. Delicatessan Support Servs., Inc.*, 89 F. Supp. 2d 1311, 1320 (M.D. Fla. 2000)).

## Analysis

Plaintiffs argue that the Supreme Court's decision in *Coinbase* constitutes an intervening change in the law because it clarifies that a district court must resolve all fraud and duress challenges before arbitration is compelled. Defendants contend that *Coinbase* does not constitute an intervening change in the law because the Supreme Court simply decided that when parties agree to arbitrate a dispute in one contract, and then later agree not to arbitrate a dispute in a second contract, the court should decide which of those contracts controls when deciding a motion to compel arbitration.

Upon careful consideration, the Court concludes that, contrary to Plaintiffs' position, *Coinbase* does not constitute an intervening change in the law that would warrant reconsideration. In *Coinbase*, the Supreme Court considered who should decide the issue of arbitrability in the event of two conflicting contracts – one with an arbitration provision and one without an arbitration provision. The Supreme Court specifically noted that if the agreement with a delegation provision sending the case to arbitration "were the only contract at issue, we would not be deciding this case, since the Arbitration Agreement quite clearly sends to arbitration disputes between Coinbase and its users. . ." *Coinbase*, 144 S. Ct. at 1191. And the Supreme Court reiterated that "[i]n cases where parties have agreed to only one contract, and that contract contains an arbitration clause with a delegation provision, then, absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration." *Id*. at 1194.

In the instant case, although there are multiple arbitration agreements, *none conflict on this issue*. Each agreement quite clearly sends disputes – including fraud

and duress challenges – to the arbitrator.  To be clear, *Coinbase's* holding does not constitute an intervening change in the law because its holding corresponds to a unique factual scenario that is not presented here, and *Coinbase* otherwise agrees with the well-established holdings of *Buckeye* and *Prima Paint*.  Plaintiffs' motion for reconsideration is therefore denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

1. Plaintiffs' "Motion for Reconsideration Under Fed. R. Civ. P. 54(b) Due to Intervening Change in Controlling Law" (Doc. 196) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 31st day of July, 2024.

TOM BARBER
UNITED STATES DISTRICT JUDGE