GAWAIN BAXTER, LAURA BAXTER
and VALESKA PARIS,

       Plaintiffs,

v.

DAVID MISCAVIGE; CHURCH OF
SCIENTOLOGY INTERNATIONAL;
RELIGIOUS TECHNOLOGY CENTER;
IAS ADMINISTRATIONS, INC.; CHURCH
OF SCIENTOLOGY FLAG SERVICE
ORGANIZATION, INC.; and CHURCH OF
SCIENTOLOGY FLAG SHIP SERVICE
ORGANIZATION, INC.,

       Defendants.

_____/

Case No. 8:22-cv-00986-TPB-SPF

## DECLARATION OF CHARLES M. HARRIS, JR. IN SUPPORT OF CHURCH OF SCIENTOLOGY INTERNATIONAL AND CHURCH OF SCIENTOLOGY FLAG SERVICE ORGANIZATION, INC.'S RESPONSE TO PLAINTIFFS' SECOND MOTION FOR RECONSIDERATION

Charles M. Harris, Jr. hereby states and declares as follows:

1. I am over 18 years of age, and I have personal knowledge of the facts and statements set forth in this Declaration.

2. I am a member of the Florida Bar in good standing; my Florida Bar No. is 967459.

3.     I am a shareholder at the law firm of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A. ("Trenam Law"), and my office is located at 200 Central Avenue, Suite 1600, St. Petersburg, Florida 33701.

4.     I am lead counsel for Defendant Church of Scientology Flag Service Organization, Inc. ("FSO" or "Defendant") in the above-captioned matter.

5.     I submit this Declaration in support of FSO's Response in Opposition to Plaintiffs' Second Motion for Reconsideration (the "Response in Opposition"), filed contemporaneously.

6.     The arbitration commenced on January 19, 2026, and continued for three weeks through February 6, 2026. I was present at the arbitration for the entirety of the proceedings, with the exception of approximately six (6) hours on February 3, 2026, during which time a colleague from my firm attended in my place.   The proceedings began at 10:00 a.m. each morning and concluded at some time between 6:00 p.m. and 7:00 p.m. each evening, representing an investment of roughly 128 hours of time over the three-week period.

7.     Counsel for the parties, including myself, were not permitted to be present in the arbitration hearing itself. No attorneys were present during the proceedings before the arbitration panel.

8.     Although counsel were not permitted to attend the arbitration proceedings, a suite of rooms was made available throughout the entire three-week period for Plaintiffs' counsel. Based on my observations, Plaintiffs' counsel utilized those rooms to meet with their clients during the arbitration, and such meetings

2

occurred multiple times each day. Also based on my observations, more than thirty witnesses entered the arbitration proceedings to give testimony over the three-week period.

9. During the three-week arbitration period, Plaintiffs were represented by multiple attorneys. In total, I observed seven (7) different attorneys appear on behalf of Plaintiffs at various times. On some days there were as many as three or four attorneys present, and on other days one or two, but there was always at least one attorney present and available to Plaintiffs throughout the proceedings. Plaintiffs' attorneys could have conveyed any issues or complaints to me at any time during the arbitration but did not.

10. During the arbitration, I did not observe any interaction between the arbitration panel and any respondent representatives. The arbitrators and respondent representatives were assigned separate offices, and I did not observe them eating lunch together.

11. On Friday, February 6, 2026, the arbitration concluded for the day at approximately 6:00 p.m. I understood that it would recommence on Monday, February 9, 2026, at 10:00 a.m. to continue the presentation of evidence.

12. Neither Plaintiffs nor their counsel communicated to me—whether orally, by email, or otherwise—that they did not intend to return for the continuation of the arbitration proceedings on February 9, 2026. Nor did they indicate to me that they had requested any adjournment, continuance, or alternative scheduling from the arbitration panel.

