# Exhibit 3

Gawain Baxter
Laura Baxter
Valeska Paris
Suite 205, Unit 72
3003 W. Olympic Blvd.
Los Angeles, CA 90006-6511

March 4, 2025

**VIA U.S. MAIL**

Mike Ellis, International Justice Chief
6331 Hollywood Boulevard
Los Angeles, CA 90028

> **RE:    Baxter, et. al. v. Church of Scientology International, Inc., et al., Arbitration before Church of Scientology International**

Dear Mr. Ellis:

We are writing because we have serious concerns about the letter we received on February 11 regarding the upcoming arbitration. There are a number of issues that need to be addressed at the outset of this arbitration, and we would appreciate your prompt response.

First, please tell us the names of the arbitrators prior to the hearing. From our review of the agreements we signed, there is nothing in any of them that allows for the arbitrators' identities to be kept secret from us while the Respondents have access to that information, which is clearly the case as your letter is on the letterhead of CSI, one of the Respondents in this case.  What is the basis for keeping their names secret from us? We ask you to provide us the names of the arbitrators or state the reason why the names of the arbitrators cannot be given to us.

Relatedly, it was our understanding based on your past communications that it is the panel of arbitrators, and not the IJC, that is authorized to rule on issues that arise in this arbitration— such as our right to counsel, the rules of procedure, and the location and scheduling of any hearings. Because you have not provided us with the contact information of the arbitrators, we are raising these issues with you, but want to make clear that, under the procedure in the arbitration agreements it appears you are following, you have no authority to rule on these questions. Again, for precisely this reason, we would like clarity as to which procedures apply to the arbitration.

Second, the arbitration should take place remotely, as requiring us to travel thousands of miles is not reasonable. It's not just about us: there are many potential witnesses located in Australia, and it will cost thousands of dollars for all of us to travel back and forth. Stating that we must come to Clearwater is particularly confusing given that Scientology told the court that the

March 4, 2025
Page 2

arbitrators are able to "travel anywhere." If that is the case, there should be no issue holding the proceedings virtually, or accommodating a location that minimizes hardship on us.

Additionally, we would like to understand the basis for holding the arbitration in Clearwater specifically. None of the agreements provide for arbitration there. The only specific venue mentioned in any of the agreements is California, as the agreements you appear to be applying include a California choice of law provision and some mention a Los Angeles location should this matter go to AAA/JAMS arbitration. If anything, California would be more convenient than Clearwater, since we and many of the other witnesses live in Australia. Please clarify how the location of Clearwater was determined.

Regardless of the city in which we have any arbitration, if you insist that it be in person, holding it on Scientology's own property will prevent us from receiving a fair hearing. Rather, we request it take place on neutral ground. Please confirm that we can have it in a conference center, hotel room, or a law firm office. If you reject this request, please cite what provision of the contracts we allegedly signed states that it must take place on Scientology grounds.

Regarding timing, we believe the proposed timeline is unnecessarily delayed, and request scheduling this hearing sooner. Specifically, we are available on May 5 to May 9. If those dates do not work, we would choose June 30 to July 3 or July 14 to July 18.

Can you also explain how you arrived at the conclusion that a mere few days is appropriate for this hearing? What exactly will happen at this hearing? Is it an initial conference, or is it the final arbitration hearing? Please let us know if you expect to try the whole case in just a few days, or if you anticipate further hearings. The first question for the arbitrators to decide is whether any arbitration agreements were validly formed, including which ones may apply, if any; whether they were signed under duress; whether there was fraud in the execution; whether there was mutual assent; and whether the agreements are enforceable against us. Accordingly, we believe any hearing should start with that question before reaching the merits.

Regardless of the scope of the hearing, we cannot meaningfully participate without knowing the logistics of how it will work. We request a (preferably virtual) pre-hearing conference or meeting with the panel of arbitrators to discuss procedural details including representation by counsel;[1] applicable law; a deadline for Respondents to respond in writing to the Statement of Claim; discovery (*e.g.*, exchange of documents and electronically stored information, interrogatories and depositions); motions; subpoenas of third parties; fact and expert witnesses; issues to be tried in the final hearing; whether fact and expert witnesses will appear in person; the right to cross-examination; our request for court reporters at all hearings;[2] the use of

---

[1] We request that our attorneys be allowed in all hearings regarding the arbitration. If you are going to continue refusing that demand—despite no language in any of the contracts mentioning it—please tell us where our attorneys will be permitted to be during the proceedings.

