# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

GAWAIN BAXTER, LAURA BAXTER
and VALESKA PARIS,

   Plaintiffs,

v.

DAVID MISCAVIGE; CHURCH OF
SCIENTOLOGY INTERNATIONAL;
RELIGIOUS TECHNOLOGY
CENTER; IAS ADMINISTRATIONS,
INC.; CHURCH OF SCIENTOLOGY
FLAG SERVICE ORGANIZATION,
INC.; and CHURCH OF
SCIENTOLOGY FLAG SHIP SERVICE
ORGANIZATION, INC.,

   Defendants.

Case No. 8:22-cv-00986-TPB-SPF

              /

**DEFENDANTS CHURCH OF SCIENTOLOGY INTERNATIONAL ("CSI")
AND CHURCH OF SCIENTOLOGY FLAG SERVICE ORGANIZATION,
INC.'S ("FSO") RESPONSE TO PLAINTIFFS' SECOND MOTION FOR
RECONSIDERATION (DKT. 223) DIRECTED AT THIS COURT'S
MARCH 31, 2023 ORDER GRANTING DEFENDANTS' MOTIONS TO
COMPEL ARBITRATION (DKT. 188) ("ARBITRATION ORDER")**

## PRELIMINARY STATEMENT[1]

This is Plaintiffs' third attempt to avoid honoring the agreements they signed. This Court has twice compelled arbitration and twice rejected Plaintiffs' challenges to Scientology's religious arbitration procedures, finding each time that the agreements are enforceable, the procedures do not constitute a prospective waiver of substantive rights, the composition of the Panel is not grounds for non-enforcement, and the First Amendment bars judicial evaluation of Scientology procedures. Plaintiffs appealed, and the Eleventh Circuit denied interlocutory review.

Plaintiffs finally commenced arbitration more than 19 months after the Arbitration Order, seeking $845,000,000 in damages. Over the course of 15 days of arbitration, the allegations underlying Plaintiffs' claims were tested by the testimony of 35 witnesses and nearly 400 exhibits. Plaintiffs presented expert testimony, posed hundreds of questions, and had continuous access to as many as four attorneys present in a private conference room. On February 6, the Panel confirmed the arbitration would resume on February 9, with important witnesses still to be heard. Despite knowing this, Plaintiffs unilaterally abandoned the arbitration and filed their Motion, in lieu of a motion to confirm or vacate a final award—the remedy provided by the

---

[1] Plaintiffs initially filed their entire second reconsideration motion under seal (Dkt. 209-1), necessitating Defendants' responses. *See, e.g.*, Dkt. 213-15. The Court then struck Plaintiffs' motion, instructing that "[i]f Plaintiffs intend to pursue their motion for reconsideration, they must file the motion" publicly. Dkt. 219. The Court's order did not authorize Plaintiffs to modify their moving papers. Nevertheless, Plaintiffs leveraged their improper initial filing to alter and supplement their moving papers in a futile attempt to reply to Defendants' responses without leave of court, in violation of Local Rule 3.01. *See* L.R. 3.01(e) ("no party may reply without leave"). Despite this improper tactic, Plaintiffs' present motion still fails for the reasons set forth herein.

Federal Arbitration Act ("FAA"). The Motion fails for at least three reasons.

*First*, the FAA bars interlocutory judicial review of an ongoing arbitration, and Plaintiffs, by abandoning the proceedings before a final award, have manufactured the very jurisdictional void they now seek to exploit. The Court need not go any further.

*Second*, Plaintiffs' purported "new evidence" is not new: it was raised, considered, and rejected in the prior proceedings. This threshold issue ends the matter.

*Third*, even if the evidence were new—it is not—it would not change the result. The Panel never said it would not apply federal or state law. What the Panel said, consistent with the agreements Plaintiffs signed, is that the arbitration would be conducted in accordance with Scientology procedures. Plaintiffs' other "new" evidence of unfairness and bias is both false and conclusively foreclosed by the Eleventh Circuit's decision in *Garcia v. Church of Scientology Flag Service Organization*, 2021 WL 5074465 (11th Cir. 2021), which rejected these precise arguments as applied to these same arbitration agreements. And the First Amendment and federal arbitration law independently confirm the Church's religious arbitration procedures satisfy the FAA.

In short, Plaintiffs' Motion rests on a pretextual false narrative manufactured solely to circumvent their contractual obligations. The Court should deny the Motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiffs' Agreements and the Arbitration Order

Plaintiffs are former Scientologists who each served for over a decade as adults in the Sea Organization (the "Sea Org"), Scientology's religious order. As a condition of their religious service and participation in Scientology, Plaintiffs executed multiple

agreements—including both Enrollment and Departure Agreements signed after the purported conduct they now complain of—requiring them to resolve "any dispute, claim or controversy" with Scientology entities "solely and exclusively through Scientology's Internal Ethics, Justice and binding religious arbitration procedures." Dkt. 188 at 5–6. On March 31, 2023, this Court granted Defendants' motions to compel arbitration (the "Arbitration Order") (Dkt. 188) after considering and rejecting every argument Plaintiffs now seek to relitigate. *Compare id.* at 9–14 *with* Motion at 11–12.

