### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

GAWAIN BAXTER, LAURA BAXTER
and VALESKA PARIS,

          Plaintiffs,

v.

DAVID MISCAVIGE; CHURCH OF
SCIENTOLOGY INTERNATIONAL;
RELIGIOUS TECHNOLOGY CENTER;
IAS ADMINISTRATIONS, INC.;
CHURCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, INC.; and
CHURCH OF SCIENTOLOGY FLAG
SHIP SERVICE ORGANIZATION, INC.,

          Defendants.

Case No. 8:22-cv-00986-TPB-SPF

_____ /

### DECLARATION OF PETER MANSELL IN SUPPORT OF CHURCH OF SCIENTOLOGY INTERNATIONAL AND CHURCH OF SCIENTOLOGY FLAG SERVICE ORGANIZATION'S RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION

Peter Mansell hereby states and declares as follows:

1.    I am over 18 years of age and am competent to testify as to the facts contained herein.

2.    I have served as a member of the Sea Organization, the religious order of the Church of Scientology, for more than three decades. Throughout that time, I have worked as a paralegal in the Church's legal department.

3.      I served as the corporate representative for Church of Scientology Flag Service Organization ("FSO") at all times during the religious arbitration of Plaintiffs' claims, which began on January 19, 2026.

4.      Each of the corporate Defendants had a representative present during the religious arbitration.

### The Initiation of the Arbitration Proceeding

5.      On November 15, 2024, Plaintiffs submitted their Statement of Claim (the "SOC") to commence arbitration. Plaintiffs' SOC contains seven counts and is 150 pages in length.

6.      Before arbitration began, Plaintiffs participated in selecting the panel of religious arbitrators.

7.      Plaintiffs nominated the first arbitrator, Defendants nominated the second, and those arbitrators then nominated the third.

8.      On the first day of the arbitration, January 19, 2026, the Chair of the panel (the "Chair") spent much of the day explaining the procedures to be followed in the arbitration, answering Plaintiffs' questions and receiving Plaintiffs' exhibits.

9.      The Chair explained that consistent with the arbitration agreements Plaintiffs signed, the arbitration would be governed by Scientology Ethics and Justice procedures. The Chair further explained that the purpose of the proceeding was to get to the truth and decide the claims in a fair and equitable manner, that all parties were expected to be truthful, and that the proceeding could hear any dispute, claim, or controversy. The truth-seeking purpose of Scientology Ethics and Justice

2

procedures is established in the writings of L. Ron Hubbard, the Founder of Scientology.

10.    All parties indicated they understood the procedures.

11.    The Chair asked Plaintiffs to identify their witnesses and their witnesses' availability. Plaintiffs provided the names or roles of their expert witnesses and their available dates. No witnesses were called on Day 1 (January 19, 2026).

12.    Plaintiffs each gave opening statements. Plaintiffs provided a binder containing their exhibits to each of the three arbitrators and one binder for the defense representatives, along with additional documents including expert declarations and reports. Plaintiffs also submitted an expert report stating that they were seeking $845,000,000 ($845 million) in damages, broken down as follows: Gawain Baxter: $303,710,911; Laura Baxter: $166,207,739; and Valeska Paris: $375,608,265.

13.    Plaintiffs took extensive notes of Defendants' statements and were given access to those statements over several days to complete their notes. Plaintiffs took their notes of the arbitration outside of the arbitration room during their breaks and when they left each day.

14.    On January 20 and 21, 2026, the Chair repeated the procedures to be followed and offered to provide the full body of Scientology Ethics and Justice materials for Plaintiffs' review. Plaintiffs declined each time.

3

## The Presentation of Evidence

15.    The proceedings were conducted over 15 days, approximately eight hours per day, with breaks as needed and as requested by Plaintiffs.

16.    An independent, non-Scientology security firm was retained to handle security measures. The arbitrators, defense representatives, and Plaintiffs were all screened by the security firm before entering the arbitration room to ensure no recording devices were brought into the arbitration room. All individuals were treated in the same manner by security.

