# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

|  |  |
|---|---|
| GAWAIN BAXTER, LAURA BAXTER and VALESKA PARIS, | : <br> : <br> : CIVIL ACTION <br> : |
| Plaintiffs, | : <br> : |
| v. | : NO. 8:22-cv-00986 <br> : <br> : |
| DAVID MISCAVIGE; CHURCH OF SCIENTOLOGY INTERNATIONAL, INC.; RELIGIOUS TECHNOLOGY CENTER, INC.; IAS ADMINISTRATIONS, INC.; CHURCH OF SCIENTOLOGY FLAG SERVICE ORGANIZATION, INC.; and CHURCH OF SCIENTOLOGY FLAG SHIP SERVICE ORGANIZATION, INC., | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Defendants. | : <br> : |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE EXPERT DECLARATION OF PROFESSOR DENNIS R. NOLAN

The Court should deny Defendants' motion to strike the expert report of Dennis

R. Nolan, ECF 232 ("Motion to Strike").[1] Professor Nolan's expertise on the features

of a classic arbitration is beyond question. Professor Nolan is a former President of the

National Academy of Arbitrators with more than 50 years' experience practicing,

---

[1] Defendants style this motion as an "objection," but it is in substance a motion to strike. There is nothing in the Federal Rules of Civil Procedure or Local Rules that permit a party to file a standalone "objection" to an exhibit attached to a motion. Accordingly, Plaintiffs respectfully request that the Court either disregard Defendants' "objection," or treat it as a motion to strike and accept this memorandum as a proper response to that motion under Local Rule 3.01.

studying, and teaching arbitration. Defendants' contention that Professor Nolan is not qualified to opine on Scientology arbitration[2] merely proves Professor Nolan's point: no proceeding is "less worthy of the title of arbitration" than Scientology arbitration. That Professor Nolan's experience is primarily in secular arbitration is beside the point. All dispute-resolution systems – whether religious or secular – must "resemble[] 'classic arbitration.'" *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1239 (11th Cir. 2008). Professor Nolan's testimony that Scientology arbitration "possesses none of the elements of a classic arbitration" is thus directly relevant, helpful, and well within Professor Nolan's extensive expertise.

Defendants' remaining objections are equally without merit. Professor Nolan does not opine on whether the arbitration agreements at issue are enforceable, which is the ultimate legal question here. Rather, he provides a factual comparison of Scientology arbitration to classic arbitration. Courts routinely permit experts to testify regarding legal procedures and how such procedures are commonly understood or applied in practice. *See, e.g.*, ECF 223-1 ("Nolan Decl.") ¶ 2(f) (citing declaration relied on in *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 935, 939 (4th Cir. 1999) (Wilkinson, J.)). That is precisely the boundary respected here. Moreover, courts hold that the risk of prejudice from admitting a legal expert's testimony is absent where, as here, such testimony is presented to a judge, not a jury. Professor Nolan's testimony on this issue

---

[2] As stated in their Motion for Reconsideration, Plaintiffs' use of the term "arbitration" here does not concede Scientology arbitration is indeed an arbitration. *See* ECF 223 n.2.

has previously been accepted and relied upon by a federal district court and court of appeal.

Finally, Professor Nolan's declaration satisfies the relevant evidentiary standard. Plaintiffs agree their motion is properly addressed under the standards applicable at the motion-to-compel stage despite Defendants' conflicting arguments about the procedural posture of this motion. Professor Nolan's declaration is properly sworn and relies on evidence that can be considered at this stage.

Defendants' objections should be overruled.

## **ARGUMENT**

I. **Professor Nolan's Declaration is Admissible at this Stage and Will be Helpful to the Court**

a. **Professor Nolan's 56 Years of Experience in Arbitration Qualify Him to Testify that Scientology Arbitration Does Not Resemble Classic Arbitration**

Professor Nolan is undoubtably qualified to testify on the characteristics of a classic arbitration. He has had a 56-year career working in labor and employment arbitration. Professor Nolan's career highlights include the following:

- He founded and served as Chair of the Labor and Employment Law section of the South Carolina Bar;

- He served as Webster Professor of Labor Law at the University of South Carolina, where he taught for 34 years with a focus on employment dispute resolution;

- He has held visiting professor positions at the University of Washington, George Washington University, and at universities in Ireland, New Zealand, and Australia;

- He is the recipient of two Fulbright Grants;

- He has written eight books and 47 articles, primarily concerning arbitration and mediation;

- He was a member of the National Academy of Arbitrators and served as its President from 2006 to 2007;

- He has been involved in more than 2,000 arbitration and mediation cases;

- He has served as an arbitrator on panels of the American Arbitration Association, the Federal Mediation and Conciliation Service, and "on private panels created by many of the most important companies and unions in the country."