13. I returned on February 9, 2026, with the expectation that the arbitration would resume as planned and that Plaintiffs would continue their participation in the proceedings. Security personnel, respondent representatives, and the arbitrators were also present in anticipation of the continuation of the arbitration proceedings.

14. Neither Plaintiffs nor their counsel appeared for the continuation of the arbitration proceedings on that date or any time thereafter. FSO showed me a letter dated February 10, 2026, from the International Justice Chief ("IJC") that was sent to Plaintiffs requesting dates to complete the arbitration. Attached as Exhibit A is a true and correct copy of the February 10, 2026 letter that I was shown. I understand that Plaintiffs did not respond.

15. Plaintiffs' complaint about the length of the arbitration was addressed in a letter of April 4, 2025 (from the IJC), which was shown contemporaneously to me by FSO. Attached as Exhibit B is a true and correct copy of the letter that was shown to me.

16. After abandoning the arbitration, on March 2, 2026, Plaintiffs' counsel communicated to me that Plaintiffs intended to file the present Motion for Reconsideration.

17. Following that communication, I made myself available for a meet and confer regarding the anticipated motion. Despite discussing Plaintiffs' proposed motion for over two hours, Plaintiffs' counsel refused to disclose the basis for that motion other than alleged "due process" violations. On March 10, 2026, and on March 16, 2026, I wrote to Mr. Hansel that his failure to disclose the basis of Plaintiffs' proposed motion

4

for reconsideration did not satisfy his meet and confer obligations. Attached as Exhibits C & D are those communications.

18. Because Scientology facilities have experienced numerous security threats, I understand it is common practice for FSO and Scientology-related entities to vigilantly safeguard its parishioners, staff, and property by using both in-house security and private security firms. I was made aware of Plaintiffs' demand that no Scientology security personnel touch Plaintiffs as part of their security measures. Therefore, I was tasked with retaining an outside security firm, which had no affiliation whatsoever with the Church of Scientology, to provide security throughout the entire arbitration.

Under penalties of perjury, I declare that I have read the foregoing Declaration of Charles M. Harris, Jr. and that the facts stated in it are true to the best of my knowledge and belief.

Executed on April 7, 2026

Charles M. Harris, Jr.

## CERTIFICATE OF SERVICE

I certify that on April 7, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a true and correct copy to all counsel of record.

/s/ Charles M. Harris, Jr.
Attorney

EXHIBIT A



# CHURCH OF SCIENTOLOGY
### I N T E R N A T I O N A L

### I N T E R N A T I O N A L   J U S T I C E   C H I E F

February 10, 2026

Gawain and Laura Baxter
Valeska Paris
3003 W. Olympic Blvd
Suite 205, Unit 72
Los Angeles, CA 90006-6511

**BY U.S. MAIL**

Gawain and Laura Baxter
Valeska Paris
15 Buttercup Way
Beeliar WA 6164
Australia

**BY FEDEX INTERNATIONAL PRIORITY EXPRESS**

RE: ARBITRATION STATUS AND NEXT STEPS

Dear Mr. and Mrs. Baxter and Ms. Paris,

You requested that an arbitration be convened, and an Arbitration Committee ("Committee") was duly impaneled to hear your claims in Clearwater, Florida.

I have been informed by the Arbitration Committee that it devoted substantial time and attention to these proceedings and advised you that the arbitration was not complete and would continue until all evidence and testimony were fully reviewed. I am also informed that the Committee advised you that additional evidence remained to be entered and reviewed, further witnesses and testimony were to be heard, and questions remained for you, all of which were required in order for the Committee to complete the arbitration. I am informed as well that the Committee advised you that it intended to continue and complete the arbitration while you were in the United States so that it could be concluded without the need for a return at a later date. I am further informed that the Committee advised you that if at any time you made yourself unavailable before the arbitration was concluded, the arbitration

would remain open until such time as it could be concluded in person, in Clearwater, Florida.