[2] We still need confirmation regarding the recordkeeping for the arbitration. We request that a stenographer or court reporter attend and make a record of all hearings. Please confirm whether those arrangements are being made.

March 4, 2025
Page 3

videoconference hearings; and the location of any in-person hearings. Attached are our Requests for Production and Interrogatories to the Respondents, which we are also sending to Respondents directly.  We ask that the pre-hearing conference be scheduled 60 days before any hearing, and that the documents described and interrogatory responses we requested in the attached list be provided to us 30 days before the hearing to give us time to depose witnesses and prepare for the hearing.

As part of the attached requests, we still have no information on what substantive laws or rules of procedure will be applied at the arbitration. This is an important issue that must be addressed as soon as possible. Please confirm whether the panel of arbitrators will be applying federal (and, where applicable, state) law to decide whether the purported arbitration agreements are valid and enforceable and to resolve our claims on the merits. If not, please provide any substantive laws or procedures that will govern the arbitration so we can fully understand the process and the law that Scientology will supposedly be applying to our case.

Your prompt responses to these questions will help us move forward more efficiently. Please respond soon.

Sincerely,


*/s/Gawain Baxter*
Claimant

*/s/Laura Baxter*
Claimant

*/s/Valeska Paris*
Claimant


cc:    Church of Scientology International
       Religious Technology Center
       International Association of Scientologists Administrations
       Church of Scientology Flag Service Organization, Inc.
       Church of Scientology Flag Ship Service Organization, Inc.

# Exhibit 3-1

**CHURCH OF SCIENTOLOGY INTERNATIONAL**

|  | |
|---|---|
| GAWAIN BAXTER, LAURA BAXTER and VALESKA PARIS, | : |
| Claimants, | : |
| v. | : |
| DAVID MISCAVIGE; CHURCH OF SCIENTOLOGY INTERNATIONAL, INC.; RELIGIOUS TECHNOLOGY CENTER, INC.; IAS ADMINISTRATIONS, INC.; CHURCH OF SCIENTOLOGY FLAG SERVICE ORGANIZATION, INC.; AND CHURCH OF SCIENTOLOGY FLAG SHIP SERVICE ORGANIZATION, INC., | : |
| Respondents. | : |

**CLAIMANTS' INTERROGATORIES TO ALL RESPONDENTS**

1.    Identify all persons who you believe have any information or knowledge about records relating to Claimants, including internal files, documents, communications, photographs, video recordings, and audio recordings.

2.    Identify all persons who you believe have any information or knowledge about travel records relating to Claimants, including flight and accommodation records.

3.    Identify all persons who you believe have any information or knowledge about communications relating to Claimants, including communications to and from David Miscavige.

4. Identify all persons who you believe have any information or knowledge about payment or compensation made by Respondents to Claimants during the relevant time period, and state with specificity what information and knowledge you believe they have.

5. Identify all persons who you believe have any information or knowledge about labor and services performed by Claimants for Respondents, including records of hours worked, work assignments, and tasks performed.

6. Identify all persons who you believe have any information or knowledge about documents signed by Claimants.

7. Identify all persons who you believe have any information or knowledge about documents signed by Claimants, including any related communications, photographs, video recordings, or audio recordings.

8. Identify all persons who you believe have any information or knowledge about the Enrollment Agreements and Covenants signed by Gawain Baxter on July 29, 2001 and February 13, 2003, by Laura Baxter on March 27, 2004 and September 12, 2004, and by Valeska Paris on May 10, 1996 and February 13, 2003, including all records related to the circumstances under which these agreements were signed and any related video or audio recordings.

9. Identify all persons who you believe have any information or knowledge about conditions experienced by Gawain Baxter, Laura Baxter, and Valeska Paris while aboard the Freewinds, including but not limited to confinement, forced labor, crew work assignments, surveillance, sleep deprivation, discipline, and punishment.

10. Identify all persons who you believe have any information or knowledge about mistreatment or physical or sexual abuse or assault of Claimants, including any related reports or communications.

11.    Identify all persons who you believe have any information or knowledge about raiding, breaking into, sneaking into, forcibly entering, or otherwise entering Claimants' residences without permission, whether on the Freewinds or otherwise.