### B.  Plaintiffs' Multiple Efforts to Avoid Arbitration

Rather than proceed to arbitration, Plaintiffs pursued every available avenue to delay or avoid it.[2] It was not until November 15, 2024—more than 19 months after the Arbitration Order—that Plaintiffs finally submitted their Statement of Claim ("SOC") to commence arbitration. Plaintiffs seek $845,000,000 in damages based on a SOC containing seven counts and that is 150 pages in length. Declaration of Peter Mansell, ¶¶ 5, 12.[3] Plaintiffs then took an additional 14 months to agree to a meeting date. Throughout that period, Plaintiffs complained that the time set aside for the arbitration was insufficient. Declaration of Charles M. Harris Ex. B (April 4, 2025 IJC Letter) (the International Justice Chief ("IJC") "reject[ing] assertion that there is an arbitrary length for the arbitration. There is none."). The IJC assured Plaintiffs they would have ample

---

[2] Plaintiffs first sought interlocutory review of the Arbitration Order, which the Eleventh Circuit denied. *See* Case No. 23-90013, Dkt. 42-2 (11th Cir. April 11, 2024). Thereafter, on June 25, 2024, Plaintiffs filed their first Motion for Reconsideration, rehashing the same arguments made in their original arbitration briefing, which this Court denied (the "Reconsideration Order"). Dkt. 199.

[3] Each Defendant had a designated Representative who was present throughout the proceedings, and Mansell served as a Representative for FSO. *Id.* ¶¶ 3–4. His sworn testimony directly contradicts Plaintiffs' characterization of the proceedings.

time, directed them to set aside at least two weeks to commence the arbitration, and made clear that Plaintiffs would have a full and fair opportunity to present all their claims and evidence. *Id.* ("The arbitration will take as long as necessary to hear all of your claims"). The arbitration meeting was ultimately scheduled to commence on January 19, 2026.

### C. Plaintiffs Abandon the Arbitration

Plaintiffs' Motion is founded on a false narrative of what occurred during the arbitration, which commenced on January 19, 2026, and remains open. In truth, the arbitration offered the parties a full and fair opportunity to present all claims, witnesses, and evidence. Mansell Decl. ¶¶ 15–26.  As provided for in the agreements, the Panel consisted of three arbitrators—one selected by Plaintiffs, one selected by Defendants, and a third jointly selected by the party arbitrators. Mansell Decl. ¶ 7. The Panel dedicated much of the first day to explaining the procedures, answering Plaintiffs' questions, and receiving Plaintiffs' exhibits. *Id.* ¶ 8. The Panel explained that the purpose of the proceedings was to reach the truth, and all parties, including Plaintiffs, indicated their understanding of the procedures. *Id.* ¶¶ 9–10. The Panel also repeatedly offered to provide Plaintiffs with the full body of Scientology Ethics and Justice materials, which Plaintiffs declined to review. *Id.* ¶ 14.

The Panel never stated it would not apply federal or state law (*id.* ¶ 32) and the arbitration was actively adjudicating Plaintiffs' claims thereunder. Plaintiffs were given Defendants' responses to the SOC addressing Plaintiffs' claims, including under the Trafficking Victims Protection Reauthorization Act ("TVPRA"). *Id.* ¶ 25. Plaintiffs then gave opening statements, posed hundreds of questions to the Panel and 35

4

testifying witnesses, presented several hours of expert testimony, submitted written reports from three additional experts (who failed to attend the arbitration, despite an open invitation), and entered 135 of nearly 400 exhibits into evidence. *Id.* ¶¶ 12, 19–25.

Plaintiffs took over 50 breaks to confer with their attorneys in a private conference room. *Id.* ¶ 28. The arbitrators neither yelled at Plaintiffs, nor deprived them of any opportunities afforded to Defendants. *Id.* ¶ 26. Defendants' Representatives did not eat lunch or fraternize with the arbitrators. *Id.* ¶ 34; Harris Decl. ¶ 10.

On January 30, the Panel stated that it was hopeful the arbitration would conclude the following week. Mansell Decl. ¶ 43. Despite having rested their case, Plaintiffs then insisted on reopening it, spending two days reviewing their Ethics files, *id.* ¶ 45, and also took a break for more than three hours to confer with their attorneys. *Id.* ¶ 46. Therefore, at the end of Friday, February 6, there remained key witnesses and evidence to present. *Id.* ¶ 49.