17.    The Chair conducted the questioning of the witnesses who testified.

18.    The Chair asked witnesses questions on behalf of the panel and questions submitted by the parties. All parties were treated in the same manner by the Chair throughout the arbitration.

19.    The Chair asked over 150 questions on Plaintiffs' behalf over the course of the proceedings. Approximately 10 questions posed by Plaintiffs were declined as not relevant by the Chair over the course of the proceedings.

20.    35 witnesses have testified during the proceedings to date on matters relating to Plaintiffs' claims, including Plaintiffs' expert witness, Dr. Chitra Raghavan, who testified in person for most of the day.

21.    Plaintiffs submitted written reports and declarations from three additional expert witnesses who did not attend the arbitration even though the panel indicated they would be permitted to testify and asked Plaintiffs to schedule their testimony.

4

22.    To date, close to 250 exhibits have been entered by Defendants, and 135 exhibits have been entered by Plaintiffs.

23.    The exhibits include documentary evidence, photographs, video evidence, correspondence, and documents Plaintiffs selected from the review of their own Ethics files during the proceedings.

24.    Plaintiffs were provided ample opportunity to review all evidence and to make notes of the evidence.

25.    At the outset of the arbitration, Plaintiffs were provided copies of the corporate Defendants' responses to the SOC, which addressed Plaintiffs' claims, including their allegations of duress, human trafficking under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), forced labor, and peonage. Plaintiffs talked amongst themselves and took notes while reviewing those responses. In addition, extensive testimony and documentary evidence were presented in relation to those claims during the arbitration.

26.    The panel conducted itself professionally and was courteous to all parties, treating Plaintiffs and Defendants equally and respectfully. I never observed the arbitrators display any animosity toward the Plaintiffs and at no time did the arbitrators yell at Plaintiffs.

**Plaintiffs' Consultation of Attorneys**

27.    There were no attorneys for any of the parties in the arbitration room at any point during the proceedings.

5

28.     Throughout the proceedings, Plaintiffs took more than 50 breaks, during which they had the opportunity to speak with their attorneys.

29.     On multiple occasions across multiple days, Plaintiffs returned from consulting with their attorneys and read prepared written statements to the panel. These statements contained legal arguments, legal citations, and legal terminology.

30.     On Day 14 (February 5, 2026), when the Chair indicated she wanted to question Plaintiffs individually, they took a break for over three hours to consult with their attorneys. When Plaintiffs returned, they read a multi-page prepared statement to the panel, refusing to be questioned separately. The panel then continued the proceeding with all parties present.

### The Application of the Law

31.     I reviewed Plaintiffs' Exhibits 24A–D to their Motion for Reconsideration, which purportedly include Plaintiffs' notes taken on January 19 and 23, 2026, during the first days of the arbitration. I distinctly recall that the panel explained, consistent with the parties' agreements, that the arbitration would be governed by Scientology Ethics and Justice procedures and that it was a religious arbitration, not a secular courtroom proceeding. The discussion concerned the procedures by which the arbitration would be conducted. Moreover, I recall the panel stating they would consider and address all Plaintiffs' claims.

32.     At no point did the Chair or any member of the panel say they would not consider or apply state or federal law, such as the TVPRA.

33.     I always understood that the panel would consider and apply the law when it deliberated and reached its findings. The SOC specifically asserted claims under the TVPRA and related theories, and the corporate Defendants' written responses, witness testimony and documentary evidence addressed those claims. The Chair also assured Plaintiffs several times that she had read and was familiar with their claims and that the panel fully intended to consider all evidence relevant to those claims.

### Sealed Proceedings & No Ex Parte Communications

34.     During breaks from the arbitration proceeding, including breaks to eat lunch, Plaintiffs and corporate representatives were separated from the arbitrators.

35.     The arbitrators had their own room at the front end of the suite. Defendants' representatives had a separate room at the other end of the suite, about 50 feet away. Plaintiffs and their attorneys had their own separate rooms.