Nolan Decl. at ¶ 2.

All to say, Professor Nolan is well qualified to testify as to the characteristics of a classic arbitration. Indeed, Defendants do not argue otherwise. Instead, they argue that Professor Nolan is not qualified to testify about the characteristics of *their* arbitration. Motion to Strike at 5–6. Defendants' argument simply proves the point that Scientology arbitration does not resemble classic arbitration as contemplated by the Federal Arbitration Act ("FAA"). If a dispute-resolution system is so foreign that the former President of the National Academy of Arbitrators is not qualified to assess it, then it plainly cannot resemble a classic arbitration.

Defendants' argument implies that their arbitration should receive special protection under the FAA. This is not the law. The FAA does not give courts authority to enforce all litigation waivers, but only agreements "to settle by arbitration a controversy." 9 U.S.C. § 2. And the Eleventh Circuit has defined "arbitration" as used in the FAA to mean a proceeding that "resembles 'classic arbitration.'" *Advanced Bodycare Sols.*, 524 F.3d at 1239. Accordingly, all arbitrations – whether "religious" or

"secular" – must resemble classic arbitration to be enforceable under the FAA. The FAA does not grant courts authority to enforce "arbitrations *or religious arbitration,*" nor has the Eleventh Circuit announced an exception to its classic-arbitration rule for religious arbitrations. Rather, as Defendants' own authority confirms, "religious arbitrations are not subject to a special exemption from the neutral and generally applicable legal standards that apply to any arbitration under the Federal Arbitration Act." *Garcia v. Church of Scientology Flag Serv. Org., Inc.*, No. 18-13452, 2021 WL 5074465, at *11 (11th Cir. Nov. 2, 2021).[3]

With this proper understanding of the legal issue, any purported lack of experience with religious arbitrations does not at all affect Professor Nolan's qualifications to speak on the characteristics of a classic arbitration and assess whether any proceeding – secular or otherwise – lacks those characteristics. As an expert in classic arbitration, Professor Nolan is qualified to look at *any* purported arbitration procedure and opine that it does not resemble a classic arbitration.

### b. Professor Nolan's Declaration Does Not Opine on an Ultimate Legal Issue, but it Would be Admissible Regardless

---

[3] This does not in any way deprive religious entities and their congregants of the ability to enter into voluntary dispute resolution procedures that do not resemble classic arbitration; it simply does not give federal courts jurisdiction to order specific performance of such agreements. *See Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 689–90 (9th Cir. 2024) (explaining that "parties may and sometimes do agree to" a form of arbitration not "envisioned by the FAA" but that the FAA does not apply to such arbitrations). To invoke the jurisdiction of secular courts, a dispute resolution proceeding must resemble arbitration as contemplated by the drafters of the FAA in 1925. *See id.* (concluding that, since "[c]lass-wide arbitration did not exist in 1925," it was not protected by the FAA).

The ultimate legal issue in Plaintiffs' motion is whether the purported arbitration agreements between Plaintiffs and Defendants are enforceable. Professor Nolan does not offer an opinion on that question. Nor does Professor Nolan opine on the subsidiary legal question of whether the Scientology arbitration process constitutes an "arbitration" as the FAA uses that term. Rather, Professor Nolan's testimony assesses the factual questions implicated by the *Advanced Bodycare* test – the characteristics of a classic arbitration and whether, in his extensive arbitration experience, the Scientology proceedings resemble a classic arbitration.