Notwithstanding this, when the hearings were scheduled to resume on Monday, you did not appear.

**Accordingly, the arbitration has not been concluded and remains open.**

Please advise whether you are withdrawing your request for arbitration.

If you are not withdrawing your request, please provide multiple dates on which you are available to return to Clearwater, Florida so that the arbitration may be completed. Upon receipt of your response, those dates will be provided to the Arbitration Committee so that arrangements may be coordinated.

Sincerely,

Mike Ellis
International Justice Chief

EXHIBIT B





## CHURCH OF SCIENTOLOGY
### I N T E R N A T I O N A L

INTERNATIONAL JUSTICE CHIEF

April 4, 2025

Gawain Baxter
Laura Baxter
Valeska Paris
3003 W. Olympic Blvd
Suite 205, Unit 72
Los Angeles, CA 90006-6511

**VIA U.S. MAIL**

RE: ARBITRATION

Dear Mr. and Mrs. Baxter and Ms. Paris,

I am in receipt of your letter dated March 4, 2025.

You are mistaken in your characterization of my role in this matter. In the agreements all three of you signed, you agreed to submit your dispute *"to the International Justice Chief of the Mother Church of the Scientology religion, Church of Scientology International ('IJC') or his or her designee."* I am facilitating the religious arbitration you requested.

All correspondence regarding the arbitration should continue to be directed to me. It is the arbitrators who will then hear your claims, including the questions you raise regarding your agreements.

You nominated one of the arbitrators and, as I advised, that arbitrator has accepted your nomination. The arbitrators have requested their names be kept confidential. You earlier discussed this matter in the press in violation of your agreements and the arbitrators are concerned that their identities not be made public as arbitrators in another matter were harassed after their names were publicly disclosed.

The arbitration will be held in Clearwater, Florida. You chose Florida as the venue for your lawsuit. Further, based on your statement of claims, it appears the majority of the witnesses will be located in or close to Florida.

Thank you for confirming June 30-July 3, 2025, will work for you to commence the arbitration. The arbitration committee is not available on the May dates you propose. May 9 is a major Scientology holiday as you well know.

I reject your assertion that there is an arbitrary length for the arbitration. There is none. The arbitration will take as long as necessary to hear all of your claims. All parties will have an opportunity to present evidence and witnesses will be heard.

You should set aside plenty of time for the arbitration. If more time is needed than has been allocated, you and the arbitrators may agree on mutually workable dates to continue the arbitration.

As to your repeated secular legal objections and inaccurate assertions about Scientology religious arbitration including having your lawyers participate, I direct your attention to my previous letters of February 2, 2025, and November 30, 2024, which addressed those concerns.

The documents you append to your letter were clearly written by your attorney. You are familiar with Scientology Ethics and Justice procedures and are well aware that these types of documents are not part of Scientology Justice procedures. Nonetheless, your correspondence will be provided to the arbitrators.

I remind you that this is a Scientology arbitration. The three of you have repeatedly agreed to "*pursue resolution of that dispute, claim or controversy solely and exclusively through Scientology's internal Ethics, Justice and binding religious arbitration procedures.*" The arbitrators will hear and consider any dispute, claim or controversy you wish to present. That includes any matters in your letters you wish to raise.

I further remind you that the individuals who will arbitrate your dispute are not full-time arbitrators and they have other commitments. The arbitrators will be as accommodating as possible to you, and I would expect you to do the same for the arbitrators.

It took nearly two years from the time the Court ordered you to abide by your agreements for you to request arbitration. The religious arbitration you requested has now been scheduled.