12.    Identify all persons who you believe have any information or knowledge about policies related to the conduct alleged in the Statement of Claim, including but not limited to: payment or compensation of Sea Org members; labor performed by Sea Org members; surveilling, disciplining, or punishing Sea Org members; the confiscation of personal property or documents (including passports, immigration documents, and identification documents) of Sea Org members; the process for a Sea Org member to leave the Freewinds and/or Scientology; and "fair gaming."

13.    Identify all persons who you believe have any information or knowledge about Scientology laws or procedures that Claimants were shown, taught, or agreed to.

14.    Identify all persons who you believe have any information or knowledge about records relating to Claimants' auditing sessions, including auditors' notes, audio recordings, and video recordings.

15.    Identify all persons who you believe have any information or knowledge about confessions or admissions made or written by Claimants.

16.    Identify all persons who you believe have any information or knowledge about the Pre-Clear ("PC") folders maintained for each Claimant.

17.    Identify all persons who you believe have any information or knowledge about ethics folders maintained for each Claimant, including all records of ethics handlings.

18.    Identify all persons who you believe have any information or knowledge about "overts and withholds" or "OWs" relating to Claimants.

19. Identify all persons who you believe have any information or knowledge about "success stories" relating to Claimants.

20. Identify all persons who you believe have any information or knowledge about "lower conditions," "security checks," "handlings," "ethics investigations," and interrogations of Claimants.

21. Identify all persons who you believe have any information or knowledge about orders issued by Respondents relating to Claimants, including "non-enturbulation" orders and orders posted on the Freewinds' notice board.

22. Identify all persons who you believe have any information or knowledge about the EPF program completed by any Claimant.

23. Identify all persons who you believe have any information or knowledge about letters written by Claimants while at Flag Base or aboard the Freewinds, including but not limited to the letters written by Valeska Paris to Shelly Miscavige and Eran Bucci and the letter written by Gawain Baxter to Javier Martinez, and any related communications or records.

24. Identify all persons who you believe have any information or knowledge about the departures of Claimants from the Freewinds.

25. Identify all persons who you believe have any information or knowledge related to the circumstances under which Claimants were permitted to leave the Freewinds, including but not limited to any related policies, such as being sent to an RPF site for "rehabilitation," and any related to the pregnancy of any Claimant.

26. Identify all persons who you believe have any information or knowledge relating to the Departure Agreements signed by Claimants, including all records related to the circumstances under which the agreements were signed and any related video or audio recordings.

27.     Identify all persons who you believe have any information or knowledge about documents and data captured from claimants' computers while in the Sea Org.

28.     Identify all persons who you believe have any information or knowledge about records, including documents, communications, photographs, video recordings, and audio recordings relating to Valeska Paris while at "RFP ANZO" or in the Sea Org at ANZO.

29.     Identify all persons who you believe have any information or knowledge relating to any "fair gaming" of Claimants, including but not limited to surveillance, business interference, communications with Claimants' families, any contracting, interviewing, hiring, or payment to private investigators tasked with investigating or following Claimants, and any other intimidation or harassment of Claimants.

30.     Identify all persons who you believe have any information or knowledge about records and communications related to the creation and maintenance of the website http://www.valeskaparis.com.

31.     Identify all persons who you believe have any information or knowledge about organizational charts relating to each Respondent.

32.     Identify all persons who you believe have any information or knowledge related to any Claimant being declared a "suppressive person."

33.     Identify all persons who analyzed or investigated Plaintiff's claims as set forth in the Statement of Claims.

34.     State whether Defendants have had any contact with any of the persons identified above with respect to this litigation and/or arbitration.

# Exhibit 3-2

# CHURCH OF SCIENTOLOGY INTERNATIONAL

|  |  |
|---|---|
| GAWAIN BAXTER, LAURA BAXTER and VALESKA PARIS, | : |
|  | : |
| Claimants, | : |
|  | : |
| v. | : |
|  | : |
| DAVID MISCAVIGE; CHURCH OF SCIENTOLOGY INTERNATIONAL, INC.; RELIGIOUS TECHNOLOGY CENTER, INC.; IAS ADMINISTRATIONS, INC.; CHURCH OF SCIENTOLOGY FLAG SERVICE ORGANIZATION, INC.; and CHURCH OF SCIENTOLOGY FLAG SHIP SERVICE ORGANIZATION, INC., | : |
|  | : |
| Respondents. | : |

## CLAIMANTS' REQUEST FOR PRODUCTION OF DOCUMENTS TO ALL RESPONDENTS[1]

1.    All records relating to Claimants, including internal files, documents, communications, photographs, video recordings, and audio recordings.