The Panel confirmed to all parties that the arbitration would resume on Monday, February 9, 2026, at 10:00 a.m. *Id.* ¶ 48. The Panel reiterated that if the Plaintiffs made themselves unavailable before the arbitration concluded, the arbitration would remain open until it could be concluded in person. *Id.* Regardless, Plaintiffs did not return, and their counsel did not inform FSO counsel, who had been on site for 15 days. Harris Decl. ¶ 14. On February 10, 2026, the IJC contacted Plaintiffs to request dates to complete the arbitration. *Id.* Ex. A (Feb. 10, 2026 IJC Letter). Plaintiffs did not respond. *Id.* ¶ 14. Defendants' Representatives believe that

5

but for Plaintiffs' actions, the arbitration would have concluded, and in any event, should conclude within a week if Plaintiffs return. Mansell Decl. ¶ 50.

Plaintiffs' true intentions were revealed on March 2, 2026, when Plaintiffs' counsel announced that Plaintiffs intended to file the present Motion. Harris Decl. ¶ 16. Defendants thereafter attempted to meet and confer pursuant to Local Rule 3.01(g), which requires "a substantive conversation" to "discuss the issues raised in the motion before it is filed." *Rigney v. Livingston*, 2012 WL 12915480, *1 (M.D. Fla. Dec. 4, 2012). However, despite Defendants' counsel making themselves available for over two hours, Plaintiffs refused to disclose the basis for their motion, in violation of the Rule. Harris Decl. ¶ 17, Exs. C, D. Plaintiffs stated only that their motion would be based on "due process" violations—a term noticeably absent from the Motion. *Id.*[4]

## II.    ARGUMENT

### A. The FAA Bars Interlocutory Judicial Review of an Ongoing Arbitration

The Court should deny the Motion because the FAA bars Plaintiffs' improper attempt to seek judicial review of an arbitration proceeding prior to the entry of a final arbitration award. Under Eleventh Circuit authority, courts are "without jurisdiction" to review ongoing arbitration proceedings and interim decisions, and any such challenge must await a final award. *Schatt v. Aventura Limousine*, 603 F. App'x 881,

---

[4] Because Plaintiffs refused to disclose the basis for their Motion, including that they would be rehashing arguments from their original briefing, they failed to "converse, confer, compare views, consult, and deliberate" as the Rule requires. *Gomez v. 1131 Kent, LLC*, 2019 WL 498745, at *3 (S.D. Fla. Feb. 8, 2019). That alone is grounds for this Court to deny the Motion and award Defendants their reasonable attorneys' fees. *See, e.g.*, *Phillips v. Cario*, 2026 WL 507939, at *1 (M.D. Fla. Feb. 24, 2026) ("violation of Local Rule 3.01(g) constitutes sufficient grounds to deny the relief sought"); *Royal Bahamian v. QBE Ins.*, 744 F. Supp. 2d 1297, 1303 (S.D. Fla. 2010) (awarding attorney's fees).

886–87 (11th Cir. 2015), citing *Folse v. Richard Wolf*, 56 F.3d 603, 605 (5th Cir. 1995) (the FAA "authorizes court action only after a final award is made by the arbitrator"); *see Escobar v. Celebration Cruise*, 805 F.3d 1279, 1289 (11th Cir. 2015) (holding challenges must be brought at the "award-enforcement stage" after a final award). Accordingly, the Court must deny the Motion as a premature vacatur motion.

This limitation flows directly from the FAA's text, which authorizes court involvement in only two narrow circumstances: (1) enforcing arbitration agreements and directing that arbitration proceed; and (2) reviewing final arbitration awards. *See, e.g.*, 9 U.S.C. §§ 9–11 (providing for confirming, vacating, and modifying a final "award"). Nothing in the FAA authorizes a pre-award judicial challenge to alleged defects in the manner an arbitration is being conducted.

Consistent with this settled framework, courts lack authority to entertain such interlocutory challenges and routinely dismiss them. *See Schatt,* 603 F. App'x at 886–87; *Inter-Coastal Waterways v. TradeStation Securities,* 2024 WL 5162041, at *3 (S.D. Fla. Oct. 28, 2024) ("the Federal Arbitration Act restricts courts' authority to intervene in arbitral processes before final awards are issued") (collecting cases); *Peleus Ins. Co. v. Edgewater Beach Resort*, 2023 WL 11760950, at *1 (N.D. Fla. Sept. 19, 2023) (same) (collecting cases); *Savers Prop. & Cas. Ins. v. Nat'l Union Fire Ins.*, 748 F.3d 708, 716 (6th Cir. 2014) ("Because [the] arbitration was ongoing, and because the panel had not yet issued a final award, the district court erred by prematurely interjecting itself into this private dispute"); *Gulf Guar. Life Ins. v. Conn. Gen. Life Ins.*, 304 F.3d 476, 487 (5th Cir. 2002) ("The FAA does not provide ... for any court intervention prior to issuance of an arbitral

award beyond the determination as to whether an agreement to arbitrate exists").[5]