36.     The parties were not permitted to take anything out of the arbitration room except their own notes.

37.     In the arbitration room, Defendants' representatives had only our notepads and the binder that Plaintiffs provided to us on Day 1.

### The Duration of the Arbitration Proceeding

38.     On Day 1 (Monday, January 19, 2026), at the commencement of the arbitration, the Chair said the arbitration will take as long as necessary to ensure that all relevant evidence is reviewed and all necessary testimony is heard. Specifically,

both parties will be given a full and complete opportunity to present all facts and evidence so that the arbitrators can determine the truth of the matter.

39. On Day 8 (Wednesday, January 28, 2026), after Plaintiffs' expert Dr. Chitra Raghavan testified, Paris announced that Plaintiffs were resting their case. The Chair responded that there was evidence from the Defendants that had to be presented and reviewed and Defendants' witnesses that needed to be heard.

40. On Day 9 (Thursday, January 29, 2026), at the beginning of the day, the Chair stated, in substance, as follows:

a. There remained substantial evidence to review, including hundreds of documents and several witnesses.

b. Based on what had been covered so far, a fair estimate was that the arbitration would not be finished until the end of the following week.

c. The parties were being advised so they could make necessary arrangements.

d. The Plaintiffs had been informed at the outset that the arbitration would take as long as necessary to complete a full review of the evidence and testimony.

e. The arbitrators intended to proceed and complete the arbitration rather than stopping midstream, the Plaintiffs departing, and then requiring everyone to return at a later date.

f. The panel had no interest in taking one minute longer than necessary to complete the arbitration.

g. The panel had accepted the responsibility of conducting the arbitration and was committed to doing it properly, thoroughly, and completely, no matter how long it would take.

h. Everyone needed to be present in person for the presentation of all evidence.

41. At the end of Day 9 (Thursday, January 29, 2026), Paris stated the Plaintiffs would remain through the next week, but only if there was a guarantee that the arbitration would be completed by then (February 6, 2026). She requested Plaintiffs be given that confirmation the next morning (Day 10, Friday, January 30, 2026).

42. On Day 10 (Friday, January 30, 2026), the first thing the Chair took up was Plaintiffs' request for a confirmation that the arbitration would conclude by February 6.

43. The Chair stated the panel could not guarantee that the arbitration would be completed by Friday, February 6, 2026. The Chair reiterated:

a. The panel estimated the arbitration would continue through the end of the following week and had no interest in taking one minute longer than necessary.

b. The arbitration required the parties' in person participation.

c. The Plaintiffs had the ability to ask any questions they wished and knew the Defendants had the same right. Plaintiffs had also suggested that testimony be taken by affidavit or remotely. The Chair stated that

9

in a Scientology Justice proceeding testimony is taken in person and the parties have the right to confront and question the evidence and testimony presented.

d. The Plaintiffs had indicated they rested their case, but there remained additional evidence that was part of the Defendants' case which had to be reviewed, and Defendants had key witnesses who needed to be heard.

e. The panel was committed to completing the arbitration during the Plaintiffs' time in the United States so they would not have to return at a later date.

44.     The Chair further reiterated that the panel could not predict what may arise as new evidence was presented and further witnesses were heard, and that the arbitration would not be concluded until all evidence was reviewed and all testimony heard. The Chair reminded Plaintiffs that they had been informed of this multiple times, including by the International Justice Chief as early as April 4, 2025, and that it was reiterated again at the outset of the arbitration proceedings. The Chair then continued the arbitration proceedings.

45.     On Day 11 (Monday, February 2, 2026), Gawain Baxter stated he and Laura Baxter wanted to review their Ethics files. Therefore, the Plaintiffs' case was reopened and two entire days—Day 11 (Monday, February 2, 2026) and Day 12 (Tuesday, February 3, 2026)—were spent reviewing Plaintiffs' Ethics files. Plaintiffs asked that numerous documents from the files be added to the evidence they

10

submitted. This was despite the fact Plaintiffs had indicated they had already rested their case and despite the fact the Baxters had known since at least Friday, January 23, 2026, that their Ethics files were available should they wish to review them, but had previously declined to do so.