For example, Professor Nolan testifies that "[t]he crucial steps" of a dispute resolution system "include a statement of claims and a response by the other party, time limits, discovery rules, evidentiary rules, and so on." Nolan Decl. ¶ 5. And although he opines that "[i]t is impossible to imagine a fair judicial system that lacked those rules," he does not opine on the legal implications of a system lacking any such rules. *Id.* Likewise, he opines that "fair arbitration procedures provide both parties with an orderly, convenient way to present testimony and other evidence and to refute the other side's evidence." *Id.* ¶ 9. But he does not say that an agreement to an unfair arbitration procedure cannot be enforced, or that a proceeding lacking one of these features is not an arbitration under the FAA. His testimony merely provides factual background and insight to the Court that can aid it in answering those ultimate questions.

The Court would not be alone in considering Professor Nolan's testimony. A federal district court has previously considered similar testimony from Professor

6

Nolan. In *Hooters of America, Inc. v. Phillips*, 39 F. Supp. 2d 582, (D.S.C. 1998), the plaintiff submitted Professor Nolan's testimony in opposing a motion to compel arbitration. The district court considered the testimony and quoted Professor Nolan for the proposition that the defendant's arbitration rules "do not satisfy the minimum requirements of a fair arbitration system." *Id.* at 598. In affirming the district court's order denying the motion to compel arbitration, the Fourth Circuit likewise considered and quoted Professor Nolan's testimony:

> Additionally, Dennis Nolan, professor of labor law at the University of South Carolina, declared that the Hooters rules 'do not satisfy the minimum requirements of a fair arbitration system.' He found that the 'most serious flaw' was that the 'mechanism [for selecting arbitrators] violates the most fundamental aspect of justice, namely an impartial decision maker.' (alteration in original)).

*Hooters of Am.*, 173 F.3d at 939 (Wilkinson, J.).

Professor Nolan's testimony aligns with the type of contextual testimony courts often allow from legal experts. For example, courts allow legal experts to testify, even before juries, on matters such as legal processes, common legal practice, and statutory and regulatory frameworks. *See, e.g.*, *Antrim Pharms. LLC v. Bio-Pharm, Inc.*, 950 F.3d 423, 431 (7th Cir. 2020) (district court properly admitted legal expert's "testimony on the FDA's statutory and regulatory authority"); *Jones v. Novartis Pharms. Corp.*, 235 F. Supp. 3d 1244, 1256 (N.D. Ala. 2017) (concluding regulator expert's testimony is "helpful to the jury to understand the complex, technical topic of FDA regulations"); *Williams v. C Martin Co. Inc.*, No. 07-6592, 2014 WL 1652438, at *9 (E.D. La. Apr. 24, 2014) (allowing legal experts to "explain to the jury," among other things, "the general

process through which an individual obtains service-disabled-veteran status as well as the bidding process associated with service-disabled-veteran-owned small-business-concern contracts"); *Lozano v. City of Hazleton*, 241 F.R.D. 252, 256 (M.D. Pa. 2007) (admitting legal expert's testimony "to help explain to the court the intricacies of the federal immigration system"); *Reiffin v. Microsoft Corp.*, 270 F. Supp. 2d 1132, 1146 (N.D. Cal. 2003) (allowing "a lawyer experienced in patent practice" to testify that "plaintiff's version of events, if true, supports the conclusion that plaintiff did not act unreasonably in prosecuting the patents at issue"). Even in Defendants' own cited authority, the court allowed an attorney to testify in a bad-faith insurance case "based on his understanding of Florida law and a review of the documents in the case" as long as he did "not offer[] legal conclusions." *Dudash v. S.-Owners Ins. Co.*, No. 8:16-CV-290-T-27AEP, 2017 WL 1969671, at *2 (M.D. Fla. May 12, 2017).

Moreover, courts have held that the risk of prejudice from admitting a legal expert's testimony is absent where, as here, such testimony is presented only to a judge. *See Cambridge Univ. Press v. Becker*, No. 1:08-CV-1425-ODE, 2009 WL 7586776, at *2 (N.D. Ga. Sep. 3, 2009) ("[I]n a bench trial, there is no danger that the jury might give too much weight to the opinion of a legal expert."); *accord, e.g.*, *Flores v. Arizona*, 516 F.3d 1140, 1166 (9th Cir. 2008) (legal expert's testimony was "not prejudicial in this bench trial, where there was no danger that a jury might give too much credence to a legal expert"), *rev'd on other grounds sub nom.*, *Horne v. Flores*, 557 U.S. 433 (2009); *see also, e.g.*, *Lozano*, 241 F.R.D. at 256 ("[C]ourts appear to be more concerned about an

8

expert who presents legal conclusions to a jury rather than to a judge."). This declaration is not being presented to a jury.