**Please confirm you will be in Clearwater June 30-July 3, 2025, to commence the arbitration.**

Sincerely,


Mike Ellis
International Justice Chief

EXHIBIT C

**Charles M. Harris**

| | |
|---|---|
| **From:** | Charles M. Harris |
| **Sent:** | Tuesday, March 10, 2026 9:53 AM |
| **To:** | Hansel, Gregory P.; kdurham@wc.com; Bobp@jpfirm.com; 'brian.porter@gtlaw.com'; Brigid A. Merenda; Brigid.CechSamole@gtlaw.com; chris.oprison@us.dlapiper.com; WeinsteinD@GTlaw.com; Gmembiela@winston.com; janelly.crespo@dlapiper.com; Schifino, William; Joseph M. Terry - Williams & Connolly LLP (jterry@wc.com); Steinfeld, Jeff |
| **Cc:** | Manuel John Dominguez; Zahra R. Dean; Agnieszka M. Fryszman; Brendan Schneiderman; Shelby Leighton; Solomon, Shana M.; Quinby, Elizabeth F.; warren@wzimmermanlaw.com |
| **Subject:** | RE: Baxter et al. v. Miscavige, et al.: Case No. 8:22-cv-00986 (M.D. Fla.): Request to Meet and Confer |

Greg:

Your email is completely non-responsive to my request and fails to satisfy Local Rule 3.01(g).

The fact that our respective clients participated personally in proceedings in which we, their lawyers, did not, does not relieve you of your obligation to confer in good faith concerning (1) what new evidence you believe was revealed in that process, and (2) why that new evidence justifies reconsideration of the Court's order referring this matter to arbitration.

None of the defense counsel in this case are aware of any "new evidence" or other "relevant evidence" that would support a motion for reconsideration.

All of this is to say we cannot be prepared to confer with you in a good faith effort to resolve the matters raised in your motion if you will not tell us anything about the facts underlying that motion in advance of the call. And your refusal to tell us anything about the factual basis for your motion demonstrates that you are not prepared to confer in a good faith effort to resolve that motion.

If you will not confer in a good faith effort to resolve the motion before filing it, then you have not complied with Local Rule 3.01(g), and you cannot include with your motion a certificate of compliance with that rule.

We ask that you reconsider.

Charley

# EXHIBIT D



*Reply to: St. Petersburg*
DIRECT DIAL: (727) 820-3950
EMAIL ADDRESS:
charris@trenam.com

March 16, 2026

**VIA EMAIL AND US MAIL**

Gregory P. Hansel, Esquire
Preti Flaherty
P.O. Box 9546
Portland, ME 04112-9546
Ghansel@preti.com

RE:     *Baxter et al. v. Miscavige et al.*, USDC Florida Middle District Case No. 8:22-cv-00986-TPB-SPF

Mr. Hansel:

As you know, this firm represents Church of Scientology Flag Service Organization ("FSO"). This letter follows our call last Thursday, March 12, 2026.

Apart from your March 2, 2026, email announcing the Claimants' intention to seek reconsideration—for the third time—of the Court's March 31, 2023, order compelling arbitration of the claims asserted in the referenced lawsuit, that call was the very first communication the Respondents or their counsel had received from the Claimants or their counsel since the evening of Friday, February 6, 2026.

That Friday evening, February 6, 2026, was when the Claimants walked out of the arbitration proceedings they had initiated on October 4, 2024, nearly eighteen months after the Court had ordered the Claimants to pursue their claims in arbitration. That evening concluded three straight weeks of daily arbitration proceedings, conducted Monday through Friday, roughly eight hours each day, starting January 19, 2026.

The Claimants walked out of the arbitration proceedings that Friday evening knowing that all assembled were scheduled to return the following Monday morning to continue the proceedings to their conclusion. You were there, and you knew I was there the entire time, and yet you and the Claimants departed without one word to anyone of the Claimants' intention to not return. When the arbitrators and I and the others arrived on Monday, February 9, 2026, at the appointed time, you and your clients were not present and were nowhere to be found. And, we would find, no professional courtesy of any explanation was to follow. Only your March 2, 2026, email.