2.    All travel records relating to Claimants, including flight and accommodation records.

3.    All communications relating to Claimants, including communications to and from David Miscavige.

---

[1] Unless otherwise stated, the relevant time period for these requests is from December 12, 1977, to present.

1

4. All records of payment or compensation made by Respondents to Claimants.

5. All records relating to labor and services performed by Claimants for Respondents, including records of hours worked, work assignments, and tasks performed.

6. All documents signed by Claimants.

7. All records related to documents signed by Claimants, including any related communications, photographs, video recordings, or audio recordings.

8. All records relating to the Enrollment Agreements and Covenants signed by Gawain Baxter on July 29, 2001, and February 13, 2003, by Laura Baxter on March 27, 2004, and September 12, 2004, and by Valeska Paris on May 10, 1996, and February 13, 2003, including all records related to the circumstances under which these agreements were signed and any related video or audio recordings.

9. All records related to conditions experienced by Gawain Baxter, Laura Baxter, and Valeska Paris while aboard the Freewinds, including but not limited to confinement, forced labor, crew work assignments, surveillance, sleep deprivation, discipline, and punishment.

10. All records relating to mistreatment or physical or sexual abuse or assault of Claimants, including any related reports or communications.

11. All records relating to raiding, breaking into, sneaking into, forcibly entering, or otherwise entering Claimants' residences without permission, whether on the Freewinds or otherwise.

12. Without respect to the relevant time period, all policies related to the conduct alleged in the Statement of Claim, including but not limited to: payment or compensation of Sea Org members; labor performed by Sea Org members; surveilling, disciplining, or punishing Sea Org members; the confiscation of personal property or documents (including passports, immigration documents, and identification documents) of Sea Org members; the process for a Sea Org member to leave the Freewinds and/or Scientology; and "fair gaming."

13. Any Scientology laws or procedures that Claimants were shown, taught, or agreed to.

14. All records relating to Claimants' auditing sessions, including auditors' notes, audio recordings, and video recordings.

15. All records of confessions or admissions made or written by Claimants.

16. The Pre-Clear ("PC") folder maintained for each Claimant.

17. The ethics folder maintained for each Claimant, including all records of ethics handlings.

18. All records of "overts and withholds" or "OWs" relating to Claimants.

19. All records of "success stories" relating to Claimants.

20. All records relating to "lower conditions," "security checks," "handlings," "ethics investigations," and interrogations of Claimants.

21. All orders issued by Respondents relating to Claimants, including "non-enturbulation" orders and orders posted on the Freewinds' notice board.

22. All records relating to the EPF program completed by any Claimant.

23. Letters written by Claimants while at Flag Base or aboard the Freewinds, including but not limited to the letters written by Valeska Paris to Shelly Miscavige and Eran Bucci and the letter written by Gawain Baxter to Javier Martinez, and any related communications or records.

24. All records relating to the departures of Claimants from the Freewinds.

25. All records related to the circumstances under which Claimants were permitted to leave the Freewinds, including but not limited to any related policies, such as being sent to an RPF site for "rehabilitation," and any related to the pregnancy of any Claimant.

26. All records relating to the Departure Agreements signed by Claimants, including all records related to the circumstances under which the agreements were signed and any related video or audio recordings.

27. All documents and data captured from Claimants' computers while in the Sea Org.

28.    All records, including documents, communications, photographs, video
recordings, and audio recordings relating to Valeska Paris while at
"RFP ANZO" or in the Sea Org at ANZO.

29.    All documents and communications relating to any "fair gaming" of
Claimants, including but not limited to surveillance, business
interference, communications with Claimants' families, any
contracting, interviewing, hiring, or payment to private investigators
tasked with investigating or following Claimants, and any other
intimidation or harassment of Claimants.

30.    All records and communications related to the creation and
maintenance of the website http://www.valeskaparis.com.

31.    Organizational charts relating to each Respondent.

32.    All documents or records related to any Claimant being declared a
"suppressive person."