This well-established rule of law applies to each of Plaintiffs' purported grounds for the Motion. *See* Mot. at 11. The United States Supreme Court unambiguously held that any issue with respect to a "prospective waiver" of a federal right and "what law the arbitrators will apply to petitioner's claims" is "premature" before a final award has been rendered. *See Vimar v. M/V Sky Reefer*, 515 U.S. 528, 540–41 (1995). Thus, in the Eleventh Circuit, "any claim that an arbitration agreement prospectively waived a party's right to pursue U.S. statutory remedies must be brought at the award-enforcement stage" after a final award, "not at the arbitration-enforcement stage." *Escobar*, 805 F.3d at 1289. Prior to a final award, it is "premature" to "make findings about how arbitrators will conduct the arbitral process, whether a claim will be heard, or whether the foreign-law remedies will be adequate or inadequate" because, as the "Supreme Court stated: 'Having permitted the arbitration to go forward, the national courts of the United States will have the opportunity *at the award-enforcement stage* to ensure that the legitimate interest in the enforcement of the [federal] laws has

---

[5] *See also Quixtar v. Brady*, 328 F. App'x 317, 320 (6th Cir. 2009) ("[C]ourts generally should not entertain interlocutory appeals from ongoing arbitration proceedings"); *Blue Cross v. BCS Ins.*, 671 F.3d 635, 638 (7th Cir. 2011) ("judges must not intervene in pending arbitration" because "[r]eview comes at the beginning or the end, but not in the middle"); *Hooters v. Phillips*, 173 F.3d 933, 941 (4th Cir. 1999) ("fairness objections should generally be made to the arbitrator, subject only to limited post-arbitration judicial review as set forth in section 10 of the FAA"); *LaPrade v. Kidder*, 146 F.3d 899, 903 (D.C. Cir. 1998) (FAA "contemplates that courts should not interfere with arbitrations by making interlocutory rulings"); *Folse v. Richard Wolf*, 56 F.3d 603, 605 (5th Cir. 1995) (FAA "authorizes court action only after a final award is made by the arbitrator"); *Michaels v. Mariforum*, 624 F.2d 411, 414 & n.4 (2d Cir. 1980) ("court does not have the power to review an interlocutory ruling by an arbitration panel … it is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award"); *Travelers v. Davis*, 490 F.2d 536, 541–42 (3d Cir. 1974) (same).

been addressed.'" *Lindo v. NCL*, 652 F.3d 1257, 1279–81 (11th Cir. 2011).

The same is true of Plaintiffs' remaining challenges to the arbitral process. Whether the religious arbitration procedures adequately give Plaintiffs a full and fair opportunity to have their claims heard, are issues reserved for the "award-enforcement stage." *See Escobar*, 805 F.3d at 1289; *Lindo*, 652 F.3d at 1269. As the Eleventh Circuit explained in *Lindo*, "the significance of *Vimar* is that, at the arbitration-enforcement stage, it is generally premature to make findings about how arbitrators will conduct the arbitral process, whether a claim will be heard, or whether the foreign-law remedies will be adequate or inadequate." 652 F.3d at 1279; *see Savers*, 748 F.3d at 716 (courts may not entertain an interlocutory challenge to the fairness of an ongoing arbitration).

Accordingly, Plaintiffs' challenge to the arbitration here is premature.

### B. Plaintiffs Present No New Evidence Warranting Reconsideration

Plaintiffs' Motion is not an actual Rule 54 motion for reconsideration, but rather a thinly-veiled premature request to vacate that should be denied on that basis alone. Nevertheless, the Motion does not come close to satisfying the high bar of "extraordinary circumstances supporting reconsideration." *See U.S. ex rel. Mastej v. Health Mgmt.*, 869 F. Supp. 2d 1336, 1348 (M.D. Fla. 2012). This Court has already recognized—when denying Plaintiffs' prior motion for reconsideration—that reconsideration "presents an extraordinary remedy 'and should be applied sparingly.'" Dkt. 199 at 4; *Taylor Woodrow v. Sarasota*, 814 F. Supp. 1072, 1072–73 (M.D. Fla. 1993) (same); *see Hornady v. Outokumpu*, 118 F.4th 1367, 1380 (11th Cir. 2024) (affirming denial of Rule 54 motion because "courts should hesitate before revisiting their earlier interlocutory orders").

9

When, as here, the "issues have been carefully considered and decisions rendered, the *only reason* which should commend reconsideration of that decision is a change in the factual or legal underpinning upon which the decision was based." *Taylor*, 814 F. Supp. at 1072–73. Accordingly, Plaintiffs "must set forth facts or law of a *strongly convincing nature* to induce the court to reverse its prior decision." *Id.* Plaintiffs have not done so because none of their purported "evidence" is new.