46.    On Day 14 (Thursday, February 5, 2026), Plaintiffs took a break during the arbitration for more than three hours to consult with their attorneys.

47.    On Day 15 (Friday, February 6, 2026), at the beginning of the day, the Chair addressed the schedule and completion of the arbitration. The Chair reiterated that all parties had been informed from the outset that the arbitration would take as long as necessary to ensure that all relevant evidence was reviewed and all necessary testimony was heard, and that the panel could not predict what may arise as new evidence was presented and further witnesses were heard. The Chair then stated:

    a.  This had proven true during the course of the week.

    b.  By way of example, at Plaintiffs' request, they were provided the opportunity to review their Ethics files, which required two full days, and Plaintiffs also took a break of more than three hours to confer with their attorneys.

    c.  Those were matters Plaintiffs were entitled to take up, and the panel did not hold any of it against them, but merely reflecting that developments arise during an arbitration that cannot be predicted in advance and that necessarily affect timing.

11

d. There remained additional evidence that must be reviewed and key witnesses that must be heard, including questions to be asked of Plaintiffs. Based on what had been covered thus far, and what remained, the panel could not and would not provide a guarantee as to a specific completion date.

e. The length of the proceedings was a function of the scope and volume of matters Plaintiffs had raised and the issues that arise in addressing them fully, and that the panel was proceeding diligently and without delay.

48.    The Plaintiffs appeared to note down what the Chair said and did not object or disagree. The arbitration then proceeded. At the end of the day the Chair told all parties that the arbitration would reconvene on Monday, February 9, 2026, at 10:00 a.m. The Chair repeated what she had told the parties at the start of the day. The Chair further reiterated that the proceeding required the parties' in person participation, including the ability to question witnesses face-to-face and review evidence directly. The Plaintiffs were told by the Chair that, consistent with what had previously been stated to them, if at any time they made themselves unavailable before the arbitration concluded, the arbitration would remain open until such time as it could be concluded in person, in Clearwater. The Chair reiterated that the panel would see them at 10:00 a.m. on Monday, February 9. The Plaintiffs left without any further comment.

49. As of Friday, February 6, the key witnesses for Defendants still needed to testify. At no point did Plaintiffs object to or dispute that Defendants had more evidence and additional key witnesses to present.

50. It was my impression that the proceedings could likely have been concluded during the week beginning February 9, 2026.

51. At no point did the Chair indicate that the proceedings would continue indefinitely.

52. Each of the corporate representatives participating in the arbitration had ongoing duties and responsibilities which they set aside in order to be present for the proceedings. Several of the representatives traveled to Clearwater for that purpose and remained available throughout the arbitration with the understanding that the proceeding would continue through to completion in person. The representatives were present while Plaintiffs presented their claims, evidence, and witnesses. As of February 6, 2026, Defendants had not yet completed the presentation of their evidence and principal witnesses. Defendants remained prepared to proceed and complete the arbitration. When Plaintiffs did not return to continue the arbitration, Defendants were not able to present their remaining evidence and principal witnesses.

## Abandonment of Arbitration

53. On February 6, 2026, the final day Plaintiffs were present, the Chair stated that the proceeding would continue Monday, February 9, 2026, at 10:00 a.m.

13

54.    On Monday, February 9, 2026, the arbitrators, all defense representatives, independent security personnel, and defense counsel appeared at the arbitration venue. Plaintiffs did not appear.

55.    Plaintiffs did not return on February 10, 2026, or on any date thereafter.

56.    The arbitration is not complete. Defendants remain ready to complete the arbitration.

Under penalty of perjury and the laws of the United States, I declare that I have read the foregoing Declaration of Peter Mansell. The declaration is true to the best of my knowledge and belief. Executed in Clearwater, Florida.

Dated: April 23, 2026

Peter Mansell

## CERTIFICATE OF SERVICE

I certify that on April 23, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CMIECF system, which will send a true and correct copy to all counsel of record.

/s/ Charles M. Harris, Jr.
Attorney