Here, as in *Hooters*, Professor Nolan's testimony will aid the Court in understanding how Scientology's arbitration procedures differ from a classic arbitration and disadvantage Plaintiffs in pursuit of their rights. It is, of course, up to the Court to decide the legal effect of Scientology's unusual and unfair procedures. At a minimum, the Court should consider those parts of Professor Nolan's testimony that it finds helpful. *See Cambridge Univ. Press*, 2009 WL 7586776, at *2 ("The Court is capable of disregarding the portions of Dr. Crews' report that impinge on its responsibility to determine and apply the law.").

### c. Professor Nolan's Declaration is Otherwise Admissible in Opposing a Motion to Compel

Defendants also raise two arguments contending that Professor Nolan's declaration is not admissible in its present form at the motion-to-compel arbitration stage. Neither carries weight.

### 1. The motion-to-compel stage evidentiary standard applies

As an initial matter, Plaintiffs agree with Defendants that the admissibility of Professor Nolan's declaration is properly assessed under the standards for evidence presented in opposition to a motion to compel arbitration. Plaintiffs detour to address this point because Defendants' position on the application of the motion-to-compel standard is at odds with the position they have taken in opposition to Plaintiffs' motion for reconsideration of the Court's order compelling arbitration. Defendants contend in

9

their opposition that Plaintiffs' motion for reconsideration is an improper interlocutory appeal, but in their motion to strike they contend that the admissibility must be assessed under the standards applicable to a motion to compel arbitration, not an appeal from an arbitration award. Defendants cannot have it both ways, and understanding the procedural posture of the motion is necessary to ruling on Defendants' motion to strike.

It is clear that Plaintiffs' motion seeks reconsideration under Rule 54(b) of the Court's original order compelling arbitration. Reconsideration of a non-final order is always available before final judgment. *See Hornady v. Outokumpu Stainless USA*, 118 F.4th 1367, 1379–80 (11th Cir. 2024). Rather, Plaintiffs' motion raises new evidence that shows certain assumptions supporting that order are false. If the motion were granted, the arbitration would be *void ab initio*. Because it seeks reconsideration of the Court's prior order and does not challenge any ruling by the arbitrators, it is not an appeal at all, let alone an interlocutory one.

As the Supreme Court has recently clarified, the FAA requires courts to stay, rather than dismiss, a case that is compelled into arbitration precisely because the FAA envisions an "ongoing role" for the courts in supervising the arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). None of the cases Defendants cite – almost all of which predated *Smith* – prohibit a plaintiff from seeking reconsideration of a motion to compel arbitration based on new evidence that arose during the arbitration or

10

caution that such a motion must be treated as an interlocutory appeal.[4] Meanwhile, Defendants' authority confirms that, as the Supreme Court held in *Smith*, courts retain jurisdiction while an arbitration proceeds, *LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 903 (D.C. Cir. 1998), and "will intervene in the arbitral process when a challenge goes to the making of the agreement or suggests that the agreement is void or warrants rescission," *Gulf Guar. Life Ins.*, 304 F.3d at 487–88. Accordingly, Plaintiffs' motion is appropriately treated as a motion for reconsideration, so Plaintiffs agree that the evidentiary standard applicable to Professor Nolan's report is the standard set forth in Federal Rule of Civil Procedure Rule 56(c), which applies at the motion-to-compel arbitration stage. *See Martin v. Equifax Info. Servs., LLC*, No. 2:24-CV-1071-SPC-KCD, 2025 WL 729274, at *2 (M.D. Fla. Mar. 5, 2025). But as