**TAMPA**
TEL: (813) 223-7474
101 E. KENNEDY BOULEVARD, STE. 2700
TAMPA, FLORIDA 33602

**ST. PETERSBURG**
TEL: (727) 898-7474
200 CENTRAL AVENUE, STE 1600
ST. PETERSBURG, FLORIDA 33701

**SARASOTA**
TEL: (941) 278-4301
1515 RINGLING BOULEVARD, STE 320
SARASOTA, FLORDA 34236

WWW.TRENAM.COM

In your March 2, 2026, email, you stated only the Claimants' intention to file a Rule 54(b) motion for reconsideration based on "new evidence," and requested that we schedule a call to "meet and confer," as needed to fulfill obligations under Local Rule 3.01(g) with respect to your Rule 54(b) motion. Your email provided no information about what "new evidence" had come to light, and you ignored our response requesting some explanation in advance of the "meet and confer" call concerning the factual basis for the Claimants' proposed reconsideration motion.

In our March 12, 2026, call, you described the putative factual basis supporting the Claimants' planned motion as the "cumulative effect of the deprivations of due process in the arbitration process."

While you and I were both on site for the three weeks that arbitration proceedings were held, you cannot represent what transpired during the actual arbitration because neither you nor I were present in the arbitration room and neither of us had any role nor involvement in the actual proceedings.

I do know what transpired outside of the arbitration room, however. During breaks in the arbitration, the Claimants met numerous times with you and other counsel who were present. If in fact there were alleged "due process" violations that you believe raised any extant legal issues, you could have brought them to my attention at any point during the arbitration. Indeed, my sole purpose for attending the arbitration was to be present because you and your team clearly were planning to be there, in part to field questions or stated concerns from you. You failed to raise any such issues with me at any point during the three weeks of arbitration proceedings. You said nothing, which leads one to conclude no "due process" or other violations occurred during the arbitration and that the Claimants raise these "concerns" now as a pretext to justify having failed to complete the arbitration with no notice to the panel or the other participants.

The Claimants' belated claims of "due process" violations are neither "new evidence" as required by Rule 54(b) nor are they violations at all; instead, it is clear the Claimants simply object to the Church's ecclesiastical procedures, which objections you previously raised in opposition to the motions to compel arbitration. And in rejecting those very same objections, Judge Barber made it perfectly clear that the Court cannot interfere with the Church's ecclesiastical procedures. *See, e.g.*, Dkt. 188 at 10–11 ("the First Amendment prevents the Court from resolving . . . controvers(ies) about internal church doctrines").

The Claimants' alleged "due process" claims are simply a pretext to avoid what Judge Barber ordered your clients to do three years ago: to submit their claims to religious arbitration. Instead of complying with that order, the Claimants simply abandoned the arbitration before it was completed. The Claimants' repeated attempts to involve the federal court, which has relinquished jurisdiction, are, at best, inappropriate and likely sanctionable. Each time you require the Respondents to expend funds unnecessarily. You have already gone to Court three times to avoid


TRENAM
LAW

participating in and completing the arbitration, first in opposing the motion to compel arbitration and twice on reconsideration motions. Now you threaten a third reconsideration motion, three years after Judge Barber ordered your clients to arbitrate, after the Claimants have simply abandoned the process they were ordered to complete.

We trust this letter makes FSO's position clear. Given the unequivocal record, any request for Court intervention would be frivolous and violate Rule 11, including its independent requirements that: (i) the legal contentions presented to the Court are warranted by existing law; and (ii) the factual contentions have evidentiary support. Any such action would also violate 28 U.S.C. Section 1927, which provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Nonetheless, if the Claimants do not desist from their pursuit of meritless claims, the Respondents are prepared to complete our meet and confer as required under Local Rule 3.01(g), on Friday, March 20, 2026, starting at 10 a.m. I will ask my assistant to circulate dial-in information for that meeting shortly.

The Respondents reserve all rights and waive none.

Sincerely,

Charles M. Harris

CMH/lcm