Each of Plaintiffs' arguments was previously raised in the original arbitration motion briefing and rejected by this Court. *See Reyher v. Equitable Life*, 900 F. Supp. 428, 430 (M.D. Fla. 1995) (court "will not reconsider when the motion does not raise new issues but only relitigates what has already been found lacking"). Plaintiffs assert the following purported "new evidence": (i) the arbitration procedure is governed by "ecclesiastical, rule, custom, and law;" which according to Plaintiffs violates the "prospective waiver" doctrine and is "unfair"; (ii) the arbitrators must be "Scientologist[s] in good standing" and thus are biased; (iii) attorneys and other third parties are not permitted in the hearing. These rules were known to Plaintiffs from the start, and their objections were rejected in the Arbitration Orders (Dkts. 188, 199).

*First*, with respect to the arbitration being governed by ecclesiastical procedures, in compelling the case to arbitration this Court recognized that the agreements:

> [B]roadly cover "any dispute, claim or controversy" between Plaintiffs and the Church of Scientology and related individuals and entities, and Plaintiffs agreed to resolve disputes "solely and exclusively through Scientology's Internal Ethics, Justice and binding religious arbitration procedures." The agreements provide for "binding religious arbitration in accordance with the arbitration procedures of Church of Scientology International."

10

Dkt. 188 at 5–6; *see id.* at 11 (acknowledging Plaintiffs' "commitment to arbitrate under religious law"). Thus, Plaintiffs cannot claim that being bound by ecclesiastical procedures is "new." Likewise, Plaintiffs' "prospective waiver" argument is not new, and this Court expressly rejected it in the initial Arbitration Order. Dkt. 188 at 11–12.[6]

***Second***, Plaintiffs' remaining "new evidence" regarding the composition of the Panel and the exclusion of third parties including attorneys has been raised and rejected *twice*. Initially, in 2022, Plaintiffs submitted declarations providing that the "arbitrators must be 'in good standing' as determined by CSI" and "[l]egal representation is not permitted in Scientology proceedings, including arbitration."[7] *See, e.g.*, Dkt. 110-4 ¶¶ 25, 27. Based on this, Plaintiffs argued that they cannot "effectively vindicate their rights" because "the panel of arbitrators provided for in the Enrollment Agreements must be members of Scientology 'in good standing,' a criteria [sic] that only Defendants control" and that "they are not allowed counsel of their choice." Dkt. 111 at 15–16. This Court considered and rejected those arguments. Dkt. 188 at 11–12. Then, in 2024, in their first motion for reconsideration Plaintiffs argued:

> [N]ew evidence has come to light confirming Plaintiffs' argument that the Scientologist arbitrators—who are controlled by Defendants—will not give Plaintiffs a fair hearing … [and] Plaintiffs will be denied an attorney to

---

[6] In any event, the Court correctly recognized that "even if" Plaintiffs put forth evidence showing that Scientology doctrine would compel an arbitrator to be "hostile" to their claims or "would make it impossible for them to receive a fair and neutral arbitration," the First Amendment would preclude the court from "resolving an underlying controversy about church doctrine." Dkt. 188 at 11–12, citing *Garcia v. Church of Scientology Flag Serv. Org., Inc.,* 2021 WL 5074465, at *4 (11th Cir. 2021).

[7] One declaration, from Mike Rinder, is not "new evidence." It was filed to oppose Defendants' original motion to compel arbitration and was before the Court when it issued its March 2023 Order. Rinder is deceased and cannot be cross-examined or called to testify. His claims about IJC, the arbitration panel, and Scientology procedures have now been disproven by actual arbitration events.

11

represent them and prevented from presenting evidence or witnesses[.]

Dkt. 196 at 9; *see* Dkt. 199 (denying first reconsideration motion). This is nearly verbatim what Plaintiffs now argue is "new," *years* after originally raising it. The Court denied that motion, and Plaintiffs' repackaging of the same argument fares no better.

None of the features of the religious arbitration criticized by Plaintiffs—not even in the aggregate—constitutes "new" evidence sufficient to warrant reconsideration of the Arbitration Order. The Court should deny the motion on this ground alone. *Mastej*, 869 F. Supp. 2d at 1348 ("motion for reconsideration does not provide an opportunity to simply reargue … an issue the Court has once determined"); *Reyher*, 900 F. Supp. at 431 (denying reconsideration because "the Plaintiff does not set forth any new issues which were not previously decided"); *see also Am. Home Assur. v. Glenn Estess*, 763 F.2d 1237, 1239 (11th Cir. 1985) (litigant is not allowed "two bites at the apple").[8]

### C. Plaintiffs' "New" Challenges to the Religious Arbitration Procedures Do Not Warrant Reconsideration

Even if Plaintiffs' purported "new evidence" were new—it is not—the Motion still fails because it would not change the result. Plaintiffs' central factual claim that the Panel stated it would not apply federal or state substantive law is false. Mansell Decl. ¶ 32. What Plaintiffs actually challenge is the *procedural* "law" applied, arguing that the Church's religious arbitration procedures are inadequate because they do not