---

[4] Some state that a motion to vacate under FAA § 10, which Plaintiffs do not seek, must await a final arbitration award. *See Schatt v. Aventura Limousine & Transp. Serv., Inc.*, 603 F. App'x 881, 887 (11th Cir. 2015); *Folse v. Richard Wolf Medical Instruments Corp.*, 56 F.3d 603, 605 (5th Cir. 1995); *Michaels v. Mariforum Shipping, S. A.*, 624 F.2d 411, 414 (2d Cir. 1980). Others state certain arguments not raised here are better addressed at the motion to vacate stage. *See Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1289 (11th Cir. 2015) (public policy arguments under the New York Convention); *Inter-Coastal Waterways, Inc. v. TradeStation Sec., Inc.*, No. 24-60891-CIV, 2024 WL 5162041, at *3 (S.D. Fla. Oct. 28, 2024) (arbitrator bias); *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 748 F.3d 708, 720 (6th Cir. 2014) (same); *Quixtar, Inc. v. Brady*, 328 F. App'x 317, 322 (6th Cir. 2009) (failure to challenge arbitrability and raise collateral estoppel at pre-arbitration phase means party "implicitly agreed to defer judicial review until after the conclusion" of the arbitration); *Hooters of Am.*, 173 F.3d at 941 (fairness objections that, unlike here, fall short of a material breach). One case holds that a court may not intervene while an arbitration is pending to dictate the procedures in which the arbitration panel is selected. *See Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011). Another simply holds that damages are not available for breach of an arbitration agreement. *Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476, 487 (5th Cir. 2002). One determined that, under Pennsylvania law, an arbitrator has the authority to decide the law and facts. *Travelers Ins. Co. v. Davis*, 490 F.2d 536, 545 (3d Cir. 1974).

elaborated below, Defendants are wrong to suggest Professor Nolan's declaration is not properly considered under Rule 56(c).

    2.  <u>Professor Nolan's declaration is properly sworn</u>

Defendants' argument that Professor Nolan's declaration is unsworn because it does not verbatim match 28 U.S.C. § 1746 is meritless. "[C]ourts in this circuit have recognized that '[s]trict compliance with § 1746 is not required as long as the unsworn declaration "substantially" satisfies the statute.'" *Muttersbaugh v. Hyundai Motor Mfg. of Alabama, LLC*, No. 2:17-CV-746-MHT-DAB, 2018 WL 11514633, at *1 (M.D. Ala. Dec. 10, 2018) (quoting *Rogers v. City of Selma*, 178 F. Supp. 3d 1222, 1232 (S.D. Ala. 2016)); *see also, e.g.*, *Giglio Sub s.n.c. v. Carnival Corp.*, No. 12-21680-CIV, 2012 WL 4477504, at *6 (S.D. Fla. Sep. 26, 2012); *Fed. Trade Comm'n v. Vacation Travel Club, Inc.*, No. 89-219-CIV-FTM-21D, 1996 WL 557831, at *3–4 (M.D. Fla. Jan. 24, 1996). Substantial compliance requires, at most, the phrase "penalty of perjury" and a statement that the document is true. *Giglio Sub s.n.c.*, 2012 WL 4477504, at *6 (*citing Smith v. Muscatell (In re Muscatell)*, 106 B.R. 307, 309 (Bankr. M.D. Fla. 1989)); *see also Tishcon Corp. v. Soundview Commc'n, Inc.*, No. 1:04-CV-524-JEC, 2005 WL 6038743, at *4 (N.D. Ga. Feb. 15, 2005) (declaration under penalty of perjury, without statement of truth, sufficed). Professor Nolan's declaration contained both essential elements, stating: "I have personal knowledge of the facts stated herein, which I declare are true and correct subject to the penalty of perjury." Nolan Decl. ¶ 1. This is sufficient.

12

Professor Nolan's declaration is thus sworn. But if the Court decides otherwise, Plaintiffs respectfully request the opportunity to cure the error by submitting a declaration with language in strict compliance of § 1746.

3. <u>Professor Nolan's testimony relies solely on independently admissible material and thus cannot be a conduit to hearsay</u>

Defendants wrongly assert that Professor Nolan's declaration is a conduit for hearsay. For one thing, "[e]xperts may satisfy the personal-knowledge requirement [of Rule 56(c)(4)] if they provide affidavits containing an opinion formed within their area of expertise and based on their own assessment or analysis of the underlying facts or data." *Stevenson v. Cyprus Amax Mins. Co.*, No. 6:17-CV-417-ORL-40DCI, 2018 WL 8608281, at *2 n.3 (M.D. Fla. June 29, 2018) (second alteration in original) (quoting *Pauls v. Green*, 816 F. Supp. 2d 961, 978 (D. Idaho 2011)). As explained above, Professor Nolan's testimony is within his area of expertise.