---

[8] Plaintiffs also falsely claim that they were told the arbitration would last two weeks; however, the IJC informed Plaintiffs that there was no "arbitrary length for the arbitration," it "will take as long as necessary to hear all of your claims" and "[a]ll parties will have an opportunity to present evidence and witnesses will be heard." Harris Decl. Ex. B (April 4, 2025 IJC Letter). Defendants' Representatives believe that but for Plaintiffs' actions, the arbitration would have concluded, and in any event, should conclude within a week if Plaintiffs return. Mansell Decl. ¶ 50.

mirror secular commercial arbitration. Mot. at 19. That argument fails for four independent reasons: (i) the Panel never stated it would not apply substantive federal or state law; (ii) Plaintiffs' other purported "new" evidence of unfairness and bias lacks foundation and is foreclosed by binding precedent; (iii) the First Amendment prohibits this Court from resolving underlying controversies about church doctrine with respect to the Church's religious arbitration procedures; and (iv) courts routinely enforce religious arbitration agreements that lack typical hallmarks of secular arbitration.

### i.  Plaintiffs' Prospective Waiver Argument Remains Meritless

As established in Section A, Plaintiffs' prospective waiver argument is premature, and the Court cannot address it at this stage. *See* Section A, *supra*. It also rests on a false factual premise: The Panel stated it would not apply federal or state law. **That never happened.** Mansell Decl. ¶ 32. The Panel made no such statement at any point during the proceedings. *Id.* To the contrary, the Panel said, consistent with the arbitration agreements Plaintiffs signed, that the arbitration would be conducted in accordance with Scientology *procedures*. *Id*. ¶¶ 9, 31. In fact, Plaintiff Valeska Paris' purported notes confirm the Panel was referring only to procedural law. Dkt. 223-24 ¶ 9, Ex. D (Panel stated it was "applying SCN [Scientology] *procedures*"). Plaintiffs' other purported notes do not reference substantive law. *Id.* Exs. A–C. The distinction matters.

The prospective waiver doctrine is concerned with whether an arbitration agreement strips a party of a prospective (e.g. future) *substantive* federal statutory right, not whether the arbitration employs secular procedural rules. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) (refusing to consider

prospective waiver argument at "this stage in the proceedings, when [defendant] seeks to enforce the agreement to arbitrate, not to enforce an award"). As this Court previously held, "an agreement to arbitrate [] statutory claims" does not constitute "a prospective waiver of the substantive right." Dkt. 188 at 11.

Thus, a panel that applies Scientology ***procedures to gather facts*** while adjudicating federal or state claims does not violate the prospective waiver doctrine. As Plaintiffs' own authority makes clear, "an arbitration agreement is a specialized kind of forum-selection clause that posits not only the situs of suit but ***also the procedure to be used in resolving the dispute***." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022). That Plaintiffs now contest procedures they once agreed to is not grounds for invoking the prospective waiver doctrine. *See, e.g.*, *Am. Exp. Co. v. Italian Colors Rest.,* 570 U.S. 228, 229 (2013) (that the chosen arbitration procedures made it "not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy"); *see also Garcia*, 2021 WL 5074465, at *7 (affirming arbitration "conducted in accordance with Scientology principles").

Plaintiffs' prospective waiver argument rests on alleged statements made during an arbitration they chose not to complete. By abandoning the proceedings, Plaintiffs prevented the Panel from issuing findings or applying any law. They cannot now ask this Court to adjudicate an incomplete process, because the Panel speaks through its final award, not through Plaintiffs' characterization of alleged interim remarks. Plaintiffs' authority makes that clear. *See 14 Penn Plaza v. Pyett*, 556 U.S. 247, 273–74

14

(2009) (resolving prospective waiver doctrine is "particularly inappropriate" where there has not been a final award, as courts should not "invalidate arbitration agreements on the basis of speculation").

The proper course is straightforward. If Plaintiffs complete the arbitration, the Panel will issue a final award, and Plaintiffs may then seek vacatur at the award-enforcement stage if they believe their substantive federal rights were disregarded. *See* 9 U.S.C. § 10; *Vimar*, 515 U.S. at 540 (review occurs at the award-enforcement stage).

Finally, this Court previously found that "even if" Plaintiffs could show that "they are unable to vindicate their [statutory] rights" in religious arbitration, the "First Amendment would preclude the court from resolving" the issue because the "First Amendment forbids civil courts" from undertaking "an analysis and interpretation of Scientology doctrine." Dkt. 188 at 11–12. That independent constitutional bar forecloses Plaintiffs' argument entirely, regardless of what the Panel did or did not say.

### ii.   Plaintiffs' Other "New Evidence" of Unfairness and Bias Are False and Do Not Warrant Reconsideration

Plaintiffs' remaining purported "new" evidence is that: (i) they did not know the procedures; (ii) did not have access to a neutral forum because their agreements required the arbitrators to be Scientologists "in good standing;" and (iii) Defendants' party arbitrator was biased. Mot. at 15–16. None of these are new. *See* Section B, *supra*. All of them are false. And, the Eleventh Circuit has already held that these arguments as applied to the same arbitration agreements fail. *See Garcia*, 2021 WL 5074465.