Moreover, while experts are allowed to rely on hearsay if experts within the same field would rely on the same kinds of fact, *see* Fed. R. Evid. 703, Defendants do not identify any hearsay that Professor Nolan supposedly relays through his report. To the contrary, he relies on the exhibits submitted in support of Plaintiffs' motion, which are mostly sworn declarations (which Defendants do not challenge) and letters from the International Justice Chief, an employee of Defendant Church of Scientology International, Inc. These materials are admissible at the motion-to-compel stage. *See* Fed. R. Civ. P. 56(c); Fed. R. Evid. 801(d)(2)(D). Otherwise, Professor Nolan relies on his 56 years of experience, his knowledge of classic arbitration procedures and

13

practice, and the extensive rules promulgated by AAA and JAMS. These are plainly facts and data an arbitration expert would normally rely on, and Defendants do not argue otherwise.

## II.   Plaintiffs Properly Moved on the Public Docket After the Court Denied Their Motion to Seal

Defendants also object to minor changes Plaintiffs made to the version of their motion for reconsideration that they filed on the public docket after the Court denied their motion to file under seal. Motion to Strike at 2–4. Defendants do not state what relief, if any, they seek. Regardless, Defendants are wrong that Plaintiffs' motion constitutes an improper reply because the Court's order denying the motion to seal made it clear that no motion had been filed, so the briefing began anew when Plaintiffs filed their motion on the public docket. *See* ECF 219 ("If Plaintiffs intend to pursue their motion for reconsideration, they must file the motion and any exhibits on the public docket without redaction. In addition, should Defendants intend to oppose any such motion, they must file any responses and exhibits on the public docket without redaction."). Defendants apparently also read the order that way, taking two weeks to file their response. Moreover, Defendants suffered no prejudice, as they had (and took) an opportunity to respond and likewise changed their response.

Finally, Defendants say that an order denying a motion to seal is automatically stayed under Local Rule 1.11(d). But Rule 11.1(d) merely dictates that the Clerk will wait 14 days before unsealing the filings. *See, e.g.*, *Atkins v. Bennett*, No. 3:23-CV-187-

WWB-SJH, 2024 WL 4373371, at *2 (M.D. Fla. Oct. 2, 2024). It does not create an obligation for Plaintiffs to keep the motion under seal.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' motion to strike Professor Nolan's declaration.

Dated: May 7, 2026

Respectfully submitted,

/s/ Gregory P. Hansel

Gregory P. Hansel
(Fla. Bar No. 607101)
Shana M. Solomon
Elizabeth F. Quinby
**PRETI FLAHERTY BELIVEAU & PACHIOS, LLP**
One City Center
P.O. Box 9546
Portland, ME 04112-9546
(207) 791-3000
ghansel@preti.com
ssolomon@preti.com
equinby@preti.com

Shelby Leighton
**PUBLIC JUSTICE**
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 797-8600
sleighton@publicjustice.net

Manuel J. Dominguez
(Fla. Bar No. 0054798)
Theodore Leopold
(Fla. Bar No. 705608)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
11780 U.S. Highway One,
Suite N500

15

Palm Beach Gardens, FL 33408
(561) 515-1400
tleopold@cohenmilstien.com
jdominguez@cohenmilstein.com

Agnieszka M. Fryszman
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave., N.W.,
Suite 800
Washington, DC 20005
(202) 408-4600
afryszman@cohenmilstein.com

Brendan Schneiderman
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine St., 14th Floor
New York, NY 10005
(212) 838-7797
bschneiderman@cohenmilstein.com

Joseph C. Kohn
Zahra R. Dean
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700
jkohn@kohnswift.com
zdean@kohnswift.com

Warren A. Zimmerman
(Fla. Bar No. 652040)
**WARREN A. ZIMMERMAN, P.A.**
4114 Sparrow Ct
Lutz, FL 33558-2727
(813) 230-1465
warren@wzimmermanlaw.com

16