*First*, Plaintiffs were aware of the procedures governing the arbitration. The

15

agreements themselves laid out the procedures for submitting a claim and choosing arbitrators. *E.g.*, Dkt. 84-2 (Religious Services Enrollment Application, Agreement and General Release § 6(e)(v)). Plaintiffs do not dispute that these agreed procedures were followed. The Eleventh Circuit already determined that these procedures gave Plaintiffs sufficient notice because "[w]hen an agreement says that disputes are subject to arbitration and provides procedures, such as a process for the selection of arbitrators and a timeframe for decisions, Florida courts enforce the arbitration provision." *Garcia*, 2021 WL 5074465, at *6. It further held that the same agreements at issue here "were sufficiently definite" because they laid out the procedures discussed above. *Id.*

Moreover, while not legally required, Plaintiffs *were* provided with additional procedural information and ample opportunity to review Scientology Ethics and Justice materials, which they declined to do. Mansell Decl. ¶ 14. And the Panel dedicated much of the first day to explaining the procedures and answering Plaintiffs' questions. *Id.* at ¶ 8. Plaintiffs' claim of lack of knowledge of procedures is meritless.

***Second***, the Eleventh Circuit also expressly rejected Plaintiffs' argument regarding the requirement that the arbitrators be Scientologists in good standing. The First Amendment "prevent[s] [courts] from entertaining the argument that Scientology doctrine" "compel[s] any Scientologist in good standing to be hostile against [plaintiffs], which would make it impossible for them to receive a fair and neutral arbitration." *Garcia*, 2021 WL 5074465, at *8–9. Additionally, because Plaintiffs "agreed that their 'specific intention' was that 'all . . . arbitrators be Scientologists in good standing'" and a "Scientologist in good standing would naturally be expected to

16

have bias (or even a great deal of bias) in favor of the church" courts "see no problem here with the predisposition of the arbitrators." *Id.* at \*12.

***Finally***, Plaintiffs' argument that the Court should revisit its decision compelling arbitration because Defendants' arbitration nominee was purportedly biased, is foreclosed by *Garcia.* The Eleventh Circuit rejected this same argument, holding that "[a]n arbitrator appointed by a party is a partisan only one step removed from the controversy and need not be impartial" and "is permitted, and should be expected, to be predisposed toward the nominating party's case." *Garcia*, 2021 WL 5074465, at \*11.

### iii.    The First Amendment Independently Prohibits Judicial Evaluation of the Church's Religious Arbitration Procedures

Plaintiffs ask the Court to evaluate the Church's internal arbitration procedures and determine that they are inadequate when measured against secular norms. That is precisely what the First Amendment forbids. The Supreme Court made clear that "constitutional concepts of due process, involving secular notions of 'fundamental fairness' or impermissible objectives, are … hardly relevant to such matters of ecclesiastical cognizance." *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 715 (1976). An analysis of whether a religious tribunal's procedures are "arbitrary" "must inherently entail inquiry into the procedures that canon or ecclesiastical law supposedly requires," and "this is exactly the inquiry that the First Amendment prohibits." *Id.* at 713. Courts may not second-guess decisions grounded in religious rule, custom, or law. *Watson v. Jones*, 80 U.S. 679, 727 (1871). Courts therefore may not require parties to abandon religious procedures for courtroom-style mechanisms.

17

### iv.    Courts Routinely Enforce Religious Arbitration Agreements

Plaintiffs cite no authority holding that religious arbitration must conform to secular procedural standards because none exists. Courts routinely enforce agreements requiring arbitration before religious tribunals, including those that operate under procedures materially different from commercial arbitration or civil litigation. *See, e.g.*, *Garcia*, 2021 WL 5074465, at *1 (enforcing Scientology procedures at issue here); *Encore Prods., Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1111–13 (D. Colo. 1999) (enforcing arbitration through a Christian conciliation process governed by biblical principles); *Easterly v. Heritage Christian Schools, Inc.*, 2009 WL 2750099, at *3–4 (S.D. Ind. Aug. 26, 2009) (enforcing Christian arbitration procedures). Faith-based adjudicatory systems—whether rooted in Jewish, Islamic, Christian, or Scientology principles—derive their procedures from religious doctrine, not secular legal norms.

That is precisely the framework this Court applied in the Arbitration Order. As *Garcia* confirmed, arbitrations conducted "in accordance with Scientology principles" by arbitrators who are "Scientologists in good standing with the Mother Church," are enforceable. 2021 WL 5074465, at *2, 7. Plaintiffs secured an award in *Garcia* through those very procedures, and the Eleventh Circuit reviewed it. *Id.* at *10. The same process remains available to Plaintiffs if they return to complete it.

None of Plaintiffs' authority provides otherwise. Plaintiffs' primary authority, *Advanced Bodycare v. Thione*, did not establish a checklist of prerequisites for enforceable arbitration. Rather, it expressly recognized that "parties have great flexibility under the FAA to select pre-packaged dispute resolution procedures, or to craft their own."

524 F.3d at 1239. In any event, *Advanced Bodycare* was decided before *AT&T Mobility v. Concepcion* in which the Supreme Court made clear that parties have broad "discretion in designing arbitration processes." 563 U.S. 333, 344–45 (2011). The Supreme Court previously stressed that by agreeing to arbitrate, parties forgo "the procedures and opportunity for review of the courtroom." *Gilmer v. Interstate/Johnson*, 500 U.S. 20, 31 (1991). And the Eleventh Circuit has held that "the arbitration setting" has "almost none of the protections that fundamental fairness and due process require," discovery "is abbreviated if available at all" and the "rules of evidence are employed, if at all, in a very relaxed manner." *Davis v. Prudential*, 59 F.3d 1186, 1190 (11th Cir. 1995).

*Inetianbor v. CashCall* and *Flores v. N.Y. Football Giants* are also inapposite. In *CashCall*, the parties agreed to tribal arbitration, which "require[d] the Tribe's involvement" and therefore "communicated to [plaintiff]" that any dispute "would be under the authority of the Tribe." 768 F.3d 1346, 1353 (11th Cir. 2014). However, because the Tribe stated it "does not authorize Arbitration," the chosen "arbitral forum" was "unavailable" and therefore, the case could not be arbitrated. *Id.* 1353–54. That is nothing like this case, where the arbitral forum undisputably exists, and the parties participated in arbitration "according to the[] terms" of the agreements. *See id.*

*Flores*, an out-of-circuit decision, involving secular arbitration, fares no better. *See* 150 F.4th 172 (2d Cir. 2025). In *Flores*, the agreement at issue "compel[led] one party to submit its disputes to the substantive and procedural authority of the principal executive officer of one of their adverse parties," the NFL commissioner. *Id.* at 183.

19

That stands in stark contrast to the agreements here, under which each party selected an arbitrator, who then selected a third. Likewise, *Flores* took issue with the fact that the arbitration agreement did not set forth policies and procedures and did "not reference or incorporate the NFL's Dispute Resolution Procedural Guidelines." 150 F.4th at 184. Again, that is in stark contrast to the situation here where the agreements specifically reference and incorporate "Scientology's internal Ethics, Justice and binding religious arbitration procedures." *E.g.*, Dkt. 84-2 (Religious Services Enrollment Application, Agreement and General Release § 6(d)). In fact, *Flores* drew a distinction between the plaintiffs' arbitration agreements with other entities that did incorporate the NFL's Resolution Procedural Guidelines, which were properly compelled to arbitration. 150 F.4th at 184. In any event, any reliance on *Flores* is foreclosed by the Eleventh Circuit's decision in *Garcia*, holding that the precise procedures at issue here satisfy the FAA. 2021 WL 5074465, at *1.

In sum, Plaintiffs ask this Court to invalidate the arbitration agreements because the chosen forum does not resemble commercial arbitration. That is not a basis for reconsideration. It is the consequence of the parties' agreements. *See Garcia,* 2021 WL 5074465. Challenge to the conduct or outcome of the arbitration must be addressed, if at all, through the FAA's post-award review mechanisms, not through a third attempt to relitigate an order properly compelling arbitration. *See Schatt*, 603 F. App'x at 886–87; *Escobar*, 805 F.3d at 1289; *Savers*, 748 F.3d at 716; *Gulf*, 304 F.3d at 487.

## **CONCLUSION**

Defendants CSI and FSO respectfully request that the Court deny the Motion.

/s/*Jeffrey L. Steinfeld*

Jeffrey L. Steinfeld
*Pro Hac Vice*
California Bar No. 294848
WHITE & CASE LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071-2433
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Jeff.Steinfeld@whitecase.com

W. Dylan Fay
Florida Bar No. 125673
WHITE & CASE LLP
Southeast Financial Center
200 S Biscayne Blvd, Suite 4900
Miami, FL 33131-2352
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Dylan.Fay@whitecase.com

*Attorneys for Defendant*
*Church of Scientology International*

/s/*Charles M. Harris, Jr.*

CHARLES M. HARRIS, JR. FBN 967459
charris@trenam.com|lmclaughlin@trenam.com
BRIGID A. MERENDA, FBN 320500
bmerenda@trenam.com |ranctil@trenam.com
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602
Telephone: (813) 223-7474
Facsimile: (813) 229-6553

*Attorneys for Defendant*
*Church of Scientology Flag Service Organization, Inc.*

21

## CERTIFICATE OF SERVICE

I certify that on April 23, 2026, I served a true and correct electronic copy of the foregoing via email to all email addresses listed on the CM/ECF system for service in this action.

*/s/ Charles M. Harris, Jr.*
Attorney

22